# EXHIBIT A

# IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN**
as *Surviving Mother* of
**Joshua P. Nickel**
and
as *Personal Representative*
of the **Estate of Joshua P. Nickel**
12750 Vale Summit Road SW
Frostburg, MD 21532

and

**KARL E. NICKEL**
as *Surviving Father* of
**Joshua P. Nickel**
**(UNREPRESENTED "USE PLAINTIFF")**
30 Depot Street
Frostburg, MD 21532

|  |  |
|---|---|
| **Plaintiffs,** | C-01-CV-23-000317 |
| vs. | Civil Action No.: _____ |

**ALLEGANY SCRAP, INC.**
2001 Kenilworth Avenue
Capital Heights, MD 20743

> *Serve On*:
> CSC Lawyers Incorporating Service Co.
> 7 St. Paul Street
> Suite 820
> Baltimore, MD 21202

and

**THE SHREDDER CO LLC**
7380 Doniphan Drive
Canutillo, Texas 79835

> *Serve On*:
> Alton Scott Newell,
> *Registered Agent*
> 6800 Market Avenue

El Paso, TX 79915-1014

and

**THE SHREDDER CO, L.P.**
6800 Market Avenue
El Paso, TX 79915-1014

> *Serve On*:
> Alton Scott Newell,
> *Registered Agent*
> 6800 Market Avenue
> El Paso, TX 79915-1014

and

**NEWELL RECYCLING
EQUIPMENT, LLC**
1020 S Mesa Hills Dr.
Apt. 5205
El Paso, TX 79912-5121

> *Serve On*:
> Alton Scott Newell, Jr.
> 1020 S Mesa Hills Dr.
> Apt. 5205
> El Paso, TX 79912-5121

and

**NEWELL RECYCLING
COMPANY OF EL PASO, L.P.**
P.O. Box 2867
Fredericksburg, TX 78624-1927

> *Serve On*:
> Alton Scott Newell, Jr.
> *Registered Agent*
> 6800 Market Avenue

**Defendants.**

---

**COMPLAINT**

---

Plaintiff, LINDA S. BEEMAN ("Plaintiff Beeman"), as *Surviving Mother* of *Decedent* Joshua P. Nickel ("Nickel"), and as *Personal Representative* of the Estate of Joshua P. Nickel (the "Nickel Estate"), by and through their counsel, Jason C. Buckel, Esq., T. Lee Beeman, Jr., Esq., and Buckel, Levasseur, Pillai & Beeman, LLC, and KARL E. NICKEL ("Use Plaintiff Nickel"), as *Surviving Father* of *Decedent* Joshua P. Nickel, an unrepresented "*Use Plaintiff*" bring this action against Defendants ALLEGANY SCRAP, INC. ("Defendant Allegany Scrap"); THE SHREDDER CO LLC ("Defendant TSC LLC"); THE SHREDDER CO, L.P. ("Defendant TSC LP"); NEWELL RECYCLING EQUIPMENT, LLC ("Defendant Newell Recycling"); and NEWELL RECYCLING COMPANY OF EL PASO, L.P. ("Defendant Newell El Paso"); and in support of their claims, state the following:

### Jurisdiction, Venue, and Parties

1.      Jurisdiction and venue are proper with this Court because all or a substantial part of the events or omissions giving rise to the claims herein stated occurred in Allegany County, Maryland.

2.      Plaintiff Beeman was, at all times relevant, an adult citizen residing in Allegany County, Maryland.

3.      Plaintiff Beeman was appointed *Personal Representative* of the Estate of Joshua P. Nickel (Estate No. 37946) by the Office of the Register of Wills for Allegany County, Maryland on February 17, 2021. *See*, Ex. 1.

4.      Plaintiff Beeman is the *Surviving Mother* of Decedent, Joshua P. Nickel, who died on September 11, 2020. *See*, Ex. 2.

5.      Use Plaintiff Nickel is the *Surviving Father* of Decedent, Joshua P. Nickel, who died on September 11, 2020.

6.      Upon information and belief, Defendant Allegany Scrap is incorporated under the laws of the State of Maryland and is licensed to do business in the State of Maryland, has its principal place of business in Allegany County, Maryland, and operated a scrap metal recycling facility which employed Decedent Nickel up to the time of his death.

7.      Upon information and belief, Defendant TSC LLC is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Canutillo, Texas, and was the manufacturer of the industrial shredder referenced below.

8.      In the alternative and upon information and belief, Defendant TSC LP is a limited partnership organized under the laws of the State of Texas, with its principal place of business in El Paso, Texas, and was the manufacturer of the industrial shredder referenced below.

9.      In the alternative and upon information and belief, Defendant Newell Recycling is a limited liability company organized under the laws of the State of Texas, with its principal place of business in El Paso, Texas, and was the manufacturer of the industrial shredder referenced below.

10.     In the alternative and upon information and belief, Defendant Newell El Paso is a limited partnership organized under the laws of the State of Texas, with its principal place of business in El Paso, Texas, and was the manufacturer of the industrial shredder referenced below.

## General Allegations

11.     Decedent, Joshua P. Nickel, was at all times relevant to the matters complained of herein an employee of Defendant Allegany Scrap.

12.     Defendant Allegany Scrap is a metal recycling facility that scraps various types of metals and products containing metals.

13.     Defendant Allegany Scrap utilizes a metal shredder to shred various metal

materials, such as junk cars (the "Shredder").

14.     Upon information and belief, the Shredder was manufactured by Defendant TSC LLC and/or TSC LP and is identified as a "Model 02 Mid Section Shredder."

15.     The Shredder moves scrap metal along a conveyor belt and high-speed hammers, rotating at 450 rotations per minute, shred the metal material, which then travels from the discharge end of the shredder by conveyor belt.  Approximately 100-tons of material are processed by the facility in an hour's time.

16.     The operation of the Shredder requires multiple employees stationed at various locations throughout Defendant Allegany Scrap's facility.  Employees are necessary to operate cranes and loaders to load the Shredder with various metals and scrap on the infeed side.  One employee operates the shredder from within a protected control booth, and another employee monitors the flow of material on the conveyor belt leaving the shredder.

17.     On September 11, 2020 (the "incident date"), Decedent, Joshua P. Nickel, was working at Defendant Allegany Scrap's Cumberland plant, located at 10801 Day Road, Cumberland, MD 21502.

18.     On the incident date, Decedent, Joshua P. Nickel, was assigned to monitor the flow of the materials on the conveyor belt and was stationed on the catwalk next to the shredder's magnetic drum, approximately 76-feet away from the discharge end of the shredder.

19.     One the incident date, while within the scope of his employment, Decedent, Joshua P. Nickel was wearing all prescribed personal protective equipment.

20.     On the incident date, sometime between 12:10 and 12:21 P.M., a piece of metal shrapnel was projected and discharged from the Shredder and traveled through the air at a high rate of speed, striking Decedent, Joshua P. Nickel in the head, just above his left ear, causing

catastrophic injury.

21.     Decedent, Joshua P. Nickel became unconscious as a result of the blow to the head by the metal shrapnel.

22.     When other employees of Defendant Allegany Scrap found Decedent, Joshua P. Nickel he had a pulse and labored breathing.

23.     Employees of Defendant Allegany Scrap called emergency services and Decedent, Joshua P. Nickel was transported by ambulance to UPMC Western Maryland Hospital.

24.     Ultimately, Decedent, Joshua P. Nickel succumbed to his injuries.

## General Allegations (Deliberate Intent)

25.     Plaintiffs do hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

26.     Upon information and belief, the Shredder utilized by Defendant Allegany Scrap was put into operation in 2011.

27.     Defendant Allegany Scrap has been aware since the Shredder was put into operation that metal shrapnel is regularly and routinely projected and discharged from the shredder.

28.     Defendant Allegany Scrap has been aware since the Shredder was put into operation that the metal shrapnel projected and discharged from the Shredder flies from the Shredder at a high rate of speed and in random directions.

29.     On the date of the incident, the entire area around the shredder was littered with metal shrapnel projected and discharged from the Shredder.

30. Defendant Allegany Scrap has been aware since the Shredder was put into operation that the metal shrapnel projected and discharged from the Shredder regularly and routinely hits employees.

31. On April 8, 2019, another of Defendant Allegany Scrap's employees was injured when a piece of metal shrapnel was projected and discharged from the shredder and struck him in the back.

32. Upon information and belief, on the incident date, the metal shrapnel projected and discharged from the shredder traveled from the shredder and was allowed to be projected and discharged due to a sagging and inadequate guard.

33. Since the date of the incident, Defendant Allegany Scrap has repaired the sagging guard, added more curtains to cover the entire shredder and installed metal mesh and plexiglass around the areas where employees sort materials off the conveyor belts.

34. Since the date of the incident, Defendant Allegany Scrap has eliminated the position assigned to Decedent, Joshua P. Nickel on the incident date.

35. Defendant Allegany Scrap employed Kelly Boyle as a safety manager and Steve Bennett as the general manager of the facility. Both Safety Manager Boyle and General Manager Bennett were aware that metal shrapnel was regularly and routinely projected and discharged from the shredder and regularly and routinely struck employees.

36. Upon information and belief, many complaints were made to Defendant Allegany Scrap management regarding metal shrapnel being projected and discharged from the shredder.

37. Upon information and belief, many requests were made of Defendant Allegany Scrap management for additional safety measures to be taken to prevent employees from being injured by metal shrapnel projected and discharged from the shredder.

38.    Upon information and belief, Defendant Allegany Scrap management repeatedly informed employees who complained of safety concerns that the necessary safety provisions would cost too much money, that Defendant Allegany Scrap was unwilling to spend the money to make said safety provisions, and that being struck by metal shrapnel projected and discharged from the shredder was a regular part of their employment and a risk they must necessarily bear if they wanted to keep their employment.

39.    Upon information and belief, Defendant Allegany Scrap intentionally withheld and/or delayed seeking medical attention for Decedent, Joshua P. Nickel.

**General Allegations (Strict Liability in Tort by Manufacturer – Manufacturing Defect)**

40.    Plaintiffs do hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

41.    In addition, Plaintiffs aver that the said industrial shredder was in a defective condition, unreasonably dangerous to users of the product, including others in close proximity thereof, including the said Decedent, at the time metal shrapnel flew from the industrial shredder and fatally struck Decedent, in that there existed the herein described pre-existing defects to the industrial shredder.

42.    The said shredder was intended for use by the Purchaser without substantial change in the condition in which it was sold.

43.    The occurrence aforesaid and resulting damages were legally, directly, and proximately caused by Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; placing on the market the said industrial shredder, which was not safe for its intended use, and was defective as described herein.

8

44.     The said industrial shredder, at the time of the incident herein described, was being used in the manner intended by Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and in a manner which was reasonably foreseeable by Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

45.     Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; placed the industrial shredder upon the market in a defective condition not reasonably safe for its intended use.

**General Allegations (Strict Liability in Tort by Manufacturer – Design Defect – Inadequate Safety Features)**

46.     Plaintiffs do hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

47.     In addition, Plaintiffs aver that Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; designed the industrial shredder in a defective and unreasonably dangerous condition in that the design of the industrial shredder was such that it failed to provide adequate and sufficient deflectors, shielding, rubber curtains or other safety features to prevent metal shrapnel from flying out of the industrial shredder  and causing injury and/or death to the operator or those working in proximity to the shredder.

**General Allegations (Strict Liability in Tort by Manufacturer – Design Defect – Failure to Anticipate and Mitigate Removal of Safety Features)**

48.     Plaintiffs do hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

49.     In the alternative, Plaintiffs aver that Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; designed the industrial shredder utilizing certain deflectors, shielding, rubber curtains or other safety features to prevent metal shrapnel from flying

out of the industrial shredder and causing injury and/or death to the operator or those working in proximity to the shredder, however failed to design the industrial shredder in a manner which would anticipate and mitigate that these deflectors, shielding, rubber curtains or other safety features degrade [that's not the right word, but help me think of one] or are intentionally removed from the industrial shredder by an end-user and cause the industrial shredder to cease operations while these safety features were absent.

50.    The said industrial shredder, at the time of the incident herein described, was being operated without certain deflectors, shielding, rubber curtains or other safety features to prevent metal shrapnel from flying out of the industrial shredder and causing injury and/or death to the operator or those working in proximity to the shredder, which was reasonably foreseeable by Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

51.    Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; placed the industrial shredder upon the market in a defective condition not reasonably safe for its intended use.

**General Allegations (Negligence by Manufacturer)**

52.    Plaintiffs do hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

53.    In addition, Plaintiffs aver that at all times material, Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; owed a duty to the public, and specifically to Decedent, to manufacture, distribute, and sell safe and sound products.

54.    Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; further owed Decedent a duty to exercise reasonable care to inspect their products, including said industrial shredder, so as to discover and provide notice of any defect in the condition of their

products, including said industrial shredder, and otherwise render their products, including said shredder, reasonably safe for its intended use.

55.     Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; further owed Decedent a duty to warn Purchasers of any dangerous condition of the industrial shredder which was not obvious to the user.

56.     Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; negligently breached these duties owed to Decedent in that they:

    a.     Failed to adequately inspect the aforesaid industrial shredder before delivery;

    b.     Knew or should have known that the aforesaid industrial shredder was structurally and/or mechanically defective and not reasonably safe, and notwithstanding such knowledge failed to properly warn users thereof;

    c.     Failed to employ proper and/or adequate inspection and testing methods to discover the defective and unreasonably dangerous condition of the aforesaid industrial shredder.

    d.     Failed to exercise due care under the circumstances;

    e.     Permitted the aforesaid industrial shredder to be placed on the market, which said industrial shredder was not reasonably safe for its intended use due to the defective condition of the industrial shredder as herein described.

    f.     Caused such other defects as will become known during the course of proper discovery under the Maryland Rules of Civil Procedure.

## **General Allegations (Breach of Warranties by Manufacturer)**

57.     Plaintiffs do hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

58.     In addition, Plaintiffs aver that Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; by putting the aforesaid industrial shredder on the market, impliedly warranted that the said industrial shredder was merchantable and fit for the ordinary purposes for which it was intended.

59.     Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; also impliedly warranted to Plaintiffs and Decedents that the industrial shredder was fit for the particular purpose for which purchaser intended to use the industrial shredder, namely, as an indoor lighting device.  The purchaser relied on Defendants' skill and judgment in selecting an industrial shredder for that purpose.

60.     At all times material, Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; were manufacturing their products, including the aforesaid industrial shredder, for use by the general public, and knew that its products would be sold to consumers in various states, including Maryland, and said products would be capable of injuring consumers thereof if they were defective and not reasonably safe for their intended use, and were in an unmerchantable, unfit, and unsafe condition.

61.     Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; by putting the aforesaid industrial shredder on the market, which product was not reasonably safe for its intended use, breached the implied warranties of merchantability and fitness for the intended purpose.

62.     Decedents had no knowledge of the defective and unsafe condition of the industrial

shredder.

## Count I – Deliberate Intent – Wrongful Death Action:
Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel v.
Allegany Scrap

63.    Plaintiffs do hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

64.    Defendant Allegany Scrap had actual knowledge that metal shrapnel was projected and discharged from the shredder regularly and routinely.

65.    Defendant Allegany Scrap had actual knowledge that metal shrapnel projected and discharged from the shredder regularly and routinely struck and injured employees.

66.    Defendant Allegany Scrap had actual knowledge that repairs could be made to the shredder or that additional safety guards could be added to the shredder to prevent metal shrapnel from being projected and discharged from the shredder.

67.    Defendant Allegany Scrap chose not to that repair the shredder or add additional safety guards to the shredder to prevent metal shrapnel from being projected and discharged from the shredder because it perceived the repairs or additions to be costly.

68.    Defendant Allegany Scrap intentionally subjected its workers to conditions known to cause injury because risk of injury was a regular part of employment for Defendant Allegany Scrap.

69.    Defendant Allegany Scrap acted with deliberate intent to injure or kill Decedent, Joshua P. Nickel.

70.    As a direct and proximate result of the actions of Defendant Allegany Scrap and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, avers that she has sustained non-economic losses, including

but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, the Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant Allegany Scrap.

**Count II – Strict Liability in Tort – Manufacturing Defect – Wrongful Death Action:**
Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

71.    Plaintiffs do hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

72.    The said product was defective in condition, arising out of the failure of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; to comply with the standards of a reasonably prudent manufacturer/distributor and/or dealer at the time of and prior to the sale, and said product defect was the proximate cause of the wrongful death of Decedent, Joshua P. Nickel.

73.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, avers that she has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, the Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-

Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

<u>**Count III – Strict Liability in Tort – Design Defect (Inadequate Safety Features) – Wrongful Death Action:**</u>
Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

74.     Plaintiffs do hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

75.     The said product was defective in condition, arising out of the failure of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; to comply with the standards of a reasonably prudent manufacturer/distributor and/or dealer at the time of and prior to the sale, and said product defect was the proximate cause of the wrongful death of Decedent, Joshua P. Nickel.

76.     As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, avers that she has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, the Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

**Count IV – Strict Liability in Tort – Design Defect (Failure to Anticipate and Mitigate Removal of Safety Features) – Wrongful Death Action:**
Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

77.     Plaintiff, Linda S. Beeman does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

78.     The said product was defective in condition, arising out of the failure of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; to comply with the standards of a reasonably prudent manufacturer/distributor and/or dealer at the time of and prior to the sale, and said product defect was the proximate cause of the wrongful death of Decedent, Joshua P. Nickel.

79.     As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, avers that she has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

**<u>Count V – Negligence – Wrongful Death Action:</u>**
Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

80.     Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

81.     As a direct and proximate result of the carelessness and actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; as described above, Decedent, Joshua P. Nickel, prematurely and wrongfully perished.

82.     As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel,, avers that she has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

**<u>Count VI – Breach of Warranties – Wrongful Death Action:</u>**
Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

83.     Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

84.     As a direct and proximate result of the breach of warranties by Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; as described above, Decedent, Joshua P. Nickel, prematurely and wrongfully perished.

85.     As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, avers that she has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, Plaintiff, Linda S. Beeman, as *Surviving Mother* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

## Count VII – Deliberate Intent – Survival Action:
Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel v.
Allegany Scrap

86.     Plaintiff, Linda S. Beeman, as Personal Representative of the Estate of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

87.     Defendant Allegany Scrap had actual knowledge that metal shrapnel was projected and discharged from the shredder regularly and routinely.

88.     Defendant Allegany Scrap had actual knowledge that metal shrapnel projected and discharged from the shredder regularly and routinely struck and injured employees.

89.     Defendant Allegany Scrap had actual knowledge that repairs could be made to the

shredder or that additional safety guards could be added to the shredder to prevent metal shrapnel from being projected and discharged from the shredder.

90.     Defendant Allegany Scrap chose not to that repair the shredder or add additional safety guards to the shredder to prevent metal shrapnel from being projected and discharged from the shredder because it perceived the repairs or additions to be costly.

91.     Defendant Allegany Scrap intentionally subjected its workers to conditions known to cause injury because risk of injury was a regular part of employment for Defendant Allegany Scrap.

92.     Defendant Allegany Scrap acted with deliberate intent to injure or kill Decedent, Joshua P. Nickel.

93.     As a direct and proximate result of the actions of Defendant Allegany Scrap and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff's Decedent was required to undergo medical treatment from physicians, hospitals, and nurses, and the Estate of Joshua P. Nickel incurred expenses and costs related to this medical treatment.

94.     As a further result thereof, the Estate of Joshua P. Nickel has sustained non-economic losses including, but not limited to, pre-death fear and fright, and conscious pain and suffering or mental anguish of Decedent, Joshua P. Nickel, until death, as a result of the actions of Defendant Allegany Scrap.

95.     All the injuries, losses and damages were the direct and proximate result of the actions of Defendant Allegany Scrap without any negligence on the part of Decedent, Joshua P. Nickel, or Plaintiffs contributing thereto.

WHEREFORE, Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in

excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

**Count VIII – Strict Liability in Tort – Manufacturing Defect – Survival Action:**
Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

96.     Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

97.     The said product was defective in condition, arising out of the failure of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; to comply with the standards of a reasonably prudent manufacturer/distributor and/or dealer at the time of and prior to the sale, and said product defect was the proximate cause of the catastrophic injuries, which ultimately caused the wrongful death of Decedent, Joshua P. Nickel.

98.     As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff's Decedent was required to undergo medical treatment from physicians, hospitals, and nurses, and the Estate of Joshua P. Nickel incurred expenses and costs related to this medical treatment.

99.     As a further result thereof, the Estate of Joshua P. Nickel has sustained non-economic losses including, but not limited to, pre-death fear and fright, and conscious pain and suffering or mental anguish of Decedent, Joshua P. Nickel, until death, as a result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

100.    All the injuries, losses and damages were the direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; without any negligence on the part of Decedent, Joshua P. Nickel, or Plaintiffs contributing thereto.

WHEREFORE, Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

**Count IX – Strict Liability in Tort – Design Defect (Inadequate Safety Features) – Survival Action:**
Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

101.    Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

102.    The said product was defective in condition, arising out of the failure of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; to comply with the standards of a reasonably prudent manufacturer/distributor and/or dealer at the time of and prior to the sale, and said product defect was the proximate cause of the catastrophic injuries, which ultimately caused the wrongful death of Decedent, Joshua P. Nickel.

103.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff's Decedent was required to undergo medical treatment from physicians, hospitals, and nurses, and the Estate of Joshua P. Nickel incurred expenses and costs related to this medical treatment.

21

104.     As a further result thereof, the Estate of Joshua P. Nickel has sustained non-economic losses including, but not limited to, pre-death fear and fright, and conscious pain and suffering or mental anguish of Decedent, Joshua P. Nickel, until death, as a result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

105.     All the injuries, losses and damages were the direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; without any negligence on the part of Decedent, Joshua P. Nickel, or Plaintiffs contributing thereto.

WHEREFORE, Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

### Count X – Strict Liability in Tort – Design Defect (Failure to Anticipate and Mitigate Removal of Safety Features) – Survival Action:
Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

106.     Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

107.     The said product was defective in condition, arising out of the failure of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; to comply with the standards of a reasonably prudent manufacturer/distributor and/or dealer at the time of and prior to the sale, and said product defect was the proximate cause of the catastrophic injuries, which ultimately caused the wrongful death of Decedent, Joshua P. Nickel.

22

108.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff's Decedent was required to undergo medical treatment from physicians, hospitals, and nurses, and the Estate of Joshua P. Nickel incurred expenses and costs related to this medical treatment.

109.    As a further result thereof, the Estate of Joshua P. Nickel has sustained non-economic losses including, but not limited to, pre-death fear and fright, and conscious pain and suffering or mental anguish of Decedent, Joshua P. Nickel, until death, as a result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

110.    All the injuries, losses and damages were the direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; without any negligence on the part of Decedent, Joshua P. Nickel, or Plaintiffs contributing thereto.

WHEREFORE, Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

**Count XI – Negligence – Survival Action:**
Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

111.    Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

112.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; as described above, Decedent, Joshua P.

Nickel, sustained catastrophic injuries, which, ultimately, caused the wrongful death of Decedent, Joshua P. Nickel.

113.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff's Decedent was required to undergo medical treatment from physicians, hospitals, and nurses, and the Estate of Joshua P. Nickel incurred expenses and costs related to this medical treatment.

114.    As a further result thereof, the Estate of Joshua P. Nickel has sustained non-economic losses including, but not limited to, pre-death fear and fright, and conscious pain and suffering or mental anguish of Decedent, Joshua P. Nickel, until death, as a result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

115.    All the injuries, losses and damages were the direct and proximate result of the negligence and carelessness of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; without any negligence on the part of Decedent, Joshua P. Nickel, or the Plaintiff contributing thereto.

WHEREFORE, Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

## **Count XII – Breach of Warranties – Survival Action:**
Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

116.    Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

117.    As a direct and proximate result of the breach of warranties by Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; as described above, Decedent, Joshua P. Nickel, sustained catastrophic injuries, which, ultimately, caused the wrongful death of Decedent, Joshua P. Nickel.

118.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, Plaintiff's Decedent was required to undergo medical treatment from physicians, hospitals, and nurses, and the Estate of Joshua P. Nickel incurred expenses and costs related to this medical treatment.

119.    As a further result thereof, the Estate of Joshua P. Nickel has sustained non-economic losses including, but not limited to, pre-death fear and fright, and conscious pain and suffering or mental anguish of Decedent, Joshua P. Nickel, until death, as a result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

120.    All the injuries, losses and damages were the direct and proximate result of the negligence and carelessness of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; without any negligence on the part of Decedent, Joshua P. Nickel, or the Plaintiff contributing thereto.

WHEREFORE, Plaintiff, Linda S. Beeman, as *Personal Representative* of the Estate of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

### <u>Count XIII – Deliberate Intent – Wrongful Death Action:</u>
*Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel v.
Allegany Scrap

121.    Use Plaintiff, Karl E. Nickel, as Surviving Father of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

122.    Defendant Allegany Scrap had actual knowledge that metal shrapnel was projected and discharged from the shredder regularly and routinely.

123.    Defendant Allegany Scrap had actual knowledge that metal shrapnel projected and discharged from the shredder regularly and routinely struck and injured employees.

124.    Defendant Allegany Scrap had actual knowledge that repairs could be made to the shredder or that additional safety guards could be added to the shredder to prevent metal shrapnel from being projected and discharged from the shredder.

125.    Defendant Allegany Scrap chose not to that repair the shredder or add additional safety guards to the shredder to prevent metal shrapnel from being projected and discharged from the shredder because it perceived the repairs or additions to be costly.

126.    Defendant Allegany Scrap intentionally subjected its workers to conditions known to cause injury because risk of injury was a regular part of employment for Defendant Allegany Scrap.

127.    Defendant Allegany Scrap acted with deliberate intent to injure or kill Decedent,

26

Joshua P. Nickel.

128.     As a direct and proximate result of the actions of Defendant Allegany Scrap and the wrongful death of Decedent, Joshua P. Nickel, as described above, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, avers that he has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant Allegany Scrap.

### Count XIV – Strict Liability in Tort – Manufacturing Defect – Wrongful Death Action:
*Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

129.     *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

130.     The said product was defective in condition, arising out of the failure of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; to comply with the standards of a reasonably prudent manufacturer/distributor and/or dealer at the time of and prior to the sale, and said product defect was the proximate cause of the wrongful death of Decedent, Joshua P. Nickel.

131.     As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P.

Nickel, avers that she has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

**Count XV – Strict Liability in Tort (Inadequate Safety Features) – Wrongful Death Action:**
Use Plaintiff, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

132.    *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

133.    The said product was defective in condition, arising out of the failure of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; to comply with the standards of a reasonably prudent manufacturer/distributor and/or dealer at the time of and prior to the sale, and said product defect was the proximate cause of the wrongful death of Decedent, Joshua P. Nickel.

134.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, avers that she has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

### Count XVI – Strict Liability in Tort – Design Defect (Failure to Anticipate and Mitigate Removal of Safety Features) – Wrongful Death Action:
Use Plaintiff, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

135.    *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

136.    The said product was defective in condition, arising out of the failure of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; to comply with the standards of a reasonably prudent manufacturer/distributor and/or dealer at the time of and prior to the sale, and said product defect was the proximate cause of the wrongful death of Decedent, Joshua P. Nickel.

137.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, avers that she has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-

Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

### Count XVII – Negligence – Wrongful Death Action:
Use Plaintiff, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

138.    *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

139.    As a direct and proximate result of the carelessness and actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; as described above, Decedent, Joshua P. Nickel, prematurely and wrongfully perished.

140.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, avers that he has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

**Count XVIII – Breach of Warranties – Wrongful Death Action:**
*Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel v.
TSC, LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso

141.    *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, does hereby repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully incorporated herein.

142.    As a direct and proximate result of the breach of warranties by Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; as described above, Decedent, Joshua P. Nickel, prematurely and wrongfully perished.

143.    As a direct and proximate result of the actions of Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso; and the wrongful death of Decedent, Joshua P. Nickel, as described above, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, avers that she has sustained non-economic losses, including but not limited to, past and future mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, attention, advice, and counsel.

WHEREFORE, *Use Plaintiff*, Karl E. Nickel, as *Surviving Father* of Joshua P. Nickel, brings this action and claims an amount to be determined by this Court, but in excess of Seventy-Five Thousand Dollars ($75,000.00) as damages against Defendant TSC LLC; and/or TSC LP; and/or Newell Recycling; and/or Newell El Paso.

Respectfully submitted,

_____
          /s/
Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman  AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700  F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through Counsel, hereby demand a trial by jury in this matter.

_____
          /s/
Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman  AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700  F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

E-FILED; Allegany Circuit Court
Docket: 9/7/2023 1:02 PM; Submission: 9/7/2023 1:02 PM
Envelope: 13853289



C-01-CV-23-000317

# STATE OF MARYLAND
# LETTERS OF ADMINISTRATION

### ESTATE NO. 37946

I certify that administration of the Estate of

**JOSHUA P. NICKEL**

was granted on the ___17th___ day of _____ FEBRUARY, 2021 _____,

to _____ LINDA S. BEEMAN _____

as personal representative(s) and the appointment is in effect

this ___17th___ day of ___FEBRUARY___ ___2021___ ,

☐ Will probated _____
        (date)

☑ Intestate estate

_Mary Beth Pirolozzi_

MARY BETH PIROLOZZI

**Register of Wills for**

ALLEGANY COUNTY

**VALID ONLY IF SEALED WITH THE SEAL OF THE COURT OR THE REGISTER**

RW1120

ROWNET
11/2009

WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES
BUREAU FOR PUBLIC HEALTH - VITAL REGISTRATION OFFICE
PHYSICIAN'S / MEDICAL EXAMINER'S CERTIFICATE OF DEATH
350 CAPITOL STREET, ROOM 165, CHARLESTON, WV 25301

017049
STATE FILE NUMBER

| 1. DECEDENT'S LEGAL NAME (Include AKA's if any) (First, Middle, Last) | | 2. SEX | 3. SOCIAL SECURITY NUMBER |
|---|---|---|---|
| Joshua Paul Nickel | | M | |

| 4a. AGE (Last Birthday) (Years) 30 | 4b. IF UNDER 1 YEAR Months Days | 4c. IF UNDER 1 DAY Hours Minutes | 5. DATE OF BIRTH (MM/DD/YYYY) Jan. 1, 1990 | 6. BIRTHPLACE (City and State or Foreign Country) Cumberland, MD |
|---|---|---|---|---|

| 7a. RESIDENCE (STATE) Maryland | 7b. COUNTY Allegany | 7c. CITY OR TOWN Frostburg |
|---|---|---|

| 7d. STREET AND NUMBER 19320 Paradise Hill Lane | 7e. APT. NO. | 7f. ZIP CODE 21532 | 7g. INSIDE CITY LIMITS? ☐ Yes ☐ No |
|---|---|---|---|

| 7h. 2nd LEGAL RESIDENCE - PROBATE USE ONLY - OPT. | STREET & NUMBER | APT. NO. | CITY OR TOWN | COUNTY | STATE | ZIP |
|---|---|---|---|---|---|---|

| 8. EVER IN US ARMED FORCES? ☐ Yes ☒ No | 9. MARITAL STATUS AT TIME OF DEATH ☐ Married ☐ Married, but separated ☐ Widowed ☐ Divorced ☒ Never Married ☐ Unknown | 10. SURVIVING SPOUSE'S NAME (Give name prior to first marriage.) |
|---|---|---|

| 11. FATHER'S / PARENT 1'S NAME PRIOR TO FIRST MARRIAGE (First, Middle, Last) Karl Edward Nickel | 12. MOTHER'S / PARENT 2'S NAME PRIOR TO FIRST MARRIAGE (First, Middle, Last) Linda Sue Beeman |
|---|---|

| 13a. INFORMANT'S NAME Karl Edward Nickel | 13b. RELATIONSHIP TO DECEDENT Father | 13c. MAILING ADDRESS (Street and Number, City, State, Zip Code) 926 National Highway, Apt. 9  LaVale,MD  21502 |
|---|---|---|

**14. PLACE OF DEATH (Check only one: see Instructions)**

| IF DEATH OCCURRED IN A HOSPITAL: | IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: |
|---|---|
| ☐Inpatient ☐ Emergency Room/Outpatient ☐ Dead on Arrival | ☐ Hospice facility ☐ Nursing home/Long term care facility ☐ Decedent's home ☐ Other (Specify): |

| 15. FACILITY NAME (If not institution, give street & number) Ruby Memorial Hospital | 16. CITY OR TOWN, STATE, AND ZIP CODE Morgantown, WV 26505 | 17. COUNTY OF DEATH Monagalia |
|---|---|---|

| 18. METHOD OF DISPOSITION ☐ Burial ☒ Cremation ☐ Entombment ☐ Donation ☐ Removal from State ☐ Other (Specify): | 19. PLACE OF DISPOSITION (Name of cemetery, crematory, other place - location in Box 20.) Smith Funeral Home Crematory |
|---|---|

| 20. DISPOSITION LOCATION (City, State) Keyser, WV | 21. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY Durst Funeral Home  57 Frost Avenue  Frostburg, MD  21532 |
|---|---|

| 22. SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH Brian Neth | 23. LICENSE NUMBER (Of License) WV FD-1547 |
|---|---|

| ITEMS 24-28 MUST BE COMPLETED BY PERSON WHO PRONOUNCES OR CERTIFIES DEATH | 24. DATE PRONOUNCED DEAD (MM/DD/YYYY) 9/11/2020 | 25. TIME PRONOUNCED DEAD 1052 |
|---|---|---|

| 26. SIGNA | (Only when pronouncer IS NOT also the certifier.) | 27. DATE SIGNED (MM/DD/YYYY) |
|---|---|---|

| 28. ACTUAL OR PRESUMED DATE OF DEATH (MM/DD/YYYY) 9/11/2020 | 29. ACTUAL OR PRESUMED TIME OF DEATH Late AM | 30. WAS MEDICAL EXAMINER OR CORONER CONTACTED? ☐ No ☒ Yes | IF YES, MEDICAL EXAMINER CASE # 20-5880 |
|---|---|---|---|

**CAUSE OF DEATH**

31. PART I. Enter the chain of events – diseases, injuries, or complications that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing etiology. Enter only one cause on a line. Add additional lines if necessary.

| | | Approximate Interval Between Onset and Death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. Multiple blunt force injuries of the head | Due to (or as a consequence of): | Hours |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | b. Due to (or as a consequence of): | |
| | c. Due to (or as a consequence of): | |
| | d. | |

| PART II. Enter other significant conditions contributing to death but not resulting in the underlying cause in PART I. | 32a. WAS AN AUTOPSY PERFORMED? ☐ Yes ☒ No | 32b. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☐ Yes ☐ No |
|---|---|---|

| 33. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ Probably ☒ No ☐ Unknown | 34. IF FEMALE ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within the last year | 35a. CAUSE/MANNER PENDING? ☐ Pending Investigation ☐ Date Amended ____ See 35b. for Final Manner of Death | 35b. FINAL MANNER OF DEATH ☐ Natural ☒ Accident ☐ Suicide ☐ Homicide ☐ Could not be determined |
|---|---|---|---|

| 36a. DATE OF INJURY (MM/DD/YYYY) 09/10/20 | 36b. TIME OF INJURY Early AM | 36c. PLACE OF INJURY (e.g., Decedent's home, construction site, restaurant, office building, wooded area.) Allegany Scrap Metal | 36d. INJURY AT WORK? ☒ Yes ☐ No |
|---|---|---|---|

| 36e. LOCATION OF INJURY: Street & Number 10814 Day Road, SE | Apt. No. | City or Town: Cumberland | State or Country: MD | Zip Code 21501 |
|---|---|---|---|---|

| 36f. DESCRIBE HOW INJURY OCCURRED: Decedents head impacted by a piece of metal. | 36g. IF TRANSPORTATION INJURY: ROLE: ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify) | SEATBELT RESTRAINT STATUS: ☐ Restrained ☐ No restraint ☐ Unknown HELMET STATUS: ☐ Helmet ☐ No helmet ☐ Unknown |
|---|---|---|

37a. CERTIFIER (Check only one):
☐ Certifying Physician or Qualified APRN / PA - To the best of my knowledge, death occurred due to the cause(s) and manner stated.
☐ Pronouncing & Certifying Physician or Qualified APRN / PA - To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner stated.
☒ Medical Examiner/Coroner - On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated.

| Signature of Certifier  P Kubiczek | Date Certified 9/15/20 |
|---|---|

| 37b. PRINT NAME, ADDRESS, AND ZIP CODE OF PERSON CERTIFYING TO CAUSE OF DEATH (Item 31.) Piotr Kubiczek, FDCME, OCME Main | 37c. TITLE OF CERTIFIER MD |
|---|---|

| 38. FOR OFFICIAL REGISTRAR USE ONLY- SIGNATURE OF REGISTRAR ► Jela Walker | 39. FOR OFFICIAL REGISTRAR USE ONLY- DATE FILED SEP 30 2020 |
|---|---|

STATE/COUNT ORIGINAL
FORM VS-002
(Rev. 4/2019)

# STATE OF WEST VIRGINIA

G0096163

G0096163

Oct 1, 2020

Date Certified:

This is to certify that this document is a true and accurate reproduction of an official record, or the facts abstracted from an official record, on file with:

Vital Statistics
Bureau for Public Health
West Virginia Department of Health and Human Resources
Charleston, West Virginia.



Matthew R. Wickert
State Registrar

**The certified copy or information appears on the reverse side on multicolor surface. Document contains heat-sensitive stamp and watermark.** 

**Do not accept without verifying watermark.**

**WARNING!**
**It is a crime punishable by fine and imprisonment to counterfeit or alter this certificate or to use the vital statistics record of another person for deceptive purposes.**



WV

WV

E-FILED; Allegany Circuit Court
Docket: 9/7/2023 1:02 PM; Submission: 9/7/2023 1:02 PM
Envelope: 13853289

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.*

      **Plaintiffs,**

                                                  C-01-CV-23-000317

vs.                                    Civil Action No.: _____

**ALLEGANY SCRAP, INC.,** *et al.*

      **Defendants.**

---

### REQUEST TO ISSUE SUMMONS

---

MADAME CLERK:

Please issue a *Writ of Summons* in the above-referenced matter for each of the following

Defendants:

1.      **ALLEGANY SCRAP, INC.**
        2001 Kenilworth Avenue
        Capital Heights, MD 20743

            *Serve On*:
            CSC Lawyers Incorporating Service Co.
            7 St. Paul Street
            Suite 820
            Baltimore, MD 21202

2.      **THE SHREDDER CO LLC**
        7380 Doniphan Drive
        Canutillo, Texas 79835

            *Serve On*:
            Alton Scott Newell,
            *Registered Agent*
            6800 Market Avenue
            El Paso, TX 79915-1014

3.      **THE SHREDDER CO, L.P.**
        6800 Market Avenue
        El Paso, TX 79915-1014

            *Serve On*:
            Alton Scott Newell,
            *Registered Agent*
            6800 Market Avenue
            El Paso, TX 79915-1014

4.      **NEWELL RECYCLING**
        **EQUIPMENT, LLC**
        1020 S Mesa Hills Dr.
        Apt. 5205
        El Paso, TX 79912-5121

                *Serve On*:
                Alton Scott Newell, Jr.
                1020 S Mesa Hills Dr.
                Apt. 5205
                El Paso, TX 79912-5121

5.      **NEWELL RECYCLING**
        **COMPANY OF EL PASO, L.P.**
        P.O. Box 2867
        Fredericksburg, TX 78624-1927

                *Serve On*:
                Alton Scott Newell, Jr.
                *Registered Agent*
                6800 Market Avenue


Each *Writ of Summons* should be returned electronically through the MDEC System to

undersigned counsel.


                                Respectfully submitted,


                                _____/s/_____
                                Jason C. Buckel, AIS No.: 9612170120
                                T. Lee Beeman  AIS No.: 1412160059
                                Buckel, Levasseur, Pillai & Beeman, LLC.
                                206 Washington Street
                                Cumberland, Maryland 21502
                                P: (301) 759-3700  F: (301) 722-0334
                                blplaw@atlanticbbn.net
                                Lbeeman@blpblaw.com
                                *Attorneys for Plaintiff*

E-FILED; Allegany Circuit Court
Docket: 9/7/2023 1:02 PM; Submission: 9/7/2023 1:02 PM
Envelope: 13853289

IN THE CIRCUIT COURT FOR Allegany County
(City/County)

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS
*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).
   *Defendant:* You must file an Information Report as required by Rule 2-323(h).
***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

| | |
|---|---|
| **FORM FILED BY:** ☒ PLAINTIFF  ☐ DEFENDANT | CASE NUMBER C-01-CV-23-000317 |
| | (Clerk to insert) |

**CASE NAME:** Linda Beeman, et al                    vs.   Allegany Scrap, Inc., et al

**PARTY'S NAME:** Linda Beeman ___Plaintiff___              PHONE: see counsel

**PARTY'S ADDRESS:** 12750 Vale Summit Road SW Frostburg, MD 21532

**PARTY'S E-MAIL:** see counsel

If represented by an attorney:

**PARTY'S ATTORNEY'S NAME:** Jason C. Buckel & T. Lee Beeman, Jr.    PHONE: 301-759-3700

**PARTY'S ATTORNEY'S ADDRESS:** 206 Washington Street, Cumberland, MD 21502

**PARTY'S ATTORNEY'S E-MAIL:** Lbeeman@blpblaw.com

**JURY DEMAND?** ☒ Yes  ☐ No

**RELATED CASE PENDING?** ☐ Yes  ☒ No  If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours  4  days

### PLEADING TYPE

**New Case:** ☒ Original      ☐ Administrative Appeal    ☐ Appeal
**Existing Case:** ☐ Post-Judgment  ☐ Amendment
*If filing in an existing case,* skip Case Category/ Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt: _____
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☒ Negligence
☐ Nuisance
☐ Premises Liability
☒ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☒ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
☐ Commercial
☐ Residential
☐ Currency or Vehicle
☐ Deed of Trust
☐ Land Installments
☐ Lien
☐ Mortgage
☐ Right of Redemption
☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. – Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

CC-DCM-002 (Rev. 12/2022)          Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☒ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☒ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☐ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☒ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☐ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.     ☐ Liability is not conceded, but is not seriously in dispute.     ☒ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000     ☐ $10,000 - $30,000     ☐ $30,000 - $100,000     ☒ Over $100,000

☐ Medical Bills $ _____     ☐ Wage Loss $ _____     ☐ Property Damages $ _____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| A. Mediation | ☒ Yes ☐ No | C. Settlement Conference | ☒ Yes ☐ No |
|---|---|---|---|
| B. Arbitration | ☐ Yes ☒ No | D. Neutral Evaluation | ☐ Yes ☒ No |

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL.***

### *(Case will be tracked accordingly)*

☐ 1/2 day of trial or less          ☐ 3 days of trial time

☐ 1 day of trial time               ☒ More than 3 days of trial time

☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited -** Trial within 7 months of          ☒ **Standard -** Trial within 18 months of

Defendant's response                              Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response        ☒ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☐ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ☐ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

09/07/2023
_____
Date

206 Washington Street
_____
Address

Cumberland          MD          21502
_____
City          State          Zip Code

/s/ T. Lee Beeman, Jr.          1412160059
_____
Signature of Attorney / Party          Attorney Number

T. Lee Beeman, Jr.
_____
Printed Name



**CIRCUIT COURT FOR ALLEGANY COUNTY**
**MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** ALLEGANY SCRAP, INC.
2001 KENILWORTH AVENUE
CAPITAL HEIGHTS, MD 20743

| | |
|---|---|
| **Case Number:** | C-01-CV-23-000317 |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  ALLEGANY SCRAP, INC.

_____ ID# _____ of the _____
      Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
                                              Name of person served

on _____ at _____
            Date of service                              Location of service

_____ by _____ with the following:
                                              Manner of service

- ☐ Summons                                    ☐ Counter-Complaint
- ☐ Complaint                                  ☐ Domestic Case Information Report
- ☐ Motions          _____         ☐ Financial Statement
- ☐ Petition and Show Cause Order              ☐ Interrogatories
- ☐ Other _____
                          Please specify

(2) Was unable to serve because:
- ☐ Moved left no forwarding address          ☐ No such address
- ☐ Address not in jurisdiction               ☐ Other _____
                                                              Please specify

Sheriff fee: $ _____  ☐ waived by _____

            _____   _____
                    Date                    Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** NEWELL RECYCLING COMPANY OF EL PASO, L.P.
P.O. BOX 2867
FREDERICKSBURG, TX 78624-1927

|                                    |                      |
|------------------------------------|----------------------|
| **Case Number:**                   | C-01-CV-23-000317    |
| **Other Reference Number(s):**     |                      |
| **Child Support Enforcement Number:** |                   |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*

Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

### SHERIFF'S RETURN
### (please print)

To: NEWELL RECYCLING COMPANY OF EL PASO, L.P.

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                              Location of service

_____ by _____ with the following:
                                  Manner of service

☐ Summons                                    ☐ Counter-Complaint

☐ Complaint                                   ☐ Domestic Case Information Report

☐ Motions  _____   ☐ Financial Statement

☐ Petition and Show Cause Order        ☐ Interrogatories

☐ Other _____
Please specify

(2) Was unable to serve because:

☐ Moved left no forwarding address     ☐ No such address

☐ Address not in jurisdiction                ☐ Other _____
                                                                    Please specify

Sheriff fee: $ _____   ☐ waived by _____

_____   _____
Date                              Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:

1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

**CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Clerk of Court: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** NEWELL RECYCLING EQUIPMENT, LLC
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121

| | |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*

Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**
Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
**(please print)**

To:  NEWELL RECYCLING EQUIPMENT, LLC

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service              Location of service

_____ by _____ with the following:
Manner of service

- ☐ Summons
- ☐ Complaint
- ☐ Motions
- ☐ Petition and Show Cause Order
- ☐ Other _____
Please specify

- ☐ Counter-Complaint
- ☐ Domestic Case Information Report
- ☐ Financial Statement
- ☐ Interrogatories

(2) Was unable to serve because:
- ☐ Moved left no forwarding address
- ☐ Address not in jurisdiction
- ☐ No such address
- ☐ Other _____
Please specify

Sheriff fee: $ _____ ☐ waived by _____

_____ _____
Date              Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835

| | |
|---|---|
| **Case Number:** | C-01-CV-23-000317 |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**
Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  THE SHREDDER CO LLC

_____ ID# _____ of the _____
            Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
                                        Name of person served

on _____ at _____
            Date of service                                      Location of service

_____ by _____ with the following:
                                              Manner of service

- [ ] Summons
- [ ] Complaint
- [ ] Motions
- [ ] Petition and Show Cause Order
- [ ] Other _____
                    Please specify

- [ ] Counter-Complaint
- [ ] Domestic Case Information Report
- [ ] Financial Statement
- [ ] Interrogatories

(2) Was unable to serve because:
- [ ] Moved left no forwarding address
- [ ] Address not in jurisdiction
- [ ] No such address
- [ ] Other _____
                            Please specify

Sheriff fee: $ _____    [ ] waived by _____

_____    _____
        Date                            Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** THE SHREDDER CO L.P.
6800 MARKET AVENUE
EL PASO, TX 79915-1014

| | |
|---|---|
| **Case Number:** | C-01-CV-23-000317 |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Circuit Court for Allegany County
Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

# SHERIFF'S RETURN
## (please print)

To:  THE SHREDDER CO L.P.

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                                  Location of service

_____ by _____ with the following:
Manner of service

☐ Summons                              ☐ Counter-Complaint
☐ Complaint                            ☐ Domestic Case Information Report
☐ Motions      _____     ☐ Financial Statement
☐ Petition and Show Cause Order        ☐ Interrogatories
☐ Other _____
Please specify

(2) Was unable to serve because:
☐ Moved left no forwarding address     ☐ No such address
☐ Address not in jurisdiction          ☐ Other _____
Please specify

Sheriff fee: $ _____     ☐ waived by _____

_____     _____
Date                          Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

Case 1:25-cv-01012-JRC Document 1-1 Filed 06/12/25 Page 52 of 737



**CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** ALLEGANY SCRAP, INC.
2001 KENILWORTH AVENUE
CAPITAL HEIGHTS, MD 20743

Case Number:      C-01-CV-23-000317
Other Reference Number(s):
Child Support Enforcement Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  ALLEGANY SCRAP, INC.

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                                        Location of service

_____ by _____ with the following:
Manner of service

☐ Summons                                    ☐ Counter-Complaint

☐ Complaint                                   ☐ Domestic Case Information Report

☐ Motions   _____   ☐ Financial Statement

☐ Petition and Show Cause Order        ☐ Interrogatories

☐ Other _____
Please specify

(2) Was unable to serve because:

☐ Moved left no forwarding address      ☐ No such address

☐ Address not in jurisdiction            ☐ Other _____
Please specify

Sheriff fee: $ _____  ☐ waived by _____

_____  _____
Date                              Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

E-FILED; Allegany Circuit Court
Case 1:25-cv-01012-JLB Document 1-1 Filed 06/13/25 Page 54 of 737
Docket: 9/7/2023 1:48 PM; Submission: 9/7/2023 1:48 PM
Envelope: 13854456



**CIRCUIT COURT FOR ALLEGANY COUNTY**
**MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Assignment Office: (301) 777-5921
Fax: (301) 777-2100
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** NEWELL RECYCLING COMPANY OF EL PASO, L.P.
P.O. BOX 2867
FREDERICKSBURG, TX 78624-1927

|  |  |
|---|---|
| Case Number: | C-01-CV-23-000317 |
| Other Reference Number(s): | |
| Child Support Enforcement Number: | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD  21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
    Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
    Personal attendance in court on the day named is NOT required.

Instructions for Service:

1.  This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2.  Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3.  Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4.  If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**

**Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00**

## SHERIFF'S RETURN
### (please print)

To:  NEWELL RECYCLING COMPANY OF EL PASO, L.P.

_____    ID# _____    of the _____
            Serving Sheriff's Name

County Sheriff's office present to the court that I:

    (1) Served _____
                                        Name of person served

on _____    at _____
            Date of service                                        Location of service

_____    by _____    with the following:
                                            Manner of service

☐ Summons                                    ☐ Counter-Complaint

☐ Complaint                                    ☐ Domestic Case Information Report

☐ Motions  _____    ☐ Financial Statement

☐ Petition and Show Cause Order        ☐ Interrogatories

☐ Other _____
                        Please specify

    (2) Was unable to serve because:

        ☐ Moved left no forwarding address    ☐ No such address

        ☐ Address not in jurisdiction            ☐ Other _____
                                                                                    Please specify

Sheriff fee: $ _____    ☐ waived by _____

_____    _____
            Date                            Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:

1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

E-FILED; Allegany Circuit Court
Case 1:25-cv-01012-RJC Document 1-1 Filed 06/12/25 Page 56 of 737
Docket: 9/7/2023 1:48 PM; Submission: 9/7/2023 1:48 PM
Envelope: 13854456



**CIRCUIT COURT FOR ALLEGANY COUNTY MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** NEWELL RECYCLING EQUIPMENT, LLC
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121

| | |
|---|---|
| Case Number: | C-01-CV-23-000317 |
| Other Reference Number(s): | |
| Child Support Enforcement Number: | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*

Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
    Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
    Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**
Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

# SHERIFF'S RETURN
## (please print)

To: NEWELL RECYCLING EQUIPMENT, LLC

_____   ID# _____   of the _____
      Serving Sheriff's Name

County Sheriff's office present to the court that I:

    (1) Served _____
                                         Name of person served

on _____   at _____
          Date of service                           Location of service

_____   by _____   with the following:
                                      Manner of service

- [ ] Summons
- [ ] Complaint
- [ ] Motions
- [ ] Petition and Show Cause Order
- [ ] Other _____

- [ ] Counter-Complaint
- [ ] Domestic Case Information Report
- [ ] Financial Statement
- [ ] Interrogatories

                                   Please specify

(2) Was unable to serve because:
- [ ] Moved left no forwarding address
- [ ] Address not in jurisdiction

- [ ] No such address
- [ ] Other _____

                                   Please specify

Sheriff fee: $ _____   [ ] waived by _____

_____   _____
          Date                   Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

E-FILED; Allegany Circuit Court
Docket: 9/7/2023 1:48 PM; Submission: 9/7/2023 1:48 PM
Envelope: 13854456



**CIRCUIT COURT FOR ALLEGANY COUNTY
MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835

<table>
<tr><td>Case Number:</td><td>C-01-CV-23-000317</td></tr>
<tr><td>Other Reference Number(s):</td><td></td></tr>
<tr><td>Child Support Enforcement Number:</td><td></td></tr>
</table>

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

### WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD  21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Circuit Court for Allegany County

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  THE SHREDDER CO LLC

_____     ID# _____     of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____  at _____
Date of service                Location of service

_____  by _____  with the following:
Manner of service

☐ Summons                          ☐ Counter-Complaint
☐ Complaint                        ☐ Domestic Case Information Report
☐ Motions    _____        ☐ Financial Statement
☐ Petition and Show Cause Order    ☐ Interrogatories
☐ Other _____
Please specify

(2) Was unable to serve because:
☐ Moved left no forwarding address     ☐ No such address
☐ Address not in jurisdiction          ☐ Other _____
Please specify

Sheriff fee: $ _____     ☐ waived by _____

_____     _____
Date                  Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

Case 1:25-cv-01012-JRR Document 1-1 Filed 06/13/25 Page 60 of 737

E-FILED; Allegany Circuit Court
Docket: 9/7/2023 1:48 PM; Submission: 9/7/2023 1:48 PM
Envelope: 13854456



**CIRCUIT COURT FOR ALLEGANY COUNTY MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Clerk of Court: (301) 777-5923
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** THE SHREDDER CO L.P.
6800 MARKET AVENUE
EL PASO, TX 79915-1014

| | |
|---|---|
| Case Number: | C-01-CV-23-000317 |
| Other Reference Number(s): | |
| Child Support Enforcement Number: | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 9/7/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

### SHERIFF'S RETURN
### (please print)

To:  THE SHREDDER CO L.P.

_____  ID# _____  of the _____
    Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
                                    Name of person served

on _____  at _____
        Date of service                              Location of service

_____  by _____  with the following:
                                        Manner of service

☐ Summons                                    ☐ Counter-Complaint
☐ Complaint          _____         ☐ Domestic Case Information Report
☐ Motions                                    ☐ Financial Statement
☐ Petition and Show Cause Order              ☐ Interrogatories
☐ Other  _____
                        Please specify

(2) Was unable to serve because:
        ☐ Moved left no forwarding address      ☐ No such address
        ☐ Address not in jurisdiction           ☐ Other _____
                                                            Please specify

Sheriff fee: $ _____      ☐ waived by _____

            _____  _____
                Date              Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

E-FILED; Allegany Circuit Court
Docket: 12/26/2023 1:28 PM; Submission 12/26/2023 1:28 PM
Envelope: 14915508

# IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.*

      **Plaintiffs,**

vs.                        Civil Action No.: **C-01-CV-23-000317**

**ALLEGANY SCRAP, INC.,** *et al.*

      **Defendants.**

## REQUEST TO RE-ISSUE SUMMONS

MADAME CLERK:

Please re-issue a *Writ of Summons* in the above-referenced matter for each of the

following Defendants:

1.    **ALLEGANY SCRAP, INC.**
    2001 Kenilworth Avenue
    Capital Heights, MD 20743

        *Serve On*:
        CSC Lawyers Incorporating Service Co.
        7 St. Paul Street
        Suite 820
        Baltimore, MD 21202

2.    **THE SHREDDER CO LLC**
    7380 Doniphan Drive
    Canutillo, Texas 79835

        *Serve On*:
        Alton Scott Newell,
        *Registered Agent*
        6800 Market Avenue
        El Paso, TX 79915-1014

3.    **THE SHREDDER CO, L.P.**
    6800 Market Avenue
    El Paso, TX 79915-1014

        *Serve On*:
        Alton Scott Newell,
        *Registered Agent*
        6800 Market Avenue
        El Paso, TX 79915-1014

4.    **NEWELL RECYCLING
      EQUIPMENT, LLC**
      1020 S Mesa Hills Dr.
      Apt. 5205
      El Paso, TX 79912-5121

            *Serve On*:
            Alton Scott Newell, Jr.
            1020 S Mesa Hills Dr.
            Apt. 5205
            El Paso, TX 79912-5121

5.    **NEWELL RECYCLING
      COMPANY OF EL PASO, L.P.**
      P.O. Box 2867
      Fredericksburg, TX 78624-1927

            *Serve On*:
            Alton Scott Newell, Jr.
            *Registered Agent*
            6800 Market Avenue


Each *Writ of Summons* should be returned electronically through the MDEC System to

undersigned counsel.


                              Respectfully submitted,


                              _____/s/_____
                              Jason C. Buckel, AIS No.: 9612170120
                              T. Lee Beeman  AIS No.: 1412160059
                              Buckel, Levasseur, Pillai & Beeman, LLC.
                              206 Washington Street
                              Cumberland, Maryland 21502
                              P: (301) 759-3700  F: (301) 722-0334
                              blplaw@atlanticbbn.net
                              Lbeeman@blpblaw.com
                              *Attorneys for Plaintiff*

**CIRCUIT COURT FOR ALLEGANY COUNTY,**
**MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** ALLEGANY SCRAP, INC.
2001 KENILWORTH AVENUE
CAPITAL HEIGHTS, MD 20743
Serve On:
CSC Lawyers Incorporating Service Co.
7 St. Paul Street
Suite 820
Baltimore, MD 21202

|  |  |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*

Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
    Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
    Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

Circuit Court for Allegany County

**Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00**

4.  If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Circuit Court for Allegany County

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  ALLEGANY SCRAP, INC.

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                          Location of service

_____ by _____ with the following:
Manner of service

- ☐ Summons
- ☐ Complaint
- ☐ Motions
- ☐ Petition and Show Cause Order
- ☐ Other _____
Please specify

- ☐ Counter-Complaint
- ☐ Domestic Case Information Report
- ☐ Financial Statement
- ☐ Interrogatories

(2) Was unable to serve because:
- ☐ Moved left no forwarding address
- ☐ Address not in jurisdiction
- ☐ No such address
- ☐ Other _____
Please specify

Sheriff fee: $ _____  ☐ waived by _____

_____  _____
Date                          Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

**CC-CV-032 (Rev. 11/23/2020)**          **Page 3 of 3**          12/26/2023 2:29 PM

**CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** NEWELL RECYCLING COMPANY OF EL PASO, L.P.
P.O. BOX 2867
FREDERICKSBURG, TX 78624-1927
Serve On:
Alton Scott Newell, Jr.
Registered Agent
6800 Market Avenue
El Paso, TX 79915-1014

| | |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

**Circuit Court for Allegany County**
**Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00**

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  NEWELL RECYCLING COMPANY OF EL PASO, L.P.

_____     ID# _____     of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

    (1) Served _____
                                                                      Name of person served

on _____     at _____
          Date of service                               Location of service

_____     by _____     with the following:
                                        Manner of service

- [ ] Summons
- [ ] Complaint
- [ ] Motions
- [ ] Petition and Show Cause Order
- [ ] Other _____
                        Please specify

- [ ] Counter-Complaint
- [ ] Domestic Case Information Report
- [ ] Financial Statement
- [ ] Interrogatories

    (2) Was unable to serve because:
        - [ ] Moved left no forwarding address    - [ ] No such address
        - [ ] Address not in jurisdiction    - [ ] Other _____
                                                          Please specify

Sheriff fee: $ _____     - [ ] waived by _____

_____     _____
          Date                        Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

**CIRCUIT COURT FOR ALLEGANY COUNTY**
**MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** NEWELL RECYCLING EQUIPMENT, LLC
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121
Serve On:
Alton Scott Newell, Jr.
1020 S Mesa Hills Dr.
Apt. 5205
El Paso, TX 79912-5121

|  |  |
|---|---|
| **Case Number:** | C-01-CV-23-000317 |
| **Other Reference Number(s):** |  |
| **Child Support Enforcement Number:** |  |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

Circuit Court for Allegany County
Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**
Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  NEWELL RECYCLING EQUIPMENT, LLC

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                              Location of service

_____ by _____ with the following:
Manner of service

- [ ] Summons
- [ ] Complaint
- [ ] Motions
- [ ] Petition and Show Cause Order
- [ ] Other _____
Please specify

- [ ] Counter-Complaint
- [ ] Domestic Case Information Report
- [ ] Financial Statement
- [ ] Interrogatories

(2) Was unable to serve because:
- [ ] Moved left no forwarding address
- [ ] Address not in jurisdiction
- [ ] No such address
- [ ] Other _____
Please specify

Sheriff fee: $ _____ [ ] waived by _____

_____     _____
Date                                      Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND

30 Washington Street
Cumberland, Maryland  21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  THE SHREDDER CO L.P.
6800 MARKET AVENUE
EL PASO, TX 79915-1014
Serve On:
Alton Scott Newell
Registered Agent
6800 Market Avenue
El Paso, TX 79915-1014

**Case Number:**    C-01-CV-23-000317
**Other Reference Number(s):**
**Child Support Enforcement Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD  21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*

Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

Circuit Court for Allegany County
**Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00**

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Circuit Court for Allegany County
Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  THE SHREDDER CO L.P.

_____ ID# _____ of the _____
        Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
                                              Name of person served

on _____ at _____
         Date of service                                        Location of service

_____ by _____ with the following:
                                              Manner of service

☐ Summons                                    ☐ Counter-Complaint
☐ Complaint                                   ☐ Domestic Case Information Report
☐ Motions    _____          ☐ Financial Statement
☐ Petition and Show Cause Order               ☐ Interrogatories
☐ Other _____
                        Please specify

(2) Was unable to serve because:
        ☐ Moved left no forwarding address        ☐ No such address
        ☐ Address not in jurisdiction             ☐ Other _____
                                                                  Please specify

Sheriff fee: $ _____    ☐ waived by _____

                      _____    _____
                              Date                Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

CIRCUIT COURT FOR ALLEGANY COUNTY,
**MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk's Office (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835
Serve On:
Alton Scott Newell, Registered Agent
6800 Market Avenue
El Paso, TX 79915-1014

|  |  |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Circuit Court for Allegany County

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  THE SHREDDER CO LLC

_____  ID# _____  of the _____

        Serving Sheriff's Name

County Sheriff's office present to the court that I:

    (1) Served  _____

                                               Name of person served

on  _____  at  _____

        Date of service                                Location of service

_____  by  _____  with the following:

                                                Manner of service

           ☐ Summons                              ☐ Counter-Complaint

           ☐ Complaint                           ☐ Domestic Case Information Report

           ☐ Motions   _____   ☐ Financial Statement

           ☐ Petition and Show Cause Order      ☐ Interrogatories

           ☐ Other  _____

                                    Please specify

    (2) Was unable to serve because:

              ☐ Moved left no forwarding address    ☐ No such address

              ☐ Address not in jurisdiction       ☐ Other _____

                                                         Please specify

Sheriff fee: $ _____  ☐ waived by _____

_____  _____

        Date                 Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



**CIRCUIT COURT FOR ALLEGANY MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102
Fax: (301) 777-2100

**To:** ALLEGANY SCRAP, INC.
2001 KENILWORTH AVENUE
CAPITAL HEIGHTS, MD 20743
Serve On:
CSC Lawyers Incorporating Service Co.
7 St. Paul Street
Suite 820
Baltimore, MD 21202

Case Number:      C-01-CV-23-000317
Other Reference Number(s):
Child Support Enforcement Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD  21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*

Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

**Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.** **Case Number: C-01-CV-23-00**

4.  If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Circuit Court for Allegany County

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  ALLEGANY SCRAP, INC.

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                                    Location of service

_____ by _____ with the following:
Manner of service

- ☐ Summons
- ☐ Complaint
- ☐ Motions
- ☐ Petition and Show Cause Order
- ☐ Other _____
Please specify

- ☐ Counter-Complaint
- ☐ Domestic Case Information Report
- ☐ Financial Statement
- ☐ Interrogatories

(2) Was unable to serve because:
- ☐ Moved left no forwarding address
- ☐ Address not in jurisdiction
- ☐ No such address
- ☐ Other _____
Please specify

Sheriff fee: $ _____    ☐ waived by _____

_____    _____
Date                  Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Telephone: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** NEWELL RECYCLING COMPANY OF EL PASO, L.P.
P.O. BOX 2867
FREDERICKSBURG, TX 78624-1927
Serve On:
Alton Scott Newell, Jr.
Registered Agent
6800 Market Avenue
El Paso, TX 79915-1014

| | |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Other Reference Number(s):** | |
| **Child Support Enforcement Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*

Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

**Circuit Court for Allegany County**
**Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00**

4.   If this notice is served by private process, process server shall file a separate affidavit as required by Maryland
     Rule 2-126(a).

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To:  NEWELL RECYCLING COMPANY OF EL PASO, L.P.

_____    ID# _____    of the _____
<span style="font-size:smaller">Serving Sheriff's Name</span>

County Sheriff's office present to the court that I:

(1) Served _____
<span style="font-size:smaller">Name of person served</span>

on _____    at _____
<span style="font-size:smaller">Date of service</span>                                      <span style="font-size:smaller">Location of service</span>

_____    by _____    with the following:
                                          <span style="font-size:smaller">Manner of service</span>

☐ Summons                                    ☐ Counter-Complaint
☐ Complaint          _____    ☐ Domestic Case Information Report
☐ Motions                                     ☐ Financial Statement
☐ Petition and Show Cause Order              ☐ Interrogatories
☐ Other _____
                <span style="font-size:smaller">Please specify</span>

(2) Was unable to serve because:
    ☐ Moved left no forwarding address      ☐ No such address
    ☐ Address not in jurisdiction           ☐ Other _____
                                                            <span style="font-size:smaller">Please specify</span>

Sheriff fee: $ _____    ☐ waived by _____

_____    _____
<span style="font-size:smaller">Date</span>                        <span style="font-size:smaller">Signature of serving Sheriff</span>

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).



**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk's Office: (301) 777-5970
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** NEWELL RECYCLING EQUIPMENT, LLC
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121
Serve On:
Alton Scott Newell, Jr.
1020 S Mesa Hills Dr.
Apt. 5205
El Paso, TX 79912-5121

Case Number:      C-01-CV-23-000317
Other Reference Number(s):
Child Support Enforcement Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
     Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
     Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

**Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00**

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**

Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To: NEWELL RECYCLING EQUIPMENT, LLC

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____ at _____
Date of service                              Location of service

_____ by _____ with the following:
Manner of service

☐ Summons                                    ☐ Counter-Complaint

☐ Complaint                                   ☐ Domestic Case Information Report
        _____
☐ Motions                                     ☐ Financial Statement

☐ Petition and Show Cause Order               ☐ Interrogatories

☐ Other _____
Please specify

(2) Was unable to serve because:
☐ Moved left no forwarding address    ☐ No such address

☐ Address not in jurisdiction          ☐ Other _____
                                                  Please specify

Sheriff fee: $ _____ ☐ waived by _____

_____  _____
Date                              Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

**CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Telephone: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  THE SHREDDER CO L.P.
6800 MARKET AVENUE
EL PASO, TX 79915-1014
Serve On:
Alton Scott Newell
Registered Agent
6800 Market Avenue
El Paso, TX 79915-1014

|  |  |
|---|---|
| Case Number: | C-01-CV-23-000317 |
| Other Reference Number(s): |  |
| Child Support Enforcement Number: |  |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD  21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*
Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.

**Circuit Court for Allegany County**
**Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al. Case Number: C-01-CV-23-00**

4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**
Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To: THE SHREDDER CO L.P.

_____  ID# _____  of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
Name of person served

on _____  at _____
Date of service                                                         Location of service

_____  by _____  with the following:
                                                                  Manner of service

☐ Summons                                    ☐ Counter-Complaint

☐ Complaint                                   ☐ Domestic Case Information Report

☐ Motions  _____   ☐ Financial Statement

☐ Petition and Show Cause Order    ☐ Interrogatories

☐ Other _____
                          Please specify

(2) Was unable to serve because:

☐ Moved left no forwarding address    ☐ No such address

☐ Address not in jurisdiction              ☐ Other _____
                                                                    Please specify

Sheriff fee: $ _____   ☐ waived by _____

_____   _____
Date                              Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

**CIRCUIT COURT FOR ALLEGANY COUNTY MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835
Serve On:
Alton Scott Newell, Registered Agent
6800 Market Avenue
El Paso, TX 79915-1014

|  |  |
|---|---|
| **Case Number:** | C-01-CV-23-000317 |
| **Other Reference Number(s):** |  |
| **Child Support Enforcement Number:** |  |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Issue Date: 12/26/2023

## WRIT OF SUMMONS

You are hereby summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA
P. NICKEL
206 Washington Street
Cumberland, MD 21502

This summons is effective for service only if served within 60 days after the date it is issued.

*Dawne D. Lindsey*

Dawne D. Lindsey
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.

Instructions for Service:

1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Allegany County**
Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. Allegany Scrap, Inc., et al.Case Number: C-01-CV-23-00

## SHERIFF'S RETURN
### (please print)

To: THE SHREDDER CO LLC

_____ ID# _____ of the _____
Serving Sheriff's Name

County Sheriff's office present to the court that I:

    (1) Served  _____
                                      Name of person served

on _____ at _____
          Date of service                            Location of service

_____ by _____ with the following:
                                Manner of service

      ☐ Summons                         ☐ Counter-Complaint

      ☐ Complaint                       ☐ Domestic Case Information Report

      ☐ Motions      _____  ☐ Financial Statement

      ☐ Petition and Show Cause Order      ☐ Interrogatories

      ☐ Other _____
                            Please specify

    (2) Was unable to serve because:
          ☐ Moved left no forwarding address      ☐ No such address

          ☐ Address not in jurisdiction      ☐ Other _____
                                                          Please specify

Sheriff fee: $ _____    ☐ waived by _____

                        _____   _____
                             Date          Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

# IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.*

       **Plaintiffs,**

vs.                            Civil Action No.: **C-01-CV-23-000317**

**ALLEGANY SCRAP, INC.,** *et al.*

       **Defendants.**

## AFFIDAVIT OF SERVICE

    I, T. Lee Beeman, Jr., hereby certify that in the 29th day of December, 2023, pursuant to Maryland Rule 2-121, I caused copies of the Summons and Complaint to be served upon Defendant Allegany Scrap, Inc., by mailing, certified mail, return receipt requested, the said documents to Defendant's resident agent: CSC Attorney's

CSC Lawyers Incorporating Service Co.
7 St. Paul Street
Suite 820
Baltimore, MD 21202

    I further certify that I am over 18 years of age and not a party to this action.

    I solemnly affirm under the penalties of perjury that the content of this affidavit are true and correct.

_____
T. Lee Beeman, Jr.

STATE OF MARYLAND
COUNTY OF ALLEGANY

    Subscribed and sworn to before me this 29th day of December, 2023.

_____
Notary Public

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.*

     **Plaintiffs,**

vs.                                                    Civil Action No.: **C-01-CV-23-000317**

**ALLEGANY SCRAP, INC.,** *et al.*

     **Defendants.**

---

### AFFIDAVIT OF SERVICE

I, T. Lee Beeman, Jr., hereby certify that in the 8th day of January, 2024, pursuant to Maryland Rule 2-121, I caused copies of the Summons and Complaint to be served upon Defendant The Shredder Co, L.P., by sending electronic mail (with consent), the said documents to Defendant's resident agent's counsel:

> Mario Gonzalez, Esq.
> 1707 Wyoming Avenue
> El Paso, TX 79902
> mario@gonzalezlawfirm.com

I further certify that I am over 18 years of age and not a party to this action.

I solemnly affirm under the penalties of perjury that the content of this affidavit are true and correct.

                                           _____

                                           T. Lee Beeman, Jr.

STATE OF MARYLAND
COUNTY OF ALLEGANY

Subscribed and sworn to before me this 8th day of January, 2024.



                                       Notary Public

 Gmail

Lee Beeman <lbeeman@blpblaw.com>

---

## Re: Newell lawsuit
1 message

**Lee Beeman** <lbeeman@blpblaw.com>                    Mon, Jan 8, 2024 at 10:19 AM
To: Mario Gonzalez <Mario@gonzalezlawfirm.com>

Mr. Gonzalez:
As previously discussed, please find attached Service of Process packets for:
Newell Recycling Company of El Paso, L.P.
Newell Recycling Equipment, LLC
The Shredder Co L.P.; and
The Shredder Co LLC.

Thank you for accepting service of process on behalf of Mr. Newell.

On Tue, Jan 2, 2024 at 2:34 PM Mario Gonzalez <Mario@gonzalezlawfirm.com> wrote:

> Dear Mr. Beeman:
>
> As we discussed today, my client, Mr. Scott Newell, has authorized me to accept service on his behalf on January 8, 2024.  You may do so by sending the suit and summons to my email listed below.
>
> Thank you for your attention to this matter.
>
> Sincerely,
>
> # Mario A. Gonzalez
>
> MARIO A. GONZALEZ
>
> Attorney at Law
>
> 1707 Wyoming Avenue
>
> El Paso, Texas  79902
>
> (915) 543-9802
>
> mario@gonzalezlawfirm.com

--
Best,

T. Lee Beeman, Jr.
BUCKEL, LEVASSEUR,
PILLAI & BEEMAN, LLC
206 Washington Street
Cumberland, MD 21502
T: (301) 759-3700
F: (301) 722-0334
www.blpblaw.com

---

**4 attachments**

**Service Packet - THE SHREDDER CO LLC.pdf**
1741K

**Service Packet - NEWELL RECYCLING COMPANY OF EL PASO, L.P..pdf**
1743K

**Service Packet - NEWELL RECYCLING EQUIPMENT, LLC.pdf**
1743K

**Service Packet - THE SHREDDER CO L.P..pdf**
1741K

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.*

      **Plaintiffs,**

vs.                          Civil Action No.: **C-01-CV-23-000317**

**ALLEGANY SCRAP, INC.,** *et al.*

      **Defendants.**

---

### AFFIDAVIT OF SERVICE

---

I, T. Lee Beeman, Jr., hereby certify that in the 8th day of January, 2024, pursuant to

Maryland Rule 2-121, I caused copies of the Summons and Complaint to be served upon

Defendant The Shredder Co, LLC, by sending electronic mail (with consent), the said documents

to Defendant's resident agent's counsel:

> Mario Gonzalez, Esq.
> 1707 Wyoming Avenue
> El Paso, TX 79902
> mario@gonzalezlawfirm.com

I further certify that I am over 18 years of age and not a party to this action.

I solemnly affirm under the penalties of perjury that the content of this affidavit are true

and correct.

                                                   _____
                                                   T. Lee Beeman, Jr.

STATE OF MARYLAND
COUNTY OF ALLEGANY

Subscribed and sworn to before me this 8th day of January, 2024.

                                               Samantha L. Logsdon
                                              Notary Public

E-FILED; Allegany Circuit Court
Docket: 1/8/2024 10:57 AM; Submission: 1/8/2024 10:57 AM
Envelope: 15017299

 Gmail

Lee Beeman <lbeeman@blpblaw.com>

---

## Re: Newell lawsuit
1 message

**Lee Beeman <lbeeman@blpblaw.com>**    Mon, Jan 8, 2024 at 10:19 AM
To: Mario Gonzalez <Mario@gonzalezlawfirm.com>

Mr. Gonzalez:
As previously discussed, please find attached Service of Process packets for:
Newell Recycling Company of El Paso, L.P.
Newell Recycling Equipment, LLC
The Shredder Co L.P.; and
The Shredder Co LLC.

Thank you for accepting service of process on behalf of Mr. Newell.

On Tue, Jan 2, 2024 at 2:34 PM Mario Gonzalez <Mario@gonzalezlawfirm.com> wrote:

> Dear Mr. Beeman:
>
> As we discussed today, my client, Mr. Scott Newell, has authorized me to accept service on his behalf on January 8, 2024. You may do so by sending the suit and summons to my email listed below.
>
> Thank you for your attention to this matter.
>
> Sincerely,
>
> # Mario A. Gonzalez
>
> MARIO A. GONZALEZ
>
> Attorney at Law
>
> 1707 Wyoming Avenue
>
> El Paso, Texas  79902
>
> (915) 543-9802
>
> mario@gonzalezlawfirm.com

--
Best,

T. Lee Beeman, Jr.
BUCKEL, LEVASSEUR,
PILLAI & BEEMAN, LLC
206 Washington Street
Cumberland, MD 21502
T: (301) 759-3700
F: (301) 722-0334
www.blpblaw.com

---

**4 attachments**

**Service Packet - THE SHREDDER CO LLC.pdf**
1741K

**Service Packet - NEWELL RECYCLING COMPANY OF EL PASO, L.P..pdf**
1743K

**Service Packet - NEWELL RECYCLING EQUIPMENT, LLC.pdf**
1743K

**Service Packet - THE SHREDDER CO L.P..pdf**
1741K

  
## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.*

       **Plaintiffs,**

vs.                                          Civil Action No.: **C-01-CV-23-000317**

**ALLEGANY SCRAP, INC.,** *et al.*

       **Defendants.**

---

### AFFIDAVIT OF SERVICE

---

I, T. Lee Beeman, Jr., hereby certify that in the 8th day of January, 2024, pursuant to

Maryland Rule 2-121, I caused copies of the Summons and Complaint to be served upon

Defendant Newell Recycling Company of El Paso, L.P., by sending electronic mail (with

consent), the said documents to Defendant's resident agent's counsel:

Mario Gonzalez, Esq.
1707 Wyoming Avenue
El Paso, TX 79902
mario@gonzalezlawfirm.com

I further certify that I am over 18 years of age and not a party to this action.

I solemnly affirm under the penalties of perjury that the content of this affidavit are true

and correct.

_____
T. Lee Beeman, Jr.

STATE OF MARYLAND
COUNTY OF ALLEGANY

Subscribed and sworn to before me this 8th day of January, 2024.

_____
Notary Public

E-FILED; Allegany Circuit Court
Docket: 1/8/2024 10:57 AM; Submission: 1/8/2024 10:57 AM
Envelope: 15017299

 Gmail

Lee Beeman <lbeeman@blpblaw.com>

---

## Re: Newell lawsuit
1 message

**Lee Beeman** <lbeeman@blpblaw.com>                              Mon, Jan 8, 2024 at 10:19 AM
To: Mario Gonzalez <Mario@gonzalezlawfirm.com>

Mr. Gonzalez:
As previously discussed, please find attached Service of Process packets for:
Newell Recycling Company of El Paso, L.P.
Newell Recycling Equipment, LLC
The Shredder Co L.P.; and
The Shredder Co LLC.

Thank you for accepting service of process on behalf of Mr. Newell.

On Tue, Jan 2, 2024 at 2:34 PM Mario Gonzalez <Mario@gonzalezlawfirm.com> wrote:

> Dear Mr. Beeman:
>
> As we discussed today, my client, Mr. Scott Newell, has authorized me to accept service on his behalf on January 8,
> 2024.  You may do so by sending the suit and summons to my email listed below.
>
> Thank you for your attention to this matter.
>
> Sincerely,
>
> # Mario A. Gonzalez
>
> MARIO A. GONZALEZ
>
> Attorney at Law
>
> 1707 Wyoming Avenue
>
> El Paso, Texas  79902
>
> (915) 543-9802
>
> mario@gonzalezlawfirm.com

--
Best,

T. Lee Beeman, Jr.
BUCKEL, LEVASSEUR,
PILLAI & BEEMAN, LLC
206 Washington Street
Cumberland, MD 21502
T: (301) 759-3700
F: (301) 722-0334
www.blpblaw.com

**4 attachments**

**Service Packet - THE SHREDDER CO LLC.pdf**
1741K

**Service Packet - NEWELL RECYCLING COMPANY OF EL PASO, L.P..pdf**
1743K

**Service Packet - NEWELL RECYCLING EQUIPMENT, LLC.pdf**
1743K

**Service Packet - THE SHREDDER CO L.P..pdf**
1741K

E-FILED; Allegany Circuit Court
Docket: 1/8/2024 10:57 AM; Submission: 1/8/2024 10:57 AM
Envelope: 15017299

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.*

      **Plaintiffs,**

vs.    Civil Action No.: **C-01-CV-23-000317**

**ALLEGANY SCRAP, INC.,** *et al.*

      **Defendants.**

---

## AFFIDAVIT OF SERVICE

I, T. Lee Beeman, Jr., hereby certify that in the 8th day of January, 2024, pursuant to Maryland Rule 2-121, I caused copies of the Summons and Complaint to be served upon Defendant Newell Recycling Equipment, LLC, by sending electronic mail (with consent), the said documents to Defendant's resident agent's counsel:

Mario Gonzalez, Esq.
1707 Wyoming Avenue
El Paso, TX 79902
mario@gonzalezlawfirm.com

I further certify that I am over 18 years of age and not a party to this action.

I solemnly affirm under the penalties of perjury that the content of this affidavit are true and correct.

_____
T. Lee Beeman, Jr.

STATE OF MARYLAND
COUNTY OF ALLEGANY

Subscribed and sworn to before me this 8th day of January, 2024.

_____
Notary Public

E-FILED; Allegany Circuit Court
Docket: 1/8/2024 10:57 AM; Submission: 1/8/2024 10:57 AM
Envelope: 15017299

 Gmail

Lee Beeman <lbeeman@blpblaw.com>

## Re: Newell lawsuit

1 message

**Lee Beeman** <lbeeman@blpblaw.com>                                          Mon, Jan 8, 2024 at 10:19 AM
To: Mario Gonzalez <Mario@gonzalezlawfirm.com>

Mr. Gonzalez:
As previously discussed, please find attached Service of Process packets for:
Newell Recycling Company of El Paso, L.P.
Newell Recycling Equipment, LLC
The Shredder Co L.P.; and
The Shredder Co LLC.

Thank you for accepting service of process on behalf of Mr. Newell.

On Tue, Jan 2, 2024 at 2:34 PM Mario Gonzalez <Mario@gonzalezlawfirm.com> wrote:

> Dear Mr. Beeman:
>
> As we discussed today, my client, Mr. Scott Newell, has authorized me to accept service on his behalf on January 8,
> 2024.  You may do so by sending the suit and summons to my email listed below.
>
> Thank you for your attention to this matter.
>
> Sincerely,
>
> # Mario A. Gonzalez
>
> MARIO A. GONZALEZ
>
> Attorney at Law
>
> 1707 Wyoming Avenue
>
> El Paso, Texas  79902
>
> (915) 543-9802
>
> mario@gonzalezlawfirm.com

--
Best,

T. Lee Beeman, Jr.
BUCKEL, LEVASSEUR,
PILLAI & BEEMAN, LLC
206 Washington Street
Cumberland, MD 21502
T: (301) 759-3700
F: (301) 722-0334
www.blpblaw.com

**4 attachments**

**Service Packet - THE SHREDDER CO LLC.pdf**
1741K

**Service Packet - NEWELL RECYCLING COMPANY OF EL PASO, L.P..pdf**
1743K

**Service Packet - NEWELL RECYCLING EQUIPMENT, LLC.pdf**
1743K

**Service Packet - THE SHREDDER CO L.P..pdf**
1741K

# IN THE CIRCUIT COURT OF MARYLAND
# FOR ALLEGANY COUNTY

| | | |
|---|---|---|
| **LINDA S. BEEMAN,** *et al.* | * | |
| **Plaintiffs** | * | |
| **v.** | * | |
| | | **Case No. C-01-CV-23-000317** |
| **ALLEGANY SCRAP, INC.,** *et al.* | * | |
| | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF ENTRY OF APPEARANCE

Please enter the appearances of Joel I. Sher, Esq., Alex J. Brown, Esq. and Michael S. Bullock, Esq. of Shapiro Sher Guinot & Sandler as counsel for Defendant Allegany Scrap, Inc. in the above-captioned case.

Dated: January 29, 2024

Respectfully submitted,

*/s/ Joel I. Sher*
Joel I. Sher (AIS No. 7811010312)
Alex J. Brown (AIS No. 9912140080)
Michael S. Bullock (AIS No. 1712130070)
Shapiro Sher Guinot & Sandler
250 W Pratt Street, Suite 2000
Baltimore, Maryland 21201
410-385-0202 telephone
410-539-7611 facsimile
jis@shapirosher.com
ajb@shapirosher.com
msb@shapirosher.com

*Attorneys for Defendant Allegany Scrap, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 29th day of January, 2024, copies of the foregoing

*Notice of Appearance* were served via MDEC on:

> Jason C. Buckel, Esq.
> T Lee Beeman, Esq.
> Buckel Levasseur Pillai & Beeman LLC
> 206 Washington Street
> Cumberland, Maryland 21502
>
> *Attorneys for Plaintiffs*

AND I FURTHER CERTIFY that copies of the foregoing were served via first class mail,

postage prepaid on:

> The Shredder Co LLC
> 7380 Doniphan Drive
> Canutillo, Texas 79835
> *Defendant*
>
> The Shredder Co, L.P.
> 6800 Market Avenue
> El Paso, Texas 79915
> *Defendant*
>
> Newell Recycling Equipment, LLC
> 1020 S Mesa Hills Drive
> Apartment 5205
> El Paso, Texas 79912
> *Defendant*
>
> Newell Recycling Company Of El Paso, L.P.
> P.O. Box 2867
> Fredericksburg, Texas 78624
> *Defendant*

> /s/ *Joel I. Sher*
> Joel I. Sher (AIS No. 7811010312)

**IN THE CIRCUIT COURT OF MARYLAND
FOR ALLEGANY COUNTY**

| | |
|---|---|
| **LINDA S. BEEMAN**, *et al.* | * |
| **Plaintiffs** | * |
| **v.** | * |
| **ALLEGANY SCRAP, INC.**, *et al.* | *  **Case No. C-01-CV-23-000317** |
| | * |
| **Defendants** | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**DEFENDANT ALLEGANY SCRAP, INC.'S CONSENT MOTION TO EXTEND TIME
TO RESPOND TO PLAINTIFFS' COMPLAINT**</u>

Defendant Allegany Scrap, Inc. ("Allegany"), by and through undersigned counsel, pursuant to Maryland Rule 2-311, hereby submits this Consent Motion To Extend Time To Respond To Plaintiffs' Complaint as follows:

1.       Plaintiffs Linda S. Beeman and Karl E. Nickel ("Plaintiffs") filed their Complaint ("Complaint") against Allegany, as well as co-Defendants The Shredder Co LLC, The Shredder Co, L.P., Newell Recycling Equipment, LLC and Newell Recycling Company of El Paso, L.P., on September 7, 2023.

2.       Plaintiffs served the Complaint and a writ of summons on Allegany via Certified Mail on December 29, 2023.

3.       Allegany's response to Plaintiffs' Complaint is due thirty (30) days following service of Allegany, or January 29, 2024.

4.       Allegany's time to respond to the Complaint has not expired.

5.      Counsel for Plaintiffs has <u>consented to</u> undersigned counsel's request to extend the time for Allegany to respond to the Complaint by thirty (30) days, from January 29, 2024 to February 28, 2024.

6.      Accordingly, Allegany, with the consent of Plaintiffs, respectfully requests that Allegany's time to respond to Plaintiffs' Complaint hereby be extended until **February 28, 2024**.

WHEREFORE, Defendant Allegany Scrap, Inc. respectfully requests that this Court grant its Consent Motion To Extend Time To Respond To Plaintiffs' Complaint consistent with the proposed date set forth herein.

Dated: January 29, 2024                     Respectfully submitted,

*/s/ Joel I. Sher*
Joel I. Sher (AIS No. 7811010312)
Alex J. Brown (AIS No. 9912140080)
Michael S. Bullock (AIS No. 1712130070)
Shapiro Sher Guinot & Sandler
250 W Pratt Street, Suite 2000
Baltimore, Maryland 21201
410-385-0202 telephone
410-539-7611 facsimile
jis@shapirosher.com
ajb@shapirosher.com
msb@shapirosher.com

*Attorneys for Defendant Allegany Scrap, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of January, 2024, copies of the foregoing

Defendant Allegany Scrap, Inc.'s *Consent Motion To Extend Time To Respond To Plaintiffs'*

*Complaint* were served via MDEC on:

> Jason C. Buckel, Esq.
> T Lee Beeman, Esq.
> Buckel Levasseur Pillai & Beeman LLC
> 206 Washington Street
> Cumberland, Maryland 21502
>
> *Attorneys for Plaintiffs*

AND I FURTHER CERTIFY that copies of the foregoing were served via first class mail,

postage prepaid on:

> The Shredder Co LLC
> 7380 Doniphan Drive
> Canutillo, Texas 79835
> *Defendant*
>
> The Shredder Co, L.P.
> 6800 Market Avenue
> El Paso, Texas 79915
> *Defendant*
>
> Newell Recycling Equipment, LLC
> 1020 S Mesa Hills Drive
> Apartment 5205
> El Paso, Texas 79912
> *Defendant*
>
> Newell Recycling Company Of El Paso, L.P.
> P.O. Box 2867
> Fredericksburg, Texas 78624
> *Defendant*

> */s/ Joel I. Sher* _____
> Joel I. Sher (AIS No. 7811010312)

3

E-FILED; Allegany Circuit Court
Docket: 1/29/2024 3:56 PM; Submission: 1/29/2024 3:56 PM
Envelope: 15239870

# IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

LINDA S. BEEMAN, *et al.*                    *

     Plaintiffs                              *

v.                                          *

                               **Case No. C-01-CV-23-000317**

ALLEGANY SCRAP, INC., *et al.*               *

                                        *

     Defendants                              *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER

Upon consideration of Defendant Allegany Scrap, Inc.'s Consent Motion To Extend Time To Respond To Plaintiffs' Complaint, it is this __1st__ day of __February__, 2024, hereby

**ORDERED** that the Consent Motion To Extend Time To Respond To Plaintiffs' Complaint is **GRANTED**; and it is further

**ORDERED** that Defendant Allegany Scrap, Inc.'s response to Plaintiffs' Complaint shall be filed on or before February 28, 2024.

_____
Judge, Circuit Court for Allegany County

cc:    All Counsel of Record

**02/01/2024 1:48:35 PM**

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

LINDA S. BEEMAN, *et al.*          *

     Plaintiffs          *

v.          *

ALLEGANY SCRAP, INC., *et al.*          *          Case No. C-01-CV-23-000317

              *

     Defendants          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## ORDER

Upon consideration of Defendant Allegany Scrap, Inc.'s Consent Motion To Extend Time To Respond To Plaintiffs' Complaint, it is this __1st__ day of __February_____, 2024, hereby

**ORDERED** that the Consent Motion To Extend Time To Respond To Plaintiffs' Complaint is **GRANTED**; and it is further

**ORDERED** that Defendant Allegany Scrap, Inc.'s response to Plaintiffs' Complaint shall be filed on or before February 28, 2024.

_____
Judge, Circuit Court for Allegany County

cc:     All Counsel of Record

**02/01/2024 1:48:35 PM**



**To:**
THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835

Order — Motion to Extend Time Granted

1-01-CV-23-317

CUMBERLAND, MD 21502

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

ZIP 21502
02 4W
0000349508 FEB 01. 2024
$ 000.64⁰

US POSTAGE AND PITNEY BOWES

E-FILED; Allegany Circuit Court
Docket: 2/28/2024 9:49 AM; Submission: 2/28/2024 9:49 AM
Envelope: 15567870

## IN THE CIRCUIT COURT OF MARYLAND
### FOR ALLEGANY COUNTY

| | | |
|---|---|---|
| **LINDA S. BEEMAN,** *et al.* | * | |
| **Plaintiffs** | * | |
| **v.** | * | |
| **ALLEGANY SCRAP, INC.,** *et al.* | * | **Case No. C-01-CV-23-000317** |
| **Defendants** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### DEFENDANT ALLEGANY SCRAP, INC.'S MOTION TO DISMISS
### AND REQUEST FOR HEARING

Defendant Allegany Scrap, Inc. ("Allegany"), by and through undersigned counsel, and pursuant to Maryland Rules 2-311 and 2-322(b), hereby files this Motion to Dismiss all claims against Allegany by plaintiffs the Estate of Joshua P. Nickel and Mr. Nickel's surviving mother and father (collectively "Plaintiffs").  All three Plaintiffs have failed to state a claim against Allegany. Allegany is entitled to dismissal of all claims asserted against it, with prejudice.

The legal arguments and authority supporting dismissal of all claims against Allegany in this lawsuit are set forth in the accompanying Memorandum of Law, which has been filed contemporaneously herewith and which Allegany adopts and incorporates herein in full by reference.

### REQUEST FOR HEARING

Allegany hereby requests, pursuant to Maryland Rule 2-311(f), a hearing on Allegany's Motion To Dismiss.

**NOTED**

Hearing will be set in once response is filed.

*/s/ Alex J. Brown*
Alex J. Brown - (CPF# 9912140080)

**03/19/2024 10:37:38 AM**

Dated: February 28, 2024                Respectfully submitted,


                                        ___/s/ Alex J. Brown_____
                                        Joel I. Sher (AIS No. 7811010312)
                                        Alex J. Brown (AIS No. 9912140080)
                                        Michael S. Bullock (AIS No. 1712130070)
                                        Shapiro Sher Guinot & Sandler
                                        250 W Pratt Street, Suite 2000
                                        Baltimore, Maryland 21201
                                        410-385-0202 telephone
                                        410-539-7611 facsimile
                                        jis@shapirosher.com
                                        ajb@shapirosher.com
                                        msb@shapirosher.com

                                        *Attorneys for Defendant Allegany Scrap, Inc.*

2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 28th day of February, 2024, copies of the foregoing Defendant

Allegany Scrap, Inc.'s Motion To Dismiss And Request For Hearing were served via MDEC on:

> Jason C. Buckel, Esq.
> T Lee Beeman, Esq.
> Buckel Levasseur Pillai & Beeman LLC
> 206 Washington Street
> Cumberland, Maryland 21502
>
> *Attorneys for Plaintiffs*

AND I FURTHER CERTIFY that copies of the foregoing were served via first class mail, postage

prepaid on:

> The Shredder Co LLC
> 7380 Doniphan Drive
> Canutillo, Texas 79835
> *Pro-se Defendant*
>
> The Shredder Co, L.P.
> 6800 Market Avenue
> El Paso, Texas 79915
> *Pro-se Defendant*
>
> Newell Recycling Equipment, LLC
> 1020 S Mesa Hills Drive
> Apartment 5205
> El Paso, Texas 79912
> *Pro-se Defendant*
>
> Newell Recycling Company Of El Paso, L.P.
> P.O. Box 2867
> Fredericksburg, Texas 78624
> *Pro-se Defendant*

> */s/ Alex J. Brown*
> Alex J. Brown (AIS No. 9912140080)

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

| | | |
|---|---|---|
| **LINDA S. BEEMAN,** *et al.* | * | |
| **Plaintiffs** | * | |
| **v.** | * | **Case No. C-01-CV-23-000317** |
| **ALLEGANY SCRAP, INC.,** *et al.* | * | |
| **Defendants** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### DEFENDANT ALLEGANY SCRAP, INC.'S MEMORANDUM
### IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Allegany Scrap, Inc. ("Allegany") by and through undersigned counsel, pursuant to Maryland Rules 2-311 and 2-322(b) hereby files this Memorandum in Support of Defendant's Motion ("Motion") to Dismiss the lawsuit ("Lawsuit") filed by Plaintiff the Estate of Joshua P. Nickel (the "Estate") and Mr. Nickel's Surviving Mother ("Mother") and Father ("Father") (collectively "Plaintiffs"), and states as follows:

### INTRODUCTION

Plaintiffs obtained a full and complete recovery for their alleged injuries through a previously resolved workers' compensation claim. This Lawsuit is, at best, duplicative of that proceeding. It is also what amounts to an attempt to obtain a double recovery. Maryland's workers' compensation laws are specifically designed to prevent each of the three claims that Plaintiffs have alleged against Allegany.

Defendant and movant Allegany operates a metal recycling plant. The decedent Mr. Nickel was employed by Allegany to monitor the shredding of metals in the plant. During his shift at Allegany's facility on the day before his passing, Mr. Nickel was "wearing all prescribed personal protective equipment." Mr. Nickel was stationed on a "catwalk . . . approximately 76-feet away from the discharge

end of the shredder."  Yet, in an unfortunate incident that even Plaintiffs allege was "random[,]" Mr. Nickel was struck in the head by a piece of metal and died the next morning.

Maryland's workers' compensation laws are designed to provide Plaintiffs a full and complete recovery under these circumstances, and ***they did***.  Plaintiffs attempt to sidestep the clear statutory bar against duplicative suits like this one by including a single conclusory sentence in their Complaint, repeated three times, that Allegany had "deliberate intent" to injure or kill its own employee.  Plaintiff does not plead *any* facts supporting this bald quotation of the statutory "deliberate intent" exception.  To the contrary, *every other allegation* in the lengthy Complaint tells a tale of negligence, not of an intentional killing.

In fact, the Medical Examiner's official death certificate, which Plaintiffs have attached as Exhibit 2 to their Complaint, contains the Examiner's finding that Mr. Nickel's death was an "[*a*]*ccident*[.]"  There are ***no*** allegations in the Complaint that identify which Allegany representative(s), if any, intended to kill their co-worker, why they intended to kill him, or the benefit they expected to arise from killing him.  There is also no explanation as to why, if Allegany truly intended to kill Mr. Nickel, Allegany instructed Mr. Nickel to wear "personal protective equipment" and stand 76-feet away from a shredder that occasionally expels metal in "random" directions.

There are three (3) separate and independent grounds on which Plaintiffs' defective claims against Allegany should be dismissed.

First, the "deliberate intent" exception is inapplicable to all three of Plaintiffs' claims as a matter of law.  The Estate was entitled to assert its claim of intentional misconduct in its workers' compensation claim.  The Estate cannot utilize the "deliberate intent" exception to obtain a second recovery in this lawsuit, as a matter of law.  The wrongful death claims brought by Mr. Nickel's Mother and Father are barred because Mr. Nickel's parents do not fall within the three narrow categories of statutorily defined claimants that are permitted to bring suit through the "deliberate intent" exception.

Second, the "deliberate intent" exception is entirely inapplicable here, because the Plaintiffs have specifically alleged that the incident was an "accident" by attaching the death certificate to the Complaint and incorporating the contents of the certificate into the Complaint. Complaint, at Exhibit 2.

Third, and finally, Plaintiffs' use of misleading "intentional" tort labels to describe their negligence claims should be disregarded. Plaintiffs are not permitted to transform their negligence claims into "intentional torts" merely by the inclusion of a bald allegation of "deliberate intent." This Complaint should be read as a whole, and the three conclusory allegations of intent must be disregarded as superfluous based on the totality of the allegations. Plaintiffs' exclusive remedy for accidental death – including death caused by Allegany's alleged negligence – is provided under the Workers' Compensation Act, and the Lawsuit must be dismissed. L&E § 9-509(a)-(b).

All three of Plaintiffs' claims against Allegany can and should be dismissed for all or any one of these three (3) separate and independent fatal flaws.

## FACTUAL ALLEGATIONS

### A.    Mr. Nickel Is "Random[ly]" Injured While Working For Movant Allegany.

Allegany operates a scrap metal recycling facility in Cumberland, Maryland. Complaint at 4, ¶ 6.[1] Allegany uses a shredder ("Shredder") in its recycling operations that is capable of shredding roughly 100 tons of metal per hour. Complaint at 5, ¶ 15. The Shredder occasionally discharges pieces of metal "in random directions." *Id.* at 6, ¶ 28.

Decedent Mr. Nickel is alleged to have been working at Allegany "monitor[ing] the flow of [metal] on a conveyor belt" of the Shredder when he was injured. Complaint at 5, ¶¶ 17-18, Exhibit 2 (Medical Examiner's Certificate Of Death for Mr. Nickel (the "Death Certificate")). At the time, Mr. Nickel was

---

[1] Allegany recites the allegations of the Complaint solely for the purposes of this Motion to Dismiss. Allegany generally denies these allegations, and does not waive any claims, rights or defenses concerning these disputed allegations. To the contrary, Allegany reserves all rights relating to the allegations.

"wearing all prescribed personal protective equipment" and was stationed on a "catwalk . . . approximately 76-feet away from the discharge end of the [S]hredder." *Id.* at ¶¶ 19, 18.

At one point during Mr. Nickel's shift, a piece of metal was "random[ly]" projected 76-feet from the Shredder to the catwalk where Mr. Nickel was standing and struck Mr. Nickel in the head just above his left ear (the "Injury"). Complaint at 5, ¶ 20; Complaint at Exhibit 2 ("Death Certificate").

Mr. Nickel's Allegany co-workers found him unconscious after the Injury and called 911. *Id.* at 6, ¶¶22-23. He was first transported by ambulance to a local hospital in Cumberland, Maryland, and then on to Ruby Memorial Hospital in Morgantown, West Virginia, where he passed away the following morning. *Id.* at ¶ 23; *id.*, at Exhibit 2 (Death Certificate).

### B.  The Office Of The Chief Medical Examiner Of West Virginia Concludes That Mr. Nickel's Cause Of Death Was An "*Accident*" Occurring "At Work".

According to Exhibit 2 to the Complaint (the Death Certificate), the First Deputy Chief Medical Examiner of West Virginia, Piotr Kubiczek, M.D., conducted an "examination, and/or investigation" and determined that Mr. Nickel's "manner of death" was an "*[a]ccident*" that occurred "at work[.]" *Id.* (emphasis added).

Dr. Kubiczek did not check the box on the Death Certificate to indicate that Mr. Nickel's Injury or resulting death was a "[h]omicide" (i.e., an intentional death). *Id.* Dr. Kubiczek also chose not to check the box indicating that the cause of death "[c]ould not be determined[.]" *Id.* In fact, according to Exhibit 2 of the Complaint, Dr. Kubiczek was so confident in his findings of "[a]ccident[al]" death that he did not perform an autopsy to determine the cause and/or manner of Mr. Nickel's death. *Id.*

C.    **Mr. Nickel's Estate Obtains A Workers' Compensation Award.**

Mr. Nickel's Estate initiated a workers' compensation claim (Claim Number B847488) (the "Workers' Compensation Claim"). *See* WCC Public Claim Information Inquiry, attached hereto as **Exhibit 1**.[2] The Workers' Compensation Commission issued an award to the Estate. *See id.*

D.    **Plaintiffs File This Suit To Obtain An Unlawful Double Recovery.**

Plaintiffs are barred by the Workers Compensation Act from obtaining a second recovery in this Lawsuit. L&E § 9-509(a)-(b). In an attempt to sidestep this broad statutory bar, the Plaintiffs copy the words of the "deliberate intent" exception to the statutory bar in a single identical sentence that is repeated in each of Plaintiffs' three claims against Allegany. Complaint, at 13 ¶ 69 ("Defendant Allegany Scrap acted with deliberate intent to injure or kill Decedent, Joshua P. Nickel."); at 19 ¶ 92 (same); at 26-27 ¶ 127 (same).

There are no alleged facts anywhere in the Complaint that support Plaintiffs' three bald, formulaic recitations of "deliberate intent[.]" *Id.* To the contrary, absent those three sentences, the entirety of the Complaint states claims for negligence against Allegany. *Id.*, at 1 ¶ 1, *et seq.*

There are no allegations in the Complaint that identify: which Allegany representative(s), if any, intended to kill their co-worker, Mr. Nickel; why they intended to kill him; nor the benefit they expected to arise from killing the Allegany employee. There is also no explanation as to why, if Allegany truly intended to kill Mr. Nickel, Allegany instructed Mr. Nickel to wear "prescribed personal protective equipment" and stand 76-feet away from a machine that was ***not*** expelling metal in Mr. Nickel's direction,

---

[2] This Court may take judicial notice of the public record of the Estate's Workers' Compensation Claim, which is universally available to the public (and this Court) on the internet, via the Workers' Compensation Commission's website. Maryland Rule 5-201(b)(2) (permitting a trial court to take judicial notice, at any stage of the proceeding, of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). *See also* Workers' Compensation Commission, WCC Public Claim Information Inquiry, available at https://www.wcc.state.md.us/wfms/public_inquiry.html (last accessed February 23, 2024).

but only occasionally in "random" directions.  By Plaintiffs' own allegations, Mr. Nickel's death resulted from random *chance*.

## STANDARD OF REVIEW

Allegany is entitled to dismissal because Plaintiffs have failed to state a cause of action against Allegany. *Tri-Cty. Unlimited, Inc. v. Kids First Swim Sch. Inc.*, 191 Md. App. 613, 619 (2010); Maryland Rule 2- 322(b)(2).

This Court is not required to consider Plaintiffs' three "merely conclusory charges" of "deliberate intent[,]" because those three recitations of statutory language "are not factual allegations." *Morris v. Osmose Wood Preserving*, 340 Md. 519, 531 (1995).*See also Bobo v. State*, 346 Md. 706, 708-09 (1997) ("Bald assertions and conclusory statements by the pleader will not suffice.").

## ARGUMENT

**A.  The Workers' Compensation Act Bars Plaintiffs' Claims Against Allegany.**

Maryland's Workers' Compensation Act is the "*exclusive*" method for an employee to hold an employer liable for a workplace injury.  L&E § 9-509(a)-(b) (emphasis added).  This exclusivity is supported by strong public policy that represents a legislative "compromise between employers and employees whereby employees . . . would receive guaranteed compensation without the vagaries and expense of litigation" – as the Plaintiff Estate did in this case.  *Ledford v. Jenway Contracting, Inc.*, 259 Md. App. 534, 551 (2023).  In exchange, employers are "granted immunity from tort liability."  *Id.* at 552. Compensation awarded under the Workers' Compensation Act "is in place of *any* right of action against *any* person."  L&E § 9-509(b) (emphasis added).

All three of Plaintiffs' claims against Allegany are separately and equally barred by the Workers' Compensation Act.

6

1.  **Allegany Is Entitled To Dismissal Of The Estate's Survival Claim (Count VII)
    Because The Estate Abandoned Its Right To Bring This Claim By Choosing The
    <u>Workers' Compensation Award.</u>**

The Estate made a choice to obtain recovery for Mr. Nickel's Injury through a workers'
compensation Claim, and that choice has a consequence: the Estate is barred from subsequently bringing
a claim for damages against Allegany. L&E § 9-509(a)-(b).

Plaintiffs recognize this broad statutory bar, and have attempted to squeeze their allegations into a
narrow exception that applies where an employee is "injured or killed as a result of the ***deliberate intent***
of the employer to injure or kill the covered employee[.]" *Id.* at § 9-509(d)(emphasis added).

The "deliberate intent" exception does not save the Estate's claim from the statutory bar because
the Estate was required to incorporate any allegations of Allegany's purportedly intentional misconduct
into the Estate's Workers' Compensation Claim. *Sterry v. Bethlehem Steel Corp.*, 64 Md. App. 175, 189
(1985) (holding that employee's election to recover via a workers' compensation claim bars separate claim
for intentional injuries). *See also Tynes v. Shoney's Inc.*, 867 F. Supp. 330, 332 (D. Md. 1994) ("If an
employee demonstrates such an intent[ to injury or kill], he has ***an option*** to file his claim under the [L&E
§ 9-509(d)] ***or*** bring a common law tort action for damages.") (emphasis added); *Parker v. Westat, Inc.*,
301 F. Supp. 2d 537, 540 (E.D. Va. 2004) (applying Maryland law and holding that "even if [employee]
were somehow to allege that [employer] deliberately intended to injure her, she has ***abandoned*** her right
to bring an action for damages by filing a claim for workers' compensation benefits") (emphasis added)
(citing L&E § 9-509(d) and *Tynes*, 867 F. Supp. at 332).

The Estate fails to allege any acts of Allegany's "deliberate intent" that the Estate could not have
incorporated into the Workers Compensation Claim.  To the contrary, the Estate has not alleged ***any*** acts
of Allegany's "deliberate intent" to injure or kill Mr. Nickel, other than the thrice-repeated parroting of
the statutory "deliberate intent" phrase in a single conclusory sentence.  Complaint, at 13 ¶ 69 ("Defendant
Allegany Scrap acted with deliberate intent to injure or kill Decedent, Joshua P. Nickel."); at 19 ¶ 92

(same); at 26-27 ¶ 127 (same).  As such, the Estate's claim had fully accrued at the time that the Estate filed its Workers' Compensation Claim, and the Estate has "abandoned" its opportunity to assert a private action for civil damages by pursuing the Workers' Compensation Claim.  L&E § 9-509(d); *Parker*, 301 F. Supp. 2d at 540; **Exhibit 1**.

The Estate has not alleged that the injuries Allegany is purported to have intentionally caused were separate and independent from his underlying workplace injuries.  *See Young v. Hartford Acc. & Indem. Co.*, 303 Md. 182 (1985); *Gallagher v. Bituminous Fire And Marine Ins. Co.*, 303 Md. 201 (1985).

Even Plaintiffs' allegation that Allegany "intentionally withheld and/or delayed seeking medical attention" for Mr. Nickel does not alchemize this fortuitous accident into an "intentional" killing.  *See* Complaint at 8, ¶ 39.  *Any* alleged "with[o]ld[ing] and/or delay [ in] seeking medical attention for [Mr. Nickel]" is not a separate, "intentional" act, but is a "mere by-product" of the Shredder Incident and work Injury.  *Sterry*, 64 Md. App. at 193 (Wilner, J., Dissenting); Complaint at 8, ¶ 39.  Thus, the Estate is thus barred from pursuing its survival claim (Count VII) against Allegany by the filing of its Workers' Compensation Claim.  *Id.*; *Tynes*, 867 F. Supp. at 332; *Parker*, 301 F. Supp. at 540.

### 2. Allegany Is Entitled To Dismissal Of Mother And Father's Wrongful Death Claims (Counts I and XIII) Because Neither Mother Nor Father Are Within The Three Identified Classes Of Individuals Authorized To Assert A Claim Pursuant To The "Deliberate Intent" Exception.

Even when the "deliberate intent" exception applies (it does not here), only three (3) specifically enumerated categories of individuals are permitted to "bring an action for damages against the employer." L&E § 9-509(d)(2).  Those categories are: (1) "a surviving spouse," (2) a "child," or (3) a "dependent of the covered employee[.]" *Id.*  The scope of these three categories has been strictly construed.  *See Ledford*, 259 Md. App. at 551 (holding that because 47-year-old daughter of deceased covered employee was not a "dependent" under the Act, the daughter's wrongful death claim was barred).  Neither the Plaintiff Mother nor the Plaintiff Father fits into any of these three categories.

8

These three categories may not be expanded to include parents even where, as in this case, the Mother and Father would otherwise may have had standing to sue under Maryland's Wrongful Death Act.[3]  *See id.* at 552 (finding "nothing inherently wrong with construing the Workers' Compensation Act in a manner that limits a litigant's rights under the Wrongful Death Act").  As the *Ledford* court noted, the Workers' Compensation Act should be construed to avoid "provid[ing] benefits [to litigants] not intended by the legislature." *Id.* at 553 (citing *Tortuga, Inc. v. Wolfensberger*, 97 Md. App. 79, 83 (1993) (the Workers' Compensation Act should not "be construed to provide for benefits beyond those authorized by its provisions").

Here, neither Plaintiff Mother nor Plaintiff Father is alleged to be "a surviving spouse, child, or dependent of [Mr. Nickel.]"  L&E § 9-509(d).  *See also* Complaint at 3, ¶ 4 (Plaintiff Mother "is the *Surviving Mother* of [Mr. Nickel]"); *id.* at ¶ 5 (Plaintiff Father "is the *Surviving Father* of [Mr. Nickel]").  Notably, the Estate is not a "surviving spouse, child, or dependent of [Mr. Nickel]" either.

Accordingly, Plaintiff Mother and Father's wrongful death claims against Allegany (Count I and Count XIII, respectively) should be dismissed, as a matter of law, as should the Estate's claim.  *See Ledford*, 259 Md. App. at 553.

## B. Separately And Independently, Allegany Is Entitled To Dismissal Of The Lawsuit Because The Death Certificate, Which Is Expressly Incorporated Into The Complaint, Constitutes A Complaint Allegation That An "*Accident*" Caused Mr. Nickel's Death.

Plaintiffs' claims must be dismissed because ***Plaintiffs' Complaint*** expressly alleges that Mr. Nickel's "manner of death" was an "***[a]ccident***[.]"  Complaint, at Exhibit 2 (Death Certificate) (emphasis added); *id.* at 3, ¶4 (incorporating Death Certificate as Exhibit 2).

Plaintiffs' attachment of the Death Certificate as an exhibit to the Complaint makes the Death Certificate "a part [of the Complaint] ***for all purposes***."  Maryland Rule 2-303(d) (emphasis added).  ***All***

---

[3] Section 3-904 of the Courts and Judicial Proceedings Article permits an action "for the benefit of the wife, husband, ***parent***, and child of the deceased person."  (emphasis added)

of the allegations of the three claims against Allegany incorporate Dr. Kubiczek's conclusion that Mr. Nickel's Injury and death was an "[a]ccident[.]" Complaint, at 3, ¶4 (incorporating Death Certificate as Exhibit 2); *id*. at 13 ¶ 63 (Count I); at 18 ¶ 86 (Count VII); and at 26 ¶ 121 (Count XIII).

Dr. Kubiczek would have most certainly chosen "[h]omicide" if he believed that Mr. Nickel's death was in any way caused by an intentional act – but he did not. Complaint, at Exhibit 2 (Death Certificate). Alternatively, Dr. Kubiczek could have indicated that Mr. Nickel's cause of death "[c]ould not be determined" – but he did not check that box either. *Id*. Instead, Dr. Kubiczek checked the box stating his conclusion that Mr. Nickel's death was an "[a]ccident[.]" *Id*. The Death Certificate, which is considered "a part [of the Complaint] for all purposes[,]" defeats Plaintiffs' attempt to sue Allegany under the "deliberate intent" exception to the Workers' Compensation Act. Maryland Rule 2-303(d).

Even when an exhibit to a complaint is in "conflict [with] the bare allegations of the complaint . . . , ***the exhibit prevails***." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (emphasis added) (citing 2A Moore's Federal Practice, ¶ 10.06, p.10-24); *Eskridge v. Hickory Springs Mfg. Co.*, 477 F. App'x 139, 140 (4th Cir. 2012) (same). Maryland Rule 2-303(d) contains identical language, in pertinent part, to Federal Rule of Civil Procedure 10(c), which the *Fayetteville* court relied on to find that exhibits prevail over contrary allegations of a Complaint. 936 F.2d at 1465.

As Plaintiffs have thus alleged that an "[a]ccident[]" caused Mr. Nickel's Injury and death, the Workers' Compensation Act provides the "***exclusive***" method of establishing liability against Allegany, and "is in place of ***any*** right of action against ***any*** person." L&E § 9-509(a), (b) (emphasis added). *See also Bd. of Educ. of Prince George's Cnty. v. Marks-Sloan*, 428 Md. 1, 35 (2012) (tracing the history of the Act and noting that the Act "generally requires an employer 'to pay workers' compensation benefits to an employee who suffers an accidental personal injury in the course of employment, regardless of whether the employer is at fault for the injury'") (citation omitted).

10

The meaning of the exclusivity provision of the Workers' Compensation Act "'*is so clear and unmistakable that it would be a denial of the legislative purpose to strike their plain terms from the statute by judicial construction*.'"  *Lowery v. McCormick Asbestos Co.*, 300 Md. 28, 42 (1984) (quoting *Victory Sparkler Co. v. Francks*, 147 Md. 368, 375 (1925)) (emphasis maintained).

Accordingly, Plaintiffs' exclusive remedy against Allegany is under the Workers' Compensation Act.  Complaint, at Exhibit 2 (Death Certificate); L&E § 9-509; *Marks-Sloan*, 428 Md. at 35.

### C. Separately And Independently, Allegany Is Also Entitled To Dismissal Of The Lawsuit As Plaintiffs Have Failed To Plead Sufficient Facts Of "Deliberate Intent" To Injure Mr. Nickel To Trigger Application Of The "Deliberate Intent" Exclusion.

#### 1. The Supreme Court Of Maryland Has Soundly Rejected Plaintiffs' Results-Oriented Interpretation Of "Deliberate Intent" To Injure.

To "bypass the exclusivity provided by" L&E § 9-509(a) and (b), Plaintiffs would have been required to allege facts that Allegany: (1) committed an intentional or deliberate act and (2) that Allegany "*desire[d] to bring about*" the *Injury* to Mr. Nickel as a "*consequence[] of the act*."  *Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 255 (1986) (emphasis added).  Plaintiffs have alleged the first element, but not the second.  The Complaint fails to allege *a single act* that Allegany committed that was purportedly "premeditated with the *specific intent to injure* [Mr. Nickel]."  *Id.* (emphasis added).

Rather, the Lawsuit relies upon the flawed premise that because Allegany allegedly permitted Mr. Nickel to work in a position where he might possibly be struck by a piece of metal, and Mr. Nickel was in fact struck by a piece of metal, Allegany must have intended to injure and kill Mr. Nickel.  *E.g.*, Complaint at 6, ¶ 27.  Maryland's Supreme Court has *expressly rejected* Plaintiffs' theory – and this Court should do the same.

In *Johnson*, the plaintiff was the mother of an employee killed by exposure to electrical wires at work.  305 Md. at 254.  The mother requested that Maryland's Supreme Court expand the "deliberate

intent" exception to include her claim "that the employer intentionally d[id] *the act* which happens to cause injury or death[,]" without intending the fatal result. *Id.* (emphasis added).

The *Johnson* court "decline[d]." *Id.* at 255. Instead, the *Johnson* court held that while the "employer's failure to warn of the dangerous electric lines or failure to provide safe conditions, deliberately placing [the employee] in a dangerous position and willfully violating governmental regulation" could constitute negligence – or even "wil[l]ful, wanton or reckless misconduct[,]" these allegations did "not constitute an intentional tort for purposes of overcoming the exclusivity provision of the Work[ers]' Compensation Act." *Id.* at 255.

The *Johnson* court's rejection of Plaintiffs' result-oriented theory of intentional harm is "unequivocal[.]" *Gantt v. Security, USA*, 356 F.3d 547, 554-55 (4th Cir. 2004) (citing *Johnson*, 305 Md. at 255). Accordingly, Allegany is entitled to dismissal of all three claims Plaintiffs have asserted against Allegany.

### 2. Plaintiffs' Bald And Unsupported Allegations Of "Deliberate Intent" Do Not Transform Plaintiffs' Negligence Claims Into Intentional Torts.

Respectively, the Court is "expected to look at the substance of the allegations before [it], not merely at [the] labels or conclusory averments" that Plaintiffs have added. *Alitalia Linee Aeree Italiane v. Tornillo*, 320 Md. 192, 195 (1990). The crux of Plaintiffs' claims against Allegany is that Allegany breached its duty to Mr. Nickel to provide a safe working environment, and those breaches proximately caused Mr. Nickel's Injury. *See*, *e.g.*, Complaint at 13, ¶¶ 64-68, 70 (alleging that Allegany had actual knowledge that the Shredder discharged metal that struck employees, that Allegany knew that repairs to the Shredder could be made but Allegany failed to make them, that risk of injury was known to Allegany, and that these acts proximately caused Mr. Nickel's Injury).

But even "'wil[l]fully failing to furnish a safe place to work, or even wil[l]fully and unlawfully violating a safety statute … *still falls short of the kind of actual intention to injure* that robs the injury

of accidental character.'" *Johnson*, 305 Md. at 254 (quoting 2A A. Larson, *The Law of Workmen's Compensation* § 68.13, at 13-22 to 26 (emphasis modified)). This is entirely consistent with the well-settled principle of Maryland law that "[s]imply including the signature language of an intentional tort does not cause a negligence claim to transform into an intentional tort." *Hines v. French*, 157 Md. App. 536, 559 (2004).

These principles are well-established in Maryland, and beyond. *See, e.g.*, *Moore v. Mericles Towing, LLC*, No. 22-CV-5715, 2023 WL 2950626, at *5 (W.D. La. Feb. 1, 2023), report and recommendation adopted, No. CV 22-5715, 2023 WL 2950594 (W.D. La. Feb. 16, 2023) ("[T]he mere allegation that an employer acted 'intentionally,' without specific facts that set forth a plausible claim of such conduct, does not avoid the workers' compensation exclusive remedy law"); *Garcia v. Westlake Chem. Corp.*, No. CV 18-764-BAJ-EWD, 2019 WL 4252801, at *7 (M.D. La. Aug. 22, 2019), report and recommendation adopted, No. CV 18-00764-BAJ-EWD, 2019 WL 4247826 (M.D. La. Sept. 6, 2019) ("[A] plaintiff cannot merely include the word 'intentional' or the phrase 'substantially certain' in a complaint to avoid application of the exclusive remedy provision of Louisiana's workers' compensation law."); *Awad v. United States*, No. CV 15-373 MV/CG, 2018 WL 4109656, at *2 (D.N.M. Aug. 29, 2018), *aff'd,* 807 F. App'x 876 (10th Cir. 2020) (holding that "a plaintiff may not recast a negligence tort as an intentional tort to take advantage of" a statutory exception for intentional torts).

Once Plaintiffs' three bald and unsupported allegations of "deliberate intent" to cause Mr. Nickel's Injury are properly excluded, the entirety of the remainder of the Complaint alleges three causes of action against Allegany sounding in **negligence**, not **intentional torts**. *See Bobo*, 346 Md. at 708-09 (holding that "bald assertions and conclusory statements . . . will not suffice" to survive dismissal); *Hines*, 157 Md. App. at 559 (holding that despite the "use of the phrase 'intentional, extreme, and outrageous' . . . the appropriate common law claim is negligence").

Accordingly, because Plaintiffs have failed to adequately allege an intentional tort to satisfy the deliberate act exception, the Lawsuit must be dismissed in accordance with the exclusivity provision of the Workers' Compensation Act.  L&E 9-509(a)-(b).  *See also See Johnson*, 305 Md. at 254.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Allegany Scrap, Inc. respectfully requests that Plaintiffs' Lawsuit be dismissed against it with prejudice.

Dated: February 28, 2024                    Respectfully submitted,


                                   *   /s/ Alex J. Brown*
                                   Joel I. Sher (AIS No. 7811010312)
                                   Alex J. Brown (AIS No. 9912140080)
                                   Michael S. Bullock (AIS No. 1712130070)
                                   Shapiro Sher Guinot & Sandler
                                   250 W Pratt Street, Suite 2000
                                   Baltimore, Maryland 21201
                                   410-385-0202 telephone
                                   410-539-7611 facsimile
                                   jis@shapirosher.com
                                   ajb@shapirosher.com
                                   msb@shapirosher.com

                                   *Attorneys for Defendant Allegany Scrap, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 28th day of February, 2024, copies of the foregoing Defendant

Allegany Scrap, Inc.'s Memorandum In Support Of Its Motion To Dismiss were served via MDEC on:

>       Jason C. Buckel, Esq.
>       T Lee Beeman, Esq.
>       Buckel Levasseur Pillai & Beeman LLC
>       206 Washington Street
>       Cumberland, Maryland 21502
>
>       *Attorneys for Plaintiffs*

AND I FURTHER CERTIFY that copies of the foregoing were served via first class mail, postage

prepaid on:

>       The Shredder Co LLC
>       7380 Doniphan Drive
>       Canutillo, Texas 79835
>       *Pro-se Defendant*
>
>       The Shredder Co, L.P.
>       6800 Market Avenue
>       El Paso, Texas 79915
>       *Pro-se Defendant*
>
>       Newell Recycling Equipment, LLC
>       1020 S Mesa Hills Drive
>       Apartment 5205
>       El Paso, Texas 79912
>       *Pro-se Defendant*
>
>       Newell Recycling Company Of El Paso, L.P.
>       P.O. Box 2867
>       Fredericksburg, Texas 78624
>       *Pro-se Defendant*

>       ___*/s/ Alex J. Brown*_____
>       Alex J. Brown (AIS No. 9912140080)

15

E-FILED; Allegany Circuit Court
Docket: 2/28/2024 9:49 AM; Submission: 2/28/2024 9:49 AM
Envelope: 15567870

# EXHIBIT  1

**WCC Public Claim Information Inquiry**

Instructions

Claim Information Inquiry

WCC Codes

Help

# Claim Information Inquiry

| Claim Number | Claimant SSN (last 4 digits) | Claimant Last Name |
|---|---|---|
| | XXX-XX- 2869 | Nickel |

Claimant Date of Birth
01/01/1990

○ Claim Inquiry    ○ Hearing Issues    ● Hearing Results         Search    Back

Claim Number          Claimant Name
B847488               JOSHUA PAUL NICKEL (DECD)

**HEARING RESULTS INFORMATION**

| Code | Description | Hearing Date | Received Date | Acted Date | DOC Group | COM | ROR | RQ |
|---|---|---|---|---|---|---|---|---|
| Continuance | COM | Decision Code | | | | | | |
| - | - | 20210308 | 1/18/2021 12:00:00 AM | 1/25/2021 12:00:00 AM | ALC | HLM | N | IN |
| Y | HLM | CONT | | | | | | |
| - | - | 20210222 | 1/1/0001 12:00:00 AM | 1/1/0001 12:00:00 AM | ALC | DTS | - | - |
| - | - | DECD | | | | | | |

Usage Of This System Constitutes Acceptance Of The Online User Services Agreement. WCC Retains The Right To Suspend Any User

Found To Be In Violation Of The Online User Services Agreement.

IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.*

      **Plaintiffs,**

vs.                             Civil Action No.: **C-01-CV-23-000317**

**ALLEGANY SCRAP, INC.,** *et al.*

      **Defendants.**

---

### CONSENT MOTION TO EXTEND PLAINTIFFS' DEADLINE
### TO RESPOND TO DEFENDANT ALLEGANY SCRAP'S MOTION TO DISMISS

Plaintiff, LINDA S. BEEMAN ("Plaintiff Beeman"), as *Surviving Mother* of *Decedent* Joshua P. Nickel ("Nickel"), and as *Personal Representative* of the Estate of Joshua P. Nickel (the "Nickel Estate"), by and through their counsel, Jason C. Buckel, Esq., T. Lee Beeman, Jr., Esq., and Buckel, Levasseur, Pillai & Beeman, LLC, and KARL E. NICKEL ("Use Plaintiff Nickel"), as *Surviving Father* of *Decedent* Joshua P. Nickel, an unrepresented "*Use Plaintiff*", by and through their counsel, Jason C. Buckel, T. Lee Beeman, Jr. and Buckel, Levasseur, Pillai & Beeman, LLC, with the consent of Defendant, Allegany Scrap, Inc., hereby move this Court to extend the deadline for Plaintiffs to file their responses to Defendant Allegany Scrap, Inc.'s Motion to Dismiss, and in support thereof, state the following:

1.      Defendant Allegany Scrap, Inc., filed a Motion to Dismiss Plaintiffs' Complaint. on February 28, 2024."

2.      Plaintiffs' lead counsel, Jason C. Buckel, is a member of the Maryland General Assembly.

3.      MD Code, Courts and Judicial Proceedings, § 6-402 provides "Subject to subsection (d) of this section, if a member or desk officer of the General Assembly is an attorney of record in a proceeding, the proceeding shall be continued from 5 days before the legislative

session convenes until at least 10 days after it is adjourned." MD Code, Cts & Jud. Pro. § 6-402(b). It further provides that:

> "If a brief, a memorandum of law, or another document is required to be filed in a proceeding continued under this section:
>> (1) The proceeding shall be continued for a time sufficient to allow it to be prepared and filed; and
>> (2) Any time prescribed by the Maryland Rules, by rule or order of court, or by any statute applicable to the filing of the document shall begin to run 10 days after the General Assembly adjourns.
>> *Id*. at § 6-402(d).

4.     The Maryland General Assembly convened the 446th session on January 10, 2024 and adjourns on April 8, 2024.

5.     Plaintiffs, pursuant to MD Code, Cts. & Jud. Pro. § 6-402 move the Court to extend Plaintiffs' deadline to respond to Defendant Allegany Scrap, Inc.'s Motion to Dismiss until May 3, 2024.

6.     Defendant Allegany Scrap, Inc. consents to this extension.

WHEREFORE, Plaintiffs move this Court to extend their deadlines to respond to Defendant Allegany Scrap's Motion to Dismiss until May 3, 2024, and for such further relief as this Court deems necessary and just.

**GRANTED**

03/19/2024 10:36:02 AM

Respectfully submitted,

_____/s/_____
Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman  AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700  F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this 14th day of March, a copy of the foregoing was filed and served through the MDEC system and has been delivered to all recipients entitled to receive electronic service of the same.

Respectfully submitted,

_____/s/_____

Jason C. Buckel, AIS No.: 9612170120

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.*

     **Plaintiffs,**

vs.                     Civil Action No.: **C-01-CV-23-000317**

**ALLEGANY SCRAP, INC.,** *et al.*

     **Defendants.**

## CONSENT MOTION TO EXTEND PLAINTIFFS' DEADLINE
## TO RESPOND TO DEFENDANT ALLEGANY SCRAP'S MOTION TO DISMISS

     Plaintiff, LINDA S. BEEMAN ("Plaintiff Beeman"), as *Surviving Mother* of *Decedent* Joshua P. Nickel ("Nickel"), and as *Personal Representative* of the Estate of Joshua P. Nickel (the "Nickel Estate"), by and through their counsel, Jason C. Buckel, Esq., T. Lee Beeman, Jr., Esq., and Buckel, Levasseur, Pillai & Beeman, LLC, and KARL E. NICKEL ("Use Plaintiff Nickel"), as *Surviving Father* of *Decedent* Joshua P. Nickel, an unrepresented "*Use Plaintiff*", by and through their counsel, Jason C. Buckel, T. Lee Beeman, Jr. and Buckel, Levasseur, Pillai & Beeman, LLC, with the consent of Defendant, Allegany Scrap, Inc., hereby move this Court to extend the deadline for Plaintiffs to file their responses to Defendant Allegany Scrap, Inc.'s Motion to Dismiss, and in support thereof, state the following:

     1.     Defendant Allegany Scrap, Inc., filed a Motion to Dismiss Plaintiffs' Complaint. on February 28, 2024."

     2.     Plaintiffs' lead counsel, Jason C. Buckel, is a member of the Maryland General Assembly.

     3.     MD Code, Courts and Judicial Proceedings, § 6-402 provides "Subject to subsection (d) of this section, if a member or desk officer of the General Assembly is an attorney of record in a proceeding, the proceeding shall be continued from 5 days before the legislative

session convenes until at least 10 days after it is adjourned." MD Code, Cts & Jud. Pro. § 6-402(b). It further provides that:

> "If a brief, a memorandum of law, or another document is required to be filed in a proceeding continued under this section:
> (1) The proceeding shall be continued for a time sufficient to allow it to be prepared and filed; and
> (2) Any time prescribed by the Maryland Rules, by rule or order of court, or by any statute applicable to the filing of the document shall begin to run 10 days after the General Assembly adjourns.
> *Id*. at § 6-402(d).

4.      The Maryland General Assembly convened the 446th session on January 10, 2024 and adjourns on April 8, 2024.

5.      Plaintiffs, pursuant to MD Code, Cts. & Jud. Pro. § 6-402 move the Court to extend Plaintiffs' deadline to respond to Defendant Allegany Scrap, Inc.'s Motion to Dismiss until May 3, 2024.

6.      Defendant Allegany Scrap, Inc. consents to this extension.

WHEREFORE, Plaintiffs move this Court to extend their deadlines to respond to Defendant Allegany Scrap's Motion to Dismiss until May 3, 2024, and for such further relief as this Court deems necessary and just.

Respectfully submitted,

**GRANTED**

_____/s/_____

03/19/2024 10:36:02 AM

Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman  AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700  F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY, that on this 14th day of March, a copy of the foregoing was filed and served through the MDEC system and has been delivered to all recipients entitled to receive electronic service of the same.

Respectfully submitted,

_____/s/_____
Jason C. Buckel, AIS No.: 9612170120

E-SERVED Allegany Circuit Court 3/19/2024 10:47 AM System SystemEnvelope:15797828

E-FILED; Allegany Circuit Court
Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/12/25    Docket: 3/19/2024 10:49 AM
Docket 03/20/2024 9:49 AM; Submission: 3/19/2024
Envelope: 15797828

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

| | | |
|---|---|---|
| **LINDA S. BEEMAN,** *et al.* | * | |
| **Plaintiffs** | * | |
| **v.** | * | |
| **ALLEGANY SCRAP, INC.,** *et al.* | * | **Case No. C-01-CV-23-000317** |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT ALLEGANY SCRAP, INC.'S MOTION TO DISMISS
### AND REQUEST FOR HEARING

Defendant Allegany Scrap, Inc. ("Allegany"), by and through undersigned counsel, and pursuant to Maryland Rules 2-311 and 2-322(b), hereby files this Motion to Dismiss all claims against Allegany by plaintiffs the Estate of Joshua P. Nickel and Mr. Nickel's surviving mother and father (collectively "Plaintiffs"). All three Plaintiffs have failed to state a claim against Allegany. Allegany is entitled to dismissal of all claims asserted against it, with prejudice.

The legal arguments and authority supporting dismissal of all claims against Allegany in this lawsuit are set forth in the accompanying Memorandum of Law, which has been filed contemporaneously herewith and which Allegany adopts and incorporates herein in full by reference.

### REQUEST FOR HEARING

Allegany hereby requests, pursuant to Maryland Rule 2-311(f), a hearing on Allegany's Motion To Dismiss.

**NOTED**

*/s/ Alex J. Brown*

Alex J. Brown - (CPF# 9912140080)

Hearing will be set in once response is filed.

03/19/2024 10:37:38 AM

Dated: February 28, 2024                         Respectfully submitted,

                                         */s/ Alex J. Brown*
                                 Joel I. Sher (AIS No. 7811010312)
                                 Alex J. Brown (AIS No. 9912140080)
                                 Michael S. Bullock (AIS No. 1712130070)
                                 Shapiro Sher Guinot & Sandler
                                 250 W Pratt Street, Suite 2000
                                 Baltimore, Maryland 21201
                                 410-385-0202 telephone
                                 410-539-7611 facsimile
                                 jis@shapirosher.com
                                 ajb@shapirosher.com
                                 msb@shapirosher.com

                                 *Attorneys for Defendant Allegany Scrap, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 28th day of February, 2024, copies of the foregoing Defendant

Allegany Scrap, Inc.'s Motion To Dismiss And Request For Hearing were served via MDEC on:

> Jason C. Buckel, Esq.
> T Lee Beeman, Esq.
> Buckel Levasseur Pillai & Beeman LLC
> 206 Washington Street
> Cumberland, Maryland 21502
>
> *Attorneys for Plaintiffs*

AND I FURTHER CERTIFY that copies of the foregoing were served via first class mail, postage

prepaid on:

> The Shredder Co LLC
> 7380 Doniphan Drive
> Canutillo, Texas 79835
> *Pro-se Defendant*
>
> The Shredder Co, L.P.
> 6800 Market Avenue
> El Paso, Texas 79915
> *Pro-se Defendant*
>
> Newell Recycling Equipment, LLC
> 1020 S Mesa Hills Drive
> Apartment 5205
> El Paso, Texas 79912
> *Pro-se Defendant*
>
> Newell Recycling Company Of El Paso, L.P.
> P.O. Box 2867
> Fredericksburg, Texas 78624
> *Pro-se Defendant*

                    */s/ Alex J. Brown*
                Alex J. Brown (AIS No. 9912140080)

OFFICE OF

# Dawne D. Lindsey

CLERK OF THE CIRCUIT COURT
FOR ALLEGANY COUNTY
30 WASHINGTON STREET
CUMBERLAND, MD 21502

Consent Motion- Granted   03/19/2024

**To:**
THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835

1-01-CV-23-317

BALTIMORE MD 212

20 MAR 2024 PM 1

US POSTAGE AND PITNEY BOWES
ZIP 21502  $ 000.64°
02 4W
0000349508 MAR 19 2024

NIXIE          799    CE 1              2203/27/24

BC: 21502326599      *2127-05139-20-46
RETURN TO SENDER
NO MAIL RECEPTACLE
UNABLE TO FORWARD

SET FOR HEARING

Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/12/25    Page 144 of 737

E-FILED; Allegany Circuit Court
Docket: 4/5/2024 5:14 PM; Submission: 4/5/2024 5:14 PM
Envelope: 16011580

04/24/2024 11:12:55 AM

### IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

LINDA S. BEEMAN, as Surviving Mother :
of Joshua P. Nickel, *et al.*,     :
              :
     Plaintiffs    :
              :
 v.           :  Civil Case No. C-01-CV-23-000317
              :
ALLEGANY SCRAP, INC., *et al.*,   :
              :
     Defendant   :

### NEWELL DEFENDANTS' MOTION TO DISMISS
### (HEARING REQUESTED)

Defendants The Shredder Co., LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. (the "Newell Defendants"), by counsel and pursuant to Rule 2-322,[1] move to dismiss Plaintiffs' Complaint:[2]

### I. INTRODUCTION

The Court lacks personal jurisdiction over the Newell Defendants. To the extent the Court has jurisdiction over any of the Newell Defendants, it should dismiss Counts IV, X, and XVI because these purported claims for failure to prevent an end user from removing safety devices from a product do not exist in Maryland. In addition, Plaintiffs failed to timely notify the Newell Defendants of the claims alleged in Counts VI, XII, and XVIII, as required by Maryland Uniform Commercial Code. Finally, Plaintiffs did not allege any facts that would create a warranty of fitness

---

[1] Counsel have entered their appearance on behalf of the Newell Defendants for the limited purpose of challenging this Court's personal jurisdiction over those parties and preserving certain Rule 2-322(b) defenses. In accordance with Rule 2-131(d), the entry of appearance and filing of this Motion do not to constitute a voluntary or general appearance or a waiver of the right of those defendants to assert the defense of lack of personal jurisdiction.

[2] Pursuant to a written agreement among counsel based on scheduling difficulties, the deadline for the Newell Defendants' response to the Complaint was extended to April 5, 2024, and Plaintiffs' deadline for any opposition thereto was extended to May 17, 2024.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2

for a particular purpose. The Court should dismiss all claims against the Newell Defendants, or, alternatively, the claims specifically identified.

## II.   **FACTS**[3]

The Newell Defendants are Texas businesses. Plaintiffs allege upon information and belief that all four Newell Defendants manufactured the industrial shredder at issue. Compl., ¶¶ 6–10. More specifically, they allege that "TSC LLC and/or TSC LP"[4] manufactured the specific model that is the source of their claims. *Id.*, ¶ 14. They allege that in 2011, Defendant Allegany Scrap began using the shredder in Maryland. *Id.*, ¶ 26. There is no allegation which describes how or when the shredder was transferred from any of the Newell Defendants to Allegany Scrap, nor is there any clear allegation of the basis for personal jurisdiction over the Newell Defendants. Of particular note, Newell Recycling Equipment, LLC was not created until 2015. Ex. 1, Tex. Office of the Comptroller, Franchise Tax Account Status for Newell Recycling Equipment, LLC.[5] It did not exist until four years *after* Allegany Scrap began using the shredder.

Plaintiffs allege in various wrongful death and survivor actions that the Newell Defendants: (i) manufactured a defective shredder, (ii) designed a shredder without necessary safety measures, (iii) failed to prevent the removal of those safety measures, (iv) were negligent in these endeavors, and (v) breached implied warranties. Specific facts for the claims at issue in this motion are set forth *infra*.

---

[3] Pursuant to Rule 2-322, all non-jurisdictional alleged facts are taken as true for the purpose of this motion only. The Newell Defendants intend to vigorously contest all allegations against them.

[4] For simplicity, the Newell Defendants will use the abbreviations set forth in the Complaint.

[5] The Court can review undisputed facts outside the Complaint without converting this motion into a motion for summary judgment. *Smith v. Danielczyk*, 400 Md. 98, 105 (2007) (affirming dismissal). Government records are sufficiently indisputable. *See Abrishamian v. Washington Med. Group, P.C.*, 216 Md. App. 386, 413 (2014) (describing information judicially noticeable).

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2

## III.    **STANDARD OF REVIEW**

The purpose of a motion to dismiss is to end at the preliminary motion stage of the case a complaint for which no relief can be granted. *See RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010). Although Rule 2-303 does not require technical forms of pleading, "bald assertions and conclusory statements by the pleader will not suffice," *id.* at 644, and "ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 335 (2009). "'[T]he necessary allegations of fact sufficient to state a cause of action . . . in a simple factual situation vary from those in more complex factual situations and a form of declaration useful in the former situation may not be sufficient as a guide in preparing a declaration in the more complex case.'" *Id.* at 655 (*citing Read Drug v. Colwill Constr.*, 250 Md. 406, 413 (1968)). If the well-pled facts and any permissible inferences therefrom do not establish the elements of a claim for which relief can be granted, the Court must dismiss the complaint. *RRC Ne.*, 413 Md. at 643.

"As Judge Paul V. Niemeyer notes in his Maryland Rules Commentary, Third Edition, all of the defenses listed in Maryland Rule 2-322(a) are collateral to the merits and raise questions of law." *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 11-12 (2005) (citing Paul V. Niemeyer & Linda Shuett, MARYLAND RULES COMMENTARY 205 (3d ed. 2003). "If facts are necessary in deciding the motion, the court may consider affidavits or other evidence during an evidentiary hearing." *Id.*

## IV.    **ARGUMENT**

### I.    This Court Lacks Personal Jurisdiction over the Newell Defendants.

The Newell Defendants are Texas businesses, formed in Texas. They cannot be haled into Maryland court unless Plaintiffs satisfy the Maryland long-arm statute and Fourteenth Amendment

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2

requirements of fundamental fairness. The Newell Defendants are not alleged to have had sufficient contacts with Maryland to create personal jurisdiction. The Court therefore lacks personal jurisdiction over them.

A plaintiff must satisfy two requirements for the Court to exercise jurisdiction over an out-of-state defendant. *CSR, Ltd. v. Taylor*, 411 Md. 457, 472 (2009). First, the requirements of the Maryland long-arm statute must be satisfied. *Id.* at 473. If the long-arm statute is applicable, the resulting exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *Id.* The two analyses overlap but are not identical. *Id.* at 475. In the only subsection relevant here, Maryland's long-arm statute provides six grounds for exercising personal jurisdiction over an out-of-state defendant. Only where the defendant or its agent does one of the following things is jurisdiction possible:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing

MD. CODE ANN., COURTS & JUD. PROC., § 6-103(b).

The only basis for jurisdiction over the Newell Defendants that is alleged in the Complaint is that they all manufactured the product at issue. Compl., ¶¶ 7–10. That same allegation is offered upon information and belief for all four Newell Defendants. *Id.* Newell Recycling was not even formed at the alleged date of sale, Ex. 1, and TSC, LP was forfeited before the alleged date of sale.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2

Ex. 2, Tex. Office of the Comptroller, Franchise Tax Account Status for TSC, LP. There are no allegations that connect the Newell Defendants to Maryland, as would satisfy the long-arm statute.

For similar reasons, the Newell Defendants' Fourteenth Amendment due process rights would be violated if they were required to defend themselves in a Maryland court. *CSR, Ltd.*, 411 Md. at 476–77. That, too, is dispositive of personal jurisdiction. Maryland courts examine the following elements to determine whether jurisdiction comports with due process: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 477. The fact that a product is eventually sold into or used in a state is not necessarily sufficient to create personal jurisdiction over a manufacturer consistent with the Fourteenth Amendment. *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994) (product manufactured out-of-state and used in-state did not create personal jurisdiction over manufacturer).

First, the Newell Defendants are not alleged to have "deliberately" engaged in any activities in Maryland. *CSR, Ltd.*, 411 Md. at 480. Second, they are not alleged to have purposefully directed any product or service toward Maryland. *Id.* at 482. Because Plaintiffs failed to plead those requirements, it is not necessary to reach the third. *Id.* at 493. To the extent the Court reaches the reasonability requirement, it would be unreasonable to force personal jurisdiction upon the Newell Defendants when they are not even alleged to have sold the product at issue to Defendant Allegany Scrap. The Court lacks personal jurisdiction over the Newell Defendants and should dismiss all claims against them.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

5

20743227_2

II.     Counts IV, X, and XVI (For Defective Design) Fail to State Claims for Which Relief Can be Granted.

In Counts IV, X, and XVI, Plaintiffs claim that the Newell Defendants manufactured a shredder with safety measures. They then allege that the Newell Defendants failed to prevent an eventual user, Defendant Allegany Scrap, from degrading or removing those safety measures. Plaintiffs have alleged normal design defects elsewhere in the Complaint. These additional products liability claims attempt to blame the Newell Defendants for Defendant Alleghany Scrap's failure to maintain (or, alternatively, decision to remove) safety devices from the product. These claims are incompatible with Maryland law and should be dismissed.

For products liability cases, Maryland has adopted Section 402A of the Restatement (Second) of Torts. *Halliday v. Sturm, Ruger & Co.*, 368 Md. 186, 193 (2002). There are four primary elements to Plaintiffs' design defect claims:

> 1) The product was in a defective condition at the time it left the control or possession of the seller;
> 2) The product was unreasonably dangerous to the consumer;
> 3) The product was expected to and did reach the consumer without substantial change in its condition; and
> 4) The defect in the product was the proximate cause of the plaintiff's injuries

Sandler, *et al.*, *Pleading Causes of Action* 416 (7th ed. 2022), *citing Phipps v. General Motors Corp.*, 278 Md. 337, 363 (1976).

The allegations attributed to Counts IV, X, and XVI, Compl., ¶¶ 48–51, fail to satisfy those elements. First, there is no allegation that the product was defective at the time it left the control of the Newell Defendants. On the contrary, Plaintiffs allege that the product used "deflectors, shielding, rubber curtains or other safety features to prevent metal shrapnel from flying out of the shredder." Compl., ¶ 49. In other words, the product was not in a defective condition when it was

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

6

20743227_2

sold. As a result, it was not "unreasonably dangerous to the consumer," as required for the second element.

The third element requires that the product "reach the consumer without substantial change in its condition." But Plaintiffs allege that there was a substantial change in the product's condition after it was sold. Namely, they allege that after the product was sold with safety features, the features "degraded" or were "intentionally removed" by Allegany Scrap at some time between 2011 and the incident in 2020. *Id.* The failure to maintain or decision to remove the safety features was apparently made for cost reasons. *Id.*, ¶ 38. Because of the change in the product's condition in the nine years between the alleged sale and the alleged incident, the design of the product was not the proximate cause of Plaintiffs' injuries in 2021.

A shredder manufacturer cannot be liable for an end user's failure to perform basic maintenance or even the user's intentional removal of safety features. If the owner of a car failed to perform maintenance on the car's brakes for nine years, ignored complaints that the brakes had stopped working and were causing accidents, and *removed* part of the brake assembly, no claim would lie against the manufacturer for failing to design brakes that required no maintenance but also could not be removed. Plaintiffs' claims would turn the Newell Defendants into permanent guarantors of product safety. That is not the law of Maryland. Counts IV, X, and XVI are incompatible with Maryland products liability law and therefore must be dismissed.

III.     Plaintiffs Failed to Notify the Newell Defendants of the Implied Warranty Claims in Counts VI, XII, and XVIII.

In Maryland, there are two distinct types of implied warranty—a warranty of merchantability, and a warranty of fitness for a particular purpose. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 158, (2007). Counts VI, XII, and XVIII are claims for breaches of both implied

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

7

20743227_2

warranties.[6] Because Plaintiffs do not allege that they ever notified the Newell Defendants of the alleged defect, both versions of the claims fail.

Pursuant to the Maryland Uniform Commercial Code, a plaintiff alleging a breach of *any* implied warranty must give notice to the seller or manufacturer "within a reasonable time after he discovers or should have discovered any breach." MD. CODE ANN., COMM. LAW, § 2-607(3)(a). If the plaintiff fails to provide timely notice, he or she is "barred from any remedy" for breach of implied warranty. *Id.* Although the statute uses the term "buyer," the warning requirement has been interpreted to apply to end users who bring claims for breach of implied warranty. *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 106 (D. Md. 2020) (applying Maryland law to end user of medical device). In *Morris*, summary judgment was granted because there was no evidence the end user notified the manufacturer. *Id.* Notably, the court held that the filing of the lawsuit did not serve as the required notice. *Id.*

Plaintiffs' Complaint contains no allegation that Plaintiffs ever notified the Newell Defendants. Plaintiffs' failure to provide the required notice is fatal to both of the implied warranty claims contained in Counts VI, XII, and XVIII.

IV.    Counts VI, XII, and XVIII Contain No Allegations of Sale for a Particular Purpose.

Counts VI, XII, and XVIII include claims for breach of another implied warranty, of fitness for a particular purpose. That implied warranty arises when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." MD. CODE ANN., COMM. LAW, § 2-315(1). A complaint for breach of this type of warranty must allege that the buyer

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[6] Plaintiffs therefore allege two claims simultaneously in Counts VI, XII, and XVIII, Compl., ¶¶ 58–59, a violation of basic pleading rules that is grounds for dismissal of the claims. Niemeyer & Schuett, *Md. Rules Commentary* 322 (5th ed. 2019).

20743227_2

bought the product "for a 'particular purpose' that in any way differed from the 'ordinary purpose' for which" the product would be used. *Bond v. Nibco, Inc.*, 96 Md. App. 127, 137 (1993). The complaint must also allege that the defendant "knew of this 'particular purpose.'" *Id.* at 137–38 (dismissing claim for failure to plead same).

Plaintiffs do not allege that anyone told the Newell Defendants they would use the shredder for anything other than its ordinary purpose (shredding large pieces of metal). They also do not allege that the shredder was used for any particular purpose.[7] Indeed, it is difficult to imagine a purpose an industrial shredder would be used for other than industrial shredding. None of the Newell Defendants is alleged to have sold the shredder to anyone for any particular purpose other than shredding. Pursuant to *Bond*, Plaintiffs' claims in Counts VI, XII, and XVIII for breach of implied warranty of fitness for a particular purpose are deficient and should be dismissed.

## V.    <u>CONCLUSION</u>

This Court lacks personal jurisdiction over the Newell Defendants. To the extent the Court has jurisdiction over any of the Newell Defendants, Counts IV, VI, X, XII, XVI, and XVIII fail to state claims for which relief can be granted and should be dismissed. The Newell Defendants should not be required to defend against strict liability claims when this Court does not have jurisdiction and the claims are not well-founded in Maryland law.

WHEREFORE, for the reasons set forth herein, Defendants The Shredder Co., LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. respectfully request that this Honorable Court (i) dismiss all claims against the Newell Defendants on the basis of personal jurisdiction, or (ii) dismiss Counts IV, VI, X, XII, XVI, and

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[7] There is an allegation in Paragraph 59 of the Complaint that the shredder was intended to be used "as an indoor lighting device." This appears to be a textual error; nothing else in the Complaint suggests that the industrial shredder was used as a lamp.

20743227_2

XVIII on the grounds that they fail to state claims for which relief can be granted, and award such other relief as the Court deems just and proper.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:    /s/ E. Andrew Cole
E. Andrew Cole (AIS #0206190051)
1101 Wootton Parkway
Suite 700
Rockville, Maryland 20852
Direct: 301-838-3218
Fax: 301-354-8118
ecole@steinsperling.com

By:    /s/ Joseph M. Moeller
Joseph M. Moeller (AIS #1812120023)
1101 Wootton Parkway
Suite 700
Rockville, Maryland 20852
Direct: 301-838-3237
Fax: 301-354-8137
jmoeller@steinsperling.com

*Attorneys for Newell Defendants*

## **REQUEST FOR HEARING**

Pursuant to Rule 2-311, Defendants request a hearing on this motion.

/s/ E. Andrew Cole
E. Andrew Cole (AIS #0206190051)

/s/ Joseph M. Moeller
Joseph M. Moeller (AIS #1812120023)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

10

20743227_2

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of April, 2024, a copy of the foregoing was submitted to MDEC for service on counsel of record.

/s/ *E. Andrew Cole*
E. Andrew Cole (AIS #0206190051)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

11

20743227_2

E-FILED; Allegany Circuit Court
Docket: 4/5/2024 5:14 PM; Submission: 4/5/2024 5:14 PM
Envelope: 16011580

# EXHIBIT 1





# Franchise Tax Account Status

As of : 03/16/2024 15:56:49

**This page is valid for most business transactions but is not sufficient for filings with the Secretary of State**

| NEWELL RECYCLING EQUIPMENT, LLC | |
|---|---|
| **Texas Taxpayer Number** | 32057567557 |
| **Mailing Address** | 1020 S MESA HILLS DR APT 5205 EL PASO, TX 79912-5121 |
| **❷ Right to Transact Business in Texas** | ACTIVE |
| **State of Formation** | TX |
| **Effective SOS Registration Date** | 06/18/2015 |
| **Texas SOS File Number** | 0802237127 |
| **Registered Agent Name** | ALTON SCOTT NEWELL JR |
| **Registered Office Street Address** | 1020 SOUTH MESA HILLS, APT. 5205 EL PASO, TX 79912 |

E-FILED; Allegany Circuit Court
Docket: 4/5/2024 5:14 PM; Submission: 4/5/2024 5:14 PM
Envelope: 16011580

# EXHIBIT 2





# Franchise Tax Account Status

As of : 03/16/2024 15:54:00

---

**This page is valid for most business transactions but is not sufficient for filings with the Secretary of State**

---

| | |
|---|---|
| **THE SHREDDER COMPANY, L.P.** | |
| **Texas Taxpayer Number** | 32036132168 |
| **Mailing Address** | 6800 MARKET AVE EL PASO, TX 79915-1014 |
| ❷ **Right to Transact Business in Texas** | FRANCHISE TAX INVOLUNTARILY ENDED <u>Request tax clearance to reinstate entity</u> |
| **State of Formation** | TX |
| **Effective SOS Registration Date** | 08/25/2000 |
| **Texas SOS File Number** | 0013878910 |
| **Registered Agent Name** | ALTON SCOTT NEWELL |
| **Registered Office Street Address** | 6800 MARKET EL PASO, TX 79915 |

## IN THE CIRCUIT COURT FOR ALLEGHANY COUNTY, MARYLAND

LINDA S. BEEMAN, as Surviving Mother   :
Of Joshua P. Nickel, *et al.,*   :
   :
      Plaintiffs,   :
   :
    v.   :    Civil Case No.:  C-01-CV-23-000317
   :
ALLEGANY SCRAP, INC., *et al.,*   :
   :
      Defendant.   :

### <u>LINE</u>

TO THE CLERK OF THE COURT:

     Please enter the appearance of E. Andrew Cole, Joseph M. Moeller, and the law firm of Stein Sperling Bennett De Jong Driscoll PC, as counsel for Defendants, The Shredder Co. LLC, The Shredder Co., L.P., Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. in the above-captioned matter.

                 Respectfully submitted,

                 STEIN SPERLING BENNETT
                 DE JONG DRISCOLL PC

        By:    */s/ E. Andrew Cole*
                 E. Andrew Cole (AIS #0206190051)
                 Joseph M. Moeller (AIS #1812120023)
                 1101 Wootton Parkway, Suite 700
                 Rockville, Maryland 20852
                 Direct: 301-838-3218
                 Fax: 301-354-8118
                 ecole@steinsperling.com
                 jmoeller@steinsperling.com

                 *Attorneys for Defendants, The Shredder Co LLC,*
                 *The Shredder Co, L.P., Newell Recycling Equipment,*
                 *LLC, and Newell Recycling Company of El Paso, L.P.*

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743805_1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of April, 2024, copies of the foregoing Line were served, via MDEC for service on all counsel of record.

*/s/ E. Andrew Cole*

E. Andrew Cole (AIS #0206190051)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

2

20743805_1

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   JASON CORD  BUCKEL
206 WASHINGTON STREET
CUMBERLAND, MD 21502

Case Number:             C-01-CV-23-000317
Related Case Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

Case C-01-CV-23-000317 Document 16 Filed 06/12/25 Page 162 of 737

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   JOEL I  SHER
SHAPIRO SHER GUINOT & SANDLER
250 W PRATT ST
STE 2000
BALTIMORE, MD 21201

**Case Number:**      C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

E-FILED; Allegany Circuit Court
Docket: 4/24/2024 1:53 PM; Submission: 4/24/2024 1:53 PM
Envelope: 16209455

**CIRCUIT COURT FOR ALLEGANY COUNTY MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** T LEE BEEMAN
BUCKEL LEVASSEUR PILLAI & BEEMAN LLC
206 WASHINGTON STREET
CUMBERLAND, MD 21502

**Case Number:** C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner: (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   JOSEPH MICHAEL MOELLER
STEIN SPERLING BENNETT DE JONG DRISCOLL, P.C.
1101 WOOTON PARKWAY
SUITE 700
ROCKVILLE, MD 20852

**Case Number:**          C-01-CV-23-000317
**Related Case Number:**

LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP,
INC., ET AL.

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

Case 1:25-cv-01012-DLB Document 16 Filed 06/12/25 Page 165 of 737

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  MICHAEL STEPHEN BULLOCK
SHAPIRO SHER GUINOT & SANDLER, PA
250 WEST PRATT STREET
SUITE 2000
BALTIMORE, MD 21201

**Case Number:**          C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  ALEX JONATHAN  BROWN
SHAPIRO, SHER, GUINOT & SANDLER, P.A.
250 W PRATT STREET
20TH FLOOR
BALTIMORE, MD 21201

**Case Number:**      C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**SET FOR HEARING**

Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/12/25    Page 167 of 737

E-FILED; Allegany Circuit Court
Docket: 4/5/2024 5:14 PM; Submission: 4/5/2024 5:14 PM
Envelope: 16011580

04/24/2024 11:12:55 AM

### IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

LINDA S. BEEMAN, as Surviving Mother : 
of Joshua P. Nickel, *et al.*, :
           :
           Plaintiffs :
           :
           v. :           Civil Case No. C-01-CV-23-000317
           :
ALLEGANY SCRAP, INC., *et al.*, :
           :
           Defendant :

## NEWELL DEFENDANTS' MOTION TO DISMISS
### (HEARING REQUESTED)

Defendants The Shredder Co., LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. (the "Newell Defendants"), by counsel and pursuant to Rule 2-322,[1] move to dismiss Plaintiffs' Complaint:[2]

## I.    INTRODUCTION

The Court lacks personal jurisdiction over the Newell Defendants. To the extent the Court has jurisdiction over any of the Newell Defendants, it should dismiss Counts IV, X, and XVI because these purported claims for failure to prevent an end user from removing safety devices from a product do not exist in Maryland. In addition, Plaintiffs failed to timely notify the Newell Defendants of the claims alleged in Counts VI, XII, and XVIII, as required by Maryland Uniform Commercial Code. Finally, Plaintiffs did not allege any facts that would create a warranty of fitness

---

[1] Counsel have entered their appearance on behalf of the Newell Defendants for the limited purpose of challenging this Court's personal jurisdiction over those parties and preserving certain Rule 2-322(b) defenses. In accordance with Rule 2-131(d), the entry of appearance and filing of this Motion do not to constitute a voluntary or general appearance or a waiver of the right of those defendants to assert the defense of lack of personal jurisdiction.

[2] Pursuant to a written agreement among counsel based on scheduling difficulties, the deadline for the Newell Defendants' response to the Complaint was extended to April 5, 2024, and Plaintiffs' deadline for any opposition thereto was extended to May 17, 2024.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

1

20743227_2

for a particular purpose. The Court should dismiss all claims against the Newell Defendants, or, alternatively, the claims specifically identified.

## II.    **FACTS**[3]

The Newell Defendants are Texas businesses. Plaintiffs allege upon information and belief that all four Newell Defendants manufactured the industrial shredder at issue. Compl., ¶¶ 6–10. More specifically, they allege that "TSC LLC and/or TSC LP"[4] manufactured the specific model that is the source of their claims. *Id.*, ¶ 14. They allege that in 2011, Defendant Allegany Scrap began using the shredder in Maryland. *Id.*, ¶ 26. There is no allegation which describes how or when the shredder was transferred from any of the Newell Defendants to Allegany Scrap, nor is there any clear allegation of the basis for personal jurisdiction over the Newell Defendants. Of particular note, Newell Recycling Equipment, LLC was not created until 2015. Ex. 1, Tex. Office of the Comptroller, Franchise Tax Account Status for Newell Recycling Equipment, LLC.[5] It did not exist until four years *after* Allegany Scrap began using the shredder.

Plaintiffs allege in various wrongful death and survivor actions that the Newell Defendants: (i) manufactured a defective shredder, (ii) designed a shredder without necessary safety measures, (iii) failed to prevent the removal of those safety measures, (iv) were negligent in these endeavors, and (v) breached implied warranties. Specific facts for the claims at issue in this motion are set forth *infra*.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[3] Pursuant to Rule 2-322, all non-jurisdictional alleged facts are taken as true for the purpose of this motion only. The Newell Defendants intend to vigorously contest all allegations against them.

[4] For simplicity, the Newell Defendants will use the abbreviations set forth in the Complaint.

[5] The Court can review undisputed facts outside the Complaint without converting this motion into a motion for summary judgment. *Smith v. Danielczyk*, 400 Md. 98, 105 (2007) (affirming dismissal). Government records are sufficiently indisputable. *See Abrishamian v. Washington Med. Group, P.C.*, 216 Md. App. 386, 413 (2014) (describing information judicially noticeable).

2

20743227_2

### III.   **STANDARD OF REVIEW**

The purpose of a motion to dismiss is to end at the preliminary motion stage of the case a complaint for which no relief can be granted. *See RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010). Although Rule 2-303 does not require technical forms of pleading, "bald assertions and conclusory statements by the pleader will not suffice," *id.* at 644, and "ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 335 (2009). "'[T]he necessary allegations of fact sufficient to state a cause of action . . . in a simple factual situation vary from those in more complex factual situations and a form of declaration useful in the former situation may not be sufficient as a guide in preparing a declaration in the more complex case.'" *Id.* at 655 (*citing Read Drug v. Colwill Constr.*, 250 Md. 406, 413 (1968)). If the well-pled facts and any permissible inferences therefrom do not establish the elements of a claim for which relief can be granted, the Court must dismiss the complaint. *RRC Ne.*, 413 Md. at 643.

"As Judge Paul V. Niemeyer notes in his Maryland Rules Commentary, Third Edition, all of the defenses listed in Maryland Rule 2-322(a) are collateral to the merits and raise questions of law." *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 11-12 (2005) (citing Paul V. Niemeyer & Linda Shuett, MARYLAND RULES COMMENTARY 205 (3d ed. 2003). "If facts are necessary in deciding the motion, the court may consider affidavits or other evidence during an evidentiary hearing." *Id.*

### IV.   **ARGUMENT**

I.     <u>This Court Lacks Personal Jurisdiction over the Newell Defendants.</u>

The Newell Defendants are Texas businesses, formed in Texas. They cannot be haled into Maryland court unless Plaintiffs satisfy the Maryland long-arm statute and Fourteenth Amendment

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

3

20743227_2

requirements of fundamental fairness. The Newell Defendants are not alleged to have had sufficient contacts with Maryland to create personal jurisdiction. The Court therefore lacks personal jurisdiction over them.

A plaintiff must satisfy two requirements for the Court to exercise jurisdiction over an out-of-state defendant. *CSR, Ltd. v. Taylor*, 411 Md. 457, 472 (2009). First, the requirements of the Maryland long-arm statute must be satisfied. *Id.* at 473. If the long-arm statute is applicable, the resulting exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *Id.* The two analyses overlap but are not identical. *Id.* at 475. In the only subsection relevant here, Maryland's long-arm statute provides six grounds for exercising personal jurisdiction over an out-of-state defendant. Only where the defendant or its agent does one of the following things is jurisdiction possible:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply goods, food, services, or manufactured products in the State;
(3) Causes tortious injury in the State by an act or omission in the State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
(5) Has an interest in, uses, or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing

MD. CODE ANN., COURTS & JUD. PROC., § 6-103(b).

The only basis for jurisdiction over the Newell Defendants that is alleged in the Complaint is that they all manufactured the product at issue. Compl., ¶¶ 7–10. That same allegation is offered upon information and belief for all four Newell Defendants. *Id.* Newell Recycling was not even formed at the alleged date of sale, Ex. 1, and TSC, LP was forfeited before the alleged date of sale.

20743227_2

Ex. 2, Tex. Office of the Comptroller, Franchise Tax Account Status for TSC, LP. There are no allegations that connect the Newell Defendants to Maryland, as would satisfy the long-arm statute.

For similar reasons, the Newell Defendants' Fourteenth Amendment due process rights would be violated if they were required to defend themselves in a Maryland court. *CSR, Ltd.*, 411 Md. at 476–77. That, too, is dispositive of personal jurisdiction. Maryland courts examine the following elements to determine whether jurisdiction comports with due process: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 477. The fact that a product is eventually sold into or used in a state is not necessarily sufficient to create personal jurisdiction over a manufacturer consistent with the Fourteenth Amendment. *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994) (product manufactured out-of-state and used in-state did not create personal jurisdiction over manufacturer).

First, the Newell Defendants are not alleged to have "deliberately" engaged in any activities in Maryland. *CSR, Ltd.*, 411 Md. at 480. Second, they are not alleged to have purposefully directed any product or service toward Maryland. *Id.* at 482. Because Plaintiffs failed to plead those requirements, it is not necessary to reach the third. *Id.* at 493. To the extent the Court reaches the reasonability requirement, it would be unreasonable to force personal jurisdiction upon the Newell Defendants when they are not even alleged to have sold the product at issue to Defendant Allegany Scrap. The Court lacks personal jurisdiction over the Newell Defendants and should dismiss all claims against them.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

5

20743227_2

II.    <u>Counts IV, X, and XVI (For Defective Design) Fail to State Claims for Which Relief Can be Granted.</u>

In Counts IV, X, and XVI, Plaintiffs claim that the Newell Defendants manufactured a shredder with safety measures. They then allege that the Newell Defendants failed to prevent an eventual user, Defendant Allegany Scrap, from degrading or removing those safety measures. Plaintiffs have alleged normal design defects elsewhere in the Complaint. These additional products liability claims attempt to blame the Newell Defendants for Defendant Alleghany Scrap's failure to maintain (or, alternatively, decision to remove) safety devices from the product. These claims are incompatible with Maryland law and should be dismissed.

For products liability cases, Maryland has adopted Section 402A of the Restatement (Second) of Torts. *Halliday v. Sturm, Ruger & Co.*, 368 Md. 186, 193 (2002). There are four primary elements to Plaintiffs' design defect claims:

1) The product was in a defective condition at the time it left the control or possession of the seller;
2) The product was unreasonably dangerous to the consumer;
3) The product was expected to and did reach the consumer without substantial change in its condition; and
4) The defect in the product was the proximate cause of the plaintiff's injuries

Sandler, *et al.*, *Pleading Causes of Action* 416 (7th ed. 2022), *citing Phipps v. General Motors Corp.*, 278 Md. 337, 363 (1976).

The allegations attributed to Counts IV, X, and XVI, Compl., ¶¶ 48–51, fail to satisfy those elements. First, there is no allegation that the product was defective at the time it left the control of the Newell Defendants. On the contrary, Plaintiffs allege that the product used "deflectors, shielding, rubber curtains or other safety features to prevent metal shrapnel from flying out of the shredder." Compl., ¶ 49. In other words, the product was not in a defective condition when it was

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2

sold. As a result, it was not "unreasonably dangerous to the consumer," as required for the second element.

The third element requires that the product "reach the consumer without substantial change in its condition." But Plaintiffs allege that there was a substantial change in the product's condition after it was sold. Namely, they allege that after the product was sold with safety features, the features "degraded" or were "intentionally removed" by Allegany Scrap at some time between 2011 and the incident in 2020. *Id.* The failure to maintain or decision to remove the safety features was apparently made for cost reasons. *Id.*, ¶ 38. Because of the change in the product's condition in the nine years between the alleged sale and the alleged incident, the design of the product was not the proximate cause of Plaintiffs' injuries in 2021.

A shredder manufacturer cannot be liable for an end user's failure to perform basic maintenance or even the user's intentional removal of safety features. If the owner of a car failed to perform maintenance on the car's brakes for nine years, ignored complaints that the brakes had stopped working and were causing accidents, and *removed* part of the brake assembly, no claim would lie against the manufacturer for failing to design brakes that required no maintenance but also could not be removed. Plaintiffs' claims would turn the Newell Defendants into permanent guarantors of product safety. That is not the law of Maryland. Counts IV, X, and XVI are incompatible with Maryland products liability law and therefore must be dismissed.

III.    Plaintiffs Failed to Notify the Newell Defendants of the Implied Warranty Claims in Counts VI, XII, and XVIII.

In Maryland, there are two distinct types of implied warranty—a warranty of merchantability, and a warranty of fitness for a particular purpose. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 158, (2007). Counts VI, XII, and XVIII are claims for breaches of both implied

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2

warranties.[6] Because Plaintiffs do not allege that they ever notified the Newell Defendants of the alleged defect, both versions of the claims fail.

Pursuant to the Maryland Uniform Commercial Code, a plaintiff alleging a breach of *any* implied warranty must give notice to the seller or manufacturer "within a reasonable time after he discovers or should have discovered any breach." MD. CODE ANN., COMM. LAW, § 2-607(3)(a). If the plaintiff fails to provide timely notice, he or she is "barred from any remedy" for breach of implied warranty. *Id.* Although the statute uses the term "buyer," the warning requirement has been interpreted to apply to end users who bring claims for breach of implied warranty. *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 106 (D. Md. 2020) (applying Maryland law to end user of medical device). In *Morris*, summary judgment was granted because there was no evidence the end user notified the manufacturer. *Id.* Notably, the court held that the filing of the lawsuit did not serve as the required notice. *Id.*

Plaintiffs' Complaint contains no allegation that Plaintiffs ever notified the Newell Defendants. Plaintiffs' failure to provide the required notice is fatal to both of the implied warranty claims contained in Counts VI, XII, and XVIII.

IV.     Counts VI, XII, and XVIII Contain No Allegations of Sale for a Particular Purpose.

Counts VI, XII, and XVIII include claims for breach of another implied warranty, of fitness for a particular purpose. That implied warranty arises when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." MD. CODE ANN., COMM. LAW, § 2-315(1). A complaint for breach of this type of warranty must allege that the buyer

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[6] Plaintiffs therefore allege two claims simultaneously in Counts VI, XII, and XVIII, Compl., ¶¶ 58–59, a violation of basic pleading rules that is grounds for dismissal of the claims. Niemeyer & Schuett, *Md. Rules Commentary* 322 (5th ed. 2019).

8

bought the product "for a 'particular purpose' that in any way differed from the 'ordinary purpose' for which" the product would be used. *Bond v. Nibco, Inc.*, 96 Md. App. 127, 137 (1993). The complaint must also allege that the defendant "knew of this 'particular purpose.'" *Id.* at 137–38 (dismissing claim for failure to plead same).

Plaintiffs do not allege that anyone told the Newell Defendants they would use the shredder for anything other than its ordinary purpose (shredding large pieces of metal). They also do not allege that the shredder was used for any particular purpose.[7] Indeed, it is difficult to imagine a purpose an industrial shredder would be used for other than industrial shredding. None of the Newell Defendants is alleged to have sold the shredder to anyone for any particular purpose other than shredding. Pursuant to *Bond*, Plaintiffs' claims in Counts VI, XII, and XVIII for breach of implied warranty of fitness for a particular purpose are deficient and should be dismissed.

## V. <u>CONCLUSION</u>

This Court lacks personal jurisdiction over the Newell Defendants. To the extent the Court has jurisdiction over any of the Newell Defendants, Counts IV, VI, X, XII, XVI, and XVIII fail to state claims for which relief can be granted and should be dismissed. The Newell Defendants should not be required to defend against strict liability claims when this Court does not have jurisdiction and the claims are not well-founded in Maryland law.

WHEREFORE, for the reasons set forth herein, Defendants The Shredder Co., LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. respectfully request that this Honorable Court (i) dismiss all claims against the Newell Defendants on the basis of personal jurisdiction, or (ii) dismiss Counts IV, VI, X, XII, XVI, and

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[7] There is an allegation in Paragraph 59 of the Complaint that the shredder was intended to be used "as an indoor lighting device." This appears to be a textual error; nothing else in the Complaint suggests that the industrial shredder was used as a lamp.

9

20743227_2

XVIII on the grounds that they fail to state claims for which relief can be granted, and award such other relief as the Court deems just and proper.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:     /s/ E. Andrew Cole
      E. Andrew Cole (AIS #0206190051)
      1101 Wootton Parkway
      Suite 700
      Rockville, Maryland 20852
      Direct: 301-838-3218
      Fax: 301-354-8118
      ecole@steinsperling.com

By:     /s/ Joseph M. Moeller
      Joseph M. Moeller (AIS #1812120023)
      1101 Wootton Parkway
      Suite 700
      Rockville, Maryland 20852
      Direct: 301-838-3237
      Fax: 301-354-8137
      jmoeller@steinsperling.com

      *Attorneys for Newell Defendants*

## REQUEST FOR HEARING

Pursuant to Rule 2-311, Defendants request a hearing on this motion.

/s/ E. Andrew Cole
E. Andrew Cole (AIS #0206190051)

/s/ Joseph M. Moeller
Joseph M. Moeller (AIS #1812120023)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

10

20743227_2

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of April, 2024, a copy of the foregoing was submitted to MDEC for service on counsel of record.

/s/ E. Andrew Cole
E. Andrew Cole (AIS #0206190051)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

11

20743227_2

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** KARL E. NICKEL, AS SURVIVING FATHER OF JOSHUA P.
NICKEL (USE PLAINTIFF)
30 DEPOT STREET
FROSTBURG, MD 21532

**Case Number:** C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

CIRCUIT COURT FOR ALLEGANY COUNTY,
**MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** LINDA BEEMAN, AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF JOSHUA P. NICKEL
12750 VALE SUMMIT ROAD, SW
FROSTBURG, MD 21532

| | |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Related Case Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835

**Case Number:**            C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  NEWELL RECYCLING COMPANY OF EL PASO, L.P.
P.O. BOX 2867
FREDERICKSBURG, TX 78624-1927

Case Number:                    C-01-CV-23-000317
Related Case Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  ALEX JONATHAN  BROWN
SHAPIRO, SHER, GUINOT & SANDLER, P.A.
250 W PRATT STREET
20TH FLOOR
BALTIMORE, MD 21201

**Case Number:**     C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** MICHAEL STEPHEN BULLOCK
SHAPIRO SHER GUINOT & SANDLER, PA
250 WEST PRATT STREET
SUITE 2000
BALTIMORE, MD 21201

**Case Number:** C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner: (301) 777-5921

**ALCC-FPRV-001 (Rev. 06/2019)**          **Page 1 of 1**          **4/24/2024 1:47 PM**

**CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** JOSEPH MICHAEL MOELLER
STEIN SPERLING BENNETT DE JONG DRISCOLL, P.C.
1101 WOOTON PARKWAY
SUITE 700
ROCKVILLE, MD 20852

**Case Number:**      C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP,
INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner: (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Clerk's Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL
12750 VALE SUMMIT ROAD, SW
FROSTBURG, MD 21532

|  |  |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Related Case Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Clerk of Court: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** THE SHREDDER CO L.P.
6800 MARKET AVENUE
EL PASO, TX 79915-1014

**Case Number:**           C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

# CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** T LEE BEEMAN
BUCKEL LEVASSEUR PILLAI & BEEMAN LLC
206 WASHINGTON STREET
CUMBERLAND, MD 21502

**Case Number:**      C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

30 Washington Street
Cumberland, Maryland 21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** JOEL I SHER
SHAPIRO SHER GUINOT & SANDLER
250 W PRATT ST
STE 2000
BALTIMORE, MD 21201

|  |  |
|---|---|
| **Case Number:** | C-01-CV-23-000317 |
| **Related Case Number:** |  |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner: (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  ALLEGANY SCRAP, INC.
2001 KENILWORTH AVENUE
CAPITAL HEIGHTS, MD 20743

Case Number:  C-01-CV-23-000317
Related Case Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  JASON CORD  BUCKEL
206 WASHINGTON STREET
CUMBERLAND, MD 21502

**Case Number:**   C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

### CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  NEWELL RECYCLING EQUIPMENT, LLC
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121

| | |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Related Case Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** EDWARD ANDREW  COLE
STEIN SPERLING BENNETT DE JONG DRISCOLL PC
1101 WOOTTON PARKWAY
SUITE 700
ROCKVILLE, MD 20850

**Case Number:**   C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 4/24/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 06/28/2024 | 09:30AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

SET FOR HEARING
Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/10/25    Page 193 of 737

E-SERVED Allegany Circuit Court 4/24/2024 3:48 PM System SystemEnvelope:16212805

E-FILED; Allegany Circuit Court
Docket: 4/24/2024 3:48 PM; Submission: 4/25/2024 5:48 PM
Envelope: 16212800

04/24/2024 11:12:55 AM

IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

LINDA S. BEEMAN, as Surviving Mother :
of Joshua P. Nickel, *et al.*, :
                               :
         Plaintiffs :
                                 :
     v.                            :         Civil Case No. C-01-CV-23-000317
                                 :
ALLEGANY SCRAP, INC., *et al.*, :
                                 :
         Defendant :

## NEWELL DEFENDANTS' MOTION TO DISMISS
### (HEARING REQUESTED)

Defendants The Shredder Co., LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. (the "Newell Defendants"), by counsel and pursuant to Rule 2-322,[1] move to dismiss Plaintiffs' Complaint:[2]

## I.    INTRODUCTION

The Court lacks personal jurisdiction over the Newell Defendants. To the extent the Court has jurisdiction over any of the Newell Defendants, it should dismiss Counts IV, X, and XVI because these purported claims for failure to prevent an end user from removing safety devices from a product do not exist in Maryland. In addition, Plaintiffs failed to timely notify the Newell Defendants of the claims alleged in Counts VI, XII, and XVIII, as required by Maryland Uniform Commercial Code. Finally, Plaintiffs did not allege any facts that would create a warranty of fitness

---

[1] Counsel have entered their appearance on behalf of the Newell Defendants for the limited purpose of challenging this Court's personal jurisdiction over those parties and preserving certain Rule 2-322(b) defenses. In accordance with Rule 2-131(d), the entry of appearance and filing of this Motion do not to constitute a voluntary or general appearance or a waiver of the right of those defendants to assert the defense of lack of personal jurisdiction.

[2] Pursuant to a written agreement among counsel based on scheduling difficulties, the deadline for the Newell Defendants' response to the Complaint was extended to April 5, 2024, and Plaintiffs' deadline for any opposition thereto was extended to May 17, 2024.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2

for a particular purpose. The Court should dismiss all claims against the Newell Defendants, or, alternatively, the claims specifically identified.

## II.   __FACTS__[3]

The Newell Defendants are Texas businesses. Plaintiffs allege upon information and belief that all four Newell Defendants manufactured the industrial shredder at issue. Compl., ¶¶ 6–10. More specifically, they allege that "TSC LLC and/or TSC LP"[4] manufactured the specific model that is the source of their claims. *Id.*, ¶ 14. They allege that in 2011, Defendant Allegany Scrap began using the shredder in Maryland. *Id.*, ¶ 26. There is no allegation which describes how or when the shredder was transferred from any of the Newell Defendants to Allegany Scrap, nor is there any clear allegation of the basis for personal jurisdiction over the Newell Defendants. Of particular note, Newell Recycling Equipment, LLC was not created until 2015. Ex. 1, Tex. Office of the Comptroller, Franchise Tax Account Status for Newell Recycling Equipment, LLC.[5] It did not exist until four years *after* Allegany Scrap began using the shredder.

Plaintiffs allege in various wrongful death and survivor actions that the Newell Defendants: (i) manufactured a defective shredder, (ii) designed a shredder without necessary safety measures, (iii) failed to prevent the removal of those safety measures, (iv) were negligent in these endeavors, and (v) breached implied warranties. Specific facts for the claims at issue in this motion are set forth *infra*.

---

[3] Pursuant to Rule 2-322, all non-jurisdictional alleged facts are taken as true for the purpose of this motion only. The Newell Defendants intend to vigorously contest all allegations against them.

[4] For simplicity, the Newell Defendants will use the abbreviations set forth in the Complaint.

[5] The Court can review undisputed facts outside the Complaint without converting this motion into a motion for summary judgment. *Smith v. Danielczyk*, 400 Md. 98, 105 (2007) (affirming dismissal). Government records are sufficiently indisputable. *See Abrishamian v. Washington Med. Group, P.C.*, 216 Md. App. 386, 413 (2014) (describing information judicially noticeable).

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

2

III.  **STANDARD OF REVIEW**

The purpose of a motion to dismiss is to end at the preliminary motion stage of the case a complaint for which no relief can be granted. *See RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010). Although Rule 2-303 does not require technical forms of pleading, "bald assertions and conclusory statements by the pleader will not suffice," *id.* at 644, and "ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 335 (2009). "'[T]he necessary allegations of fact sufficient to state a cause of action . . . in a simple factual situation vary from those in more complex factual situations and a form of declaration useful in the former situation may not be sufficient as a guide in preparing a declaration in the more complex case.'" *Id.* at 655 (*citing Read Drug v. Colwill Constr.*, 250 Md. 406, 413 (1968)). If the well-pled facts and any permissible inferences therefrom do not establish the elements of a claim for which relief can be granted, the Court must dismiss the complaint. *RRC Ne.*, 413 Md. at 643.

"As Judge Paul V. Niemeyer notes in his Maryland Rules Commentary, Third Edition, all of the defenses listed in Maryland Rule 2-322(a) are collateral to the merits and raise questions of law." *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 11-12 (2005) (citing Paul V. Niemeyer & Linda Shuett, MARYLAND RULES COMMENTARY 205 (3d ed. 2003). "If facts are necessary in deciding the motion, the court may consider affidavits or other evidence during an evidentiary hearing." *Id.*

IV.  **ARGUMENT**

I.    This Court Lacks Personal Jurisdiction over the Newell Defendants.

The Newell Defendants are Texas businesses, formed in Texas. They cannot be haled into Maryland court unless Plaintiffs satisfy the Maryland long-arm statute and Fourteenth Amendment

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2

requirements of fundamental fairness. The Newell Defendants are not alleged to have had sufficient contacts with Maryland to create personal jurisdiction. The Court therefore lacks personal jurisdiction over them.

A plaintiff must satisfy two requirements for the Court to exercise jurisdiction over an out-of-state defendant. *CSR, Ltd. v. Taylor*, 411 Md. 457, 472 (2009). First, the requirements of the Maryland long-arm statute must be satisfied. *Id.* at 473. If the long-arm statute is applicable, the resulting exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *Id.* The two analyses overlap but are not identical. *Id.* at 475. In the only subsection relevant here, Maryland's long-arm statute provides six grounds for exercising personal jurisdiction over an out-of-state defendant. Only where the defendant or its agent does one of the following things is jurisdiction possible:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply goods, food, services, or manufactured products in the State;
(3) Causes tortious injury in the State by an act or omission in the State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
(5) Has an interest in, uses, or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing

MD. CODE ANN., COURTS & JUD. PROC., § 6-103(b).

The only basis for jurisdiction over the Newell Defendants that is alleged in the Complaint is that they all manufactured the product at issue. Compl., ¶¶ 7–10. That same allegation is offered upon information and belief for all four Newell Defendants. *Id.* Newell Recycling was not even formed at the alleged date of sale, Ex. 1, and TSC, LP was forfeited before the alleged date of sale.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

4

20743227_2

<u>Ex. 2</u>, Tex. Office of the Comptroller, Franchise Tax Account Status for TSC, LP. There are no allegations that connect the Newell Defendants to Maryland, as would satisfy the long-arm statute.

For similar reasons, the Newell Defendants' Fourteenth Amendment due process rights would be violated if they were required to defend themselves in a Maryland court. *CSR, Ltd.*, 411 Md. at 476–77. That, too, is dispositive of personal jurisdiction. Maryland courts examine the following elements to determine whether jurisdiction comports with due process: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 477. The fact that a product is eventually sold into or used in a state is not necessarily sufficient to create personal jurisdiction over a manufacturer consistent with the Fourteenth Amendment. *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994) (product manufactured out-of-state and used in-state did not create personal jurisdiction over manufacturer).

First, the Newell Defendants are not alleged to have "deliberately" engaged in any activities in Maryland. *CSR, Ltd.*, 411 Md. at 480. Second, they are not alleged to have purposefully directed any product or service toward Maryland. *Id.* at 482. Because Plaintiffs failed to plead those requirements, it is not necessary to reach the third. *Id.* at 493. To the extent the Court reaches the reasonability requirement, it would be unreasonable to force personal jurisdiction upon the Newell Defendants when they are not even alleged to have sold the product at issue to Defendant Allegany Scrap. The Court lacks personal jurisdiction over the Newell Defendants and should dismiss all claims against them.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

5

20743227_2

II.    <u>Counts IV, X, and XVI (For Defective Design) Fail to State Claims for Which Relief Can be Granted.</u>

In Counts IV, X, and XVI, Plaintiffs claim that the Newell Defendants manufactured a shredder with safety measures. They then allege that the Newell Defendants failed to prevent an eventual user, Defendant Allegany Scrap, from degrading or removing those safety measures. Plaintiffs have alleged normal design defects elsewhere in the Complaint. These additional products liability claims attempt to blame the Newell Defendants for Defendant Alleghany Scrap's failure to maintain (or, alternatively, decision to remove) safety devices from the product. These claims are incompatible with Maryland law and should be dismissed.

For products liability cases, Maryland has adopted Section 402A of the Restatement (Second) of Torts. *Halliday v. Sturm, Ruger & Co.*, 368 Md. 186, 193 (2002). There are four primary elements to Plaintiffs' design defect claims:

> 1) The product was in a defective condition at the time it left the control or possession of the seller;
> 2) The product was unreasonably dangerous to the consumer;
> 3) The product was expected to and did reach the consumer without substantial change in its condition; and
> 4) The defect in the product was the proximate cause of the plaintiff's injuries

Sandler, *et al.*, *Pleading Causes of Action* 416 (7th ed. 2022), *citing Phipps v. General Motors Corp.*, 278 Md. 337, 363 (1976).

The allegations attributed to Counts IV, X, and XVI, Compl., ¶¶ 48–51, fail to satisfy those elements. First, there is no allegation that the product was defective at the time it left the control of the Newell Defendants. On the contrary, Plaintiffs allege that the product used "deflectors, shielding, rubber curtains or other safety features to prevent metal shrapnel from flying out of the shredder." Compl., ¶ 49. In other words, the product was not in a defective condition when it was

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

6

20743227_2

sold. As a result, it was not "unreasonably dangerous to the consumer," as required for the second element.

The third element requires that the product "reach the consumer without substantial change in its condition." But Plaintiffs allege that there was a substantial change in the product's condition after it was sold. Namely, they allege that after the product was sold with safety features, the features "degraded" or were "intentionally removed" by Allegany Scrap at some time between 2011 and the incident in 2020. *Id.* The failure to maintain or decision to remove the safety features was apparently made for cost reasons. *Id.*, ¶ 38. Because of the change in the product's condition in the nine years between the alleged sale and the alleged incident, the design of the product was not the proximate cause of Plaintiffs' injuries in 2021.

A shredder manufacturer cannot be liable for an end user's failure to perform basic maintenance or even the user's intentional removal of safety features. If the owner of a car failed to perform maintenance on the car's brakes for nine years, ignored complaints that the brakes had stopped working and were causing accidents, and *removed* part of the brake assembly, no claim would lie against the manufacturer for failing to design brakes that required no maintenance but also could not be removed. Plaintiffs' claims would turn the Newell Defendants into permanent guarantors of product safety. That is not the law of Maryland. Counts IV, X, and XVI are incompatible with Maryland products liability law and therefore must be dismissed.

> III.   Plaintiffs Failed to Notify the Newell Defendants of the Implied Warranty Claims in Counts VI, XII, and XVIII.

In Maryland, there are two distinct types of implied warranty—a warranty of merchantability, and a warranty of fitness for a particular purpose. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 158, (2007). Counts VI, XII, and XVIII are claims for breaches of both implied

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2

warranties.[6] Because Plaintiffs do not allege that they ever notified the Newell Defendants of the alleged defect, both versions of the claims fail.

Pursuant to the Maryland Uniform Commercial Code, a plaintiff alleging a breach of *any* implied warranty must give notice to the seller or manufacturer "within a reasonable time after he discovers or should have discovered any breach." MD. CODE ANN., COMM. LAW, § 2-607(3)(a). If the plaintiff fails to provide timely notice, he or she is "barred from any remedy" for breach of implied warranty. *Id.* Although the statute uses the term "buyer," the warning requirement has been interpreted to apply to end users who bring claims for breach of implied warranty. *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 106 (D. Md. 2020) (applying Maryland law to end user of medical device). In *Morris*, summary judgment was granted because there was no evidence the end user notified the manufacturer. *Id.* Notably, the court held that the filing of the lawsuit did not serve as the required notice. *Id.*

Plaintiffs' Complaint contains no allegation that Plaintiffs ever notified the Newell Defendants. Plaintiffs' failure to provide the required notice is fatal to both of the implied warranty claims contained in Counts VI, XII, and XVIII.

IV.     Counts VI, XII, and XVIII Contain No Allegations of Sale for a Particular Purpose.

Counts VI, XII, and XVIII include claims for breach of another implied warranty, of fitness for a particular purpose. That implied warranty arises when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." MD. CODE ANN., COMM. LAW, § 2-315(1). A complaint for breach of this type of warranty must allege that the buyer

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[6] Plaintiffs therefore allege two claims simultaneously in Counts VI, XII, and XVIII, Compl., ¶¶ 58–59, a violation of basic pleading rules that is grounds for dismissal of the claims. Niemeyer & Schuett, *Md. Rules Commentary* 322 (5th ed. 2019).

8

20743227_2

bought the product "for a 'particular purpose' that in any way differed from the 'ordinary purpose' for which" the product would be used. *Bond v. Nibco, Inc.*, 96 Md. App. 127, 137 (1993). The complaint must also allege that the defendant "knew of this 'particular purpose.'" *Id.* at 137–38 (dismissing claim for failure to plead same).

Plaintiffs do not allege that anyone told the Newell Defendants they would use the shredder for anything other than its ordinary purpose (shredding large pieces of metal). They also do not allege that the shredder was used for any particular purpose.[7] Indeed, it is difficult to imagine a purpose an industrial shredder would be used for other than industrial shredding. None of the Newell Defendants is alleged to have sold the shredder to anyone for any particular purpose other than shredding. Pursuant to *Bond*, Plaintiffs' claims in Counts VI, XII, and XVIII for breach of implied warranty of fitness for a particular purpose are deficient and should be dismissed.

## V.    CONCLUSION

This Court lacks personal jurisdiction over the Newell Defendants. To the extent the Court has jurisdiction over any of the Newell Defendants, Counts IV, VI, X, XII, XVI, and XVIII fail to state claims for which relief can be granted and should be dismissed. The Newell Defendants should not be required to defend against strict liability claims when this Court does not have jurisdiction and the claims are not well-founded in Maryland law.

WHEREFORE, for the reasons set forth herein, Defendants The Shredder Co., LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. respectfully request that this Honorable Court (i) dismiss all claims against the Newell Defendants on the basis of personal jurisdiction, or (ii) dismiss Counts IV, VI, X, XII, XVI, and

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[7] There is an allegation in Paragraph 59 of the Complaint that the shredder was intended to be used "as an indoor lighting device." This appears to be a textual error; nothing else in the Complaint suggests that the industrial shredder was used as a lamp.

9

20743227_2

XVIII on the grounds that they fail to state claims for which relief can be granted, and award such other relief as the Court deems just and proper.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:     */s/ E. Andrew Cole*
E. Andrew Cole (AIS #0206190051)
1101 Wootton Parkway
Suite 700
Rockville, Maryland 20852
Direct: 301-838-3218
Fax: 301-354-8118
ecole@steinsperling.com

By:     */s/ Joseph M. Moeller*
Joseph M. Moeller (AIS #1812120023)
1101 Wootton Parkway
Suite 700
Rockville, Maryland 20852
Direct: 301-838-3237
Fax: 301-354-8137
jmoeller@steinsperling.com

*Attorneys for Newell Defendants*

## **REQUEST FOR HEARING**

Pursuant to Rule 2-311, Defendants request a hearing on this motion.

*/s/ E. Andrew Cole*
E. Andrew Cole (AIS #0206190051)

*/s/ Joseph M. Moeller*
Joseph M. Moeller (AIS #1812120023)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

10

20743227_2

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of April, 2024, a copy of the foregoing was submitted to MDEC for service on counsel of record.

/s/ E. Andrew Cole
E. Andrew Cole (AIS #0206190051)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20743227_2



**Jaime Johnson**
**Assignment Commissioner**
Allegany County Circuit Court
80 Washington Street
Cumberland, MD 21502

**RETURN SERVICE REQUESTED**

Confirmation of Trial Assignment

**To:** THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835

BALTIMORE MD 212

26 APR 2024 PM 4

US POSTAGE AND PITNEY BOWES

ZIP 21502
02 4W
0000349508 APR 26 2024
$ 000.64°

21-01-CV-23-317

215 0229830   *2327-072231-26-43

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

BC: 21580229830   *2327-072231-26-43

IN THE CIRCUIT COURT OF MARYLAND FOR ALLEGANY COUNTY

LINDA S. BEEMAN, *et al.*

     Plaintiffs

v.                            Civil Action No.: C-01-CV-23-000317

ALLEGANY SCRAP, INC., *et al.*

     Defendants.

---

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT ALLEGANY SCRAP, INC.'S MOTION TO DISMISS

     Plaintiff, Linda S. Beeman ("Plaintiff Beeman"), as *Surviving Mother* of *Decedent* Joshua P. Nickel ("Nickel"), and as *Personal Representative* of the Estate of Joshua P. Nickel (the "Nickel Estate"), by and through their counsel, Jason C. Buckel, Esq., T. Lee Beeman, Jr., Esq., and Buckel, Levasseur, Pillai & Beeman, LLC, and Karl E. Nickel ("Use Plaintiff Nickel"), as *Surviving Father* of *Decedent* Joshua P. Nickel, an unrepresented "*Use Plaintiff*" hereby responds to Defendant Allegany Scrap, Inc. ("Allegany Scrap")'s Motion to Dismiss, and in support thereof, state the following:

     1.     Plaintiffs' respond in opposition to Defendant Allegany Scrap, Inc.'s Motion to Dismiss.

     2.     Plaintiffs' hereby incorporate their *Memorandum in Support of Response in Opposition to Defendant Allegany Scrap's Motion to Dismiss*.

     WHEREFORE, Plaintiffs pray this honorable Court deny Defendant Allegany Scrap's Motion to Dismiss, or in the alternative set a hearing for oral argument on Defendant Allegany Scrap's Motion to Dismiss.

Respectfully submitted,

_____
        /s/
Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman  AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700  F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

## **REQUEST FOR HEARING**

Plaintiffs, by and through undersigned counsel, request a hearing on Defendant Allegany Scrap, Inc.'s Motion to Dismiss and Plaintiffs' Response in Opposition.

Respectfully submitted,

_____
        /s/
Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman  AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700  F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this 10th day of May, 2024, a copy of the foregoing was filed and served through the MDEC system and has been delivered to all recipients entitled to receive electronic service of the same.

Respectfully submitted,

_____/s/_____
T. Lee Beeman  AIS No.: 1412160059

E-FILED; Allegany Circuit Court
Docket: 5/10/2024 10:26 PM; Submission: 5/10/2024 10:26 PM
Envelope: 16409241

IN THE CIRCUIT COURT OF MARYLAND FOR ALLEGANY COUNTY

LINDA S. BEEMAN, *et al.*

      Plaintiffs

v.                                                  Civil Action No.: C-01-CV-23-000317

ALLEGANY SCRAP, INC., *et al*.

      Defendants.

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANT ALLEGANY SCRAP, INC.'S MOTION TO DISMISS**

---

Respectfully submitted,

_____/s/_____
Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman  AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700  F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

# Table of Contents

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ..............................................................................................................1

STATEMENT OF FACTS .....................................................................................................1

ARGUMENT ...................................................................................................................4

    Standard of Review.........................................................................................................5

    A.    Workers' Compensation is not the exclusive remedy available to Plaintiffs. ........................5

    B.    Mother (and potentially Father) are dependents within the contemplated meaning of the Workers' Compensation Act and are permitted to make the claim under the "deliberate intent" exception. ..................................................................................................................8

    C.    Plaintiffs have sufficiently pleaded the "deliberate intent" exception to the Workers' Compensation exclusivity. ...............................................................................................9

    D.    Dr. Kubiczek's conclusion that Decedent's death was an accident is not a fatal flaw to Plaintiffs' claims...........................................................................................................10

    E.    The Estate has not abandoned its claim by electing to receive Workers' Compensation death benefits. .................................................................................................................11

CONCLUSION ..............................................................................................................11

i

**TABLE OF AUTHORITIES**

**Cases**

*1000 Friends of Md. v. Ehrlich*, 170 Md. App. 538 (2006) ....................................................9

*Fischer v. Longest*, 99 Md. App. 368, 380 (1994) ...............................................................9

*Johns Hopkins Hosp. v. Pepper*, 346 Md. 679, 698 (1997) ................................................9

*Johnson v. Cole*, 1967, 226 A.2d 268, 245 Md. 515................................................................8

*Ledford v. Jenway Contracting, Inc.*, 2023, 305 A.3d 498, 259 Md.App. 534 ...................6

*Lloyd v. General Motors Corp.*, 397 Md. 108, 916 A.2d 257 (2007).....................................5

*Mekhaya v. Eastland Food Corporation*, 256 Md. App. 497, 287 A.3d 395 (2022), *cert. granted*, 483 Md. 264, 291 A.3d 776 (2023)(internal citations omitted)....................................................5

*Mummert v. Alizadeh*, 435 Md. 207, 77 A.3d 1049 (2014) ...............................................5

*Parks v. Alpharma, Inc.*, 421 Md. 59 (Md. 2011) .........................................................7, 10

*Patton v. Wells Fargo Financial Maryland, Inc.*, 437 Md. 83, 85 A.3rd 167 (2014). ...............................5

*Pearce v. Watkins*, 68 Md. 534, 538 (1888) .......................................................................9

*Pittway Corp. v. Collins*, 409 Md. 218, 239 (2009) ........................................................10

*Smith v. Shiebeck*, 180 Md. 412, 420 (1942).......................................................................9

*Sterry v. Bethlehem Steel Corp.* 64 Md. App. 175, 184 494 A.2d 748 (1985) ...................6, 7

*Tavakoli-Nouri v. State*, 139 Md. App. 716, 725 779 A.2d 992 (2001) .............................5

*Young v. Hartford Accident and Indem. Co.*, 303 Md. 182, 492 A.2d 1270 (1985)................6

**Statutes**

MD. Lab & Empl. § 9-509(d). .......................................................................................6, 10

**Rules**

Md. Rule 2-303(b) ............................................................................................................9

**INTRODUCTION**

Plaintiff, Linda S. Beeman ("Plaintiff Beeman"), as *Surviving Mother* of *Decedent* Joshua P. Nickel ("Nickel"), and as *Personal Representative* of the Estate of Joshua P. Nickel (the "Nickel Estate"), by and through their counsel, Jason C. Buckel, Esq., T. Lee Beeman, Jr., Esq., and Buckel, Levasseur, Pillai & Beeman, LLC, and Karl E. Nickel ("Use Plaintiff Nickel"), as *Surviving Father* of *Decedent* Joshua P. Nickel, an unrepresented "*Use Plaintiff*" hereby responds in opposition to Defendant Allegany Scrap, Inc. ("Allegany Scrap")'s Motion to Dismiss.

**STATEMENT OF FACTS**

Decedent, Joshua P. Nickel was employed by Defendant Allegany Scrap, a metal recycling facility that scraps various types of metals and products containing metals utilizing a metal shredder to shred various metal materials, such as junk cars (the "Shredder"). Pl. Compl. at ¶¶ 11-13. The Shredder moves scrap metal along a conveyor belt and high-speed hammers, rotating at 450 rotations per minute, shred the metal material, which then travels from the discharge end of the shredder by conveyor belt. Approximately 100-tons of material are processed by the facility in an hour's time. Pl. Compl. at ¶ 15. The operation of the Shredder requires multiple employees stationed at various locations throughout Defendant Allegany Scrap's facility. Employees are necessary to operate cranes and loaders to load the Shredder with various metals and scrap on the infeed side. One employee operates the shredder from within a protected control booth, and another employee monitors the flow of material on the conveyor belt leaving the shredder. Pl. Compl. at ¶ 16.

On September 11, 2020 (the "incident date"), Decedent, Joshua P. Nickel, was working at Defendant Allegany Scrap's Cumberland plant, located at 10801 Day Road, Cumberland, MD

1

21502 and was assigned by his employer to monitor the flow of the materials on the conveyor belt and was stationed on the catwalk next to the shredder's magnetic drum, approximately 76-feet away from the discharge end of the shredder and was wearing all prescribed personal protective equipment. Pl. Compl. at ¶¶ 17-19.

On the incident date, sometime between 12:10 and 12:21 P.M., a piece of metal shrapnel was projected and discharged from the Shredder and traveled through the air at a high rate of speed, striking Decedent, Joshua P. Nickel in the head, just above his left ear, causing catastrophic injury. Pl. Compl. at ¶ 20. Decedent, Joshua P. Nickel became unconscious as a result of the blow to the head by the metal shrapnel and when other employees of Defendant Allegany Scrap found Decedent, Joshua P. Nickel and he had a pulse and labored breathing. Pl. Compl. at ¶ 21-22. Employees of Defendant Allegany Scrap called emergency services and Decedent, Joshua P. Nickel was transported by ambulance to UPMC Western Maryland Hospital and ultimately, Decedent, Joshua P. Nickel succumbed to his injuries. Pl. Compl. at ¶ 23-24.

Upon information and belief, the Shredder utilized by Defendant Allegany Scrap was put into operation in 2011 and Defendant Allegany Scrap has been aware since the Shredder was put into operation that metal shrapnel is regularly and routinely projected and discharged from the shredder, flies from the Shredder at a high rate of speed and in random directions, and regularly and routinely hits employees. Pl. Compl. at ¶¶ 26-30. On the date of the incident, the entire area around the shredder was littered with metal shrapnel projected and discharged from the Shredder. Pl. Compl. at ¶ 28.

On April 8, 2019, another of Defendant Allegany Scrap's employees was injured when a piece of metal shrapnel was projected and discharged from the shredder and struck him in the back. Pl. Compl. at ¶ 31 Upon information and belief, on the incident date, the metal shrapnel

projected and discharged from the shredder traveled from the shredder and was allowed to be projected and discharged due to a sagging and inadequate guard.

Since the date of the incident, Defendant Allegany Scrap has repaired the sagging guard, added more curtains to cover the entire shredder and installed metal mesh and plexiglass around the areas where employees sort materials off the conveyor belts, and Defendant Allegany Scrap has eliminated the position assigned to Decedent, Joshua P. Nickel on the incident date. Pl. Comp. at ¶¶ 33-34.

Defendant Allegany Scrap employed Kelly Boyle as a safety manager and Steve Bennett as the general manager of the facility. Both Safety Manager Boyle and General Manager Bennett were aware that metal shrapnel was regularly and routinely projected and discharged from the shredder and regularly and routinely struck employees. Pl. Compl at ¶ 35. Upon information and belief, many complaints were made to Defendant Allegany Scrap management regarding metal shrapnel being projected and discharged from the shredder and many requests were made of Defendant Allegany Scrap management for additional safety measures to be taken to prevent employees from being injured by metal shrapnel projected and discharged from the shredder. Pl. Compl. at ¶¶ 36-37. Despite the warnings and requests, Defendant Allegany Scrap's management repeatedly informed employees who complained of safety concerns that the necessary safety provisions would cost too much money, that Defendant Allegany Scrap was unwilling to spend the money to make said safety provisions, and that being struck by metal shrapnel projected and discharged from the shredder was a regular part of their employment and a risk they must necessarily bear if they wanted to keep their employment. Pl. Compl. at ¶ 38.

Upon information and belief, Defendant Allegany Scrap intentionally withheld and/or delayed seeking medical attention for Decedent, Joshua P. Nickel. Pl. Compl. at ¶ 39.

3

Plaintiffs' Complaint alleges three Counts against Allegany Scrap which Allegany Scrap seeks to have dismissed, namely "Count I – Deliberate Intent – Wrongful Death Action: Linda S. Beeman, as Surviving Mother of Joshua P. Nickel v. Allegany Scrap"; "Count VII – Deliberate Intent – Survival Action: Linda S. Beeman, as Personal Representative of the Estate of Joshua P. Nickel v. Allegany Scrap"; and "Count XIII – Deliberate Intent – Wrongful Death Action: Use Plaintiff, Karl E. Nickel, as Surviving Father of Joshua P. Nickel v. Allegany Scrap". Plaintiffs' claims in Counts I and XIII are styled both as wrongful death actions, pursuant to Maryland Code, Courts and Judicial Proceedings, § 3-901, *et seq*.; and the deliberate act or "deliberate intent" exception to the exclusivity of compensation provisions of the Maryland Workers' Compensation Act, pursuant to Maryland Code, Labor and Employment, § 9-509(d). For the reasons outlined *infra*, Defendant Allegany Scrap, Inc.'s Motion to Dismiss should be denied for all counts.

**ARGUMENT**

Defendant Allegany Scrap alleges in their Motion to Dismiss that Plaintiffs' Complaint fails for three reasons. They allege that the Workers' Compensation act bars recovery because the Estate's election to receive the Workers' Compensation death benefit "abandoned its right to bring a claim" and that neither Mother nor Father is within the three identified classes of individuals authorized to assert a claim. They further claim that the Death Certificate classifies Decedent's death as an "accident" for which Workers' Compensation is the exclusive remedy. Finally, they claim that Plaintiffs failed to plead sufficient facts of "deliberate intent" to injure Decedent to qualify for the "deliberate intent" exclusions. For the reasons outlined *infra*, Defendant Allegany Scrap's arguments fail.

**Standard of Review**

It is well decided under Maryland law that in deciding a motion to dismiss a complaint, the Court assumes the truth of the complaint's factual allegations, and any reasonable inferences in the light most favorable to the Plaintiff. *Patton v. Wells Fargo Financial Maryland, Inc.*, 437 Md. 83, 85 A.3rd 167 (2014). In considering a motion to dismiss, dismissal is proper only if all the allegations and permissible inferences, if true, would not afford relief to the Plaintiff. *Mummert v. Alizadeh*, 435 Md. 207, 77 A.3d 1049 (2014). Dismissal for failure to state a claim is proper only if the complaint fails to disclose, on its face, legally sufficient cause of action. *Tavakoli-Nouri v. State*, 139 Md. App. 716, 725 779 A.2d 992 (2001).

In determining whether a plaintiff has alleged claims upon which relief can be granted, there is a big difference between that which is necessary to prove the elements and that which is necessary to merely allege them. *Mekhaya v. Eastland Food Corporation*, 256 Md. App. 497, 287 A.3d 395 (2022), *cert. granted*, 483 Md. 264, 291 A.3d 776 (2023)(internal citations omitted). In other words, "[T]he standard for whether an allegation states a claim upon which relief can be granted does not require the petitioner to assert facts sufficient to prove the claim, but rather those necessary to allege a claim." *Lloyd v. General Motors Corp.*, 397 Md. 108, 132, 916 A.2d 257 (2007).

**A. Workers' Compensation is not the exclusive remedy available to Plaintiffs.**

Maryland law provides that the liability of an employer under the Workers' Compensation title is exclusive, but for the statutorily defined exceptions where an employer fails to secure compensation and

> "If a covered employee is injured or killed as the result of the deliberate
> intent of the employer to injure or kill the covered employee, the covered

5

employee, or in the case of death, a surviving spouse, child, or dependent
of the covered employee may:

      (1) bring a claim for compensation under this title; or

      (2) bring an action for damages against the employer.

MD. Lab & Empl. § 9-509(d).

Maryland courts have held that the "Workers' Compensation Act is remedial in nature and should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes, and, thus, in interpreting the Act, the court does not apply the canon of construction that statute in derogation of common law should be strictly construed." *Philip Electronics North America v. Wright*, 1997, 703 A.2d 150, 348 Md. 209. The deliberate intent exception, in the case of death, is limited to allowing claims by a surviving spouse, child or dependents of the covered employee. MD. Lab. & Empl. § 9-509(d). Extending employers' immunity to all tort actions, including those brought by non-dependents, is consistent with the clear purpose of the Workers' Compensation Act to effect a compromise between employers and employees whereby employees or their dependents would receive guaranteed compensation without the vagaries and expense of litigation, and employers, provided they complied with the fund's compensation requirements and did not deliberately cause the employee's injury, would be granted immunity from tort liability. *Ledford v. Jenway Contracting, Inc.*, 2023, 305 A.3d 498, 259 Md.App. 534. "If an original accidental injury arising out of or in the course of employment is aggravated by conduct of the employer, [the exclusivity does not apply] to injuries caused by the intentional acts of such employer." *Sterry v. Bethlehem Steel Corp.* 64 Md. App. 175, 184 494 A.2d 748 (1985) *citing*, *Young v. Hartford Accident and Indem. Co.*, 303 Md. 182, 492 A.2d 1270 (1985).

In *Sterry*, the Court noted that the *Young* court "concluded that the injuries claimed to have been caused by the defendant's intentional torts did not arise out of and in the course of employment as those terms are used in § 15. In so doing, the Court rejected the defendant's "extended 'but for' rationale", the application of which would give the exclusivity provisions of the Act too broad a reach." *Id*. at 185. The plaintiff in *Sterry* "alleged a prior work-related back and neck injury, treatment of that injury by [employer]'s doctors, his development of drug addiction as a result of drugs supplied or prescribed by those doctors, and a worsening of those injuries. *Id*. at 187. Employer, in that instance, argued that the injuries alleged were "merely an aggravation of [employee]'s work-related [accidental] injuries and the exclusive remedy for the injuries would be under the Workers' Compensation Act. *Id*. The *Sterry* court opined that taking the allegations in the light most favorable to [Employee], the allegations regarding the intentional conduct were sufficient to create a jury question. *Id*. at 188.

Here, Plaintiffs allege that "Defendant Allegany Scrap intentionally withheld and/or delayed seeking medical attention for Decedent, Joshua P. Nickel." Pl. Compl. at ¶ 39. When deciding a motion to dismiss the court reviews the allegations in the light most favorable to the non-moving party, assuming the truth of all well-pleaded facts and allegations contained therein, as well as any reasonable inferences. *Parks v. Alpharma, Inc.*, 421 Md. 59, 72 (Md. 2011). It is significant and noteworthy that, at this stage of the litigation, exactly zero discovery has been conducted . . . no interrogatories have been propounded or answered. . . no documents have been requested or produced . . . no depositions have been taken. Unfortunately, at the present moment, as is often the case in tort cases before the circuit court, Defendant has filed a motion to dismiss the claim, alleging that Plaintiffs have failed to state a claim upon which relief may be sought

and Plaintiffs have not been afforded any opportunity through the discovery process to gather the evidence necessary to support those allegations.

Reviewing the allegation that "Defendant Allegany Scrap intentionally withheld and/or delayed seeking medical attention for Decedent, Joshua P. Nickel" in the light most favorable to the non-moving party and assuming the truth of the well-pleaded facts contained therein, it is clear that Plaintiffs have plead sufficiently to allege that the deliberate intent exception to Workers' Compensation exclusivity applies.

**B. Mother (and potentially Father) are dependents within the contemplated meaning of the Workers' Compensation Act and are permitted to make the claim under the "deliberate intent" exception.**

A "dependent" within meaning of statute is one who relied, on whole or in part, at time of accident, upon workman for reasonable necessities of life. *Johnson v. Cole*, 1967, 226 A.2d 268, 245 Md. 515. Following a hearing held on February 22, 2021, in Claim No. B847488 before the Workers' Compensation Commission, Decedent's mother, Linda S. Beeman was determined to be a "survivor who was dependent on the deceased for support." Plaintiffs respectfully request this Court take judicial notice of Linda Beeman's dependency as determined by the Workers' Compensation Commission. In the event that the Court deems Plaintiffs failure to plead the allegation that Linda Beeman was a dependent a fatal error, Plaintiffs would request leave to amend to plead such factual allegation as outlined *supra*.

With regard to Decedent's father, Plaintiffs do not possess the requisite knowledge to aver Decedent's father dependency status. As Decedent's father is included solely as a "use-Plaintiff" as required by the Maryland Wrongful Death statute, it would be a draconian remedy to dismiss the balance of Plaintiffs' Complaint and claims if the claims would otherwise stand. It

will become readily apparent through simple discovery whether Decedent's father was dependent upon Decedent, but dismissal on that point at this time is pre-mature on balance.

### C. Plaintiffs have sufficiently pleaded the "deliberate intent" exception to the Workers' Compensation exclusivity.

Maryland Rule 2-303(b) prescribes the composition of a complaint:

> Contents: Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense. It shall not include argument, unnecessary recitals of law, evidence, or documents, or any immaterial, impertinent, or scandalous matter.
> Md. Rule 2-303(b).

The purpose of pleading is to inform the opposing party of the of the claims brought. In essence, "[t]he object of all pleading is that parties [ ] may be mutually apprised of the matters in controversy[.]" *Pearce v. Watkins*, 68 Md. 534, 538 (1888) (citation omitted).

Under Maryland's liberal pleading standard, "a plaintiff need only state such facts in his or her complaint as are necessary to show an entitlement to relief." *Johns Hopkins Hosp. v. Pepper*, 346 Md. 679, 698 (1997). A litigant need not "state minutely all the circumstances which may conduce to prove the general charge," *Smith v. Shiebeck*, 180 Md. 412, 420 (1942), but must describe the claim with "such reasonable accuracy as will show what is at issue between the parties[.]" *Fischer v. Longest*, 99 Md. App. 368, 380 (1994). Courts have observed that "essentially, a complaint is sufficient to state a cause of action even if it relates 'just the facts' necessary to establish its elements." *1000 Friends of Md. v. Ehrlich*, 170 Md. App. 538, 546 (2006) (brackets and internal quotation marks omitted). Although the pleading standard is liberal, a plaintiff must still meet certain basic requirements. The facts establishing the cause of action "must be pleaded with sufficient specificity; bald assertions and conclusory statements by the

pleader will not suffice." *Alpharma*, 421 Md. at 72 (internal quotations omitted). "A dismissal is proper only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff." *Pittway Corp. v. Collins*, 409 Md. 218, 239 (2009) (citation omitted).

Here, as in the *Mekhava* court, "there is a big difference between that which is necessary to prove the elements and that which is necessary to merely allege them." To merely allege the elements of a deliberate intent claim, Plaintiffs must allege the "deliberate intent of the employer to injure or kill the covered employee." Md. Lab. & Empl. § 9-509(d). Here, Plaintiffs' allegation that "Defendant Allegany Scrap intentionally withheld and/or delayed seeking medical attention for Decedent, Joshua P. Nickel" (Pl. Compl. at ¶ 39) meets the standards required for notice-pleading under Maryland Law.

### D. Dr. Kubiczek's conclusion that Decedent's death was an accident is not a fatal flaw to Plaintiffs' claims.

Defendant Allegany Scrap suggests in their Motion to Dismiss that Plaintiffs' incorporation of Decedent's death certificate and the declaration therein stating that the manner of Decedent's death was "accident" defeats and trumps Plaintiffs' allegations of deliberate intent. Relying upon the four-corners of the death certificate, Defendant's argument fails. Dr. Kubiczek notes that the immediate cause of death was "multiple blunt force injuries to the head," and that the approximate interval between onset and death was "hours."  Either of these pieces of information, picked out of context, could be offered to suggest differing outcomes. Moreover, to suggest that Dr. Kubiczek's markings on the death certificate are definitive of ultimate question issues is ludicrous; had Dr. Kubiczek checked the box indicating that the injury did not occur at work, would it be offered as conclusory evidence that Workers' Compensation is inapplicable? Common sense must prevail, and the document must be examined *in toto*.

10

**E.  The Estate has not abandoned its claim by electing to receive Workers' Compensation death benefits.**

Defendant Allegany Scrap, in arguing that the Estate has abandoned its claim by electing to receive Workers' Compensation death benefits is reaching for interpretations of the Workers' Compensation Act that Maryland Courts have not made in their years of interpreting the statute. Defendant argues:

> The "deliberate intent" exception does not save the Estate's claim from the statutory bar because the Estate was required to incorporate any allegations of Allegany's purportedly intentional misconduct into the Estate's Workers' Compensation Claim. ***Sterry v. Bethlehem Steel Corp.*, 64 Md. App. 175, 189 (1985) (holding that employee's election to recover via a workers' compensation claim bars separate claim for intentional injuries)**. See also ***Tynes v. Shoney's Inc.*, 867 F. Supp. 330, 332 (D. Md. 1994) ("If an employee demonstrates such an intent[ to injury or kill], he has an option to file his claim under the [L&E § 9-509(d)] or bring a common law tort action for damages.")** (emphasis added); ***Parker v. Westat, Inc.*, 301 F. Supp. 2d 537, 540 (E.D. Va. 2004) (applying Maryland law and holding that "even if [employee] were somehow to allege that [employer] deliberately intended to injure her, she has abandoned her right to bring an action for damages by filing a claim for workers' compensation benefits")** (emphasis added) (citing L&E § 9-509(d) and Tynes, 867 F. Supp. at 332).**(emphasis added)**. Def. Memorandum in Support of Motion to Dismiss at ¶ 7.

Curiously, Defendant does not cite to a single reported case from Maryland standing for the proposition that the election to receive Workers' Compensation death benefits causes the Estate to "abandon" its claim for tort recovery for deliberate intent. Defendant does cite the *Sterry* case, a Maryland Appellate Court (formerly Court of Special Appeals) case but misconstrues the holding and attempts to use mere dicta as a perceived holding. Defendant further cites interpretations by the United States District Court for the District of Maryland through *Tynes* and the United States District Court for the Eastern District of Virginia through *Parker*, but fails to provide a Maryland case that stands for the proposition they advance.

**CONCLUSION**

11

While Defendant Allegany Scrap alleges in their Motion to Dismiss that Plaintiffs' Complaint fails for three reasons, all three of the reasons fail. Despite Defendant Allegany Scrap's claim, Workers' Compensation is not the sole remedy available in this matter. Plaintiffs' allegation that "Defendant Allegany Scrap intentionally withheld and/or delayed seeking medical attention for Decedent, Joshua P. Nickel" viewed in the light most favorable to the non-moving party and assuming the truth of the well-pleaded facts contained therein, is sufficient to allege that the deliberate intent exception to Workers' Compensation exclusivity applies. Decedent's Mother was clearly a dependent of Decedent within the meaning of the Workers' Compensation Act. Dr. Kubiczek's categorization that Decedent's death was an accidental death, is merely one piece of evidence produced in a case in which zero discovery has taken place to provide further context into the nature of decedent's injuries and the cause of his death. Under Maryland's notice-pleading standards, Plaintiffs have sufficiently pleaded facts of "deliberate intent" to injure Decedent to qualify for the "deliberate intent" exclusions.

WHEREFORE, Plaintiffs pray this honorable Court deny Defendant Allegany Scrap's Motion to Dismiss, or in the alternative set a hearing for oral argument on Defendant Allegany Scrap's Motion to Dismiss.

Respectfully submitted,

_____/s/_____
Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman  AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700  F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

E-FILED; Allegany Circuit Court
Docket: 5/23/2024 11:40 PM; Submission: 5/23/2024 11:40 PM
Envelope: 16580419

<u>**IN THE CIRCUIT COURT OF MARYLAND FOR ALLEGANY COUNTY**</u>

LINDA S. BEEMAN, *et al.*                *

      Plaintiffs                          *

v.                                       *        Civil Action No.: C-01-CV-23-000317

ALLEGANY SCRAP, INC., *et al*.           *

      Defendants.                       *

<u>**REQUEST FOR HEARING**</u>

    Plaintiffs, by and through undersigned counsel, request a hearing on the Newell Defendants' Motion to Dismiss and Plaintiffs' Response in Opposition.

                         Respectfully submitted,

                         _____/s/_____
                         Jason C. Buckel, AIS No.: 9612170120
                         T. Lee Beeman AIS No.: 1412160059
                         Buckel, Levasseur, Pillai & Beeman, LLC.
                         206 Washington Street
                         Cumberland, Maryland 21502
                         P: (301) 759-3700 F: (301) 722-0334
                         blplaw@atlanticbbn.net
                         Lbeeman@blpblaw.com
                         *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 23rd day of May, 2024, a copy of the foregoing was filed and served through the MDEC system and has been delivered to all recipients entitled to receive electronic service of the same.

Respectfully submitted,

_____/s/_____
T. Lee Beeman AIS No.: 1412160059

## IN THE CIRCUIT COURT OF MARYLAND FOR ALLEGANY COUNTY

LINDA S. BEEMAN, *et al.*                    *

     Plaintiffs                    *

v.                                          *        Civil Action No.: C-01-CV-23-000317

ALLEGANY SCRAP, INC., *et al.*               *

     Defendants.                    *

## PLAINTIFFS' RESPONSE IN OPPOSITION TO NEWELL DEFENDANT'S MOTION TO DIMISS

Plaintiff, Linda S. Beeman ("Plaintiff Beeman"), as *Surviving Mother* of *Decedent* Joshua P. Nickel ("Nickel"), and as *Personal Representative* of the Estate of Joshua P. Nickel (the "Nickel Estate"), by and through their counsel, Jason C. Buckel, Esq., T. Lee Beeman, Jr., Esq., and Buckel, Levasseur, Pillai & Beeman, LLC, and Karl E. Nickel ("Use Plaintiff Nickel"), as *Surviving Father* of *Decedent* Joshua P. Nickel, an unrepresented "*Use Plaintiff*" hereby respond in opposition to the Newell Defendant's[1] Motion to Dismiss Plaintiffs' Complaint.

## I.    FACTS AND PROCEDURAL BACKGROUND

On September 11, 2020, Joshua Nickel, the adult son of Linda Beeman, was tragically killed when a piece of metal somehow exited a metal shredding machine manufactured, according to an investigation conducted by the Occupational Safety and Health Administration (hereinafter "OSHA"), by one or more of the Newell Defendants and/or their corporate predecessor. Nickel was an employee of Allegany Scrap, Inc, a Maryland business operating in Allegany County. As properly pled in the Complaint, facts exist to suggest that Allegany Scarp was actually aware of

---

[1] Defendants The Shredder Co, LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. (the "Newell Defendants").

1

the hazardous and defective condition of the Newell metal shredder in question, and had experienced prior problems with shards of metal escaping from the device during its operation in an abnormally and unreasonably dangerous fashion to any individual located within reasonable proximity to the Newell machine during its normal operations. *See* OSHA Investigation Report, dated March 02, 2021, attached hereto as Exhibit 1.

The metal shredder in question has been, upon information and belief, dismantled or destroyed under the auspices of Allegany Scrap prior to the institution of litigation in this matter. The evidentiary inferences to be derived from the fact that this shredder no longer physically exists and is not available to be examined either by Plaintiffs' or by the Newell Defendants is an issue of future consideration for the Court, as it pertains to which party or parties bears responsibility for any lack of additional identifying information concerning the subject shredder outside of the four corners of the OSHA report and contemporaneous investigation. Both Defendants have filed Motions to Dismiss Plaintiffs Complaint, with the Newell Defendants asserting, collectively, that: (1) Maryland lacks personal jurisdiction over their companies, which are incorporated in Texas, but apparently freely acknowledge that they manufacture and sell metal shredders into the national or global stream of commerce, avail themselves of the Maryland market for their products and services, and do not suggest in any way that the shredder in question was misidentified by OSHA as being a product of one or more of the Defendant entities; (2) the Plaintiffs' claims for defective design of the subject shredder fail to state a cause of action upon which relief may be granted; (3) the Plaintiffs' claims for breach of implied warranty fail because Plaintiff somehow failed to notify the Newell Defendants of the breach of warranty, despite the fact that Nickel was killed on the day of the subject incident and that Newell and/or its corporate related entities were put on notice either through the OSHA investigation or by provision of a notice of potential claim on Nickel's behalf

2

and despite the legal reality that Plaintiffs were under no obligation to provide such notice; and (4) Plaintiff's claims as interpreted by the Newell Defendants for "breach of the implied warranty of fitness for a particular purpose" fail to state a cause of action.[2]

Considering the procedural posture of the case, absent factual information from Newell to the contrary, and  given Beeman's inability to conduct and conclude discovery as to underlying factual predicates necessary for the establishment of any of Newell's defenses (more properly raised as grounds for summary judgment after a full factual record is developed during discovery), Newell's motion to dismiss should properly be denied or, alternatively, held in abeyance until the conclusion of discovery or granted with express leave to file an amended complaint.

## II.    ARGUMENT

### A.    Standard of Review

It is well decided under Maryland law that in deciding a motion to dismiss a complaint, the Court assumes the truth of the complaint's factual allegations, and any reasonable inferences in the light most favorable to the Plaintiff. *Patton v. Wells Fargo Financial Maryland, Inc.*, 437 Md. 83, 85 A.3rd 167 (2014). In considering a motion to dismiss, dismissal is proper only if all the allegations and permissible inferences, if true, would not afford relief to the Plaintiff. *Mummert v. Alizadeh*, 435 Md. 207, 77 A.3d 1049 (2014). Dismissal for failure to state a claim is proper only if complaint fails to disclose, on its face, legally sufficient cause of action. *Tavakoli-Nouri v. State*, 139 Md. App. 716, 725 779 A.2d 992 (2001).

In determining whether a plaintiff has alleged claims upon which relief can be granted, there is a big difference between that which is necessary to prove the elements and that which is

---

[2] The Newell Defendants have included exhibits and materials extraneous to the Complaint. As such, to the extent that the Court considers such extraneous materials or factual allegations outside of the four corners of the Complaint, the Newell Defendants Motion should be construed as one for summary judgement, and interpreted under the standards of review governing Maryland Rule 2-501.

necessary to merely allege them. *Mekhaya v. Eastland Food Corporation*, 256 Md. App. 497, 287 A.3d 395 (2022), *cert. granted*, 483 Md. 264, 291 A.3d 776 (2023)(internal citations omitted).  In other words, "[T]he standard for whether an allegation states a claim upon which relief can be granted does not require the petitioner to assert facts sufficient to prove the claim, but rather those necessary to allege a claim." *Lloyd v. General Motors Corp.*, 397 Md. 108, 132, 916 A.2d 257 (2007).

### B.    It would be a clear error of law to dismiss Plaintiffs' Complaint based upon the Newell Defendants personal jurisdiction defense at this juncture.

The Newell Defendants have offered little, if any, substantive evidence from which this Court could make a determination that they are not subject to the personal jurisdiction of the legal system of the State of Maryland, under either Maryland's "long-arm" statute (Courts & Judicial Proceedings Article, Section 6-103), or under the controlling federal constitutional concepts of due process. Defendants seem to suggest that it is a requirement under Maryland's pleading standards to specifically plead each and every aspect of personal jurisdiction under the "long-arm" statute and/or make descriptive allegations as to the due process analysis of asserting personal jurisdiction over any named defendant. Newell cites absolutely no case law or Maryland precedent to suggest that this is the standard or norm. Plaintiffs are unaware of any controlling authority that suggests that a case may be dismissed preliminarily because the Complaint does not specifically enumerate in fine detail the grounds for personal jurisdiction. Conversely, it is commonplace for allegations of personal jurisdiction and venue to simply be made in a perfunctory manner, subject to a factual challenge or defense which the Court may determine after allowing proper opportunity for the record to be developed through affidavit or discovery.

It is evident from the only two cases cited by the Newell Defendants in support of their personal jurisdiction argument that their motion lacks merit at this juncture. In *CSR, Ltd v. Taylor*,

the Court of Special Appeals stated clearly that "the 'minimum contacts standard' is not susceptible of mechanical application, and the facts of each case must be weighed… 'As the United States Supreme Court observed in *Kulko,* the determination as to whether a Defendant has maintained sufficient minimum contacts with the forum state 'is one in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable'" *CSR, Ltd*, 411 Md 457, 478 (2009). Further, "designing a product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, marketing the product through a distributor who has agreed to serve as the sales agent in the forum state exemplify purposeful availment" such as to justify imposition of personal jurisdiction over a product manufacturer. *CSR, Ltd*, 411 Md at 485-489; See *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 at 112 (1987).

The Newell Defendants motion to dismiss is absolutely vacant of any affidavit or any other factual information suggesting that they, in isolation or in combination, did not design shredders or other products for market in Maryland, advertise in Maryland, establish channels for providing regular advice to customers in Maryland, or market their products through a distributor acting as a sales agent in Maryland. In point of fact, evidence exists to show that Newell shredders have been sold into multiple locations in Maryland, and that as of 1994, Newell manufactured "well over half of the shredders used in the United States today". *See* American Society of Mechanical Engineering material on "The Newell Shredder", attached at Exhibit 2.

This is inapposite to the factual record in the *CSR* case, where the motion to dismiss was apparently held in abeyance allowing a significant amount of discovery between the parties as to the minimum contacts between the Australian raw materials supplier (whose material only passed briefly through a Maryland port and could not be verified in any way by the Plaintiffs as being the

source of their injuries) and Maryland. Similarly, in *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir. 1994), the only other case cited by the Newell Defendants as to personal jurisdiction, a federal court concluded that a product component manufacturer, who had exclusively manufactured their component directly for sale to a product manufacturer with no other minimum contacts to the forum state, could not have personal jurisdiction asserted over them in that state. In this case, the Newell Defendants are not alleged to be either raw material suppliers or component suppliers who dealt exclusively with other larger manufacturers with no direct connection to Maryland. They are the actual manufacturer of the defective and dangerous product which killed Josh Nickel in Allegany County, Maryland. How is this ascertained? Through an investigation by OSHA which determined that the Newell companies were the manufacturer of the product in question and who were directly contacted by the OSHA investigators during the course of the investigation as to information about the product itself.

Plaintiffs readily concede that the Newell Defendants appear to have a byzantine corporate structure, consisting of multiple companies who seem to be created and dissolved and reformed for a rhyme or reason apparent only to their owners. Plaintiffs have in good faith attempted to identify the Newell Defendants involved in the design, manufacture, or sale of the metal shredder product which caused Josh Nickel's death. To the extent that any one of the Newell Defendants would assert that they are not the proper entity before the Court for a final disposition, such an inquiry can only fairly and judiciously be made after the opportunity for the parties to conduct discovery as to the Newell Defendants corporate structures, predecessors, insurance agreements, and the specific history of the allegedly defective shredder in question. Such an analysis and determination cannot and should not be made in the exercise of judicial discretion at the preliminary motion to dismiss stage.

The Newell Defendants primary argument supported by any factual averment as to personal jurisdiction seems to be that they are located, incorporated, or even dissolved on Texas, rather than Maryland. It is axiomatic however that under Maryland's "long-arm" personal jurisdiction statute, any entity who transacts any business or performs any character of work or service in Maryland is subject to the personal jurisdiction of our courts and that entity need never have been physically present in Maryland. *Bond v. Messerman,* 162 Md. App. 93., affirmed 391 Md. 706 (2005); See also *Bahn v. Chicago Motor Club Ins. Co.* 98 Md. App. 599 (1993). It is uncontroverted that the Newell Defendants are Texas corporate entities. It is unclear as to their interlocking nature or their responsibilities for the design or manufacture of the shredder machine in question as specifically identified in the OSHA report and confirmed during activities associated with that investigation by individuals associated with the Newell Defendants.

Plaintiff has alleged that the Newell Defendants, either individually or collectively, designed, manufactured, and sold an industrial metal shredder which was delivered into the Maryland market in Allegany County, and which directly caused the death of Josh Nickel in Maryland. It is reasonable to presume that discovery on this matter would reveal that one or more of the Newell Defendants, given the reality that they appear to be one of the nation's leading manufacturers, sellers, and service providers of and for industrial metal shredding machines, have the type of minimum contacts with Maryland necessary to sustain personal jurisdiction. As such, the arguments contained in their motion to dismiss are unavailing.

### C.     Plaintiffs have adequately pled a cause of action for defective design and their allegations should not be dismissed for failure to state a claim upon which relief may be granted.

At its core the Newell Defendants arguments suggesting that Counts IV, X, and XVI of the Complaint fail to state a claim for defective design under Maryland product liability law are based only on objections to the specificity of the allegations contained in the Complaint. Each of these

counts is identical in nature, setting forth a defective design claim on behalf of each of the named Plaintiffs in the instant action.

The Complaint must be read cumulatively in any failure to state a claim analysis. Notably, in paragraph 32 the Complaint, Plaintiffs allege that the metal shrapnel that killed Nickel "was allowed to be projected and discharged due to a sagging and inadequate guard" In paragraph 49, Plaintiffs allege the Newell Defendants designed and manufactured "the industrial shredder utilizing certain deflectors, shielding, rubber curtains or other safety features to prevent metal shrapnel from flying out of the industrial shredder… however failed to design the industrial shredder in a manner which would anticipate and mitigate that these deflectors, shielding, rubber curtains or other safety features degrade or are intentionally removed from the industrial shredder by an end-user and cause the industrial shredder to cease operations while these safety features were absent." Moreover, in paragraph 50, Plaintiffs allege that the subject product "was being operated without certain deflectors, shielding, rubber curtains or other safety features to prevent metal shrapnel from flying out of the industrial shredder and causing injury and or death… which was reasonably foreseeable" by the Newell Defendants.

As such, Plaintiffs' allegations can reasonably be read to confer notice upon the Defendant of a claim that the product was in a defective condition at the time it left the control or possession of the Newell Defendants; that it was unreasonably dangerous to the consumer or others as so designed; that the product, in the absence of safety or precautionary measures, shields and guards, and safety redundancies which would prevent its operation without the presence of such precautionary measures, was within the original design; and that the failure to provide either the safety features or redundancies which would prevent the operation of the machine absent the use

8

of the safety features was a proximate cause of Josh Nickel's death. That is all that is required to maintain a cause of action at this juncture of the proceedings.

A complaint is sufficient to state a cause of action even if it relates just the basic facts necessary to establish its elements. *Tavakoli-Nouri v. State* 139 Md. App. 716 (2001); See also Maryland Rule 2-322(b)(2). It is similarly acceptable to provide alternative theories of relief at the pleading stage in a civil action. In the subject matter, Plaintiffs, absent discovery at this early juncture and without the benefit of the ability to examine the subject shredder other than the information contained within the OSHA investigation report, have alleged that the shredder machine was designed and manufactured without appropriate safety protocols including shields, guards, and other features which would prevent metal shrapnel from being ejected from the machine and striking nearby workers or other individuals.

Further, Plaintiffs have alleged that the Newell Defendants in their design and manufacture of the machine failed to account for the fact that safety redundancies would be necessary and reasonable in conformity with industry standards, given that over time safety features such as guards or shields may fail organically, may fail to be replaced, or otherwise may be modified so that their efficacy is diminished. Thus, given the incredibly dangerous nature of the operation of an industrial metal machine (as evidenced by the death of Josh Nickel itself), safety redundancies that would not allow the shredder to operate given the absence or degradation of any initial safety guards or shields would be required under industry standards or tort law. Extensive discovery in this case will likely reveal the extent to which the Newell Defendants and/or their corporate predecessors designed the shredder in question with any particular level of shielding or guarding mechanisms to prevent the type of horrific incident which cost Beeman her only son. Alternatively, extensive discovery may reveal that the Newell Defendants designed the subject shredder with

sufficient guards and shields, but had industry knowledge and awareness that over the reasonable life expectancy of the machine the originally designed guards and shields would be insufficient to protect users of the machine and foreseeable bystanders from its innate dangers, and as a result a standard of reasonableness would require that the Newell Defendants implemented more safety redundancies in the design of the machine so as to counteract the failure of guards or shields to operate correctly during the machine's use. In either event, dismissing Plaintiffs claim for failure to state a cause of action would be premature, inappropriate and highly prejudicial.

The only case cited in the Newell Defendants motion to dismiss the defective design claims discussed herein dealt only with the dismissal of claims at the summary judgement stage after a full factual record and expert testimony were developed for the Courts consideration. See *Halliday v. Sturm, Ruger & Co*. 368 Md. 186 (2002). Defendants have not cited a single case where a Maryland trial court or appellate court determined that a defective design product liability claim should be dismissed for failure to state a claim for which relief may be granted based upon elevating form over substance with respect to the niceties of pleading in the Complaint. This Court should not take such an unprecedented action.

### D. Plaintiffs' claims are not precluded due to a lack of § 2-607 notice to Defendants because Plaintiffs are of a class intended to be protected by seller's warranties and are not "buyers" as contemplated by the Maryland Uniform Commercial Code.

The Newell Defendants assert that Plaintiffs claims are precluded because Plaintiffs failed to provide notice of their claim to the Newell Defendants.  The Newell Defendants indicate:

> *"Pursuant to the Maryland Uniform Commercial Code, a plaintiff alleging a breach of any implied warranty must give notice to the seller or manufacturer "within a reasonable time after he discovers or should have discovered any breach." MD. CODE ANN., COMM. LAW, § 2-607(3)(a). If the plaintiff fails to provide timely notice, he or she is "barred from any remedy" for breach of implied warranty. Id."*

10

Ultimately, while Defendants correctly recite the language of § 2-607, their legal analysis fails and is contradictory to clear case law established by Maryland Courts.  Amendments to Maryland's U.C.C. in 1969 were intended to significantly broaden the classes of individuals classified as third-party beneficiaries of sellers' warranties to include 'or any other ultimate consumer or user of the goods or person affected thereby.'" *Frericks v. General Motors Corp.*, 278 Md. 304, 309, 363 A.2d 460 (1976).  The 1969 Amendments not only expanded classes of third-party beneficiaries, it also expanded the definition of a seller, "to provide that in the warranty provisions of the Code, §§ 2-314 - 2-318, the word "seller' includes the manufacturer, distributor, dealer, wholesaler or other middleman or the retailer.' The effect of these changes was to abolish the privity requirements in warranty actions for personal injuries. *Id*. Plaintiffs' Decedent is clearly a 'person affected [by the goods]' as contemplated under § 2-607.

Here, it is entirely undisputed based upon the pleadings that Plaintiffs failed to provide a "Section 2-607 Notice" to the Newell Defendants.  The *Frericks* court, contemplated this exact issue:

> ***"It is clear that in an action by a buyer against his seller for a breach of warranty, the buyer must notify the seller of the alleged breach. Therefore, if the notice requirement of § 2-607 extends beyond the buyer to third party beneficiaries, and if the filing of the lawsuit under the circumstances here would not itself constitute notice, it would appear that the plaintiffs would be precluded from pursuing their warranty actions against General Motors and Anchor, as it is undisputed that they did not give notice of the alleged breach of warranty prior to the filing of the present action."***
> *Id*. at 310.

Ultimately, when faced with the same situation, the *Frericks* court concluded that, ". . .third party beneficiaries, are not required by § 2-607 to notify the seller of a breach of warranty and are therefore not precluded from pursuing a remedy for breach." *Id*.  The court reasoned that a buyer,

as defined pursuant to § 2-103(1)(a) of the Maryland U.C.C. is "a person who buys or contracts to buy goods." *Id*.  The court went further than merely analyzing the definition of a buyer and looked to the purpose of the notice provisions included in § 2-607:

> **"It has been stated that the purpose of the notice requirement of s 2-607(3)(a) is to inform the seller of a defect in the transaction, enabling him to correct the defect if possible and to minimize any damages. Wagner Tractor, Inc. v. Shields, 381 F.2d 441, 445 (9th Cir. 1967). In a case involving a personal injury to a non-buyer, the requirement would seem to serve no purpose, as it would be impossible to correct the defect or minimize damages after the injury has already occurred."**
> *Id*. at 313.

Only a year after the *Frerick* court provided the above clarifications to Maryland's U.C.C. notice provision, the Supreme Court of Maryland (Maryland Court of Appeals at the time) held that an employee injured by a piece of equipment purchased by his employer was a third-party beneficiary and not a "buyer" as contemplated under the Maryland U.C.C. *Mattos, Inc. v. Hash*, 279 Md. 371, 368 A.2d 993 (1977).  Here, like in the *Mattos* matter, Decedent was an employee affected by the product or goods put into the market.  It is disingenuous for the Newell Defendants to attempt to preclude Plaintiffs' claims based upon a lack of notice that the Maryland courts have clearly held does not apply to Plaintiffs.  Like in *Frerick* and *Mattos*, Plaintiffs' Decedent is correctly among the class of third-party beneficiaries that are specifically contemplated as being protected individuals within the warranty provisions of Maryland's U.C.C.

Assuming *arguendo* that the Court is not persuaded that Plaintiffs were not obligated to send notice pursuant to § 2-607 to the Newell Defendants, then the Court should consider the OSHA reporting mechanism, including OSHA investigators contacting the major principal of multiple, if not all, Newell Defendant entities, to gather further information regarding the incident

as notice of the incident.  *See*, E-mail exchange between Scott Newell and Maryland Department of Labor Employees, attached hereto as Exhibit 3.

### E.     Plaintiffs concede that they have no knowledge that the "buyer" bought the shredder for a particular purpose differing from the ordinary purpose, but ought be allowed discovery prior to dismissal.

Newell Defendants argue that Plaintiffs' complaint bears no allegations that the buyer of the industrial shredder used it for a particular purpose other than the ordinary purpose and that buyer conveyed that sentiment adequately to put seller on notice of that fact at the time of sale.  On this point, the Newell Defendants are entirely correct.  Plaintiffs must concede that Decedent, a third-party beneficiary, neither possessed nor passed along any information concerning the communications between Defendant Allegany Scrap, Inc., and the Newell Defendants regarding the particular purpose or the Newell Defendants' knowledge of the same.  Indeed, this seems to be the type of information that an employee of a scrap yard would never have without litigating a matter through discovery.  What is clear, as outlined *supra*, is that Decedent is of the class of individuals specifically intended to be protected by the warranty provisions of Maryland's U.C.C. To dismiss Plaintiffs' claims simply because Plaintiffs' lacked information that would ordinarily only be available to them through the litigation process is quite simply arbitrary and draconian, not to mention premature.

### III.     CONCLUSION

The Newell Defendants outline four arguments in their Motion to Dismiss seeking to establish that Plaintiffs' claims must necessarily fail and should, as a result, be dismissed. The Newell Defendants freely acknowledge that they manufacture and sell metal shredders into the national or global stream of commerce, avail themselves of the Maryland market for their products and services, and do not suggest in any way that the shredder in question was misidentified by

OSHA as being a product of one or more of the Defendant entities. In fact, in marketing materials published by the Newell Defendants, there are specific indications that Newell shredders are utilized in Maryland. Plaintiffs had no obligation as a third-party beneficiary "affected by the product" to provide any notice to the Newell Defendants. Finally, in reading the Complaint cumulatively, taking the Plaintiffs allegations in the light most favorable to Plaintiffs, and resolving all inferences in favor of Plaintiffs, it becomes clear that Plaintiffs have sufficiently pled to meet Maryland's reduced Notice Pleading standards. In the instance where Plaintiffs allegations are outside of their personal knowledge, discovery, or at the very least, leave to amend should be permitted before a premature, arbitrary, and prejudicial remedy such as dismissal is granted. For the foregoing reasons, Plaintiffs move this Court to deny the Newell Defendants Motion to Dismiss or in the alternative, grant Plaintiffs leave to amend their Complaint, and for whatever further relief as this Court deems just and necessary.

Respectfully submitted,

_____/s/_____
Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman  AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700  F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

14

## **REQUEST FOR HEARING**

Plaintiffs, by and through undersigned counsel, request a hearing on Defendant Allegany Scrap, Inc.'s Motion to Dismiss and Plaintiffs' Response in Opposition.

Respectfully submitted,

_____/s/_____

Jason C. Buckel, AIS No.: 9612170120
T. Lee Beeman AIS No.: 1412160059
Buckel, Levasseur, Pillai & Beeman, LLC.
206 Washington Street
Cumberland, Maryland 21502
P: (301) 759-3700 F: (301) 722-0334
blplaw@atlanticbbn.net
Lbeeman@blpblaw.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this 23rd day of May, 2024, a copy of the foregoing was filed and served through the MDEC system and has been delivered to all recipients entitled to receive electronic service of the same.

Respectfully submitted,

_____/s/_____

T. Lee Beeman AIS No.: 1412160059

## Inspection Report

February 3, 2021 2:19 PM

| RID | CSHO ID | Supervisor ID | Inspection Number | Optional Report Number | Case Closed Date |
|---|---|---|---|---|---|
| 0352440 | E2047 | N6297 | 1492474 | E2047-072-20 | |

| Establishment Name | | Allegany Scrap, Inc. | | Doing Business As (DBA) | | | |
|---|---|---|---|---|---|---|---|
| Ownership Type | | Private Sector | Type of Business | Corporation | Primary NAICS | | 423930 |
| Site Address | 10801 Day Road SE Cumberland, MD 21502 | | Site Phone | (301) 724-1085 | Extn | | Site FAX | (301) 777-1766 |
| Business Address | 10801 Day Road SE Cumberland, MD 21502 | | Business Phone | (301) 724-1085 | Business FAX | | | (301) 777-1766 |
| Mailing Address | 10801 Day Road SE Cumberland, MD 21502 | | E-mail | KBoyle@jsmith-sons.com | Mobile Phone | | | USA |
| Site Activity | Metal Recycling Activities | | Site NAICS | 423930 | | | Days on Site | 3 |
| Federal EIN | 201060555 | | DUNS | | Temporary or Fixed Site? | | N | |
| State Estab Id | 01601296 MD | | DUNS plus4 | | CAGE Code | | | |
| Construction Type | | | | | | | | |

| Parent Company Legal Name | | | Parent Company Trade Name/DBA | | |
|---|---|---|---|---|---|
| Parent Company Address | | Phone Number | | Extn | |
| TIN / EIN | | | DUNS | | |
| CAGE Code | | | DUNS plus4 | | |

| Entry | 09/11/2020 | 10:56 AM | First Closing Conference | 01/29/2021 | 11:00 AM |
|---|---|---|---|---|---|
| Opening Conference | 09/11/2020 | 11:00 AM | Second Closing Conference | | |
| Walkaround | 09/11/2020 | 11:15 AM | Exit | 11/18/2020 | 12:00 PM |

Page 2

Allegany Scrap, Inc.                                                    Inspection Nr 1492474

| Inspection Initiating Type | Fatality/Catastrophe | Secondary Type | |
|---|---|---|---|
| Other Initiating Type | | Inspection Category | Safety |
| Scope of Inspection | Comprehensive | Reason No Inspection | |
| Migrant Farm Worker | N | Expln. for No Insp. | |
| State Strategic Initiatives | Other High-Hazard Industries (NAICS 110, 510-560, 610-620, 710-720, 810) | | |
| National Emphasis | | | |
| State/Local Emphasis | CRSHSTRK | | |
| Primary Emphasis | | | |

| Additional Codes | | | |
|---|---|---|---|
| Type | ID | Value | Description |
| S | 20 | Fair Pay | Questions relating to Executive Order 13673 not attempted. |

| Employed in Establishment | 20 | Walkaround? | N | Advance Notice? | N |
|---|---|---|---|---|---|
| Covered By Inspection | 20 | Interviewed? | Y | Flag for Follow-up | N |
| Controlled By Employer | 20 | Union? | N | Reason for Follow-up | |
| Is this Company a current federal contractor? | | Unknown | | | |

| Related UPA | | |
|---|---|---|
| Activity Number | Activity Type | Establishment Name |
| 1658984 | FAT/CAT | Allegany Scrap, Inc. |

| Related Inspections | | |
|---|---|---|
| Inspection Number | Related Inspection Type | Establishment Name |
| 1502765 | Concurrent | Allegany Scrap, Inc. |

| SVEP Information |
|---|

Page 3

Allegany Scrap, Inc.                                            Inspection Nr 1492474

| SVEP Case? | Post Citation SVEP Action | Post Citation SVEP Action Date | Is this inspection related to a previous SVEP inspection? | Is an Imminent Danger Notice included in this case? | Date Imminent Danger Notice was issued |
|---|---|---|---|---|---|
| N | None | | N | N | |

| Employer Representatives Contacted | | | | | |
|---|---|---|---|---|---|
| Name | Kelly Boyle | Job Title | Safety Manager | Occupation | Safety |
| Address | 10801 Day Road SE CUMBERLAND, MD 21502 | | | Interviewed? | Y |
| Home | (540) 850-9928 | Mobile | | Fax | |
| Email | kboyle@jsmith-sons.com | | Participation | | Credentials, Opening Conference, Closing Conference, Walk Around, Citation Mailed |

| Employer Representatives Contacted | | | | | |
|---|---|---|---|---|---|
| Name | Stephen Bennett | Job Title | Manager | Occupation | Metal Scrap |
| Address | 10801 Day Road SE CUMBERLAND, MD 21502 | | | Interviewed? | Y |
| Home | (301) 616-9985 | Mobile | | Fax | |
| Email | | | Participation | | Credentials, Opening Conference, Closing Conference, Walk Around, Citation Mailed |

| Employer Representatives Contacted | | | | | |
|---|---|---|---|---|---|
| Name | Christopher Bennett | Job Title | Plant Manager | Occupation | Metal Scrap |
| Address | 10801 Day Road SE CUMBERLAND, MD 21502 | | | Interviewed? | Y |
| Home | (814) 521-3536 | Mobile | | Fax | |
| Email | | | Participation | | Credentials |

| Employer Representatives Contacted | | | | | |
|---|---|---|---|---|---|

Page 4

Allegany Scrap, Inc.                                        Inspection Nr 1492474

| Name | John Martin | Job Title | Legal Council | Occupation | Attorney |
|------|-------------|-----------|---------------|------------|----------|
| Address | 1909 K Street, N.W.<br>WASHINGTON, DC 20006 | | | Interviewed? | Y |
| Home | (202) 263-0267 | Mobile | | Fax | |
| Email | john.martin@ogletree.com | | Participation | | Closing Conference, Citation Mailed |
| Employees Contacted | | | | | |
| Name | Damion Fazenbaker | Job Title | Laborer | Occupation | Metal Scrap |
| Address | 10801 Day Road SE<br>CUMBERLAND, MD 21502 | | | Interviewed? | Y |
| Home | (301) 707-8527 | Mobile | | Fax | |
| Email | | | Participation | | |
| Employees Contacted | | | | | |
| Name | Jason Wilburn | Job Title | Laborer | Occupation | Metal Scrap |
| Address | 10801 Day Road SE<br>CUMBERLAND, MD 21502 | | | Interviewed? | Y |
| Home | (301) 616-5344 | Mobile | | Fax | |
| Email | | | Participation | | |
| Employees Contacted | | | | | |
| Name | Ricky Butler | Job Title | Shredder Operator | Occupation | Metal Scrap |
| Address | 10801 Day Road SE<br>CUMBERLAND, MD 21502 | | | Interviewed? | Y |
| Home | (724) 963-7879 | Mobile | | Fax | |
| Email | | | Participation | | |
| Employees Contacted | | | | | |
| Name | Joshua Nickel | Job Title | Laborer | Occupation | Metal Scrap |

Page 5

Allegany Scrap, Inc.                                                   Inspection Nr 1492474

| Address | 19320 Paradise Hill Lane SW CUMBERLAND, MD 21501 | | | Interviewed? | N |
|---------|-------------------|-----------|-------------|---------------|----|
| Home | (240) 580-6599 | Mobile | | Fax | |
| Email | | | Participation | | |
| **Employees Contacted** | | | | | |
| Name | Hunter Cross | Job Title | Laborer | Occupation | Metal Scrap |
| Address | 10801 Day Road SE CUMBERLAND, MD 21502 | | | Interviewed? | Y |
| Home | (240) 609-5465 | Mobile | | Fax | |
| Email | | | Participation | | |
| **Other Persons Contacted** | | | | | |
| Name | Linda Beeman | Role | Victim's Mother | Relationship to employer | Victim's Mother |
| Address | 19320 Paradise Hill Lane SW FROSTBURG, MD 21532 | | | Interviewed? | Y |
| Home | (301) 697-3979 | Mobile | (240) 284-2546 | Fax | |
| Email | linda.nickel81@gmail.com | | Participation | | |
| **Other Persons Contacted** | | | | | |
| Name | Tyler Reed | Role | Trauma Nurse | Relationship to employer | Victim's Trauma Nurse |
| Address | 12500 Willowbrook Road CUMBERLAND, MD 21502 | | | Interviewed? | Y |
| Home | (240) 964-7000 | Mobile | | Fax | |
| Email | | | Participation | | |
| **Other Persons Contacted** | | | | | |
| Name | Nicholas Mazzone | Role | Detective - Cumberland Police Department | Relationship to employer | Detective - Cumberland Police Department |
| Address | 20 Bedford Street CUMBERLAND, MD 21502 | | | Interviewed? | Y |

Page 6

Allegany Scrap, Inc.

Inspection Nr 1492474

| Home | (301) 759-6491 | Mobile | | Fax | |
|------|----------------|--------|--|-----|--|
| Email | | | Participation | | |
| **Other Persons Contacted** | | | | | |
| Name | Justin Broadwater | Role | Former Employee | Relationship to employer | Former Employee |
| Address | 305 Pulaski Street CUMBERLAND, MD 21501 | | | Interviewed? | Y |
| Home | (301) 338-3334 | Mobile | | Fax | |
| Email | | | Participation | | |
| **Other Persons Contacted** | | | | | |
| Name | Jason Miller | Role | Former Employee | Relationship to employer | Former Employee |
| Address | 1875 Detor Road GREAT CACAPON, WV 25422 | | | Interviewed? | Y |
| Home | (304) 822-0892 | Mobile | | Fax | |
| Email | | | Participation | | Credentials |
| **Other Persons Contacted** | | | | | |
| Name | Lisa Sadler | Role | Office of the Chief Medical Examiner - Investigations Unit Supervisor | Relationship to employer | Office of the Chief Medical Examiner - Investigations Unit Supervisor |
| Address | 619 Virginia Street CHARLESTON, WV 25302 | | | Interviewed? | Y |
| Home | (304) 558-6902 | Mobile | | Fax | |
| Email | | | Participation | | |

| Denial of Entry | | | |
|-----------------|--|--|--|
| Denial Date/Time | Stage | Reason | Re-entry Date/Time |
| CSHO Signature | | Date | 03/02/2021 |

**INSPECTION NARRATIVE**

| Inspection Number | 1492474 |
|---|---|

**COVERAGE INFORMATION (Unusual Circumstances):** On September 11th, 2020, a fatality investigation was conducted with Allegany Scrap, Inc. located at 10801 Day Road SE, Cumberland, MD, 21502. Maryland Emergency Management Agency (MEMA) reported to Maryland Occupational Safety and Health (MOSH) a workplace fatality where one employee was allegedly struck in the head by a piece of scrap metal that was projected from a shredder.

**Opening Conference:** On September 11th, 2020, an opening conference was held with Allegany Scrap Safety Manager Kelly Boyle and Manager Stephen Bennett onsite by Compliance Safety and Health Officer (CSHO) Matthew Vaughn. Credentials were presented at this time and the scope, nature, and purpose of the inspection were explained, and all aspects of an opening conference were discussed. A copy of the MOSH Act was provided. No objections to the inspection were noted.

**Recycling Process:** Alleghany Scrap, Inc. is a metal recycling facility that scraps all types of metals and products containing metal. Various materials including junk cars are recycled by going through The Shredder Company Model 02 Mid Section Shredder. The shredder is powered by a 4,000 horsepower (hp) motor that spins a drive shaft connected to a spindle with twelve 600 pound (lb) hammers rotating at 450 rotations per minute (rpm). The tip speed of the hammers was approximately 15,000 feet per minute (fpm).

Employees are stationed throughout the site during this scrapping process. CSHO Vaughn determined that employees operate cranes and loaders that load the shredder with various metals and scrap on the infeed side. One employee operates the shredder from a control booth located next to the infeed section of the shredder. This control booth is protected by bullet resistant polycarbonate called Lexan and expanded metal mesh. One employee stands on the catwalk area 76 feet away from the shredder to monitor the flow of materials on the conveyor. The magnetic drum rotates at approximately 28 rpm. The magnetic drum separates metallic materials from non-metallic materials. Once separated, the metallic materials are sent for processing, and the non-metallic materials are sent to a conveyor where employees sort these materials. These employees identify any metallic materials not collected by the magnetic drum. The plant feeds approximately 100-tons of material per hour and operates approximately 2-3 days per week up to 8 hours per day.

**Description of Accident:** On September 11th, 2020, between approximately 12:10 PM to 12:21 PM, an employee was struck by a piece of scrap metal that was projected from The Shredder Company Model 02 Mid Section shredder. Through the investigation, CSHO Vaughn found that employee Joshua Nickel was struck while standing on a catwalk next to the magnetic drum located approximately 76-feet away from the discharge end of the shredder. Mr. Nickel was found by other employees lying face down in a prone position on the catwalk with a severe injury to the head. Employee interviews revealed Mr. Nickel was found unconscious with a pulse and labored breathing. Employees had called 911 and began to keep the victim comfortable. The victim was transferred to Western Maryland Hospital Center in Cumberland MD with a status of critical. The victim was stabilized at this facility but still remained in a coma and was later transferred to J.W. Ruby Memorial Hospital located in Morgantown, WV. The victim was pronounced brain dead by medical staff at 10:52 AM on 09/11/2020.

**Interview with the Shredder designer:** The Shredder Company that designed and built the Model 02 Mid Section shredder is no longer in business. Through research, it was found that Newell Recycling Equipment LLC Chairman and Chief Executive Officer (CEO) Scott Newell had previously owned the Shredder Company and designed the shredder involved in this accident.

On September 28th, 2020, a conference call was arranged with Mr. Newell. Prior to this conference call, MOSH Chief of Compliance Michael Penn sent Mr. Newell photographs depicting the condition of the shredder and facility. During this conversation with Mr. Newell, the details of this investigation were discussed and Mr. Newell concluded that there were two primary openings where materials would be discharged. These openings were located on the in-feed side and the discharge end of the shredder. After reviewing the supplied photographs of the shredder, Mr. Newell indicated there was an unguarded 3 inch wide by 30 inch long opening where the metal bar holding the rubber curtain slid down allowing for material discharge. Mr. Newell indicated that the large amount of metal scrap piling up next to the discharge chute was an indication that materials were ricocheting off the side walls of the

Revised March 2016

shaker table once getting crushed by the hammers and falling through the grates and then down on to the shaker table. Mr. Newell indicated that the shredders hammers rotate at 450 rpm. Mr. Newell also indicated that the tip speed of each hammer was 15,000 feet per minute (fpm). Mr. Newell stated that the materials that were being discharged from that opening were being ejected around approximately 170 miles per hour (mph) as result of ricocheting inside the shredder. Mr. Newell supplied documentation titled "Safety At and Around Shredding Plants October 2015" with specific details on the hazards associated with discharging scrap and methods to prevent accidental discharge. The methods to prevent discharging of scrap were explained on pages 41-50. After this conference with Mr. Newell, MOSH inspectors used a laser to point from where the victim was located to the opening of the shredder. With the use of the laser, MOSH inspectors found that there was a direct path from the opening in the rubber curtains to where the employee was struck while standing on the catwalk.

**Investigative Findings:** Through witness statements, it was determined that Mr. Nickel was standing on the catwalk where the material enters into the magnetic drum sorting area. Mr. Nickel's job duties were to observe the materials that come on the conveyor belt. Mr. Nickel was wearing all of the required personal protective equipment (PPE) during this time according to the employer. This included a hard hat, safety glasses, gloves, and work boots. The piece of metal struck Mr. Nickel's head just above his left ear. It was determined through this investigation that a piece of scrap metal struck employee Mr. Nickel; however, the specific piece or pieces are unknown. CSHO Vaughn observed that the entire area around the shredder and the sorting area was littered with metal debris that was likely ejected from the shredder.

In the area where Mr. Nickel was found, the only protection was a metal mesh screen. The screen did not cover the entire area where the employee stood. The employer has since fixed and added more curtains to cover the entire shredder and installed metal mesh and Plexiglas around the areas where the employees sort materials off the belts. CSHO Vaughn also learned that the employer eliminated the position for an employee to stand at the top of the catwalk to monitor the materials coming into the sorting station. The investigation revealed that there were surveillance cameras at the scale house; footage reviewed by MOSH inspectors showed the shredder operating and other employees finding Mr. Nickel. . The video does not show the accident due to the camera angle and distance. Additionally, the video does not indicate any evidence of an explosion. There was evidence of steam due to water being sprayed into the shredder as a part of the shredding process. A copy of these videos were provided by Manager Steve Bennett and are included in the casefile. A former employee came forward during the investigation and explained that they received injuries from being struck by debris from the shredder in 2016. A review of the company's OSHA 300 Injury and Illness Logs revealed there were other documented instances where employees were struck by debris from the shredder. Please see interview statements and OSHA 300 Injury and Illness Logs included in the casefile for more information.

**Closing Conference:** All aspects of a closing conference were discussed. The apparent hazards and abatement measures were discussed. A copy of the MOSH Act, MOSH Closing Conference Guide, MOSH Regulations along with other publications related to apparent hazards were given to Safety Manager Kelly Boyle. On January 29th, 2021, a final closing conference was held with Safety Manager Kelly Boyle and Attorney John F. Martin via the telephone. Alleged violations were reviewed and the alleged violations that had not been abated were noted. During the closing conference, the concern of a potential hazard of lack of guarding on the moving drive shaft of the shredder was discussed with the employer. Since employee exposure could not be established, the concern was brought to the employer's attention to address; however, no citation was recommended.

# THE NEWELL SHREDDER



A National Historic
Mechanical Engineering Landmark

The American Society of
Mechanical Engineers

San Antonio, Texas
16 September 1994



## Locations of Newell Shredders Worldwide



# History

With the realization of one brilliant idea, Alton Scott Newell revolutionized the scrap metal industry and significantly contributed to the ongoing effort to recycle used metals and conserve the Earth's precious resources. His invention of the Newell Shredder offered a method of scrapping metal that created a better end product with drastically reduced energy and processing cost.



The development of the shredder was the product of many years of hard work and dedication to the scrap industry. Newell was born into humble circumstances in Oklahoma in 1913. His family lived primarily as migrant workers, first in Oklahoma and then in California. In order to help support his family, Newell ended his formal education somewhere in the middle of 10th grade. He then made his living in a variety of jobs, but found his most valuable work experience as the manager of a junk yard. This "management" position came with its share of hard work. It was here that Newell learned first-hand about scrap metal and car parts; he scrapped cars by hand with only a sledge hammer, a wrench, chisels, and axes. It took one man a ten-hour day to scrap one junked car. In Newell's view, there had to be a better way.

In 1938, Newell and his wife, Winnie, left California and moved to Texas, where he bought a small junk yard. He began to meet with success after he built a portable metal baler from materials he found in his own junk yard. About ten years later he bought land for a new yard in San Antonio, Texas, and a short time later was provided with the opportunity to purchase a modern scrap yard very near his original property. He did so and expanded his already successful business.

By the late 1950s Newell was operating a number of scrap processing plants across the Southwest part of the USA. It became apparent that a market existed for shredded tin cans for sale to copper mines as the ferrous input to the chemical process of a leach-precipitant, copper-recovery mining procedure. As Newell was already handling tin cans, this seemed to be an economic opportunity. Newell recalled a machine he had seen in the 1930s at Los Angeles By-Products Company which shredded metal cans and other light scrap. He also remembered that, as a boy in Kansas, he had seen a grain crusher that processed grain and then blew it up to a storage silo. With these thoughts in mind, and with his experience of cutting old automobiles apart with an axe, Alton Newell began to design a shredding machine.

The tin-can-shredding operation was a success and it became possible to sell more shredded tin cans than the amount of unprepared tin cans available. This led to an effort to shred other types of material, such as automobile body parts.

Eventually, the quality of the shredded material was such that steel mills became interested in using the material in the steel-making process. As soon as a market for heavier shredded material was recognized, Alton Newell decided to build a shredder that would be able to handle a complete automobile.

Several other companies were interested in processing this type of scrap for steel mills, including a company which had been in the tin-can-shredding business. Eventually, they found that it was possible to sell shredded automobiles and other types of light scrap—less than 1/4 inch (6-mm) thick—to steel mills.

This shredder did not have a limited-feed arrangement so whole cars were fed as one piece into the shredder. Thus, it used a rotor with a ten-foot-diameter hammer circle driven by a 6,000-horsepower (4,440-kw) motor. These features made the shredder so big and expensive that there were only a very few locations in the world that had enough raw material available to justify this type of investment.

During the late 1950s and the early 1960s several companies that manufactured rock crushers began to modify some of their designs so that their equipment could handle scrap metal. Most of these companies soon abandoned their efforts, but the few machines that were eventually developed to acceptable productive capacity adopted some of the features of the Newell shredder, such as the limited side feed system.

The traditional method of processing junked cars was to torch by hand, or to shear or bale with large hydraulic equipment. Automobile bodies were first burned to remove all non-metallic materials, such as upholstery and rubber. This process produced as much as 5 per cent of the air pollution in major U.S. cities at the time.

Steel mills began demanding better quality scrapped ferrous metal for their furnaces during this time. In response to the need for better scrap and the need to provide that scrap in a way that was good for the environment, Alton Newell continued his search for a solution.

Alton Newell knew there had to be a better way to shred cars and other large, ferrous items. Recalling the hammers and axes he used to manually dismantle cars, and the grain crusher, Newell developed a top-discharge shredder containing a rotor with hammers to beat and break up the metal pieces. More importantly, it required only a 500-HP (370-kw) motor—which made Newell's shredder much more affordable than a shredder requiring a 6,000 HP (4,440-kw) motor. This was achieved by a limited-feed device that controlled the rate a car was fed into the shredder, and a system to reject unshreddable pieces of scrap. Additionally, the reject device allowed the shredder to discard unshreddables without downtime or extra manpower to manually remove the unshreddable pieces. The reject equipment also saved wear and tear on the shredder parts, so the shredder would process more with less damage and fewer replacement parts. Finally, Newell designed his shredder with a top discharge feature, which eliminated the need for large, expensive foundations.

Case 1:25-cv-01913-CJC    Document 1-1    Filed 06/12/25    Page 253 of 737

Because his shredding machine incorporated these unique features, Newell applied for a patent in 1965. The Patent office granted patent number 3,482,788 four years later.

Of the eight claims allowed, the more significant ones covered: (1) upper location of grates, replacing the lower location of grates in prior shredders, (2) pivotally mounted hammers designed to provide sufficient energy to shatter the scrap being processed and propel the shredded scrap to the top grates, and (3) anvils designed to absorb heavy blows while allowing free passage of hammers after shredding. The upper location of the grates permitted scrap pieces not passing through the grates the first time, to be struck repeatedly after falling back into the hammer circle.



Conventional shredders that existed for other applications, were for the most part top-feed and bottom-discharge designs. The side-feed, and top-discharge design allowed for a limited-feed arrangement where scrap could be shredded at a controlled rate. This was one of the features that differentiated this shredder from previous designs. The top discharge also allowed for a very effective reject door that allowed the operator to bypass the grates when an unshreddable item was introduced into the shredder. The patent identifies the material of the striking surfaces to be made of impact-resistant steel alloys containing, for instance, manganese, chromium, nickel, silicon, and carbon.

The second Newell shredder, capable of shredding an automobile, is the landmark now on display on the grounds of a Newell plant, in San Antonio, Texas. It featured a hammer circle of 36 inches (91-cm) and an internal clearance of 104 inches (264-cm). This would be named a 36104 top-discharge shredder.

## Shredder Operating Principles

Figure 1 illustrates the shredder operating principles. Hammers are connected to the rotor through axles called hammer pins. There is, as a general principle, one hammer between each set of two discs. In the early shredders, there were thirteen discs, which provided for twelve hammers. As there were six pin positions around each disc, there were seventy-two places where a hammer could be placed. When twelve hammers were utilized, then the other sixty places were covered with castings called pin protectors. The hammers were placed around the rotor in balanced positions. The discs themselves took no direct blows, which instead were taken by the hammers as they did their work on the anvil, thus reducing the wear and cost of maintenance. The disc design also was convenient for automatic welding for hard surfacing during maintenance periods.

As the discs rotated, the hammers extended from the rotor due to inertia. When they hit a piece of scrap, the energy was transferred from the hammer to the scrap. If the scrap piece did not immediately fragment, then the hammer could deflect backward away from the scrap. It might even bounce all the way around, 360 degrees, but it always would return to the extended position.

The walls of the surrounding chamber, called the shredder housing, must contain the flying pieces of scrap and efficiently direct those pieces to the grate areas.

A car was hoisted onto the infeed conveyor and then passed down a chute where it was fed into the limited feed roller, which flattened out the automobile body. An operator monitored the amount of electrical current that was being required by the main drive motor and turned the feeding device on and off. This controlled the amount of scrap entering the shredding chamber and evened out the power requirements and the stress on the hammermill. As the car passed over an anvil, twelve manganese steel hammers began to pound and fragment it. The shredded pieces of automobile passed through a grate into the top discharge unit. If a piece of scrap was too large to pass through the grate opening, it dropped back down into the shredder for further fragmenting. Any unshreddable scrap which could not pass through the grate was ejected through a reject door, thus eliminating potential damage to the shredder. The shredded material that passed through the grates deflected and dropped as an air system, powered by a 150 HP (111-kw) fan, picked up and separated the lighter or non-metallic waste material and then removed it.

When scrap is fragmented, or shredded, it is possible to separate various components through the use of magnetic separations, or air separations or water separations making use of magnetic or density properties of the scrap pieces. This increases the purity of the steel scrap produced. The old methods of preparing scrap by hand torching, shearing or baling changed the shape of scrap, but did not allow any of the non steel parts to be separated. This separated scrap has more value added.

## Effect on the Industry



Shredders using this principle are now manufactured in sizes ranging from 500 HP (370-kw) to 6,000 HP (4,440-kw). The most common shredders used today are Super Heavy Duty Shredders, (SHD), which range from 1,000 HP to 6,000 HP (741-4,440-kw). Output for a typical 4,000 HP (2,960-kw) Super Heavy Duty Shredder averages at 120 tons per hour, the equivalent of about two cars per minute.

In addition to the large shredders, Newell Industries has applied the original shredder ideas to other applications. Today, Newell Industries manufactures aluminum shredders, cooling scrap shredders, preshredders, slag crushers, rock crushers and municipal and solid waste shredders. Innovations are constantly being added to the product line to improve shredder capability.

*courtesy of Scrap Processing and Recycling*

In short, Alton Newell revolutionized an entire industry. Because of his invention, shredding scrap metal became economical. This created a boon for the scrap industry and encouraged the recycling of junked automobiles and other used metal. Utilizing energy economically, shredding and reusing metal scrap has reduced a major pollution problem by removing junked metal from landfills. Additionally, recycling steel requires less than one-half the energy it takes to produce it from ore. The cost of recycling aluminum versus extracting it from ore requires one-seventh the energy. Alton Newell's shredders have provided benefits reaching far beyond the scrap industry. As more old metal has been recycled, less energy has been used to prepare steel and other metal products, and pollution has been diminished.

It is interesting to note that all of these impacts on an industry were made by a man and a company that evidenced the highest standards of ethical conduct. The company motto always has been, "We will treat you right." The following is an anecdote that illustrates that ethical conduct in the real world. When Scott Newell Jr. was about 20 years old, he and his father made a scrap processing agreement with a steel mill. When they left the client, Scott said, "Dad, we could have made a better deal." His father replied, "Yes, Scott, we could have, today. But in a few weeks, they would know that it wasn't such a good deal, and they wouldn't be so happy with us." Scott Newell, Jr. now fifty five, observes, "I learned that it is better to have a good name than it is to make money on one deal and I am happy to report that we had a good relationship with that steel mill for the next twenty years."

HAMMER

ROTOR DISC

SPACER

HAMMER

HAMMER PIN    PIN PROTECTOR

SAFETY CURTAIN

FEED ROLLERS

SHREDDER HOUSING

REPLACEABLE CASTING

SHREDDED MATERIAL FLOW

REJECT DOOR

SCRAP

ANVIL

SHREDDED MATERIAL FLOW

Today Alton Newell is the Chairman of Newell Recycling, which runs eight recycling plants throughout the United States. His son, Alton Scott Newell, Jr., with the help of his grandson Alton Scott Newell, III, run Newell Industries, which manufactures the shredders Mr. Newell, Sr. invented. Even though some of the Newell patents have expired, Newell Industries still manufactures well over half the shredders used in the United States today. As these patents expired, other shredder manufacturers incorporated the unique Newell design into their shredders. This design is now used in most shredders manufactured throughout the world.

---

**BIBLIOGRAPHY**

1. U.S. Patent Office, Patent No 3,482,788 Dec 9th, 1969. Hammer Mills Inventor: Alton S. Newell, 726 Probandt 8 claims

2. "A Smashing Success" by Janet Schulte, Success Unlimited October 1980

3. "Treating Customers Right" by Kent Kiser, Scrap Processing and Recycling, March/April 1991

4. Philadelphia Metal Association, Phoenix Award, presented to Alton S. Newell, for commercial production of the automobile shredder for the recycling industry. Dec 4, 1986.

5. Automotive Dismantler and Recycling Assn, special award, in recognition of a half century of recycling, and most notably as the inventor of the Newell automobile shredder now patented in 17 countries. October 25, 1985 Nashville, Tenn.

6. "Recycling Today" Robert C. Bruening Recycling Today, October 15, 1992

7. "Newell Manufacturing Company Enters Field of Solid Waste Management", Scrap Age, May 1973

## The History and Heritage Program of the ASME

The ASME History and Heritage Recognition Program began in September 1971. To implement and achieve its goals, ASME formed a History and Heritage Committee, initially composed of mechanical engineers, historians of technology, and curator (emeritus) of mechanical engineering at the Smithsonian Institution. The Committee provides a public service by examining, noting, recording and acknowledging mechanical engineering achievements of particular significance. The History and Heritage Committee is part of the ASME Council on Public Affairs and Board on Public Information. For further information please contact Public Information, American Society of Mechanical Engineers, 345 East 47 Street, New York, NY 10017-2392, (212) 705-7740.

**NATIONAL HISTORIC**
**MECHANICAL ENGINEERING LANDMARK**
**NEWELL SHREDDER**
**1969**

**THIS MACHINE, DESIGNED BY ALTON S. NEWELL, EFFICIENTLY REDUCED AUTOMOBILE BODIES INTO SCRAP METAL FOR RECYCLING. A BODY WAS FED INTO THE SHREDDER AT A CONTROLLED RATE, AND ROTATING HAMMERS, DRIVEN BY A 500 HP MOTOR, SHREDDED IT INTO SMALL PIECES THAT WERE EASILY SHIPPED. THE PROCESS TOOK ABOUT TEN MINUTES PER CAR AND USED MUCH LESS ENERGY THAN OTHER SHREDDING AND CRUSHING MACHINES. MODERN, FASTER VERSIONS OF THE NEWELL SHREDDER REMAIN IN SERVICE.**

 **THE AMERICAN SOCIETY OF MECHANICAL ENGINEERS - 1994**

NL 111

## Designation

The Newell Shredder is the 111th National Historic Mechanical Engineering Landmark to be designated. Since the ASME Historic Mechanical Engineering Recognition Program began in 1971, 165 Historic Mechanical Engineering Landmarks, 6 Mechanical Engineering Heritage Sites, and 6 Mechanical Engineering Heritage Collections have been recognized worldwide. Each reflects its influence on society, either in its immediate locale, nationwide, or throughout the world.

An ASME landmark represents a progressive step in the evolution of mechanical engineering. Site designations note an event or development of clear historical importance to mechanical engineers. Collections mark the contributions of a number of objects with special significance to the historical development of mechanical engineering.

The ASME Historic Mechanical Engineering Recognition Program illuminates our technological heritage and serves to encourage the preservation of the physical remains of historically important works. It provides an annotated roster for engineers, students, educators, historians, and travelers. It helps establish persistent reminders of where we have been and where we are going along the divergent paths of discovery.

## Acknowledgements

The San Antonio Section of the American Society of Mechanical Engineers gratefully acknowledges the efforts of all who contributed to the designation of the Newell Shredder as a National Landmark. We are especially grateful to Alton Newell, inventory of the shredder, and to Scott Newell, Jr., President, Newell Industries, Inc., for background information and details of the shredder development.

### The American Society of Mechanical Engineers

Paul J. Torpey, President

Dale S. Baird, Vice President, Region X

George T. Butler, PE, History & Heritage Chairman, Region X

Erwin Fried, Vice President, Public Relations,

David L. Belden, PE, Executive Director,

David R. Cook, Director, Southern Regional Office

The ASME San Antonio Section

Yesh P. Singh, Chairman

Gerald S. McAlwee, Vice Chairman

Richard D. Swope, Secretary

Herbert G. Pennick, Treasurer

Ruel F. Solberg, Jr., Adviser

Roy E. Rayle, History and Heritage Chairman

The ASME History and Heritage Committee

J. Lawrence Lee, PE, Chairman

Robert M. Vogel, Secretary

William DeFotis

Burton Dicht

Robert B. Gaither

Robert Michael Hunt, PE

William J. Warren, PE

Richard S. Hartenberg, PE, member emeritus

Diane Kaylor, Staff Liason



**The American Society of Mechanical Engineers**



# Newell

Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/12/25    Page 261 of 737

**E-FILED; Allegany Circuit Court**
Docket: 5/23/2024 11:33 PM; Submission: 5/23/2024 11:33 PM
Matthew D. Vaughan -LABOR- <matthew. Envelope: 16580383


Maryland

### Fwd: Mid Section Shredder
2 messages

**Michael Penn -LABOR-** <michael.penn@maryland.gov>
To: Brian Timberlake -LABOR- <brian.timberlake@maryland.gov>, "Matthew D. Vaughan -LABOR-" <matthew.vaughan@maryland.gov>

Here is the rpm of the rotor.

--------- Forwarded message ---------
From: **Scott Newell** <scottnewell@newellequip.com>
Date: Thu, Feb 4, 2021 at 10:56 AM
Subject: RE: Mid Section Shredder
To: Michael Penn -LABOR- <michael.penn@maryland.gov>

Michael,

The Newell 120 SXS shredder is designed to operate at 450 RPM's for the rotor.

If you need any other information, don't hesitate to ask.

*Scott Newell*

| | |
|---|---|
| Chairman & CEO | Vice Chairman |
| Newell Recycling Equipment, LLC | China Recycling Newell Equipment Ltd. |
| 240 Thunderbird Drive, Suite A | 4F, Block A, Jianghai Wealth Mansion, |
| El Paso, Texas 79912 | Nantong City, Jiangsu Province, China |
| ScottNewell@NewellEquip.com | ScottNewell@zzsnewell.com |
| Web: NewellEquip.com | Web: zzsnewell.com |
| +1 915 276 3900 | |

 

**From:** Michael Penn -LABOR- [mailto:michael.penn@maryland.gov]
**Sent:** Thursday, February 04, 2021 7:25 AM
**To:** scottnewell@newellequip.com
**Subject:** Mid Section Shredder

Mr. Newell,

You helped me on this shredder a few months ago. We are finishing our report and would like to add in what the RPM's of the shredder.

TSC Part Number 819-02-01-02

Model 02

Size 120 SXS

Thanks,

--

-





Michael Penn, CSP, SMS
Chief of Compliance
Maryland Occupational Safety and Health
Maryland Department of Labor
10946 Golden West Dr. Suite 160
Hunt Valley, MD 21031
Michael.Penn@maryland.gov
(410) 527-2062(O)
(410) 527-4482 (F)
Website | Facebook | Twitter

Click here to complete a three question customer experience survey.

**Confidentiality Notice.** *The information contained in this communication (including any attachments) (a) is or may be legally privileged, confidential, proprietary in nature, or otherwise disclosure; and (b) is intended only for the use of the addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an ac notified that reading, using, copying, or distributing any part of this message is strictly prohibited. If you have received this electronic mail message in error, please contact me immediat necessary to delete the message completely from your computer system. Thank you*



**Michael Penn, CSP, SMS**
Chief of Compliance
Maryland Occupational Safety and Health
Maryland Department of Labor
10946 Golden West Dr. Suite 160
Hunt Valley, MD 21031
Michael.Penn@maryland.gov
(410) 527-2062(O)
(410) 527-4482 (F)
Website | Facebook | Twitter

Click here to complete a three question customer experience survey.

**Confidentiality Notice.** *The information contained in this communication (including any attachments) (a) is or may be legally privileged, confidential, proprietary in nature, or otherwise protected by law from disclosure; and (b) is intended only for the use of the addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an addressee, you are hereby notified that reading, using, copying, or distributing any part of this message is strictly prohibited. If you have received this electronic mail message in error, please contact me immediately and take the steps necessary to delete the message completely from your computer system. Thank you*

**Brian Timberlake -LABOR-** <brian.timberlake@maryland.gov>
To: "Matthew D. Vaughan -LABOR-" <matthew.vaughan@maryland.gov>

Thu, Feb 4, 2021 at 12:13 PM

[Quoted text hidden]



Matthew D. Vaughan -LABOR- <matthew.vaughan@maryland.gov>

## Fwd: FW: Model 02 Size 120 SXS TSC part number 819-20-01-02 construction date 2011
2 messages

**Michael Penn -LABOR-** <michael.penn@maryland.gov>
To: Brian Timberlake -LABOR- <brian.timberlake@maryland.gov>, "Matthew D. Vaughan -LABOR-" <matthew.vaughan@maryland.gov>

Here is the information we talked about.

--------- Forwarded message ---------
From: **Scott Newell** <scottnewell@newellequip.com>
Date: Mon, Sep 28, 2020 at 10:53 AM
Subject: FW: Model 02 Size 120 SXS TSC part number 819-20-01-02 construction date 2011
To: <michael.penn@maryland.gov>
Cc: <scottnewell@newellequip.com>

**Michael,**

There are several types of safety shields that we supply for the infeed chute of Newell shredding machines.  Attached you will find a copy of our presentation, "Safety At and Around" Beginning at around slide 34 there are some photos of the safety shield in service on several different plants.

Then in a separate Power Point are some illustrations showing how the system works.

If we can be of any further help, please don't hesitate to contact us.

*Scott Newell*

| | |
|---|---|
| Chairman & CEO | Vice Chairman |
| Newell Recycling Equipment, LLC | China Recycling Newell Equipment Ltd. |
| 240 Thunderbird Drive, Suite A | 4F, Block A, Jianghai Wealth Mansion, |
| El Paso, Texas 79912 | Nantong City, Jiangsu Province, China |
| ScottNewell@NewellEquip.com | ScottNewell@zzsnewell.com |
| Web: NewellEquip.com | Web: zzsnewell.com |
| +1 915 276 3900 | |

 

**From:** Michael Penn -LABOR- [mailto:michael.penn@maryland.gov]
**Sent:** Saturday, September 26, 2020 8:02 AM
**To:** scottnewell@newellequip.com
**Subject:** Model 02 Size 120 SXS TSC part number 819-20-01-02 construction date 2011

Mr. Newell,

I'm the Chief of Compliance with Maryland OSHA and we are currently working with a company that has one of the shredders I mention in the subject line. While inspecting this shredd is being thrown out of the shredder. It looks like it is from the feeder area but I'm not completely sure. My question is are there any designed guards that cover the feeding area that are a from being discharged?  We tried the phone number for The Shredder Co (915-877-3814) but it was not in service.

-- Thanks,

-

Michael Penn, CSP, SMS
Chief of Compliance
Maryland Occupational Safety and Health



Maryland Department of Labor
10946 Golden West Dr. Suite 160
Hunt Valley, MD 21031
Michael.Penn@maryland.gov
(410) 527-2062(O)
(410) 527-4482 (F)
Website | Facebook | Twitter

Click here to complete a three question customer experience survey.

*Confidentiality Notice. The information contained in this communication (including any attachments) (a) is or may be legally privileged, confidential, proprietary in nature, or otherwise disclosure; and (b) is intended only for the use of the addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an ac notified that reading, using, copying, or distributing any part of this message is strictly prohibited. If you have received this electronic mail message in error, please contact me immediate necessary to delete the message completely from your computer system. Thank you*







**Michael Penn, CSP, SMS**
Chief of Compliance
Maryland Occupational Safety and Health
Maryland Department of Labor
10946 Golden West Dr. Suite 160
Hunt Valley, MD 21031
Michael.Penn@maryland.gov
(410) 527-2062(O)
(410) 527-4482 (F)
Website | Facebook | Twitter

Click here to complete a three question customer experience survey.

*Confidentiality Notice. The information contained in this communication (including any attachments) (a) is or may be legally privileged, confidential, proprietary in nature, or otherwise protected by law from disclosure; and (b) is intended only for the use of the addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an addressee, you are hereby notified that reading, using, copying, or distributing any part of this message is strictly prohibited. If you have received this electronic mail message in error, please contact me immediately and take the steps necessary to delete the message completely from your computer system. Thank you*

---

**2 attachments**

📄 **Safety At and Around Shredding Plants  NRE  15oct17.pdf**
8605K

📄 **844 SA EL PASO FEED RAMO COVER  (17SEP2018).pptx**
3214K

---

**Brian Timberlake -LABOR-** <brian.timberlake@maryland.gov>                                                    Mon, Sep 28, 2020 at 12:45 PM
To: "Matthew D. Vaughan -LABOR-" <matthew.vaughan@maryland.gov>

Brian Timberlake
Region IV Compliance Officer
Supervisor

Maryland Occupational Safety
and Health
Maryland Department of Labor
1710 Underpass Way,
Suite #200
Hagerstown, Maryland 21740

brian.timberlake@maryland.gov
(301)791-4699 Ext. 1001
(office)

(800)797-7015
(fax)

Website | MOSH | Facebook | Twitter

Click here to complete a three-question, customer-experience survey. **Confidentiality Notice.** *The information contained in this communication (including any attachments) (a) is or may be legally privileged, confidential, proprietary in nature, or otherwise protected by law from disclosure; and (b) is intended only for the use of the addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an addressee, you are hereby notified that reading, using, copying, or distributing any part of this message is strictly prohibited. If you have received this electronic mail message in error, please contact me immediately and take the steps necessary to delete the message completely from your computer system. Thank you.*

[Quoted text hidden]

---

**2 attachments**

 **Safety At and Around Shredding Plants  NRE  15oct17.pdf**
8605K

 **844 SA EL PASO FEED RAMO COVER  (17SEP2018).pptx**
3214K



**Fwd: Shredder Photos**
1 message

**Michael Penn -LABOR-** <michael.penn@maryland.gov>
To: Brian Timberlake -LABOR- <brian.timberlake@maryland.gov>, "Matthew D. Vaughan -LABOR-" <matthew.vaughan@maryland.gov>

Here are the photos I sent.

---------- Forwarded message ---------
From: **Michael Penn -LABOR-** <michael.penn@maryland.gov>
Date: Mon, Sep 28, 2020 at 1:41 PM
Subject: Shredder Photos
To: <scottnewell@newellequip.com>

Mr. Newell,
   Enclosed are some photos of the shredder discharge area.  I would like to set up a google meeting with you after you look at the photo's. The supervisor and safety inspector are in a differe
on the call.  I will send you the meeting information for 2:00pm eastern time.

Thanks

--

--



**Michael Penn, CSP, SMS**
Chief of Compliance
Maryland Occupational Safety and Health
Maryland Department of Labor
10946 Golden West Dr. Suite 160
Hunt Valley, MD 21031
Michael.Penn@maryland.gov
(410) 527-2062(O)
(410) 527-4482 (F)
Website | Facebook | Twitter

Click here to complete a three question customer experience survey.

*Confidentiality Notice. The*
*information contained in this communication (including any attachments) (a) is*
*or may be legally privileged, confidential, proprietary in nature, or otherwise*
*protected by law from disclosure; and (b) is intended only for the use of the*
*addressee(s) named herein. If you are not the intended recipient, an addressee,*
*or the person responsible for delivering this to an addressee, you are hereby*
*notified that reading, using, copying, or distributing any part of this message*
*is strictly prohibited. If you have received this electronic mail message in*
*error, please contact me immediately and take the steps necessary to delete the*
*message completely from your computer system. Thank you*

--

--



**Michael Penn, CSP, SMS**
Chief of Compliance
Maryland Occupational Safety and Health
Maryland Department of Labor
10946 Golden West Dr. Suite 160
Hunt Valley, MD 21031
Michael.Penn@maryland.gov
(410) 527-2062(O)
(410) 527-4482 (F)
Website | Facebook | Twitter

Click here to complete a three question customer experience survey.

*Confidentiality Notice. The*
*information contained in this communication (including any attachments) (a) is*
*or may be legally privileged, confidential, proprietary in nature, or otherwise*
*protected by law from disclosure; and (b) is intended only for the use of the*
*addressee(s) named herein. If you are not the intended recipient, an addressee,*
*or the person responsible for delivering this to an addressee, you are hereby*
*notified that reading, using, copying, or distributing any part of this message*

*is strictly prohibited. If you have received this electronic mail message in error, please contact me immediately and take the steps necessary to delete the message completely from your computer system. Thank you*

**5 attachments**



**IMG_5613.JPG**
4079K



**P1070749.JPG**
4750K



**P1070748.JPG**
4931K



**P1070803.JPG**
4715K



**P1070734.JPG**
5174K

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

LINDA S. BEEMAN, as Surviving Mother :
of Joshua P. Nickel, *et al.*,                   :
                                                 :
                 Plaintiffs                      :
                                                 :
        v.                                       :        Civil Case No. C-01-CV-23-000317
                                                 :
ALLEGANY SCRAP, INC., *et al.*,                  :
                                                 :
        Defendant                                :

## NEWELL DEFENDANTS' REPLY TO OPPOSITION TO MOTION TO DISMISS (HEARING REQUESTED)

Defendants The Shredder Co., LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. (the "Newell Defendants"), by counsel, file this Reply[1] to Opposition to Motion to Dismiss (the "Reply," "Opposition," and "Motion," respectively), stating as follows:

**I.        INTRODUCTION**

Plaintiffs attempt to improperly shift to the Newell Defendants the burden of *disproving* the Court's personal jurisdiction over them, and incredibly suggest that the Court should save this important issue for later. It is Plaintiffs' burden—not the Newell Defendants'—to allege *and* prove personal jurisdiction. They must do so now. They have not, and their failure to allege and prove personal jurisdiction is dispositive.

Plaintiffs generally argue that if they are allowed to conduct "extensive discovery," they *may* find facts sufficient to plead their existing claims. That is not how it works. Plaintiffs must

---

[1] "Although the rules provide no explicit authorization for reply memoranda, they likewise contain no prohibition, and it is common practice on a vigorously contested point for the moving party to file a reply memorandum that addresses issues raised in the response filed by the opponent." Niemeyer & Schuett, MARYLAND RULES COMMENTARY 339 (5th ed. 2019). Plaintiffs raised both factual and legal issues in their Opposition, and the Newell Defendants respectfully reply.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

1

adequately plead claims *before* they can have discovery into them. If Plaintiffs do not have facts to plead the elements of a claim, the claim must be dismissed, per Rule 2-322 and decades of established case law.  The Opposition provides no basis to deny the Motion and, in fact, confirms that the Court should grant it now so the Newell Defendants do not incur more unnecessary fees.

## II.    ARGUMENT

A.    Plaintiffs' Allegations and Evidence of Personal Jurisdiction are Insufficient, and Dismissal is the Procedurally Correct Outcome.

In the Motion, the Newell Defendants argued that Plaintiffs failed to allege sufficient facts to establish personal jurisdiction. In the Opposition, Plaintiffs argued that this was unfair and attempted to support their lack of allegations with rhetoric and documents. Plaintiffs argue first that they do not need to plead more than "perfunctory" allegations of personal jurisdiction. Opp. at 4. Their argument is not supported by legal authority, because legal authority is to the contrary: "**The burden of *alleging* and proving the existence of *a factual basis for the exercise of personal jurisdiction*, once the issue has been raised, is upon the [plaintiff].**" *CSR, Ltd. v. Taylor*, 411 Md. 457, 467 n.2 (2009) (emphasis added). Plaintiffs are correct that it is common to make conclusory allegations of jurisdiction, but where (as here) jurisdiction is questionable, a plaintiff who fails to "allege" a "factual basis" for jurisdiction accepts the risk of dismissal if the defendant raises the issue. Plaintiffs accepted that risk by not pleading facts to support personal jurisdiction, and dismissal is appropriate for the reasons stated in the Motion.

If the Court decides that the conclusory allegations of jurisdiction are sufficient, the Court still must address the proof of personal jurisdiction now. Plaintiffs argue in their Opposition that the Court's "analysis and determination cannot and should not be made in the exercise of judicial discretion at the preliminary motion to dismiss stage." Opp. at 6. But when a defendant claims that the Court lacks personal jurisdiction, the Maryland Rules "require that the motion be resolved at

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

2

20949221_2

the outset of the litigation." Niemeyer & Schuett, MARYLAND RULES COMMENTARY 352. Otherwise, a defendant might be forced to litigate the merits of a case in a court that lacks jurisdiction over it.

To the extent the Court considers Plaintiffs' proof from outside the Complaint, it is a question of law for the Court whether Plaintiffs have met their burden with "sufficient affidavits or testimony." *CSR, Ltd.*, 411 Md. at 471–72. The Court must have personal jurisdiction over each party. *See id.* at 480 (citing United States Supreme Court holding that contacts must be from each defendant, not "unilateral activity of another party or a third person"). Plaintiffs have not disputed the requirements on pages 4–5 of the Motion, so the question raised by the Opposition is whether Plaintiffs have produced sufficient evidence of those requirements for each Newell Defendant.

As an initial matter, Plaintiffs have not produced any "affidavits or testimony." *CSR Ltd.*, 411 Md. at 471 (standard), 479 (affidavits produced and considered). They have produced only an agency accident report, a historical summary of inventions by Alton Scott Newell, and emails from Scott Newell.[2] The documents are not testimonial evidence and are not the type of evidence appropriately used to prove personal jurisdiction.

If the Court accepts the non-testimonial evidence to decide this important issue, Plaintiffs' documents do not show that each Newell Defendant participated in the sale of the shredder at issue or that Plaintiffs' claims arise out of "any act enumerated in" the subsection of the Maryland Code cited on page 4 of the Motion. MD. CODE ANN., COURTS & JUD. PROC., § 6-103(a). Personal jurisdiction is only proper when based on "a person's activity *deliberately directed* toward the forum state." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir. 1994). "To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[2] For clarity, the Scott Newell in the emails is the son of the Alton Scott Newell in the article.

3

20949221_2

because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism." *CSR Ltd.*, 411 Md. at 483–84.

In their Opposition, Plaintiffs are candid about these deficiencies: "It is unclear as to [the Newell Defendants'] . . . responsibilities for the design or manufacture of the shredder machine in question . . ." Opp. at 7. Plaintiffs have produced the following non-testimonial information:

- The Shredder Co. LLC: "The Shredder Company" (full name unspecified) designed and built the shredder model at issue but is no longer in business. Opp., Ex. 1 at 7.
- The Shredder Co, L.P.: *Id.*
- Newell Recycling Equipment, LLC: Scott Newell, who previously owned a "Shredder Company" entity, is now an executive of this company. *Id.*
- Newell Recycling Company of El Paso, L.P.: not identified anywhere in the Opposition

In the more than three-and-a-half years since the incident, Plaintiffs have failed to trace the part or parts of the shredder at issue from Allegany Scrap back to any purposeful activity in Maryland by any Newell Defendant. Plaintiffs offer *no* evidence of any particular Newell Defendant transacting business in Maryland in relation to the shredder at issue.[3] The handful of data points in the Opposition are insufficient for this Court to drag out-of-state defendants halfway across the country into a Maryland courthouse. It is fundamentally unfair to force Texas citizens to defend themselves in Maryland with so little basis.

Plaintiffs have not met their burden to give the Court a basis for personal jurisdiction over any of the Newell Defendants, much less all of them. The Opposition suggests that jurisdictional discovery is appropriate. To the extent the Court gives Plaintiffs a further chance by ordering such discovery, the Newell Defendants respectfully request that it be sharply limited to a small number of written discovery requests addressing each Newell Defendant's factual involvement with the shredder at issue in the Complaint, and that the Court set strict deadlines for service of requests,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[3] As demonstrated in the Motion, Newell Recycling Equipment, LLC did not even exist until years after the alleged date of sale. Mot. at 4.

4

responses, and supplemental briefing, as well as a date for any further hearing. More than three years have passed since the incident at issue, and Plaintiffs should not be granted an interstate fishing expedition on the merits of their claims before personal jurisdiction is established.

        B.      <u>Plaintiffs Have Not Stated Proper Causes of Action in Their Claims for "Failure to Prevent Changes" to a Product.</u>

Counts IV, X, and XVI are design defect claims. Plaintiffs have other claims (such as Count III) which allege that the shredder was improperly designed. But in these particular claims, Plaintiffs go much further. They allege that the Newell Defendants manufactured a shredder *with* safety measures, but that the safety measures degraded or were removed in the several years after the shredder left the Newell Defendants' control. Those allegations are fatally incompatible with the elements of a design defect claim, as set forth on pages 6–7 of the Motion.

Plaintiffs do not dispute the elements of the claims. They nevertheless argue that the Newell Defendants had a duty to prevent a product from degrading and/or to prevent it from being *intentionally modified* by an end user. Opp. at 8. If such a duty exists, it is not enforceable through a design defect claim under Maryland law, which relies on the idea that the product was defective *when it left the manufacturer's control*, not defective after many years of use and a third-party's intentional changes. If Plaintiffs' theory were viable, every product sold in Maryland would have to be a Russian nesting doll of safety features, safety features for the safety features, and so on.

The problem is not that Plaintiffs have pled theories in the alternative, but that all of their alternatives are fundamentally incompatible with these claims. Moreover, Plaintiffs have produced no opinions in which any of the Maryland Courts have recognized this type of "failure to prevent removal of safety features" claim. The Court should dismiss the claims as either incompatible with the required elements or attempting to create a new tort duty without supporting legal authority because, either way, they fail to state a claim upon which relief can be granted.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

C.    <u>The Newell Defendants Withdraw Section IV.III. of their Motion, without Waiver.</u>

One of the Newell Defendants' arguments to dismiss Counts VI, XII, and XVIII of the Complaint was based on a failure to notify the Newell Defendants of the claim. The argument was based on the text of the applicable subsection of the Maryland Commercial Code. MD. CODE ANN., COMM. LAW, § 2-607(3)(a). The Newell Defendants also relied upon Comment 5 to that subsection (which expressly states that third-party beneficiaries like Plaintiffs must "notify the seller than an injury has occurred" before bringing an implied warranty claim) and a recent reported decision from the United States District Court for the District of Maryland to that effect. However, the Opposition correctly identified a 1976 decision in which the Maryland Court of Appeals (now Maryland Supreme Court) effectively overruled Comment 5. While the Newell Defendants respectfully disagree with the reasoning of the opinion and reserve the right to argue against it in the future, they recognize its controlling effect on this Court in this posture. Section IV.III. of the Motion is respectfully withdrawn (without waiver or prejudice) at this time.

D.    <u>Counts VI, XII, and XVIII Contain No Allegations of Sale for a Particular Purpose.</u>

Separate from the arguments in the section above, Counts VI, XII, and XVIII each include multiple claims. One of the claims in each count is a claim for breach of a warranty of fitness for a particular purpose. As argued in the Motion, a complaint for breach of that warranty must allege that the buyer bought the product "for a particular purpose that in any way differed from the ordinary purpose for which" the product would be used. *Bond v. Nibco, Inc.*, 96 Md. App. 127, 137 (1993). The complaint also must allege that the defendant "knew of this particular purpose." *Id.* at 137–38 (dismissing claim for failure to plead same).

In the Opposition, Plaintiffs admit that they have not pled those elements because they do not know of a warranty being made. They ask for discovery so that they can search for a warranty

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

20949221_2

to form the basis for their claim. Plaintiffs cannot fail to plead the elements of a claim and avoid dismissal on the grounds that discovery might reveal the basis for it. It is black letter law that to obtain discovery, Plaintiffs must plead the elements of a recognized claim. The proper remedy is dismissal, until such time as Plaintiffs have a good faith basis for a claim. That is not "draconian," Opp. at 13, it is a textbook application of the Maryland Rules. The claims for breach of warranty of fitness for a particular purpose in Counts VI, XII, and XVIII should be dismissed.

## III.    CONCLUSION

It is only fair for the Newell Defendants to insist on being sued in a court in compliance with the Constitution. It is reasonable to require Plaintiffs to plead the elements of proper claims before they conduct months or years of discovery into several defendants located in another state, most of them not in business. Except for the arguments in Section IV.III. of the Motion, which are withdrawn without waiver or prejudice, the Court should dismiss Plaintiffs' claims as set forth in the Motion.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

7

20949221_2

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:     */s/ E. Andrew Cole*
        E. Andrew Cole (AIS #0206190051)
        1101 Wootton Parkway
        Suite 700
        Rockville, Maryland 20852
        Direct: 301-838-3218
        Fax: 301-354-8118
        ecole@steinsperling.com

By:     */s/ Joseph M. Moeller*
        Joseph M. Moeller (AIS #1812120023)
        1101 Wootton Parkway
        Suite 700
        Rockville, Maryland 20852
        Direct: 301-838-3237
        Fax: 301-354-8137
        jmoeller@steinsperling.com

        *Attorneys for Newell Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of June, 2024, a copy of the foregoing was submitted to MDEC for service on counsel of record.

        */s/ E. Andrew Cole*
        E. Andrew Cole (AIS #0206190051)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

8

20949221_2

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

LINDA S. BEEMAN, *et al.*               &ast;

  Plaintiffs                           &ast;

v.                                      &ast;

             **Case No. C-01-CV-23-000317**

ALLEGANY SCRAP, INC., *et al.*          &ast;

  Defendants                           &ast;

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

## DEFENDANT ALLEGANY SCRAP, INC.'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Allegany Scrap, Inc. ("Allegany"), by and through undersigned counsel, pursuant to Maryland Rules 2-311 and 2-322(b), hereby files this Reply in Support of Allegany's Motion ("Motion") to Dismiss the lawsuit ("Lawsuit") filed by Plaintiff the Estate of Joshua P. Nickel (the "Estate") and Mr. Nickel's Surviving Mother ("Mother") and Father ("Father") (collectively "Plaintiffs"), and states as follows:

## INTRODUCTION

Workers' compensation claims are generally the exclusive remedy for accidental workplace deaths. Plaintiffs have tried, and failed, to plead their civil claims into a narrow exception to workers' compensation exclusivity that permits a second lawsuit when an employer has "deliberate[ly] inten[ded]" to kill its employee. The "deliberate intent" exception does not apply here, for three reasons.

First, Plaintiffs concede in their Opposition that the death certificate ("Death Certificate") attached to their Complaint is incorporated into the Complaint for all purposes. The Death Certificate contains the medical examiner's conclusion that decedent Mr. Nickel's death was an

"accident." The "deliberate intent" exception does not apply to Plaintiffs' "accident[al]" death claims, as Allegany argued in its Motion.

Plaintiffs have no legitimate response. Rather, they theorize in their Opposition that the medical examiner who created and signed the death certificate "could" have come to a different conclusion. But he didn't. Plaintiffs' claims are barred by the Workers' Compensation Act due to the Complaint allegation, through the Death Certificate, that Mr. Nickel's death was an "accident."

Second, Plaintiffs' claims would be barred even if they had not attached the Death Certificate to the Complaint because Plaintiffs have failed to allege that Allegany intended to kill Mr. Nickels. Plaintiffs' allegation that Allegany ***intentionally committed an act*** which ultimately led to Mr. Nickels' death, but without any allegation of ***intent to kill***, does not satisfy the "deliberate intent" exclusion. Plaintiffs ***do not even mention***, much less distinguish, the Maryland Supreme Court case that issued this interpretation of the exclusion, and which is cited in Allegany's Motion.

Third, none of the three Plaintiffs would qualify for the "deliberate intent" exception, even if they had alleged "deliberate intent" to kill. The Plaintiff Estate has already obtained a workers' compensation recovery. The Workers' Compensation Act bars the Estate from double-dipping.

The Plaintiff Mother and Father of Mr. Nickel failed to plead, anywhere in their lengthy Complaint, that either was a "dependent" of Mr. Nickel. As such, neither Mother nor Father is a "dependent" who is eligible to recover for Mr. Nickel's death. Plaintiffs have requested unnecessary discovery solely as a last gasp attempt to avoid what they correctly view as the inevitable dismissal of their claims against Allegany. No discovery is needed.

Allegany's Motion to Dismiss should be granted.

**ARGUMENT**

I.    **Plaintiffs Have Failed To Refute That The Workers' Compensation Act Is A Complete Bar To Plaintiffs' Claims For Mr. Nickel's "Accidental" Death.**

Workers' compensation claims are generally the exclusive remedy for accidental workplace deaths.  Maryland Code Annotated, Labor and Employment Article ("L&E") § 9-509(a), (b).  *See also Ledford v. Jenway Contracting, Inc.*, 259 Md. App. 534, 551-53 (2023), *cert granted*, 486 Md. 597 (2024) (workers' compensation claims have been established "in place of any right of action against any person").

The meaning of this exclusivity statute is "*so clear and unmistakable that it would be a denial of the legislative purpose to strike … plain terms from the statute by judicial construction.*"  *Lowery v. McCormick Asbestos Co.*, 300 Md. 28, 42 (1984) (citation and internal quotation marks omitted) (emphasis maintained).

The "deliberate intent" exception to this exclusivity is inapplicable because Plaintiffs concede in their Opposition that the Death Certificate is incorporated into the Complaint "***for all purposes***."  Maryland Rule 2-303(d) (emphasis added); Motion at 9, Argument § B (citing Maryland Rule 2-303(d)); Opposition at 10.  The Death Certificate "stat[es] that the manner of [Mr. Nickel]'s death was 'accident[,]'" as Plaintiffs also concede in their Opposition.  *Id*.  Plaintiffs' only response is speculation.  *Id*.

Plaintiffs' self-serving, and entirely unsupported, theory is that because the medical examiner who signed the Death Certificate (Dr. Kubiczek) opined "that the immediate cause of death was 'multiple blunt force injuries to the head,' and that the approximate interval between onset and death was 'hours[,]'" Dr. Kubiczek "***could***" have come to an alternate conclusion.  *Id*. (emphasis added).   Whether Dr. Kubiczek "could" have reached an alternate conclusion is irrelevant.  He didn't.

3

Plaintiffs' speculation as to what Dr. Kubiczek "could" have concluded (but did not) does not create a dispute of fact, as a matter of law. *McMahon v. Piazze*, 162 Md. App. 588, 597 (2005) (affirming dismissal of complaint where "[n]o nexus between the facts and conclusion can be inferred, other than by speculation").

Moreover, even when an exhibit to a complaint is in "conflict [with] the bare allegations of the complaint … ***the exhibit prevails***." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (noting that when an exhibit to a complaint is in "conflict [with] the bare allegations of the complaint . . . , ***the exhibit prevails***") (emphasis added) (citing 2A Moore's Federal Practice, ¶ 10.06, p.10-24); *Eskridge v. Hickory Springs Mfg. Co.*, 477 F. App'x 139, 140 (4th Cir. 2012) (same). Maryland Rule 2-303(d) is in complete accord with this legal principle, as Maryland Rule 2-303(d) contains identical language, in pertinent part, to Federal Rule of Civil Procedure 10(c), which the *Fayetteville* court relied on to find that an "exhibit prevails" over "conflict[ing] bare allegations" in a complaint. 936 F.2d at 1465.

As Plaintiffs have affirmatively alleged that an "accident" caused Mr. Nickel's Injury and death – by attaching the Death Certificate to the Complaint – the Workers' Compensation Act provides the "exclusive" method of establishing liability against Allegany, and "is in place of any right of action against any person." L&E § 9-509(a), (b); *Ledford*, 259 Md. App. at 551-53.

Plaintiffs' exclusive remedy against Allegany (which the Estate has admittedly already received) is under the Workers' Compensation Act. Complaint, at Exhibit 2 (Death Certificate); L&E § 9-509. *See also Bd. of Educ. of Prince George's Cnty. v. Marks-Sloan*, 428 Md. 1, 35 (2012); *Lowery*, 300 Md. at 42; *Ledford*, 259 Md. App. at 551-53.

II.    **Plaintiffs' Complaint Would Not Satisfy The "Deliberate Intent" Exception To The Workers Compensation Bar Even If The Death Certificate Had Not Been** <u>**Attached To The Complaint**</u>.

The Maryland Supreme Court has rejected Plaintiffs' theory that the § 9-509(d) exception applies where an employer ***intends to commit an act***, even if the employer did not ***intend to cause the death*** of the employee. *Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 255 (1986).

As Allegany explained in its Motion, the *Johnson* employee was electrocuted and killed while at work. *Id.* at 254. The *Johnson* plaintiff was the deceased employee's mother. *Id.* The *Johnson* plaintiff requested that the Maryland Supreme Court expand the "deliberate intent" exception to embrace claims where "the employer intentionally d[id] ***the act*** which happens to cause injury or death[,]" even though the employer was not alleged to have intended to cause the injury or death. *Id.* (emphasis added). The *Johnson* court "decline[d]." *Id.* at 255.

Instead, the *Johnson* court held that even where an employer deliberately places an employee in a dangerous position by failing to warn of the dangerous electric lines that killed the employee, the employer's failure to warn does "not constitute an intentional tort for purposes of overcoming the exclusivity provision of the Workmens' Compensation Act." *Id.* The failure may constitute willful, wanton or reckless conduct, but it is not an intentional tort for the purposes of L&E § 9-509(d). *Id.*

Plaintiffs do not even <u>***mention***</u> *Johnson* in their Opposition, much less try to distinguish this dispositive opinion. Opposition at 1, *et seq.* In fact, Plaintiffs do not even try to defend one of their two allegations of "intentional" misconduct in the Opposition, apparently due to the strength of *Johnson*.

Plaintiffs do not try to defend their unsupportable Complaint allegation that Allegany "intended" to injure Mr. Nickel when a piece of metal was "random[ly]" ejected from the Shredder. *See* Opposition.  As such, Plaintiffs' Lawsuit now rests on a ***single*** allegation of "intent" in the Complaint, which Plaintiffs parrot throughout their Opposition, that Mr. Nickel's co-workers, after finding him unconscious, killed Mr. Nickel by "'intentionally with[olding] and/or delay[ing] seeking medical attention" for Mr. Nickel.  *E.g.*, Opposition at 7, 10 (quoting Complaint at 6 ¶¶ 21-23; 8 ¶ 39).

There is ***no allegation*** anywhere in the Complaint or in Plaintiffs' Opposition that Mr. Nickel's co-workers "desire[d] to bring about" Mr. Nickel's death as a "consequence[] of" their alleged delay.  *Johnson*, 305 Md. at 255.  To the contrary, Plaintiffs also allege and concede that these same co-workers "***called emergency services***" so that Mr. Nickel could be "transported by ambulance" to a hospital in an attempt to save his life.  Complaint at 6, ¶ 23 (emphasis added).

The fact that Mr. Nickel – like the employee in *Johnson* – ultimately succumbed to his work-related injuries does "not constitute an intentional tort for purposes of overcoming the exclusivity provision of [L&E 9-509(d)]."  305 Md. at 255.  The *Johnson* court "unequivocal[ly]" rejected Plaintiffs' results-oriented theory of intentional harm.  *Gantt v. Security, USA*, 356 F.3d 547, 554-55 (4th Cir. 2004) (citing *Johnson*, 305 Md. at 255).

Accordingly, Allegany is entitled to dismissal of all three claims Plaintiffs have asserted against Allegany.

### III.    The Estate Would Be Barred From Recovery, Even If "Deliberate Intent" Had Been Alleged, Because The Estate Obtained A Workers' Compensation Recovery From Allegany Prior To Filing Suit.

#### A.    The "Deliberate Intent" Exception Provides Claimants A Choice To File A Workers' Compensation Claim *Or* A Civil Lawsuit.

The "deliberate intent" exception provides litigants two choices when a covered employee is "killed as a result of the deliberate intent of the employer to injure or kill the covered employee[.]" L&E § 9-509(d).  Those two choices, expressed in the disjunctive ("or"), are:

(1) the claimants may bring a workers' compensation claim under the Workers' Compensation Act; *or*

(2) the claimants may file a civil lawsuit for damages against the employer.

*Id.*

The Estate is barred from bringing this Lawsuit by L&E § 9-509(d) because the Estate obtained recovery from Allegany under a workers' compensation claim before filing this Lawsuit. The Estate does not contest or refute this dispositive reality.  *See* Opposition at 5-6.

The language of L&E § 9-509(d) is clear and unambiguous.  It permits the Estate to "bring a claim for compensation under [the Workers' Compensation Act]" *or* "bring an action for damages against [Allegany]" – *but not both*.  L&E § 9-509(d); *Gilroy v. SVF Riva Annapolis LLC*, 234 Md. App. 104, 111 (2017), *aff'd*, 459 Md. 632 (2018) ("Maryland courts generally interpret 'or' in the disjunctive sense when they construe statutes").

Even if this Court were to look beyond the plain language of L&E § 9-509(d) to determine the intent the General Assembly (it should not), the General Assembly – during the *2024* Session earlier this year – expressly *declined* to amend § 9-509(d) to change "or" to "and."  *See* 2024

Maryland Senate Bill No. 750, Maryland 446th Session of the General Assembly, 2024.[1]  Senate Bill No. 750 proposed to delete the word "or" from L&E § 9-509(d) and replace it with "and." Senate Bill No. 750 *__did not pass__*.  *Id.*  The Legislature chose to retain the disjunctive "or" in § 9-509(d).

Moreover, Plaintiffs' reading the word "or" in the conjunctive (i.e., synonymous with "and") would render L&E § 9-509's exclusivity provision completely meaningless and "yield[] illogical results."  *Gilroy*, 234 Md. App. at 112.  Indeed, no Maryland court has ever embraced the interpretation Plaintiffs now propose.  *See, e.g.*, *Sterry v. Bethlehem Steel Corp.*, 64 Md. App. 175, 188 (1985) ("*__at his option__*, [the plaintiff] may bring a common law action against appellee *__or__* take under the Compensation Act.") (emphasis added).  Accordingly, because the Estate has pursued the Workers' Compensation Claim against Allegany, it may not separately bring this Lawsuit against Allegany.

### B. The Estate *Does Not Substantively Respond* To Allegany's Argument In Its Motion That The Estate Has Waived Any Claims Of Intentional Misconduct.

In its Motion, Allegany argued that because the Estate was "required to incorporate any allegations of Allegany's purported intentional misconduct into the Estate's Worker's Compensation Claim[,]" the Estate has abandoned its right to reassert those claims here.  Motion at 7, Argument § A.1 (citing *Sterry*, 64 Md. App. at 189; *Tynes v. Shoney's Inc.*, 867 F. Supp. 330, 332 (D. Md. 1994); *Parker v. Westat, Inc.*, 301 F. Supp. 2d 537, 540 (E.D. Va. 2004)).

Plaintiffs *__do not respond__* to this argument, other than to say that Allegany's citation to *Sterry*, *supra*, is "mere dicta[.]"  Opposition at 11.  Plaintiffs are incorrect.  *Sterry* strongly supports *__Allegany__* on this issue, not Plaintiffs.  The *Sterry* court *__held__* that the *Sterry* plaintiff's injuries could

---

[1] The rejected 2024 Senate Bill No. 750 is appended hereto as **Exhibit 1** for this Court's convenience.

be pursued "at his option," either as "a common law action against [the defendant] **_or_** . . . under the Compensation Act" – but not both.  64 Md. App. at 188 (emphasis added).

Plaintiffs do not attempt to distinguish (or even discuss) the federal decisions in *Tynes* or *Parker*, both of which would require dismissal of the Estate's claim against Allegany under L&E § 9-509's exclusivity provision.  Opposition at 11; *Tynes*, 867 F. Supp. at 332 ("If an employee demonstrates such an intent[ to injure], he has an option to file his claim under the [Workers' Compensation Act] **_or_** bring a common law tort action for damages.") (emphasis added); *Parker*, 301 F. Supp. at 540 ("[E]ven if [the plaintiff] were somehow to allege that [her employer] deliberately intended to injure her, she has abandoned her right to bring an action for damages by filing a claim for workers' compensation benefits.").

The Estate has failed to identify a single case – in Maryland or otherwise – where its asserted right to bring both a workers' compensation claim **_and_** a survival action lawsuit has been adopted.  *See Ruffin Hotel Corp. of Maryland v. Gasper*, 418 Md. 594, 618 (2011) (preventing a party from asserting a legal premise and expecting a court to "search for the law that is applicable to the issue presented").  Accordingly, the Estate's claim against Allegany should be dismissed because the Estate elected to pursue the Workers' Compensation Claim.

### C. The Alleged Withholding Of Medical Care Is Not A Separate, Intentional Injury From Which The Estate May Recover.

The alleged "with[o]lding and/or delay" in seeking medical attention for Mr. Nickel is not a separate, intentional act, but instead a "mere by-product" of Mr. Nickel's workplace injuries. *See Sterry*, 64 Md. App. at 193 (Wilner, J., Dissenting).  Plaintiffs cannot create separate, intentional acts within "allegations set forth [in] an unbroken chain of proximate cause . . . arising out of and in the course of [Mr. Nickel]'s employment" to avoid the preclusive effect of L&E 9-

509. *Young v. Hartford Acc. & Indem. Co.*, 303 Md. 182, 193 (1985). Accordingly, the Estate is barred from pursuing its survival action claim (Count VII) against Allegany.

IV. **Allegany Would Be Entitled To Dismissal Of Mother And Father's Wrongful Death Claims (Counts I, XIII), Even If "Deliberate Intent" Had Been Claimed, Because Neither Mother Nor Father Is Alleged To Be A "Dependent" Authorized To Assert A Claim Pursuant To The "Deliberate Intent" Exception To The <u>Statutory Workers' Compensation Bar.</u>**

A. <u>Neither Mother Nor Father Are Alleged To Be A "Dependent" Of Their Son.</u>

Plaintiffs have not disputed Allegany's argument in its Motion that only three categories of non-injured third parties can bring civil lawsuits on behalf of the injured employee under the "deliberate intent" exception: (1) "a surviving spouse," (2) a "child," or (3) "a dependent of the covered employee[.]" L&E 9-509(d)(2). These categories of claimants have been strictly construed. *See Ledford*, 259 Md. App. at 551 (holding that 47-year old daughter of deceased employee was not a "dependent" under the Act).

<u>***Nowhere***</u> in the one hundred forty-three (143) paragraph Complaint, nor in any exhibit attached thereto, are either Mother or Father alleged to be a "dependent" of Mr. Nickel. Complaint at 1, *et seq.* Plaintiffs admit this – and it is a dispositive admission. Opposition at 8.

This Court's consideration of Allegany's Motion is "limited generally to the four corners of the [C]omplaint and its incorporated supporting exhibits, if any." *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 643 (2010). As Mother and Father have failed to allege that either is a "dependent" of Mr. Nickel, their claims against Allegany must be dismissed. *See id.* (granting of a motion to dismiss is proper if "the allegations [in a complaint] do not state a cause of action for which relief may be granted").

**B. This Court May Not Consider Plaintiffs' Unverified Statement That Mother Is A "Dependent" Of Mr. Nickel.**

In response to Allegany's Motion, Plaintiffs allege that "[f]ollowing a hearing" allegedly held more than three (3) **_years_** ago (and prior to the filing of this Complaint), Mother "was determined to be a 'survivor who was dependent on the deceased for support.'"  Opposition at 8.

Maryland Rule 2-311(d) states that "a response to a motion that is based on facts not contained in the record **_shall_** be supported by affidavit **_and_** accompanied by any papers on which it is based." (Emphasis added).  Plaintiffs have not submitted the required "affidavit" nor "any papers on which" Mother's allegation that she is a "'dependent'" of Mr. Nickel "is based."  Opposition at 1, *et seq.*; Maryland Rule 2-311(d).  The bald claim of "dependent" status cannot be considered by this Court, as a matter of law.  Maryland Rule 2-311(d).

**C. This Court May Not Take Judicial Notice Of Mother's Alleged "Dependent" Status.**

Plaintiffs' request that this Court "take judicial notice" of Mother's alleged "dependency" status is equally improper.  Opposition at 8.  Plaintiffs have failed to provide this Court "with the necessary information" from which this Court could possibly conclude that Mother was a dependent of Mr. Nickel.  Maryland Rule 5-201(d).

Additionally, Plaintiffs have failed to make the requisite showing that Mother's "dependency" status is "not subject to reasonable dispute" such that judicial notice is appropriate.  Maryland Rule 5-201(b).  If Mother were truly a dependent, Plaintiffs could have easily provided this information.

To meet the Rule 5-201(b) standard, Plaintiffs would have had to show that Mother's status as a dependent is "either (1) generally known within the territorial jurisdiction of the trial court or

(2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Id.* Plaintiffs have not even tried to satisfy either standard.

To the contrary, Plaintiffs have failed to even include the alleged "determin[ation]" of which Plaintiffs request that this Court take judicial notice. Opposition at 8. Judicial notice of Plaintiffs' ***description*** in their Opposition of what allegedly occurred at some point before the Workers' Compensation Commission is not a proper subject for judicial notice. *See Abrishamian v. Washington Med. Grp., P.C.*, 216 Md. App. 386, 401, 415-16 (2014) (affirming decision to refuse to take judicial notice of the plaintiff's description of prior pleadings and proffers that the same were true that were not in the court's record).

### D.  No Discovery Is Required Prior To Dismissal Of Father's Claim.

Plaintiffs admit that they "do not possess the requisite knowledge to aver [F]ather['s] dependency status" and that discovery is required to make this determination. Opposition at 8-9. This is a dispositive admission that Plaintiffs are not in possession of sufficient facts that they might even allege that the Father is a "dependent" of his deceased son.

That "requisite knowledge" of Father's dependency status that Plaintiffs reference would come from ***Plaintiff Father***, not from any of the Defendants (Allegany included). Plaintiff Father does not need to take discovery on himself to determine his alleged "dependency" status. He is either a dependent or he is not. Plaintiffs' Complaint does "not provide [Father] with a judicial remedy[,]" and Father's claim against Allegany must be dismissed. *Pulliam v. Motor Vehicle Admin.*, 181 Md. App. 144, 187 (2008).

Accordingly, Plaintiff Mother and Father's wrongful death claims against Allegany (Count I and Count XIII, respectively) should be dismissed, as a matter of law, as should the Estate's survival action claim (Count VII). *See Ledford*, 259 Md. App. at 553.

**V.      No Discovery Is Required To Conclude That Plaintiffs Cannot Transform Their
Claims Of Negligence Into An Intentional Tort.**

In a final hail-Mary to avoid dismissal, Plaintiffs aver that they require "discovery . . . to
gather the evidence necessary to support [their] allegations."   Opposition at 7-8.   Plaintiffs'
generalized request for "discovery" is misplaced, as Allegany's Motion "tests the sufficiency of
the pleadings" themselves, such that "despite the truth of the allegations, the plaintiff is barred
from recovery as a matter of law." *Iglesias v. Pentagon Title & Escrow, LLC*, 206 Md. App. 624,
644 (2012) (citations and internal quotation marks omitted).

The thrust of Plaintiffs' Lawsuit is that Allegany allegedly failed to provide a safe working
environment, that Mr. Nickel was injured, and that there was some undefined "delay" between the
time when Mr. Nickel's co-workers (fellow Allegany employees) found him and called 911. *See
e.g.*, Complaint at 13, ¶¶ 64-68, 70; *id.* at 6 ¶¶ 21-23, 8 at ¶ 39. But even assuming that all of these
allegations are true, these allegations "still fall[] short of the kind of ***actual intention to injure*** that
robs the injury of accidental character." *Johnson*, 305 Md. at 254 (citation and internal quotation
marks omitted) (emphasis modified).

***No amount*** of "discovery" will suddenly "cause [Plaintiffs'] negligence claim to transform
into an intentional tort." *Hines v. French*, 157 Md. App. 536, 559 (2004). *See also Francis v.
Maryland*, No. CV ELH-21-1365, 2024 WL 1156407, at *24 (D. Md. Mar. 18, 2024) ("It is well
settled that a lawsuit is not a fishing expedition, and sufficient allegations are required to enable a
party to conduct discovery.").  Nor is Plaintiffs' characterization of an act as "intentional[]"
(Complaint at 8, ¶ 39) a panacea to Plaintiffs' myriad pleading deficiencies. *See Bobo v. State*,
346 Md. 706, 708-09 (1997) ("Bald assertions and conclusory statements by the pleader will not
suffice."); *Alitalia Linee Aeree Italiane v. Tornillo*, 320 Md. 192, 195 (1990) (instructing that

courts are "expected to look at the substance of the allegations before them, not merely at labels or conclusory averments").

Accordingly, because Plaintiffs have not adequately alleged facts to satisfy the "deliberate intent" exception of L&E § 9-509(d), the Workers' Compensation Act is Plaintiffs' exclusive remedy, and the Lawsuit must be dismissed. *Johnson*, 305 Md. at 254; *Ledford*, 259 Md. App. at 551-553.

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons set forth in its Motion, Defendant Allegany Scrap, Inc. respectfully requests that Plaintiffs' Lawsuit be dismissed with prejudice.

Dated: June 21, 2024                    Respectfully submitted,


        */s/ Alex J. Brown*
        Joel I. Sher (AIS No. 7811010312)
        Alex J. Brown (AIS No. 9912140080)
        Michael S. Bullock (AIS No. 1712130070)
        Shapiro Sher Guinot & Sandler
        250 W Pratt Street, Suite 2000
        Baltimore, Maryland 21201
        410-385-0202 telephone
        410-539-7611 facsimile
        jis@shapirosher.com
        ajb@shapirosher.com
        msb@shapirosher.com

        *Attorneys for Defendant Allegany Scrap, Inc.*

14

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 21st day of June, 2024, copies of the foregoing

Defendant Allegany Scrap, Inc.'s Reply In Support Of Its Motion To Dismiss were served via

MDEC on:

> Jason C. Buckel, Esq.
> T Lee Beeman, Esq.
> Buckel Levasseur Pillai & Beeman LLC
> 206 Washington Street
> Cumberland, Maryland 21502
>
> *Attorneys for Plaintiffs*
>
> E. Andrew Cole, Esq.
> Joseph M. Moeller, Esq.
> Stein Sperling Bennett De Jong Driscoll PC
> 1101 Wootton Parkway
> Suite 700
> Rockville, Maryland 20852
>
> *Attorneys for Defendants The Shredder Co., LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC and Newell Recycling Company of El Paso, L.P.*

> ___*/s/ Alex J. Brown*___
> Alex J. Brown (AIS No. 9912140080)

15

E-FILED; Allegany Circuit Court
Docket: 6/21/2024 8:55 AM; Submission: 6/21/2024 8:55 AM
Envelope: 16921764

# EXHIBIT 1

2024 Maryland Senate Bill No. 750, Maryland 446th Session of the General Assembly, 2024

MARYLAND BILL TEXT

**TITLE: Labor and Employment - Workers' Compensation - Exceptions to Exclusivity of Liability**

VERSION: Introduced
February 01, 2024
Senator Corderman

📄 Image 1 within document in PDF format.

SUMMARY: Labor and Employment - Workers' Compensation - Exceptions to Exclusivity of Liability

**TEXT:**

SENATE BILL 750

K1 4*lr*1993

By: **Senator Corderman**

Introduced and read first time: February 1, 2024

Assigned to: Finance

A BILL ENTITLED

AN ACT concerning

**Labor and Employment - Workers' Compensation - Exceptions to Exclusivity of Liability**

FOR the purpose of altering the exception to the exclusivity of an employer's liability under workers' compensation law for covered employees who are injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee; deeming an employer to have acted with deliberate intent under certain circumstances; establishing an exception to exclusivity of liability of an employer under workers' compensation law for a covered employee who is killed by another employee; providing for the retroactive application of this Act; and generally relating to exceptions to the exclusivity of an employer's liability under workers' compensation law.

BY repealing and reenacting, with amendments, Article - Labor and Employment Section 9-509 Annotated Code of Maryland (2016 Replacement Volume and 2023 Supplement)

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

**Article - Labor and Employment**

9-509.

(a) Except as otherwise provided in this title, the liability of an employer under this title is exclusive.

(b) Except as otherwise provided in this title, the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person.

(c) (1) If an employer fails to secure compensation in accordance with this title, a covered employee who has sustained an accidental personal injury, compensable hernia, or occupational disease or, in case of death, the personal representative of the covered employee may:

(i) bring a claim for compensation under this title; or

(ii) bring an action for damages.

(2) In an action of a covered employee or personal representative under this subsection, an employer may not plead as a defense that:

(i) the covered employee assumed the risk of employment;

(ii) the covered employee was contributorily negligent; or

(iii) the negligence of a fellow servant caused the accidental personal injury, compensable hernia, or occupational disease.

(d) **(1)** If a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee, the covered employee or, in the case of death, a surviving spouse, child, or dependent of the covered employee may:

[(1)] **(I)** bring a claim for compensation under this title; [or] **AND**

[(2)] **(II)** bring an action for damages against the employer.

**(2) FOR THE PURPOSE OF PARAGRAPH (1) OF THIS SUBSECTION, AN EMPLOYER IS DEEMED TO HAVE ACTED WITH DELIBERATE INTENT IF THE EMPLOYER:**

**(I) ACTED IN A MANNER THAT WAS PREMEDITATED OR WILLFUL IN CAUSING THE INJURY TO OR DEATH OF THE COVERED EMPLOYEE; OR**

**(II) HAD ACTUAL KNOWLEDGE THAT AN INJURY OR DEATH WAS SUBSTANTIALLY LIKELY TO OCCUR AND WILLFULLY DISREGARDED THAT KNOWLEDGE.**

**(E) IF A COVERED EMPLOYEE IS KILLED BY THE INTENTIONAL ACTION OF ANOTHER EMPLOYEE, A SURVIVING SPOUSE, CHILD, OR DEPENDENT OF THE COVERED EMPLOYEE MAY:**

**(1) BRING A CLAIM FOR COMPENSATION UNDER THIS TITLE; AND**

**(2) BRING AN ACTION FOR DAMAGES AGAINST THE EMPLOYER.**

SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall be construed to apply retroactively and shall be applied to and interpreted to affect a cause of action arising or a workers' compensation claim filed on or after January 1, 2022.

SECTION 3. AND BE IT FURTHER ENACTED, That this Act shall take effect October 1, 2024.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Linda Beeman                                                    July,1,2024
12750 Vale Summit Road SW
Frostburg, MD. 21532
Linda.nickel81@gmail.com
240-284-1347


Judge Leasure
Circuit Court for Allegany County Maryland
30 Washington Street
Cumberland, Md. 21502

Dear, Your Honor,

I am writing regarding the hearing that was held 6/28/24. Case number C-01-CV-23-000317 Wrong full death of Joshua Nickel. I am Joshuas' mother Linda Beeman. I would have liked to have spoken at the hearing, but I realized time was very critical for you. Your Honor, I do want to thank you for your time working on my son's case. My son Josh was a unique individual. In times when there was so much violence and destruction, I was blessed to have him as a son. Josh had so many friends and his friends would say he was the only person they knew that had a million friends and zero enemies. Joshua was the first New Years baby in 1990 in Allegany County, Maryland and the first Homecoming king in the new school of mountain Ridge. Josh never knew a stranger and would be the first to help anyone in need. He would not tolerate any form of drugs or breaking the law. Josh was respected by all. I would get messages asking if I was his mother all the time. People would tell me I must have been a wonderful mother to have raised a son like Josh. I was truly blessed with my children. Josh was the youngest of my three children, I had an older son Travis with whom was born with a brain bleed and succumbed to his disability at the age of 23.

I worked 30 years as an RN and most of my work was in administration and teaching nursing assistant classes. I was forced to stop working due to severe medical issues. There were periods of time I was bed bound for months at a time. Josh stayed by my side. There were times he would have to carry me home from treatments. Josh maintained our home up until the time of his death.

I watched Josh go to work and back for 10 years at Allegany Scrap. He always came home with some form of metal debris. The debris would be in his car. At one point in May of 2020 his car and two other workers had debris fly and do damage to there car. Josh had three thousand dollars in repair work done on his car. Even when MOSH was there doing their inspection there were explosions and metal went through a curtain that was to protect the employees. MOSHs Mike Penn kept me very informed during the inspection. MOSH had 14 affidavits from current and past employees, all saying the same thing. That for years when they told the management about the shredder needed fixed, they would tell them it's not in the budget and to toughen up it won't hurt you to get hit. In 2016 there was a similar incident where a worker was standing on the catwalk in the same place my son was, and metal hit him knocking him unconscious. Josh ran to his side and got him awake and then called for help. The same supervisor Chris Bennet was there during that incident. Mr. Bennett put the employee on his golf cart and took him to his office and the employee demanded to go to the hospital. Mr. Bennett put him in his own truck and drove him to the hospital, not calling 911. Me. Bennett had told him the whole way to the hospital not to tell the hospital it was work related and that the company would pay for it under the table. This gentleman told the Dr.

what happened and how it happened. The guy had lost half his ear in that accident. MOSH would not have known this accident had occurred if I had not told them and they got in contact with this former worker. It was not on the company's MOSH log. All the employees were hit by debris daily. As MOSH found many safety violations they were taking the scrap yard to court and the day before the court date the company took responsibility for my son's death. The 2 employees that were subpoenaed to court were fired the following week. I can not believe that MOSH only fined them approximately 2 thousand dollars. What incitive is it for Allegany Scrap to only get fined so little for the result of a human life and not be held accountable to follow safety laws to prevent injuries to employees. It appears that it is cheaper to take a chance on human life because the fine is so little. The employees would say every day before they started the shredder "Is today the day we are going to meet our maker." This in my opinion is reckless as they disregard safety practice and the law. I do feel it is intentional misconduct on this company and should not be tolerated. Employers must not engage in actions that create a substantial risk of death or injury to an employee like Allegany Scrap has. Fast paced and heavy machines create an environment that is very dangerous but to take short cuts like they do by not inspecting loads for gas, oil etc. Causing explosions and not having proper safety guards and equipment disregard safety practice and undermines workplace safety and the law and should never be tolerated. My son's life was taken at the age of 30 because of this. If this was an isolated incident, I could have accepted it but it most certainly was not. I had the opportunity to visit a scrap yard in Hagerstown Md, and there shredder was incased in a building as well as I looked up Newell company and watched videos of shredder's and they shredder's were also incased in a building.

It has been 4 years since my son passed away and I relive it every day. I see pictures of his autopsy as well as pictures that one supervisor took from his personal cell phone at the time of the accident in my mind all the time. The superior Steve Bennett had no right to take my son lying on the ground with blood from head to toe to show anyone, that is violating my son's right to privacy. This is just so horrible. Josh was my world. When he passed so did I. I get periods when I can't breathe. I celebrate no holidays, birthdays, Josh was to be in 8 wedding the year he passed, and I couldn't even attend them for fear of falling apart. I even must leave places where I go because something reminded me of him. My granddaughter says: I can't wait to die and go to heaven so I can see Uncle Josh.

Your Honor, I had no knowledge regarding the workers comp issues where its double dipping as the scrap yard attorney stated nor do I agree with what he was saying. I received 75 thousand but that in no way would cover his income for 30 more years that my son could work. While money won't bring him back, I do feel justice should be served through monetary judgement so that I don't have to live wondering how I will pay all the expenses I have occurred. I now suffer from Severe anxiety and depressing because of this. My world has been torn upside down. I was forced to apply for a modification for my mortgage.

Your Honor, I am pleading for your understanding and to be given the opportunity to seek justice through discovery for my son.


Sincerely,

Linda Beeman

Judge Leasure
Circuit Court for Allegany County
30 Washington St.
Cumberland, Me 21502

Received 7-2-24
4:45 PM

2024 JUL -2 A 8:45

ALLEGANY CO.
CIRCUIT COURT

# Senior Judge Gary G. Leasure

30 Washington Street
Cumberland, Maryland 21502
301.777-5926
gary.leasure@mdcourts.gov

July 2, 2024

Jason C. Buckel, Esq.
206 Washington Street
Cumberland, MD 21502

Alex J. Brown, Esq.
250 W. Pratt Street, Suite 2000
Baltimore, MD 21201

Joseph M. Moeller, Esq.
1101 Wootton Parkway, Suite 700
Rockville, MD 20852

Re:     Linda S. Beeman, *et al* vs. Allegany Scrap, Inc., et al
        Civil Case No.: C-01-CV-23-000317

Dear Counsel,

On today's date I received an unsolicited letter from the Co-Plaintiff, Linda Beeman. A copy is enclosed for your review. Please advise if you prefer that I defer ruling on the pending motions to dismiss due to this communication. If so, a further hearing before another Judge will be necessary. Your prompt response will be appreciated.

Very truly yours,

Gary G. Leasure

GGL/ajm

Enclosure

E-FILED; Allegany Circuit Court
Docket: 7/8/2024 7:55 PM; Submission: 7/8/2024 7:55 PM
Envelope: 17130961

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

| | | |
|---|---|---|
| **LINDA S. BEEMAN,** *et al.* | * | |
| **Plaintiffs** | * | |
| **v.** | * | |
| | * | **Case No. C-01-CV-23-000317** |
| **ALLEGANY SCRAP, INC.,** *et al.* | * | |
| **Defendants** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### DEFENDANT ALLEGANY SCRAP, INC.'S SUPPLEMENTAL BRIEF ADDRESSING *BENJAMIN V. WOODRING*, 268 MD. 593 (1973)

Defendant Allegany Scrap, Inc. ("Allegany"), by and through undersigned counsel, and pursuant to this Court's Order rendered during the June 28, 2024 hearing in this case, hereby submits this Supplemental Brief Addressing *Benjamin v. Woodring*, 268 Md. 593 (1973) ("*Benjamin*") as follows:

### INTRODUCTION

Maryland Rule 2-303(d) states that any exhibit a plaintiff attaches to a complaint is a part of the complaint "***for all purposes***." (Emphasis added). When a plaintiff chooses to attach a document to a complaint, the plaintiff adopts the contents of that document as allegations in the complaint. *Id.*

In this case, Plaintiffs attached a death certificate (the "Death Certificate") to their wrongful death complaint ("Complaint"). *See* Complaint at Exhibit 1 (Death Certificate). In the Death Certificate, the medical examiner finds that the death at issue was an "[a]ccident[.]" *Id.* at 2. Allegany filed a Motion to Dismiss ("Motion") Plaintiffs' claims, in part, because the Complaint alleges that the death was "[a]ccident[al,]" through the Death Certificate. Plaintiffs' claims of

accidental death are barred by the Workman's Compensation Act because a workman's compensation award has already been made. Subsequent to a workman's compensation award, the Workmen's Compensation Act permits three (3) limited categories of claimants (none of which are present in this case) to file a second, separate civil action only if the death was caused by the "deliberate intent" of an employer, not an accident.

Plaintiffs did not cite the *Benjamin* case in their Opposition to Allegany's Motion. Nor did Plaintiffs cite *Benjamin* during a lengthy oral argument, stretching approximately fifty-two (52) pages of the transcript during the hearing on Allegany's Motion. *See* June 28, 2024 Transcript, attached hereto as **Exhibit 1**.

It was not until Allegany's counsel finished his final argument in favor of the Motion that Plaintiffs' counsel requested "about thirty seconds[.]" *Id.* at 53: 22. During that "thirty seconds," Plaintiffs raised *Benjamin*, for the very first time, purportedly as "support" for the incorrect assertion that the medical examiner's finding of "[a]ccident[al]" death in the Death Certificate is not an allegation of the Complaint in this case. The Court, noting that *Benjamin* "wasn't briefed" prior to the hearing, afforded Allegany the opportunity to submit this supplemental briefing on *Benjamin*. *Id.* at 56: 5-6.

The *Benjamin* case concerns the admissibility of evidence at trial. *Benjamin* has nothing whatsoever to do with whether the contents of exhibits to a Complaint are incorporated into the Complaint as allegations of the pleading (they are). Maryland Rule 2-303(d). Maryland law thus requires that all claims for the decedent's admittedly "accidental" death be dismissed.

## ARGUMENT

In *Benjamin*, a wife sought to have her late husband's death certificate introduced as evidence at a trial. 268 Md. at 596. The wife offered the death certificate as "evidence" of her

late husband's suicide.  *Id.* at 604-05.  The wife sought to rely on the death certificate to meet her burden of proving that the husband had committed suicide.  *Id.*

Here, by contrast, no party – Allegany included – is requesting that this Court introduce the Death Certificate attached to the Complaint as ***evidence***.  Allegany has simply noted that Plaintiffs have ***alleged in their Complaint***, through the attachment of the Death Certificate, that the decedent's death was "[a]ccident[al]."

For the purposes of Allegany's Motion to Dismiss, this Court considers the Complaint's allegations, not evidence.  Plaintiffs' Complaint allegation that the decedent's death was "[a]ccident[al]" is simply assumed to be true.  *Bell Atl.-Maryland, Inc. v. Maryland Stadium Auth.*, 113 Md. App. 640, 646 (1997); Complaint at Exhibit 1 (the Death Certificate) at 2.  As opposed to *Benjamin*, this Court does not need to determine whether the medical examiner's finding of "[a]ccident[al]" death in the attached Death Certificate is true or correct.

*Benjamin* does not alter the disposition of Allegany's Motion to Dismiss, and Allegany's Motion to Dismiss must be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons set forth in Allegany's Motion to Dismiss, Defendant Allegany respectfully requests that Plaintiffs' claims against Allegany be

dismissed with prejudice.

Dated: July 8, 2024                                Respectfully submitted,


                                                   ___/s/ Alex J. Brown_____
                                                   Joel I. Sher (AIS No. 7811010312)
                                                   Alex J. Brown (AIS No. 9912140080)
                                                   Michael S. Bullock (AIS No. 1712130070)
                                                   Shapiro Sher Guinot & Sandler
                                                   250 W Pratt Street, Suite 2000
                                                   Baltimore, Maryland 21201
                                                   410-385-0202 telephone
                                                   410-539-7611 facsimile
                                                   jis@shapirosher.com
                                                   ajb@shapirosher.com
                                                   msb@shapirosher.com

                                                   *Attorneys for Defendant Allegany Scrap, Inc.*

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 8th day of July, 2024, copies of the foregoing Defendant

Allegany Scrap, Inc.'s Defendant Allegany Scrap, Inc.'s Supplemental Brief Addressing *Benjamin*

*v. Woodring*, 268 Md. 593 (1973) were served via MDEC on:

> Jason C. Buckel, Esq.
> T Lee Beeman, Esq.
> Buckel Levasseur Pillai & Beeman LLC
> 206 Washington Street
> Cumberland, Maryland 21502
>
> *Attorneys for Plaintiffs*
>
>
> E. Andrew Cole, Esq.
> Joseph M. Moeller, Esq.
> Stein Sperling Bennett De Jong Driscoll PC
> 1101 Wootton Parkway
> Suite 700
> Rockville, Maryland 20852
>
> *Attorneys for Defendants The Shredder Co., LLC,*
> *The Shredder Co., LP, Newell Recycling*
> *Equipment, LLC and Newell Recycling Company*
> *of El Paso, L.P.*


> _____/s/ Alex J. Brown_____
> Alex J. Brown

E-FILED; Allegany Circuit Court
Docket: 7/8/2024 7:55 PM; Submission: 7/8/2024 7:55 PM
Envelope: 17130961

# Exhibit 1

1

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

LINDA BEEMAN, as Surviving Mother of

JOSHUA P. NICKEL,                *

        Plaintiff            *

    vs.                      *    CASE NO. C-01-CV-23-317

ALLEGANY SCRAP, INC., et al,  *

        Defendant            *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

        REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDING

                    Motion Hearing

                        Friday, June 28, 2024
                        Cumberland, MD  21502

BEFORE:

    THE HONORABLE GARY G. LEASURE


APPEARANCES:

    FOR THE PLAINTIFF:

        JASON C. BUCKEL, ESQ.

    FOR THE DEFENDANT:

        MICHAEL S. BULLOCK, ESQ.

        ALEX BROWN, ESQ.




                    M. Sue Crowe
                    Court Reporter
            Circuit Court for Allegany County

2

**PROCEEDINGS**

1

2    BY THE COURT:  All right, thank you.  Please be seated.

3    If you will give me a moment, please.  (Pause)  Okay.  So

4    the next matter is titled **Linda S. Beeman, surviving mother**

5    **and others vs. Allegany Scrap Inc., and The Shredder**

6    **Company, LLC, et al.**

7        It appears before the Court today, are Motions to

8    Dismiss, two in number, one filed on behalf of Allegany

9    Scrap, the employer, if you will; the other filed on behalf

10   of four Co-Defendants, who would be alleged to have been the

11   manufacturers of certain equipment that was involved in the

12   accident and death of Mr. Joshua Nickel.

13       So counsel, let's start with appearances.  Plaintiff,

14   please?

15       BY MR. BUCKEL:  Thank you, Your Honor.  Jason Buckel

16   and Lee Beeman, on behalf of the Plaintiffs in this matter.

17       BY THE COURT:  And counsel?

18       BY MR. BROWN:  Thank you, Your Honor.  Alex Brown on

19   behalf of Allegany Scrap in this matter, and counsel for the

20   Defendants is in the gallery.  We, counsel has agreed we

21   will do Allegany Scrap's motion first, and then the Co-

22   Defendants motion, if that is acceptable to the Court.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1      BY THE COURT:  All right, so counsel standing, do you

2  represent the manufacturers, for lack of a better term?

3      BY MR. MOELLER:  Yes, Your Honor.   We have termed them

4  the Newell Defendants and (inaudible word), just on behalf

5  of the Newell Defendants.

6      BY THE COURT:  Okay, that, that chronology is fine.

7  So, let me get my paper out, or papers.   (Pause)  So, we

8  will first hear any argument to be presented on behalf of

9  Allegany Scrap, Inc.'s motion, and then certainly hear from

10  the Plaintiffs in the action.

11      I can, let me advise counsel, in order to move things

12  along.  I am familiar with all of the pleadings.  I spent a

13  better part of a day and a half, not exclusively, but it is,

14  I have spent some time, with the law clerk, so it is an

15  interesting case, umm, certainly give whatever factual

16  background or whatever argument you want to make, but keep

17  in mind..just respect the fact that I have spent some time,

18  so you don't have to reinvent the wheel, I guess, is what I

19  am saying.

20      So, with that in mind, counsel, I will be happy to hear

21  what you have to say.

22      BY MR. BROWN:   Certainly, Your Honor.   Thank you,

4

1  Your Honor, and thank you and your law clerk for the time

2  you have spent on this.   I appreciate it.   It is very,

3  makes it much easier and more efficient for counsel, if I

4  don't have to say well, here, Allegany Scrap, and start from

5  the beginning.

6      And we are, we are a metal recycling company that has

7  operated in Allegany, or excuse me, in Cumberland, for

8  years.   And this was an unfortunate incident in which the

9  Decedent, Mr. Nickel, was killed in what the Plaintiffs have

10 described in their complaint, was a random incident.   And

11 umm, they, which is appropriate, made a Worker's

12 Compensation claim and the Estate was fully compensated by

13 the Worker's Compensation process.   So, the claims against

14 Allegany, Mr. Nickel's former employer, are an attempt to

15 double dip.

16     In that Worker's Compensation process, Mr. Nickel's or

17 the Estate did not allege that Allegany intentionally tried

18 to kill him.   Umm, they could have, and we have cited

19 cases, which I am sure you have looked at, which say that if

20 they wanted to make an allegation of intent, they have to

21 choose, whether it is in the Worker's Compensation, or in a

22 separate lawsuit.   They chose to go with the Worker's

5

1    Compensation, and they didn't allege intent.  The reason

2    they are alleging intent here is because that's the only way

3    they can double dip under the Worker's Compensation statute.

4    They are arguing they are entitled to, as you know, as you

5    said, fit under the deliberate intent exceptions to the

6    Worker's Compensation recovery, which is supposed to be

7    exclusive, and as we noted, and I think it is important to

8    highlight, that Worker's Compensation is intended to be

9    exclusive, because it gets the Plaintiff paid quicker.  It

10    sets aside the back and forth that you see in private civil

11    lawsuits, and sort of streamlines the process to get

12    Plaintiff's paid, and that is what happened here.

13        So, the deliberate intent exception does not apply for

14    three separate reasons.  The first is very easy.  The

15    Plaintiff's have attached the death certificate to their

16    complaint, as I am sure you saw, and the examiner says the

17    death was accidental.  And I want to be very clear because

18    I expect Mr. Buckel is going to say well, we are entitled to

19    do discovery on whether the examiner was right or wrong.

20    That's not the point at this Motion to Dismiss phase.  I

21    saw that in their briefs.  The point is as a matter of law,

22    the Plaintiffs have alleged that the death was accidental

6

1    because they, they have agreed in their brief, that that

2    death certificate is incorporated into the allegations of

3    the complaint for all purposes.  That's what Maryland Rule

4    2-303(d) says, so if you attach a death certificate that

5    says it is accidental, it doesn't matter what you say in

6    your complaint because they have alleged the death was

7    accidental, so as a matter of law the deliberate intent

8    exception does not apply here.

9        BY THE COURT:  Counsel, one quick question here.  Just

10   curiosity.   It doesn't impact on, I don't think it impacts

11   on any decision I have to make, am I right as I recall

12   looking at the death certificate, the doctor was identified

13   as a doctor, a death certificate in West Virginia?

14       BY MR. BROWN:  Yes.

15       BY THE COURT:  Just curious, why was it a doctor in

16   West Virginia that did the death certificate?

17       BY MR. BROWN:  I..

18       BY THE COURT:  If Maryland..

19       (THE COURT IS TALKING TO THE LAW CLERK)

20       BY THE COURT:  ..the answer given by my law clerk,

21   apparently the young man was transported to Ruby Memorial

22   West Virginia University, where apparently..

1      BY MR. BROWN:  That's correct.

2      BY THE COURT:  ..he unfortunately passed away.  So that

3  answers my question.

4      BY MR. BROWN:  Thank you.

5      BY THE COURT:  That's why it would have been a..

6      BY MR. BROWN:  Yes.

7      BY THE COURT:  ..West Virginia physician.

8      BY MR. BROWN:  And thank you very much.  So, but, I

9  think for the purposes of this case, I would note in the

10 death certificate, there are boxes that the doctor could

11 have checked.  He could have checked homicide, he didn't

12 check homicide, and that's what they are alleging here, that

13 we intended to kill this person, that they have sort of

14 abandoned the notion in their briefs that a person standing

15 in full protective gear, seventy-six away from a shredder,

16 was intentionally killed because a metal shot out randomly,

17 as they alleged in their complaint.

18     What they are focusing on is the employee's intended to

19 kill him because they didn't call 911 fast enough, which is

20 an absurd argument and is only made to try to put this case

21 in the deliberate intent intraption, but to get back to the

22 argument I was making, the death certificate has a box for

8

1   homicide.  It wasn't checked.  It has a box for

2   inconclusive, it wasn't checked.   It has a box for

3   accidental death, that was checked, so what is in the

4   complaint, and again, we are not trying to prove the case

5   here because this is a Motion to Dismiss.   What the

6   complaint alleges is the death was accidental and Maryland

7   Rule 2-303(d) says the exhibit trumps the substance of the

8   complaint.   That's the way it works, and so, the

9   Plaintiff's are not entitled, under my first argument, to

10  the deliberate intent exception, because they have alleged

11  in the complaint that the death was accidental.

12      Secondly, even if the death certificate had not been

13  attached to the complaint, the Plaintiff's have not alleged,

14  as I noted before, that the employees intended to kill Mr.

15  Nickel by calling 911, but not doing it fast enough.

16      We cited the *Johnson* case, and I think it is important

17  because in *Johnson*, the, it was a case where the employer

18  had electrical wires that were laid out, and the employer

19  violated the law six ways to Sunday in having those

20  electrical wires laid out and they didn't employ, they

21  didn't notify the employee and the employee touched them and

22  was killed.  And what the Court said under this very issue,

1  under the Worker's Compensation Act, said it might have been

2  reckless, it might have been wanton, but we have got to

3  respect the exclusivity that the legislature chose to put in

4  place so that umm, that's not intentional.  Reckless wanton

5  and conduct is not intentional, and I am not suggesting that

6  our failure to call 911 fast enough was reckless and wanton,

7  because I don't think it was, but even if it were, there is

8  no allegation that they intended to kill him by calling 911,

9  but not fast enough.

10      We have cited the *Bobo* case, 346 Md. App., 708 – 709,

11  and what *Bobo* says is you can't take a negligence claim and

12  put it into deliberate intent with three formula

13  allegations, well, Allegany intended to kill the Defendant.

14  There has got to be more.  They don't say why the employees

15  intended to kill their co-employee, they didn't say the

16  benefit, they didn't say anything other than two facts, they

17  intended to kill their employee and they didn't call 911

18  fast enough.  That, that is not, even under a notice

19  pleading, *Bobo* says you need more than that.  You need to

20  explain the Plaintiff's intended to kill through not calling

21  911 fast enough.  That does not appear in the complaint.

22      So, even if the death certificate hadn't been attached,

1   because the Plaintiffs don't allege intent to kill through

2   not calling 911 fast enough, the complaint is defective as a

3   matter of law.

4       There is a difference, and *Johnson* makes this clear,

5   and then I will move on to number three, the intent to do

6   the act, which they allege, they allege we intended not to

7   call 911 fast enough, but they don't allege, which is

8   critical, we intended to kill him by not calling 911 fast

9   enough, and there is a material difference and *Johnson* makes

10   that clear.

11       The third point is none of the three Plaintiff's

12   qualify under the Worker's Compensation statute to bring

13   this suit, or even if umm, the deliberate intent exception

14   applied.   So, the Estate has already made a Worker's

15   Compensation recovery.   They have weighed their right to

16   recovery for intentional misconduct, by getting a full

17   recovery in the Worker's Compensation process, so the Estate

18   has been fully compensated.

19       Mom and dad, who are, are Plaintiff's, they have to be

20   dependents.   That's what the statute says, to get under the

21   deliberate intent exception, they have to be dependents of

22   the Decedent.   There is one hundred and forty-three

1  paragraphs in that complaint.  Not one of them alleges mom

2  or dad is a dependent of Mr. Nickel's.  There is no

3  allegation anywhere in the complaint.

4      So, in their opposition, what Mr. Buckel is going to

5  ask you to look at are things that not in the complaint.

6  And that's inappropriate as a matter of law.  So, even if

7  there were no death certificate, and even if the Plaintiff's

8  have alleged that the employees intended to kill their co-

9  employee by delaying calling 911, the Plaintiff still

10 wouldn't qualify, mom and dad, because they are not

11 dependents.

12      Now, to try to save that, Plaintiff's can't even say

13 dad.  They say we don't know the facts, he is just a Use

14 Plaintiff.  We can't tell you in court, they have said this

15 in their opposition, why he is a dependent or if he is a

16 dependent.  That's not sufficient.  They don't get

17 discovery for that.  You can't say I am filing a claim

18 because we might possibly get some discovery at some point

19 that shows that dad is a dependent and qualified under the

20 statute.  The claim is defective, it should be dismissed as

21 to dad.

22      With respect to mom what they have said is you should

1    take judicial notice of a Worker's Compensation hearing

2    report that says something.   They haven't provided it to

3    the Court, they, what they have..we have cited law that says

4    you are supposed to provide an affidavit if you want to

5    allege, outside of the complaint, that mom is a dependent,

6    you have to provide an affidavit.   They haven't done that.

7    You have to provide the document that you want the Court to

8    take judicial notice of.   They haven't done that.

9         What they have said is in their opposition, Judge,

10   there is this ruling somewhere out there that we haven't

11   shown you that says something, you should take judicial

12   notice of that.   You can't do that and the law is clear,

13   and you shouldn't be able to do that.   You shouldn't be able

14   to take judicial notice of what lawyers tell you documents

15   say that you haven't seen.

16        So for all three of those reasons, separately and

17   independently, the claim against Allegany Scrap should be

18   dismissed.   They have alleged it is a negligence claim,

19   they haven't alleged we intended to kill this employee by

20   delaying calling 911, and none of the three Plaintiff's

21   qualify as having standing to bring this claim under the

22   Worker's Compensation Act.   Thank you, Your Honor.

1      BY THE COURT:  Counsel, let me check my notes here.  I

2   might have a question or two.

3      BY MR. BROWN:  Sure.

4      BY THE COURT:  From the things I looked at.  So one

5   argument that you are, you make, for lack of a better word,

6   I will call it jurisdiction.  Umm, you reference and

7   believe, if I am following correctly, that when Plaintiffs

8   have made a claim and made a recovery under the Maryland

9   Worker's Compensation Act, they are then barred from

10   bringing this claim on a negligence basis.  I, is that a

11   fair statement?

12      BY MR. BROWN:  That is a fair statement.

13      BY THE COURT:  Okay.

14      BY MR. BROWN:  The Estate made a recovery under the

15   Worker's Compensation Act, so the..

16      BY THE COURT:  Okay.

17      BY MR. BROWN:  ..Estate is barred.

18      BY THE COURT:  Got it.  And, and the legal argument

19   associated with that is the statute then and case law

20   thereafter, from your position, shows that that is an

21   exclusive choice that needs to be made and you can't have

22   both?

1    BY MR. BROWN:  Yes, and I, I am glad you mentioned that

2    Your Honor, because if you can bear with me, because I want

3    to answer your question.   The statute itself, and I pulled

4    it up, it is 9-509(d) of the Labor and Employment Article.

5    It says the Estate can bring a claim of Worker's

6    Compensation, or is the word, and this is the argument you

7    are referring to, or a civil suit.  It is one or the other,

8    and I noted in here that in this 2024 legislative session, a

9    bill was submitted in the Senate to make that and, so you

10   can bring Worker's Compensation and this civil lawsuit, and

11   that bill didn't pass.  It was rejected by the legislature.

12       So the to the extent you want to look outside of the

13   statute, which I don't think is appropriate, because I think

14   the word or is clear, it is now certainly clear that you can

15   choose one or the other and the Estate, what the Estate

16   should have done if they wanted to bring these allegations

17   of intentional misconduct, they should have in the Worker's

18   Compensation action said there was this death, we are

19   entitled to this recovery and it was intentional and they

20   are perfectly entitled to have brought those claims in the

21   Worker's Compensation.   What they can't do is split it and

22   bring negligence in one and intent in the other, because

1  they can do one or the other.   That's what the legislature

2  has said.

3      BY THE COURT:  And then I am also going to give the

4  other side an opportunity, each of you in your memos on the

5  law that might relate to that particular issue refer to a

6  *Sterry* decision, 64 Md. App., so I will allow that.  Now, I

7  have only had a brief opportunity to read it, but as I

8  recall, umm, Plaintiff in their memo in response to your

9  reference to the *Sterry* case would suggest that the aspect

10  of the exclusivity part in the *Sterry* case should be thought

11  of as "dicta", as opposed to part of the overall holding.

12      Now, I have briefly read the case, but what is your

13  thought, what is your argument in response if I have read it

14  correctly by the other side, that's not, that is "dicta", it

15  is not a precedent to be followed.

16      BY MR. BROWN:  Sure.

17      BY THE COURT: How would you respond to that?

18      BY MR. BROWN:  And you have read that correctly, that

19  is the argument they made and my response is two-fold.

20  Number one, it is not "dicta", and we have cited you in the

21  reply brief to, and this is the case, 64 Md. App., at 188,

22  and at 188, they quote the statute and say it is an or.  It

16

1   is a disjunctive, and secondly what I would say is so it is

2   a holding, and even if it was "dicta", that doesn't change

3   the fact that the statute says what it says.

4       It is very simple.  You can do Worker's Compensation or

5   a civil lawsuit, so I don't, it is a holding, it is not

6   "dicta", but I don't know that we even need to argue about

7   it because the statute says what it says and the statute is

8   clear.  You have to make a choice.

9       If you wanted to bring these intentional claims, you

10  had to do it in the Worker's Comp., because it doesn't say

11  you can bring a Worker's Comp. or a portion of it and then a

12  civil suit for the rest of it.   That is inefficient, that

13  is not, that doesn't suit the purpose of the Worker's

14  Compensation Act, which is to get people paid quickly.   It

15  is not to create duplicative lawsuits where you can get some

16  here and some there.  What it is is, let's streamline the

17  process and get people paid because when they are hurt on

18  the job, that's a problem, let's get them paid quickly and

19  that's what happened.

20      BY THE COURT:  Does the statute, from your view and

21  argument, permit folks involved in this sort of situation to

22  forego the Worker's Compensation claim altogether and file a

1    civil suit on intentional, on an intentional act..

2        BY MR. BROWN:  Absolutely.

3        BY THE COURT:  ..or does it all have to, you can go

4    either or, or both, or..

5        BY MR. BROWN:  Absolutely Your Honor, yes.   The

6    Plaintiff in this case could have, but did not.  Could have

7    decided I am not going to file a Worker's Compensation

8    claim, I am going to file a claim with negligence, intent,

9    everything I want to put it in, and we will just go through

10   the Circuit Court.  They didn't choose to do that and that

11   choice has a consequence.

12       BY THE COURT:  Now, and then I will leave it alone and

13   let Mr. Buckel argue about the same views.  Was, is your

14   position another argument, another position they could have

15   done is a file a Worker's Comp. claim, but on the

16   intentional aspect of it?  And the Worker's Compensation

17   Commission could make decisions based on the intentional

18   act?   Or..

19       BY MR. BROWN:  Absolutely.

20       BY THE COURT:  Okay.

21       BY MR. BROWN:  Absolutely.

22       BY THE COURT:  And has that happened?   Or well, we

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1  won't get into that too much.  So, you have from your

2  argument you have choices.  Plaintiff could forego Comp.

3  altogether, file their civil action, or file a Comp. claim,

4  but assert the intentional nature of their claim and as the

5  Worker's Comp. would make a determination, I guess, what I

6  am just curious about, because it has been a long time since

7  I dealt with Worker's Comp., is there a different award

8  standard..if a Worker's Comp. Commission considers an

9  intentional claim, do they award the same traditional

10 amounts, or is it going to another page?  Do you understand

11 what I am saying?

12      BY MR. BROWN:  I do, but I am..

13      BY THE COURT:  I, I am not familiar with that aspect of

14 Worker's Comp., I guess is what I am saying.

15      BY MR. BROWN:  Right, and, and they can, Your Honor.  I

16 mean that is the, this issue hasn't arisen under Maryland

17 State Courts, but that is the *Tynes* and the *Parker* cases we

18 have cited, that are federal suits, where the, what the

19 Plaintiff..let's go back to the statute.  It says Worker's

20 Comp. or, there are two aspects to it.  Let me back up.

21      It says Worker's Comp. or civil, and in my view the

22 Worker's Comp. Commission can award damages for intentional

1  misconduct.    They can.

2        Secondly, even if Mr. Buckel stands up and says I

3  disagree, Worker's Comp. can't award intentional damages,

4  that's part of the calculus you should enter into when you

5  read the statute and say should I go to Worker's Comp. or

6  file a civil lawsuit.  That's a perfectly reasonable

7  decision to make, so even if I am wrong about that, and I

8  don't think I am, I think the Worker's Comp. Commission can

9  award intentional damages and you can bring it in their

10  cases that say you waive it if you don't, even, even if you

11  couldn't, that's a decision the Plaintiff has to make and

12  that's why you hire a lawyer.   The lawyer should say if we

13  go to the Worker's Comp. Commission, we can't get

14  intentional damages, so what you might want to do is not go

15  through the quick and easy process, file a civil claim and

16  get your intentional damages there.   And, and the

17  Plaintiffs had that choice, and the choice is laid out in 9-

18  509(d), which says you can do Worker's Comp. and all of its

19  damages or relief that you can get, or you can do civil

20  suit.  It doesn't say and.   It doesn't say you can break

21  them up.  It doesn't say file two suits.

22        This, the whole Worker's Compensation statute is to

1   give you one streamline option to get a particular relief.

2   If you don't want that relief, that's over and above regular

3   civil suits, if you don't want that relief because you are

4   willing to go through the civil system and all of its

5   discovery and issues that arise with that and you know, it

6   takes longer, that's the choice you can make, and if

7   intentional damages are important enough for you to do that,

8   then you should file a civil suit, and the legislature gave

9   you an option to do it.

10      BY THE COURT:  Okay.

11      BY MR. BROWN:  Thank you, Your Honor.

12      BY THE COURT:  Gentlemen, your views or responses,

13   please?

14      BY MR. BEEMAN:  Thank you, Your Honor.  May I please

15   the Court.  Your Honor, Mr. Brown has indicated three,

16   three arguments why he believes the deliberate intent

17   exception does not apply.  I am going to take them in the

18   inverse order of how he has addressed them and I will start

19   initially with the argument that none of the Plaintiff's

20   qualify.

21      With regard quickly to Mr. Nickel's father, umm, it is

22   suggested through Mr. Brown's argument that as a Plaintiff,

21

1   we don't need discovery from him because he's a Plaintiff.

2   That negates the entire purpose and the entire reasoning

3   behind Use Plaintiffs as required under the Maryland

4   Worker's, or under the Maryland wrongful death statute.

5   Use Plaintiff's are required to be filed if they may have a

6   potential claim and they are not represented by the party

7   bringing the claim.  It is in order to prevent two separate

8   parties from bringing the same type of action and..

9        BY THE COURT:  Counsel, help me with this.  Is there a

10   particular rule provision that refers to or statutory Use

11   Plaintiff's, so that I can address it, I can take a look at

12   that?

13        BY MR. BEEMAN:  There is, Your Honor.  And it falls,

14   it falls within the, it falls within the wrongful death, or

15   the wrongful death statute, among the Court's and Judicial

16   Proceedings.

17        BY THE COURT:  It is within the statute?

18        BY MR. BEEMAN:  Yes, it is.

19        BY THE COURT:  Okay, that's fine.  I will find it.

20        BY MR. BEEMAN:  Yes, Your Honor.

21        BY THE COURT:  You don't have to take your time, okay.

22   In the wrongful death statute.   Go ahead.

1    BY MR. BEEMAN:  And so Your Honor, Mr. Nickel is not a

2    represented party.  He is not represented by us and very

3    candidly, he and Ms. Beeman's views don't align.   They

4    don't see this the same way and it would be unethical for us

5    to represent Mr. Nickel as well.   Mr. Nickel, at this point

6    in time, has not obtained counsel and up to this point, he

7    is in no way participated in this litigation.  He has

8    received notices.  He is not here today, Your Honor.

9        So to suggest that we, the party bringing this action

10   on behalf of the Use Plaintiff, that we are statutorily

11   required to represent, that we have that information

12   available to us, is just patently false.  We don't have that

13   available to us.  The nature of the wrongful death statute

14   requires us to bring him along, and that's the reason that

15   he is included as a Use Plaintiff, is because we are

16   obligated to protect his potential rights by bringing this

17   claim and affording him the opportunity.

18       Ultimately at the end of a wrongful death claim, the

19   Court makes a determination as to how any award that is

20   awarded, the Court will make a determination as to how that

21   is to be allocated among the parties, including the Use

22   Plaintiff, but as required by the wrongful death statute, he

1  is tagging along with us for lack of our approval.  We have

2  no say in that.

3      With regard to the fact that Ms. Beeman does not

4  qualify, Judge, it is just, umm, Mr. Brown has said to you

5  today we ask you to take judicial notice of the Worker's

6  Comp. and we haven't provided you anything.  Judge, when I

7  pull Mr. Brown's initial opposition, or his initial Motion

8  to Dismiss, I look at page five and I look at the footnote

9  and while he chastises us for asking the Court to take

10  judicial notice of the Worker's Compensation, he very

11  clearly indicates this Court may take judicial notice of the

12  public record of the Estate's Worker's Compensation claim,

13  which is universally available to the public and this Court

14  on the internet.  Well, what is good for the goose is good

15  for the gander, Your Honor.  Umm, in the Worker's

16  Compensation claim, umm, the Commissioner found Ms. Beeman

17  to be a dependent of Mr. Nickel.  That finding qualifies

18  her as a dependent under the Labor and Employment Article,

19  as contemplated in the deliberate intent exception.

20      Umm, you know, to that end, Your Honor, and ultimately

21  I think a portion of Defendant's arguments here rest upon

22  they didn't plead it.  Umm, at the end of the day, Your

1   Honor, should Your Honor find that there was a failure to

2   plead something simple like Ms. Beeman is a dependent, we

3   would ask the Court for leave to amend, rather than a

4   draconian remedy like dismissing the claim in its entirety,

5   because clearly we can make those allegations, Your Honor.

6        I want to skip next to the death certificate.   The

7   Defendant, the Defendants allege that we attached the death

8   certificate.   Dr. K. (Dr. Kubiczek), I won't try to butcher

9   his name, checks the box that says accidental death, and the

10  Defendant says you have fully incorporated that, so the

11  death is accidental.   It, to me Your Honor, it is worth

12  pointing out there is a box on the, the death certificate

13  that indicates is this a work-related injury or a non-work

14  related injury.   Had the doctor checked the box that says

15  this is a non-work related injury based upon the information

16  that he was provided, would we be here arguing of course

17  this isn't a Worker's Compensation claim.   Look, the doctor

18  at W.V.U. who examined the body says it is not a work-

19  related incident.   You have to take that document in its

20  entirety and in its context.   We offer that document solely

21  for the purpose of establishing that Mr. Nickel was

22  deceased.   It is common practice, Your Honor, to attach a

1   death certificate in order to establish you know, prima

2   fascia evidence that the Decedent is, in fact, deceased.

3   It was, when I look at our complaint we referenced it in one

4   of our very basic jurisdictional arguments.   It, it

5   indicated Mr. Nickel was deceased on such and such a date,

6   see Exhibit Number Two.

7        To suggest that one finding made by a doctor who had

8   absolutely no evidence provided to him regarding the context

9   of Mr. Nickel's death, outside of his autopsy and physical

10  observation of the body, to suggest that that should be an

11  ultimate issue for this Court is preponderance.   When you

12  look within the document itself, there are numerous other

13  findings that just in fact are contradictory.   The doctor

14  additionally makes the finding that there were multiple

15  blunt-force injuries to the Decedent's head.   Umm, that

16  could, indeed, be accidental, but that could be construed in

17  any manner.   He notes that the interval between the onset

18  and the death was hours.   Very candidly Your Honor, this is

19  a doctor who is examining him post-mortem, who has no

20  benefit of any, you know, situational context of this,

21  outside of the fact that there is a person who is on the

22  table in front of him that he is examining.   To, to bar a

26

1    claim in entirety, based upon the fact that that doctor says

2    it is an accidental death, is preponderance.  It doesn't,

3    it doesn't track.

4         And to the heart of Defendant's argument, Your Honor,

5    the..

6         BY THE COURT:  Let me just..

7         BY MR. BEEMAN:  Please.

8         BY THE COURT:  ..one quick question on this last point

9    of the doctor's report or autopsy, or whatever it might be,

10   was attached as part of your complaint or did I

11   misunderstand that?

12        BY MR. BEEMAN:  And correct, Your Honor.  It wasn't

13   even the umm, it wasn't even the report.  It was simply and

14   solely the death certificate.

15        BY THE COURT:  I see.

16        BY MR. BEEMAN:  Not a report.

17        BY THE COURT:  That was, that was attached to your

18   complaint based upon the allegations that the young man had

19   lost his life?  I guess what I am trying to get to is what,

20   what was the rational for attaching the doctor's autopsy

21   report, which then creates issues that you are debating

22   about now?

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1        BY MR. BEEMAN:  Sure, and Your Honor, just to be clear.

2        BY THE COURT:  Sure.

3        BY MR. BEEMAN:  It was the death certificate, as

4   opposed to an autopsy report.

5        BY THE COURT:  All right.

6        BY MR. BEEMAN:  And the death certificate was, is a

7   legally binding document that establishes Mr. Nickel's

8   death.  It was, it was offered in support of the claim that

9   in fact, Mr. Nickel was deceased.

10       BY THE COURT:  Okay.  Thank you.

11       BY MR. BEEMAN:  Certainly.

12       BY THE COURT:  And you were going on to the next part

13  of..

14       BY MR. BEEMAN:  Thank you, Your Honor.  Yes.   The, the

15  heart of the argument here that we get to is whether or not

16  the Worker's Comp. provides exclusivity.   And there is

17  really, you know, two facets to that.

18       The first argument is whether or not the deliberate

19  intent exception applies, and the second argument that Mr.

20  Brown raised was umm, that it is an either/or proposition.

21  To that, Your Honor, we would pause it to the Court that in

22  general practice, it is not an either/or, and there are

1  several very practical reasons for why it is not an

2  either/or proposition.

3       Umm, in fact, there has been no claim made, aside from

4  the claims that Mr. Brown has made, that the Estate made a

5  recovery.  There is not a, a piece of evidence available,

6  either in the complaint or in any of the record before the

7  Court that the Estate has made any recovery by the Worker's

8  Compensation Commission, and that is important, Your Honor.

9  In fact, what has happened is Ms. Beeman, as a surviving

10 dependent, did in fact receive a death benefit on behalf of

11 the Worker's Comp. Commission by Mr., or on behalf of Mr.

12 Nickel's death.  That award that she received as a death

13 benefit was payable to her as the surviving mother.  The

14 Estate has made no claim, has made no recovery under the

15 Worker's Compensation Commission.

16      Separately, Your Honor, the death benefit that is

17 payable to a surviving mother is a fixed sum that is

18 intended as a no-fault based death benefit.  It does not

19 include any of the myriad claims for damages that can be

20 brought within the Circuit Court.  It doesn't include pain

21 and suffering, it doesn't include the Estate's loss of

22 consortium, it doesn't include a loss (inaudible word), it

1    doesn't include loss of potential future earnings.

2        All of those tort-based damages that are available

3    within the Circuit Court to the Estate and to surviving

4    dependents are not afforded within the Worker's Compensation

5    System.

6        Mr. Brown has classified it as the quick and easy

7    route.  Judge, if Ms. Beeman found herself in a position

8    where her son, who resided with her, who provided care for

9    her, who was a substantial part of her support and income,

10   much less her life, umm, you know, was suddenly ripped away

11   from her.  His support that he had provided to her was

12   equally ripped away from her.  It is easy for Mr. Brown to

13   say she could have elected either one.  Right?  It is easy

14   for him to say that, but when Ms. Beeman was faced with that

15   situation, you know, her support system that she had that

16   paid her bills, that allowed her to live in her house, that

17   allowed her to, you know, survive day-to-day was ripped away

18   from her and yes, she did make a claim under the Worker's

19   Compensation System for death benefits.  To preclude any

20   other recovery on behalf of the Estate, and on behalf of the

21   surviving dependents, excuse me, based upon that decision

22   that she made to find whatever support she was able to isn't

1  what was intended by the legislature, Your Honor.

2      The legislature has looked specifically at this and

3  they have enacted the provisions of the deliberate intent

4  statute, and within that they have provided an avenue for

5  claims of intentional harm or intent to kill, to be

6  exceptions from the Worker's Compensation System.  We have

7  made two allegations that I think are important for the

8  Court within our, within our complaint.

9      At paragraph thirty-nine, we, we allege that Defendant,

10  through their agents or representatives, employees, umm,

11  intentionally withheld or delayed treatment to Mr. Nickel,

12  and that that was a cause of his death.

13      We further alleged at paragraph sixty-one, that..sorry,

14  Your Honor.  Court's indulgence, one moment. (Pause)  I'm

15  sorry, Your Honor, I said sixty-one, I apologize.  At

16  paragraph sixty-eight, we…

17      BY THE COURT:  Sixty-eight?

18      BY MR. BEEMAN: Yes, Your Honor.  Sixty-eight.  Yes,

19  Your Honor.  We have alleged Defendant, Allegany Scrap,

20  intentionally subjected its workers to conditions known to

21  cause injury because risk of injury was a regular part of

22  employment for Defendant, Allegany Scrap.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1    In reviewing the Motion to Dismiss, Your Honor, Your

2    Honor is well aware of the standard.  Those, those

3    pleadings that are pled within our complaint are resolved in

4    the light most favorable to the Plaintiff.  We have alleged

5    two theories of intentional harm to Mr. Nickel, and those

6    are sufficient Your Honor, those are well pled and they are

7    sufficient to meet the deliberate intent exception.

8    While Mr. Brown indicates that we don't have a factual

9    basis for, you know, I think he basically said you know,

10   why, why did they intentionally?  We didn't allege why they

11   intentionally harmed him, we didn't allege the benefit that

12   they would gain from intentionally harming him.  Very

13   candidly Your Honor, those are facts that without being a

14   mind reader, we don't have.  We, we can't put ourselves

15   into the position of Allegany Scrap employees, Allegany

16   Scrap managers, we can't put ourself into that position to

17   be able to know the whys and the benefits, but what we have

18   alleged is that we have alleged that they, Allegany Scrap,

19   intentionally subjected its workers to conditions known to

20   cause injury, beyond risk of injury, and that was a regular

21   part of employment, and we have alleged that there was an

22   intentional delay or an intentional withholding of

1    treatment.

2        Now, Your Honor, we could have, we could have gone

3    further and supposed that the umm, the intentional

4    withholding of treatment or delay in treatment was so that

5    they could move Mr. Nickel's body to a position that was

6    more favorable.  Ultimately that's what we think the facts

7    are going to bear here.   We could have alleged something

8    like that, but we don't have that information, Your Honor.

9    At this point in time we represent Ms. Beeman who only for a

10   freedom of information act and a public information request

11   to O.S.H.A., only through that was she able to garner the

12   little bit of information that she has, that she does have.

13       So, to say that we, that our pleadings, that our

14   pleadings fail to meet the standards because they lack the

15   motive or they lack the benefit, is solely based, Your

16   Honor, on the limited information that is available to a

17   surviving mother of her child's death.

18       I just briefly Your Honor, I don't want to take up too

19   much of the Court's time, but I, I do want to touch briefly

20   on the point Mr. Brown made with regard to the legislature

21   and 2024 bills that came through in this past legislative

22   session and he argues to the Court in his, in his reply and

33

1   he argued to the Court today that essentially the general

2   assembly thought about fixing this, thought about changing

3   this and they didn't, and I think very frankly that's a bit

4   of a mischaracterization in that it doesn't represent the

5   entirety of the situation.

6       There was in fact Senate Bill 570, or 750, that was

7   introduced during the 2024 legislative session.  It was

8   introduced.   It went through a first reading, and it went

9   through committee, and it went no further.   The committee

10  did not take legislative action, or did not take action on

11  it, they didn't approve it, make a recommendation to pass

12  it, and they didn't deny it.   It was read through committee

13  and the bill essentially died there.

14      What we can't do in this instance is we can't infer

15  that the legislature as a whole, that they intended to keep

16  this language based upon the fact that the committee failed

17  to pass this bill out.   There could be any number of

18  reasons why the committee failed to pass the bill.  This

19  legislative session, the Senate introduced twelve hundred

20  bills and only three to four hundred of those actually made

21  it through committee.   Almost eight hundred of them died in

22  committee.

34

1    Ultimately, while Mr. Brown argues that the issue

2  before the legislature was solely that and/or, it was

3  something that was brought before the legislature, but it

4  was among an entire host of other changes, comprehensive

5  changes to the Labor and Employment Article, and at this

6  point we can't, we can't speak to what part of that bill was

7  unfavorable to the committee.   That, that change that we

8  are referencing here is just one among, you know, one among

9  a dozen changes that were proposed, so to suggest that the

10  Court can infer the legislature clearly has spoken on this

11  issue.   Based upon that I believe, is mischaracterizing it.

12    Your Honor, we believe that at the end of the day our

13  pleadings are sufficient to establish the deliberate intent

14  exception.   We believe that Ms. Beeman certainly qualifies

15  as a dependent, as contemplated under the deliberate intent

16  statute, and we don't believe that the death certificate

17  issue, it is a red herring here Judge.   It is being thrown

18  out as, as just another effort..we don't believe it is

19  dispositive.   It shouldn't resolve an ultimate issue like

20  this for the Court, and we believe that we have pled

21  sufficiently.

22    Should the Court determine that our pleadings had been

1    insufficient, we would ask the Court for leave to amend and

2    to resolve those issues.  I don't believe that there is

3    anything that the Defendants have raised today that can't be

4    cured through amending our pleadings, and so for those

5    reasons, we would ask the Court to deny Defendant's Motion

6    to Dismiss, or in the alternative, to grant Plaintiff's

7    leave to amend their complaint.   Thank you.

8        BY THE COURT:  Thank you, Mr. Beeman.  Just give me a

9    second.   I might have a question or two I might need to ask

10   you.

11       BY MR. BEEMAN:  Certainly.

12       BY THE COURT:  So, umm, focusing on the, I will call it

13   the jurisdictional issue, the statute, whatever.   So, one

14   of the arguments made by the Defendant in support of the

15   exclusivity thing, is to look at the statute and see the

16   word or.   I don't have the statute in front of me, but you

17   all are more familiar with it more so than I and the

18   argument is that there is a word there, making it one or the

19   other.  How do you respond to that?  Forget about what they

20   did or did not do in 2024 session, but the argument seems to

21   be if you look at the statute, the word is or.  It is one or

22   the other, not both.  Now, it doesn't say that, but how do

1   you work around the issue of the or in the statute?

2       BY MR. BEEMAN:  Sure.  Your Honor, we, we agree that

3   the general principle of statutory construction is that

4   words are disjunctive, but in this instance, in practice, it

5   hasn't been disjunctive.   The deliberate intent statute has

6   been, has been established within Maryland law for, for

7   dozens of years at this point, and when you look at the case

8   law that has been established, there is myriad cases dealing

9   with deliberate intent to all different avenues.   There is

10  not a single Maryland case, outside of *Sterry*, that stands

11  for the proposition that it is a disjunctive or.    And I

12  don't believe that *Sterry* stands for that proposition, Your

13  Honor.

14      The *Sterry* case is a case that stands on the

15  proposition to distinguish a, an underlying accidental

16  injury versus an aggravating intentional injury, and we

17  cited it for that purpose, Your Honor.   There is, in this

18  instance there is an underlying injury.   We don't know

19  whether it was intentional or whether it was accidental, but

20  in this instance, there is an aggravating injury that we

21  certainly claim was intentional.   The withholding and delay

22  of care was the aggravating circumstance that led to Mr.

1   Nickel's death and remember Judge, in this instance, the

2   pleadings, the four corners of the complaint are to be taken

3   in the light most favorable, in all inferences resolved in

4   favor of the Plaintiff.   So, the *Sterry* case stands for

5   that proposition, Your Honor.

6       In, in the end of a paragraph as there is, as the Court

7   is discussing another case, the *Young* case, they do make the

8   comment and you know, I will concede that Mr. Brown has

9   correctly quoted it within his brief, they do make the

10  comment that at his option he could elect A or B, but within

11  the factual basis and the factual proceeding of that case,

12  Your Honor, nowhere is it established that the Court is

13  dealing with this issue of, you know, Mr. Sterry made a

14  claim within the Worker's Compensation Commission and now he

15  is making this deliberate intent claim.   Nowhere within the

16  background is that the issue of this case.   They mention

17  it, and that's why I classify it as "dicta", Your Honor.   It

18  is mentioned, it is thrown out, but it is not a holding of

19  the case because it is not what the Court was determining

20  there, and we all understand, you know, the West headnotes

21  and the Lexus topics are not binding in any way, but it is

22  curious, they generally get it right, Judge.   That's not

38

1    listed as a holding of the case.  It is not even mentioned

2    in those headnotes or those, those, you know, keynote

3    summaries, and while I understand completely that is not

4    binding on the Court, it certainly suggests when you read

5    the case in its entirety and its context, that case isn't

6    about the proposition of whether the exclusivity provision

7    is disjunctive.  They make that finding in "dicta", but it

8    is not a holding, and while Mr. Brown cites the other

9    federal cases, I believe one, *Tynes* was a U.S. District of

10   Maryland, and then there was a, a Foreign U.S. District

11   Court, as well, unless I am misremembering.  It was two

12   federal courts.  They make that finding that the order is

13   disjunctive, but within the entire myriad of case law that

14   has been established on deliberate intent, there is not a

15   case anywhere that points to the proposition that that or

16   is, in fact, disjunctive.

17        BY THE COURT:  You, you have referenced the myriad of

18   cases and *Sperry*, your view is that it is "dicta" and not a

19   holding.  Is there any Appellate decisions in the State of

20   Maryland that has dealt directly with the question being

21   posed in this issue today?

22        BY MR. BEEMAN:  Not that I am aware of, Your Honor.

1    BY THE COURT:  Okay.   Nor am I, I just want to make

2   sure that there isn't some case out there that I am missing.

3   There is such a case, is that a fair statement?

4    BY MR. BEEMAN:  Not that I am aware of, within Maryland

5   case law, Your Honor.

6    BY THE COURT:   And you, this is my, I didn't get down

7   the exact words, verbiage you said, but you indicated that

8   even when we are talking about the statute or the word or,

9   the word or might appear in the statute.  It does, we know

10  that, but that doesn't reflect the standard process.   There

11  is other cases, that, so I can, that's, those weren't the

12  words, the bulk of the case..get me to that.  What do you

13  mean by that?   What else out there, what else is out there

14  that should be looked at from your point of view that would

15  say the word or shouldn't be interpreted in the typical

16  disjunctive fashion?  What should you be looking for, or

17  what should I be looking for?

18    BY MR. BEEMAN:  Your Honor, I, I, yes.  I am not aware

19  of, I am not aware of Appellate cases that stand for that

20  proposition.

21    BY THE COURT:  Okay, okay.

22    BY MR. BEEMAN:  I, you know.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1    BY THE COURT:  That's okay.

2    BY MR. BEEMAN:  When, and I apologize, when I mentioned

3   that, you know, I, very candidly, you know, I have had

4   numerous incidents where, where this exact situation has

5   occurred.

6    BY THE COURT:  All right.

7    BY MR. BEEMAN:  The Worker's Compensation claim is

8   filed, and then a wrongful death case under the deliberate

9   intent exception proceeds, based upon the cases moving

10  concurrently with one another, but certainly I don't, I

11  don't have an Appellate Court decision that stands for that

12  proposition.

13    BY THE COURT:  And the final question I have, just

14  generally on this subject is, and again, I wrote my notes as

15  quickly as I could and I may have misunderstood, but you,

16  you, on that same issue of the application of statute, I

17  think, indicated and described that Ms. Beeman did make a

18  claim in the Worker's Compensation with the Worker's

19  Compensation Commission, and some award was given as, as

20  being the mother of the Decedent.  Okay, and if I, was I

21  following correctly that, that there should be then a

22  distinction made that this was a claim made by Ms. Beeman in

1    her capacity as the mother of the child, or sorry, of the

2    young man, not the Estate.   So is your argument that when

3    you are trying to, when I am asked to apply this statute,

4    there should be a distinction between a claim made and an

5    award made as a result of this occurrence to the young man's

6    mother, and distinguished from a claim being made by the

7    Estate in this case, and also it does seem to me, well, just

8    looking at your title, Linda S. Beeman, surviving mother,

9    and then there is personal representative, but is that, is

10   that a distinction that you think is drawn by the statute,

11   or should be drawn by the statute to have claim made by mom,

12   mother, but then you have the claim made by the estate.   Is

13   a distinction to be drawn if that eliminates the word or?

14        BY MR. BEEMAN:  I think that, I think it is, Your

15   Honor..

16        BY THE COURT:  Okay.

17        BY MR. BEEMAN:  ..and just, just to further clarify,

18   Ms. Beeman's award among the Worker's Compensation

19   Commission was, was not because she was a surviving mother,

20   but it was because she was adjudicated as a surviving

21   dependent..

22        BY THE COURT:  Surviving dependent.

1    BY MR. BEEMAN:  ..and so the surviving dependents under

2  the Worker's Compensation System are entitled to..

3    BY THE COURT:  Okay.

4    BY MR. BEEMAN:  ..a surviving spouse or a surviving

5  dependent, are entitled to a death benefit.

6    BY THE COURT:  And just on that point, and then I will

7  leave it alone and go, but maybe, I haven't read word for

8  word through your complaint.  It is really long.  Is there

9  a paragraph or paragraphs in the complaint that reference or

10  describe the claim made by your client in the Worker's

11  Compensation?  My job is to look at the four corners of the

12  complaint, not to go beyond it, but is there particular

13  provisions that I should look to, in paragraph form, that

14  describe the involvement of the claim in Worker's Comp.?

15    BY MR. BEEMAN:  There is not, Your Honor.

16    BY THE COURT:  Okay.  Okay.  So there is no reference

17  made?

18    BY MR. BEEMAN:  I think that is correct.

19    BY THE COURT:  Okay, all right.  Those were the

20  questions that I had.  Anything else you wanted to add?

21    BY MR. BEEMAN:  No, Your Honor.

22    BY THE COURT:  Okay, counsel, if you would, what do you

1   have there?

2       (THE COURT IS TALKING TO THE CLERK)

3       BY THE COURT:  Okay, so I suppose one question just

4   occurs to me to ask, because the last question I asked is,

5   is this Motion to Dismiss, is there anything in the

6   complaint that references or establishes that a claim was

7   made by Mrs. Beeman to the Worker's Compensation Commission?

8   How do, I mean we know that, because you are telling me

9   that, but my job in looking at the complaint, is there

10  anything in the complaint that would identify that and then

11  I go to the next step to apply the statute, where, what

12  should I look to in the complaint itself that identifies

13  this prior act?

14      BY MR. BROWN:  Well..

15      BY THE COURT:  Counsel, I just noticed you were

16  standing.

17      BY MR. BROWN:  I am not sure who you were directing the

18  question to.

19      BY THE COURT:  Pardon?

20      BY MR. BROWN:  I am not sure who you directing that

21  question to.

22      BY THE COURT:  The guy with the black suit ohn.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

44

1        BY MR. BROWN:  Okay.

2        BY THE COURT:  No, no, I will get back to you, but he

3   was standing.   That seems to be something that I should ask

4   you.  Go ahead.

5        BY MR. BROWN:  I, we, there is nothing in the one

6   hundred and forty-three paragraphs, and that's why we asked

7   you to take judicial notice of that issue, and there is,

8   there is support for that.  In the footnote to our motion we

9   asked you to take judicial notice of the Worker's

10  Compensation award, but that issue cuts both ways because if

11  you don't take judicial notice of the Worker's Compensation

12  award to Ms. Beeman, then..sorry, to the Plaintiff, the

13  mother, I am blanking on her name, umm, then you also can't

14  take judicial notice that she allegedly has been adjudicated

15  a dependent, and in the one hundred and forty-three pages of

16  that complaint, there is not a single allegation that she is

17  a dependent, not anywhere, so if I think you should take

18  judicial notice of the Worker's Compensation award, because

19  it shows that Ms. Beeman is not entitled to umm, to

20  recovery, but I think there is a more basic issue that I

21  want to respond to, with respect to the death certificate.

22       You asked the right question.  You, you said you

1  decided to attach the death certificate to your complaint,

2  right, and you said multiple times and Mr. Beeman said

3  multiple times that the, you are to look to the four corners

4  of the complaint and when the Plaintiff started with their

5  complaint, they started with a blank piece of paper.  They

6  could have attached anything or not attached anything they

7  wanted to the complaint, and when they, they alleged that

8  Mr. Nickel is the Decedent in the complaint.   That

9  allegation has to be considered as true for the purposes of

10  this motion.   They didn't need the death certificate, but

11  they chose to attach it and that choice has consequences and

12  the consequences are spelled out in the rules.

13      Maryland Rule 2-303(b) says if you attach a document to

14  a complaint, it is part of the complaint allegations for all

15  purposes.   Then in their opposition, they have agreed, it

16  is part of the complaint for all purposes.   So you asked

17  the right question when you said you attached that death

18  certificate and I wrote down when Mr. Beeman was speaking.

19  He said it is a legally binding document establishing Mr.

20  Nickel's death and he also said I don't know if it is, he

21  said I don't know if it is accidental or intentional.   The

22  death certificate tells you it is accidental.  It is a

1   complaint allegation.

2       Mr. Beeman stood up and did what I told you Mr. Buckel

3   was going to do, but Mr. Beeman did it.  He stood up and

4   made arguments about whether you should or should not rely

5   on the death certificate as evidence in proving a claim.

6   That's not the purpose of this motion.   The purpose of this

7   motion is to decide what are the allegations in the four

8   corners of the complaint, and do those allegations in the

9   four corners of the complaint state a claim and the answer

10  is no, because regardless of what discovery might come out

11  on that death certificate, if this complaint were to proceed

12  to discovery, it doesn't matter because the complaint is

13  deficient, we should never get to discovery because the

14  complaint alleges the death was accidental.

15      Mr. Beeman said well, it was hours between the incident

16  and the death and it was this and, that's argument for

17  whether the death certificate is correct.  You don't have to

18  decide if the death certificate is correct, it is an

19  allegation in the complaint.   They chose to allege,

20  starting with a blank piece of paper, that this death was

21  accidental, and Mr. Beeman just said in a representation to

22  the Court, we don't know if it was intentional or

1    accidental.   And, but they said in the complaint that it

2    was accidental, so for your purposes in deciding a Motion to

3    Dismiss, the deliberate intent exception cannot apply.

4    You cannot apply as a matter of law the deliberate intent

5    exception to a complaint which alleges the death was

6    accidental.   They didn't have to put it in, but they chose

7    to, and they did.

8         Secondly, with respect to the statute, and you spent a

9    lot of time on it, here's what you know based on the lawyer

10   argument you have heard.   You know the statute says you

11   have a disjunctive choice.   You can do either or.   You can

12   file a Worker's Compensation claim or file a civil lawsuit.

13   We know that.   Mr. Beeman said, and he's right, rules of

14   statutory construction require that word to be considered in

15   the disjunctive.   And regardless of what happened with the

16   legislature, that statute is the best evidence you have of

17   the legislature's intent, what they said in the statute.

18   The fact that they could have chosen to change it and they

19   decided not to, for whatever reason, helps us, but you don't

20   have to worry yourself with that because the statute says

21   what it says.   You have the legislature's intent.   If it

22   was important enough to change, if it was an important issue

48

1   and the legislature really wanted to do it they could have,

2   and they got halfway and they chose not to, but it doesn't

3   matter because you have their intent.   It is stated in 9-

4   509(d), of the Labor and Employment Article.   What it says

5   is you have got a choice, one or the other.   Mr. Beeman

6   doesn't have any legal arguments..Your Honor, the law

7   applies here.   I can't believe I have to say that, but the

8   law applies here.

9       What Ms. Beeman chose to do or not to do is frankly

10  irrelevant.   She knows how to get a lawyer, she's got two

11  sitting right here, and her choice has a consequence, and

12  the, why does it have a consequence?   Because the

13  legislature decided it should have a consequence when they

14  enacted a statute.   They didn't have to enact a statute,

15  they could have said you can do this and this, because

16  sometimes people are in a bad spot and they have to make

17  choices, but I just sat here this morning and listened to

18  you ask a criminal defendant over a dozen questions about

19  her guilty plea and the reason that you did that was because

20  choices have consequences.   You wanted to make sure she was

21  making a good choice because when adults make choices, those

22  choices have consequences, and when the legislature has

1    said, when you file a Worker's Compensation claim, that

2    choice has a consequence.  You can't file a civil suit,

3    unless you get under the deliberate intent exception, and it

4    just doesn't apply here because the complaint says the death

5    was accidental.

6        Now, Mr. Beeman has said well, that's not how it

7    happens in practice, so let's break that down.  What is he

8    asking you to do?  He's asking you to ignore the statute and

9    ignore *Sterry*, which is the one Maryland case on this issue,

10   and follow the lawyers who aren't following the statute,

11   because no one ever objects and I am apparently the first

12   person who has ever raised this issue after *Sterry*.

13       So, what he is saying is don't follow the law, don't

14   follow the statute, just join the herd of all the people who

15   do it this way.  That's, that is not what you are supposed

16   to do candidly, Your Honor, you are supposed to enforce the

17   statute.  And if that really were the case, I heard the

18   word myriad multiple times, and in fact, you repeated it.

19   There should be a myriad of cases that show what Mr. Beeman

20   is talking about and he just told you there are none, zero,

21   none.  There is no Appellate case in Maryland that says you

22   can do both, none.  And he is asking you to blaze a trail

1  and say I am not going, I am going to ignore the statute and

2  I am going to follow the herd of people who don't read the

3  statute.

4      With respect to notice pleadings, I would ask you to

5  again look at *Johnson*, because *Johnson* is very clear.

6  *Johnson* says with respect to setting the death certificate

7  aside, this is my issue number two, and I apologize.   We

8  keep renumbering the issues for you, but the issue I am

9  getting at is even if the death certificate hadn't been

10  attached, is there deliberate intent here and the answer is

11  no because if you look at the four corners of the complaint,

12  which we all agree you have to look at, there is no

13  allegation that says the employees deliberately intended to

14  kill Mr. Nickel by delaying calling 911.   It is not in

15  there.   And *Johnson* says it has to be in there because

16  *Johnson* makes a distinction.   *Johnson* is the electrocution

17  case that I went through before and I won't repeat.   *Johnson*

18  says you can't just say they intended to delay calling 911,

19  or they intended to leave these electrical wires out.   What

20  you have to say is they intended to delay calling 911 to

21  kill someone, or they intended to leave the electrical wires

22  out to kill someone, that's what you have to say and they

1  haven't said it, so as a matter of law the complaint is

2  defective, even if the death certificate hadn't been

3  attached.

4      Now, you have got a lot of off the record evidence

5  about who did what at the Worker's Compensation Commission,

6  but what Mr. Beeman has just told you is the mom got a

7  recovery and since the mom got a recovery, she has an

8  either/or choice, she is out.  That's what the statute says,

9  and he has admitted they don't have any evidence to support

10 the father, and the, the allegations in the complaint are

11 Ms. Beeman was relaying on Mr. Nickel, Mr. Nickel supported

12 his mom, and they are asking you to find so that the

13 deliberate intent exception applies, that the father was a

14 dependent of Mr. Nickel's, who is so close, according to his

15 mom, but the mom has no idea if Mr. Nickel, who was

16 supporting her, was also supporting dad.  You don't have to

17 do that.  What you can say and what you should say is they

18 haven't alleged anywhere in the complaint that either one of

19 them is a dependent, and so the complaint is defective.

20 They don't meet the statute.  Even if the worker, even if

21 the death certificate hadn't been attached, and even if the

22 deliberate intent exception were to apply, they haven't

1    alleged they meet the statute, because neither is a

2    dependent.    And the Estate doesn't meet any of the three

3    categories.    There are three categories and the Estate is

4    not any one of the three.

5        So for all those reasons, Your Honor, unless you have

6    any questions, I am finished my argument.

7        BY THE COURT:  One quick question and then I really do

8    have to move on because I have a whole other section of this

9    case to deal with, and then another case.  Umm, is there

10    any distinction from your position that one of the

11    Plaintiffs in this case is the Estate of the gentleman that

12    passed away, albeit his mom is a personal representative?

13    Is there any distinction to be drawn that by all accounts,

14    she made a claim with the Worker's Compensation Commission

15    and received some award for herself.  Does the or part of

16    the statute affect the Estate from proceeding in this?  Or

17    is it, I think the argument is, I think perhaps the argument

18    is it is distinct from Mrs. Beeman.

19        BY MR. BROWN:  Right.  Well..

20        BY THE COURT:  What is your thought about that?

21        BY MR. BROWN:  My thought is this, that it is not.

22    Umm, because there is no statutory construct.    If you, I

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

53

1    would encourage you to look at and I know you are pressed

2    for time, but to look at 9-509, there is no box you can put

3    the Estate in to, to make that claim.    Umm, it applies to,

4    there are, okay.    Wrongful death claims in Worker's Comp.

5    are permitted, or the deliberate intent exception, sorry, is

6    permitted for three categories of people.    A surviving

7    spouse, there is none here; a child, none here; or a

8    dependent of the covered employee.    So, the Estate doesn't

9    qualify for the deliberate intent exception because it is

10   not a surviving spouse, a child or a dependent of the

11   covered employee.    That section, 9-509(d)(2), so even if

12   there is a distinction to be made, the Estate can never

13   recover under the deliberate intent section and the reason

14   we didn't make that argument in the brief is because it is

15   our understanding that recovered under the Worker's Comp.

16   and not the mother.

17        BY THE COURT:  Thank you.

18        BY MR. BROWN:  Thank you, Your Honor.

19        BY THE COURT:  Okay.  Thank you.

20        BY MR. BROWN:  Thank Your Honor.

21        BY THE COURT:  Briefly, because..

22        BY MR. BEEMAN:   May I have about thirty seconds, Your

1    Honor.

2        BY THE COURT:  The floor is yours.  Just hit it

3    briefly, please.

4        BY UNKNOWN COUNSEL: Put him on the timer, Your Honor.

5        BY THE COURT:  Sorry?  Again?

6        BY UKNOWN COUNSEL:  Put him on the timer.  He said

7    thirty seconds.

8        BY THE COURT:  That started about a half hour ago.

9    But, but..

10        BY MR. BROWN:  Yes.

11        BY THE COURT:  But..

12        BY MR. BEEMAN:  With regard to that, with regard to the

13    death certificate, Your Honor, I don't want the Court to

14    elevate form over substance as Mr. Brown is suggesting.  The

15    case cite is *Benjamin vs. Woodring*, 268 Md. 593.  It stands

16    for the proposition, the Trial Court in Benjamin excluded

17    the manner of death portion of the death certificate from

18    evidence based upon Maryland Code, which provided in

19    pertinent part, goes on to read the Code, and then it

20    establishes that the Trial Court interpreted the section of

21    the statute to mean despite a statutory mandate to certain

22    information incorporated into the certificate, not all

1    information contained in the death certificate qualifies as

2    facts.

3         I will leave you with that, Your Honor.

4         BY THE COURT:  All right.

5         BY MR. BROWN:  Your Honor, I haven't seen the case.  He

6    filed a lengthy opposition and now he is citing the Court a

7    case that is not in there.  He has waived the right to do

8    that, it is totally unfair to me to go on Google while I am

9    making my reply argument and then cite a case that is not

10   cited anywhere in the brief.   I, I don't have an

11   opportunity to respond to the *Benjamin* case because I

12   haven't seen it because it wasn't..we, we, this case was

13   fully briefed weeks ago.  It is totally inappropriate.

14        BY THE COURT:  Thank you, gentlemen.   I note your

15   concern and we will factor it in as I make a decision.

16   Sir?

17        BY MR. BROWN:  Your Honor, will I have an opportunity

18   to respond on the *Benjamin* case?

19        BY THE COURT:  On the case cited?

20        BY MR. BROWN:  Yes.

21        BY THE COURT:  Sure.  Do you want, I mean..do you want

22   me to keep the thing open for ten days and you each can file

56

1   whatever you want on that?

2       BY MR. BROWN:  No, I don't want a free for all, Your

3   Honor.  I will, umm..

4       BY THE COURT:  I, I don't want a free for all, I

5   respect the fact that this is a case that you didn't, wasn't

6   briefed or whatever.  If you want the opportunity to review

7   it yourself and post hearing make a submission as to what

8   you think this case says or does it have affect here, you

9   can have that opportunity.  I don't know how else to..

10      BY MR. BROWN:  Thank you.

11      BY THE COURT:  ..deal with it.  Okay?

12      BY MR. BROWN:  Thank you, Your Honor.

13      BY THE COURT:  Okay.  Anything else?

14      BY MR. BEEMAN:  No, Your Honor.

15      BY THE COURT:  All right.  My goal, gentlemen, would

16  be to have a ruling out to you in approximately fifteen

17  days.  I have some work to do to get there, so that's my

18  goal.  You will have a ruling in about fifteen days.  Okay?

19      BY MR. BROWN:  Thank you, Your Honor.

20      (THE COURT IS TALKING TO THE LAW CLERK)

21      BY THE COURT:  The Law Clerk was just reminding me

22  I have a second Motion to Dismiss to deal with.  Okay, thank

1   you very much.    Now, I do need to make an inquiry, there

2   is another totally unrelated case that due to Judge Twigg's

3   involvement in a jury, trial, I was to hear.   (Talking to

4   another person in the courtroom)  Ma'am, are you here

5   involved in another case, unrelated to this case?

6        BY THE UNKNOWN PERSON: No, Your Honor.   This would be

7   the Decedent's sister.

8        BY THE COURT:  Okay.  Apologies. (Talking to the

9   Bailiff)  Check in the hall.   There is some case about name

10  change, contested name change that was supposed to be at

11  9:30 or 10:00.   I am not seeing any players, so..

12       BY THE LAW CLERK:  It is supposed to be at 10:30, and

13  Becky Lechliter is out in the hallway.

14       BY THE COURT:  Okay, go out and verify, do I have

15  litigants here and whatever.   (To Counsel)  Okay, give me a

16  second to find out what the status of this other case is,

17  please.   Come on up.   (Pause)  (To Counsel in the other

18  case)  Ms. Lechliter, I have a second Motion to Dismiss I

19  need to deal with.  If it is similar to the first one, this

20  will keep me occupied to noon or thereafter.   So, I don't

21  want you all to remain inconveniently sitting.   I will take

22  your case, but it is going to have to be, well, you should

1  go have lunch or something because it is going to be this

2  afternoon before I get to this.

3      BY COUNSEL:  Will one o'clock be okay?

4      BY THE COURT:  Okay, why don't we, okay.  Two o'clock.

5  With my apologies.

6      And moving right along.  If you will give me a moment.

7  So this is a continuation of the case of **Beeman vs. Allegany**

8  **Scrap**.  This is the second of the Motions to Dismiss and

9  this is a Motion to Dismiss filed by the, we will call it

10  the manufacturers involving Shredder Company, LLC, etc., a

11  separate Motion to Dismiss.  We have already had the

12  parties identify their counsel.

13      So, counsel, to you.  Your Motion to Dismiss.

14      BY MR. MOELLER:  Yes, Your Honor.  Joseph Moeller, on

15  behalf of the alleged manufacturer, the Newell Defendants,

16  as they are called in the pleadings.

17      If I please the Court.  The motion here is sort of two

18  parts, one part jurisdiction and one part more on the merits

19  of the pleadings, so I will start with the jurisdiction

20  element, because that is, as the rules and Maryland Rules

21  commentary tells us, the most important part here that has

22  to be addressed really before anything else in the case is,

1  so that Your Honor isn't in the position of having litigants

2  before the Court, that the Court has no jurisdiction over.

3  That is supposed to be addressed as the very first thing.

4      So, I won't belabor the facts.   I heard Your Honor

5  this morning say that you had read the papers.  Just

6  relevant to the Manufacturing Defendants, there are about

7  five paragraphs of allegations as to how the shredder at

8  issue got from the alleged manufacturers to Allegany County,

9  Maryland, and essentially what is said is each Manufacturing

10 Defendant is alleged to have, all of them manufactured the

11 shredder, at some unspecified times, some unspecified place,

12 and then the shredder was put into operation in Allegany

13 County in 2011.  The unfortunate incident that we are here

14 occurred in 2020, about nine years later.

15      So, starting with the jurisdictional issues that arise

16 from that, the case law that is cited in the papers is clear

17 that the Plaintiff has to both allege and then if it is

18 challenged by the Defendant, has to prove to the Court that

19 jurisdiction is appropriate.

20      So, if we start with the allegations, I think the

21 opposition, I won't say that it conceded it, but the

22 opposition's position on that was that perfunctory, I think

1   was the word, perfunctory allegations of jurisdiction are

2   common practice, and while that may be permissible where you

3   have a fender-bender around the corner from the courthouse

4   and everyone involved is a member of the same county, when

5   you have a more complexed jurisdictional situation, the,

6   similar to the holding from the Reed Drug case that is cited

7   in the motion, the more complicated the facts, the more

8   factual allegations you need, and that is certainly the case

9   here where you have four different Texas companies allegedly

10  responsible for manufacturing a shredder that someday ends

11  up in Maryland and harms someone.

12       So, the allegations just say that the Manufacturing

13  Defendants manufactured it and then the shredder ended up in

14  Maryland somehow, and that's reminiscent of one of the cases

15  that is cited in the motion, which is the, if you will give

16  me just a moment here, Your Honor.. (Pause)   ..the *Lesnick*

17  *vs. Hollingsworth* case, where you have a cigarette

18  manufacturer in Massachusetts.  They sell cigarette filters

19  to a company in Kentucky.  The filters end up on cigarettes

20  that get sold in Maryland.  What the case law interpreting

21  the fourteenth amendment and the Maryland Longarm Statute

22  say is that a Defendant like that who does something in

1    another state and the product somehow, someway eventually

2    down the line ends up in Maryland, they didn't have a

3    reasonable explanation of being sued in Maryland for work

4    that they did in one state that went to another state and

5    eventually ended up in Maryland, and it is sort of a

6    reasonableness inquiry at the end of the day whether the

7    Defendant availed themselves of the state they are being

8    sued in so that they can expect to be sued there.

9        Umm, that's what the Constitution requires.   People

10   can't be dragged into the courts of other states unless they

11   have done something to put themselves there.

12       And so the allegations, which is the starting point, we

13   just aren't there, and for that reason alone it would be

14   appropriate to dismiss the complaint against all four

15   Manufacturing Defendants on jurisdictional grounds, but in

16   the alternative and in the event that the Court does find

17   that those allegations are sufficient, the Manufacturing

18   Defendants do have to preserve these additional arguments

19   and certainly their opposition, the Plaintiff's presented

20   evidence of jurisdiction.   So, if Your Honor doesn't have

21   any questions about the pleading of jurisdiction, 1 can move

22   on to the evidence.

62

1          BY THE COURT:  Go ahead, please.

2          BY MR. MOELLER:  Thank you.   So, the way the Maryland

3     Rules require this to occur and the way it is explained in

4     case law is that you have to plead yourself into

5     jurisdiction and if that is challenged by the Defendant,

6     then at the beginning of the case, before the case moves on,

7     the out-of-state Defendant is subjected to Maryland Court's

8     rulings, the Court has to, I believe the phrase is take

9     affidavits and other testimony and decide factually whether

10    the Defendant purposely availed themselves to doing business

11    in Maryland, essentially.   And this is more similar to the

12    C.S.R. Limited case that is cited in the motion, where you

13    have an Australian business that is sued in Maryland,

14    basically because their asbestos products moved through a

15    Maryland port and the question was whether they reasonably

16    should have anticipated being sued in Maryland specially

17    because it passed through the port in Baltimore and the

18    Court, the Maryland Court said no, that that wasn't

19    sufficient and in that case there was evidence and testimony

20    presented that you know, these were products of this

21    specific Defendant in Australia, here is how they traveled

22    to the Port of Baltimore, they passed through Maryland.

1  They were regularly shipping things through Maryland and

2  that manner and the Court heard that and what the Appellate

3  Court said was, the proper ruling was to dismiss because

4  that wasn't a sufficient proof of jurisdiction basically,

5  and what has been offered by the Plaintiffs as evidence of

6  jurisdiction is not sufficient under that case law.

7      We mentioned in the motion that most of it is not

8  offered with any sort of affidavit, it is not offered as

9  testimony, but even if the Court were to accept it, we have

10 a report from the Maryland Occupational Safety Agency which

11 says that the shredder company, doesn't say which shredder

12 company because they are a different corporate names here,

13 umm, designed and built a shredder.  That company,

14 whichever one they were referring to was no longer in

15 business, and the current C.E.O. of Newell Recycling

16 Equipment, LLC, previously owned whichever shredder company

17 that they were talking about.  That doesn't connect the

18 dots here.  It was Plaintiff's task to produce evidence that

19 connected the dots between wherever the shredder was

20 manufactured, which is not alleged either, in Maryland, and

21 the fact that umm, that one of these companies may have

22 designed part or all of a shredder doesn't get us from a

1   Texas Defendant purposely availing themselves in Maryland.

2   The way the Constitution requires from Maryland Courts to be

3   able to assert jurisdiction and then we have sort of a

4   historical article about the invention of this type of

5   shredder that is published in 1994, and it just talks

6   generally about how the Newell family has been heavily

7   involved in this business since the 1940's or so.

8       That is just not the sort of evidence that would be

9   required to show that each of these manufacturers, they each

10  manufactured the product at issue, they each purposely

11  availed themselves of the State of Maryland so that it would

12  be fair to sue them in Maryland instead of the place where

13  they chose to do business, which is Texas.

14      There was a suggestion in the opposition that

15  jurisdictional discovery would be appropriate.

16  Respectfully Your Honor, I don't think that is appropriate

17  because you have to allege the elements if your claim, you

18  have to plead yourself into discovery before you can get it.

19  But to the extent the Court was willing to allow any amount

20  of jurisdictional discovery, the Manufacturing Defendants

21  would ask that it be very sharply limited in number of

22  interrogatories and content and scope so that we don't have

1    an extensive burdensome discovery process happening before

2    this Court has even found that it has jurisdiction.

3        And I will note as well, two of the Manufacturing

4    Defendants, one of them Newell Recycling Equipment, LLC,

5    didn't exist until 2015, as a matter of a very judicially

6    noticeable document, a State of Texas record from the Texas

7    Secretary of State, and the shredder company, L.P., went out

8    of business and its license to do business was forfeited

9    before 2011.   So just to the extent the Court is

10   considering things beyond the pleadings, what the

11   Manufacturing Defendants have shown is that two of them

12   weren't even conceivably responsible for what they are

13   alleged to have done.

14       Before I move on to anything on the merits, does the

15   Court have any questions on the jurisdictional evidence?

16       BY THE COURT:  No, sir.

17       BY MR. MOELLER:  Thank you, Your Honor.  So I will

18   speak just briefly about the dismissals on the merits, which

19   just to be clear, are broad as a secondary argument behind

20   the jurisdictional issue and only to preserve them at this

21   stage of the case.

22       So there are three, one of I can get rid of very

1    quickly.   In counts six, twelve and eighteen, there is an

2    implied warranty claim there.   The Plaintiffs cited some

3    case law from the 1970's that while I respectfully disagree

4    with the reasoning of it, I recognize that a preliminary

5    Motion to Dismiss isn't the time to argue the merits of the

6    Maryland Supreme Court decision, so we have withdrawn that

7    argument without waiver and reserving the right to bring it

8    up later, but at this time we aren't pursuing that portion

9    of the motion.

10        So I will start with counts four, ten and sixteen, and

11   this is all spelled out in the motion divided up by section

12   but going through a complaint with this many counts, umm, it

13   is important to sort of separate the weak from the

14   (inaudible word) here, and we have claims that are not

15   properly plead and can't make it past this stage of the

16   case, no relief can be granted, even if they do, so to the

17   extent the Court keeps the claims against the Manufacturing

18   Defendants in play, these ones should be removed from the

19   case at this point to sort of simplify the proceedings and

20   avoid more burden to the Court and the parties.

21        So these ones that I am speaking on now, umm, which are

22   four, ten and sixteen, they are for a short of version of

1    design defect claim that really doesn't exist in Maryland

2    law.    It is sort of like a failure to prevent changes to

3    existing safety features is the best way I can describe it,

4    Your Honor, and that's just not consistent with what a

5    design defect claim in Maryland is.

6        A design defect claim in Maryland is about whether the

7    product at the time it left the manufacturer was in a

8    defective condition and specifically, one of the elements of

9    the claim is that it, that a condition wasn't substitively

10   changed from that change until the accident occurred.    And

11   those elements aren't pled, because what is actually pled is

12   that it wasn't in the same condition at the time of the

13   accident.    Plaintiff's plead that changes were made, that it

14   wasn't maintained properly, that safety changes may have

15   been intentionally removed.    That's not a design defect,

16   that's bad maintenance or a problem for the subsequent

17   owner.    And this is the *Phipps* case, 278 Md., at 363.

18   The problem here is that if this claim worked the way

19   Plaintiff's have pled it, then a manufacturer would be

20   forever a guarantor, that the product will always be safe in

21   all ways.    How would the manufacturer be able to prevent

22   someone from buying a Ford Focus, driving it for one hundred

1    thousand miles without changing the tires, and then blowing

2    out a tire and getting into an accident.    There is this

3    sort of perpetual safety obligation that Plaintiffs are

4    trying to impose here, and aside from just being factually

5    inconsistent with the elements of playing blackletter law

6    motion to dismiss, that's not a claim that should be

7    possible in Maryland because manufacturers, this is I

8    believe why the case law is laid out this way.

9        Manufacturers shouldn't have an obligation to prevent

10   an end user from taking off the seatbelt in the car or

11   taking off the safety on the rifle.  The manufacturer

12   doesn't have an obligation ten years down the road in this

13   case to make sure you are keeping up with your maintenance,

14   make sure you are not tampering with their product.  Case

15   law just is not designed for that, Your Honor.

16       And then the final set of claims that the Manufacturing

17   Defendants have moved on the merits for, they are contained

18   in counts six, twelve and eighteen.

19       BY THE COURT:  What was that again, counsel?

20       BY MR. MOELLER:  Six, twelve and eighteen.

21       BY THE COURT:  Fifth, twelve and eighteen?  Go ahead.

22   And thank you.

69

1      BY MR. MOELLER:   And those counts, umm, improperly, I

2  am not here to give opposing counsel a hard time, but they

3  include multiple claims, different types of warranty claims

4  in the same count, which does make the motion a little more

5  complicated, but just to be clear, I am talking now about

6  the implied warranty of fitness for a particular purpose.

7  That's contained within those counts, at least as I read

8  them.

9      And Your Honor, I am sure Your Honor has encountered it

10  before, the way that claim works is that the buyer has to

11  come to the seller and said I need this particular thing,

12  and the seller exercises some discretion and gives them a

13  product for a particular purpose, not just the general

14  purpose it is used for.  This was the *Bond* case, 96 Md.

15  App., 137.

16      You know, if you buy a faucet you are using it to run

17  water through.  That's not a particular purpose.  You need

18  something that requires the seller to exercise some

19  discretion and chose the right product for you, so if I say

20  I need a sedan that can haul my two-ton boat, that's not

21  something you usually find in a sedan.  I would be trusting

22  the seller at the car dealership to pick me the right car

70

1   and if he sold me a Prius and it couldn't tow the boat, I

2   would have an implied warranty claim against him.

3       Umm, it is not alleged at all that any of the

4   Manufacturing Defendants made any sort of promise.  There is

5   not a conclusory allegation to that affect and the

6   opposition acknowledges that and says well if we get

7   discovery, we might find a basis that somewhere along the

8   chain of sale and custody before this made it to Allegany

9   Scrap, some promise was made by one of the manufacturers.

10      That's contrary to the way the Maryland pleading rules

11  work, Your Honor.  You have to plead at least the basic

12  elements of the claim in good faith before you can plead the

13  claim and then you get discovery in order to figure out the

14  specific facts, umm, building on your good faith allegation,

15  and that's a problem throughout the complaint, Your Honor.

16  Umm, the Maryland Statute of Limitations give parties three

17  years from the date of learning of their potential claim to

18  investigate and plead their claim.  The opposition sort of

19  suggested that it was unfair because the Newell Defendants

20  are out of state to expect the Plaintiffs to properly,

21  fully, completely investigate and plead all of the elements

22  of their claims and of jurisdiction, and that's what the

1    three years are for, Your Honor, are to do that and there is

2    a multitude of ways to do that including, but not limited

3    to, suing a Defendant like Allegany Scrap, conducting

4    discovery and maybe coming up with a basis for a claim

5    against some other Defendant later, but you don't get to sue

6    the Defendant who you hope you have a claim against and then

7    use discovery to hopefully establish jurisdiction in the

8    elements of your claim.

9        So with that, if Your Honor has any other questions, I

10   would be happy to answer them, but those are generally the

11   grounds for the motion.

12       BY THE COURT:  No, none at this time.   Thank you,

13   counsel.

14       BY MR. MOELLER:  Thank you, Your Honor.

15       BY THE COURT:  And counsel?

16       BY MR. BUCKEL:  Thank you, Your Honor.   As you may

17   likely recall, I used to do the jobs, I used to represent

18   product liability manufacturers nationwide as a defense

19   attorney, prior to relocating here, and I can tell you that

20   if the Court were to adopt prior to any meaningful discovery

21   the standards that are being urged upon it, there wouldn't

22   be any product liability lawsuits, unless they were against

1    Toyota, or General Motors or some of the world's largest,

2    obvious, you see them on TV every night, product

3    manufacturers.    That's not who makes metal shredders.

4    That's not who makes a variety of products that come into

5    our state and into our communities and who can cause harm,

6    death, cause the death of that woman's son, through the

7    application and the use of this machine.

8        I would note initially with respect to the arguments

9    that my colleague made about some of the companies named,

10   well they may have been out of business or they weren't

11   formed until after the shredder was made, they did not make

12   an individual Motion to Dismiss with affidavits proving and

13   demonstrating that as a failure to be a proper party to the

14   case.  Not at all.  They simply collectively as we have

15   referred to them as the Newell Defendants have come in and

16   said we are just in Texas.  If you read their brief and

17   infer form the logical conclusions or interpretations of the

18   arguments of defense counsel, Newell, the Newell Defendants,

19   any one of these four Newell Defendants, I will freely

20   submit it is a (inaudible word) structure.  It is very

21   difficult to track down who made this.  We had to rely on a

22   O.S.H.A. report, the state investigators for the State of

73

1    Maryland contact and say we, you know, they are out there

2    with the shredder.   They have access to it, we do not, and

3    take the shredder company.   They call a phone line, it is

4    discontinued.   They do what we do, on-line research to find

5    out that the Newell's apparently, somewhat frequently, shut

6    down companies and then start new companies in the same line

7    of work and then eventually they get an individual named

8    Scott Newell who says oh yea, I was the shredder company and

9    now I am Newell Recycling Equipment.   I have been other

10   things.   Oh, yea, I designed that shredder, let me tell you

11   how it works, and that's how it got there.

12        Without the ability to proceed with the case and avail

13   ourselves of the greatest tool available for fact-finding of

14   the Maryland, or the American Judicial System, which is our

15   discovery process, it would be impossible to meet the

16   standard that the Newell Defendants have urged upon you.

17        What we do know, what is uncontroverted is that a

18   shredder that some or all or part of the Newell Defendant

19   structure has acknowledged to a Maryland state investigator,

20   a state official, we made the shredder.   It ends up in

21   Cumberland, Maryland, and is involved in the death of an

22   individual.   That's undisputed.   Undisputed that the

74

1   shredder is here.

2      The cases, the only two cases that were cited by the

3   Defense in their Motion to Dismiss on the personal

4   jurisdictional arguments are a case called *C.S.R.*, which is

5   a state-based case, and a case called *Lesnick,* which is a

6   federal case interpreting Maryland law that is not directly

7   binding upon the court, but certainly is instructive.

8      In the *C.S.R.*, I, I would point out to you that in both

9   cases, if you read and knowing Your Honor as I do, I know

10  you will read both of the cases if you haven't already, but

11  when you read them you have to be struck by one very clear

12  inference, there was a significant amount of discovery and

13  factual evidence put forth by the parties prior to the

14  Court's ruling on the personal jurisdictional argument.  It

15  wasn't this sort of perfunctory I don't know, they didn't

16  allege it in the complaint, we are not there, there were

17  affidavits from the Defense what we didn't do.  You don't

18  have that here.  We don't have Mr. Newell, Scott Newell.  We

19  don't have his affidavit that said I don't do business in

20  Maryland and I will point just at that juncture and then

21  return to the differentiations with *C.S.R.*   I know that the

22  Court is likely aware of this, but personal jurisdiction

1   isn't something we deal with every day.  Who remembers

2   International Shoe from when they took you know, loss of

3   civil procedure, but personal jurisdiction can be both

4   specific and general.  The fact that, and we don't know the

5   fact.  No one knows the facts, except the Newell Defendants

6   subject to discovery process authorized by this Court as to

7   where they sold this particular shredder.

8       If they sold it to Allegany Scrap, which they did not

9   come in an allege we did not, would have been a very simple

10  thing to do.  Come in and allege here is my affidavit, I

11  tracked my records, I didn't sell that to Allegany Scrap, I

12  sold it to someone in Manatoba, Canada, and I don't know how

13  it got there.  They didn't do that.  If they sold it to

14  Allegany Scrap and that is discovered specific jurisdiction,

15  (inaudible).  Even if they did not, if they continue to

16  design products for sale into the market, to engage in

17  marketing activities in the State of Maryland, to have some

18  type of continuous openness to the markets of Maryland for

19  other shredders, they have sold other shredders into the

20  state, they could still be found to have general

21  jurisdiction sufficient to allow the courts of Maryland to

22  extend our process over them.

1        We submitted an exhibit to our Opposition to the Motion

2   to Dismiss, we found it on-line.  It is the limited

3   discovery we had, Your Honor.  I can't go to the shredder

4   company, to the Newell Recycling Equipment, to any of these

5   entities and get them to open up their records, their sales

6   records, their communication records, their e-mails.  Here

7   is the shredder, I.D. Number, if there is such a number, or

8   a serial number, where did it come from?  I can't do that

9   until the Court allows me to.  They would object to it.  It

10  is a heads I win, tails you lose.

11       We did produce from the, and it is part of the Court's

12  record, this article that we found that suggests that the

13  Newell Entities, and again, they seem to change their name

14  frequently, the Newell Entities made well more than half of

15  the metal shredders that were in existence in America at the

16  time of this, and there also is a little map.  It is a map

17  of the United States.  I wouldn't suggest to you that it is

18  the most perfect evidence that I could have constructed, but

19  it is what exists and there is a bunch of dots in what

20  appears to be Maryland.  I can't tell if that is four dots

21  or five dots or six dots, they somewhat are over, you know,

22  they are close because we are such a small state, putting a

1  dot on a map, but there are a bunch of dots that are

2  represented from information provided by Newell Entities

3  that yes indeed, we have been selling metal shredders into

4  Maryland, more than just one, for many years, different

5  years.

6      The, the *C.S.R.* case dealt with a raw material

7  supplier.  It was, I believe, Your Honor, an asbestos case.

8  And it dealt with shipping things through the Port of

9  Baltimore.   The end lating, the end place where the place

10  the materials would arrive from Australia, was never

11  designed to be Maryland.  They did not have contracts with

12  Maryland companies to take the products out of their

13  containers here in Maryland, to do anything with them, to

14  sell them in Maryland.  They were simply passing through.

15  The boat landed from Australia, the containers got loaded

16  into likely locomotives or trucks, and they got driven to

17  the end state.

18      I think the Court is probably familiar in an asbestos

19  case that many times asbestos Plaintiff's sue hundreds upon

20  hundreds of potential defendants because it is impossible to

21  trace the exact source of exposure in many instances to

22  those asbestos fibers or filiments that can cause

78

1    mesothelioma, and in this particular matter the Court looked

2    at it and said this defendant does not seem to have any

3    relationship whatsoever.   No one was alleging that they did

4    something, that their product was, in fact, opened in

5    Maryland and that the particular plaintiff breathed in the

6    asbestos and was exposed to the asbestos in Maryland.

7        That is different here.   The Newell Defendant Shredder

8    was in Maryland.  The Newell Defendant Shredder was the

9    implement that caused Josh Nickel's death.   Very clear,

10   point blank, absolute distinction.

11       The *Lesnick* case, which is the federal case, they are

12   the only two cases cited.  There is no Maryland case cited

13   where a trial court has been affirmed for dismissing a case

14   of this nature based upon a personal jurisdictional argument

15   without the availment of substantial discovery on that

16   issue, at a minimum.  No other case.

17       The *Lesnick* case, and my colleague cited that, and I

18   believe correctly it is very different than this situation

19   for the same reason.  In *Lesnik* you have a component

20   manufacturer that says I am making widget A and as part of

21   widget A, the widget A manufacturer needs component B and

22   all I do is ship component B to the widget manufacturer, not

1    in the foreign state, I don't know where widget manufacturer

2    is selling into, I have no relationships with the foreign

3    state, I just sell to my manufacturing partner in a

4    different state.   That's not here.   The Court in that case

5    determines that is not enough, it is not enough that a

6    manufacturer takes your component without your expressed

7    knowledge or participation and then sells it into other

8    jurisdictions that you never sell into, that you never avail

9    yourself of.   That's not enough, that's not here.

10        Newell Defendant Shredder is sitting here in Allegany

11   County, Maryland.  It is the precipitating machine that

12   killed Josh Nickel, so it is a clear differentiation between

13   the facts and the logical reasoning in those two cases.

14        You know, we can operate certainly under the Longarm

15   Statute that confirms jurisdiction here in Maryland and the

16   documents that showing the wide scope of these Newell

17   shredders nationwide, in fact, worldwide, and the fact that

18   there is evidence to suggest that they have been sold into

19   Maryland on prior occasions and that they may be sold here.

20        I appreciate the maxim that well, it is the Plaintiff's

21   burden to demonstrate exactly what they did.   The Plaintiff

22   could never meet that burden unless you are afforded

1    discovery for the purpose.   My colleague suggested that

2    what we should have done was sue Allegany Scrap, well prior

3    to the three year statute of limitations, when in fact, the

4    investigation of the matter by O.S.H.A. took, I believe, I

5    believe it took eight months and we weren't able to actually

6    secure the report until sometime after that because of the

7    administrative requirements, but we should have sued

8    Allegany Scrap, which I am sure my other colleagues sitting

9    in the back would have come in and made the same arguments

10   he made today, you can't sue us either, and then we would

11   have had to wait and see how that argument turns out, and

12   then maybe, we could have gotten discovery from Allegany

13   Scrap, but what if the Court kicked them out of the case,

14   then we wouldn't get any discovery against them either to be

15   able to track where Allegany Scrap got the machine from in

16   particular.

17       At the end of the day, Your Honor, I think that the

18   entire jurisdictional argument boils down to this.   The

19   posture of the case.  On a Motion to Dismiss, as you are

20   well aware, you have to accept all inferences plead in the

21   light most favorable to the Plaintiff.  You have to allow

22   individuals who claim injury or seek redress under Maryland

1    law a fair opportunity to explore their claims in good faith

2    through our discovery process.  As the Court is well aware,

3    you will have multiple opportunities later in this process

4    to make a determination to the contrary, to say based upon a

5    full consideration, a full opportunity for everyone to

6    litigate their claims, the Court does or does not believe

7    that this personal jurisdiction may exist at this particular

8    posture of the case.  To make that determination, and to

9    deny any form of relief or redress to the Plaintiff herein,

10   to Ms. Beeman, to Mr. Nickel's Estate, in particular, for

11   what occurred to him, his tragic death would be not only

12   outside the context of any Maryland cases that I have seen,

13   that have been cited to the Court, but it would be simply a

14   miscarriage of justice.

15       I will turn Your Honor, to the question as my colleague

16   sort of, I think, very logically put them out, the second

17   issue is about more of just a pleading issue as to design

18   defect.  The Newell Defendants suggestion without any

19   reference to any Maryland case law.  I will make that very

20   clear, there is only one case cited in their argumentation,

21   or argument section on this issue.  It is the *Holiday vs.*

22   *Sturm Ruger* case involving the use of a handgun in a product

82

1   liability case.  That was decided on summary judgment, not

2   at the standard that we are currently dealing with now at a

3   Motion to Dismiss based upon the inferences from the

4   pleadings.  It was decided after an opportunity for

5   discovery had occurred and the Court's application of that

6   discovery and the expert opinions to the prevailing state of

7   Maryland law.

8       I will read to you very briefly, it is included at page

9   eight, with respect to the allegations that are made.  There

10  is an argument being made that we have created a brand new

11  standard of design defect in Maryland, and that's not the

12  case.  You have to design a product with a degree of

13  foreseeability and if it is foreseeable for you that a

14  particular product as dangerous as a metal shredder can be,

15  if it is foreseeable to you that the safety devices of the

16  shredder will eventually degrade or they, or you can operate

17  them without them being employed, then that is an issue for

18  future expert opinion and ultimately factual consideration

19  as to whether or not it was foreseeable and reasonable for

20  the manufacturer to do so.

21      The degradation is a totally separate issue.  In fact

22  if I make a safety implement that I know gee, after you use

1  this for a few years, the safety implement, the guard, the

2  protective device may fail, I have an obligation to warn you

3  of that, I have an obligation to perhaps design it

4  differently so that it doesn't degrade and fail, or so that

5  there is some type of attenuating factor where the end user,

6  the operator, the owner of the machine is aware of the

7  degradation of the material and can then supplement.  What

8  we have alleged, and that is really all the Court, I think

9  in this context, the context of the design defect claim, and

10  the Motion to Dismiss that we didn't plead it well enough, I

11  am citing one case.  It is *Holiday*, which is not a case

12  about pleading.  In paragraph thirty-two, we allege that

13  the metal shrapnel that killed Josh Nickel was allowed to be

14  projected and discharged due to a sagging and inadequate

15  guard.

16      In paragraph forty-nine, we alleged that the design of

17  the shredder utilized certain deflective shielding, rubber

18  curtains or other safety features to prevent metal shrapnel

19  from flying out of the shredder, but however, failed to

20  design the industrial shredder in a manner which would

21  anticipate and mitigate that these deflective shielding

22  curtains or other safety features degrade or are

84

1   intentionally removed, or are intentionally removed from the

2   industrial shredder and caused the shredder to cease

3   operations while these safety features were absent.

4       In paragraph fifty, we allege that the product was

5   being operated without the deflector, shielding, curtains

6   or other safety features to prevent metal shrapnel from

7   flying out and causing injury and/or death, which was

8   reasonably foreseeable to the Newell Defendants, who I think

9   everyone at this point in time would have to concede are

10  supposed to be one of the world's largest manufacturers of

11  these devices.

12      That's enough to plead design defect.  I don't, I am

13  not aware of a single Maryland case that would suggest that

14  those allegations and those sentences do not withstand a

15  Motion to Dismiss for failure to state a claim upon design

16  defect and we believe that, you know, at the end of the day

17  I think one or more, my colleagues suggested that you can't

18  have any type of liability, a manufacturer cannot be held to

19  suggest that a user cannot disable certain safety features.

20  They can't be held to design it so that the safety features

21  can't be disabled for use, and he brought up about cars.

22  Can't remove the safety bag from your car and operate the

1   car.  If you own a car that has a sliding, you know, when

2   you shut the door, the seatbelt comes down upon you

3   automatically, you can't disable that and drive the car.

4   That's how they are designed.  Is it a defect to include, to

5   make cars that have the old style, the style that I have,

6   you know, you get the little ringing bell and the annoying

7   voice, please put your seatbelt on.  Is it a design defect

8   to include those versus the automatic?  I am not alleging

9   that, but that is probably a question for fact in the

10  development of law, but I would point out that certainly

11  there are manufacturing safety devices that exist in

12  significant products which cannot be removed during the

13  stream of commerce cannot be removed in order to be

14  utilized.

15      And I believe that that is not, that is not uncommon in

16  product liability design defect allegations, at least not

17  uncommon in my twenty some years of experience in that

18  field, to suggest and allege that the manufacturer had a

19  duty or a responsibility based upon industry standards to

20  design it so that safety features, if they degraded the

21  machine would not work or if they degraded, there was an

22  automatic way to update or replace, or if they were somehow

1  removed or made ineffective, that there was a redundancy of

2  safety, so that the machine would not continue to work as

3  designed.  If I make a machine at work and say well, I

4  designed it with this safety feature.  What happens if the

5  safety feature fails?  Oh, it will kill you.

6      I, I think we are allowed to allege for the design

7  defect to suggest that the failure of a redundancy of safety

8  is enough at this stage of the proceedings to allow us to

9  move forward.  We would ask on the personal jurisdiction

10  issue to the extent that the Court would find the personal

11  jurisdiction not established as of today, to allow, as my

12  colleague has suggested, for discovery.  I am not, when I

13  say robust, I don't mean discovery outside of the four

14  corners of what the Court would find permissible, but

15  certainly robust in the forms and mannerisms of discovery

16  between these four companies, some of which now say they

17  don't exist, or we do exist.  We are there, we weren't

18  there.  And they all seem to be inter-related.  We certainly

19  would need and appreciate and believe that it would be in

20  the interest of justice and appropriate if the Court would

21  say hey, I am not sure about personal jurisdiction today, we

22  should have a period of time to conduct that discovery with

1   these defendants, to lay forth a broader base.

2       We don't believe it is necessary, that the Court has

3   ample information today of defined personal jurisdiction at

4   this juncture, but in the event that the Court feels

5   otherwise, that would be the appropriate posture to proceed

6   from our perspective.

7       Without any other questions, Your Honor, I would

8   conclude.   Thank you very much.

9       BY THE COURT:  No, sir.

10       BY MR. BUCKEL:  Thank you.

11       BY THE COURT:  Counsel, do you, give me an estimate of

12   your time.  You have plenty of time, but I am, it is lunch

13   time now, so if you have a brief one we will go with it.   If

14   you need more time, we will come back after lunch.   Your

15   call.

16       BY MR. MOELLER:  Lawyers are famous for saying I only

17   need a couple of minutes and going beyond a couple of

18   minutes.

19       BY THE COURT:  I have heard that before.

20       BY MR. MOELLER:  Understanding that, I have five points

21   written out here that I think I can address in a couple of

22   minutes, so maybe this will be the first time.

88

1        BY THE COURT:  Fair enough.

2        BY MR. MOELLER:  So the sort of, one of the over-

3   urching issues with Plaintiff's argument is this idea that

4   the Defendants need case law that is precisely, factually,

5   on point, that it is the exact same facts, the exact same

6   situation, the exact same procedural posture.  Respectfully

7   that is just not how the common law system works.  The, the

8   Courts trust Your Honor as the Trial Court to make a

9   decision based on Maryland Rule 322, which says you have to

10  plead the facts of your claim and the case law interpreting

11  that.  So if the case law says these are the elements, it is

12  up to Your Honor to decide whether the elements are pled.

13  You don't need a case that is basically judicial estoppel in

14  order to dismiss a complaint that doesn't plead all of the

15  elements.

16       And with that, umm, Plaintiff's have sort of argued

17  that the Defendant's are making a "got ya" argument.  You

18  can't get discovery and you can't sue us, so he can't ever

19  have a claim against us.  We win and we ride off into the

20  sunset.

21       Plaintiffs were always free under the U.S. Constitution

22  to sue the Manufacturing Defendants in Texas where personal

1    jurisdiction  wouldn't be an issue, but they chose to sue in

2    Maryland, and when you sue in Maryland, you need

3    jurisdiction in Maryland.   And it hasn't been pled and I

4    won't belabor that, but the facts supporting any purposeful

5    use of Maryland for products, any sort of advertising, all

6    the things counsel was talking about, none of that has been

7    pled in the complaint, so I think the starting point for

8    Your Honor should be dismissal of the complaint on that

9    basis.   I am not asking for dismissal with prejudice.  They

10   could potentially amend it and plead the facts they need,

11   but they haven't pled them, so I believe the starting point

12   should be a dismissal without prejudice.

13       And if we are moving beyond the allegations in the

14   complaint in talking about the evidence, counsel is asking

15   where the Defendant's proof and affidavits are.   Umm,

16   that's not the way the burden is set up here.  The

17   Defendant's have no obligation to prove to Your Honor that

18   Your Honor doesn't have jurisdiction over them.   Umm, they

19   don't have to prove the negative.  It is Plaintiff's burden

20   once the jurisdictional issue has been raised to produce

21   their own affidavits, they own evidence, and the fact that

22   some company that may or may not have had Newell in the name

1   may have sold some shredders in Maryland in the past hundred

2   years is not sufficient for the Court to find that any of

3   the specific companies, some of which are no longer in

4   existence or weren't in existence at the time, did something

5   in Maryland, so that it would be fair for the Maryland Court

6   to pull them out of Texas into a court in Allegany County

7   and respond to a Maryland Plaintiff's claims.

8        The only other issue that I want to specifically

9   address in rebuttal was the safety defect claim.  This is

10  the sort of failure to prevent tampering with safety

11  features.  I heard a lot about how in some instances a

12  product has some sort of anti-tampering features and that

13  maybe there was a failure to warn, which isn't one of the

14  allegations in the complaint, but I think Your Honor has to

15  go back to the four elements that are cited on page six of

16  the motion.   Umm, and one of the elements of this claim,

17  of the design defect, is whether or not you can bring it in

18  the way that the Plaintiffs want to bring it, the elements

19  under Maryland law are that the product was in a defective

20  condition at the time it left the control of the seller, and

21  there are allegations that it changed, that safety features

22  were removed, but more importantly, the third element, the

1    product was expected to and did reach the consumer without

2    substantial change in its condition, and the Plaintiffs have

3    alleged that there was a substantial change in its

4    condition, so I just respectfully don't see how it can be

5    that it was designed defectively because the manufacturer

6    didn't prevent Allegany Scrap from removing a safety feature

7    ten years later.

8         And with that, unless Your Honor has any other

9    questions, I think I hit my mark pretty well on timing, so I

10   can address..

11        BY THE COURT:  You did indeed, counsel.

12        BY MR. MOELLER:  Thank you.

13        BY THE COURT:  Thank you.  All right, gentlemen, thank

14   you.  Interesting matters.  I will take the matter sub

15   curia and try to get a prompt ruling to you in the immediate

16   future.  Thank you and good day.

17                         - 0 -

18

19

20

21

22

STATE OF MARYLAND

COUNTY OF ALLEGANY, TO WIT:

I, the undersigned, M. Sue Crowe, official Court

Reporter for the Fourth Judicial Circuit of Maryland, duly

appointed and qualified as such, do hereby certify that the

foregoing is, to the best of my skill, ability, and

judgment, a true and accurate transcript of a motion hearing

in **LINDA BEEMAN, SURVIVING MOTION OF JOSHUA NICKEL, et al**

**vs. ALLEGANY SCRAP, et al,** in Civil Case Number C-01-CV-23-

317, given in Cumberland, Maryland, on the 28th day of June,

2024.

Given under my hand this 3rd day of July, 2024.


*M. Sue Crowe*

_____
M. Sue Crowe
Court Reporter for Allegany County, MD

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

# SHAPIRO SHER

**Alex J. Brown**
Direct Dial: 410.385.4220
Mobile: 443.845.6777
ajb@shapirosher.com

250 West Pratt Street
Suite 2000
Baltimore, Maryland 21201

P  410.385.0202
F  410.539.7611

shapirosher.com

Stricken per Rule 20-203(c). Not a valid pleading or paper

No Certificate of Service

July 9, 2024

**VIA EMAIL (Amy.McDonald@mdcourts.gov)**
The Honorable Gary G. Leasure
Circuit Court for Allegany County, Maryland
30 Washington Street
Cumberland, Maryland 21502

> **RE:**  ***Linda Beeman, et al. v. Allegany Scrap, Inc., et al.***
> Case No. C-01-CV-23-000317

Dear Judge Leasure:

On behalf of Allegany Scrap, Inc. ("Allegany"), I wish to respond to the Court's July 2, 2024 letter.  I also wish to acknowledge receipt of a copy of Ms. Beeman's July 1, 2024 letter to the Court.

As a parent I certainly understand the intensity of Ms. Beeman's emotion, and I hope that time brings her some peace.  However, I do not believe that Ms. Beeman's letter requires that Your Honor defer ruling on the pending motions or recusing yourself from this matter.  Allegany appreciates that the Court brought this to our attention.

We have separately filed a paper as the Court offered at the June 28, 2024 hearing.

Sincerely,

Alex J. Brown

cc:     Jason C. Buckel, Esq. (*via e-mail*)
        T. Lee Beeman, Jr., Esq. (*via e-mail*)
        Joseph M. Moller, Esq. (*via e-mail*)
        Joel M. Sher, Esq. (*via e-mail*)
        Michael S. Bullock, Esq. (*via e-mail*)



**SHAPIRO SHER**

**Alex J. Brown**
Direct Dial: 410.385.4220
Mobile: 443.845.6777
ajb@shapirosher.com

250 West Pratt Street
Suite 2000
Baltimore, Maryland  21201

P  410.385.0202
F  410.539.7611

shapirosher.com

July 9, 2024

**VIA EMAIL (Amy.McDonald@mdcourts.gov)**
The Honorable Gary G. Leasure
Circuit Court for Allegany County, Maryland
30 Washington Street
Cumberland, Maryland 21502

      *RE:*   ***Linda Beeman, et al. v. Allegany Scrap, Inc., et al.***
              Case No. C-01-CV-23-000317

Dear Judge Leasure:

On behalf of Allegany Scrap, Inc. ("Allegany"), I wish to respond to the Court's July 2, 2024 letter.  I also wish to acknowledge receipt of a copy of Ms. Beeman's July 1, 2024 letter to the Court.

As a parent I certainly understand the intensity of Ms. Beeman's emotion, and I hope that time brings her some peace.  However, I do not believe that Ms. Beeman's letter requires that Your Honor defer ruling on the pending motions or recusing yourself from this matter.  Allegany appreciates that the Court brought this to our attention.

We have separately filed a paper as the Court offered at the June 28, 2024 hearing.

Sincerely,

Alex J. Brown

cc:    Jason C. Buckel, Esq. (*via e-mail*)
       T. Lee Beeman, Jr., Esq. (*via e-mail*)
       Joseph M. Moller, Esq. (*via e-mail*)
       Joel I. Sher, Esq. (*via e-mail*)
       Michael S. Bullock, Esq. (*via e-mail*)



The Honorable Gary G. Leasure
c/o Ms. Amy McDonald
July 9, 2024
Page 2

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that, on this 9th day of July, 2024, copy of the foregoing

Correspondence to The Honorable Gary G. Leasure was served via MDEC on:

        Jason C. Buckel, Esq.
        T Lee Beeman, Esq.
        Buckel Levasseur Pillai & Beeman LLC
        206 Washington Street
        Cumberland, Maryland 21502

        *Attorneys for Plaintiffs*

        E. Andrew Cole, Esq.
        Joseph M. Moeller, Esq.
        Stein Sperling Bennett De Jong Driscoll PC
        1101 Wootton Parkway
        Suite 700
        Rockville, Maryland 20852

        *Attorneys for Defendants The Shredder Co., LLC,*
        *The Shredder Co., LP, Newell Recycling*
        *Equipment, LLC and Newell Recycling Company*
        *of El Paso, L.P.*

                */s/ Alex J. Brown*
            Alex J. Brown (AIS No. 9912140080)

E-FILED; Allegany Circuit Court
Docket: 7/10/2024 3:23 PM; Submission: 7/10/2024 3:23 PM
Envelope: 17161174

# STEIN SPERLING

## BENNETT · DE JONG · DRISCOLL PC

JOSEPH M. MOELLER
ATTORNEY AT LAW

1101 Wootton Parkway
Suite 700
Rockville, Maryland 20852

301-838-3237 direct
301-340-2020 main
301-354-8137 direct fax

jmoeller@steinsperling.com
www.steinsperling.com

July 10, 2024

**Via Email (amy.mcdonald@mdcourts.gov)**                    File Number: 2240468.01
The Honorable Gary G. Leasure
Circuit Court for Allegany County
30 Washington Street
Cumberland, MD 21502

> Re:   Linda Beeman, *et al*. v. Allegany Scrap, Inc., *et al.*
>        Case No. C-01-CV-23-000317

Dear Judge Leasure:

On behalf of the Newell Defendants (The Shredder Co., LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P.), thank you for your letter dated July 2, 2024, notifying the parties of the letter from Plaintiff Linda Beeman. Ms. Beeman has the Newell Defendants' condolences for the loss of her son.

As Your Honor knows, Rule 18-102.9 does not allow the Court to consider the contents of the *ex parte* letter. If there are any further *ex parte* communications, the Newell Defendants reserve the right to seek relief from the Court.

With that stated for the record, the Newell Defendants do <u>not</u> object to Your Honor deciding the pending motions and continuing to hear the case.

Very truly yours,

*Joseph M. Moeller*

Joseph M. Moeller

JMM

cc:   Jason C. Buckel (blplaw@atlanticbbn.net)
      T. Lee Beeman, Jr. (lbeeman@alleganygov.org)
      Alex J. Brown (ajb@shapirosher.com)
      Michael S. Bullock (msb@shapirosher.com)
      E. Andrew Cole (ecole@steinsperling.com)

21055018_1

# STEIN SPERLING

BENNETT · DE JONG · DRISCOLL  PC

**Page 2**

The Hon. Gary G. Leasure
July 10, 2024

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of July, 2024, a copy of the foregoing

was submitted to MDEC for service on counsel of record.

*Joseph M. Moeller*
Joseph M. Moeller (AIS #1812120023)

IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

LINDA BEEMAN, et al.

      Plaintiff

      v.                           **CASE NO: C-01-CV-23-317**

ALLEGANY SCRAP, INC., et al.

      Defendant

## ORDER

    Due to correspondence dated July 1, 2024, I will recuse myself from matters in this case. The case will be referred to the Administrative Judge for assignment and hearing on pending motions.

                                       Gary G. Leasure
                                         JUDGE

                                       7-10-24
                                         Date

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA BEEMAN, et al.**

      **Plaintiff**

      **v.**                    **CASE NO: C-01-CV-23-317**

**ALLEGANY SCRAP, INC., et al.**

      **Defendant**

## ORDER

Due to correspondence dated July 1, 2024, I will recuse myself from matters in this case. The case will be referred to the Administrative Judge for assignment and hearing on pending motions.

 

_____
Gary G. Leasure
JUDGE

_____
7-10-24
Date

OFFICE OF

# Dawne D. Lindsey

CLERK OF THE CIRCUIT COURT
FOR ALLEGANY COUNTY
30 WASHINGTON STREET
CUMBERLAND, MD 21502

BALTIMORE MD 212

1 FEB 2024 PM 3



US POSTAGE PITNEY BOWES
ZIP 21502 $ 000.64⁰
02 4W
0000349508 FEB 01. 2024

Order 02/01/2024

C-01-CV-23-317

To:

NEWELL RECYCLING EQUIPMENT, LL
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121

NIXIE        799    DE 1              0007/07/24

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

BC:  21502294830      *2227-08106-01-45

Jaime Johnson
**Assignment Commissioner**
Allegany County Circuit Court
30 Washington Street
Cumberland, MD 21502

**RETURN SERVICE REQUESTED**

Confirmation of Trial Assignment

**To:** NEWELL RECYCLING EQUIPMENT, LL
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121

d-01-CV-23-317

NIXIE        799   DE  1        0007/07/24
RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD
BC: 21502294830      *2327-07266-26-43

US POSTAGE PITNEY BOWES
ZIP 21502
02 4W
0000349508 APR 26 2024
$ 000.64⁰



cv-01912-CJC     Document 1-1     Filed 06/12/25     Page

OFFICE OF

**Dawne D. Lindsey**

CLERK OF THE CIRCUIT COURT
FOR ALLEGANY COUNTY
30 WASHINGTON STREET
CUMBERLAND, MD 21502

BALTIMORE MD 212

20 MAR 2024 PM 6 L

US POSTAGE PITNEY BOWES

ZIP 21502 $ 000.64⁰
02 4W
0000349508 MAR 19 2024

Motion Granted 3-19-2024

C-01-CV-23-317

To: NEWELL RECYCLING EQUIPMENT, L
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121

NIXIE     799   DE 1        0007/07/24

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

BC: 21502294830       *2527-04230-20-44

LINDA BEEMAN, et al.,           *      IN THE

v.                                 *      CIRCUIT COURT

ALLEGANY SCRAP, INC. et al.,    *      FOR

                                       *      ALLEGANY COUNTY

                                       *      Case No. **C-01-CV-23-317**

---

## <u>ORDER</u>

Pursuant to the recusal of the Hon. Gary G. Leasure, it is hereby **ORDERED** by the

Administrative Judge for Allegany County, Maryland, that the case will be re-assigned to the

Hon. Jeffrey S. Getty.

07/12/2024 9:59:48 AM

_____

Judge Jeffrey S. Getty

| | | |
|---|---|---|
| LINDA BEEMAN, et al., | * | IN THE |
| v. | * | CIRCUIT COURT |
| ALLEGANY SCRAP, INC. et al., | * | FOR |
| | * | ALLEGANY COUNTY |
| | * | Case No. **C-01-CV-23-317** |

---

## <u>ORDER</u>

Pursuant to the recusal of the Hon. Gary G. Leasure, it is hereby **ORDERED** by the

Administrative Judge for Allegany County, Maryland, that the case will be re-assigned to the

Hon. Jeffrey S. Getty.

07/12/2024 9:59:48 AM

_____

Judge Jeffrey S. Getty

E-SERVED Allegany Circuit Court 7/17/2024 3:51 PM System SystemEnvelope:17252703

E-FILED; Allegany Circuit Court
Case 1:25-cv-00012-JRR Document 16 Filed 06/12/25 Page 409 of 737
Docket: 7/17/2024 3:51 PM;Submission: 7/17/2024 3:51 PM
Envelope: 17252703

CIRCUIT COURT FOR ALLEGANY COUNTY,
**MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  MICHAEL STEPHEN BULLOCK
SHAPIRO SHER GUINOT & SANDLER, PA
250 WEST PRATT STREET
SUITE 2000
BALTIMORE, MD 21201

**Case Number:**        C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

E-SERVED Allegany Circuit Court 7/17/2024 3:51 PM System SystemEnvelope:17252703

E-FILED; Allegany Circuit Court

Case 1:25-cv-01012-RJF Document 1-60 Filed 06/12/25 Docket: 7/17/2024 3:51 PM Submission: 7/17/2024 3:51 PM Page 410 of 737

Envelope: 17252703

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street

Cumberland, Maryland  21502

Fax: (301) 777-2100

Assignment Office: (301) 777-5921

Family Magistrate: (301) 777-2387

Child Support Magistrate: (301) 777-2408

Family Services: (301) 777-2102

**To:**   T LEE BEEMAN

BUCKEL LEVASSEUR PILLAI & BEEMAN LLC

206 WASHINGTON STREET

CUMBERLAND, MD 21502

**Case Number:**   **C-01-CV-23-000317**

**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

Case C-01-CV-23-000317 Document 160 Filed 06/12/25 Page 411 of 737

**CIRCUIT COURT FOR ALLEGANY COUNTY
MARYLAND**

30 Washington Street

Cumberland, Maryland  21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   EDWARD ANDREW  COLE
STEIN SPERLING BENNETT DE JONG DRISCOLL PC
1101 WOOTTON PARKWAY
SUITE 700
ROCKVILLE, MD 20850

**Case Number:**          **C-01-CV-23-000317**
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

Case C-01-CV-23-000317 Document 16 Filed 06/12/25 Page 412 of 737

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  JOSEPH MICHAEL MOELLER
STEIN SPERLING BENNETT DE JONG DRISCOLL, P.C.
1101 WOOTON PARKWAY
SUITE 700
ROCKVILLE, MD 20852

**Case Number:**          C-01-CV-23-000317
**Related Case Number:**

LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY,**
**MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

E-FILED; Allegany Circuit Court
Docket: 7/17/2024 3:51 PM; Submission: 7/17/2024 3:51 PM
Fax: (301) 777-2100       **Envelope: 17252703**
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   JASON CORD  BUCKEL
206 WASHINGTON STREET
CUMBERLAND, MD 21502

|  |  |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Related Case Number:** |  |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   ALEX JONATHAN  BROWN
SHAPIRO, SHER, GUINOT & SANDLER, P.A.
250 W PRATT STREET
20TH FLOOR
BALTIMORE, MD 21201

**Case Number:**        **C-01-CV-23-000317**
**Related Case Number:**

LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP,
INC., ET AL.

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   ALLEGANY SCRAP, INC.
2001 KENILWORTH AVENUE
CAPITAL HEIGHTS, MD 20743

Case Number:          **C-01-CV-23-000317**
Related Case Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland 21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835

Case Number:        C-01-CV-23-000317
Related Case Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner: (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  THE SHREDDER CO L.P.
6800 MARKET AVENUE
EL PASO, TX 79915-1014

Case Number:     **C-01-CV-23-000317**
Related Case Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY,**
**MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  KARL E. NICKEL, AS SURVIVING FATHER OF JOSHUA P.
NICKEL (USE PLAINTIFF)
30 DEPOT STREET
FROSTBURG, MD 21532

**Case Number:**     C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   JOEL I  SHER
SHAPIRO SHER GUINOT & SANDLER
250 W PRATT ST
STE 2000
BALTIMORE, MD 21201

|  |  |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Related Case Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY,
MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   ALEX JONATHAN  BROWN
SHAPIRO, SHER, GUINOT & SANDLER, P.A.
250 W PRATT STREET
20TH FLOOR
BALTIMORE, MD 21201

| | |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Related Case Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP,
INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| **Date** | **Time** | **Type of Proceeding** |
|---|---|---|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** NEWELL RECYCLING EQUIPMENT, LLC
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121

|  |  |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Related Case Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY,**
**MARYLAND**
30 Washington Street
Cumberland, Maryland 21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** JASON CORD BUCKEL
206 WASHINGTON STREET
CUMBERLAND, MD 21502

Case Number:                    C-01-CV-23-000317
Related Case Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  KARL NICKEL
30 DEPOT STREET
FROSTBURG, MD 21532

Case Number:          C-01-CV-23-000317
Related Case Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
| --- | --- | --- |
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** JOSEPH MICHAEL MOELLER
STEIN SPERLING BENNETT DE JONG DRISCOLL, P.C.
1101 WOOTON PARKWAY
SUITE 700
ROCKVILLE, MD 20852

**Case Number:**              C-01-CV-23-000317
**Related Case Number:**

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY MARYLAND**
30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** LINDA BEEMAN
12750 VALE SUMMIT ROAD, SW
FROSTBURG, MD 21532

Case Number:     C-01-CV-23-000317
Related Case Number:

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|------|------|--------------------|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

**CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND**

30 Washington Street
Cumberland, Maryland  21502

Clerk: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**   LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P.
NICKEL
12750 VALE SUMMIT ROAD, SW
FROSTBURG, MD 21532

|  |  |
|---|---|
| **Case Number:** | **C-01-CV-23-000317** |
| **Related Case Number:** | |

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 7/17/2024

## CONFIRMATION OF TRIAL ASSIGNMENT

This will confirm the scheduling of the above-captioned case in the CIRCUIT COURT for ALLEGANY COUNTY FOR:

| Date | Time | Type of Proceeding |
|---|---|---|
| 09/10/2024 | 09:00AM | Hearing - Motion to Dismiss |

No continuance will be granted except by Leave of Court, and for good cause shown.

Assignment Commissioner:  (301) 777-5921

Jaime Johnson
**Assignment Commissioner**
Allegany County Circuit Court
0 Washington Street
Cumberland, MD 21502

RETURN SERVICE REQUESTED

Confirmation of Trial Assignment

BALTIMORE MD 212

18 JUL 2024 PM 5



US POSTAGE ™ PITNEY BOWES

ZIP 21502 $ 000.69°
02 4W
0000349508 JUL 18 2024

(01-CV-23-317

**To:** THE SHREDDER CO LLC
7380 DONIPHAN DRIVE
CANUTILLO, TX 79835

NIXIE     799     DE 1     0007/24/24

RETURN TO SENDER
NO MAIL RECEPTACLE
UNABLE TO FORWARD

BC: 21502294830     *2427-00928-18-46

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

| | | |
|---|---|---|
| **LINDA BEEMAN,** *et al.* | * | |
| | * | |
| v. | * | Case No.: **C-01-CV-23-317** |
| | * | |
| **ALLEGANY SCRAP, INC.,** *et al.* | * | |

## <u>MEMORANDUM OF THE COURT</u>

Joshua P. Nickel (hereinafter "the decedent") was employed by Allegany Scrap, Inc., a metal recycling facility located in Cumberland, Maryland that utilized a metal shredder to scrap metal materials. Sometime between 12:10-12:21 p.m. on September 11th, 2020, the shredder discharged a piece of metal through the air at a high rate of speed which struck the decedent, who subsequently succumbed to his injuries. The mother of the decedent, Linda S. Beeman, initiated this action seeking damages for her son's death against Allegany Scrap (the decedent's employer), and from The Shredder Co., LLC, the Shredder Co., LP, Newall Recycling Equipment, LLC and Newall Recycling Company of El Paso, LP, collectively the "Newall Defendants," who are collectively alleged to be the manufacturer of the industrial shredder owned and operated by Allegany Scrap. In response to the Plaintiff's Complaint, Allegany Scrap and the Newall Defendants filed separate Motions to Dismiss alleging different grounds. The Court held a hearing on the motions on September 10th, 2024, with the Plaintiffs present and represented by counsel and the Defendants appearing through respective counsel. For the reasons explained herein, the Motions to Dismiss will be **DENIED**.

1. <u>Standards for trial courts consideration of Motion to Dismiss</u>

In considering both Defendants' Motions to Dismiss, the Court is to "assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations . . . [d]ismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven nonetheless fail to afford relief to the plaintiff." *Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238, 246 (2000) (citing *Bobo v. State*, 346 Md. 706, 708-09 (1997)).

A motion to dismiss tests the complaint itself and is granted if the complaint fails to state a cause of action. However, Md. Rule 2-322(c) permits the moving party to go beyond the facts of the complaint and attach exhibits to support their argument that the complaint should be dismissed. *See* Maryland Rule Commentary Rule 2-322 (5th ed. Lexis Nexis Matthew Bender).

### 2. Allegany Scrap's Motion to Dismiss

Allegany Scrap argues that the Maryland's Worker's Compensation Act is the exclusive remedy available to the Plaintiffs to hold the employer liable for a workplace injury. Md. Code Ann., Lab. & Empl. § 9-509(a). Compensation awarded under the Worker's Compensation Act "is in place of any right of action against any person." *Id.* § 9-509(b). However, the Plaintiffs allege in their Complaint that Allegany Scrap intentionally withheld and/or delayed seeking medical attention for the decedent after he was injured and thus, deliberately intended to kill him. As such, the claims alleged in the Complaint are not barred by the Worker's Compensation Act. The Plaintiffs rely on Md. Code Ann., Lab. and Empl. § 9-509(d) which states:

> *Exception – Deliberate Act.* – If a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee, the covered employee or, in the case of death, a surviving spouse, child, or dependent of the covered employee may:

(1) bring a claim for compensation under this title; or

(2) bring an action for damages against the employer.

Notwithstanding the statute's use of the word "or," the Plaintiffs contend that they may collect under the Worker's Compensation Act *and* proceed in this action at law even after collecting benefits under the Act. The Court disagrees.

There is no ambiguity in the language of the Act that a covered employee may collect under the Act *or* pursue a legal action. The use of "or" clearly establishes that these methods of securing recovery are mutually exclusive. *Or*, *Black's Law Dictionary* (12th ed. 2024) is defined as "[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things . . . [t]he word 'or' is to be used as a function word to indicate an alternative between different or unlike things." Maryland Courts have long recognized this interpretation of the Act.

> The provisos in the Act are clearly delineated, and none permit a law action against an employer if relief has been obtained by way of the payment of compensation. So under § 44 the privilege given an employee whose injury results from the deliberate intention of his employer . . . as if the Act had not been passed, is lost if the employee proceeds by way of compensation.

*Athas v. Hill*, 54 Md. App. 293, 298 (1983), *aff'd*, 300 Md. 133 (1984) (quoting *Kramer v. Globe Brewing Co.*, 175 Md. 461, 470 (1938)). *See also Wagner v. Allied Chemical Corp.*, 623 F. Supp. 1412, 1415-16 (1985). To the extent that the Plaintiffs have received compensation under the Act, this claim is barred.

Allegany Scrap requested that the Court take judicial notice that a claim was filed with the Worker's Compensation Commission (WCC) for an accident on September 10th, 2020[1] and identifies the claimant as Joshua Paul Nickel (DECD). At the hearing, counsel for the Plaintiffs did not contradict Allegany Scrap's contention that benefits were paid,

---

[1] The Complaint alleges the incident date to be September 11th, 2020.

but the Court has nothing before it to conclude that compensation pursuant to the Act was paid and that therefore, this action is barred at law. Nothing in the exhibit attached to Allegany Scrap's motion addresses payment of compensation to the Plaintiffs. Before the Court is Allegany Scrap's motion to dismiss and the Court's inquiry at this juncture is to accept the well pled allegations and determine if the Plaintiffs are afforded relief under the law. The Defendant's reliance on the WCC Claim Information Inquiry converts the motion to dismiss to a motion for summary judgment to be resolved pursuant to Md. Rule 2-501. The Court is granting to the parties a reasonable opportunity to present all material pertinent to such a motion. Md. Rule 2-322(c).

The Court notes that Allegany Scrap has raised other grounds to urge the dismissal of the action. The Court is unpersuaded that dismissal on those grounds is appropriate currently. For the reason outlined above, the Court will give the parties sixty (60) days to present all material pertinent to whether the Plaintiffs have received compensation under the Act.

### 3. <u>Newell Defendant Motion to Dismiss</u>

Additionally, having reviewed the Newell Defendants' Motion to Dismiss, the Plaintiffs' Opposition, the Newell Defendants' reply, and arguments of counsel at the hearing, the motion to dismiss as to the manufacturers collectively known as the "Newell Defendants" is **DENIED**, subject to the normal discovery procedures.

10/31/2024 2:20:54 PM

_____
Jeffrey S. Getty
JUDGE    Judge Jeffrey S. Getty

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.,*                               *

                                     *

vs.                               Case No.  **C-01-CV-23-000317**

                                     *

**ALLEGANY SCRAP, INC.,** *et al.,*
              Defendant        *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER OF COURT

      This case came before the Court on a civil complaint for injury sustained by an employee filed on September 7th, 2023. Pursuant to Maryland Code Ann., Labor and Employment § 9-509, the Court cannot determine whether Petitioner has obtained their sole available remedy through an award from the Worker's Compensation Commission. Accordingly, it is this __31st__ day of July 2024, by the Allegany County Circuit Court, Maryland, **ORDERED** that the Motion to Dismiss as to employer, Allegany Scrap, Inc., is hereby **DENIED**, and the parties have sixty (60) days from the date of this Order to submit any additional pertinent material, and it is further

      **ORDERED** that the Motion to Dismiss as to the manufacturers, collectively known as the "Newell Defendants[1]," is hereby **DENIED**, subject to the normal discovery procedures.

**10/31/2024 2:22:59 PM**

_____

                Judge Jeffrey S. Getty

---

[1] Defendants The Shredder Co, LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and the Newell Recycling Company of El Paso, L.P. referred to themselves by this name in their Motion and during oral argument, and the Court will do the same for continuity of the record.

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA BEEMAN,** *et al.*           *
                                     *
v.                                   *      Case No.: **C-01-CV-23-317**
                                     *
**ALLEGANY SCRAP, INC.,** *et al.*   *

---

### MEMORANDUM OF THE COURT

Joshua P. Nickel (hereinafter "the decedent") was employed by Allegany Scrap, Inc., a metal recycling facility located in Cumberland, Maryland that utilized a metal shredder to scrap metal materials. Sometime between 12:10-12:21 p.m. on September 11th, 2020, the shredder discharged a piece of metal through the air at a high rate of speed which struck the decedent, who subsequently succumbed to his injuries. The mother of the decedent, Linda S. Beeman, initiated this action seeking damages for her son's death against Allegany Scrap (the decedent's employer), and from The Shredder Co., LLC, the Shredder Co., LP, Newall Recycling Equipment, LLC and Newall Recycling Company of El Paso, LP, collectively the "Newall Defendants," who are collectively alleged to be the manufacturer of the industrial shredder owned and operated by Allegany Scrap. In response to the Plaintiff's Complaint, Allegany Scrap and the Newall Defendants filed separate Motions to Dismiss alleging different grounds. The Court held a hearing on the motions on September 10th, 2024, with the Plaintiffs present and represented by counsel and the Defendants appearing through respective counsel. For the reasons explained herein, the Motions to Dismiss will be **DENIED**.

### 1. Standards for trial courts consideration of Motion to Dismiss

In considering both Defendants' Motions to Dismiss, the Court is to "assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations . . . [d]ismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven nonetheless fail to afford relief to the plaintiff." *Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238, 246 (2000) (citing *Bobo v. State*, 346 Md. 706, 708-09 (1997)).

A motion to dismiss tests the complaint itself and is granted if the complaint fails to state a cause of action. However, Md. Rule 2-322(c) permits the moving party to go beyond the facts of the complaint and attach exhibits to support their argument that the complaint should be dismissed. *See* Maryland Rule Commentary Rule 2-322 (5th ed. Lexis Nexis Matthew Bender).

### 2. Allegany Scrap's Motion to Dismiss

Allegany Scrap argues that the Maryland's Worker's Compensation Act is the exclusive remedy available to the Plaintiffs to hold the employer liable for a workplace injury. Md. Code Ann., Lab. & Empl. § 9-509(a). Compensation awarded under the Worker's Compensation Act "is in place of any right of action against any person." *Id.* § 9-509(b). However, the Plaintiffs allege in their Complaint that Allegany Scrap intentionally withheld and/or delayed seeking medical attention for the decedent after he was injured and thus, deliberately intended to kill him. As such, the claims alleged in the Complaint are not barred by the Worker's Compensation Act. The Plaintiffs rely on Md. Code Ann., Lab. and Empl. § 9-509(d) which states:

> *Exception – Deliberate Act.* – If a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee, the covered employee or, in the case of death, a surviving spouse, child, or dependent of the covered employee may:

(1) bring a claim for compensation under this title; or

(2) bring an action for damages against the employer.

Notwithstanding the statute's use of the word "or," the Plaintiffs contend that they may collect under the Worker's Compensation Act *and* proceed in this action at law even after collecting benefits under the Act. The Court disagrees.

There is no ambiguity in the language of the Act that a covered employee may collect under the Act *or* pursue a legal action. The use of "or" clearly establishes that these methods of securing recovery are mutually exclusive. *Or*, *Black's Law Dictionary* (12th ed. 2024) is defined as "[a] disjunctive particle used to express an alternative or to give a choice of one among two or more things . . . [t]he word 'or' is to be used as a function word to indicate an alternative between different or unlike things." Maryland Courts have long recognized this interpretation of the Act.

> The provisos in the Act are clearly delineated, and none permit a law action against an employer if relief has been obtained by way of the payment of compensation. So under § 44 the privilege given an employee whose injury results from the deliberate intention of his employer . . . as if the Act had not been passed, is lost if the employee proceeds by way of compensation.

*Athas v. Hill*, 54 Md. App. 293, 298 (1983), *aff'd*, 300 Md. 133 (1984) (quoting *Kramer v. Globe Brewing Co.*, 175 Md. 461, 470 (1938)). *See also Wagner v. Allied Chemical Corp.*, 623 F. Supp. 1412, 1415-16 (1985). To the extent that the Plaintiffs have received compensation under the Act, this claim is barred.

Allegany Scrap requested that the Court take judicial notice that a claim was filed with the Worker's Compensation Commission (WCC) for an accident on September 10th, 2020[1] and identifies the claimant as Joshua Paul Nickel (DECD). At the hearing, counsel for the Plaintiffs did not contradict Allegany Scrap's contention that benefits were paid,

---

[1] The Complaint alleges the incident date to be September 11th, 2020.

but the Court has nothing before it to conclude that compensation pursuant to the Act was paid and that therefore, this action is barred at law. Nothing in the exhibit attached to Allegany Scrap's motion addresses payment of compensation to the Plaintiffs. Before the Court is Allegany Scrap's motion to dismiss and the Court's inquiry at this juncture is to accept the well pled allegations and determine if the Plaintiffs are afforded relief under the law. The Defendant's reliance on the WCC Claim Information Inquiry converts the motion to dismiss to a motion for summary judgment to be resolved pursuant to Md. Rule 2-501. The Court is granting to the parties a reasonable opportunity to present all material pertinent to such a motion. Md. Rule 2-322(c).

The Court notes that Allegany Scrap has raised other grounds to urge the dismissal of the action. The Court is unpersuaded that dismissal on those grounds is appropriate currently. For the reason outlined above, the Court will give the parties sixty (60) days to present all material pertinent to whether the Plaintiffs have received compensation under the Act.

### 3. Newell Defendant Motion to Dismiss

Additionally, having reviewed the Newell Defendants' Motion to Dismiss, the Plaintiffs' Opposition, the Newell Defendants' reply, and arguments of counsel at the hearing, the motion to dismiss as to the manufacturers collectively known as the "Newell Defendants" is **DENIED**, subject to the normal discovery procedures.

10/31/2024 2:20:54 PM

_____

Jeffrey S. Getty
JUDGE   Judge Jeffrey S. Getty

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al.,*                    *

                                                                *

vs.                                           Case No. **C-01-CV-23-000317**

                                                                *

**ALLEGANY SCRAP, INC.,** *et al.,*
                        Defendant          *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER OF COURT

This case came before the Court on a civil complaint for injury sustained by an employee filed on September 7th, 2023. Pursuant to Maryland Code Ann., Labor and Employment § 9-509, the Court cannot determine whether Petitioner has obtained their sole available remedy through an award from the Worker's Compensation Commission. Accordingly, it is this __31st__ day of July 2024, by the Allegany County Circuit Court, Maryland, **ORDERED** that the Motion to Dismiss as to employer, Allegany Scrap, Inc., is hereby **DENIED**, and the parties have sixty (60) days from the date of this Order to submit any additional pertinent material, and it is further

**ORDERED** that the Motion to Dismiss as to the manufacturers, collectively known as the "Newell Defendants[1]," is hereby **DENIED**, subject to the normal discovery procedures.

10/31/2024 2:22:59 PM

_____

Judge Jeffrey S. Getty

---

[1] Defendants The Shredder Co, LLC, The Shredder Co., LP, Newell Recycling Equipment, LLC, and the Newell Recycling Company of El Paso, L.P. referred to themselves by this name in their Motion and during oral argument, and the Court will do the same for continuity of the record.

**Jaime Johnson**
**Assignment Commissioner**
Allegany County Circuit Court
30 Washington Street
Cumberland, MD 21502

RETURN SERVICE REQUESTED

BALTIMORE MD 212

18 JUL 2024 PM 3 L

ZIP 21502
02 4W
0000349508 JUL 18 2024
US POSTAGE
$ 000.69°

1-01-CV-23-317

Confirmation of Trial Assignment

**To:** NEWELL RECYCLING EQUIPMENT, LLO
1020 S MESA HILLS DR.
APT. 5205
EL PASO, TX 79912-5121

NIXIE        799      FE 1        0011/09/24

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

BC: 2150229483D        *2227-00756-18-46

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

| | |
|---|---|
| LINDA S. BEEMAN, as Surviving Mother : | |
| of Joshua P. Nickel, *et al.*, : | |
| : | |
| Plaintiffs : | |
| : | |
| v. : | Civil Case No. C-01-CV-23-000317 |
| : | |
| ALLEGANY SCRAP, INC., *et al.*, : | |
| : | |
| Defendant : | |

### NEWELL DEFENDANTS' ANSWER TO COMPLAINT

Defendants The Shredder Co., LLC, The Shredder Co., L.P., Newell Recycling Equipment, LLC, and Newell Recycling Company of El Paso, L.P. (the "Newell Defendants"), by counsel and pursuant to Rule 2-323, file this Answer to the Complaint:

### GENERAL DENIAL

Without waiving the subsequent defenses, pursuant to Rule 2-323(d), the Newell Defendants deny liability as to all counts pled against them in the Complaint.

### AFFIRMATIVE DEFENSES

1.    The Complaint is barred by assumption of risk.

2.    The Complaint is barred by collateral estoppel.

3.    The Complaint is barred by contributory negligence.

4.    The Complaint is barred by release.

5.    The Complaint is barred by res judicata.

6.    The Complaint is barred by the statute of limitations.

7.    The Complaint is barred by lack of timely notice to Defendants.

8.    The Complaint is barred by failure to heed safety warnings.

9.    The Complaint fails to state a claim.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

1

Further, the Newell Defendants do not waive the issues of this Court's jurisdiction asserted in their Motion to Dismiss, filed before this Answer.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:    /s/ E. Andrew Cole
       E. Andrew Cole (AIS #0206190051)
       1101 Wootton Parkway, Suite 700
       Rockville, Maryland 20852
       Direct: 301-838-3218
       Fax: 301-354-8118
       ecole@steinsperling.com

By:    /s/ Joseph M. Moeller
       Joseph M. Moeller (AIS #1812120023)
       1101 Wootton Parkway, Suite 700
       Rockville, Maryland 20852
       Direct: 301-838-3237
       Fax: 301-354-8137
       jmoeller@steinsperling.com

       *Attorneys for Newell Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of November, 2024, a copy of the foregoing was submitted to MDEC for service on counsel of record.

/s/ E. Andrew Cole
E. Andrew Cole (AIS #0206190051)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

2

21407799_1

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

| | |
|---|---|
| **LINDA S. BEEMAN,** *et al.* | * |
| **Plaintiffs** | * |
| **v.** | * |
| | **Case No. C-01-CV-23-000317** |
| **ALLEGANY SCRAP, INC.,** *et al.* | * |
| **Defendants** | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### DEFENDANT ALLEGANY SCRAP, INC.'S SUPPLEMENT
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGEMENT

Defendant Allegany Scrap, Inc. ("Allegany"), by and through undersigned counsel, submits this Supplement in Support of its Motion to Dismiss, which has been converted into a Motion for Summary Judgment as set forth in this Court's October 31, 2024 Order (the "Order") and Memorandum of the Court (the "Memorandum"), and states as follows:

### INTRODUCTION

In its Memorandum, the Court held that "[t]o the extent that the Plaintiffs have received compensation under the [Workers' Compensation] Act," then Plaintiffs' claims against Allegany "are barred." However, as Allegany relied upon Workers' Compensation Commission (the "WC Commission") claim information to support a factual finding that such compensation was paid to Plaintiff, the Court further ruled that such reliance converted Allegany's Motion to Dismiss into a Motion for Summary Judgment. Mem. at 3. Thus, by its Order and Memorandum, the parties were given sixty (60) days to provide additional pertinent material. Accordingly, Allegany submits this Supplement in Support of its Motion for Summary Judgment. As hereinafter discussed,

Plaintiffs received compensation pursuant to their claims under the Workers' Compensation Act (the "Act"). As such, Plaintiffs' claims are barred, and Allegany is entitled to summary judgment.

## PROCEDURAL BACKGROUND

On or about September 7, 2023, Linda S. Beeman ("Ms. Beeman"), as surviving mother and personal representative of Joshua P. Nickel ("Mr. Nickel"), filed an eighteen count Complaint against Allegany and three other Defendants (the "Complaint"). Karl E. Nickel was also named as an "Unrepresented Use Plaintiff".[1] Allegany is named as Defendant in just three counts: Counts I, VII and XIII. Ms. Beeman's claim (Count I) and Mr. Karl Nickel's "use Plaintiff" claim (Count XIII) are styled as "Deliberate Intent – Wrongful Death Action" claims. Compl. at ¶¶ 63-70, ¶¶ 121-28. The claim that Ms. Beeman brought on behalf of the decedent's estate ("Estate") is styled as a "Deliberate Intent – Survival Action" claim. *Id*. at ¶¶ 86-95.

In the Complaint, Plaintiffs allege that on September 11, 2020, Mr. Nickel was working at Allegany's scrap plant located in Cumberland, Maryland. *Id.* at ¶ 17. The Complaint further alleges that on that date, Mr. Nickel suffered a catastrophic and fatal injury ("Injury") when a piece of metal was discharged from a metal shredder striking him in the head. *Id.* at ¶¶ 20-24. In each of the three counts naming Allegany as Defendant, Plaintiffs seek relief alleging that "Defendant Allegany Scrap acted with deliberate intent to injure or kill Decedent, Joshua P. Nickel." *Id.* at ¶¶ 69, 92 and 127.

On November 6, 2020 (approximately three years before filing the Complaint), Ms. Beeman, on behalf of her son Mr. Nickel, filed a Claim for Death Benefits ("Death Benefit Claim") before the State of Maryland WC Commission. Thereafter, on November 29, 2021, an Agreement of Final Compromise and Settlement of Dependent's Claim for Death Benefits (the "WC

---

[1] To date, Mr. Nickel has not entered his appearance in this case.

Settlement Agreement") was entered into by Ms. Beeman, which was approved by Order of the WC Commission. As a result of that Agreement and as hereafter discussed, Ms. Beeman directly received fifty-nine thousand one hundred and ninety-one dollars ($59,191.00) in workers' compensation death benefits. In total, Allegany's workers' compensation insurer paid a total of ninety-two thousand two hundred and ninety-eight dollars and twenty-four cents ($92,298.24) ("Total WC Benefits") to Ms. Beeman and her attorneys, as well as for funeral expenses, Mr. Nickel's medical expenses, and for medical bill review and claim adjustment fees.

The Complaint was filed approximately two years later, and four days before the alleged claims asserted herein would have been barred by the applicable statute of limitations.

On February 28, 2024, Allegany filed its Motion To Dismiss. In its Motion to Dismiss and at the September 24, 2024 hearing thereon, Allegany relied upon, among other things, evidence that Plaintiff received compensation pursuant to claims made under the Workers' Compensation Act.

In the Memorandum the Court ruled:

There is no ambiguity in the language of the Act that a covered employee may collect under the Act *or* pursue a legal action. The use of "or" clearly establishes that these methods of securing recovery are mutually exclusive. . . . To the extent that the Plaintiff have received compensation under the Act, this claim is barred.

Mem. at 3 (emphasis in original).

However, the Court did not dismiss the claims against Allegany because at the time of the Hearing the Court had "nothing before it to conclude that compensation pursuant to the Act was paid and that therefore, this action is barred at law." Mem. at 4. The parties were granted a "reasonable opportunity to present all material pertinent to" the Motion. *Id.* (citing Md. Rule 2-322(c)).

3

As demonstrated herein, Plaintiff pursued and received compensation for the Death Benefit Claim she asserted on behalf of Mr. Nickel under the Workers Compensation Act. Accordingly, Plaintiffs' claims against Allegany are barred as a matter of law and Allegany should be granted Summary Judgment dismissing all claims against it.[2]

## FACTUAL SUMMARY

### A. Mr. Nickel Suffers An Accidental Injury While Working At Allegany.

Allegany operates a scrap metal recycling facility in Cumberland, Maryland. Affidavit of Brian Benko, attached hereto as **Exhibit 1** ¶5. Decedent Mr. Nickel sustained his Injury while working for Allegany when a piece of metal "random[ly]" exited a metal shredder and struck him. Complaint, at Exhibit 2 (Medical Examiner's Certificate Of Death ("Death Certificate")); *id.* ¶ 28. Mr. Nickel was transported to local and then regional hospitals where he unfortunately passed due to his Injury. *Id.* at ¶23; *id.* at Death Certificate. The medical examiner who signed the Death Certificate concluded that the "final manner of death" was an "[a]ccident" that occurred "at work[.]" *Id.* at Death Certificate.

### B. The WC Commission Issues A Workers' Compensation Award To Ms. Beeman.

Ms. Beeman filed the Death Benefit Claim before the WC Commission seeking workers' compensation benefits as a dependent of the deceased, Mr. Nickel. **Exhibit 1** at ¶13; *id.* at ¶14, Exhibit B. The WC Commission conducted a hearing on Ms. Beeman's Death Benefit Claim and found that: (1) Mr. Nickel's Injury was "accidental"; (2) the Injury caused Mr. Nickel's death; and (3) Ms. Beeman was a "dependent" of Mr. Nickel. *Id.* at ¶17, Exhibit C at 1.

Based on these findings, the WC Commission issued an order awarding Ms. Beeman installment payments of two-hundred-forty-nine dollars ($249.00) per week, beginning as of

---

[2] Allegany's Motion to Dismiss is incorporated by reference herein.

September 11, 2020, for a period of one-hundred-forty-four (144) months (the "WC Award"). *Id.* The WC Commission also awarded attorneys' fees in the amount of five-thousand-four-hundred dollars ($5,400.00). *Id.* at 2.

Allegany's workers' compensation insurer, Harford Mutual Insurance Company ("Harford"), paid the $5,400 in attorneys' fees, and began making weekly $249.00 payments directly to Ms. Beeman pursuant to the WC Award. Affidavit of James Runyon, attached hereto as **Exhibit 2** at ¶11, Exhibit A at 2.[3]

### C. Ms. Beeman Negotiates A Lump Sum Payment To Replace The Weekly Payments.

Less than one year later, Ms. Beeman requested a single lump sum payment "*in lieu*" of the WC Award's remaining weekly payments. **Exhibit 1** at ¶19, Exhibit D at 2. Thereafter, on November 29, 2021, Ms. Beeman and Harford executed and entered into the WC Settlement Agreement. **Exhibit 1** at ¶19, Exhibit D. As was required, Ms. Beeman's attorney signed off on the WC Settlement Agreement. *Id.*, at 3.

---

[3] Allegany is an "additional insured" under the Harford workers' compensation and employers liability insurance policy (the "WC Policy") that provided coverage for the Injury. **Exhibit 1** at ¶10, ¶11, Exhibit A at 15, Form Number: BE-24; **Exhibit 2** at ¶6. The "named insured" under the WC Policy is Prince George's Scrap, Inc. ("Prince George's"), an affiliate of Allegany. **Exhibit 1** at ¶9, ¶10, Exhibit A. Prior to the events described in the Complaint in this Lawsuit, Allegany and Prince George's agreed that when Allegany receives a claim for workers' compensation benefits, as in this case, Prince George's assumes primary liability for the claim because Prince George's is the named insured under the WC Policy. *Id.* at ¶12. Accordingly, the WC Commission substituted Prince George's for Allegany as Mr. Nickel's "employer" for the purposes of Ms. Beeman's Death Benefit Claim. *Id.* at ¶15, ¶14, Exhibit B. The distinction between Allegany and Prince George's is irrelevant to Allegany's Motion, because the two mutually exclusive options of § 9-509(d) are to "bring" a workers' compensation claim *or* to "bring" wrongful death action, irrespective of whom the claimant chooses to name as a respondent to the chosen claim. *See Temp. Staffing, Inc. v. J.J. Hains & Co.*, 362 Md. 388, 404-406 (2001). The dispositive facts here are that Ms. Beeman brought the Death Benefit Claim and Ms. Beeman was paid workers' compensation benefits. **Exhibit 1** at ¶14, Exhibit B; **Exhibit 2** at ¶10, ¶11, Exhibit A.

5

The WC Settlement Agreement recites that Ms. Beeman had been paid Death Benefits in the aggregate amount of twenty-thousand and ninety-one dollars ($20,091.00) between September 11, 2020 (the date of Mr. Nickel's passing) and October 28, 2021. *Id.* at 2 ¶¶d-e. Under the WC Settlement Agreement, Ms. Beeman agreed to accept an additional lump sum payment ("Lump Sum") of forty-four thousand five hundred dollars ($44,500) *in lieu* of the remaining weekly payments under the WC Award after October 28, 2021.[4] *Id.* at ¶¶1-2. Harford agreed to pay the $44,500 Lump Sum "in addition to all compensation previously paid, including but not limited to death benefits [the $20,091 in weekly benefits that had been paid through October 28, 2021, plus $5,400 in attorneys' fees, and] funeral expenses [$4,970][.]" *Id.* at ¶1. All "causally related medical expenses" were also paid. *Id.* at ¶3.

The total amount Harford directly paid to Ms. Beeman was $59,191.00. **Exhibit 2** at ¶10. The total WC Benefits that Harford paid, including the $59,191.00 to Ms. Beeman, was $92,298.24. *Id.* at ¶9.

Ms. Beeman agreed to accept the WC Settlement Agreement benefits "in final compromise and settlement of ***any and all claims*** which [Decedent Mr. Nickel], ***his personal representative(s)***, ***dependents*** … or ***any other parties who might become beneficiaries*** under the Workers' Compensation Law, might now or could hereafter have under the provision of the said Law, arising out of [Mr. Nickel's] [I]njur[ies] or the death resulting therefrom[] . . . ." **Exhibit 1**, at ¶19, Exhibit D at ¶6 (emphasis added). Ms. Beeman expressly "affirm[ed] that ***that there are no other***

---

[4] To account for the delay between entry of the WC Settlement Agreement and the WC Commission's approval of the WC Settlement Agreement, the parties agreed that Harford would continue to pay weekly benefits pursuant to the WC Award until the WC Commission approved the WC Settlement Agreement, and "**all [weekly] payments made after October 28, 2021 shall be credited against the [L]ump [S]um described in**" the WC Settlement Agreement. **Exhibit 1** at ¶19, Exhibit D at ¶2 (emphasis in original).

*__qualified dependents__* … that would be entitled to benefits under the Workers' Compensation Statute." **Exhibit 1**, at ¶19, Exhibit D at ¶6 (emphasis added).

Ms. Beeman also executed an "Affidavit In Support Of Settlement" ("Beeman Affidavit") in connection with the WC Settlement Agreement acknowledging that she read and understood the terms of the WC Settlement Agreement, and that her decision to settle was voluntary. *Id.* at 6. Ms. Beeman's attorney also signed the Beeman Affidavit to affirm that the attorney had reviewed the affidavit with Ms. Beeman. *Id.*

### D. The WC Commission Approved The WC Settlement Agreement And Ms. Beeman Received Additional Benefits.

The WC Commission approved the WC Settlement Agreement on December 6, 2021. **Exhibit 1** at ¶22, Exhibit F. Harford paid Ms. Beeman five (5) additional weekly payments of $249 (an aggregate total of $1,245) between the October 28, 2021 and the WC Commission's December 6, 2021 approval of the WC Settlement Agreement. **Exhibit 1** at ¶19, Exhibit D at 2; **Exhibit 2** at ¶11, Exhibit A. Harford was permitted to deduct those additional weekly payments from the Lump Sum prior to paying the Lump Sum to Ms. Beeman. On December 9, 2021, Harford paid Ms. Beeman the balance of forty-three-thousand-two-hundred-fifty-five dollars ($43,255.00). *Id.*

### STANDARD OF REVIEW

Summary judgment is appropriate where there "is no genuine dispute as to any material fact and" the party in whose favor judgment is entered "is entitled to judgment as a matter of law." Maryland Rule 2-501(a).

A party opposing summary judgment must "(1) identify with particularity each material fact as to which it is contended that there is a genuine dispute and (2) as to each such fact, identify and attach the relevant portion of the specific document, discovery response, transcript of

7

testimony (by page and line), or other statement under oath that demonstrates the dispute." Maryland Rule 2-501(b). The identification of a "mere presence of a factual dispute" is insufficient to overcome a properly filed motion for summary judgment. *Remsburg v. Montgomery*, 376 Md. 568, 580 (2003). The non-moving party must present "admissible evidence 'upon which the [fact-finder] could reasonably" find for the nonmovant. *Thomas v. Shear*, 247 Md. App. 430, 465 (2020).

## **ARGUMENT**

I.      **Allegany Is Entitled To Summary Judgment On Ms. Beeman's Wrongful Death Claim (Count I) And The Estate's Survival Claim (Count VII) Due To Ms. Beeman's Receipt Of Workers' Compensation Benefits.**

There is no genuine dispute of material fact that Ms. Beeman filed the WC Claim and received $59,191 in workers' compensation benefits, nor that the Total WC Benefits paid on behalf of Ms. Beeman and for decedent Mr. Joshua Nickel under Ms. Beeman's WC Claim are $92,298.24. **Exhibit 1** at ¶14, Exhibit B; **Exhibit 2** at ¶11, Exhibit A[5]. Allegany is entitled to judgment in its favor on Ms. Beeman's claims (Count I) as a matter of law. L&E § 9-509(a), (b).

The Estate's survival claim (Count VII) is also barred due to the compensation Ms. Beeman obtained from Harford for the claims she asserted on behalf of the Estate. Ms. Beeman, as the personal representative of the Estate, was permitted to bring an action for damages arising out of the death of Mr. Nickel in accordance with the Workers' Compensation Act. L&E § 9-509(c)(1)(ii). There can be no dispute that Allegany "secure[d] compensation" for the Injury, in the amount of the Total WC Benefit of $92,298.24 – of which $59,191 was directly paid to Ms.

---

[5] As observed by the Court, at the Hearing on Allegany's Motion to Dismiss, "counsel for the Plaintiffs did not contradict Allegany's contention that benefits were paid[.]" Mem. at 3.

Beeman.  **Exhibit 2** at ¶¶9-10, ¶11, Exhibit A; L&E § 9-509(c)(1).  The Estate's survival claim

(Count VII) is thus barred, as a matter of law, pursuant to L&E § 9-509 (c)(1), (d).  *Id.*

## II.    Ms. Beeman's Claim Is Also Barred By The Doctrine Of Judicial Estoppel.

Judicial estoppel prevents a litigant from taking inconsistent positions in different

proceedings as Ms. Beeman has done here. *Chaney Enterprises Ltd. P'ship v. Windsor*, 158 Md.

App. 1, 43-45 (2004) (applying judicial estoppel to prevent assertion of an inconsistent position

previously accepted by the WC Commission).  *See also Abrams v. Am. Tennis Cts., Inc.*, 160 Md.

App. 213, 227 (2004) (granting summary judgment on employee civil suit against employer where

employee took inconsistent position on cause of injury resulting in award of workers'

compensation benefits).

Courts evaluate three factors to determine whether judicial estoppel bars the civil litigant

from taking contradictory positions: (1) whether the litigant's positions are "'clearly

inconsistent'"; (2) whether the party asserting inconsistent positions was successful in persuading

the prior tribunal to accept its inconsistent position; and (3) whether the party asserting the

inconsistent positions "'would derive an unfair advantage, or would impose an unfair detriment'"

on the opposing party if permitted to advance the inconsistent positions.  *Abrams*, 160 Md. App.

at 225-26 (quoting *Middlebrook Tech, LLC. v. Moore*, 157 Md. App. 40, 63 (2004)).

Here, all three (3) factors support and confirm that the doctrine of judicial estoppel bars

Plaintiff's claim against Allegany.  With respect to the first factor, Ms. Beeman certified to the

WC Commission that Mr. Nickel's Injury was "accidental."  **Exhibit 1** at ¶19, Exhibit D at 1

(representing that Injury was "accidental"); *id.* at ¶20, Exhibit E at 1 (stating that "causation" was

not contested) and 2 (certifying same).  In direct contrast, Ms. Beeman now alleges that Mr.

Nickel's Injury was not "accidental" but that Allegany "deliberate[ly] inten[ded] to injure or kill"

Mr. Nickel.  Compl. at ¶¶ 69, 92 and 127.  These intentional claims in this Lawsuit are "clearly inconsistent" with her representations and certification to the WC Commission that Mr. Nickel's Injury was "accidental."  *Abrams*, 160 Md. App. at 225 (citation and internal quotation marks omitted).  This first judicial estoppel factor is satisfied.

The second judicial estoppel factor is satisfied because the WC Commission awarded compensation based upon Ms. Beeman's repeated representation that the Injury was "accidental", including in the WC Settlement Agreement. **Exhibit 1** at ¶19, Exhibit D at ¶10; **Exhibit 1** at ¶20, Exhibit E.  These prior inconsistent assertions and certifications resulted in an administrative determination by the WC Commission that is "at odds with [Ms. Beeman]'s present position" that Allegany intentionally caused Mr. Nickel's Injury.  *Abrams*, 160 Md. App. at 227.

The third and final judicial estoppel factor is also satisfied because Ms. Beeman would derive an unfair advantage, and would impose an unfair detriment on Allegany, if she were permitted to obtain a recovery in this case based on allegations that the injury was intentionally caused by Allegany when Ms. Beeman has already obtained workers' compensation benefits based on allegations that the injury was "accidental."  *See Chaney*, 158 Md. App. at 45; *Abrams*, 160 Md. App. at 227.

### III.    Allegany Is Entitled To Summary Judgment On The "Use Plaintiff's" Wrongful Death Claim (Count XIII).

#### A.  Plaintiff, Ms. Beeman, Is Judicially Estopped From Pursuing A Wrongful Death Claim On Behalf Of Mr. Nickel's Father.

In their Opposition to Allegany's Motion to Dismiss, Plaintiffs argue that Count XIII should not be dismissed because "Plaintiffs do not possess the requisite knowledge to aver Decedent's father dependency status[,]" and that they require discovery to obtain "the requisite knowledge[.]" Opp'n at 8.

However, when pursuing relief before the WC Commission, Ms. Beeman made the following directly contrary representation in the WC Settlement Agreement in order to obtain compensation benefits:

> By signing below, Ms. Beeman hereby affirms that there are no other qualified dependents, or minor children, that would be entitled to benefits under the Worker's Compensation Statute.

**Exhibit 1** at ¶ 19, Exhibit D at ¶6.

All three judicial estoppel factors are satisfied here because: (1) Ms. Beeman's allegations, insinuations and statements made in this case that Karl E. Nickel may be a dependent of the decedent are clearly inconsistent with her affirmation to the WC Commission in the WC Settlement Agreement that there are no other dependents; (2) Ms. Beeman was successful in having the WC Commission approve the WC Settlement Agreement based upon the inconsistent representation that there were no dependents other than her; and (3) Ms. Beeman would "derive an unfair advantage" and "would impose an unfair detriment" on Allegany if she were permitted to bring a claim on behalf of Karl E. Nickel based on his status as a purported "dependent" of the decedent Mr. Nickel when Ms. Beeman obtained the Total WC Benefits by making the contrary allegation that she was the decedent's only dependent.  *See Chaney*, 158 Md. App. at 43-45; *Abrams*, 160 Md. App. at 225-27.  The claim that Ms. Beeman now asserts on behalf of Karl E. Nickel as a putative dependent is barred by judicial estoppel.  *Chaney*, 158 Md. App. at 43-45; *Abrams*, 160 Md. App. at 225-27.

### B.  Karl E. Nickel's "Use Plaintiff's" Claim (Count XIII) Is Barred Because He Has Failed To Timely Intervene In This Lawsuit.

Karl E. Nickel is named as a "Use Plaintiff" in the Lawsuit.  Complaint at ¶121 and the caption of the Complaint.  Maryland Rule 15-1001(d) requires that a use plaintiff in a wrongful death action receive notice of the lawsuit and be permitted to intervene, if intervention is timely

requested by the use plaintiff. A use plaintiff that does not timely intervene before the expiration of the statute of limitations "may not participate in the action or claim a recovery." Rule 15-1001(e)(2). *See also* Rule 15-1001(e)(3) (a late filing may not be excused "if the statutory deadline [(i.e., the applicable statute of limitations) ]is not met").

The obligation to serve Karl E. Nickel with notice of this Lawsuit – as a Use Plaintiff – fell on Plaintiffs. Maryland Rule 15-1001(d). Plaintiffs have now twice represented to this Court that they have provided him notice of this Lawsuit.

First, on June 28, 2024, during the first oral argument on Allegany's Motion to Dismiss before the Honorable Gary Leasure (Ret.), counsel for Plaintiffs represented to this Court that Karl E. Nickel "received" the requisite notice under Rule 15-1001. June 28, 2024 Transcript, attached hereto as **Exhibit 3**, at 22:7-8. *See also McLhinney v. Lansdell Corp. of Md.*, 254 Md. 7, 13 (1969) (attorney may bind client by "statement of fact deliberately made"). During the September 24 Hearing on the Motion to Dismiss, Plaintiffs' attorney again confirmed that Plaintiffs "have complied with the requirements of the wrongful death statute" with regard to Karl E. Nickel "as a use Plaintiff[.]" September 24, 2024 Transcript, attached hereto as **Exhibit 4** at 26:3-6.

The statute of limitations in this case expired three (3) years from the date of Mr. Nickel's September 11, 2020 death – on September 11, 2023. Maryland Rule 15-1001(e)(1); Md. Code Ann., Cts. & Jud. Proc. § 3-904(g)(1). Karl E. Nickel did not move to intervene in this Lawsuit before the September 11, 2023 expiration of limitations, nor has he moved to intervene in the fifteen (15) months since limitations ran. **Exhibit 3**, at 22:7-8; **Exhibit 4** at 26:3-6.

As a result, Karl E. Nickel "may not participate in [this Lawsuit] or claim a recovery." Maryland Rule 15-1001(e)(2). Allegany is entitled to summary judgment on Count XIII.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the previously filed Allegany Motion to Dismiss, Defendant Allegany respectfully requests that it be granted summary judgement dismissing the Complaint against it with prejudice.

Dated: December 18, 2024          Respectfully submitted,

                               */s/ Alex J. Brown*

Joel I. Sher (AIS No. 7811010312)
Alex J. Brown (AIS No. 9912140080)
Michael S. Bullock (AIS No. 1712130070)
Shapiro Sher Guinot & Sandler
250 W Pratt Street, Suite 2000
Baltimore, Maryland 21201
410-385-0202 telephone
410-539-7611 facsimile
jis@shapirosher.com
ajb@shapirosher.com
msb@shapirosher.com

*Attorneys for Defendant Allegany Scrap, Inc.*

13

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that, on this 18th day of December, 2024, copies of the foregoing Defendant Allegany Scrap, Inc.'s Supplement In Support Of Its Motion For Summary Judgment, Exhibits 1-4 attached thereto, and proposed Order Granting Summary Judgment were served via MDEC on:

> Jason C. Buckel, Esq.
> T Lee Beeman, Esq.
> Buckel Levasseur Pillai & Beeman LLC
> 206 Washington Street
> Cumberland, Maryland 21502
>
> *Attorneys for Plaintiffs*
>
> E. Andrew Cole, Esq.
> Joseph M. Moeller, Esq.
> Stein Sperling Bennett De Jong Driscoll PC
> 1101 Wootton Parkway
> Suite 700
> Rockville, Maryland 20852
>
> *Attorneys for Defendants The Shredder Co., LLC,*
> *The Shredder Co., LP, Newell Recycling*
> *Equipment, LLC and Newell Recycling Company*
> *of El Paso, L.P.*

> */s/ Alex J. Brown*
> Alex J. Brown

E-FILED; Allegany Circuit Court
Docket: 12/18/2024 1:13 PM; Submission: 12/18/2024 1:13 PM
Envelope: 19235588

# EXHIBIT 1

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

LINDA S. BEEMAN, *et al.*                        *

     Plaintiffs                                    *

v.                                               *

                                      Case No. C-01-CV-23-000317

ALLEGANY SCRAP, INC., *et al.*                   *

     Defendants                                    *

*    *    *    *    *    *    *    *    *    *    *    *    *    *

### AFFIDAVIT OF BRIAN BENKO

1.    I am over the age of eighteen (18) and am competent to testify to the matters set forth in this Affidavit.

2.    I am currently employed by Smith Industries, Inc. ("Smith").  Smith oversees several corporate affiliates ("Affiliates") that operate scrap metal purchasing, processing and resale businesses in Maryland and other states.

3.    My current position at Smith is Information Officer.

4.    In my role as Information Officer at Smith, I manage workers' compensation claims filed by the employees of the Affiliates that Smith oversees, among other duties.

5.    Allegany Scrap, Inc. ("Allegany") is one of the Affiliates whose operations Smith oversees.  Allegany operates a scrap metal purchasing, processing and resale facility (the "Facility") located in Cumberland, Maryland.

6.    The Facility uses a commercial metal shredder to shred large pieces of scrap metal as part of the processing of these metals for resale.

7.    Mr. Joshua P. Nickel was employed by Allegany as a laborer at the Facility on September 10, 2020.

8.    Prince George's Scrap, Inc. ("Prince George's") is one of the corporate Affiliates Smith oversees.  Prince George's operates a scrap metal purchasing, processing and resale facility located in Prince George's County, Maryland.

1

9.    Prince George's is a named insured under a workers' compensation and employment liability policy (the "Policy") issued by Harford Mutual Insurance Company ("Harford"). The Policy period was effective from April 1, 2020 to its expiration on April 1, 2021.

10.    A true and correct copy of the Policy is attached hereto as **Exhibit A**.

11.    Allegany is an additional insured under the Policy.

12.    Prince George's and Allegany have agreed that when Allegany receives a claim for workers' compensation benefits made by or in connection with a covered employee of Allegany, Prince George's assumes liability for the claim as the "employer" of that covered employee (hereinafter referred to as the "Benefits Agreement").

13.    Mr. Nickel's mother, Ms. Linda Sue Beeman, filed a Dependent's Claim For Death Benefits ("Death Benefits Claim") with the Maryland Workers' Compensation Commission (the "WC Commission") against Allegany arising out of fatal injuries sustained by Mr. Nickel while Mr. Nickel worked at Allegany on September 10, 2020.

14.    I received and managed the Death Benefits Claim, assigned Claim Number B847488 ("WC Claim"), in the course of my duties for Smith. A true and correct copy of the Death Benefits Claim is attached hereto as **Exhibit B**.

15.    The WC Commission substituted Prince George's for Allegany as Mr. Nickel's "employer" in the Death Benefits Claim per the Benefits Agreement and the Policy, which was on file with the WC Commission.

16.    The WC Commission issued an order dated March 2, 2021 (the "March 2, 2021 Order") related to the WC Claim.

17.    A true and correct copy of the March 2, 2021 Order is attached hereto as **Exhibit C**.

18.    On or about November 29, 2021, Ms. Beeman, Prince George's and Harford entered into an Agreement Of Final Compromise And Settlement Dependent's Claim For Death Benefits (the "WC Settlement Agreement") concerning the WC Claim.

19.    A true and correct copy of the WC Settlement Agreement is attached hereto as **Exhibit D**.

20.    A true and correct copy of the Settlement Worksheet that accompanied the WC Settlement Agreement is attached hereto as **Exhibit E**.

21.    The WC Commission issued an order dated December 6, 2021 (the "December 6, 2021 Order") related to the WC Claim.

2

22.     A true and correct copy of the December 6, 2021 Order is attached hereto as **Exhibit F**.

I, Brian Benko, do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing Affidavit are true.

12/18/2024
Date

Brian Benko

3

# EXHIBIT  A

## To Exhibit 1

# WORKERS'
# COMPENSATION NOTICE

The employees of this business are covered by the Virginia Workers' Compensation Act. In case of injury by accident or notice of an occupational disease:

## THE EMPLOYEE SHOULD:

1.  Immediately give notice to the employer, in writing, of the injury or occupational disease and the date of accident or notice of the occupational disease.

2.  Promptly give to the employer and to the Virginia Workers' Compensation Commission notice of any claim for compensation for the period of disability beyond the seventh day after the accident. In case of fatal injuries, notice must be given by one or more dependents of the deceased or by a person in their behalf.

3.  In case of failure to reach an agreement with the employer in regard to compensation under the act, file application with the Commission for a hearing within two years of the date of accidental injury or first communication of the diagnosis of an occupational disease.

4.  If medical treatment is anticipated for more than two years from the date of the accident and no award has been entered, the employee should file a claim with the Commission within two years from the date of the accident.

**NOTE:** The employer's report of accident is not the filing of a claim for the employee. The voluntary payment of wages or compensation during disability, or of medical expenses, does not affect the running of the time limitation for filing claims. An award based on a voluntary agreement must be entered or a claim filed within two years; one year in death cases.

## THE EMPLOYER SHOULD:

1.  At the time of the accident, give the employee the names of at least three physicians from which the employee may select the treating physician.

2.  Report the injury to the Commission through your carrier or directly to the Commission.

3.  Accurately determine the employee's average weekly wage, including overtime, meals, uniforms, etc.

Questions may be answered by contacting the Commission. A booklet explaining the Workers' Compensation Act is available without cost from:

THE VIRGINIA WORKERS' COMPENSATION COMMISSION
1000 DMV Drive
Richmond, Virginia 23220

1-877-664-2566
vwc.state.va.us

Every employer within the operation of the Virginia Workers' Compensation Act MUST POST THIS NOTICE IN A CONSPICUOUS PLACE in his place of business.

**WCVA001 0616 (Bureau form VWC1)**

**The Harford Mutual Insurance Companies**

Bel Air, Maryland 21014-3544

Company: The Harford Mutual Insurance Company
NCCI #17094
**Policy Number:** 4095872    **Renewal of:** 4090800

**Named Insured and Mailing Address**

PRINCE GEORGE'S SCRAP, INC
SATELLITE SERVICES, INC
P. O. BOX 64430
Washington, DC 20029

**Agency Name and Address**

1405-BAS    ASSOCIATED INSURANCE MANAGEMENT, LLC
1300 SPRING STREET SUITE 300
SILVER SPRING, MD 20910
3016082500

# POLICYHOLDER DISCLOSURE NOTICE
# OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced. A portion of your annual premium is attributable to coverage for acts of terrorism, and does not include any charges for the portion of losses covered by the United States government under the Act. Refer to the attached Extension Of Information Page for the terrorism rates and premium for each state.

This policyholder notice provides no coverage nor can it be construed to replace any provision of your policy. The coverage provided by your policy for acts of terrorism and all other coverage is limited by the exclusions, limits, terms and conditions of your policy. If there is any conflict between the policy and this notice, the provisions of the policy shall prevail. Nothing in this notice should be construed as an offer to reinstate coverage for a cancelled/expired policy.

WCMS001 0115                                                                                                    Page 1 of 1

(0) 2020/02/01-1.00
ISSUE DATE: 03/19/2020 #1

# Understanding the Audit Process Could Save You Money
## By The Harford Mutual Insurance Companies

1. <u>What is an audit?</u> A report of collected information about an insured's operation and accounting records used to determine the actual insurance exposures for the coverages provided.

2. <u>Why and when is it necessary?</u> The original premium on the policy is an estimated premium. The final audit determines the actual premium. When actual exposures differ from the estimated exposures, an adjustment must be made to the premium of the expired policy.

3. <u>What insurance coverages require an audit?</u>
   - General Liability
     Premises/Operations Liability
     Products/Completed Operations
   - Garage Liability
   - Businessowners Liability
   - Workers' Compensation

4. <u>How should your records be kept?</u> Proper record keeping will permit the auditor to apply any allowable credits to your final premium. When the auditor requests payroll information, this includes *remuneration*. *Remuneration* means money, or any substitute for money, and includes the following:

| | | | |
|---|---|---|---|
| Wages | Commissions | Bonuses | Overtime Pay |
| Holiday Pay | Profit Sharing Plans | Sick Pay | Payment of Piece Work |
| Vacation Pay | Statutory Payments | Tool Allowances | Value of Board, Lodging |
| Tips | Store Certificates | Other Substitutes | |

<u>Overtime:</u> In most states, the amount paid in excess of straight time pay can be deducted if the excess can be verified in your records. You must maintain your records to show overtime pay separately by employee and in summary by classification of work.

<u>Division of Payroll:</u> Generally, a division of an individual employee's payroll to more than one classification is not allowed, except for construction or erection workers. In these cases, the payroll may be allocated to each type of work performed if proper records are kept. Your records must show the number of hours and amount of payroll for each type of work. Without an adequate breakdown, the full payroll must be charged to the highest-rated classification.

<u>Officers/Partners/Sole Proprietors:</u> Depending on state law, officers are usually covered for Workers Compensation benefits unless your state allows an exclusion endorsement. Partners and sole proprietors are usually not covered for benefits unless your state allows an inclusion endorsement. You should report payroll for each covered officer, partner or sole proprietor. Payroll may be subject to a minimum and maximum remuneration per annum, which is the lowest and highest payroll amount we will use to calculate premium. The state rating bureau establishes the minimum and maximum remuneration, which may change annually. For General Liability and Businessowners policies, payroll exceptions for officers, partners and sole proprietors may apply. Payroll may be subject to a flat remuneration per annum. This payroll exception will be used to calculate premium and may change annually.

<u>Subcontractors:</u> Certificates of insurance are required for all subcontractors as documentation that there is coverage in effect during the time that the work is being performed. Subcontractors must carry Liability limits of at least $1,000,000 and Workers Compensation limits of $100,000/$500,000/$100,000. If there are no certificates available, it will be necessary to classify the subcontractors as employees and the appropriate premium charges will be made.

For Workers' Compensation, if the subcontractor is an officer, partner or sole proprietor with no employees and exempt from Workers Compensation coverage, a certificate of insurance showing General Liability insurance with limits of liability of $1,000,000 or more is required. Without certificates of insurance, it will be necessary to classify these subcontractors as employees. Additional documentation may be necessary depending on state requirements.

5. <u>Who conducts the audit?</u> If the conditions of your policy require a physical audit, a Premium Auditor will contact you for an appointment. The Premium Auditor will examine and audit all records that relate to your policy.



# HARFORD MUTUAL
### COMMITTED TO MUTUAL SUCCESS

Policy #: 4095872                                    Agent:  ASSOCIATED INSURANCE MANAGEMENT, LLC

Issued to: PRINCE GEORGE'S SCRAP, INC          Phone #: 3016082500
           SATELLITE SERVICES, INC

Thank you for placing your insurance coverage with Harford Mutual. Your business is very important to us. If you have any questions regarding policy coverages or need to make any changes, please contact your Agent listed above. If you have any billing questions, please contact Accounting Department Customer Service at the phone number listed below.

| | |
|---|---|
| Type of Policy: | Workers Compensation |
| Billing: | Direct Bill |
| Annual Premium: | $212,199 |
| Billing Customer ID: | 333766 |
| Payment Plan: | E (10 payments) |
| Accounting Dept Customer Service: | (866) 377-1896 |
| Policy Period: | 04/01/2020 to 04/01/2021 |

## ** IMPORTANT BILLING INFORMATION **

Please note that this document is not your premium statement. Your agent has selected Harford Mutual to bill you directly for the periodic premium payments due for some or perhaps all of your insurance policies. Your premium statement will be mailed to you from Harford Mutual. The premium statement is the only invoice that you will receive for these policies. You will receive one combined easy-to-read statement for the various policies your agent has selected for this plan. On the back of the premium billing statement you will find the Payment Plan Schedule for all policies that are being billed. This schedule was produced based upon all premium transactions processed as of the time the statement was prepared.

INSURED COPY

1405-BAS

200 NORTH MAIN STREET, BEL AIR, MARYLAND 21014-3544  ■  T (410) 838 4000    F (410) 838 8675  ■  HARFORDMUTUAL.COM

# HARFORD MUTUAL

## INSURING OPPORTUNITY ®

This policy is underwritten by:

## Harford Mutual Insurance Company

200 North Main Street, Bel Air, MD 21014
1-800-638-3669

# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

Policy #:
Issued to:

4095872
SATELLITE SERVICES, INCINC

Agent:
Phone:

ASSOCIATED INSURANCE MANAGEMENT, LLC
3016082500

AN IMPORTANT NOTICE CONCERNING YOUR PRIVACY IS ATTACHED

> THIS POLICY JACKET WITH DECLARATIONS, COVERAGE FORM(S), AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY

Report new claims and first notice of loss
1-800-638-3669  | ClaimLine@hm1842.com

*Insuring opportunity through mutual success* ®

01HMWC20

MUTUALS - MEMBERSHIP AND VOTING NOTICE:  The insured is notified that by virtue of this policy, he is a member of The Harford Mutual Insurance Company of Bel Air, Maryland, and is entitled to vote either in person or by proxy at any and all meetings of said Company.  The Annual Meetings are held in the Home Office, on the third Wednesday of May, of each year.

MUTUALS - PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY:  No Contingent Liability:  This policy is nonassessable.  The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____ Secretary                    _____ President

# Customer Privacy Policy

Since 1842, Harford Mutual Insurance Company has been committed to the mutual success of our policyholders, agencies and local community. It is because of this commitment that we are dedicated to protecting the confidentiality of our customers' Nonpublic Personal Information (NPI). We take this opportunity to share our procedures and policies designed to safeguard your information, which may be obtained in the course of our business relationship with you.

This notice serves to explain: what type of information we collect; how we collect it; what we do with it after we collect it; how we safeguard your privacy; and how you may obtain information, if any, about your NPI. We will inform you concerning these policies in this notice and every year that you remain our customer.

## Our Privacy Policy

- We do not sell your NPI.
- We do not share your NPI with nonaffiliated third parties other than as necessary to service your policy or claim.
- We do not share your health or financial information, except as authorized by law.
- We use your NPI only to service your policies, claims and to meet your needs as they have been described to us.
- We will require that persons or organizations providing goods or services to you on our behalf protect the confidentiality of your NPI.
- We protect your NPI regardless of whether you are a current or a former customer.
- We maintain physical, electronic and procedural safeguards to protect your NPI from disclosure.

## How We Collect Information

We collect and retain information about you to provide you with the coverage, product, or service you request, or to service your account as permitted by law, and as needed to conduct business. We collect your NPI from the following sources:

- Your application for insurance or similar forms;
- Consumer reporting agencies, motor vehicle records, credit reports, claims history, loss information reports, court records or other public records; property inspections to verify value and condition for property insurance; or
- Your insurance agent.

## Information We Collect About You

Harford Mutual gets most of its information from your application for insurance or from your insurance agent. This includes, for example, your name; address; social security number; financial account or credit card information; vehicle type; credit based insurance score; a report about your coverage and claims history with other companies and motor vehicle records, to name a few.

For property and liability insurance, we may send someone to inspect your property and verify the value and condition of your property. A photo of any property to be insured may be taken and retained. We may also obtain reports concerning the square footage of your property from companies that collect such data.

For workers' compensation insurance, we may send someone to perform an audit or accounting of your business records to ensure that you are getting the appropriate premium charge.

## What We Do With the Information Collected

Harford Mutual uses your information only as permitted by law. We may use your information to: service products you have purchased; underwrite your policy; process claims; protect against fraud; and comply with legal requirements.

Information collected is maintained in either our policy records or in your agent's files. We may review it to evaluate requests for insurance coverage or to determine your insurance rates. Your information may also be used to decide whether to issue a renewal policy or settle a claim.

If coverage is declined, or if your rates increase because of information we received from a consumer report, we will tell you as required by the Fair Credit Reporting Act.

## Information Disclosure

We will not disclose information about you without your written consent unless the disclosure is necessary to conduct our business. By law, we can share information about you without your permission under certain circumstances to certain people and organizations. Examples include:

- Our affiliated companies.
- Independent claim adjusters, appraisers, contractors, auto repair shops, investigators and attorneys in order to investigate, defend or settle a claim involving you.
- Your agent.
- Mortgagees, lienholders, lessors, loss payees, or other persons shown on our records as having a legal or beneficial interest in your policy or claim proceeds.
- Consultants or other service providers that perform business functions for us such as mailing or marketing services.
- Our reinsurance companies.
- Businesses that conduct research for us such as actuarial or underwriting studies.
- Other insurance companies.
- Consumer reporting agencies in connection with any application, policy or claim involving you.
- Insurance support organizations that collect information to detect and prevent insurance crimes or fraud.
- Medical care institutions or professionals to verify coverage or claims-related services.
- Insurance regulatory agencies in connection with the regulation of our business.
- Law enforcement or other governmental authorities.
- By order of subpoena, warrant or other court order as required by law.

We do not otherwise give information about you to people or organizations that would use the information to contact you about their product or services.

## How We Protect Your Information

Harford Mutual maintains physical, electronic and procedural safeguards to protect your NPI. Access to customer records is restricted to employees with a business reason for knowing such information in order to provide products and services to you. Employees are trained to protect customer privacy by adhering to the privacy responsibilities outlined by the company. Should you cease being a customer, we will continue to protect your personal information in the same manner. At Harford Mutual, our employees are responsible for upholding a Code of Conduct and Confidentiality policy that requires them to keep confidential all NPI obtained in the course of our business.

## Your Rights

You have the right to know what information we have about you and to receive a copy upon request. Despite your request, we may not be able to disclose certain types of information collected when evaluating claims or possible lawsuits. In this regard, we will not send you any medical information we have received about you from a doctor or other health care provider due to certain health information protection laws. Rather, you should contact the doctor or health care provider directly to obtain this information.

Also, we will not send you any reports provided by any consumer reporting agency. Instead, we will give you the name and address of any consumer reporting agency that prepared the report about you, so that you can contact them for a copy.

To submit your request for other types of information, please send your complete name, address and policy number to:

Harford Mutual Insurance Company
Privacy Inquiries
Office of General Counsel & Director of Compliance
200 North Main Street
Bel Air, MD 21014

Within thirty (30) business days of receipt of your written request, we will disclose to you the NPI about you in our files. You may receive a copy at a reasonable charge. We will tell you with whom we have shared your NPI within the past two (2) years, or for the time period required by state law. If you believe your file should be corrected, please contact us in writing with the request. We will make the change or provide an explanation of our refusal to do so.

Thank you for choosing Harford Mutual for your insurance protection. We work hard to preserve the confidentiality of your nonpublic personal information.

Our longstanding commitment to preserving your privacy continues, as does our dedication to providing personal service aimed at ensuring our mutual success. We have been in business to accomplish this goal since 1842.

**The Harford Mutual Insurance Companies**

**Company:** The Harford Mutual Insurance Company
NCCI #17094

**Policy Number:** 4095872   **Renewal of:** 4090800

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY INFORMATION PAGE**

### Named Insured and Mailing Address

1. PRINCE GEORGE'S SCRAP, INC
   SATELLITE SERVICES, INC
   P. O. BOX 64430
   Washington, DC 20029

### Agency Name and Address

1405-BAS   ASSOCIATED INSURANCE MANAGEMENT, LLC
1300 SPRING STREET SUITE 300
SILVER SPRING, MD 20910
3016082500

FORM OF NAMED INSURED'S BUSINESS: Corporation
FEDERAL ID #: ▮▮▮▮▮▮   ▮▮▮▮▮▮
EMPLOYER ID #:
RISK ID#: 913303806

Other work places not shown above:
   5700 BRANCHVILLE ROAD, College Park, MD 20740

2. Policy Period: 04/01/2020 to 04/01/2021 at 12:01 A.M. Standard Time at your mailing address shown above.

3. Coverage:
   A. Workers Compensation Insurance:  Part One of the policy applies to the Workers Compensation Law of the states listed here:
      MD, DE, VA, PA

   B. Employers Liability Insurance:  Part Two of the policy applies to work in each state listed in Item 3.A.  The Limits of our liability under Part Two are:

      Bodily Injury by Accident     1,000,000   each accident
      Bodily Injury by Disease      1,000,000   policy limit
      Bodily Injury by Disease      1,000,000   each employee

   C. Other States Insurance:  Part Three of the policy applies to the states, if any, listed here:
      All states other than those listed in 3A and North Dakota, Ohio, Washington, and Wyoming.

   D. This policy includes these endorsements and schedules:
      *** SEE EXTENSION OF INFORMATION PAGE***

4. Premium:  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.  All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis Total Estimated Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| *** SEE EXTENSION OF INFORMATION PAGE *** | | | | |
| | | Sub-Total Estimated Premiums | | $212,098 |
| | | Sub-Total Assessments/Surcharges | | $101 |
| | | Total Estimated Cost | | $212,199 |
| | | Minimum Premium | | $1,706 |
| | | Deposit Premium | | $212,199 |

COPYRIGHT 1987 NATIONAL COUNCIL ON COMPENSATION INSURANCE

(1) 2020/02/01-1.00
ISSUE DATE: 03/19/2020 #1

Countersigned:_____
                    (Authorized Representative)   (Date)

**INSURED COPY**

4. Premium

| Classifications | Code No. | Premium Basis Total Estimated Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| **STATE: MARYLAND** | | | | |
| Iron or Steel Scrap Dealer and Drivers | 8265 | 3,953,394 | 4.41 | $174,345 |
| Collectors, Messengers or Salespersons - Outside | 8742 | 274,780 | .27 | $742 |
| Clerical Office Employees NOC | 8810 | 961,123 | .09 | $865 |
| Detective or Patrol Agency and Drivers | 7720 | (If Any) | 2.76 | |
| Subtotal | | | | $175,952 |
| Employers Liability  1,000/1,000/1,000 | 9812 | 1.1% | | $1,935 |
| Subtotal | | | | $177,887 |
| Experience Modification | 9898 | | .920 | -$14,231 |
| Subtotal | | | | $163,656 |
| Schedule Rating Credit | 9887 | | .80 | -$32,731 |
| Subtotal | | | | $130,925 |
| Premium Discount - MD | 0063 | | | -$15,213 |
| Subtotal | | | | $115,712 |
| Subtotal of MD Premium | | | | $115,712 |
| **STATE: DELAWARE** | | | | |
| Iron or Steel Scrap Dealer | 0860 | 445,541 | 10.67 | $47,539 |
| Clerical Office Employees | 0953 | (If Any) | .18 | |
| Salesperson - Outside | 0951 | 187,354 | .64 | $1,199 |
| Subtotal | | | | $48,738 |
| Employers Liability  1,000/1,000/1,000 | 9812 | 1.1% | | $536 |
| Subtotal | | | | $49,274 |
| Experience Modification | 9898 | | .887 | -$5,568 |
| Subtotal | | | | $43,706 |
| Schedule Rating Credit | 9887 | | .88 | -$5,245 |
| Subtotal | | | | $38,461 |
| Premium Discount - DE | 0064 | | | -$4,469 |
| Subtotal | | | | $33,992 |
| Subtotal of DE Premium | | | | $33,992 |
| **STATE: VIRGINIA** | | | | |
| Iron or Steel Scrap Dealer and Drivers | 8265 | 1,282,397 | 5.32 | $68,224 |

(2) POLICY: 4095872 2020/02/01-1.00
ISSUE DATE: 03/19/2020 #1

WC000001B

EXTENSION OF INFORMATION PAGE

4. Premium

| Classifications | Code No. | Premium Basis Total Estimated Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| Collectors, Messengers or Salespersons - Outside | 8742 | 250,183 | .20 | $500 |
| Clerical Office Employees NOC | 8810 | 256,669 | .09 | $231 |
| Subtotal | | | | $68,955 |
| Employers Liability 1,000/1,000/1,000 | 9812 | 1.1% | | $759 |
| Subtotal | | | | $69,714 |
| Experience Modification | 9898 | | .920 | -$5,577 |
| Subtotal | | | | $64,137 |
| Schedule Rating Credit | 9887 | | .85 | -$9,621 |
| Subtotal | | | | $54,516 |
| Premium Discount - VA | 0063 | | . | -$2,327 |
| Subtotal | | | | $52,189 |
| Subtotal of VA Premium | | | | $52,189 |

==============================================================================

STATE: PENNSYLVANIA

==============================================================================

| Classifications | Code No. | Premium Basis Total Estimated Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| Clerical Office Employees | 0953 | (If Any) | .11 | |
| Iron or Steel Scrap Dealer | 0860 | 106,911 | 5.79 | $6,190 |
| Salesperson - Outside | 0951 | 32,611 | .27 | $88 |
| Subtotal | | | | $6,278 |
| Employers Liability 1,000/1,000/1,000 | 9812 | 1.4% | | $88 |
| Subtotal | | | | $6,366 |
| Merit Rating | 9885 | | .95 | -$318 |
| Subtotal | | | | $6,048 |
| Schedule Rating Credit | 9887 | | .85 | -$907 |
| Subtotal | | | | $5,141 |
| Premium Discount - PA | 0064 | | | -$220 |
| Subtotal | | | | $4,921 |
| Subtotal of PA Premium | | | | $4,921 |

==============================================================================

| | Code No. | Premium Basis Total Estimated Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| Subtotal of All States | | | | $206,814 |
| Expense Constant Charge | 0900 | | | $220 |
| Terrorism - MD | 9740 | | .06 | $3,114 |
| Catastrophe Other than Certified Acts of Terrorism - MD | 9741 | | .02 | $1,038 |
| Terrorism - DE | 9740 | 632,895 | .01 | $63 |
| Catastrophe Other than Certified Acts of Terrorism - DE | 9741 | | .01 | $63 |
| Terrorism - VA | 9740 | 1,789,249 | .04 | $716 |

(3) POLICY: 4095872 2020/02/01-1.00
ISSUE DATE: 03/19/2020 #1

WC000001B

EXTENSION OF INFORMATION PAGE

4. Premium

| Classifications | Code No. | Premium Basis Total Estimated Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| Terrorism – PA | 9740 | 139,522 | .03 | $42 |
| Catastrophe Other than Certified Acts of Terrorism – PA | 9741 | | .02 | $28 |
| Total Estimated Premium | | | | $212,098 |
| Workers Compensation Minimum Premium | | | | $1,586 |
| Increased Employers Liability Minimum | | | | $120 |
| Employer Assessment – PA | 0938 | 2.02% | | $101 |
| Total Estimated Annual Cost | | | | $212,199 |

(4) POLICY: 4095872 2020/02/01–1.00
ISSUE DATE: 03/19/2020 #1

IMPORTANT NOTICES TO POLICYHOLDERS
--------------------------------------------------------------------------------

```
ILMD001   (0718) IMPORTANT POLICYHOLDER INFORMATION/BILLING AND POLICY FEES MD
ILMD07-3         POLICYHOLDER DISCLOSURE NOTICE
ILMS016   (1015) CUSTOMER PRIVACY POLICY
ILMS019   (1119) UNDERSTANDING THE AUDIT PROCESS COULD SAVE YOU MONEY
ILMS11    (0604) ADVISORY NOTICE TO POLICYHOLDERS - OFAC
ILN167    (0113) MARYLAND FRAUD STATEMENT
ILVA001   (0116) IMPORTANT INFORMATION REGARDING YOUR INSURANCE
MDWC10119 (0613) NOTICE - MARYLAND WORKERS COMPENSATION LAW PROVIDES
WC PA 03-1       NOTICE TO PENNSYLVANIA POLICYHOLDERS
WCDE001   (1215) NOTICE OF ELECTION TO ACCEPT OR REJECT INSURANCE DEDUCTIBLE FOR DE
WCDE002   (0217) DELAWARE WORKPLACE SAFETY PROGRAM POLICYHOLDER NOTICE
WCMS001   (0115) POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE
WCMS002   (1216) AUDIT NONCOMPLIANCE CHARGE ADVISORY NOTICE TO POLICYHOLDERS
WCVA001   (0616) WORKERS' COMPENSATION NOTICE
```

--------------------------------------------------------------------------------
                COMMERCIAL WORKERS COMPENSATION FORM SCHEDULE
--------------------------------------------------------------------------------
FORMS AND ENDORSEMENTS APPLYING TO AND MADE A PART OF THIS POLICY AT TIME OF ISSUE:
--------------------------------------------------------------------------------

```
WC000000C (0115) WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY
WC000115  (0120) NOTIFICATION OF PENDING LAW CHANGE TO TERRORISM RISK INSURANCE PROGRAM
WC000404  (0484) PENDING RATE CHANGE ENDORSEMENT
                      State(s): DE
                              : MD
                              : PA
                              : VA


WC000406  (0884) PREMIUM DISCOUNT ENDORSEMENT
                         State: MD
                   First $5,000: 0.0%
                  Next $95,000: 10.9%
                  Next $400,000: 12.6%
                  Over $500,000: 14.4%


WC000406  (0884) PREMIUM DISCOUNT ENDORSEMENT
                         State: VA
                   First $5,000: 0.0%
                   Next $95,000: 3.5%
                   Next $400,000: 5.0%
                   Over $500,000: 7.0%


WC000406  (0884) PREMIUM DISCOUNT ENDORSEMENT
                         State: DE
                   First $5,000: 0.0%
                  Next $95,000: 10.9%
                  Next $400,000: 12.6%
                  Over $500,000: 14.4%


WC000406  (0884) PREMIUM DISCOUNT ENDORSEMENT
                         State: PA
                   First $5,000: 0.0%
                   Next $95,000: 3.5%
                   Next $400,000: 5.0%
                   Over $500,000: 7.0%


WC000414A (0119) 90-DAY REPORTING REQUIREMENT-NOTIFICATION OF CHANGE IN OWNERSHIP ENDT
WC000419  (0101) PREMIUM DUE DATE ENDORSEMENT
WC000421D (0115) CATASTROPHE OTHER THAN CERTIFIED ACTS OF TERRORISM PREMIUM ENDORSEMENT
WC000422B (0115) TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE
```

```
WC000424  (0117) AUDIT NONCOMPLIANCE CHARGE ENDORSEMENT
                          State(s): DE
                                  : MD
                                  : PA
                                  : VA
          Basis of noncompliant charge: Estimated annual premium
          Noncompliant charge multiplier: 2.00


WC000425  (0517) EXPERIENCE RATING MODIFICATION FACTOR REVISION ENDORSEMENT
WC070601  (0788) DELAWARE NONRENEWAL ENDORSEMENT
WC190601G (1017) MARYLAND CANCELLATION AND NONRENEWAL ENDORSEMENT
WC370401  (0117) PENNSYLVANIA AUDIT NONCOMPLIANCE CHARGE ENDORSEMENT
WC370405  (0896) PENNSYLVANIA MERIT RATING PLAN ENDORSEMENT
WC370601  (0484) SPECIAL PENNSYLVANIA ENDORSEMENT - INSPECTION OF MANUALS
WC370602  (0484) PENNSYLVANIA NOTICE
WC370603A (0895) PENNSYLVANIA ACT 86-1986 ENDORSEMENT
WC370604  (1099) PENNSYLVANIA EMPLOYER ASSESSMENT ENDORSEMENT
WC450602  (0793) VIRGINIA AMENDATORY ENDORSEMENT
WC990601  (0917) PARTICIPATING ENDORSEMENT
WC000313  (0484) WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT
                          Schedule: VULCAN CONSTRUCTION MATERIALS, LP


WC000403  (0484) EXPERIENCE RATING MODIFICATION FACTOR ENDORSEMENT
BE-24     (0196) FEDERAL ID #'S
```

**Company:** The Harford Mutual Insurance Company    Bel Air, Maryland 21014-3544
NCCI #17094

**Policy Number:** 4095872    **Renewal of:** 4090800

**Named Insured and Mailing Address**

PRINCE GEORGE'S SCRAP, INC
SATELLITE SERVICES, INC
P. O. BOX 64430
Washington, DC 20029

**Agency Name and Address**

1405-BAS    ASSOCIATED INSURANCE MANAGEMENT, LLC
1300 SPRING STREET SUITE 300
SILVER SPRING, MD 20910
3016082500

**Policy Period:** From  04/01/2020 to 04/01/2021  at 12:01 A.M. Standard Time at your mailing address shown above.
**In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

FEDERAL ID #'S

Form Number: BE-24

ALLEGANY SCRAP INC



PRINCE GEORGES SCRAP INC

(7) POLICY: 4095872 2020/02/01-1.00
ISSUE DATE: 03/19/2020 #1

**INSURED COPY**

**POLICYHOLDER DISCLOSURE NOTICE**

Pursuant to Section 27-501 (n) (2) of the Insurance Code of Maryland, we are notifying you of the following:

> We will consider your claims history for purposes of determining whether to cancel or refuse to renew your policy.

ILMD001 0718

# IMPORTANT POLICYHOLDER INFORMATION CONCERNING BILLING AND POLICY FEES MARYLAND

The purpose of this Policyholder Notice is to provide you with important information about our billing practices that may affect you and fees that may apply under certain circumstances

**Billing Options:** Depending on the type of billing your agent has selected you may be billed separately by either the agent or by the company. All policies issued by one of the Harford Mutual Insurance Companies are eligible to be placed on an installment plan.

**Company Billing:** If you are being billed by the company, you will be assigned a six digit client number. This billing customer number should be used for each policy on the direct bill plan and on all correspondence regarding your bill. Depending on the payment plan chosen, you may receive a bill once a month on the same day each month during the payment period with one statement for all policies that are linked by billing customer number under the company Direct Bill plan. Payment plans are available if you elect to pay on installments.

**Payment Plans:** If you elect to pay your premium in full there are no installment charges applied to your policy. If you elect to pay your premiums in installments using one of our payment plans, a billing installment fee of **$5.00** will apply at a policy level to all installments except the first installment. It is recommended that all policies for the same insured have concurrent policy dates and utilize the same payment plan.

**Late Fee:** If we do not receive the minimum amount of payment due on or before the due date, as indicated on your billing notice, a non-payment of premium cancellation notice will be issued with a future effective date. A **$10.00** late fee will apply at a policy level whenever a non-payment of premium notice is processed.

**Dishonored Check Fee:** If your payment is made by check and your financial institution refuses to honor the premium payment, due to insufficient funds in your account or for some other reason, a **$25.00** non-sufficient fund check fee will apply.

**Endorsements:** All endorsements, both additional and return premiums, will be spread over the remaining installment payment periods based on the effective date of the endorsement. If an endorsement is processed with a retroactive effective date, the impact on the next billing statement will be greater than the impact on the remaining installments.

Please review this information and contact your agent or the company if you have questions or need additional information about the billing and policy fees.

**Thank you for choosing one of The Harford Mutual Insurance Companies for your insurance coverage.**

ILMD001 0718

Page 1 of 1

## ADVISORY NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

**NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.**

**THIS NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO DIRECTIVES ISSUED BY OFAC.**

### PLEASE READ THIS NOTICE CAREFULLY

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- ➢ Foreign agents;
- ➢ Front organizations;
- ➢ Terrorists;
- ➢ Terrorist organizations; and
- ➢ Narcotics traffickers;

As "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site - http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**Copyright, Insurance Services Office, Inc. 2003**        **ILMS11 (0604)**

IL N 167 01 13

# MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

© Insurance Services Office, Inc., 2012

## IMPORTANT INFORMATION REGARDING YOUR INSURANCE

In the event you need to contact someone about this insurance for any reason, please contact your agent. If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact the insurance company issuing this insurance at the following address and telephone number:  Harford Mutual Insurance Company / Firstline National Insurance Company, 200 North Main Street, Bel Air, MD 21014  Telephone:  410-838-4000.

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at: P.O. Box 1157, Richmond, VA 23218, or call toll-free within the state of VA 1-800-552-7945 or out of state calls 804-371-9741.

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent, company or the Bureau of Insurance, have your policy number available.

# NOTICE

All Maryland Employers

The Maryland Workers' Compensation Law Provides that:

1) all employers must have a work permit or special permit for each minor employee as required by Title 3, Subtitle 2 of the Labor and Employment Article; and

2) if the employer does not have a work permit or special permit for a minor employee:
   (i) the State Workers' Compensation Commission may award twice the compensation and death benefits otherwise allowed under Title 9, Subtitle 6 of the Labor and Employment Article in a claim by that employee or that employee's dependent; and

   (ii) the employer is solely liable for any increase in compensation or death benefits in a claim by that employee or that employee's dependent.

MD-WC-101-19
Edition Date 2013

NOTICE TO PENNSYLVANIA POLICYHOLDERS

The Harford Mutual Insurance Company and Firstline National Insurance Company maintains and provides accident and illness prevention services as required by the nature of the policyholder's business or its operation, in accordance with the Pennsylvania Workers' Compensation Act including information about the 5% premium discount available to employers who form a certified workplace safety committee. These services include:

- **Surveys/Recommendations**
- **Accident and Illness Prevention Training Programs**
- **Consultations**
- **Analyses of Accident Causes**
- **Industrial Hygiene**
- **Industrial Health Services**

For more information about these services contact a representative in our Loss Control Department at 410-838-4000.

**NOTICE OF ELECTION TO ACCEPT OR REJECT AN INSURANCE DEDUCTIBLE
FOR DELAWARE WORKERS COMPENSATION DEATH AND MEDICAL BENEFITS**

Delaware Law permits an employer to buy workers compensation insurance with a deductible. The deductible is for death and medical benefits and applies to each accident. The deductibles available and the corresponding premium reductions are as follows:

| Deductible Per Accident | Loss Elimination Ratio | Premium Credit |
|---|---|---|
| $500 | 0.017 | 0.013 |
| 1,000 | 0.030 | 0.023 |
| 1,500 | 0.040 | 0.031 |
| 2,000 | 0.049 | 0.038 |
| 2,500 | 0.057 | 0.044 |
| 3,000 | 0.063 | 0.049 |
| 3,500 | 0.069 | 0.053 |
| 4,000 | 0.075 | 0.058 |
| 4,500 | 0.080 | 0.062 |
| 5,000 | 0.085 | 0.066 |

You are not required to choose a deductible program. However, if you do so choose, it is to be understood that your insurance company will administer and pay all claims and that you will reimburse the insurance company for payments it makes within the amount of the deductible selected. Failure to reimburse the insurance company for such deductible amounts within 30 days can result in cancellation of coverage.

Please show whether or not you want the deductible by initialing the appropriate choice below.

_____ Yes, I want a deductible of _____ applied to death and medical benefits under the Delaware Workers Compensation Law. I understand that the company shall pay the deductible amount and be reimbursed by the employer shown below.

_____ No, I do not want the deductible described in this Notice.

I understand that in accordance with 19 Del. C. §2372, I have the option of modifying the above deductible program choice at the time of renewal of my workers compensation insurance policy with the insurance company named below.

_____        _____
Date                           Employer

                               _____
                               Name

                               _____
                               Title

_____
Insurance Company

WCDE001 1215

# DELAWARE WORKPLACE SAFETY PROGRAM POLICYHOLDER NOTICE

In coordination with the Delaware Compensation Rating Bureau, the Delaware Insurance Commissioner's Office offers Delaware employers an opportunity to lower workers' compensation insurance premiums by participating in a Delaware Workplace Safety Program.

You may earn a discount up to 19 percent by providing and maintaining a safe work place. There are no penalties for failing to qualify and there will be no premium increases or sanctions imposed because you do not participate.  This will only benefit you by taking the time to determine if you qualify for the Delaware Workplace Safety Program insurance premium discount.

The following conditions are considered, but are not limited to the following:

- An effective health and safety program;
- Adequate and effective employee training;
- Identification and elimination of potential hazardous conditions; and
- Three years of workplace injury data.

Although an inspector may cite Occupational Safety & Health (OSHA) standards, other regulations or guidelines, the Delaware Workplace Safety Program is not the same as an OSHA inspection.  The purpose is not to determine compliance with OSHA or any other safety regulations or standards of care; it is simply to determine whether the health and safety of employees are an important part of the participating businesses and that hazards are routinely and regularly identified and corrected.

No liability or responsibility is assumed by the person or entity preparing the report or performing the inspection, for any injuries to employees, subcontractors or other persons injured at the businesses participating in the Delaware Workplace Safety Program.  It remains the sole responsibility of the participating business to assure their premises are safe for their employees, subcontractors and all other persons at their businesses and facilities.  No contractual relationship exists between the parties performing the inspections and preparing the reports and the participating businesses, their employees, subcontractors and all other persons on their premises.

For more information, you may visit the Delaware Insurance Department website at www.delawareinsurance.gov or submit a request for information either by phone, mail, e-mail or fax to one of the following:

**Delaware Department of Insurance**
Attn:  Workplace Safety
841 Silver Lake Blvd.
Dover, DE 19904

**Phone:**  (302) 674-7377
**Fax:**  (302) 736-7910
**E-mail:**  safety@state.de.us

WCDE002 0217                                                                                    **Page 1 of 1**

# AUDIT NONCOMPLIANCE CHARGE
# ADVISORY NOTICE TO POLICYHOLDERS

If you are noncompliant with the audit process a charge may be assessed to your policy premium.

An Audit Noncompliance Charge endorsement is attached to your policy.  The endorsement outlines the method for calculating the Audit Noncompliance Charge.

The audit provision is located under Part Five - Premium, Section G.(Audit) of your Workers Compensation and Employers Liability Insurance Policy (WC 00 00 00 C).

Case 1:25-cv-01912-CJC   Document 1-1   Filed 06/12/25   Page 485 of 737

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. Who is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. State

State means any state of the United States of America, and the District of Columbia.

### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE
## WORKERS COMPENSATION INSURANCE

### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.
2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;
2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;
3. litigation costs taxed against you;
4. interest on a judgment as required by law until we offer the amount due under this insurance; and
5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/12/25    Page 486 of 737

insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;
2. you knowingly employ an employee in violation of law;
3. you fail to comply with a health or safety law or regulation; or
4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.
2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.
3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.
4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.
5. This insurance conforms to the parts of the workers compensation law that apply to:
   a. benefits payable by this insurance;
   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.
6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO
## EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
3. Bodily injury by accident must occur during the policy period.
4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.
5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B. We Will Pay

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## C. Exclusions

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Sections 901 et seq.), the Nonappropriated Fund Instrumentalities Act (5 U.S.C. Sections 8171 et seq.), the Outer Continental Shelf Lands Act (43 U.S.C. Sections 1331 et seq.), the Defense Base Act (42 U.S.C. Sections 1651–1654), the Federal Mine Safety and Health Act (30 U.S.C. Sections 801 et seq. and 901 - 944), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 U.S.C. Sections 51 et seq.), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member of the crew of any vessel, and does not cover punitive damages related to your duty or obligation to provide transportation, wages, maintenance, and cure under any applicable maritime law;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. Sections 1801 et seq.) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

## E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/12/25    Page 488 of 737

## F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

## G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident—each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease—policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease—each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

## H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

## I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE
## OTHER STATES INSURANCE

## A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

## B. Notice

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR
## YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE
## PREMIUM

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

### B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

### D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

### E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short-rate cancelation table and procedure. Final premium will not be less than the minimum premium.

### F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/12/25    Page 490 of 737

## PART SIX
## CONDITIONS

**A. Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

**B. Long Term Policy**

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

**C. Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

**D. Cancelation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflict with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with the law.

**E. Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

© Copyright 2013 National Council on Compensation Insurance, Inc. All Rights Reserved.

## NOTIFICATION ENDORSEMENT OF PENDING LAW CHANGE TO TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT OF 2015

This endorsement is being attached to your workers compensation and employers liability insurance policy. This endorsement does not replace the separate Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 B) that is attached to your current policy and which remains in effect as applicable.

The Terrorism Risk Insurance Act of 2002 (TRIA), as previously amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015 (TRIPRA 2015), provides for a program under which the federal government will share in the payment of insured losses caused by certain acts of terrorism. In the absence of affirmative US Congressional action to extend, update, or otherwise reauthorize TRIPRA 2015, in whole or in part, TRIPRA 2015 is scheduled to expire on December 31, 2020.

Since the timetable for any further Congressional action regarding TRIPRA 2015 is presently unknown, and exposure to acts of terrorism remains, we are providing policyholders with relevant information concerning their workers compensation policies in the event of the TRIPRA 2015's expiration.

Your policy provides coverage for workers compensation losses caused by acts of terrorism, including workers compensation benefit obligations dictated by state law, except in Pennsylvania, where injuries or deaths resulting from certain war-related activities are excluded from workers compensation coverage. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy.

**The premium charge for the coverage that your policy provides for terrorism losses is shown in Item 4 of the policy Information Page or the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 B) Schedule that is attached to your policy. This amount may continue or change for new, renewal, and in-force policies in effect on or after December 31, 2020, in the event of TRIPRA 2015's expiration, subject to regulatory review in accordance with applicable state law.**

You need not do anything further at this time.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                              Policy No.                    Endorsement No.

Insured                                                                                         Premium:

Insurance Company                              Countersigned by _____

WC 00 01 15
(Ed. 1-20)

© Copyright 2018 National Council on Compensation Insurance, Inc. All Rights Reserved.

WC 00 04 04
(Ed. 4–84)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

---

### PENDING RATE CHANGE ENDORSEMENT

A rate change filing is being considered by the proper regulatory authority. The filing may result in rates different from the rates shown on the policy. If it does, we will issue an endorsement to show the new rates and their effective date.

If only one state is shown in Item 3.A of the Information Page, this endorsement applies to that state. If more than one state is shown there, this endorsement applies only in the state shown in the Schedule.

Schedule

State

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

   **(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                    Policy No.                         Endorsement No.
Insured                                                                     Premium $
Insurance Company

                              Countersigned By _____

**WC 00 04 04**
**(Ed. 4–84)**

Copyright 1983 National Council on Compensation Insurance.

WC 00 04 06
(Ed. 8-84)

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

---

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in item 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

**Estimated Eligible Premium**

1.  **State**                                    **SEE FORM SCHEDULE**

2.  Average percentage discount: _____%

3.  Other policies:

4.  If there are no entries in items 1, 2 and 3, of the Schedule see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                    Policy No.                         Endorsement No.
Insured                                                                               Premium $
Insurance Company

Countersigned By _____

WC 00 04 06
   (Ed. 8-84)
Copyright 1983, 1984 National Council on Compensation Insurance.

## 90-DAY REPORTING REQUIREMENT—NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

You must report any change in ownership to us in writing within 90 days of the date of the change. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity, and other changes provided for in the applicable experience rating plan. Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes.

Failure to report any change in ownership, regardless of whether the change is reported within 90 days of such change, may result in revision of the experience rating modification factor used to determine your premium.

This reporting requirement applies regardless of whether an experience rating modification is currently applicable to this policy.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                          Policy No.                    Endorsement No.
Insured                                                                            Premium

Insurance Company                              Countersigned by _____

**WC 00 04 14 A**
(Ed. 1-19)

© Copyright 2017 National Council on Compensation Insurance, Inc. All Rights Reserved.

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

**WC 00 04 19**
(Ed. 1-01)

# PREMIUM DUE DATE ENDORSEMENT

Section D. of Part Five of the policy is replaced by this provision.

# PART FIVE
# PREMIUM

D.      **Premium** is amended to read:
        You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. **The due date for audit and retrospective premiums is the date of the billing.**

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                          Policy No.                 Endorsement No.

Insured                                                                    Premium $

Insurance Company                              Countersigned By _____

**WC 00 04 19**
(Ed. 1-01)

Copyright 2000 National Council on Compensation Insurance, Inc.

## CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 B), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

- Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

- Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

  a.　It is an act that is violent or dangerous to human life, property, or infrastructure;

  b.　The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

  c.　It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

- Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate | Premium |
|---|---|---|
| | | |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective　　　　　　　　　　Policy No.　　　　　　Endorsement No.

Insured　　　　　　　　　　　　　　　　　　　　　　　　　　　　Premium:

Insurance Company　　　　　　　　　Countersigned by _____

**WC 00 04 21 D**
(Ed. 1-15)

© Copyright 2015 National Council on Compensation Insurance, Inc. All Rights Reserved.

**TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT**

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law.  Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act .If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto, including any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2015.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States as meeting all of the following requirements:

a.  The act is an act of terrorism.

b.  The act is violent or dangerous to human life, property or infrastructure.

c.  The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

d.  The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2015, and ending on December 31, 2020, an amount equal to 20% of our direct earned premiums, during the immediately preceding calendar year.

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a calendar year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1.  Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceed:

    a.  $100,000,000, with respect to such Insured Losses occurring in calendar year 2015, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

    b.  $120,000,000, with respect to such Insured Losses occurring in calendar year 2016, the United States Government would pay 84% of our Insured Losses that exceed our Insurer Deductible.

    c.  $140,000,000, with respect to such Insured Losses occurring in calendar year 2017, the United States Government would pay 83% of our Insured Losses that exceed our Insurer Deductible.

    d.  $160,000,000, with respect to such Insured Losses occurring in calendar year 2018, the United States Government would pay 82% of our Insured Losses that exceed our Insurer Deductible.

    e.  $180,000,000, with respect to such Insured Losses occurring in calendar year 2019, the United States Government would pay 81% of our Insured Losses that exceed our Insurer Deductible.

    f.  $200,000,000, with respect to such Insured Losses occurring in calendar year 2020, the United States Government would pay 80% of our Insured Losses that exceed our Insurer Deductible.

© Copyright 2015 National Council on Compensation Insurance, Inc. All Rights Reserved.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3. The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate | Premium |
|-------|------|---------|
|       |      |         |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective     Policy No.     Endorsement No.

Insured                      Premium

Insurance Company     Countersigned by _____

**WC 00 04 22 B**

(Ed. 1-15)

© Copyright 2015 National Council on Compensation Insurance, Inc. All Rights Reserved.

## AUDIT NONCOMPLIANCE CHARGE ENDORSEMENT

Part Five—Premium, Section G. (Audit) of the Workers Compensation and Employers Liability Insurance Policy is revised by adding the following:

If you do not allow us to examine and audit all of your records that relate to this policy, and/or do not provide audit information as requested, we may apply an Audit Noncompliance Charge. The method for determining the Audit Noncompliance Charge by state, where applicable, is shown in the Schedule below.

If you allow us to examine and audit all of your records after we have applied an Audit Noncompliance Charge, we will revise your premium in accordance with our manuals and Part 5— Premium, E. (Final Premium) of this policy.

Failure to cooperate with this policy provision may result in the cancellation of your insurance coverage, as specified under the policy.

**Note:**
For coverage under state- approved workers compensation assigned risk plans, failure to cooperate with this policy provision may affect your eligibility for coverage.

### Schedule

| State(s) | Basis of Audit Noncompliance Charge | Maximum Audit Noncompliance Charge Multiplier |
|---|---|---|
| | | |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                    Policy No.                  Endorsement No.

Insured                                                         Premium $

Insurance Company              Countersigned by _____ _____

© Copyright 2015 National Council on Compensation Insurance, Inc. All Rights Reserved.

## EXPERIENCE RATING MODIFICATION FACTOR REVISION ENDORSEMENT

This endorsement is added to Part Five—Premium of the policy.

The premium for the policy is adjusted by an experience rating modification factor. The factor shown on the Information Page may be revised and applied to the policy in accordance with our manuals and endorsements. We will issue an endorsement to show the revised factor, if different from the factor shown, when it is calculated.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                    Policy No.                    Endorsement No.
Insured                                                                Premium

Insurance Company                        Countersigned by _____

WC 00 04 25
(Ed. 5-17)

© Copyright 2016 National Council on Compensation Insurance, Inc. All Rights Reserved.

WC 07 06 01
(Ed. 7–88)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

---

### DELAWARE NONRENEWAL ENDORSEMENT

We may elect not to renew the policy.  By certified mail we will mail to you, not less than 60 days advance written notice, when the nonrenewal will take effect.  Mailing that notice to you at your mailing address, shown in Item 1 of the Information Page, will be sufficient to prove notice.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
   **(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                          Policy No.                                      Endorsement No.
Insured                                                                                                         Premium $
Insurance Company

                                                 Countersigned By  _____

**WC 07 06 01**
**(Ed. 7–88)**
Copyright 1988 Delaware Compensation Rating Bureau

## MARYLAND CANCELLATION AND NONRENEWAL ENDORSEMENT

This endorsement applies because Maryland is shown in Item 3.A. of the Information Page.

Part Six - Conditions, Section D. (Cancellation) of the policy is replaced by the following:

### D. Cancellation and Nonrenewal

1. You may cancel this policy. You will mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel or nonrenew this policy as follows:

   a. If the policy is cancelled for nonpayment of premium, we will file with the Maryland Workers Compensation Commission's designee, and serve you by certificate of mailing, not less than 10 days' advance written notice stating when the cancellation will take effect.

   b. If the policy is cancelled for reasons other than nonpayment of premium or if the policy is nonrenewed, we will file with the Maryland Workers Compensation Commission's designee, and serve by certified mail or personal service to you, not less than 45 days' advance written notice stating when the cancellation or nonrenewal will take effect.

   Mailing this notice by certified mail to you at your mailing address last known to us creates a presumption of actual delivery of notice. You may be able to rebut this presumption by providing evidence that the notice was not delivered.

3. The effective dates of the cancellation or nonrenewal are determined as follows:

   a. Except for cancellation for non-payment of premium, the policy period will end on the day and hour stated in the cancellation or nonrenewal notice, or 45 days after the date the notice is received by the Maryland Workers Compensation Commission's designee, whichever date is later.

   b. For cancellation for non-payment of premium, the policy period will end on the day and hour stated in the cancellation notice, or 10 days after the date the notice is received by the Maryland Workers Compensation Commission's designee, whichever date is later.

4. The provisions in D-2 and D-3 do not apply to the cancellation of a policy or binder during the 45-day underwriting period in accordance with Section 12-106 of Maryland Code, Insurance. Refer to Section 12-106 of Maryland Code, Insurance for the cancellation provisions that apply during the 45-day underwriting period.

**This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.**

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                     Policy No.                     Endorsement No.
Insured                                                                  Premium $

Insurance Company                         Countersigned by _____

© Copyright 2017 National Council on Compensation Insurance, Inc. All Rights Reserved.

## PENNSYLVANIA AUDIT NONCOMPLIANCE CHARGE ENDORSEMENT

Part Five – Premium, Section G. (Audit) of the Workers Compensation and Employers Liability Insurance Policy is revised by adding the following:

If you do not allow us to examine and audit all of your records that relate to this policy, and/or do not provide audit information as requested, we may apply an Audit Noncompliance Charge (ANC).

The charge is determined by applying the ANC Multiplier to the ANC Basis shown in the table below:

| ANC Basis | ANC Multiplier |
|---|---|
| Estimated Annual Premium | Two times |
|  |  |

If you allow us to examine and audit all of your records after we have applied an Audit Noncompliance Charge, we will remove the ANC charge and revise your premium in accordance with our manuals and Part 5 – Premium, E. (Final Premium) of this policy.

The application of the ANC is subject to the following conditions:

    a) Carriers must comply with all applicable state laws and/or regulations related to audits of workers compensation insurance policies.

    b) The Audit Noncompliance Charge Endorsement is optional. When used, the Audit Noncompliance Charge Endorsement and/or applicable state-specific endorsement must be attached to the policy at inception of the policy term being audited.

    c) The carrier must make two attempts to obtain the audit information and/or complete the audit. At each attempt, the carrier must notify the employer regarding the specific required records and the amount of the ANC to be applied if the employer continues to refuse to comply with the audit.

    d) The carrier must adequately document the audit file regarding the above attempts to obtain the required audit information.

This ANC rule applies to mail/email, telephone, computer (remote access), and physical audits, unless otherwise provided by state law.

The scenarios listed below may occur and are treated as follows:

| If an ANC is applied and the employer… | Then the carrier… |
|---|---|
| Pays the ANC and later allows the audit | • Performs the final audit and determines the final policy premium based on the results of the audit; and<br>• Refunds the ANC to the employer, or applies the ANC amount to any outstanding balance on the policy<br>Submits a unit statistical correction report to remove the ANC charge from the previously reported Unit Statistical data. |
| Does **not** pay the ANC but later allows the audit | Performs the final audit and determines the final policy premium based on the results of the audit |
| Pays the ANC but does **not** later allow the audit | Does not change the previously reported: |
| Does not pay the ANC and does **not** later allow the audit. | • Unit Statistical data<br>• Noncompliance transactions |

© 2016 Pennsylvania Compensation Rating Bureau.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                     Policy No.                         Endorsement No.

Insured                                                                      Premium

Insurance Company              Countersigned by_____

**WC 37 04 01**
(Ed. 1-17)

© 2016 Pennsylvania Compensation Rating Bureau.

WC 37 04 05
(Ed. 8-96)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

---

# PENNSYLVANIA MERIT RATING PLAN ENDORSEMENT

This endorsement applies to the insurance provided by this policy because Pennsylvania is shown in Item 3.A. of the Information Page.

The premium for this insurance may be subject to merit rating because your premium may be less than the amount necessary to be eligible for the uniform Experience Rating Plan.

The following premium discount or surcharge will be applied to your manual premium based on your claims during the most recent two year period for which statistics are available.

1.  A 5% credit (**discount**) will be applied if you had no compensable employee lost-time injuries - **Statistical Code 9885**.

2.  No credit or debit will be applied if you had one (1) compensable employee lost-time injury - **Statistical Code 9884**.

3.  A 5% debit (**surcharge**) will be applied if you had two (2) or more compensable employee lost-time injuries - **Statistical Code 9886**.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(**The information below is required only when this endorsement is issued subsequent to preparation of the policy.**)

Endorsement Effective                          Policy No.                              Endorsement No.
Insured                                                                                         Premium $
Insurance Company

Countersigned by _____

**WC 37 04 05**
(Ed. 8-96)

© 1996 Pennsylvania Compensation Rating Bureau.

WC 37 06 01
(Ed. 4-84)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

---

### SPECIAL PENNSYLVANIA ENDORSEMENT - INSPECTION OF MANUALS

The manuals of rules, rating plans, and classifications are approved pursuant to the provisions of Section 654 of the Insurance Company Law of May 17, 1921, P.L. 682, as amended, and are on file with the Insurance Commissioner of the Commonwealth of Pennsylvania.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                          Policy No.                                      Endorsement No.
Insured                                                                                                        Premium $
Insurance Company

Countersigned By _____

**WC 37 06 01**
(Ed. 4-84)

Copyright 1984 Pennsylvania Compensation Rating Bureau.

WC 37 06 02
(Ed. 4–84)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

---

### PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

    1.  surveys;

    2.  consultation or advice; or

    3.  inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occuring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

    1.  if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

    2.  to consultation services required to be performed under a written service contract not related to a policy of insurance; or

    3.  if any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

WC 37 06 02
(Ed. 4–84)

Copyright 1984 Pennsylvania Compensation Rating Bureau.

WC 37 06 03A
(Ed. 08-95)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

---

### PENNSYLVANIA ACT 86-1986 ENDORSEMENT

NONRENEWAL, NOTICE OF INCREASE OF PREMIUM, and RETURN OF UNEARNED PREMIUM

This endorsement applies only to the insurance provided by the policy because Pennsylvania is shown in Item 3.A. of the Information Page.

The policy conditions are amended by adding the following regarding nonrenewal, notice of increase in premium, and return of unearned premium.

**Nonrenewal**

1. We may elect not to renew the policy. We will mail each named insured, by first class mail, not less than 60 days advance notice stating when the nonrenewal will take effect. Mailing that notice to you at your mailing address last known to us will be sufficient to prove notice.

2. Our notice of nonrenewal will state our specific reasons for not renewing.

3. If we have indicated our willingness to renew, we will not send you a notice of nonrenewal. However, the policy will still terminate on its expiration date if:

   a. you notify us or the agent or broker who procured this policy that you do not want the policy renewed; or

   b. you fail to pay all premiums when due; or

   c. you obtain other insurance as a replacement of the policy.

**Notice of Increase in Premium**

1. We will provide you with not less than 30 days advance notice of an increase in renewal premium of this policy, if it is our intent to offer such renewal.

2. The above notification requirement will be satisfied if we have issued a renewal policy more than 30 days prior to its effective date.

3. If a policy has been written or is to be written on a retrospective rating plan basis, the notice of increase in premium provision of this endorsement does not apply.

**Return of Unearned Premium**

1. If this policy is canceled and there is unearned premium due you:

   a. If the Company cancels, the unearned premium will be returned to you within 10 business days after the effective date of cancelation.

   b. If you cancel, the unearned premium will be returned within 30 days after the effective date of cancelation.

2. Because this policy was written on the basis of an estimated premium and is subject to a premium audit, the unearned premium specified in 1a. and 1b. above, if any, shall be returned on an estimated basis. Upon our completion of computation of the exact premium, an additional return premium or charge will be made to you within 15 days of the final computation.

3. These return or unearned premium provisions shall not apply if this policy is written on a retrospective rating plan basis.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective          Policy No.                    Endorsement No.
Insured                                               Premium $          (if any)
Insurance Company

Countersigned By _____

**WC 37 06 03A**
(Ed. 08-95)

Copyright 1995 Pennsylvania Compensation Rating Bureau.

Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/12/25    Page 509 of 737

# PENNSYLVANIA

# EMPLOYER ASSESSMENT ENDORSEMENT

Act 57 of 1997 requires that "....the assessments for the maintenance of the Subsequent Injury Fund, the Workmen's Compensation Supersedes Fund and the Workmen's Compensation Administration Fund under sections 306.2, 443 and 446 of the act of June 2, 1915 (P.L. 736, No. 338), known as the " Workers' Compensation Act, shall be imposed, collected and remitted through insurers in accordance with regulations promulgated by the Department of Labor and Industry."

## EMPLOYER ASSESSMENT FORMULA:

**Employer** = Act 57 of 1997 Employer **X** Employer Assessment
**Assessment** Assessment Factor Premium Base

**Act 57 of 1997 Employer Assessment Factor**
A factor expressed to four decimal places proposed by the Pennsylvania Compensation Rating Bureau and approved by the Pennsylvania Insurance Commissioner.

**Employer Assessment Premium Base**
Calculation of Employer Assessment Premium Base proceeds by adding back to the total policy premium the amount of any Small Deductible Premium Credit or Large Deductible Premium Credit.

**Code 0938**

WC 37 06 04
(Ed. 10-99)

© 2001 National Council on Compensation Insurance, Inc.

WC 45 06 02
(Ed. 7–93)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

---

### VIRGINIA AMENDATORY ENDORSEMENT

This endorsement applies only to the Virginia insurance provided by the policy because Virginia is shown in Item 3.A. of the Information Page.

For Virginia insurance, Part Six D. (Conditions – Cancelation) is replaced by:

1. You may cancel this policy. You must mail or deliver advance written notice to us. You must provide written notice of your cancelation, including the date of and reasons for the cancelation, to the Workers Compensation Commission.

2. We may cancel this policy. We will provide you with 30 days notice of cancelation. We will provide the Workers Compensation Commission with immediate notice of such cancelation. This provision does not apply if you have obtained other insurance and that insurer has notified the Workers Compensation Commission that it is now providing your insurance.

3. In the event of cancelation by you or us, you must provide 30 days written notice of the cancelation to your covered employees.

4. We may nonrenew your policy. We will provide 30 days notice to you and to the Workers Compensation Commission of our decision to nonrenew. This provision does not apply if you have obtained other insurance and that insurer has notified the Workers Compensation Commission that it is now providing your insurance.

5. If you fail to pay the premium due on this policy, we may cancel the policy by providing 10 days notice to you and to the Workers Compensation Commission.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
   **(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                     Policy No.                                    Endorsement No.
Insured                                                                                 Premium $
Insurance Company

                                    Countersigned By _____

**WC 45 06 02**
(Ed. 7–93)

1993 National Council on Compensation Insurance.

## PARTICIPATING ENDORSEMENT

You shall participate in the earnings of the Company, only in accordance with law and with a plan applicable to this policy which has been filed with the Insurance Commissioner, provided you have complied with all the terms of this policy with respect to the payment of premium.

Neither dividends nor any factor in their calculation may be guaranteed.  By purchasing this policy, you obtain no contractual right to a dividend. Dividends are declared in the sole discretion of the governing body of the insurer in accordance with law. Any representations to the contrary are false.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective                        Policy No.                    Endorsement No.
Insured                                                                            Premium

Insurance Company                            Countersigned by _____

**WC 99 06 01**
**(Ed. 9-17)**

## WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)

This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement              Effective Policy No.              Endorsement No.
Insured                                                    Premium

Insurance Company              Countersigned by _____

**WC 00 03 13**
(Ed. 4-84)

© 1983 National Council on Compensation Insurance.

WC 00 04 03
(Ed. 4–84)

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

---

### EXPERIENCE RATING MODIFICATION FACTOR ENDORSEMENT

The premium for the policy will be adjusted by an experience rating modification factor. The factor was not available when the policy was issued. The factor, if any, shown on the Information Page is an estimate. We will issue an endorsement to show the proper factor, if different from the factor shown, when it is calculated.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement Effective                    Policy No.                                    Endorsement No.
Insured                                                                                Premium $
Insurance Company

Countersigned By _____

WC 00 04 03
(Ed. 4–84)
Copyright 1983 National Council on Compensation Insurance.

# EXHIBIT  B

## To Exhibit 1

# WORKERS' COMPENSATION COMMISSION

B847488

# DEPENDENT'S CLAIM FOR DEATH BENEFITS

**Instructions:** The form must be completed in entirety pursuant to the Labor and Employment Article, §§ 9-683.1 through 9-683.5, Annotated Code of Maryland and COMAR 14.09.01.06-1 and must be signed.

**Name of Deceased:** Joshua     Paul     Nickel

       First        Middle        Last        Existent WCC Claim Number of the Deceased

**Mailing Address:** 19320 Paradise Hil Lane

**City** Frostburg    *AL*    **State** MD    **ZIP Code:** 21532

*I 017 day*

**Individual Filing Claim:** Linda Sue Beeman

**Street/Mailing Address:** 19320 Paradise Hill Lane

**City** Frostburg    **State** MD    **ZIP Code:** 21532

**Telephone Number:** ▮▮▮▮▮▮▮▮▮

**Relationship to Dependent(s):** Mother

**Employer of Deceased:** Allegany Scrap, Inc.    *Prince Georges' Scrap Inc*

**Mailing/Street Address:** 2001 Kenilworth Avenue

**City** Capital Heights    **State** Maryland    **ZIP Code:** 20743

**Telephone Number:** ( 301 ) 777-2877    **Federal Employer ID (FEIN)** _____

**Date of Injury:** 09/10/2020    **Date of Death:** 9/11/2020

**State Cause of Injury or Disease:** Multiple blunt force injuries to head by a piece of metal

**Address Where Injured:** 10001 Day Road S.E.

**City** Cumberland    **State** MD    **ZIP Code:** 21502

**Cause of Death:** ☒ Injury    ☐ Disease

*2020 NOV -6 AM 11: 12 — WORKERS' COMPENSATION COMMISSION*

| | Dependent Name | Relationship to the Deceased (Spouse, Child, Other, etc.) |
|---|---|---|
| (a) | Linda Sue Beeman | Mother |
| (b) | | |
| (c) | | |
| (d) | | |
| (e) | | |

**I hereby make claim as, or on behalf of, a Dependent of the above named Deceased employee and in support thereof make the foregoing statement of facts.**

*Linda S. Beeman*

**Signature of Person Filing this Claim**

10/14/2020

**Date**

*A7268*

# ALL PARTIES' REQUIRED INFORMATION

## DECEASED INFORMATION

| Joshua Paul Nickel | ███████████ | ████████ | $900.00 |
|---|---|---|---|
| Name | Social Security No. | Date of Birth | Average Weekly Wage* |

| Metal Shredder |
|---|
| Occupation (e.g. police officer, firefighter) |

## DEPENDENT(S) INFORMATION

| (a) Linda Sue Beeman | ███████████ | ████████ | $500.00 (disabled) |
|---|---|---|---|
| Name | Social Security No. | Date of Birth | Average Weekly Wage* |

| 19320 Paradise Hill Lane |
|---|
| Street/Mailing Address |

| Frostburg | Maryland | 21532 |
|---|---|---|
| City | State | ZIP code |

| (b) | | | |
|---|---|---|---|
| Name | Social Security No. | Date of Birth | Average Weekly Wage* |

| |
|---|
| Street/Mailing Address |

| | | |
|---|---|---|
| City | State | ZIP code |

| (c) | | | |
|---|---|---|---|
| Name | Social Security No. | Date of Birth | Average Weekly Wage* |

| |
|---|
| Street/Mailing Address |

| | | |
|---|---|---|
| City | State | ZIP code |

| (d) | | | |
|---|---|---|---|
| Name | Social Security No. | Date of Birth | Average Weekly Wage* |

| |
|---|
| Street/Mailing Address |

| | | |
|---|---|---|
| City | State | ZIP code |

| (e) | | | |
|---|---|---|---|
| Name | Social Security No. | Date of Birth | Average Weekly Wage* |

| |
|---|
| Street/Mailing Address |

| | | |
|---|---|---|
| City | State | ZIP code |

*Average Weekly wage at the time of injury or disablement, see COMAR14.09.01.07

WORKERS' COMPENSATION COMMISSION 2020 NOV 6 AM 11:12

# AUTHORIZATION FOR DISCLOSURE OF HEALTH INFORMATION

**Pursuant to Labor and Employment Article, §§ 9-709, 9-710, and 9-711, Annotated Code of Maryland, and COMAR 14.09.01.06, this authorization must be signed and filed with the Workers' Compensation Commission of Maryland in conjunction with any claim amendment form.**

A.    Person Covered by Authorization
This document authorizes the disclosure of protected health information regarding:

Joshua Paul Nickel
Name of Deceased Employee                                    Date of Birth

███████████
Social Security Number

B.    Purpose of Disclosure

This document authorizes the disclosure of protected health information for the purpose of processing, adjudicating and resolving workers' compensation claims.

C.    Entities Authorized to Make Disclosure

This document authorizes any health plan, physician, health care professional, dentist, hospital, clinic, laboratory, pharmacy, medical facility, or other health care provider that has provided payment, treatment or services to the deceased employee or on my behalf to disclose the deceased employee's protected health information consistent with this directive.

D.    Entities Authorized to Receive Protected Health Information

This document authorizes the disclosure of the deceased employee's protected health information to the following entities and their agents: dependent claimant's or the deceased employee's attorney, the deceased employee's employer, the employer's workers' compensation insurer or any agent thereof.

E.    Information to be Disclosed

This document authorizes the entities listed in C to disclose protected health information that is relevant to the member of the body that was injured as indicated on the claim form.

The protected health information that may be disclosed includes, but is not limited to: history, findings, office and patient charts, files, examination and progress notes, and physical evidence.

F.    I understand that I may revoke this authorization by giving written notice to all parties in my claim for workers' compensation death benefits, except to the extent that this authorization has already been acted on prior to receipt of my revocation.

I understand that the information disclosed by this authorization may be subject to re-disclosure by the recipient to a medical manager, health care professional or registered rehabilitation practitioner, and others consistent with state and federal law.

By signing this form, I am authorizing the disclosure of the deceased employee's protected health information. This authorization is valid for one year from the date the amended claim is filed.
Name of

*Linda Brennan*                                              10/14/2020
Signature of Dependent Claimant or Authorized Representative        Date

Statement of Authorization:
I am authorized to sign  or act on behalf of the dependent claimant because:

**A photocopy, facsimile or electronic transmission of this signed authorization form is valid.**

Claim Filing Date: _____        WCC Dependent Claim Number: _____

MD WCC C35 (10/2011)                                         Page 3 of 5

# EXHIBIT  C

## To Exhibit 1

**WORKERS' COMPENSATION COMMISSION**
**10 EAST BALTIMORE STREET**
**BALTIMORE, MARYLAND 21202**

| | | |
|---|---|---|
| CLAIM NO | B847488 | **SUPPLEMENTAL** |
| CLAIMANT | JOSHUA PAUL NICKEL (DECD) | **AWARD OF COMPENSATION** |
| EMPLOYER | PRINCE GEORGES SCRAP INC | |
| INSURER | HARFORD MUTUAL INSURANCE CO. | |

Hearing was held in the above claim at LaVale, Maryland on February 22, 2021 on the following issue:

Dependency

The Commission finds on the issue presented that the above-named deceased employee sustained an accidental injury arising out of and in the course of employment on September 10, 2020, and as a result thereof died on September 11, 2020. The Commission finds that at the time of the accidental injury and death, the deceased employee left the following survivors who were dependent upon the deceased for support:

| Dependent | Relationship | Date of Birth | Avg Wkly Wage |
|---|---|---|---|
| Linda Sue Beeman | Parent | | 499.98 |

The Commission hereby awards compensation benefits pursuant to Section 9-683 of the Labor & Employment Article. Average weekly wage of the decedent - $657.09.

It is, therefore, this 2nd day of March, 2021, by the Workers' Compensation Commission ORDERED that the above-named employer and above name insurer pay unto Linda Sue Beeman, parent of the above-named deceased employee, compensation for her own use and benefit  at the rate of $249.00, payable weekly, beginning September 11, 2020; said compensation to continue for 144 months unless the right to receive benefits is limited or terminated under Section 9-683 and pay funeral expenses not to exceed the sum of $4,970.00 to Durst Funeral Home for funeral expenses.

THIS AWARD IS SUBJECT TO A TOTAL ASSESSMENT OF FIVE AND ONE-HALF PERCENT (5.5%) ON THE AMOUNT PAYABLE PURSUANT TO LABOR AND EMPLOYMENT ARTICLE, §9-806 (SUBSEQUENT INJURY FUND ASSESSMENT); ANNOTATED CODE OF MARYLAND.  THE EMPLOYER OR INSURER SHALL PAY THE ASSESSMENT TO THE SUBSEQUENT INJURY FUND WITHIN THIRTY (30) DAYS FROM THE DATE OF INVOICE, IN ACCORDANCE WITH THE INSTRUCTIONS THEREON**.**

THIS AWARD IS SUBJECT TO AN ADDITIONAL ASSESSMENT IN THE AMOUNT OF THREE PERCENT (3%) ON THE AMOUNT PAYABLE PURSUANT TO LABOR AND EMPLOYMENT ARTICLE §9-1007(B)(UNINSURED EMPLOYERS' FUND ASSESSMENT); ANNOTATED CODE OF MARYLAND.  THE EMPLOYER OR INSURER SHALL PAY THE ASSESSMENT TO THE UNINSURED EMPLOYERS' FUND WITHIN THIRTY (30) DAYS FROM THE DATE OF INVOICE, IN ACCORDANCE WITH THE INSTRUCTIONS THEREON.

*** FILE COPY ***

**WORKERS' COMPENSATION COMMISSION**
**10 EAST BALTIMORE STREET**
**BALTIMORE, MARYLAND 21202**

CLAIM NO        B847488                                    **SUPPLEMENTAL**

CLAIMANT       JOSHUA PAUL NICKEL (DECD)          **AWARD OF COMPENSATION**

EMPLOYER      PRINCE GEORGES SCRAP INC

INSURER        HARFORD MUTUAL INSURANCE CO.

---

It is further ORDERED that from the final weeks of compensation the following fees shall be paid pursuant to COMAR § 14.09.04.02:

Linda Buckel, Esquire in the amount of $5,400.00

Delia Turano Schadt
Delia Turano Schadt
Commissioner

kb

ATTEST:
STACEY L. ROIG
SECRETARY



# EXHIBIT  D

## To Exhibit 1

## WORKERS' COMPENSATION COMMISSION
## STATE OF MARYLAND

**Claim Number:**          B847488

**Employee/Claimant:**     JOSHUA PAUL NICKEL (DECD)

**Employer:**           PRINCE GEORGES SCRAP INC

**Insurer:**             HARFORD MUTUAL INSURANCE CO.

### AGREEMENT OF FINAL COMPROMISE AND SETTLEMENT
### DEPENDENT'S CLAIM FOR DEATH BENEFITS

THIS AGREEMENT made this 29ᵗʰ day of November, 2021, by and between Linda Sue Beeman (hereinafter "the Claimant's Dependent") and on behalf of Joshua Paul Nickel, deceased (hereinafter "the Claimant"); Prince Georges Scrap, Inc. (hereinafter "the Employer"); and Harford Mutual Insurance Company (hereinafter "the Insurer"), WITNESSETH:

WHEREAS, the above-named Claimant sustained an accidental injury arising out of and in the course of his employment on September 10, 2020, and as a result thereof died on September 11, 2020.

WHEREAS, the Claimant's Dependent filed a Dependent's Claim for Death Benefits with the Commission on or about November 6, 2020, resulting in the instant claim.

WHEREAS the Employer and the Insurer deny the allegations of the Claimant's Dependent, either in whole or in part, so that there now exists a dispute between the Claimant's Dependent on the one hand and the Employer and the Insurer on the other, as to whether the Claimant's Dependent is entitled to any workers' compensation benefit and/or, if so entitled, as to the nature and extent of disability involved and the benefits or additional benefits to be paid or provided; and

WHEREAS, irrespective of any and notwithstanding the divergent views held by the parties hereto concerning the occurrence of the aforesaid accidental personal injury or disablement, the nature and extent of disability resulting therefrom, the workers' compensation benefits allowable therefore, and all other benefits or rights that any of the parties to the claim might or could have in the premises, the said parties have reached an agreement providing, subject to the approval of the Commission, for a final compromise and settlement of any and all claims which the Claimant's Dependent or her personal representative or beneficiaries might now or could hereafter have under the provisions of Maryland Workers' Compensation Law against the Employer and/or the Insurer; and

WHEREAS, pursuant to COMAR 14.09.10.02, the following information is provided:

2021 NOV 30 PM 2:51

WORKERS' COMPENSATION
COMMISSION

a. The Claimant's Average Weekly Wage: $657.09.
b. The Claimant's Dependent's Average Weekly Wage: $499.98.
c. The Claimant was born on January 1, 1990; he was thirty (30) years, eight (8) months old at the time of his death.
d. Death benefits have been paid to the Claimant's Dependent for the following inclusive dates: September 11, 2020, through and including October 28, 2021 (death benefits remain ongoing pending the Commission's approval of this Agreement, as detailed below).
e. The total of death benefits paid to the Claimant's Dependent as of October 28, 2021, is $20,091.00.

NOW, THEREFORE, it is hereby agreed as follows:

1. The Employer and the Insurer hereby agree to pay the Claimant's Dependent the sum of FORTY-FOUR THOUSAND FIVE HUNDRED DOLLARS AND ZERO CENTS ($44,500.00) (LUMP-SUM) IN EXCHANGE FOR A FULL AND FINAL SETTLEMENT OF THESE TWO CLAIMS. Said amount is in addition to all compensation previously paid, including but not limited to death benefits and/or funeral expenses and *in lieu of* the WCC Order dated March 2, 2021.

2. The parties agree that the Employer and Insurer will continue to pay benefits due under the March 2, 2021 Order until the approval of this settlement **and that all payments made after October 28, 2021 shall be credited against the lump sum described in Paragraph 1.** The Claimant's Dependent understands, and expressly agrees, that any and all payments for death benefits paid by the Employer and Insurer from October 29, 2021, through the Commission's approval of this settlement agreement shall be credited against her total settlement amount of $44,500.00.

3. The Employer and Insurer have paid all causally related medical expenses from the date of the accident through the date of the Claimant's death on September 11, 2020. The Employer and Insurer have also paid all expenses for the Claimant's funeral. The Employer and the Insurer agree to reimburse Medicare for any provisional or conditional payments made by Medicare that are ultimately determined to be the responsibility of the Employer and the Insurer, for dates of service September 10, 2020, through September 11, 2020.

4. As the Claimant is deceased and future medical treatment is impossible, the interests of Medicare do not need to be considered.

5. The Claimant's Dependent acknowledges that any and all known liens or potential liens involving child support enforcement, health insurance, or programs/agencies of United States Federal, state or local government have been revealed to her attorney and to the Employer and the Insurer. The Claimant's Dependent agrees to indemnify and hold harmless her attorney and the Employer and the Insurer regarding any liens.

2021 NOV 30 PM 2: 51

COMMISSION-5
WORKERS' COMPENSATION

6. By signing below, Ms. Beeman hereby affirms that there are no other qualified dependents, or minor children, that would be entitled to benefits under the Workers' Compensation Statute. The Claimant's Dependent hereby accepts this Agreement and the aforesaid payment(s) in final compromise and settlement of any and all claims which the Claimant, his personal representative(s), dependents, widow, and/or children, or any other parties who might become beneficiaries under the Workers' Compensation Law, might now or could hereafter have under the provision of the said Law, arising out of the aforesaid injury or the death resulting therefrom, and does hereby, on behalf of herself and all of said other parties, release and forever discharge the Employer and the Insurer, their personal representatives, heirs, successors and assigns, from all other claims of whatsoever kind which might or could hereafter arise under the said Law from the injury of September 10, 2020 resulting in death.

7. The attorney for the Claimant's Dependent is requesting a total fee of $ *0.00* for legal services and $0.00 as reimbursement for expenses. If the settlement is approved, payment of the fees is deducted from the amount of the settlement of $44,500.00, leaving the Claimant's Dependent a net balance of $44,500.00, subject to a credit for death benefit paid from October 29, 2021 through the date of the Commission's approval of this Agreement.

8. This settlement is to be paid in a lump sum and is not a structured settlement. The settlement funds will be paid in a lump sum within fifteen days of approval by the Maryland Workers' Compensation Commission.

9. It is further agreed that the terms of this Agreement of Final Compromise and Settlement are contractual and no representations of fact or law or warranties concerning the federal or state taxation of any payments or any warranties of any nature or kind other than those set for herein have been made by any party as an inducement for this settlement.

10. This agreement is made subject to the approval of the Commission, and when so approved shall immediately become effective and binding upon all the parties hereto.

IN WITNESS WHEREOF, the parties have duly executed these presents as of the day and year aforesaid.

ATTEST:

Linda Sue Beeman
*Deceased Claimant's Dependent*

Jason C. Buckel, Esquire
*Attorney for Deceased
Claimant's Dependent*

2021 NOV 30 PM 2:51
WORKERS' COMPENSATION
COMMISSION-5

Laura S. McKenzie, Esquire
*Attorney for Employer/Insurer*

**Claim Number:** B847488

**Employee/Claimant:** JOSHUA PAUL NICKEL (DECD)

2021 NOV 30 PM 2:51

COMMISSION-5
WORKERS' COMPENSATION

**Employer:**                      PRINCE GEORGES SCRAP INC

**Insurer:**                         HARFORD MUTUAL INSURANCE CO.

## APPROVAL AND ORDER

        The Workers' Compensation Commission of Maryland hereby signifies this \_\_\_\_ day of _____, 2021, its approval of the foregoing Agreement of Final Compromise and Settlement and directs the Employer and Insurer to pay the total sum of FORTY FOUR THOUSAND FIVE HUNDRED DOLLARS AND ZERO CENTS ($44,500.00) (NEW MONEY) (LUMP-SUM), *subject to a credit for death benefit paid from October 29, 2021 through the date of the Commission's approval of this Agreement*, in addition to compensation previously paid in full and final settlement of their rights and obligations as set forth in said Agreement and as follows:

**Buckel, Levasseur, Pillai & Beeman, LLC (Attorney's fees):**   $  0.00

**Buckel, Levasseur, Pillai & Beeman, LLC (Expenses):**   $  0.00

**Linda Sue Beeman, Deceased Claimant's Dependent:**   $ 44,500.00

---

**Total:**                        **$44,500.00**

# WORKERS' COMPENSATION COMMISSION

# CLAIMANT'S AFFIDAVIT IN SUPPORT OF SETTLEMENT

I, JOSHUA PAUL NICKEL (DECD) _____, am the claimant in claim # B847488 .

**I ask the Workers' Compensation Commission to approve the settlement of my claim and in support of this request state:**

1. I am over eighteen (18) years of age and am competent to testify.

2. I am voluntarily settling my claim.

3. I acknowledge that in settling my claim, I am giving up the following rights:

   a. the right to hearings before the Workers' Compensation Commission for resolution of any disputes regarding my claim;

   b. the right to vocational rehabilitation services and to payment during my lifetime for any medical treatment related to my claim, except as provided, if at all, in this settlement;

   c. the right, except as provided, if at all, in this settlement, to be compensated, under certain conditions, by the Subsequent Injury Fund for permanent impairments incurred before the accidental injury or occupational disease which gave rise to my claim;

   d. the right to ask the Workers' Compensation Commission, within 5 years of the last payment of any compensation that it might have ordered, to reopen my claim should my condition related to my claim worsen;

   e. the right to appeal to the appropriate Circuit Court if I am dissatisfied with a decision of the Workers' Compensation Commission;

   f. the right to appeal to the Court of Special Appeals if I am dissatisfied with the decision of the Circuit Court; and

   g. the right to petition the Court of Appeals to review the decision of the Court of Special Appeals if I am dissatisfied with the decision of the Court of Special Appeals; and

4. that, by signing this affidavit, I acknowledge that I have read, and understand, the terms of this settlement and all the documents attached in support of it, including medical reports and this affidavit.

**I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing affidavit are true and accurate.**

| | |
|---|---|
| **Claimant's Signature** *Deceased Claimant's Dependent* | I, as attorney for the claimant, have reviewed this affidavit with the claimant. |
| | **Attorney for Claimant Signature** |
| LINDA SUE BEEMAN | JASON C. BUCKEL |
| **Claimant's Name (printed)** *Deceased Claimant's Dependent* | **Attorney for Claimant Name (printed)** |
| 11/16/2021 | 11/16/2021 |
| **Date** | **Date** |

10 East Baltimore Street · Baltimore, Maryland 21202-1641
410-864-5100 · Email: info@wcc.state.md.us · Web: http://www.wcc.state.md.us

MD WCC Form H-05 12/2009

# EXHIBIT  E

## To Exhibit 1

WORKERS' COMPENSATION COMMISSION

# S E T T L E M E N T   W O R K S H E E T

Claimant: JOSHUA PAUL NICKEL (DECD)          Claim No.: B847488

Claimant Atty.: JASON C. BUCKEL, ESQUIRE          Atty. Telephone: (301) 759-3700

Claimant's age: 30_____ years, 8_____ months

Employer: PRINCE GEORGES SCRAP INC

Insurer: HARFORD MUTUAL INSURANCE COMPANY

E/I Atty/Rep: LAURA S. MCKENZIE, ESQUIRE

**All questions must be answered. Any incomplete or missing information will cause the Settlement Worksheet to be returned and the settlement approval delayed.**

1. Has this settlement been previously submitted and previously denied?  ☐ Yes  ☒ No

2. Is the claim contested as to compensability and/or causation?  ☐ Yes  ☒ No

3. Are further medical treatments recommended for the injury?  ☐ Yes  ☒ No

4. Is there any potential SIF liability in the case?  ☐ Yes  ☒ No

5. Is the Claimant working?  ☐ Yes  ☒ No

   a.  If not, *in the Comments section*, explain why not and, why vocational services are not warranted.

6. Does this case involve a third-party claim?  ☐ Yes  ☒ No

   If yes, attach document required by COMAR 14.09.10.02C.

7. Is the claim on appeal?  ☐ Yes  ☒ No

8. Is a hearing on the claim pending?  ☐ Yes  ☒ No

   If yes, when? _____

9. Has Claimant applied for Social Security disability benefits?  ☐ Yes  ☒ No

   If yes, status of SSDI claim is  Select One

10. Date of filing SSDI benefits if approval is pending: _____; or  ☒ N/A

11. Has Claimant applied for Medicare benefits?  ☐ Yes  ☒ No

   If yes, Medicare status is  Select One

12. Date of filing Medicare benefits if approval is pending: _____; or  ☒ N/A

13. Does Claimant have End Stage Renal Disease (ESRD)?  ☐ Yes  ☒ No

2021 NOV 30 PM 2:51

COMMISSION-5
WORKERS' COMP

WORKERS' COMPENSATION COMMISSION

# SETTLEMENT WORKSHEET

14. Total Amount of Indemnity paid to Claimant to date: $ 20,091.00

15. Amount of Total Proposed Settlement (**excluding the amount of indemnity paid to the Claimant to date and any MSA that is being paid as an annuity**): $ 44,500.00

16. Are medicals being left open?  ☐ Yes  ☒ No

17. Has a professional evaluator identified probable future Medicare covered expenses?  ☐ Yes  ☒ No
    *If yes, attach professional evaluation.*

18. Is there a formal set aside allocation for medical benefits (MSA)?  ☐ Yes  ☒ No

    a.  If yes, state amount: $_____

        i.  Is the MSA funded only through an annuity?  ☐ Yes  ☒ No

            OR

        ii. Is the MSA funded only through an independent TPA, with no reversionary interest to the covered employee or the covered employee's beneficiaries?  ☐ Yes  ☒ No

19. Has proposed Medicare Set Aside been submitted to CMS?  ☐ Yes  ☒ No
    If yes, date submitted:_____

20. Is CMS approval of the MSA pending?  ☐ Yes  ☒ No

21. Date CMS approved MSA:_____ or  ☒ N/A

22. Date of accidental injury or disablement by occupational disease:  09/10/2020

23. Comments:

> Claimant died on September 1?, 2020, as a result of an injury that occurred on September 10, 2020, that occurred in the course of his employment. Claimant's Dependent filed a Dependent's Claim for Death Benefits on November 6, 2020. The parties have agreed to settle the Claimant's Dependency Claim in a lump sum of Forty-Four Thousand Five Hundred Dollars and Zero Cents ($44,500.00), subject to the credits (if any) contained in Paragraph 2 of the AFCS, in lieu of the weekly payments per the WCC Order dated March 2, 2021.

I hereby certify that the foregoing is true and accurate based on my personal knowledge, information and belief.

| _____ | 11/16/2021 | _____ | 11/16/2021 |
|---|---|---|---|
| **Claimant Signature** | **(Date)** | **Claimant Attorney Signature** | **(Date)** |
| *Deceased Claimant's Dependent* | | | |

_____  11/16/2021

**Employer/Insurer Attorney Signature    (Date)**

2021 NOV 30 PM 2: 51

COMMISSION-S
WORKERS' COMPENSATION

# EXHIBIT  F

## To Exhibit 1

**WORKERS' COMPENSATION COMMISSION**
**10 EAST BALTIMORE STREET**
**BALTIMORE, MARYLAND 21202**

| | | |
|---|---|---|
| CLAIM NO | B847488 | |
| CLAIMANT | JOSHUA PAUL NICKEL (DECD) | **ORDER** |
| EMPLOYER | PRINCE GEORGES SCRAP INC | |
| INSURER | HARFORD MUTUAL INSURANCE CO. | |

Under date of November 30, 2021, an Agreement of Final Compromise and Settlement was filed with this Commission in the above-entitled claim; and it is, therefore, this 6th day of December, 2021, by the Workers' Compensation Commission ORDERED that the Agreement is hereby APPROVED as submitted.

THIS AWARD IS SUBJECT TO A TOTAL ASSESSMENT OF SIX AND ONE-HALF PERCENT (6.5%) ON THE AMOUNT PAYABLE UNDER A SETTLEMENT AGREEMENT PURSUANT TO LABOR AND EMPLOYMENT ARTICLE, § 9-806 (SUBSEQUENT INJURY FUND ASSESSMENT); ANNOTATED CODE OF MARYLAND. THE EMPLOYER OR INSURER SHALL PAY THE ASSESSMENT TO THE SUBSEQUENT INJURY FUND WITHIN THIRTY (30) DAYS FROM THE DATE OF INVOICE, IN ACCORDANCE WITH THE INSTRUCTIONS THEREON.

THIS AWARD IS SUBJECT TO A TOTAL ASSESSMENT OF TWO PERCENT (2%) ON THE AMOUNT PAYABLE UNDER A SETTLEMENT AGREEMENT PURSUANT TO LABOR AND EMPLOYMENT ARTICLE, § 9-1007 (UNINSURED EMPLOYERS' FUND ASSESSMENT); ANNOTATED CODE OF MARYLAND. THE EMPLOYER OR INSURER SHALL PAY THE ASSESSMENT TO THE UNINSURED EMPLOYERS' FUND WITHIN THIRTY (30) DAYS FROM THE DATE OF INVOICE, IN ACCORDANCE WITH THE INSTRUCTIONS THEREON.

James R Forrester
Commissioner

mo

ATTEST:
STACEY L. ROIG
SECRETARY



*** FILE COPY ***

E-FILED; Allegany Circuit Court
Docket: 12/18/2024 1:13 PM; Submission: 12/18/2024 1:13 PM
Envelope: 19235588

# EXHIBIT 2

IN THE CIRCUIT COURT OF MARYLAND
FOR ALLEGANY COUNTY

| | | |
|---|---|---|
| **LINDA S. BEEMAN,** *et al.* | * | |
| **Plaintiffs** | * | |
| **v.** | * | |
| | * | **Case No. C-01-CV-23-000317** |
| **ALLEGANY SCRAP, INC.,** *et al.* | * | |
| **Defendants** | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## AFFIDAVIT OF JAMES RUNYON

1.    I am over the age of eighteen (18) years and am competent to testify to the matters set forth in this Affidavit.

2.    I am currently employed by Harford Mutual Insurance Group ("HMIG") as a claims supervisor.

3.    HMIG is the parent company of Harford Mutual Insurance Company ("Harford"), an insurance company that is authorized to do business as an insurer in the State of Maryland.

4.    In my role as a claims supervisor for HMIG, I supervise the adjustment of workers' compensation claims brought under workers' compensation insurance policies issued by Harford.

5.    Harford issued a workers' compensation and employers liability insurance policy (the "Policy") to named insureds Prince George's Scrap, Inc. ("Prince George's") and Satellite Services, Inc. with an effective Policy period of April 1, 2020 to April 1, 2021.

6.    Allegany Scrap, Inc. ("Allegany") is an additional insured under the Policy.

7.    Harford received notice that a workers' compensation claim (the "WC Claim") had been filed against Allegany for workplace injuries sustained by Mr. Joshua P. Nickel during the effective period of the Policy.

8.    Harford paid a total of ninety-seven-thousand-five-hundred-fifty-one dollars and sixty-four cents ($97,551.64) in connection with the WC Claim.

9.    Harford paid ninety-two thousand two hundred and ninety-eight dollars and twenty-four cents ($92,298.24) of the $97,551.64 total under the WC Claim as death benefits to Mr.

Nickel's mother, for attorneys' fees incurred by Mr. Nickel's mother, for Mr. Nickel's medical and funeral expenses, and for medical bill review and claim adjustment fees.

10.    Harford paid fifty-nine thousand one-hundred and ninety-one dollars ($59,191) of the $97,551.64 total under the WC Claim directly to Mr. Nickel's mother, Ms. Linda Sue Beeman, as death benefits.

11.    A true and accurate copy of a ledger identifying all transactions made during the course of the WC Claim is attached hereto as **Exhibit A.**

I, James Runyon, do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing Affidavit are true.


_12/17/2024_
Date

_James Runyon_


2

# EXHIBIT  A

## To Exhibit 2

## Transactions

Filter    Claim is equal to Josh Nickel (254910)

| Transaction Date | Financial Category Description | Payee | Service From | Service To | Payment Amount | Reserve Amount | Recovery Amount |
|---|---|---|---|---|---|---|---|
| 01/10/2023 | Medical Payment - Medical Payment NOC | State Of Maryland | 01/10/2023 | | -360.35 | | |
| 02/15/2022 | Medical Payment - Medical Payment NOC | West Virginia University MedicalCorporation DBA University Health Associates | 09/10/2020 | 09/11/2020 | 38.69 | | |
| 02/15/2022 | Medical Payment - Medical Payment NOC | West Virginia University MedicalCorporation DBA University Health Associates | 09/10/2020 | 09/11/2020 | 200.98 | | |
| 02/15/2022 | Medical Payment - Medical Payment NOC | West Virginia University MedicalCorporation DBA University Health Associates | 09/10/2020 | 09/11/2020 | 12.74 | | |
| 02/15/2022 | Medical Payment - Medical Payment NOC | West Virginia University MedicalCorporation DBA University Health Associates | 09/10/2020 | 09/11/2020 | 142.08 | | |
| 02/15/2022 | Medical Payment - Medical Payment NOC | West Virginia University MedicalCorporation DBA University Health Associates | 09/10/2020 | 09/11/2020 | 80.67 | | |
| 01/25/2022 | D&CC Payment - Defense Attorney | Franklin & Prokopik | 12/08/2021 | 01/17/2022 | 0.05 | | |
| 01/25/2022 | D&CC Payment - Employer Legal Expense | Franklin & Prokopik | 12/08/2021 | 01/17/2022 | 105.00 | | |
| 01/25/2022 | D&CC Reserve - D&CC Reserve | | | | | 0.05 | |
| 01/25/2022 | D&CC Reserve - D&CC Reserve | | | | | 105.00 | |
| 12/13/2021 | D&CC Payment - Employer Legal Expense | Franklin & Prokopik | 10/21/2021 | 11/29/2021 | 1,180.00 | | |
| 12/13/2021 | D&CC Reserve - D&CC Reserve | | | | | 1,180.00 | |
| 12/09/2021 | Exposure is Closed. | | | | | | |
| 12/09/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 12/09/2021 | 12/09/2021 | 43,255.00 | | |
| 12/09/2021 | Medical Reserve - Medical Reserve | | | | | -16,242.84 | |
| 12/09/2021 | Indemnity Reserve - Indemnity/Loss Reserve | | | | | -2,439.00 | |
| 12/02/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 11/26/2021 | 12/02/2021 | 249.00 | | |
| 11/29/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 11/19/2021 | 11/25/2021 | 249.00 | | |
| 11/18/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 11/12/2021 | 11/18/2021 | 249.00 | | |
| 11/11/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 11/05/2021 | 11/11/2021 | 249.00 | | |
| 11/04/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 10/29/2021 | 11/04/2021 | 249.00 | | |
| 10/28/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 10/22/2021 | 10/28/2021 | 249.00 | | |
| 10/21/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 10/15/2021 | 10/21/2021 | 249.00 | | |
| 10/14/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 10/08/2021 | 10/14/2021 | 249.00 | | |
| 10/07/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 10/01/2021 | 10/07/2021 | 249.00 | | |
| 09/30/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 09/24/2021 | 09/30/2021 | 249.00 | | |
| 09/23/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 09/17/2021 | 09/23/2021 | 249.00 | | |
| 09/16/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 09/10/2021 | 09/16/2021 | 249.00 | | |
| 09/09/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 09/03/2021 | 09/09/2021 | 249.00 | | |
| 09/02/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 08/27/2021 | 09/02/2021 | 249.00 | | |
| 08/26/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 08/20/2021 | 08/26/2021 | 249.00 | | |
| 08/19/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 08/13/2021 | 08/19/2021 | 249.00 | | |
| 08/12/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 08/06/2021 | 08/12/2021 | 249.00 | | |
| 08/05/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 07/30/2021 | 08/05/2021 | 249.00 | | |
| 07/29/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 07/23/2021 | 07/29/2021 | 249.00 | | |
| 07/22/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 07/16/2021 | 07/22/2021 | 249.00 | | |
| 07/15/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 07/09/2021 | 07/15/2021 | 249.00 | | |
| 07/08/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 07/02/2021 | 07/08/2021 | 249.00 | | |
| 07/01/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 06/25/2021 | 07/01/2021 | 249.00 | | |
| 06/24/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 06/18/2021 | 06/24/2021 | 249.00 | | |
| 06/17/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 06/11/2021 | 06/17/2021 | 249.00 | | |
| 06/10/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 06/04/2021 | 06/10/2021 | 249.00 | | |
| 06/03/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 05/28/2021 | 06/03/2021 | 249.00 | | |
| 05/27/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 05/21/2021 | 05/27/2021 | 249.00 | | |
| 05/20/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 05/14/2021 | 05/20/2021 | 249.00 | | |
| 05/13/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 05/07/2021 | 05/13/2021 | 249.00 | | |
| 05/06/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 04/30/2021 | 05/06/2021 | 249.00 | | |

| Date | Type | Payee | Date1 | Date2 | Amount | Reserve |
|------|------|-------|-------|-------|--------|---------|
| 04/29/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 04/23/2021 | 04/29/2021 | 249.00 | |
| 04/22/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 04/16/2021 | 04/22/2021 | 249.00 | |
| 04/16/2021 | D&CC Payment - Employer Legal Expense | Franklin & ProkopikThe B & 0 Building | 03/04/2021 | 03/18/2021 | 234.50 | |
| 04/16/2021 | D&CC Reserve - D&CC Reserve | | | | | 234.50 |
| 04/15/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 04/09/2021 | 04/15/2021 | 249.00 | |
| 04/08/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 04/02/2021 | 04/08/2021 | 249.00 | |
| 04/01/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 03/26/2021 | 04/01/2021 | 249.00 | |
| 03/25/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 03/19/2021 | 03/25/2021 | 249.00 | |
| 03/18/2021 | D&CC Payment - Defense Attorney | Franklin & ProkopikThe B & 0 Building | 02/02/2021 | 02/23/2021 | 168.00 | |
| 03/18/2021 | D&CC Payment - Employer Legal Expense | Franklin & ProkopikThe B & 0 Building | 02/02/2021 | 02/23/2021 | 1,992.50 | |
| 03/18/2021 | Indemnity Payment - Fatal/Death Benefit | Linda S. Beeman | 03/12/2021 | 03/18/2021 | 249.00 | |
| 03/18/2021 | D&CC Reserve - D&CC Reserve | | | | | 1,992.50 |
| 03/18/2021 | D&CC Reserve - D&CC Reserve | | | | | 168.00 |
| 03/17/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/17/2021 | | 5.75 | |
| 03/17/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 03/09/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/09/2021 | | 5.75 | |
| 03/09/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/09/2021 | | 5.75 | |
| 03/09/2021 | Indemnity Payment - Funeral Expenses | Durst Funeral Home, P.A. | 03/09/2021 | 03/09/2021 | 4,970.00 | |
| 03/09/2021 | Indemnity Payment - Fatal/Death Benefit | Buckel, Levasseur & Pillai, Llc. | 03/09/2021 | 03/09/2021 | 5,400.00 | |
| 03/09/2021 | Indemnity Payment - Fatal/Death Benefit | Linda Sue Beeman | 03/09/2021 | 03/09/2021 | 6,474.00 | |
| 03/09/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 03/09/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 03/03/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/03/2021 | | 5.75 | |
| 03/03/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 03/02/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/02/2021 | 03/02/2021 | 5.75 | |
| 03/02/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/02/2021 | 03/02/2021 | 5.75 | |
| 03/02/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/02/2021 | 03/02/2021 | 5.75 | |
| 03/02/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/02/2021 | 03/02/2021 | 5.75 | |
| 03/02/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/02/2021 | 03/02/2021 | 5.75 | |
| 03/02/2021 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 03/02/2021 | 03/02/2021 | 5.75 | |
| 03/02/2021 | Medical Payment - Medical Payment NOC | Wvu Medical Corp Dba Uha | 09/10/2020 | 09/10/2020 | 492.98 | |
| 03/02/2021 | Medical Payment - Doctor | Wvu Medical Corp Dba Uha | 09/10/2020 | 09/10/2020 | 11.75 | |
| 03/02/2021 | Medical Payment - Medical Payment NOC | Wvu Medical Corp Dba Uha | 09/10/2020 | 09/10/2020 | 320.43 | |
| 03/02/2021 | Medical Payment - Medical Payment NOC | Wvu Medical Corp Dba Uha | 09/10/2020 | 09/10/2020 | 25.00 | |
| 03/02/2021 | Medical Payment - Doctor | Wvu Medical Corp Dba Uha | 09/11/2020 | 09/11/2020 | 101.48 | |
| 03/02/2021 | Medical Payment - Doctor | Wvu Medical Corp Dba Uha | 09/10/2020 | 09/11/2020 | 617.36 | |
| 03/02/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 03/02/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 03/02/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 03/02/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 03/02/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 03/02/2021 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 02/23/2021 | D&CC Payment - Employer Legal Expense | Franklin & ProkopikThe B & 0 Building | 01/05/2021 | 01/30/2021 | 290.50 | |
| 02/23/2021 | D&CC Payment - Defense Attorney | Franklin & ProkopikThe B & 0 Building | 01/05/2021 | 01/30/2021 | 6.90 | |
| 02/23/2021 | D&CC Reserve - D&CC Reserve | | | | | 290.50 |
| 02/23/2021 | D&CC Reserve - D&CC Reserve | | | | | 6.90 |
| 01/21/2021 | D&CC Payment - Employer Legal Expense | Franklin & ProkopikThe B & 0 Building | 12/01/2020 | 12/31/2020 | 950.50 | |
| 01/21/2021 | D&CC Payment - Defense Attorney | Franklin & ProkopikThe B & 0 Building | 12/01/2020 | 12/31/2020 | 69.45 | |
| 01/21/2021 | D&CC Reserve - D&CC Reserve | | | | | 950.50 |
| 01/21/2021 | D&CC Reserve - D&CC Reserve | | | | | 69.45 |
| 01/13/2021 | Medical Payment - Hospital Outpatient | WVU Hospitals | 09/10/2020 | 09/11/2020 | 12,135.83 | |
| 12/29/2020 | Indemnity Payment - Funeral Expenses | The Estate Of Josh Nickel | 10/08/2020 | 10/08/2020 | -7,000.00 | |
| 12/28/2020 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 12/28/2020 | | 1,254.01 | |

| Date | Description | Payee | Date 1 | Date 2 | Amount | Balance |
|---|---|---|---|---|---|---|
| 12/28/2020 | D&CC Reserve - D&CC Reserve | | | | | 1,254.01 |
| 12/22/2020 | Medical Payment - Doctor | Drs Figueroa & Ashker PA | 09/10/2020 | 09/10/2020 | 52.33 | |
| 12/16/2020 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 12/16/2020 | | 5.75 | |
| 12/16/2020 | D&CC Reserve - D&CC Reserve | | | | | 5.75 |
| 12/15/2020 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 12/15/2020 | | 14.85 | |
| 12/15/2020 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 12/15/2020 | | 10.16 | |
| 12/15/2020 | Medical Payment - Doctor | Adva-Holdings, Llc | 09/10/2020 | 09/10/2020 | 190.61 | |
| 12/15/2020 | D&CC Reserve - D&CC Reserve | | | | | 10.16 |
| 12/15/2020 | D&CC Reserve - D&CC Reserve | | | | | 14.85 |
| 12/15/2020 | Medical Reserve - Medical Reserve | | | | | 28,251.59 |
| 12/15/2020 | Indemnity Reserve - Indemnity/Loss Reserve | | | | | -30,000.00 |
| 12/14/2020 | D&CC Payment - Employer Legal Expense | Franklin & ProkopikThe B & 0 Building | 11/30/2020 | 11/30/2020 | 256.00 | |
| 12/14/2020 | D&CC Reserve - D&CC Reserve | | | | | 256.00 |
| 10/27/2020 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 10/27/2020 | | 18.71 | |
| 10/27/2020 | Medical Payment - Medical Payment NOC | District 16 VFD | 09/10/2020 | 09/10/2020 | 615.00 | |
| 10/27/2020 | D&CC Reserve - D&CC Reserve | | | | | 18.71 |
| 10/23/2020 | A&O Payment - Adjusting Fees | Custom Claim Service, Inc. | 09/21/2020 | 10/16/2020 | 2,236.17 | |
| 10/23/2020 | A&O Reserve - A&O Reserve | | | | | 2,236.17 |
| 10/16/2020 | D&CC Payment - Medical Bill Review Fee | Innovative Claims Strategies, Llc | 10/16/2020 | | 16.53 | |
| 10/16/2020 | Medical Payment - Hospital Outpatient | Western Maryland Health System | 09/10/2020 | 09/10/2020 | 4,445.98 | |
| 10/16/2020 | D&CC Reserve - D&CC Reserve | | | | | 16.53 |
| 10/08/2020 | Indemnity Payment - Funeral Expenses | The Estate Of Josh Nickel | 10/08/2020 | 10/08/2020 | 7,000.00 | |
| 09/15/2020 | Medical Reserve - Medical Reserve | | | | | 7,000.00 |
| 09/15/2020 | Indemnity Reserve - Indemnity/Loss Reserve | | | | | 102,000.00 |

E-FILED; Allegany Circuit Court
Docket: 12/18/2024 1:13 PM; Submission: 12/18/2024 1:13 PM
Envelope: 19235588

# EXHIBIT  3

1

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

LINDA BEEMAN, as Surviving Mother of

JOSHUA P. NICKEL,                    *

      Plaintiff                  *

   vs.                               *     CASE NO. C-01-CV-23-317

ALLEGANY SCRAP, INC., et al,   *

      Defendant                  *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDING

Motion Hearing

Friday, June 28, 2024
Cumberland, MD  21502

BEFORE:


   THE HONORABLE GARY G. LEASURE


APPEARANCES:

   FOR THE PLAINTIFF:

      JASON C. BUCKEL, ESQ.

   FOR THE DEFENDANT:

      MICHAEL S. BULLOCK, ESQ.

      ALEX BROWN, ESQ.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1                            **PROCEEDINGS**

2      BY THE COURT:  All right, thank you.  Please be seated.

3  If you will give me a moment, please.  (Pause)  Okay.  So

4  the next matter is titled **Linda S. Beeman, surviving mother**

5  **and others vs. Allegany Scrap Inc., and The Shredder**

6  **Company, LLC, et al.**

7      It appears before the Court today, are Motions to

8  Dismiss, two in number, one filed on behalf of Allegany

9  Scrap, the employer, if you will; the other filed on behalf

10 of four Co-Defendants, who would be alleged to have been the

11 manufacturers of certain equipment that was involved in the

12 accident and death of Mr. Joshua Nickel.

13      So counsel, let's start with appearances.  Plaintiff,

14 please?

15      BY MR. BUCKEL:  Thank you, Your Honor.  Jason Buckel

16 and Lee Beeman, on behalf of the Plaintiffs in this matter.

17      BY THE COURT:  And counsel?

18      BY MR. BROWN:  Thank you, Your Honor.  Alex Brown on

19 behalf of Allegany Scrap in this matter, and counsel for the

20 Defendants is in the gallery.  We, counsel has agreed we

21 will do Allegany Scrap's motion first, and then the Co-

22 Defendants motion, if that is acceptable to the Court.

3

1       BY THE COURT:  All right, so counsel standing, do you

2  represent the manufacturers, for lack of a better term?

3       BY MR. MOELLER:  Yes, Your Honor.   We have termed them

4  the Newell Defendants and (inaudible word), just on behalf

5  of the Newell Defendants.

6       BY THE COURT:  Okay, that, that chronology is fine.

7  So, let me get my paper out, or papers.    (Pause)  So, we

8  will first hear any argument to be presented on behalf of

9  Allegany Scrap, Inc.'s motion, and then certainly hear from

10  the Plaintiffs in the action.

11       I can, let me advise counsel, in order to move things

12  along.   I am familiar with all of the pleadings.  I spent a

13  better part of a day and a half, not exclusively, but it is,

14  I have spent some time, with the law clerk, so it is an

15  interesting case, umm, certainly give whatever factual

16  background or whatever argument you want to make, but keep

17  in mind..just respect the fact that I have spent some time,

18  so you don't have to reinvent the wheel, I guess, is what I

19  am saying.

20       So, with that in mind, counsel, I will be happy to hear

21  what you have to say.

22       BY MR. BROWN:  Certainly, Your Honor.  Thank you,

4

1  Your Honor, and thank you and your law clerk for the time

2  you have spent on this.   I appreciate it.   It is very,

3  makes it much easier and more efficient for counsel, if I

4  don't have to say well, here, Allegany Scrap, and start from

5  the beginning.

6      And we are, we are a metal recycling company that has

7  operated in Allegany, or excuse me, in Cumberland, for

8  years.   And this was an unfortunate incident in which the

9  Decedent, Mr. Nickel, was killed in what the Plaintiffs have

10  described in their complaint, was a random incident.   And

11  umm, they, which is appropriate, made a Worker's

12  Compensation claim and the Estate was fully compensated by

13  the Worker's Compensation process.   So, the claims against

14  Allegany, Mr. Nickel's former employer, are an attempt to

15  double dip.

16      In that Worker's Compensation process, Mr. Nickel's or

17  the Estate did not allege that Allegany intentionally tried

18  to kill him.   Umm, they could have, and we have cited

19  cases, which I am sure you have looked at, which say that if

20  they wanted to make an allegation of intent, they have to

21  choose, whether it is in the Worker's Compensation, or in a

22  separate lawsuit.   They chose to go with the Worker's

5

1    Compensation, and they didn't allege intent.  The reason

2    they are alleging intent here is because that's the only way

3    they can double dip under the Worker's Compensation statute.

4    They are arguing they are entitled to, as you know, as you

5    said, fit under the deliberate intent exceptions to the

6    Worker's Compensation recovery, which is supposed to be

7    exclusive, and as we noted, and I think it is important to

8    highlight, that Worker's Compensation is intended to be

9    exclusive, because it gets the Plaintiff paid quicker.  It

10   sets aside the back and forth that you see in private civil

11   lawsuits, and sort of streamlines the process to get

12   Plaintiff's paid, and that is what happened here.

13        So, the deliberate intent exception does not apply for

14   three separate reasons.  The first is very easy.  The

15   Plaintiff's have attached the death certificate to their

16   complaint, as I am sure you saw, and the examiner says the

17   death was accidental.  And I want to be very clear because

18   I expect Mr. Buckel is going to say well, we are entitled to

19   do discovery on whether the examiner was right or wrong.

20   That's not the point at this Motion to Dismiss phase.  I

21   saw that in their briefs.  The point is as a matter of law,

22   the Plaintiffs have alleged that the death was accidental

6

1    because they, they have agreed in their brief, that that

2    death certificate is incorporated into the allegations of

3    the complaint for all purposes.   That's what Maryland Rule

4    2-303(d) says, so if you attach a death certificate that

5    says it is accidental, it doesn't matter what you say in

6    your complaint because they have alleged the death was

7    accidental, so as a matter of law the deliberate intent

8    exception does not apply here.

9        BY THE COURT:  Counsel, one quick question here.  Just

10   curiosity.   It doesn't impact on, I don't think it impacts

11   on any decision I have to make, am I right as I recall

12   looking at the death certificate, the doctor was identified

13   as a doctor, a death certificate in West Virginia?

14       BY MR. BROWN:  Yes.

15       BY THE COURT:  Just curious, why was it a doctor in

16   West Virginia that did the death certificate?

17       BY MR. BROWN:  I..

18       BY THE COURT:  If Maryland..

19       (THE COURT IS TALKING TO THE LAW CLERK)

20       BY THE COURT:  ..the answer given by my law clerk,

21   apparently the young man was transported to Ruby Memorial

22   West Virginia University, where apparently..

1      BY MR. BROWN:  That's correct.

2      BY THE COURT:  ..he unfortunately passed away.  So that

3  answers my question.

4      BY MR. BROWN:  Thank you.

5      BY THE COURT:  That's why it would have been a..

6      BY MR. BROWN:  Yes.

7      BY THE COURT:  ..West Virginia physician.

8      BY MR. BROWN:  And thank you very much.  So, but, I

9  think for the purposes of this case, I would note in the

10 death certificate, there are boxes that the doctor could

11 have checked.  He could have checked homicide, he didn't

12 check homicide, and that's what they are alleging here, that

13 we intended to kill this person, that they have sort of

14 abandoned the notion in their briefs that a person standing

15 in full protective gear, seventy-six away from a shredder,

16 was intentionally killed because a metal shot out randomly,

17 as they alleged in their complaint.

18      What they are focusing on is the employee's intended to

19 kill him because they didn't call 911 fast enough, which is

20 an absurd argument and is only made to try to put this case

21 in the deliberate intent intraption, but to get back to the

22 argument I was making, the death certificate has a box for

8

1  homicide.  It wasn't checked.  It has a box for

2  inconclusive, it wasn't checked.   It has a box for

3  accidental death, that was checked, so what is in the

4  complaint, and again, we are not trying to prove the case

5  here because this is a Motion to Dismiss.   What the

6  complaint alleges is the death was accidental and Maryland

7  Rule 2-303(d) says the exhibit trumps the substance of the

8  complaint.   That's the way it works, and so, the

9  Plaintiff's are not entitled, under my first argument, to

10  the deliberate intent exception, because they have alleged

11  in the complaint that the death was accidental.

12      Secondly, even if the death certificate had not been

13  attached to the complaint, the Plaintiff's have not alleged,

14  as I noted before, that the employees intended to kill Mr.

15  Nickel by calling 911, but not doing it fast enough.

16      We cited the *Johnson* case, and I think it is important

17  because in *Johnson*, the, it was a case where the employer

18  had electrical wires that were laid out, and the employer

19  violated the law six ways to Sunday in having those

20  electrical wires laid out and they didn't employ, they

21  didn't notify the employee and the employee touched them and

22  was killed.  And what the Court said under this very issue,

1    under the Worker's Compensation Act, said it might have been

2    reckless, it might have been wanton, but we have got to

3    respect the exclusivity that the legislature chose to put in

4    place so that umm, that's not intentional.   Reckless wanton

5    and conduct is not intentional, and I am not suggesting that

6    our failure to call 911 fast enough was reckless and wanton,

7    because I don't think it was, but even if it were, there is

8    no allegation that they intended to kill him by calling 911,

9    but not fast enough.

10         We have cited the *Bobo* case, 346 Md. App., 708 - 709,

11    and what *Bobo* says is you can't take a negligence claim and

12    put it into deliberate intent with three formula

13    allegations, well, Allegany intended to kill the Defendant.

14    There has got to be more.   They don't say why the employees

15    intended to kill their co-employee, they didn't say the

16    benefit, they didn't say anything other than two facts, they

17    intended to kill their employee and they didn't call 911

18    fast enough.   That, that is not, even under a notice

19    pleading, *Bobo* says you need more than that.  You need to

20    explain the Plaintiff's intended to kill through not calling

21    911 fast enough.  That does not appear in the complaint.

22         So, even if the death certificate hadn't been attached,

1    because the Plaintiffs don't allege intent to kill through

2    not calling 911 fast enough, the complaint is defective as a

3    matter of law.

4         There is a difference, and *Johnson* makes this clear,

5    and then I will move on to number three, the intent to do

6    the act, which they allege, they allege we intended not to

7    call 911 fast enough, but they don't allege, which is

8    critical, we intended to kill him by not calling 911 fast

9    enough, and there is a material difference and *Johnson* makes

10   that clear.

11        The third point is none of the three Plaintiff's

12   qualify under the Worker's Compensation statute to bring

13   this suit, or even if umm, the deliberate intent exception

14   applied.   So, the Estate has already made a Worker's

15   Compensation recovery.   They have weighed their right to

16   recovery for intentional misconduct, by getting a full

17   recovery in the Worker's Compensation process, so the Estate

18   has been fully compensated.

19        Mom and dad, who are, are Plaintiff's, they have to be

20   dependents.   That's what the statute says, to get under the

21   deliberate intent exception, they have to be dependents of

22   the Decedent.   There is one hundred and forty-three

1  paragraphs in that complaint.  Not one of them alleges mom

2  or dad is a dependent of Mr. Nickel's.  There is no

3  allegation anywhere in the complaint.

4      So, in their opposition, what Mr. Buckel is going to

5  ask you to look at are things that not in the complaint.

6  And that's inappropriate as a matter of law.  So, even if

7  there were no death certificate, and even if the Plaintiff's

8  have alleged that the employees intended to kill their co-

9  employee by delaying calling 911, the Plaintiff still

10 wouldn't qualify, mom and dad, because they are not

11 dependents.

12      Now, to try to save that, Plaintiff's can't even say

13 dad.  They say we don't know the facts, he is just a Use

14 Plaintiff.  We can't tell you in court, they have said this

15 in their opposition, why he is a dependent or if he is a

16 dependent.  That's not sufficient.  They don't get

17 discovery for that.  You can't say I am filing a claim

18 because we might possibly get some discovery at some point

19 that shows that dad is a dependent and qualified under the

20 statute.  The claim is defective, it should be dismissed as

21 to dad.

22      With respect to mom what they have said is you should

1   take judicial notice of a Worker's Compensation hearing

2   report that says something.   They haven't provided it to

3   the Court, they, what they have..we have cited law that says

4   you are supposed to provide an affidavit if you want to

5   allege, outside of the complaint, that mom is a dependent,

6   you have to provide an affidavit.   They haven't done that.

7   You have to provide the document that you want the Court to

8   take judicial notice of.   They haven't done that.

9       What they have said is in their opposition, Judge,

10  there is this ruling somewhere out there that we haven't

11  shown you that says something, you should take judicial

12  notice of that.   You can't do that and the law is clear,

13  and you shouldn't be able to do that.   You shouldn't be able

14  to take judicial notice of what lawyers tell you documents

15  say that you haven't seen.

16      So for all three of those reasons, separately and

17  independently, the claim against Allegany Scrap should be

18  dismissed.   They have alleged it is a negligence claim,

19  they haven't alleged we intended to kill this employee by

20  delaying calling 911, and none of the three Plaintiff's

21  qualify as having standing to bring this claim under the

22  Worker's Compensation Act.   Thank you, Your Honor.

13

1      BY THE COURT:  Counsel, let me check my notes here.  I

2   might have a question or two.

3      BY MR. BROWN:  Sure.

4      BY THE COURT:  From the things I looked at.  So one

5   argument that you are, you make, for lack of a better word,

6   I will call it jurisdiction.  Umm, you reference and

7   believe, if I am following correctly, that when Plaintiffs

8   have made a claim and made a recovery under the Maryland

9   Worker's Compensation Act, they are then barred from

10  bringing this claim on a negligence basis.  I, is that a

11  fair statement?

12     BY MR. BROWN:  That is a fair statement.

13     BY THE COURT:  Okay.

14     BY MR. BROWN:  The Estate made a recovery under the

15  Worker's Compensation Act, so the..

16     BY THE COURT:  Okay.

17     BY MR. BROWN:  ..Estate is barred.

18     BY THE COURT:  Got it.  And, and the legal argument

19  associated with that is the statute then and case law

20  thereafter, from your position, shows that that is an

21  exclusive choice that needs to be made and you can't have

22  both?

1    BY MR. BROWN:  Yes, and I, I am glad you mentioned that

2    Your Honor, because if you can bear with me, because I want

3    to answer your question.   The statute itself, and I pulled

4    it up, it is 9-509(d) of the Labor and Employment Article.

5    It says the Estate can bring a claim of Worker's

6    Compensation, or is the word, and this is the argument you

7    are referring to, or a civil suit.  It is one or the other,

8    and I noted in here that in this 2024 legislative session, a

9    bill was submitted in the Senate to make that and, so you

10   can bring Worker's Compensation and this civil lawsuit, and

11   that bill didn't pass.  It was rejected by the legislature.

12       So the to the extent you want to look outside of the

13   statute, which I don't think is appropriate, because I think

14   the word or is clear, it is now certainly clear that you can

15   choose one or the other and the Estate, what the Estate

16   should have done if they wanted to bring these allegations

17   of intentional misconduct, they should have in the Worker's

18   Compensation action said there was this death, we are

19   entitled to this recovery and it was intentional and they

20   are perfectly entitled to have brought those claims in the

21   Worker's Compensation.   What they can't do is split it and

22   bring negligence in one and intent in the other, because

1   they can do one or the other.   That's what the legislature

2   has said.

3       BY THE COURT:  And then I am also going to give the

4   other side an opportunity, each of you in your memos on the

5   law that might relate to that particular issue refer to a

6   *Sterry* decision, 64 Md. App., so I will allow that.  Now, I

7   have only had a brief opportunity to read it, but as I

8   recall, umm, Plaintiff in their memo in response to your

9   reference to the *Sterry* case would suggest that the aspect

10  of the exclusivity part in the *Sterry* case should be thought

11  of as "dicta", as opposed to part of the overall holding.

12      Now, I have briefly read the case, but what is your

13  thought, what is your argument in response if I have read it

14  correctly by the other side, that's not, that is "dicta", it

15  is not a precedent to be followed.

16      BY MR. BROWN:  Sure.

17      BY THE COURT: How would you respond to that?

18      BY MR. BROWN:  And you have read that correctly, that

19  is the argument they made and my response is two-fold.

20  Number one, it is not "dicta", and we have cited you in the

21  reply brief to, and this is the case, 64 Md. App., at 188,

22  and at 188, they quote the statute and say it is an or.  It

1   is a disjunctive, and secondly what I would say is so it is

2   a holding, and even if it was "dicta", that doesn't change

3   the fact that the statute says what it says.

4       It is very simple.  You can do Worker's Compensation or

5   a civil lawsuit, so I don't, it is a holding, it is not

6   "dicta", but I don't know that we even need to argue about

7   it because the statute says what it says and the statute is

8   clear.  You have to make a choice.

9       If you wanted to bring these intentional claims, you

10  had to do it in the Worker's Comp., because it doesn't say

11  you can bring a Worker's Comp. or a portion of it and then a

12  civil suit for the rest of it.   That is inefficient, that

13  is not, that doesn't suit the purpose of the Worker's

14  Compensation Act, which is to get people paid quickly.   It

15  is not to create duplicative lawsuits where you can get some

16  here and some there.  What it is is, let's streamline the

17  process and get people paid because when they are hurt on

18  the job, that's a problem, let's get them paid quickly and

19  that's what happened.

20      BY THE COURT:  Does the statute, from your view and

21  argument, permit folks involved in this sort of situation to

22  forego the Worker's Compensation claim altogether and file a

1    civil suit on intentional, on an intentional act..

2        BY MR. BROWN:  Absolutely.

3        BY THE COURT:  ..or does it all have to, you can go

4    either or, or both, or..

5        BY MR. BROWN:  Absolutely Your Honor, yes.   The

6    Plaintiff in this case could have, but did not.  Could have

7    decided I am not going to file a Worker's Compensation

8    claim, I am going to file a claim with negligence, intent,

9    everything I want to put it in, and we will just go through

10   the Circuit Court.   They didn't choose to do that and that

11   choice has a consequence.

12       BY THE COURT:  Now, and then I will leave it alone and

13   let Mr. Buckel argue about the same views.  Was, is your

14   position another argument, another position they could have

15   done is a file a Worker's Comp. claim, but on the

16   intentional aspect of it?  And the Worker's Compensation

17   Commission could make decisions based on the intentional

18   act?   Or..

19       BY MR. BROWN:  Absolutely.

20       BY THE COURT:  Okay.

21       BY MR. BROWN:  Absolutely.

22       BY THE COURT:  And has that happened?   Or well, we

1  won't get into that too much.  So, you have from your

2  argument you have choices.  Plaintiff could forego Comp.

3  altogether, file their civil action, or file a Comp. claim,

4  but assert the intentional nature of their claim and as the

5  Worker's Comp. would make a determination, I guess, what I

6  am just curious about, because it has been a long time since

7  I dealt with Worker's Comp., is there a different award

8  standard..if a Worker's Comp. Commission considers an

9  intentional claim, do they award the same traditional

10  amounts, or is it going to another page?  Do you understand

11  what I am saying?

12      BY MR. BROWN:  I do, but I am..

13      BY THE COURT:  I, I am not familiar with that aspect of

14  Worker's Comp., I guess is what I am saying.

15      BY MR. BROWN:  Right, and, and they can, Your Honor.  I

16  mean that is the, this issue hasn't arisen under Maryland

17  State Courts, but that is the *Tynes* and the *Parker* cases we

18  have cited, that are federal suits, where the, what the

19  Plaintiff..let's go back to the statute.  It says Worker's

20  Comp. or, there are two aspects to it.  Let me back up.

21      It says Worker's Comp. or civil, and in my view the

22  Worker's Comp. Commission can award damages for intentional

1   misconduct.    They can.

2        Secondly, even if Mr. Buckel stands up and says I

3   disagree, Worker's Comp. can't award intentional damages,

4   that's part of the calculus you should enter into when you

5   read the statute and say should I go to Worker's Comp. or

6   file a civil lawsuit.  That's a perfectly reasonable

7   decision to make, so even if I am wrong about that, and I

8   don't think I am, I think the Worker's Comp. Commission can

9   award intentional damages and you can bring it in their

10  cases that say you waive it if you don't, even, even if you

11  couldn't, that's a decision the Plaintiff has to make and

12  that's why you hire a lawyer.   The lawyer should say if we

13  go to the Worker's Comp. Commission, we can't get

14  intentional damages, so what you might want to do is not go

15  through the quick and easy process, file a civil claim and

16  get your intentional damages there.   And, and the

17  Plaintiffs had that choice, and the choice is laid out in 9-

18  509(d), which says you can do Worker's Comp. and all of its

19  damages or relief that you can get, or you can do civil

20  suit.  It doesn't say and.   It doesn't say you can break

21  them up.  It doesn't say file two suits.

22        This, the whole Worker's Compensation statute is to

1   give you one streamline option to get a particular relief.

2   If you don't want that relief, that's over and above regular

3   civil suits, if you don't want that relief because you are

4   willing to go through the civil system and all of its

5   discovery and issues that arise with that and you know, it

6   takes longer, that's the choice you can make, and if

7   intentional damages are important enough for you to do that,

8   then you should file a civil suit, and the legislature gave

9   you an option to do it.

10      BY THE COURT:  Okay.

11      BY MR. BROWN:  Thank you, Your Honor.

12      BY THE COURT:  Gentlemen, your views or responses,

13  please?

14      BY MR. BEEMAN:  Thank you, Your Honor.  May I please

15  the Court.   Your Honor, Mr. Brown has indicated three,

16  three arguments why he believes the deliberate intent

17  exception does not apply.  I am going to take them in the

18  inverse order of how he has addressed them and I will start

19  initially with the argument that none of the Plaintiff's

20  qualify.

21      With regard quickly to Mr. Nickel's father, umm, it is

22  suggested through Mr. Brown's argument that as a Plaintiff,

21

1    we don't need discovery from him because he's a Plaintiff.

2    That negates the entire purpose and the entire reasoning

3    behind Use Plaintiffs as required under the Maryland

4    Worker's, or under the Maryland wrongful death statute.

5    Use Plaintiff's are required to be filed if they may have a

6    potential claim and they are not represented by the party

7    bringing the claim.  It is in order to prevent two separate

8    parties from bringing the same type of action and..

9        BY THE COURT:  Counsel, help me with this.  Is there a

10   particular rule provision that refers to or statutory Use

11   Plaintiff's, so that I can address it, I can take a look at

12   that?

13       BY MR. BEEMAN:  There is, Your Honor.  And it falls,

14   it falls within the, it falls within the wrongful death, or

15   the wrongful death statute, among the Court's and Judicial

16   Proceedings.

17       BY THE COURT:  It is within the statute?

18       BY MR. BEEMAN:  Yes, it is.

19       BY THE COURT:  Okay, that's fine.  I will find it.

20       BY MR. BEEMAN:  Yes, Your Honor.

21       BY THE COURT:  You don't have to take your time, okay.

22   In the wrongful death statute.   Go ahead.

1    BY MR. BEEMAN:  And so Your Honor, Mr. Nickel is not a

2  represented party.  He is not represented by us and very

3  candidly, he and Ms. Beeman's views don't align.   They

4  don't see this the same way and it would be unethical for us

5  to represent Mr. Nickel as well.   Mr. Nickel, at this point

6  in time, has not obtained counsel and up to this point, he

7  is in no way participated in this litigation.  He has

8  received notices.  He is not here today, Your Honor.

9    So to suggest that we, the party bringing this action

10  on behalf of the Use Plaintiff, that we are statutorily

11  required to represent, that we have that information

12  available to us, is just patently false.  We don't have that

13  available to us.  The nature of the wrongful death statute

14  requires us to bring him along, and that's the reason that

15  he is included as a Use Plaintiff, is because we are

16  obligated to protect his potential rights by bringing this

17  claim and affording him the opportunity.

18    Ultimately at the end of a wrongful death claim, the

19  Court makes a determination as to how any award that is

20  awarded, the Court will make a determination as to how that

21  is to be allocated among the parties, including the Use

22  Plaintiff, but as required by the wrongful death statute, he

1  is tagging along with us for lack of our approval.  We have

2  no say in that.

3      With regard to the fact that Ms. Beeman does not

4  qualify, Judge, it is just, umm, Mr. Brown has said to you

5  today we ask you to take judicial notice of the Worker's

6  Comp. and we haven't provided you anything.  Judge, when I

7  pull Mr. Brown's initial opposition, or his initial Motion

8  to Dismiss, I look at page five and I look at the footnote

9  and while he chastises us for asking the Court to take

10 judicial notice of the Worker's Compensation, he very

11 clearly indicates this Court may take judicial notice of the

12 public record of the Estate's Worker's Compensation claim,

13 which is universally available to the public and this Court

14 on the internet.  Well, what is good for the goose is good

15 for the gander, Your Honor.  Umm, in the Worker's

16 Compensation claim, umm, the Commissioner found Ms. Beeman

17 to be a dependent of Mr. Nickel.  That finding qualifies

18 her as a dependent under the Labor and Employment Article,

19 as contemplated in the deliberate intent exception.

20     Umm, you know, to that end, Your Honor, and ultimately

21 I think a portion of Defendant's arguments here rest upon

22 they didn't plead it.  Umm, at the end of the day, Your

1  Honor, should Your Honor find that there was a failure to

2  plead something simple like Ms. Beeman is a dependent, we

3  would ask the Court for leave to amend, rather than a

4  draconian remedy like dismissing the claim in its entirety,

5  because clearly we can make those allegations, Your Honor.

6      I want to skip next to the death certificate.   The

7  Defendant, the Defendants allege that we attached the death

8  certificate.   Dr. K. (Dr. Kubiczek), I won't try to butcher

9  his name, checks the box that says accidental death, and the

10 Defendant says you have fully incorporated that, so the

11 death is accidental.   It, to me Your Honor, it is worth

12 pointing out there is a box on the, the death certificate

13 that indicates is this a work-related injury or a non-work

14 related injury.   Had the doctor checked the box that says

15 this is a non-work related injury based upon the information

16 that he was provided, would we be here arguing of course

17 this isn't a Worker's Compensation claim.   Look, the doctor

18 at W.V.U. who examined the body says it is not a work-

19 related incident.   You have to take that document in its

20 entirety and in its context.   We offer that document solely

21 for the purpose of establishing that Mr. Nickel was

22 deceased.   It is common practice, Your Honor, to attach a

1  death certificate in order to establish you know, prima

2  fascia evidence that the Decedent is, in fact, deceased.

3  It was, when I look at our complaint we referenced it in one

4  of our very basic jurisdictional arguments.   It, it

5  indicated Mr. Nickel was deceased on such and such a date,

6  see Exhibit Number Two.

7      To suggest that one finding made by a doctor who had

8  absolutely no evidence provided to him regarding the context

9  of Mr. Nickel's death, outside of his autopsy and physical

10  observation of the body, to suggest that that should be an

11  ultimate issue for this Court is preponderance.   When you

12  look within the document itself, there are numerous other

13  findings that just in fact are contradictory.   The doctor

14  additionally makes the finding that there were multiple

15  blunt-force injuries to the Decedent's head.   Umm, that

16  could, indeed, be accidental, but that could be construed in

17  any manner.   He notes that the interval between the onset

18  and the death was hours.   Very candidly Your Honor, this is

19  a doctor who is examining him post-mortem, who has no

20  benefit of any, you know, situational context of this,

21  outside of the fact that there is a person who is on the

22  table in front of him that he is examining.   To, to bar a

1   claim in entirety, based upon the fact that that doctor says

2   it is an accidental death, is preponderance.  It doesn't,

3   it doesn't track.

4        And to the heart of Defendant's argument, Your Honor,

5   the..

6        BY THE COURT:  Let me just..

7        BY MR. BEEMAN:  Please.

8        BY THE COURT:  ..one quick question on this last point

9   of the doctor's report or autopsy, or whatever it might be,

10   was attached as part of your complaint or did I

11   misunderstand that?

12        BY MR. BEEMAN:  And correct, Your Honor.  It wasn't

13   even the umm, it wasn't even the report.  It was simply and

14   solely the death certificate.

15        BY THE COURT:  I see.

16        BY MR. BEEMAN:  Not a report.

17        BY THE COURT:  That was, that was attached to your

18   complaint based upon the allegations that the young man had

19   lost his life?  I guess what I am trying to get to is what,

20   what was the rational for attaching the doctor's autopsy

21   report, which then creates issues that you are debating

22   about now?

1      BY MR. BEEMAN:  Sure, and Your Honor, just to be clear.

2      BY THE COURT:  Sure.

3      BY MR. BEEMAN:  It was the death certificate, as

4   opposed to an autopsy report.

5      BY THE COURT:  All right.

6      BY MR. BEEMAN:  And the death certificate was, is a

7   legally binding document that establishes Mr. Nickel's

8   death.  It was, it was offered in support of the claim that

9   in fact, Mr. Nickel was deceased.

10      BY THE COURT:  Okay.  Thank you.

11      BY MR. BEEMAN:  Certainly.

12      BY THE COURT:  And you were going on to the next part

13   of..

14      BY MR. BEEMAN:  Thank you, Your Honor. Yes.  The, the

15   heart of the argument here that we get to is whether or not

16   the Worker's Comp. provides exclusivity.  And there is

17   really, you know, two facets to that.

18      The first argument is whether or not the deliberate

19   intent exception applies, and the second argument that Mr.

20   Brown raised was umm, that it is an either/or proposition.

21   To that, Your Honor, we would pause it to the Court that in

22   general practice, it is not an either/or, and there are

1  several very practical reasons for why it is not an

2  either/or proposition.

3      Umm, in fact, there has been no claim made, aside from

4  the claims that Mr. Brown has made, that the Estate made a

5  recovery.  There is not a, a piece of evidence available,

6  either in the complaint or in any of the record before the

7  Court that the Estate has made any recovery by the Worker's

8  Compensation Commission, and that is important, Your Honor.

9  In fact, what has happened is Ms. Beeman, as a surviving

10  dependent, did in fact receive a death benefit on behalf of

11  the Worker's Comp. Commission by Mr., or on behalf of Mr.

12  Nickel's death.  That award that she received as a death

13  benefit was payable to her as the surviving mother.  The

14  Estate has made no claim, has made no recovery under the

15  Worker's Compensation Commission.

16      Separately, Your Honor, the death benefit that is

17  payable to a surviving mother is a fixed sum that is

18  intended as a no-fault based death benefit.  It does not

19  include any of the myriad claims for damages that can be

20  brought within the Circuit Court.  It doesn't include pain

21  and suffering, it doesn't include the Estate's loss of

22  consortium, it doesn't include a loss (inaudible word), it

1   doesn't include loss of potential future earnings.

2       All of those tort-based damages that are available

3   within the Circuit Court to the Estate and to surviving

4   dependents are not afforded within the Worker's Compensation

5   System.

6       Mr. Brown has classified it as the quick and easy

7   route.  Judge, if Ms. Beeman found herself in a position

8   where her son, who resided with her, who provided care for

9   her, who was a substantial part of her support and income,

10  much less her life, umm, you know, was suddenly ripped away

11  from her.  His support that he had provided to her was

12  equally ripped away from her.  It is easy for Mr. Brown to

13  say she could have elected either one.  Right?  It is easy

14  for him to say that, but when Ms. Beeman was faced with that

15  situation, you know, her support system that she had that

16  paid her bills, that allowed her to live in her house, that

17  allowed her to, you know, survive day-to-day was ripped away

18  from her and yes, she did make a claim under the Worker's

19  Compensation System for death benefits.  To preclude any

20  other recovery on behalf of the Estate, and on behalf of the

21  surviving dependents, excuse me, based upon that decision

22  that she made to find whatever support she was able to isn't

1   what was intended by the legislature, Your Honor.

2       The legislature has looked specifically at this and

3   they have enacted the provisions of the deliberate intent

4   statute, and within that they have provided an avenue for

5   claims of intentional harm or intent to kill, to be

6   exceptions from the Worker's Compensation System.  We have

7   made two allegations that I think are important for the

8   Court within our, within our complaint.

9       At paragraph thirty-nine, we, we allege that Defendant,

10  through their agents or representatives, employees, umm,

11  intentionally withheld or delayed treatment to Mr. Nickel,

12  and that that was a cause of his death.

13      We further alleged at paragraph sixty-one, that..sorry,

14  Your Honor.   Court's indulgence, one moment. (Pause)   I'm

15  sorry, Your Honor, I said sixty-one, I apologize.   At

16  paragraph sixty-eight, we…

17      BY THE COURT:  Sixty-eight?

18      BY MR. BEEMAN: Yes, Your Honor.  Sixty-eight.   Yes,

19  Your Honor.   We have alleged Defendant, Allegany Scrap,

20  intentionally subjected its workers to conditions known to

21  cause injury because risk of injury was a regular part of

22  employment for Defendant, Allegany Scrap.

1    In reviewing the Motion to Dismiss, Your Honor, Your

2    Honor is well aware of the standard.   Those, those

3    pleadings that are pled within our complaint are resolved in

4    the light most favorable to the Plaintiff.  We have alleged

5    two theories of intentional harm to Mr. Nickel, and those

6    are sufficient Your Honor, those are well pled and they are

7    sufficient to meet the deliberate intent exception.

8    While Mr. Brown indicates that we don't have a factual

9    basis for, you know, I think he basically said you know,

10   why, why did they intentionally?   We didn't allege why they

11   intentionally harmed him, we didn't allege the benefit that

12   they would gain from intentionally harming him.   Very

13   candidly Your Honor, those are facts that without being a

14   mind reader, we don't have.   We, we can't put ourselves

15   into the position of Allegany Scrap employees, Allegany

16   Scrap managers, we can't put ourself into that position to

17   be able to know the whys and the benefits, but what we have

18   alleged is that we have alleged that they, Allegany Scrap,

19   intentionally subjected its workers to conditions known to

20   cause injury, beyond risk of injury, and that was a regular

21   part of employment, and we have alleged that there was an

22   intentional delay or an intentional withholding of

1    treatment.

2        Now, Your Honor, we could have, we could have gone

3    further and supposed that the umm, the intentional

4    withholding of treatment or delay in treatment was so that

5    they could move Mr. Nickel's body to a position that was

6    more favorable.  Ultimately that's what we think the facts

7    are going to bear here.   We could have alleged something

8    like that, but we don't have that information, Your Honor.

9    At this point in time we represent Ms. Beeman who only for a

10   freedom of information act and a public information request

11   to O.S.H.A., only through that was she able to garner the

12   little bit of information that she has, that she does have.

13       So, to say that we, that our pleadings, that our

14   pleadings fail to meet the standards because they lack the

15   motive or they lack the benefit, is solely based, Your

16   Honor, on the limited information that is available to a

17   surviving mother of her child's death.

18       I just briefly Your Honor, I don't want to take up too

19   much of the Court's time, but I, I do want to touch briefly

20   on the point Mr. Brown made with regard to the legislature

21   and 2024 bills that came through in this past legislative

22   session and he argues to the Court in his, in his reply and

33

1  he argued to the Court today that essentially the general

2  assembly thought about fixing this, thought about changing

3  this and they didn't, and I think very frankly that's a bit

4  of a mischaracterization in that it doesn't represent the

5  entirety of the situation.

6      There was in fact Senate Bill 570, or 750, that was

7  introduced during the 2024 legislative session.  It was

8  introduced.   It went through a first reading, and it went

9  through committee, and it went no further.   The committee

10  did not take legislative action, or did not take action on

11  it, they didn't approve it, make a recommendation to pass

12  it, and they didn't deny it.   It was read through committee

13  and the bill essentially died there.

14      What we can't do in this instance is we can't infer

15  that the legislature as a whole, that they intended to keep

16  this language based upon the fact that the committee failed

17  to pass this bill out.   There could be any number of

18  reasons why the committee failed to pass the bill.  This

19  legislative session, the Senate introduced twelve hundred

20  bills and only three to four hundred of those actually made

21  it through committee.   Almost eight hundred of them died in

22  committee.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

 1      Ultimately, while Mr. Brown argues that the issue

 2  before the legislature was solely that and/or, it was

 3  something that was brought before the legislature, but it

 4  was among an entire host of other changes, comprehensive

 5  changes to the Labor and Employment Article, and at this

 6  point we can't, we can't speak to what part of that bill was

 7  unfavorable to the committee.    That, that change that we

 8  are referencing here is just one among, you know, one among

 9  a dozen changes that were proposed, so to suggest that the

10  Court can infer the legislature clearly has spoken on this

11  issue.   Based upon that I believe, is mischaracterizing it.

12      Your Honor, we believe that at the end of the day our

13  pleadings are sufficient to establish the deliberate intent

14  exception.   We believe that Ms. Beeman certainly qualifies

15  as a dependent, as contemplated under the deliberate intent

16  statute, and we don't believe that the death certificate

17  issue, it is a red herring here Judge.   It is being thrown

18  out as, as just another effort..we don't believe it is

19  dispositive.   It shouldn't resolve an ultimate issue like

20  this for the Court, and we believe that we have pled

21  sufficiently.

22      Should the Court determine that our pleadings had been

1  insufficient, we would ask the Court for leave to amend and

2  to resolve those issues.  I don't believe that there is

3  anything that the Defendants have raised today that can't be

4  cured through amending our pleadings, and so for those

5  reasons, we would ask the Court to deny Defendant's Motion

6  to Dismiss, or in the alternative, to grant Plaintiff's

7  leave to amend their complaint.   Thank you.

8       BY THE COURT:  Thank you, Mr. Beeman.  Just give me a

9  second.   I might have a question or two I might need to ask

10  you.

11       BY MR. BEEMAN:  Certainly.

12       BY THE COURT:  So, umm, focusing on the, I will call it

13  the jurisdictional issue, the statute, whatever.   So, one

14  of the arguments made by the Defendant in support of the

15  exclusivity thing, is to look at the statute and see the

16  word or.   I don't have the statute in front of me, but you

17  all are more familiar with it more so than I and the

18  argument is that there is a word there, making it one or the

19  other.  How do you respond to that?  Forget about what they

20  did or did not do in 2024 session, but the argument seems to

21  be if you look at the statute, the word is or.  It is one or

22  the other, not both.  Now, it doesn't say that, but how do

1  you work around the issue of the or in the statute?

2      BY MR. BEEMAN:  Sure.  Your Honor, we, we agree that

3  the general principle of statutory construction is that

4  words are disjunctive, but in this instance, in practice, it

5  hasn't been disjunctive.   The deliberate intent statute has

6  been, has been established within Maryland law for, for

7  dozens of years at this point, and when you look at the case

8  law that has been established, there is myriad cases dealing

9  with deliberate intent to all different avenues.   There is

10  not a single Maryland case, outside of *Sterry*, that stands

11  for the proposition that it is a disjunctive or.   And I

12  don't believe that *Sterry* stands for that proposition, Your

13  Honor.

14      The *Sterry* case is a case that stands on the

15  proposition to distinguish a, an underlying accidental

16  injury versus an aggravating intentional injury, and we

17  cited it for that purpose, Your Honor.   There is, in this

18  instance there is an underlying injury.   We don't know

19  whether it was intentional or whether it was accidental, but

20  in this instance, there is an aggravating injury that we

21  certainly claim was intentional.   The withholding and delay

22  of care was the aggravating circumstance that led to Mr.

1   Nickel's death and remember Judge, in this instance, the

2   pleadings, the four corners of the complaint are to be taken

3   in the light most favorable, in all inferences resolved in

4   favor of the Plaintiff.   So, the *Sterry* case stands for

5   that proposition, Your Honor.

6      In, in the end of a paragraph as there is, as the Court

7   is discussing another case, the *Young* case, they do make the

8   comment and you know, I will concede that Mr. Brown has

9   correctly quoted it within his brief, they do make the

10  comment that at his option he could elect A or B, but within

11  the factual basis and the factual proceeding of that case,

12  Your Honor, nowhere is it established that the Court is

13  dealing with this issue of, you know, Mr. Sterry made a

14  claim within the Worker's Compensation Commission and now he

15  is making this deliberate intent claim.  Nowhere within the

16  background is that the issue of this case.  They mention

17  it, and that's why I classify it as "dicta", Your Honor.  It

18  is mentioned, it is thrown out, but it is not a holding of

19  the case because it is not what the Court was determining

20  there, and we all understand, you know, the West headnotes

21  and the Lexus topics are not binding in any way, but it is

22  curious, they generally get it right, Judge.  That's not

1  listed as a holding of the case.  It is not even mentioned

2  in those headnotes or those, those, you know, keynote

3  summaries, and while I understand completely that is not

4  binding on the Court, it certainly suggests when you read

5  the case in its entirety and its context, that case isn't

6  about the proposition of whether the exclusivity provision

7  is disjunctive.  They make that finding in "dicta", but it

8  is not a holding, and while Mr. Brown cites the other

9  federal cases, I believe one, *Tynes* was a U.S. District of

10 Maryland, and then there was a, a Foreign U.S. District

11 Court, as well, unless I am misremembering.  It was two

12 federal courts.  They make that finding that the order is

13 disjunctive, but within the entire myriad of case law that

14 has been established on deliberate intent, there is not a

15 case anywhere that points to the proposition that that or

16 is, in fact, disjunctive.

17      BY THE COURT:  You, you have referenced the myriad of

18 cases and *Sperry*, your view is that it is "dicta" and not a

19 holding.  Is there any Appellate decisions in the State of

20 Maryland that has dealt directly with the question being

21 posed in this issue today?

22      BY MR. BEEMAN:  Not that I am aware of, Your Honor.

1    BY THE COURT:  Okay.   Nor am I, I just want to make

2  sure that there isn't some case out there that I am missing.

3  There is such a case, is that a fair statement?

4    BY MR. BEEMAN:  Not that I am aware of, within Maryland

5  case law, Your Honor.

6    BY THE COURT:   And you, this is my, I didn't get down

7  the exact words, verbiage you said, but you indicated that

8  even when we are talking about the statute or the word or,

9  the word or might appear in the statute.  It does, we know

10  that, but that doesn't reflect the standard process.   There

11  is other cases, that, so I can, that's, those weren't the

12  words, the bulk of the case..get me to that.  What do you

13  mean by that?   What else out there, what else is out there

14  that should be looked at from your point of view that would

15  say the word or shouldn't be interpreted in the typical

16  disjunctive fashion?  What should you be looking for, or

17  what should I be looking for?

18    BY MR. BEEMAN:  Your Honor, I, I, yes.  I am not aware

19  of, I am not aware of Appellate cases that stand for that

20  proposition.

21    BY THE COURT:  Okay, okay.

22    BY MR. BEEMAN:  I, you know.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1    BY THE COURT:  That's okay.

2    BY MR. BEEMAN:  When, and I apologize, when I mentioned

3    that, you know, I, very candidly, you know, I have had

4    numerous incidents where, where this exact situation has

5    occurred.

6    BY THE COURT:  All right.

7    BY MR. BEEMAN:  The Worker's Compensation claim is

8    filed, and then a wrongful death case under the deliberate

9    intent exception proceeds, based upon the cases moving

10   concurrently with one another, but certainly I don't, I

11   don't have an Appellate Court decision that stands for that

12   proposition.

13   BY THE COURT:  And the final question I have, just

14   generally on this subject is, and again, I wrote my notes as

15   quickly as I could and I may have misunderstood, but you,

16   you, on that same issue of the application of statute, I

17   think, indicated and described that Ms. Beeman did make a

18   claim in the Worker's Compensation with the Worker's

19   Compensation Commission, and some award was given as, as

20   being the mother of the Decedent.  Okay, and if I, was I

21   following correctly that, that there should be then a

22   distinction made that this was a claim made by Ms. Beeman in

1    her capacity as the mother of the child, or sorry, of the

2    young man, not the Estate.   So is your argument that when

3    you are trying to, when I am asked to apply this statute,

4    there should be a distinction between a claim made and an

5    award made as a result of this occurrence to the young man's

6    mother, and distinguished from a claim being made by the

7    Estate in this case, and also it does seem to me, well, just

8    looking at your title, Linda S. Beeman, surviving mother,

9    and then there is personal representative, but is that, is

10   that a distinction that you think is drawn by the statute,

11   or should be drawn by the statute to have claim made by mom,

12   mother, but then you have the claim made by the estate.   Is

13   a distinction to be drawn if that eliminates the word or?

14        BY MR. BEEMAN:  I think that, I think it is, Your

15   Honor..

16        BY THE COURT:  Okay.

17        BY MR. BEEMAN:  ..and just, just to further clarify,

18   Ms. Beeman's award among the Worker's Compensation

19   Commission was, was not because she was a surviving mother,

20   but it was because she was adjudicated as a surviving

21   dependent..

22        BY THE COURT:  Surviving dependent.

1      BY MR. BEEMAN:  ..and so the surviving dependents under

2  the Worker's Compensation System are entitled to..

3      BY THE COURT:  Okay.

4      BY MR. BEEMAN:  ..a surviving spouse or a surviving

5  dependent, are entitled to a death benefit.

6      BY THE COURT:  And just on that point, and then I will

7  leave it alone and go, but maybe, I haven't read word for

8  word through your complaint.  It is really long.  Is there

9  a paragraph or paragraphs in the complaint that reference or

10 describe the claim made by your client in the Worker's

11 Compensation?  My job is to look at the four corners of the

12 complaint, not to go beyond it, but is there particular

13 provisions that I should look to, in paragraph form, that

14 describe the involvement of the claim in Worker's Comp.?

15     BY MR. BEEMAN:  There is not, Your Honor.

16     BY THE COURT:  Okay.  Okay.  So there is no reference

17 made?

18     BY MR. BEEMAN:  I think that is correct.

19     BY THE COURT:  Okay, all right.  Those were the

20 questions that I had.  Anything else you wanted to add?

21     BY MR. BEEMAN:  No, Your Honor.

22     BY THE COURT:  Okay, counsel, if you would, what do you

1   have there?

2       (THE COURT IS TALKING TO THE CLERK)

3       BY THE COURT:  Okay, so I suppose one question just

4   occurs to me to ask, because the last question I asked is,

5   is this Motion to Dismiss, is there anything in the

6   complaint that references or establishes that a claim was

7   made by Mrs. Beeman to the Worker's Compensation Commission?

8   How do, I mean we know that, because you are telling me

9   that, but my job in looking at the complaint, is there

10  anything in the complaint that would identify that and then

11  I go to the next step to apply the statute, where, what

12  should I look to in the complaint itself that identifies

13  this prior act?

14      BY MR. BROWN:  Well..

15      BY THE COURT:  Counsel, I just noticed you were

16  standing.

17      BY MR. BROWN:  I am not sure who you were directing the

18  question to.

19      BY THE COURT:  Pardon?

20      BY MR. BROWN:  I am not sure who you directing that

21  question to.

22      BY THE COURT:  The guy with the black suit ohn.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1      BY MR. BROWN:  Okay.

2      BY THE COURT:  No, no, I will get back to you, but he

3  was standing.   That seems to be something that I should ask

4  you.  Go ahead.

5      BY MR. BROWN:  I, we, there is nothing in the one

6  hundred and forty-three paragraphs, and that's why we asked

7  you to take judicial notice of that issue, and there is,

8  there is support for that.  In the footnote to our motion we

9  asked you to take judicial notice of the Worker's

10  Compensation award, but that issue cuts both ways because if

11  you don't take judicial notice of the Worker's Compensation

12  award to Ms. Beeman, then..sorry, to the Plaintiff, the

13  mother, I am blanking on her name, umm, then you also can't

14  take judicial notice that she allegedly has been adjudicated

15  a dependent, and in the one hundred and forty-three pages of

16  that complaint, there is not a single allegation that she is

17  a dependent, not anywhere, so if I think you should take

18  judicial notice of the Worker's Compensation award, because

19  it shows that Ms. Beeman is not entitled to umm, to

20  recovery, but I think there is a more basic issue that I

21  want to respond to, with respect to the death certificate.

22      You asked the right question.  You, you said you

1  decided to attach the death certificate to your complaint,

2  right, and you said multiple times and Mr. Beeman said

3  multiple times that the, you are to look to the four corners

4  of the complaint and when the Plaintiff started with their

5  complaint, they started with a blank piece of paper.  They

6  could have attached anything or not attached anything they

7  wanted to the complaint, and when they, they alleged that

8  Mr. Nickel is the Decedent in the complaint.   That

9  allegation has to be considered as true for the purposes of

10 this motion.   They didn't need the death certificate, but

11 they chose to attach it and that choice has consequences and

12 the consequences are spelled out in the rules.

13     Maryland Rule 2-303(b) says if you attach a document to

14 a complaint, it is part of the complaint allegations for all

15 purposes.   Then in their opposition, they have agreed, it

16 is part of the complaint for all purposes.   So you asked

17 the right question when you said you attached that death

18 certificate and I wrote down when Mr. Beeman was speaking.

19 He said it is a legally binding document establishing Mr.

20 Nickel's death and he also said I don't know if it is, he

21 said I don't know if it is accidental or intentional.   The

22 death certificate tells you it is accidental.  It is a

1    complaint allegation.

2       Mr. Beeman stood up and did what I told you Mr. Buckel

3    was going to do, but Mr. Beeman did it.  He stood up and

4    made arguments about whether you should or should not rely

5    on the death certificate as evidence in proving a claim.

6    That's not the purpose of this motion.   The purpose of this

7    motion is to decide what are the allegations in the four

8    corners of the complaint, and do those allegations in the

9    four corners of the complaint state a claim and the answer

10   is no, because regardless of what discovery might come out

11   on that death certificate, if this complaint were to proceed

12   to discovery, it doesn't matter because the complaint is

13   deficient, we should never get to discovery because the

14   complaint alleges the death was accidental.

15      Mr. Beeman said well, it was hours between the incident

16   and the death and it was this and, that's argument for

17   whether the death certificate is correct.  You don't have to

18   decide if the death certificate is correct, it is an

19   allegation in the complaint.   They chose to allege,

20   starting with a blank piece of paper, that this death was

21   accidental, and Mr. Beeman just said in a representation to

22   the Court, we don't know if it was intentional or

1  accidental.  And, but they said in the complaint that it

2  was accidental, so for your purposes in deciding a Motion to

3  Dismiss, the deliberate intent exception cannot apply.

4  You cannot apply as a matter of law the deliberate intent

5  exception to a complaint which alleges the death was

6  accidental.  They didn't have to put it in, but they chose

7  to, and they did.

8      Secondly, with respect to the statute, and you spent a

9  lot of time on it, here's what you know based on the lawyer

10 argument you have heard.  You know the statute says you

11 have a disjunctive choice.  You can do either or.  You can

12 file a Worker's Compensation claim or file a civil lawsuit.

13 We know that.  Mr. Beeman said, and he's right, rules of

14 statutory construction require that word to be considered in

15 the disjunctive.  And regardless of what happened with the

16 legislature, that statute is the best evidence you have of

17 the legislature's intent, what they said in the statute.

18 The fact that they could have chosen to change it and they

19 decided not to, for whatever reason, helps us, but you don't

20 have to worry yourself with that because the statute says

21 what it says.  You have the legislature's intent.  If it

22 was important enough to change, if it was an important issue

1    and the legislature really wanted to do it they could have,

2    and they got halfway and they chose not to, but it doesn't

3    matter because you have their intent.  It is stated in 9-

4    509(d), of the Labor and Employment Article.  What it says

5    is you have got a choice, one or the other.  Mr. Beeman

6    doesn't have any legal arguments..Your Honor, the law

7    applies here.  I can't believe I have to say that, but the

8    law applies here.

9        What Ms. Beeman chose to do or not to do is frankly

10   irrelevant.  She knows how to get a lawyer, she's got two

11   sitting right here, and her choice has a consequence, and

12   the, why does it have a consequence?  Because the

13   legislature decided it should have a consequence when they

14   enacted a statute.  They didn't have to enact a statute,

15   they could have said you can do this and this, because

16   sometimes people are in a bad spot and they have to make

17   choices, but I just sat here this morning and listened to

18   you ask a criminal defendant over a dozen questions about

19   her guilty plea and the reason that you did that was because

20   choices have consequences.  You wanted to make sure she was

21   making a good choice because when adults make choices, those

22   choices have consequences, and when the legislature has

1  said, when you file a Worker's Compensation claim, that

2  choice has a consequence.  You can't file a civil suit,

3  unless you get under the deliberate intent exception, and it

4  just doesn't apply here because the complaint says the death

5  was accidental.

6      Now, Mr. Beeman has said well, that's not how it

7  happens in practice, so let's break that down.  What is he

8  asking you to do?  He's asking you to ignore the statute and

9  ignore *Sterry*, which is the one Maryland case on this issue,

10 and follow the lawyers who aren't following the statute,

11 because no one ever objects and I am apparently the first

12 person who has ever raised this issue after *Sterry*.

13     So, what he is saying is don't follow the law, don't

14 follow the statute, just join the herd of all the people who

15 do it this way.  That's, that is not what you are supposed

16 to do candidly, Your Honor, you are supposed to enforce the

17 statute.  And if that really were the case, I heard the

18 word myriad multiple times, and in fact, you repeated it.

19 There should be a myriad of cases that show what Mr. Beeman

20 is talking about and he just told you there are none, zero,

21 none.  There is no Appellate case in Maryland that says you

22 can do both, none.  And he is asking you to blaze a trail

1  and say I am not going, I am going to ignore the statute and

2  I am going to follow the herd of people who don't read the

3  statute.

4       With respect to notice pleadings, I would ask you to

5  again look at *Johnson*, because *Johnson* is very clear.

6  *Johnson* says with respect to setting the death certificate

7  aside, this is my issue number two, and I apologize.   We

8  keep renumbering the issues for you, but the issue I am

9  getting at is even if the death certificate hadn't been

10 attached, is there deliberate intent here and the answer is

11 no because if you look at the four corners of the complaint,

12 which we all agree you have to look at, there is no

13 allegation that says the employees deliberately intended to

14 kill Mr. Nickel by delaying calling 911.  It is not in

15 there.   And *Johnson* says it has to be in there because

16 *Johnson* makes a distinction.   *Johnson* is the electrocution

17 case that I went through before and I won't repeat.  *Johnson*

18 says you can't just say they intended to delay calling 911,

19 or they intended to leave these electrical wires out.  What

20 you have to say is they intended to delay calling 911 to

21 kill someone, or they intended to leave the electrical wires

22 out to kill someone, that's what you have to say and they

1  haven't said it, so as a matter of law the complaint is

2  defective, even if the death certificate hadn't been

3  attached.

4      Now, you have got a lot of off the record evidence

5  about who did what at the Worker's Compensation Commission,

6  but what Mr. Beeman has just told you is the mom got a

7  recovery and since the mom got a recovery, she has an

8  either/or choice, she is out.  That's what the statute says,

9  and he has admitted they don't have any evidence to support

10 the father, and the, the allegations in the complaint are

11 Ms. Beeman was relaying on Mr. Nickel, Mr. Nickel supported

12 his mom, and they are asking you to find so that the

13 deliberate intent exception applies, that the father was a

14 dependent of Mr. Nickel's, who is so close, according to his

15 mom, but the mom has no idea if Mr. Nickel, who was

16 supporting her, was also supporting dad.  You don't have to

17 do that.  What you can say and what you should say is they

18 haven't alleged anywhere in the complaint that either one of

19 them is a dependent, and so the complaint is defective.

20 They don't meet the statute.  Even if the worker, even if

21 the death certificate hadn't been attached, and even if the

22 deliberate intent exception were to apply, they haven't

1    alleged they meet the statute, because neither is a

2    dependent.   And the Estate doesn't meet any of the three

3    categories.    There are three categories and the Estate is

4    not any one of the three.

5        So for all those reasons, Your Honor, unless you have

6    any questions, I am finished my argument.

7        BY THE COURT:  One quick question and then I really do

8    have to move on because I have a whole other section of this

9    case to deal with, and then another case.   Umm, is there

10   any distinction from your position that one of the

11   Plaintiffs in this case is the Estate of the gentleman that

12   passed away, albeit his mom is a personal representative?

13   Is there any distinction to be drawn that by all accounts,

14   she made a claim with the Worker's Compensation Commission

15   and received some award for herself.   Does the or part of

16   the statute affect the Estate from proceeding in this?   Or

17   is it, I think the argument is, I think perhaps the argument

18   is it is distinct from Mrs. Beeman.

19       BY MR. BROWN:  Right.   Well..

20       BY THE COURT:  What is your thought about that?

21       BY MR. BROWN:  My thought is this, that it is not.

22   Umm, because there is no statutory construct.   If you, I

53

1    would encourage you to look at and I know you are pressed

2    for time, but to look at 9-509, there is no box you can put

3    the Estate in to, to make that claim.   Umm, it applies to,

4    there are, okay.   Wrongful death claims in Worker's Comp.

5    are permitted, or the deliberate intent exception, sorry, is

6    permitted for three categories of people.   A surviving

7    spouse, there is none here; a child, none here; or a

8    dependent of the covered employee.   So, the Estate doesn't

9    qualify for the deliberate intent exception because it is

10   not a surviving spouse, a child or a dependent of the

11   covered employee.   That section, 9-509(d)(2), so even if

12   there is a distinction to be made, the Estate can never

13   recover under the deliberate intent section and the reason

14   we didn't make that argument in the brief is because it is

15   our understanding that recovered under the Worker's Comp.

16   and not the mother.

17        BY THE COURT:  Thank you.

18        BY MR. BROWN:  Thank you, Your Honor.

19        BY THE COURT:  Okay.  Thank you.

20        BY MR. BROWN:  Thank Your Honor.

21        BY THE COURT:  Briefly, because..

22        BY MR. BEEMAN:   May I have about thirty seconds, Your

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1   Honor.

2       BY THE COURT:  The floor is yours.   Just hit it

3   briefly, please.

4       BY UNKNOWN COUNSEL: Put him on the timer, Your Honor.

5       BY THE COURT:  Sorry?  Again?

6       BY UKNOWN COUNSEL:  Put him on the timer.  He said

7   thirty seconds.

8       BY THE COURT:  That started about a half hour ago.

9   But, but..

10      BY MR. BROWN:  Yes.

11      BY THE COURT:  But..

12      BY MR. BEEMAN:  With regard to that, with regard to the

13  death certificate, Your Honor, I don't want the Court to

14  elevate form over substance as Mr. Brown is suggesting.  The

15  case cite is *Benjamin vs. Woodring*, 268 Md. 593.  It stands

16  for the proposition, the Trial Court in Benjamin excluded

17  the manner of death portion of the death certificate from

18  evidence based upon Maryland Code, which provided in

19  pertinent part, goes on to read the Code, and then it

20  establishes that the Trial Court interpreted the section of

21  the statute to mean despite a statutory mandate to certain

22  information incorporated into the certificate, not all

1    information contained in the death certificate qualifies as

2    facts.

3        I will leave you with that, Your Honor.

4        BY THE COURT:  All right.

5        BY MR. BROWN:  Your Honor, I haven't seen the case.  He

6    filed a lengthy opposition and now he is citing the Court a

7    case that is not in there.  He has waived the right to do

8    that, it is totally unfair to me to go on Google while I am

9    making my reply argument and then cite a case that is not

10   cited anywhere in the brief.  I, I don't have an

11   opportunity to respond to the *Benjamin* case because I

12   haven't seen it because it wasn't..we, we, this case was

13   fully briefed weeks ago.  It is totally inappropriate.

14       BY THE COURT:  Thank you, gentlemen.  I note your

15   concern and we will factor it in as I make a decision.

16   Sir?

17       BY MR. BROWN:  Your Honor, will I have an opportunity

18   to respond on the *Benjamin* case?

19       BY THE COURT:  On the case cited?

20       BY MR. BROWN:  Yes.

21       BY THE COURT:  Sure.  Do you want, I mean..do you want

22   me to keep the thing open for ten days and you each can file

1   whatever you want on that?

2      BY MR. BROWN:  No, I don't want a free for all, Your

3   Honor.  I will, umm..

4      BY THE COURT:  I, I don't want a free for all, I

5   respect the fact that this is a case that you didn't, wasn't

6   briefed or whatever.  If you want the opportunity to review

7   it yourself and post hearing make a submission as to what

8   you think this case says or does it have affect here, you

9   can have that opportunity.  I don't know how else to..

10      BY MR. BROWN:  Thank you.

11      BY THE COURT:  ..deal with it.  Okay?

12      BY MR. BROWN:  Thank you, Your Honor.

13      BY THE COURT:  Okay.  Anything else?

14      BY MR. BEEMAN:  No, Your Honor.

15      BY THE COURT:  All right.  My goal, gentlemen, would

16   be to have a ruling out to you in approximately fifteen

17   days.  I have some work to do to get there, so that's my

18   goal.  You will have a ruling in about fifteen days.  Okay?

19      BY MR. BROWN:  Thank you, Your Honor.

20      (THE COURT IS TALKING TO THE LAW CLERK)

21      BY THE COURT:   The Law Clerk was just reminding me

22   I have a second Motion to Dismiss to deal with.  Okay, thank

1    you very much.    Now, I do need to make an inquiry, there

2    is another totally unrelated case that due to Judge Twigg's

3    involvement in a jury, trial, I was to hear.    (Talking to

4    another person in the courtroom)  Ma'am, are you here

5    involved in another case, unrelated to this case?

6        BY THE UNKNOWN PERSON: No, Your Honor.    This would be

7    the Decedent's sister.

8        BY THE COURT:  Okay.  Apologies. (Talking to the

9    Bailiff)  Check in the hall.    There is some case about name

10   change, contested name change that was supposed to be at

11   9:30 or 10:00.    I am not seeing any players, so..

12       BY THE LAW CLERK:  It is supposed to be at 10:30, and

13   Becky Lechliter is out in the hallway.

14       BY THE COURT:  Okay, go out and verify, do I have

15   litigants here and whatever.    (To Counsel)  Okay, give me a

16   second to find out what the status of this other case is,

17   please.    Come on up.    (Pause)  (To Counsel in the other

18   case)  Ms. Lechliter, I have a second Motion to Dismiss I

19   need to deal with.    If it is similar to the first one, this

20   will keep me occupied to noon or thereafter.    So, I don't

21   want you all to remain inconveniently sitting.    I will take

22   your case, but it is going to have to be, well, you should

58

1   go have lunch or something because it is going to be this

2   afternoon before I get to this.

3        BY COUNSEL:  Will one o'clock be okay?

4        BY THE COURT:  Okay, why don't we, okay.  Two o'clock.

5   With my apologies.

6        And moving right along.  If you will give me a moment.

7   So this is a continuation of the case of **Beeman vs. Allegany**

8   **Scrap**.  This is the second of the Motions to Dismiss and

9   this is a Motion to Dismiss filed by the, we will call it

10  the manufacturers involving Shredder Company, LLC, etc., a

11  separate Motion to Dismiss.   We have already had the

12  parties identify their counsel.

13       So, counsel, to you.   Your Motion to Dismiss.

14       BY MR. MOELLER:  Yes, Your Honor.  Joseph Moeller, on

15  behalf of the alleged manufacturer, the Newell Defendants,

16  as they are called in the pleadings.

17       If I please the Court.  The motion here is sort of two

18  parts, one part jurisdiction and one part more on the merits

19  of the pleadings, so I will start with the jurisdiction

20  element, because that is, as the rules and Maryland Rules

21  commentary tells us, the most important part here that has

22  to be addressed really before anything else in the case is,

1   so that Your Honor isn't in the position of having litigants

2   before the Court, that the Court has no jurisdiction over.

3   That is supposed to be addressed as the very first thing.

4        So, I won't belabor the facts.   I heard Your Honor

5   this morning say that you had read the papers.   Just

6   relevant to the Manufacturing Defendants, there are about

7   five paragraphs of allegations as to how the shredder at

8   issue got from the alleged manufacturers to Allegany County,

9   Maryland, and essentially what is said is each Manufacturing

10  Defendant is alleged to have, all of them manufactured the

11  shredder, at some unspecified times, some unspecified place,

12  and then the shredder was put into operation in Allegany

13  County in 2011.  The unfortunate incident that we are here

14  occurred in 2020, about nine years later.

15       So, starting with the jurisdictional issues that arise

16  from that, the case law that is cited in the papers is clear

17  that the Plaintiff has to both allege and then if it is

18  challenged by the Defendant, has to prove to the Court that

19  jurisdiction is appropriate.

20       So, if we start with the allegations, I think the

21  opposition, I won't say that it conceded it, but the

22  opposition's position on that was that perfunctory, I think

1    was the word, perfunctory allegations of jurisdiction are

2    common practice, and while that may be permissible where you

3    have a fender-bender around the corner from the courthouse

4    and everyone involved is a member of the same county, when

5    you have a more complexed jurisdictional situation, the,

6    similar to the holding from the Reed Drug case that is cited

7    in the motion, the more complicated the facts, the more

8    factual allegations you need, and that is certainly the case

9    here where you have four different Texas companies allegedly

10   responsible for manufacturing a shredder that someday ends

11   up in Maryland and harms someone.

12        So, the allegations just say that the Manufacturing

13   Defendants manufactured it and then the shredder ended up in

14   Maryland somehow, and that's reminiscent of one of the cases

15   that is cited in the motion, which is the, if you will give

16   me just a moment here, Your Honor.. (Pause)   ..the *Lesnick*

17   *vs. Hollingsworth* case, where you have a cigarette

18   manufacturer in Massachusetts.   They sell cigarette filters

19   to a company in Kentucky.   The filters end up on cigarettes

20   that get sold in Maryland.   What the case law interpreting

21   the fourteenth amendment and the Maryland Longarm Statute

22   say is that a Defendant like that who does something in

1    another state and the product somehow, someway eventually

2    down the line ends up in Maryland, they didn't have a

3    reasonable explanation of being sued in Maryland for work

4    that they did in one state that went to another state and

5    eventually ended up in Maryland, and it is sort of a

6    reasonableness inquiry at the end of the day whether the

7    Defendant availed themselves of the state they are being

8    sued in so that they can expect to be sued there.

9         Umm, that's what the Constitution requires.   People

10   can't be dragged into the courts of other states unless they

11   have done something to put themselves there.

12        And so the allegations, which is the starting point, we

13   just aren't there, and for that reason alone it would be

14   appropriate to dismiss the complaint against all four

15   Manufacturing Defendants on jurisdictional grounds, but in

16   the alternative and in the event that the Court does find

17   that those allegations are sufficient, the Manufacturing

18   Defendants do have to preserve these additional arguments

19   and certainly their opposition, the Plaintiff's presented

20   evidence of jurisdiction.   So, if Your Honor doesn't have

21   any questions about the pleading of jurisdiction, 1 can move

22   on to the evidence.

62

1      BY THE COURT:  Go ahead, please.

2      BY MR. MOELLER:  Thank you.  So, the way the Maryland

3  Rules require this to occur and the way it is explained in

4  case law is that you have to plead yourself into

5  jurisdiction and if that is challenged by the Defendant,

6  then at the beginning of the case, before the case moves on,

7  the out-of-state Defendant is subjected to Maryland Court's

8  rulings, the Court has to, I believe the phrase is take

9  affidavits and other testimony and decide factually whether

10  the Defendant purposely availed themselves to doing business

11  in Maryland, essentially.  And this is more similar to the

12  C.S.R. Limited case that is cited in the motion, where you

13  have an Australian business that is sued in Maryland,

14  basically because their asbestos products moved through a

15  Maryland port and the question was whether they reasonably

16  should have anticipated being sued in Maryland specially

17  because it passed through the port in Baltimore and the

18  Court, the Maryland Court said no, that that wasn't

19  sufficient and in that case there was evidence and testimony

20  presented that you know, these were products of this

21  specific Defendant in Australia, here is how they traveled

22  to the Port of Baltimore, they passed through Maryland.

1  They were regularly shipping things through Maryland and

2  that manner and the Court heard that and what the Appellate

3  Court said was, the proper ruling was to dismiss because

4  that wasn't a sufficient proof of jurisdiction basically,

5  and what has been offered by the Plaintiffs as evidence of

6  jurisdiction is not sufficient under that case law.

7      We mentioned in the motion that most of it is not

8  offered with any sort of affidavit, it is not offered as

9  testimony, but even if the Court were to accept it, we have

10  a report from the Maryland Occupational Safety Agency which

11  says that the shredder company, doesn't say which shredder

12  company because they are a different corporate names here,

13  umm, designed and built a shredder.  That company,

14  whichever one they were referring to was no longer in

15  business, and the current C.E.O. of Newell Recycling

16  Equipment, LLC, previously owned whichever shredder company

17  that they were talking about.  That doesn't connect the

18  dots here.  It was Plaintiff's task to produce evidence that

19  connected the dots between wherever the shredder was

20  manufactured, which is not alleged either, in Maryland, and

21  the fact that umm, that one of these companies may have

22  designed part or all of a shredder doesn't get us from a

1    Texas Defendant purposely availing themselves in Maryland.

2    The way the Constitution requires from Maryland Courts to be

3    able to assert jurisdiction and then we have sort of a

4    historical article about the invention of this type of

5    shredder that is published in 1994, and it just talks

6    generally about how the Newell family has been heavily

7    involved in this business since the 1940's or so.

8         That is just not the sort of evidence that would be

9    required to show that each of these manufacturers, they each

10   manufactured the product at issue, they each purposely

11   availed themselves of the State of Maryland so that it would

12   be fair to sue them in Maryland instead of the place where

13   they chose to do business, which is Texas.

14        There was a suggestion in the opposition that

15   jurisdictional discovery would be appropriate.

16   Respectfully Your Honor, I don't think that is appropriate

17   because you have to allege the elements if your claim, you

18   have to plead yourself into discovery before you can get it.

19   But to the extent the Court was willing to allow any amount

20   of jurisdictional discovery, the Manufacturing Defendants

21   would ask that it be very sharply limited in number of

22   interrogatories and content and scope so that we don't have

65

1    an extensive burdensome discovery process happening before

2    this Court has even found that it has jurisdiction.

3         And I will note as well, two of the Manufacturing

4    Defendants, one of them Newell Recycling Equipment, LLC,

5    didn't exist until 2015, as a matter of a very judicially

6    noticeable document, a State of Texas record from the Texas

7    Secretary of State, and the shredder company, L.P., went out

8    of business and its license to do business was forfeited

9    before 2011.   So just to the extent the Court is

10   considering things beyond the pleadings, what the

11   Manufacturing Defendants have shown is that two of them

12   weren't even conceivably responsible for what they are

13   alleged to have done.

14        Before I move on to anything on the merits, does the

15   Court have any questions on the jurisdictional evidence?

16        BY THE COURT:   No, sir.

17        BY MR. MOELLER:   Thank you, Your Honor.   So I will

18   speak just briefly about the dismissals on the merits, which

19   just to be clear, are broad as a secondary argument behind

20   the jurisdictional issue and only to preserve them at this

21   stage of the case.

22        So there are three, one of I can get rid of very

66

1  quickly.   In counts six, twelve and eighteen, there is an

2  implied warranty claim there.   The Plaintiffs cited some

3  case law from the 1970's that while I respectfully disagree

4  with the reasoning of it, I recognize that a preliminary

5  Motion to Dismiss isn't the time to argue the merits of the

6  Maryland Supreme Court decision, so we have withdrawn that

7  argument without waiver and reserving the right to bring it

8  up later, but at this time we aren't pursuing that portion

9  of the motion.

10     So I will start with counts four, ten and sixteen, and

11  this is all spelled out in the motion divided up by section

12  but going through a complaint with this many counts, umm, it

13  is important to sort of separate the weak from the

14  (inaudible word) here, and we have claims that are not

15  properly plead and can't make it past this stage of the

16  case, no relief can be granted, even if they do, so to the

17  extent the Court keeps the claims against the Manufacturing

18  Defendants in play, these ones should be removed from the

19  case at this point to sort of simplify the proceedings and

20  avoid more burden to the Court and the parties.

21     So these ones that I am speaking on now, umm, which are

22  four, ten and sixteen, they are for a short of version of

1  design defect claim that really doesn't exist in Maryland

2  law.   It is sort of like a failure to prevent changes to

3  existing safety features is the best way I can describe it,

4  Your Honor, and that's just not consistent with what a

5  design defect claim in Maryland is.

6      A design defect claim in Maryland is about whether the

7  product at the time it left the manufacturer was in a

8  defective condition and specifically, one of the elements of

9  the claim is that it, that a condition wasn't substitively

10 changed from that change until the accident occurred.   And

11 those elements aren't pled, because what is actually pled is

12 that it wasn't in the same condition at the time of the

13 accident.   Plaintiff's plead that changes were made, that it

14 wasn't maintained properly, that safety changes may have

15 been intentionally removed.   That's not a design defect,

16 that's bad maintenance or a problem for the subsequent

17 owner.   And this is the *Phipps* case, 278 Md., at 363.

18 The problem here is that if this claim worked the way

19 Plaintiff's have pled it, then a manufacturer would be

20 forever a guarantor, that the product will always be safe in

21 all ways.   How would the manufacturer be able to prevent

22 someone from buying a Ford Focus, driving it for one hundred

1  thousand miles without changing the tires, and then blowing

2  out a tire and getting into an accident.   There is this

3  sort of perpetual safety obligation that Plaintiffs are

4  trying to impose here, and aside from just being factually

5  inconsistent with the elements of playing blackletter law

6  motion to dismiss, that's not a claim that should be

7  possible in Maryland because manufacturers, this is I

8  believe why the case law is laid out this way.

9      Manufacturers shouldn't have an obligation to prevent

10 an end user from taking off the seatbelt in the car or

11 taking off the safety on the rifle.  The manufacturer

12 doesn't have an obligation ten years down the road in this

13 case to make sure you are keeping up with your maintenance,

14 make sure you are not tampering with their product.  Case

15 law just is not designed for that, Your Honor.

16      And then the final set of claims that the Manufacturing

17 Defendants have moved on the merits for, they are contained

18 in counts six, twelve and eighteen.

19      BY THE COURT:  What was that again, counsel?

20      BY MR. MOELLER:  Six, twelve and eighteen.

21      BY THE COURT:  Fifth, twelve and eighteen?  Go ahead.

22 And thank you.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1      BY MR. MOELLER:   And those counts, umm, improperly, I

2   am not here to give opposing counsel a hard time, but they

3   include multiple claims, different types of warranty claims

4   in the same count, which does make the motion a little more

5   complicated, but just to be clear, I am talking now about

6   the implied warranty of fitness for a particular purpose.

7   That's contained within those counts, at least as I read

8   them.

9      And Your Honor, I am sure Your Honor has encountered it

10  before, the way that claim works is that the buyer has to

11  come to the seller and said I need this particular thing,

12  and the seller exercises some discretion and gives them a

13  product for a particular purpose, not just the general

14  purpose it is used for.   This was the *Bond* case, 96 Md.

15  App., 137.

16      You know, if you buy a faucet you are using it to run

17  water through.   That's not a particular purpose.   You need

18  something that requires the seller to exercise some

19  discretion and chose the right product for you, so if I say

20  I need a sedan that can haul my two-ton boat, that's not

21  something you usually find in a sedan.   I would be trusting

22  the seller at the car dealership to pick me the right car

1    and if he sold me a Prius and it couldn't tow the boat, I

2    would have an implied warranty claim against him.

3        Umm, it is not alleged at all that any of the

4    Manufacturing Defendants made any sort of promise.  There is

5    not a conclusory allegation to that affect and the

6    opposition acknowledges that and says well if we get

7    discovery, we might find a basis that somewhere along the

8    chain of sale and custody before this made it to Allegany

9    Scrap, some promise was made by one of the manufacturers.

10        That's contrary to the way the Maryland pleading rules

11    work, Your Honor.  You have to plead at least the basic

12    elements of the claim in good faith before you can plead the

13    claim and then you get discovery in order to figure out the

14    specific facts, umm, building on your good faith allegation,

15    and that's a problem throughout the complaint, Your Honor.

16    Umm, the Maryland Statute of Limitations give parties three

17    years from the date of learning of their potential claim to

18    investigate and plead their claim.  The opposition sort of

19    suggested that it was unfair because the Newell Defendants

20    are out of state to expect the Plaintiffs to properly,

21    fully, completely investigate and plead all of the elements

22    of their claims and of jurisdiction, and that's what the

1  three years are for, Your Honor, are to do that and there is

2  a multitude of ways to do that including, but not limited

3  to, suing a Defendant like Allegany Scrap, conducting

4  discovery and maybe coming up with a basis for a claim

5  against some other Defendant later, but you don't get to sue

6  the Defendant who you hope you have a claim against and then

7  use discovery to hopefully establish jurisdiction in the

8  elements of your claim.

9      So with that, if Your Honor has any other questions, I

10  would be happy to answer them, but those are generally the

11  grounds for the motion.

12      BY THE COURT:  No, none at this time.  Thank you,

13  counsel.

14      BY MR. MOELLER:  Thank you, Your Honor.

15      BY THE COURT:  And counsel?

16      BY MR. BUCKEL:  Thank you, Your Honor.  As you may

17  likely recall, I used to do the jobs, I used to represent

18  product liability manufacturers nationwide as a defense

19  attorney, prior to relocating here, and I can tell you that

20  if the Court were to adopt prior to any meaningful discovery

21  the standards that are being urged upon it, there wouldn't

22  be any product liability lawsuits, unless they were against

1  Toyota, or General Motors or some of the world's largest,

2  obvious, you see them on TV every night, product

3  manufacturers.   That's not who makes metal shredders.

4  That's not who makes a variety of products that come into

5  our state and into our communities and who can cause harm,

6  death, cause the death of that woman's son, through the

7  application and the use of this machine.

8      I would note initially with respect to the arguments

9  that my colleague made about some of the companies named,

10  well they may have been out of business or they weren't

11  formed until after the shredder was made, they did not make

12  an individual Motion to Dismiss with affidavits proving and

13  demonstrating that as a failure to be a proper party to the

14  case.  Not at all.  They simply collectively as we have

15  referred to them as the Newell Defendants have come in and

16  said we are just in Texas.  If you read their brief and

17  infer form the logical conclusions or interpretations of the

18  arguments of defense counsel, Newell, the Newell Defendants,

19  any one of these four Newell Defendants, I will freely

20  submit it is a (inaudible word) structure.  It is very

21  difficult to track down who made this.  We had to rely on a

22  O.S.H.A. report, the state investigators for the State of

1  Maryland contact and say we, you know, they are out there

2  with the shredder.   They have access to it, we do not, and

3  take the shredder company.  They call a phone line, it is

4  discontinued.  They do what we do, on-line research to find

5  out that the Newell's apparently, somewhat frequently, shut

6  down companies and then start new companies in the same line

7  of work and then eventually they get an individual named

8  Scott Newell who says oh yea, I was the shredder company and

9  now I am Newell Recycling Equipment.  I have been other

10 things.  Oh, yea, I designed that shredder, let me tell you

11 how it works, and that's how it got there.

12     Without the ability to proceed with the case and avail

13 ourselves of the greatest tool available for fact-finding of

14 the Maryland, or the American Judicial System, which is our

15 discovery process, it would be impossible to meet the

16 standard that the Newell Defendants have urged upon you.

17     What we do know, what is uncontroverted is that a

18 shredder that some or all or part of the Newell Defendant

19 structure has acknowledged to a Maryland state investigator,

20 a state official, we made the shredder.  It ends up in

21 Cumberland, Maryland, and is involved in the death of an

22 individual.  That's undisputed.  Undisputed that the

1   shredder is here.

2       The cases, the only two cases that were cited by the

3   Defense in their Motion to Dismiss on the personal

4   jurisdictional arguments are a case called *C.S.R.*, which is

5   a state-based case, and a case called *Lesnick,* which is a

6   federal case interpreting Maryland law that is not directly

7   binding upon the court, but certainly is instructive.

8       In the *C.S.R.*, I, I would point out to you that in both

9   cases, if you read and knowing Your Honor as I do, I know

10  you will read both of the cases if you haven't already, but

11  when you read them you have to be struck by one very clear

12  inference, there was a significant amount of discovery and

13  factual evidence put forth by the parties prior to the

14  Court's ruling on the personal jurisdictional argument.  It

15  wasn't this sort of perfunctory I don't know, they didn't

16  allege it in the complaint, we are not there, there were

17  affidavits from the Defense what we didn't do.  You don't

18  have that here.  We don't have Mr. Newell, Scott Newell.  We

19  don't have his affidavit that said I don't do business in

20  Maryland and I will point just at that juncture and then

21  return to the differentiations with *C.S.R.*   I know that the

22  Court is likely aware of this, but personal jurisdiction

75

1   isn't something we deal with every day.  Who remembers

2   International Shoe from when they took you know, loss of

3   civil procedure, but personal jurisdiction can be both

4   specific and general.   The fact that, and we don't know the

5   fact.  No one knows the facts, except the Newell Defendants

6   subject to discovery process authorized by this Court as to

7   where they sold this particular shredder.

8       If they sold it to Allegany Scrap, which they did not

9   come in an allege we did not, would have been a very simple

10  thing to do.  Come in and allege here is my affidavit, I

11  tracked my records, I didn't sell that to Allegany Scrap, I

12  sold it to someone in Manatoba, Canada, and I don't know how

13  it got there.  They didn't do that.  If they sold it to

14  Allegany Scrap and that is discovered specific jurisdiction,

15  (inaudible).   Even if they did not, if they continue to

16  design products for sale into the market, to engage in

17  marketing activities in the State of Maryland, to have some

18  type of continuous openness to the markets of Maryland for

19  other shredders, they have sold other shredders into the

20  state, they could still be found to have general

21  jurisdiction sufficient to allow the courts of Maryland to

22  extend our process over them.

1      We submitted an exhibit to our Opposition to the Motion

2  to Dismiss, we found it on-line.  It is the limited

3  discovery we had, Your Honor.  I can't go to the shredder

4  company, to the Newell Recycling Equipment, to any of these

5  entities and get them to open up their records, their sales

6  records, their communication records, their e-mails.  Here

7  is the shredder, I.D. Number, if there is such a number, or

8  a serial number, where did it come from?  I can't do that

9  until the Court allows me to.    They would object to it.  It

10  is a heads I win, tails you lose.

11      We did produce from the, and it is part of the Court's

12  record, this article that we found that suggests that the

13  Newell Entities, and again, they seem to change their name

14  frequently, the Newell Entities made well more than half of

15  the metal shredders that were in existence in America at the

16  time of this, and there also is a little map.  It is a map

17  of the United States.  I wouldn't suggest to you that it is

18  the most perfect evidence that I could have constructed, but

19  it is what exists and there is a bunch of dots in what

20  appears to be Maryland.  I can't tell if that is four dots

21  or five dots or six dots, they somewhat are over, you know,

22  they are close because we are such a small state, putting a

1   dot on a map, but there are a bunch of dots that are

2   represented from information provided by Newell Entities

3   that yes indeed, we have been selling metal shredders into

4   Maryland, more than just one, for many years, different

5   years.

6        The, the *C.S.R.* case dealt with a raw material

7   supplier.  It was, I believe, Your Honor, an asbestos case.

8   And it dealt with shipping things through the Port of

9   Baltimore.   The end lating, the end place where the place

10  the materials would arrive from Australia, was never

11  designed to be Maryland.  They did not have contracts with

12  Maryland companies to take the products out of their

13  containers here in Maryland, to do anything with them, to

14  sell them in Maryland.  They were simply passing through.

15  The boat landed from Australia, the containers got loaded

16  into likely locomotives or trucks, and they got driven to

17  the end state.

18       I think the Court is probably familiar in an asbestos

19  case that many times asbestos Plaintiff's sue hundreds upon

20  hundreds of potential defendants because it is impossible to

21  trace the exact source of exposure in many instances to

22  those asbestos fibers or filiments that can cause

78

1   mesothelioma, and in this particular matter the Court looked

2   at it and said this defendant does not seem to have any

3   relationship whatsoever.   No one was alleging that they did

4   something, that their product was, in fact, opened in

5   Maryland and that the particular plaintiff breathed in the

6   asbestos and was exposed to the asbestos in Maryland.

7       That is different here.   The Newell Defendant Shredder

8   was in Maryland.  The Newell Defendant Shredder was the

9   implement that caused Josh Nickel's death.   Very clear,

10   point blank, absolute distinction.

11      The *Lesnick* case, which is the federal case, they are

12   the only two cases cited.  There is no Maryland case cited

13   where a trial court has been affirmed for dismissing a case

14   of this nature based upon a personal jurisdictional argument

15   without the availment of substantial discovery on that

16   issue, at a minimum.  No other case.

17      The *Lesnick* case, and my colleague cited that, and I

18   believe correctly it is very different than this situation

19   for the same reason.  In *Lesnik* you have a component

20   manufacturer that says I am making widget A and as part of

21   widget A, the widget A manufacturer needs component B and

22   all I do is ship component B to the widget manufacturer, not

1   in the foreign state, I don't know where widget manufacturer

2   is selling into, I have no relationships with the foreign

3   state, I just sell to my manufacturing partner in a

4   different state.   That's not here.   The Court in that case

5   determines that is not enough, it is not enough that a

6   manufacturer takes your component without your expressed

7   knowledge or participation and then sells it into other

8   jurisdictions that you never sell into, that you never avail

9   yourself of.   That's not enough, that's not here.

10        Newell Defendant Shredder is sitting here in Allegany

11  County, Maryland.  It is the precipitating machine that

12  killed Josh Nickel, so it is a clear differentiation between

13  the facts and the logical reasoning in those two cases.

14        You know, we can operate certainly under the Longarm

15  Statute that confirms jurisdiction here in Maryland and the

16  documents that showing the wide scope of these Newell

17  shredders nationwide, in fact, worldwide, and the fact that

18  there is evidence to suggest that they have been sold into

19  Maryland on prior occasions and that they may be sold here.

20        I appreciate the maxim that well, it is the Plaintiff's

21  burden to demonstrate exactly what they did.   The Plaintiff

22  could never meet that burden unless you are afforded

1    discovery for the purpose.   My colleague suggested that

2    what we should have done was sue Allegany Scrap, well prior

3    to the three year statute of limitations, when in fact, the

4    investigation of the matter by O.S.H.A. took, I believe, I

5    believe it took eight months and we weren't able to actually

6    secure the report until sometime after that because of the

7    administrative requirements, but we should have sued

8    Allegany Scrap, which I am sure my other colleagues sitting

9    in the back would have come in and made the same arguments

10   he made today, you can't sue us either, and then we would

11   have had to wait and see how that argument turns out, and

12   then maybe, we could have gotten discovery from Allegany

13   Scrap, but what if the Court kicked them out of the case,

14   then we wouldn't get any discovery against them either to be

15   able to track where Allegany Scrap got the machine from in

16   particular.

17       At the end of the day, Your Honor, I think that the

18   entire jurisdictional argument boils down to this.   The

19   posture of the case.  On a Motion to Dismiss, as you are

20   well aware, you have to accept all inferences plead in the

21   light most favorable to the Plaintiff.  You have to allow

22   individuals who claim injury or seek redress under Maryland

1    law a fair opportunity to explore their claims in good faith

2    through our discovery process.  As the Court is well aware,

3    you will have multiple opportunities later in this process

4    to make a determination to the contrary, to say based upon a

5    full consideration, a full opportunity for everyone to

6    litigate their claims, the Court does or does not believe

7    that this personal jurisdiction may exist at this particular

8    posture of the case.  To make that determination, and to

9    deny any form of relief or redress to the Plaintiff herein,

10   to Ms. Beeman, to Mr. Nickel's Estate, in particular, for

11   what occurred to him, his tragic death would be not only

12   outside the context of any Maryland cases that I have seen,

13   that have been cited to the Court, but it would be simply a

14   miscarriage of justice.

15        I will turn Your Honor, to the question as my colleague

16   sort of, I think, very logically put them out, the second

17   issue is about more of just a pleading issue as to design

18   defect.  The Newell Defendants suggestion without any

19   reference to any Maryland case law.  I will make that very

20   clear, there is only one case cited in their argumentation,

21   or argument section on this issue.  It is the *Holiday vs.*

22   *Sturm Ruger* case involving the use of a handgun in a product

1  liability case.  That was decided on summary judgment, not

2  at the standard that we are currently dealing with now at a

3  Motion to Dismiss based upon the inferences from the

4  pleadings.  It was decided after an opportunity for

5  discovery had occurred and the Court's application of that

6  discovery and the expert opinions to the prevailing state of

7  Maryland law.

8      I will read to you very briefly, it is included at page

9  eight, with respect to the allegations that are made.  There

10 is an argument being made that we have created a brand new

11 standard of design defect in Maryland, and that's not the

12 case.  You have to design a product with a degree of

13 foreseeability and if it is foreseeable for you that a

14 particular product as dangerous as a metal shredder can be,

15 if it is foreseeable to you that the safety devices of the

16 shredder will eventually degrade or they, or you can operate

17 them without them being employed, then that is an issue for

18 future expert opinion and ultimately factual consideration

19 as to whether or not it was foreseeable and reasonable for

20 the manufacturer to do so.

21     The degradation is a totally separate issue.  In fact

22 if I make a safety implement that I know gee, after you use

83

1    this for a few years, the safety implement, the guard, the

2    protective device may fail, I have an obligation to warn you

3    of that, I have an obligation to perhaps design it

4    differently so that it doesn't degrade and fail, or so that

5    there is some type of attenuating factor where the end user,

6    the operator, the owner of the machine is aware of the

7    degradation of the material and can then supplement.   What

8    we have alleged, and that is really all the Court, I think

9    in this context, the context of the design defect claim, and

10   the Motion to Dismiss that we didn't plead it well enough, I

11   am citing one case.  It is *Holiday*, which is not a case

12   about pleading.   In paragraph thirty-two, we allege that

13   the metal shrapnel that killed Josh Nickel was allowed to be

14   projected and discharged due to a sagging and inadequate

15   guard.

16        In paragraph forty-nine, we alleged that the design of

17   the shredder utilized certain deflective shielding, rubber

18   curtains or other safety features to prevent metal shrapnel

19   from flying out of the shredder, but however, failed to

20   design the industrial shredder in a manner which would

21   anticipate and mitigate that these deflective shielding

22   curtains or other safety features degrade or are

1  intentionally removed, or are intentionally removed from the

2  industrial shredder and caused the shredder to cease

3  operations while these safety features were absent.

4       In paragraph fifty, we allege that the product was

5  being operated without the deflector, shielding, curtains

6  or other safety features to prevent metal shrapnel from

7  flying out and causing injury and/or death, which was

8  reasonably foreseeable to the Newell Defendants, who I think

9  everyone at this point in time would have to concede are

10 supposed to be one of the world's largest manufacturers of

11 these devices.

12      That's enough to plead design defect.  I don't, I am

13 not aware of a single Maryland case that would suggest that

14 those allegations and those sentences do not withstand a

15 Motion to Dismiss for failure to state a claim upon design

16 defect and we believe that, you know, at the end of the day

17 I think one or more, my colleagues suggested that you can't

18 have any type of liability, a manufacturer cannot be held to

19 suggest that a user cannot disable certain safety features.

20 They can't be held to design it so that the safety features

21 can't be disabled for use, and he brought up about cars.

22 Can't remove the safety bag from your car and operate the

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1    car.  If you own a car that has a sliding, you know, when

2    you shut the door, the seatbelt comes down upon you

3    automatically, you can't disable that and drive the car.

4    That's how they are designed.  Is it a defect to include, to

5    make cars that have the old style, the style that I have,

6    you know, you get the little ringing bell and the annoying

7    voice, please put your seatbelt on.  Is it a design defect

8    to include those versus the automatic?  I am not alleging

9    that, but that is probably a question for fact in the

10   development of law, but I would point out that certainly

11   there are manufacturing safety devices that exist in

12   significant products which cannot be removed during the

13   stream of commerce cannot be removed in order to be

14   utilized.

15       And I believe that that is not, that is not uncommon in

16   product liability design defect allegations, at least not

17   uncommon in my twenty some years of experience in that

18   field, to suggest and allege that the manufacturer had a

19   duty or a responsibility based upon industry standards to

20   design it so that safety features, if they degraded the

21   machine would not work or if they degraded, there was an

22   automatic way to update or replace, or if they were somehow

1   removed or made ineffective, that there was a redundancy of

2   safety, so that the machine would not continue to work as

3   designed.   If I make a machine at work and say well, I

4   designed it with this safety feature.  What happens if the

5   safety feature fails?  Oh, it will kill you.

6       I, I think we are allowed to allege for the design

7   defect to suggest that the failure of a redundancy of safety

8   is enough at this stage of the proceedings to allow us to

9   move forward.   We would ask on the personal jurisdiction

10  issue to the extent that the Court would find the personal

11  jurisdiction not established as of today, to allow, as my

12  colleague has suggested, for discovery.  I am not, when I

13  say robust, I don't mean discovery outside of the four

14  corners of what the Court would find permissible, but

15  certainly robust in the forms and mannerisms of discovery

16  between these four companies, some of which now say they

17  don't exist, or we do exist.  We are there, we weren't

18  there.  And they all seem to be inter-related.  We certainly

19  would need and appreciate and believe that it would be in

20  the interest of justice and appropriate if the Court would

21  say hey, I am not sure about personal jurisdiction today, we

22  should have a period of time to conduct that discovery with

1 | these defendants, to lay forth a broader base.

2 |     We don't believe it is necessary, that the Court has

3 | ample information today of defined personal jurisdiction at

4 | this juncture, but in the event that the Court feels

5 | otherwise, that would be the appropriate posture to proceed

6 | from our perspective.

7 |     Without any other questions, Your Honor, I would

8 | conclude.   Thank you very much.

9 |     BY THE COURT:  No, sir.

10 |     BY MR. BUCKEL:  Thank you.

11 |     BY THE COURT:  Counsel, do you, give me an estimate of

12 | your time.  You have plenty of time, but I am, it is lunch

13 | time now, so if you have a brief one we will go with it.  If

14 | you need more time, we will come back after lunch.   Your

15 | call.

16 |     BY MR. MOELLER:  Lawyers are famous for saying I only

17 | need a couple of minutes and going beyond a couple of

18 | minutes.

19 |     BY THE COURT:  I have heard that before.

20 |     BY MR. MOELLER:  Understanding that, I have five points

21 | written out here that I think I can address in a couple of

22 | minutes, so maybe this will be the first time.

1        BY THE COURT:  Fair enough.

2        BY MR. MOELLER:  So the sort of, one of the over-

3    urching issues with Plaintiff's argument is this idea that

4    the Defendants need case law that is precisely, factually,

5    on point, that it is the exact same facts, the exact same

6    situation, the exact same procedural posture.  Respectfully

7    that is just not how the common law system works.  The, the

8    Courts trust Your Honor as the Trial Court to make a

9    decision based on Maryland Rule 322, which says you have to

10   plead the facts of your claim and the case law interpreting

11   that.  So if the case law says these are the elements, it is

12   up to Your Honor to decide whether the elements are pled.

13   You don't need a case that is basically judicial estoppel in

14   order to dismiss a complaint that doesn't plead all of the

15   elements.

16        And with that, umm, Plaintiff's have sort of argued

17   that the Defendant's are making a "got ya" argument.  You

18   can't get discovery and you can't sue us, so he can't ever

19   have a claim against us.  We win and we ride off into the

20   sunset.

21        Plaintiffs were always free under the U.S. Constitution

22   to sue the Manufacturing Defendants in Texas where personal

1    jurisdiction  wouldn't be an issue, but they chose to sue in

2    Maryland, and when you sue in Maryland, you need

3    jurisdiction in Maryland.  And it hasn't been pled and I

4    won't belabor that, but the facts supporting any purposeful

5    use of Maryland for products, any sort of advertising, all

6    the things counsel was talking about, none of that has been

7    pled in the complaint, so I think the starting point for

8    Your Honor should be dismissal of the complaint on that

9    basis.  I am not asking for dismissal with prejudice.  They

10   could potentially amend it and plead the facts they need,

11   but they haven't pled them, so I believe the starting point

12   should be a dismissal without prejudice.

13       And if we are moving beyond the allegations in the

14   complaint in talking about the evidence, counsel is asking

15   where the Defendant's proof and affidavits are.  Umm,

16   that's not the way the burden is set up here.  The

17   Defendant's have no obligation to prove to Your Honor that

18   Your Honor doesn't have jurisdiction over them.  Umm, they

19   don't have to prove the negative.  It is Plaintiff's burden

20   once the jurisdictional issue has been raised to produce

21   their own affidavits, they own evidence, and the fact that

22   some company that may or may not have had Newell in the name

1  may have sold some shredders in Maryland in the past hundred

2  years is not sufficient for the Court to find that any of

3  the specific companies, some of which are no longer in

4  existence or weren't in existence at the time, did something

5  in Maryland, so that it would be fair for the Maryland Court

6  to pull them out of Texas into a court in Allegany County

7  and respond to a Maryland Plaintiff's claims.

8      The only other issue that I want to specifically

9  address in rebuttal was the safety defect claim.  This is

10  the sort of failure to prevent tampering with safety

11  features.  I heard a lot about how in some instances a

12  product has some sort of anti-tampering features and that

13  maybe there was a failure to warn, which isn't one of the

14  allegations in the complaint, but I think Your Honor has to

15  go back to the four elements that are cited on page six of

16  the motion.   Umm, and one of the elements of this claim,

17  of the design defect, is whether or not you can bring it in

18  the way that the Plaintiffs want to bring it, the elements

19  under Maryland law are that the product was in a defective

20  condition at the time it left the control of the seller, and

21  there are allegations that it changed, that safety features

22  were removed, but more importantly, the third element, the

91

1    product was expected to and did reach the consumer without

2    substantial change in its condition, and the Plaintiffs have

3    alleged that there was a substantial change in its

4    condition, so I just respectfully don't see how it can be

5    that it was designed defectively because the manufacturer

6    didn't prevent Allegany Scrap from removing a safety feature

7    ten years later.

8         And with that, unless Your Honor has any other

9    questions, I think I hit my mark pretty well on timing, so I

10   can address..

11        BY THE COURT:  You did indeed, counsel.

12        BY MR. MOELLER:  Thank you.

13        BY THE COURT:  Thank you.  All right, gentlemen, thank

14   you.  Interesting matters.  I will take the matter sub

15   curia and try to get a prompt ruling to you in the immediate

16   future.  Thank you and good day.

17                            - 0 -

18

19

20

21

22

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

STATE OF MARYLAND

COUNTY OF ALLEGANY, TO WIT:

    I, the undersigned, M. Sue Crowe, official Court Reporter for the Fourth Judicial Circuit of Maryland, duly appointed and qualified as such, do hereby certify that the foregoing is, to the best of my skill, ability, and judgment, a true and accurate transcript of a motion hearing in **LINDA BEEMAN, SURVIVING MOTION OF JOSHUA NICKEL, et al vs. ALLEGANY SCRAP, et al,** in Civil Case Number C-01-CV-23-317, given in Cumberland, Maryland, on the 28th day of June, 2024.

    Given under my hand this 3rd day of July, 2024.


*M. Sue Crowe*

_____
M. Sue Crowe
Court Reporter for Allegany County, MD




M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

E-FILED; Allegany Circuit Court
Docket: 12/18/2024 1:13 PM; Submission: 12/18/2024 1:13 PM
Envelope: 19235588

# EXHIBIT  4

1

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

LINDA BEEMAN, as Surviving Mother of

JOSHUA P. NICKEL, et al,        *

      Plaintiffs                    *

   vs.                            *      CASE NO. C-01-CV-23-317

ALLEGANY SCRAP, INC., et al,    *

      Defendants                    *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDING

Motion Hearing

Tuesday, September 24, 2024
Cumberland, MD  21502

BEFORE:

   THE HONORABLE JEFFREY S. GETTY

APPEARANCES:

   FOR THE PLAINTIFF:

      JASON C. BUCKEL, ESQ.

      T. LEE BEEMAN, ESQ.

   FOR THE DEFENDANT:

      JOSEPH M. MOELLER, ESQ.

      ALEX J. BROWN, ESQ.

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

2

1                        **PROCEEDINGS**

2        BY THE COURT:  All right, the next matter on the

3    Court's docket then is **Linda Beeman vs. Allegany Scrap**.

4        BY MR. BUCKEL:  Good morning, Your Honor.

5        BY THE COURT:  Good morning.

6        BY MR. BEEMAN:  Good morning, Your Honor.

7        BY THE COURT:  Good morning.   And this is Case Number

8    C-01-CR, no, that is the last case.   Hold on for a second.

9    (Pause)  There it is.   Okay, and so this is Case Number C-

10   01-CV-23-317.   Okay, counsel, would you identify yourselves

11   for the record?

12       BY MR. BEEMAN:  Yes, good morning, Your Honor.   For

13   the record, Your Honor, Lee Beeman and Jason Buckel, of

14   Buckel, Levasseur, Pillai and Beeman, appearing on behalf of

15   Linda Beeman.

16       BY THE COURT:  All right.   And counsel?

17       BY MR. BROWN:  Good morning, Your Honor.   Alex Brown,

18   on behalf of, from Shapiro, Sher, on behalf of Allegany

19   Scrap.   I represent just one of the Defendants.   My

20   counsel representing Co-Defendants is in the gallery because

21   we have decided my motion will go first, if that is

22   acceptable to the Court.

                        M. Sue Crowe
                       Court Reporter
             Circuit Court for Allegany County

1      BY THE COURT:  All right, and your motion is a Motion

2  to Dismiss?

3      BY MR. BROWN:  Yes, Your Honor.

4      BY THE COURT:  All right.

5      BY MR. MOELLER:  They both are Motions to Dismiss, Your

6  Honor.

7      BY THE COURT:  They both are Motions to Dismiss?

8      BY MR. BUCKEL:  Yes, and I apologize, my voice is

9  obviously, I sound bad this morning.  Umm, both Defendants

10  filed motions.  As you may be aware, they were already

11  heard in oral argument before Judge Leasure..

12      BY THE COURT:  That's right.

13      BY MR. BUCKEL:  ..and Judge Leasure then recused

14  himself.  One of the Defendants, or perhaps both of them,

15  have appended the full transcript of the oral argument from

16  the prior hearing to a supplemental reply brief that is now

17  before the Court and we certainly would have no objection to

18  the Court referencing that.  You know, as part of the

19  record, what has been argued in the case.

20      Mr. Beeman will argue against the Motion to Dismiss or

21  in opposition of the Motion to Dismiss filed by Allegany

22  Scrap, and I will argue in opposition to the Motion to

1    Dismiss that has been filed by what we call the Newell

2    Defendants, the manufacturing Defendants.   Thank you, Your

3    Honor.

4         BY THE COURT:  All right, Mr. Brown?

5         BY MR. BROWN:  Thank you, Your Honor.   My client,

6    Allegany Scrap, moves to dismiss because the Plaintiffs have

7    already received a full and complete recovery from Allegany

8    Scrap.   This is a, they filed a Worker's Compensation

9    action and umm, this suit is, these are three wrongful death

10   claims against the Decedent's Employer, my client, Allegany

11   Scrap.   Umm, and now they are seeking a double recovery.

12   It is inappropriate for three reasons and I am going to

13   outline those for the Court.

14        For the sixty thousand foot level, my client operates a

15   metal shredder here in Cumberland.   Their business is to

16   take in metal, shred it, reprocess it and then resell it.

17        The Decedent worked on the line next to the shredder.

18   He was wearing full protective gear and when I reference

19   facts, I will reference facts in the complaint, Your Honor.

20   I will reference facts from the complaint because obviously

21   this is a Motion to Dismiss.

22        The Plaintiffs allege that my client put him in full

1  protective gear.  He was standing seventy-six feet away

2  from the shredder and the Plaintiffs allege that a piece of

3  metal shot randomly, that is their word, randomly, out of

4  the shredder, hit Mr. Buckel, or hit Mr. Nicol and he died.

5      It was an accident, it was not intentional, and in the

6  Worker's Compensation case, umm, there was no allegation of

7  intentional misconduct.  Now, the Worker's Compensation

8  statute is a legislative compromise.  On the one hand

9  employees are, can get a quick recovery without the delays

10 and expense and uncertainty of litigation and on the other

11 hand employers get full immunity from suits exactly like

12 this.

13     The Plaintiffs have tried to side-step the Worker's

14 Compensation bar with a single sentence that is repeated

15 only three times in the one hundred and forty-three

16 paragraph complaint.  In the one hundred and forty-three

17 paragraphs it tells a tale of negligence, but they have

18 stuck in, in three places, the same sentence that copies the

19 deliberate intent exception to the Worker's Compensation

20 statute.  They are alleging that Allegany Scrap

21 deliberately intended to kill its employee.  Now, they could

22 have alleged that at the Worker's Compensation hearing, but

6

1    they didn't because they didn't need to, to get their quick

2    recovery.   They are alleging that here, because if they

3    can't prove that Allegany intended to kill its employee,

4    they are out, because they have already received a recovery.

5        Now, on the Motion to Dismiss phase, it is even, you

6    take a step back from that because they haven't even alleged

7    that Allegany intended to kill its employee.   The *Johnson*

8    case, the Maryland Supreme Court case, is very clear.   You

9    can't just allege that an employer put someone in danger,

10   you can't allege that they failed to be concerned about

11   warnings, they have to allege that Allegany deliberately

12   intended to kill its employee.   That allegation is not in

13   the complaint, so under *Johnson*, the wrongful death claims

14   have to be dismissed.

15       But there are even more allegations, there is even more

16   reasons than that.   The Plaintiff started with a blank

17   piece of paper when they drafted their complaint, and what

18   they chose to do was to attach the Medical Examiners report

19   to the complaint, for when Mr. Nicol died, and what the

20   Medical Examiner's report says is it is an accident, because

21   it was an accident, and you don't have to believe, Mr.

22   Beeman, I believe, and you will see it in the transcript

1    from the prior hearing that Mr. Buckel referenced, is going

2    to stand up and say well, we have to do discovery on whether

3    it was really an accident, was the Medical Examiner wrong?

4    That doesn't matter on the Motion to Dismiss.   For the

5    purpose of the Motion to Dismiss, they have attached the

6    death certificate, which says it is an accident, which means

7    under Maryland Rule 2-303 (d), it is an allegation.  I am

8    not saying it was an accident, the Plaintiff has said it was

9    an accident in their complaint.   So the deliberate intent

10   exception doesn't apply and the Worker's Compensation bar

11   bars all three claims at issue in this case.

12        Now, I want to get into each of the three reasons..

13        BY THE COURT:  Mr. Brown.

14        BY MR. BROWN:  Yes.

15        BY THE COURT:  Just help me out on this statute here.

16        BY MR. BROWN:  Sure.

17        BY THE COURT:  In the interplay, the, the deliberate

18   intent exception that is referenced in the statute.

19        BY MR. BROWN:  Uh-huh.

20        BY THE COURT:  Provides that if you are going to allege

21   and ultimately prove that there was a deliberate intent on

22   the part of the employer to bring about the wrongful death

1    of the employee, then the, the bar to civil actions under

2    the Worker's Compensation statute doesn't apply.  Is, is

3    the fact that there was a Worker's Comp. award from, through

4    the Commission, for the, the injury, in this case the death

5    of the employee, does, is the, is the Plaintiffs in the

6    position where they have to decide I am either going to seek

7    my remedy under the Worker's Compensation statute through

8    the Commission, or I am going to prosecute this tort action

9    and undertake the burden of proving the deliberate intent

10   such that if you actually go through the Commission and you

11   get the award, then that in and of itself bars you from the

12   tort action?

13       BY MR. BROWN:  That's correct.  That is exactly what

14   Section 9-509 of the Labor Employment Article says, and it

15   is a legislative compromise.  The word or is in the statute,

16   and when we got into this with Judge Leasure last time,

17   because he was focused on this issue as well, the statute

18   says you can pursue a civil remedy, excuse me, the statute

19   says you can pursue a civil remedy or the Worker's

20   Compensation case.  It is an either/or, and you can make the

21   choice and choices have consequences.   You can either

22   decide we want to go through Worker's Compensation and deal

9

1   with the limitations of the Worker's Compensation System,

2   but we just want to be paid quickly.   We don't want to be

3   tied up in litigation for years and years and years and

4   discovery, and I can't pay an attorney and that sort of

5   thing, or you can decide to come here and bring claims for

6   negligence, intent, whatever you would like to do.

7        Now, the Plaintiff here, the Decedent's mother..

8        BY THE COURT:  You can only do that if you are going to

9   allege and be able to prove at trial deliberate intent.

10       BY MR. BROWN:  You actually can bring a negligence

11  claim in the Worker's Compensation and not allege deliberate

12  intent.

13       BY THE COURT:  Well, that's for, I am talking about the

14  opposite here.

15       BY MR. BROWN:  Okay.

16       BY THE COURT:  You have to come here..

17       BY MR. BROWN:  Right.

18       BY THE COURT:  ..and you are going to prosecute your

19  tort claim..

20       BY MR. BROWN:  Right.

21       BY THE COURT:  ..the predicate for getting around the

22  general bar for Worker's Comp. is you have got to be able to

1    allege and prove deliberate intent.

2         BY MR. BROWN:  Correct, and that is what the *Johnson*

3    Court says is it can't be, the deliberate intent has to be

4    intent to kill in a wrongful death action, because in the

5    *Johnson* case, that was a case where the employer had exposed

6    electrical lines and they violated federal law by having the

7    electrical lines exposed.  They didn't warn their employees

8    and the employee touched an electrical line and was killed,

9    and the mother, as in this case, came to court and said

10   that's deliberate intent because they knew they were

11   violating O.S.H.A. and other regulations by having these

12   electrical lines exposed and they knew they were putting my

13   son in a dangerous position and the Maryland Supreme Court

14   said no, in the *Johnson* case.  They said willful, wanton

15   conduct is not intent.  You have to allege the employer

16   deliberately intended to kill that employee, and there is no

17   such allegation in the one hundred and forty-three paragraph

18   complaint in this case.  It is just an allegation that, this

19   is as close as they come.

20        When we went through this before with Judge Leasure,

21   they sort of backed away from the three bald statements,

22   which are just sort of a statement of the deliberate intent

1  exception which says we deliberately intended to kill or, or

2  there was deliberate intent.    That doesn't do it.

3      So what Mr. Beeman argued last time was well, we allege

4  that they delayed calling 911 when the gentleman was laying

5  on the deck and that's enough to be deliberate intent, even

6  though they ultimately called 911 and tried to save him.

7  So, that's not an allegation of deliberate intent to kill.

8  It is just not under *Johnson*.

9      So, for that reason..

10      BY THE COURT:  That's, that is also not an allegation

11  that was in the complaint, was it?

12      BY MR. BROWN:  That is an allegation in the complaint.

13      BY THE COURT:  That is an allegation in the complaint?

14      BY MR. BROWN:  Yes, that they delayed, umm, but, so

15  under the first issue, the either/or issue, under the

16  statute, they made their choice.   They filed a Worker's

17  Compensation claim.

18      There is also, they have another hurdle.  There are

19  only three specific categories of people who are allowed to

20  allege the deliberate intent exception.  It is not

21  everybody.  It is a surviving spouse, and the Decedent was

22  not married.  I don't think that any of the Plaintiffs claim

1   to be a surviving spouse.   A child.   The Decedent didn't

2   have any children, so none of the first two apply, or a

3   dependent.   And the Estate is certainly not a dependent.

4        There are three wrongful death claims, the Estate of

5   the Decedent, Mom and Dad.  Dad, they say is a Use

6   Plaintiff.   Plaintiffs don't even represent Dad.   They

7   have actually said, you will see in the transcript that Dad

8   is against this suit.  He doesn't want to participate, so

9   Dad is out.  He is certainly not a dependent and there is no

10  evidence that he is a dependent, and it is not alleged in

11  the complaint.

12       It is also not alleged in the complaint that the Estate

13  is a dependent, of course.  It is also not alleged in the

14  complaint that Mom is a dependent.   So, none of the three

15  exceptions apply, so even if you were to find that there is

16  deliberate intent to kill alleged in the complaint, which

17  there is not, none of the three categories of people who

18  would be permitted to allege that are here.   And what Mr.

19  Beeman said at the hearing is that there is some ruling,

20  somewhere, that has never been filed with this court, that

21  isn't alleged in the complaint, that isn't alleged in the

22  complaint, that has never been filed with this court, there

1  is some document out there somewhere, and we have had months

2  since the complaint was filed and months since the hearing

3  with Judge Leasure, that has never been filed with the court

4  that says Mom is a dependent.

5      Umm, it is not in the complaint, so for the purposes of

6  this case, she is not even alleged to be a dependent.

7      Secondly, even if she were a dependent, deliberate

8  intent to kill is not alleged, so it almost doesn't, so it

9  actually doesn't matter.   There is another reason

10  deliberate intent doesn't apply, regardless of the either/or

11  section of the statute.

12      Again, as I said, this, this case should be dismissed

13  under Maryland Rule 2-303 (d), because the death certificate

14  is attached to the complaint and what the case law says that

15  we have cited in our briefs is that the exhibit to the

16  complaint, which is the death certificate, is an allegation

17  of the complaint.  It is Plaintiffs claiming the death was

18  an accident, so they can't allege that the death was an

19  accident by attaching the Medical Examiner's finding that it

20  was an accident and then come in here and say no, we get out

21  on the deliberate intent exception, not when you allege that

22  it is an accident.   And the case law that we have cited in

1    our brief says that the exhibit actually controls over the

2    allegations of the complaint.

3        So, and if you look at the death certificate, it is

4    important to note, there is a box the Medical Examiner could

5    have checked if he thought it was a homicide.   There was a

6    box he could have checked if he thought it was natural

7    causes.   There is a box he could have checked if he thought

8    it couldn't be determined.   He didn't check any of those

9    boxes.   What he checked was accident, because what he saw

10   was someone standing in full protective gear, standing

11   seventy-six feet away from a shredder, and as it is alleged

12   in the complaint metal came out in a random direction.

13   That's the opposite of intent.   That is pure chance.

14       So, that's the second reason that the deliberate intent

15   exception doesn't apply here, but there is a third reason.

16   And I previewed it briefly before, it is the *Johnson* case.

17       It is not enough to say in a formula barebones way

18   there was intent to kill here.  You have got to say the who,

19   what, when, where, why, and you have got to say the employer

20   intended to kill its employee, and they didn't.   It is

21   alleged in the event that the employer called 911, got him

22   to the hospital, so without an allegation that the employer

1    intended to kill its employee, under the *Johnson* case, there

2    is no deliberate intent here, and *Johnson* is directly on

3    point and Plaintiffs don't respond to it in their brief

4    because in Johnson the mother was saying you have got to

5    expand the reach of the deliberate intent exception to get a

6    case where the employer doesn't warn of electrical lines and

7    put my son in a dangerous position and the Supreme Court

8    said no.

9        So Your Honor, for each of those three reasons, the

10   wrongful deaths filed by the Estate, the mother and father

11   should be dismissed.

12       BY THE COURT:  All right.

13       BY MR. BROWN:  Thank you.

14       BY THE COURT:  All right, Mr. Beeman.

15       BY MR. BEEMAN:  Thank you, Your Honor.  May it please

16   the Court.   Your Honor, Mr. Brown has referenced the three

17   arguments that he believes would necessitate the dismissal

18   of PlaintifFs complaint against the employer.   I am going

19   to take those a little bit out of the order that he

20   discussed them in.

21       First, just, I know Your Honor is intimately familiar

22   with these, but just for the record, I want to highlight

1    that the, the standards on the Motion to Dismiss is that the

2    evidence has to be taken in the light most favorable to the

3    non-moving party, here to the Plaintiff.   All factual

4    allegations are assumed to be true, and here that is key,

5    Your Honor.

6        Within Plaintiffs complaint, our complaint is, as Mr.

7    Brown indicated one hundred and forty-three paragraphs, that

8    might be correct.   We have, we have styled it to have

9    general allegations sections and then specific counts that

10   illicit the legal arguments with regard to those, and so,

11   just to point the Court to this, on page six through page

12   eight of our complaint, we highlight our deliberate intent

13   general allegations.   Your Honor, I am not going to recite

14   these to the Court, but I do want to particularly highlight.

15       Paragraph thirty-nine, Your Honor, indicates that upon

16   information and belief Defendant, Allegany Scrap,

17   intentionally withheld or delayed seeking medical attention

18   for Decedent, Joshua Nicol.

19       Mr. Brown is correct that when we get to our specific

20   count, umm, we do merely, we do merely recite Defendant,

21   Allegany Scrap, acted with deliberate intent to injure or

22   kill Decedent, Joshua Nicol.   However, we also incorporate

1  all of those general allegations.

2      BY THE COURT:  Okay, what, what..I guess I have got two

3  questions on that.  First of all, what information do you

4  have, what facts do you have that give you the good faith

5  basis to make the factual allegation that they intentionally

6  delayed the provision of healthcare?

7      BY MR. BEEMAN:  Your Honor, we believe that ultimately

8  if given the opportunity through discovery, we will..

9      BY THE COURT:  But, but..

10     BY MR. BEEMAN:  ..be..

11     BY THE COURT:  ..that's my point.  My point is that you

12 can make the allegation, you can certainly make the

13 allegation that there was deliberate intent, provided you

14 have got a good faith factual basis to support that.

15     BY MR. BEEMAN:  Certainly, and Your Honor, we would, we

16 would point to, we would point to the death certificate for

17 that as well.  Within the death certificate the doctor

18 indicates, and I don't want to jump ahead of my argument

19 but, the doctor indicates in the death certificate that

20 there was a several hour period between the onset of the

21 injury and ultimately the Decedent's passing.  I think an

22 inference can be drawn from that that there was a delay in

1   treatment.

2        BY THE COURT:  Okay, I agree..

3        BY MR. BEEMAN:  And..

4        BY THE COURT:  ..but where do you get the inference

5   that there was an intentional delay on the part of the

6   employer, that gives you the basis to make the allegation

7   that there was a deliberate intent, that he succumbed to his

8   injuries?

9        BY MR. BEEMAN:  We, we don't have, we have not, we

10  have not alleged any particular factual allegation that says

11  that the employer, that explains why that delay was caused

12  by..

13       BY THE COURT:  Well, couldn't it be negligence?

14       BY MR. BEEMAN:  It could, it could.  We have alleged

15  that it was intentional.  Umm, and..

16       BY THE COURT:  I know, that's my question and, I am

17  trying to find out why you allege that.

18       BY MR. BEEMAN:  So, Your Honor, I think, so, I think

19  when you look at this and I am going to jump back to the

20  allegation that me made here and pardon me, just one moment,

21  while I find the allegation.  (Pause)  If you look at

22  those allegations contained, just generally between

1  paragraphs twenty-five and thirty-nine of our complaint,

2  what this paints is a..

3      BY THE COURT:  Is it twenty-five to thirty-nine?

4      BY MR. BEEMAN:  Twenty-five to thirty-nine, yes, Your

5  Honor.

6      BY THE COURT:  Okay, give me a second.  Let me get

7  there.

8      BY MR. BEEMAN:  Certainly.

9      BY THE COURT:  Okay.  All right.   Go ahead.

10      BY MR. BEEMAN:  The picture that is painted here is of

11  an employer that knew that these incidents were happening;

12  they knew shrapnel was flying out of the machine, and Judge,

13  umm, I don't, I don't know if you can respect, if you can

14  appreciate the significance of this.   If you have ever seen

15  a rock fly out of a mower on a John Deere, out of the deck

16  on a John Deere mower, picture that with one hundred times

17  the size of that.  We are talking about a massive piece of

18  machinery that just regularly and routinely, and we have

19  alleged that, regularly and routinely hurl shrapnel from the

20  machine out of an unguarded exit way.

21      Paragraph thirty-nine, Your Honor, upon information and

22  belief Allegany Scrap Management repeatedly informed

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1   employees who complained of safety concerns that the

2   necessary safety provisions would cost too much money, the

3   Defendant, Allegany Scrap, was unwilling to spend the money

4   to make said safety provisions, and that being struck by

5   metal shrapnel projected as discharge from the shredder was

6   a regular part of their employment and a risk they must

7   necessarily bear.

8       That, that is the type of situation that we are dealing

9   with here, Your Honor.  When you take..

10      BY THE COURT:  Are you describing an intent on their

11  part to injure their employees?

12      BY MR. BEEMAN:  I believe we are, Your Honor.   When

13  you, when you take all those paragraphs together, which the

14  four corners doctrine tells you that you take, you take

15  everything that is pleaded on the papers and you incorporate

16  it all together, when you look at what is contained within

17  the four corners and you draw those inferences in the light

18  most favorable to the non-moving party, which case law tells

19  us we must do, I believe we are painting a picture here

20  where that paragraph thirty-nine is supported.

21      BY THE COURT:  Well, why aren't you describing gross

22  negligence?

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1    BY MR. BEEMAN:  So, Your Honor, I, the, the incident

2  that the injury itself, the initial injury, very well could

3  be, the Court very well could describe it as gross or

4  wonton, reckless disregard.  Umm, here, to us, the

5  distinction is you have the injury, and that is the context

6  of the injury.  Then you have the intentional delay or

7  withholding of care, and I would like to point the case to

8  the *Sterry* case that we have cited in our brief, and I think

9  Your Honor will find it compelling here.

10    The *Sterry* case paints a distinction between, or sorry,

11  Your Honor.  *Sterry, S-T-E-R-R-Y vs. Bethlehem Steel*, 64

12  Md. App., 175.  Your Honor, the *Sterry* case makes clear

13  that there can, there can be a distinction between an

14  initial injury and intentional conduct that happens

15  subsequent to the initial injury, and that in those

16  instances the fact that the initial injury was one that

17  arose from negligence and the subsequent action by the

18  employer was of an intentional nature, that prior negligent

19  action does not bar a deliberate intent suit when based upon

20  the subsequent intentional conduct of the employer.

21    And Judge, that is what we believe we have here.  We

22  have a situation that, whether you classify it as a simply

 1   negligence, whether you classify it as gross wonton and

 2   reckless, the employer created this scenario where a, where

 3   a piece of shrapnel was hurled out of the shredder, struck

 4   Mr. Nicol in the head and then intentionally delayed

 5   treatment, which ultimately, at this point I, could have

 6   contributed to his death, and in fact, we allege contributed

 7   to his death.

 8        The *Sterry* case was a situation where you had an

 9   accidental work injury, and this, this, it is factually

10   distinguished Your Honor, but I think it is analogous.   In

11   the *Sterry* case you have an accidental injury and then you

12   had an employer doctor, an employer medical provider..think

13   Luke Papermill, where you have doctors on site for the

14   employer.   The employees go see the company doctor.   The

15   employee is accidentally injured.   The employer, the

16   allegation in the *Sterry* case is that the employer doctor,

17   for a variety of kickback reasons, is prescribing opiates.

18   And so they take the intentional tort of the doctor and they

19   use that as their deliberate intent allegation to get past

20   the Worker's Comp. bar.

21        BY THE COURT:  And did they, did they get a recovery?

22   Did the Claimant get a recovery in the Worker's Comp.,

1    through the Worker's Comp. Commission, as well as

2    maintaining their ability to file the tort action?

3        BY MR. BEEMAN:  It is unclear, Your Honor.  From the

4    decision it doesn't, it doesn't specifically address that.

5    What is addressed in the *Sterry* case is the idea that the

6    Plaintiff in that instance, during the negligence, the

7    original negligence (inaudible word), had received Worker's

8    Comp. benefits, but the case doesn't make a distinction or a

9    determination, umm, whether that bar, and to that point,

10   Your Honor, to segway to that, umm, there is not a Maryland

11   reported decision that stands for the proposition that the

12   Worker's Compensation award, the death benefit, which very

13   frankly is a, is a minute amount, umm, ultimately.   There

14   is no Maryland case that stands for the proposition that

15   electing to receive that death benefit ultimately is a bar

16   on the, on the wrongful death claim, if it falls within the

17   deliberate intent exception.    Defendant has..

18       BY THE COURT:  And Mr. Brown told me that if I read the

19   statute, the statute says or.

20       BY MR. BEEMAN:  It does.

21       BY THE COURT:  It doesn't say and?

22       BY MR. BEEMAN:  It does.   I believe that Your Honor

1    can reasonably infer from that that it is providing a list

2    of possible remedies, that it is not disjunctive, that it is

3    providing a list of possible remedies, among which you may

4    choose any or all.

5         As I indicated, Your Honor, there is no, there is no

6    Maryland, there is no Maryland reported case on point to

7    that, that says if you elect one, you are barred from the

8    second.  I would point out to the Court that Mr. Brown has,

9    has cited two federal decisions, one from the District Court

10   of Maryland, and I apologize, the other is skipping me.  I

11   believe it was a foreign jurisdiction outside the State of

12   Maryland, but it was a federal court.  He cited two, two

13   federal decisions that stand for that proposition.   The

14   District Court of Maryland case that he cites, it, I believe

15   when you read that decision, it is merely dicta.  I don't

16   believe that is a holding of the Court, one, and two, I

17   don't believe it is binding upon us because it is a federal

18   court interpreting and there is no Maryland decision on

19   point.

20        I, I do want to jump back, Your Honor, to the argument

21   that Mr. Brown had indicated that umm, that Ms. Beeman is

22   not, is not a dependent.   The Worker's Compensation

1    Commission, through their process, has determined that Ms.

2    Brown, or Ms. Beeman, rather, pardon me, was a dependent of

3    Mr. Nicol, and we would ask the Court to take judicial

4    notice of that tribunal's decision to find her as a

5    dependent.

6        We would ask the Court to take judicial notice of that

7    and Mr. Brown is correct, and I would concede, we, the words

8    themselves are not included within our complaint that she is

9    a dependent.   Should Your Honor determine that that is,

10   that merely missing that wording is a fatal flaw, we would

11   ask the Court for leave to amend in lieu of dismissal, a

12   rather draconian remedy for that instance.

13       With regard to Mr. Nicol, the use Plaintiff, umm, I do

14   just want to highlight one distinction, Your Honor.   Mr.

15   Brown had indicated he doesn't want to participate.   I, I

16   think that he has slightly mischaracterized my prior

17   testimony, umm, and what I had indicated to the Court was

18   that Ms. Beeman and Mr. Nicol are, are, are at odds with

19   each other.   I don't recall indicating to the Court that he

20   doesn't, didn't want this proceeding to move forward, but

21   what I had indicated to the Court was that he has not yet

22   participated.

1    As Your Honor is aware of the wrongful death statute

2  requires that when you file an action such as this, that any

3  potential beneficiary be named as a use Plaintiff.  We have

4  complied with the requirements of the wrongful death statute

5  and named him as a use Plaintiff, and to this point, he has

6  not yet participated in these matters and has not yet

7  communicated to us.  We have had no communication from him

8  as to whether he believes this action is proper, whether he

9  wants to participate.  We have had no communication from

10  him and he has not participated, and so, so I think there is

11  just a slight distinction there between that and that I

12  represented that he does not want to participate.

13    With regard to the argument regarding the death

14  certificate, Your Honor.  The Defendants, the Defendants

15  argue that the doctor in his death certificate checks the

16  box that this is an accidental death and that that is a

17  conclusive finding that should be binding upon the Court and

18  should, and should bar the claim.  I think frankly, Your

19  Honor, that is a very narrow view and it is, it is

20  interpreting the death certificate..

21    BY THE COURT:  I heard the argument a little bit

22  differently.  I head the argument that because you attached

1  the death certificate as an exhibit to your complaint, that

2  is your allegation that it was an accident, not that it is

3  the doctor's.

4      BY MR. BEEMAN:  I, I mean, I think that the argument

5  goes that the, that we have attached it and we are, we are

6  alleging that it was an accident because the doctor has

7  checked the box.  As I indicated to Judge Leasure

8  previously, we, and as common practice, we, we attach the

9  death certificate primarily for the purpose of establishing

10 that Mr. Nicol was, in fact, deceased.  It, it is a

11 governmental record that establishes the fact that he was

12 deceased.

13     The issue here, Your Honor, is that I don't believe

14 that the doctor checking the box that this was an accidental

15 death should be dispositive to this Court in a sense that

16 umm, that it, the fact that the doctor has checked the box

17 as an accident should not be dispositive in the sense that

18 the, umm, it is a conclusion that resolves an ultimate issue

19 for the Court.  When you look at the death certificate,

20 umm, there is multiple references on there, and I have

21 alluded to one of them earlier, that the doctor talks about

22 the interval between the onset of death, between the onset

1  of injury and the death.  He also, he also mentions umm,

2  multiple blunt force injuries to the head.

3      There, there is a box on there, Your Honor, that says

4  is this a work-related injury.  I want to pose to the Court,

5  had, had the doctor checked the box that this was not a, had

6  he failed to check that box that this was not a work-related

7  injury, would we then be able to get around the Worker's

8  Comp. bar, because we have alleged that this is not a

9  Worker's Comp. type situation.

10      I understand that we have, we have appended the death

11  certificate.  We appended the death certificate for the

12  mere purpose of establishing that the Decedent had, in fact,

13  died.  I don't believe that the doctor checking a box that

14  it was an accident, umm, is dispositive upon this Court for

15  any ultimate issue and it shouldn't be relied upon as a

16  basis for a Motion to Dismiss.

17      Defendants in their, in their brief, umm, raise that

18  they, that we failed to sufficiently plead.  Just very

19  briefly, Your Honor, Maryland is a notice pleading state.

20  This is not a situation where there is a heightened pleading

21  standard, like in a fraud case, so this is, this is a

22  liberal pleading situation.

1    BY THE COURT:  Well, there is, there is, it certainly

2  is a notice pleading state, but there are reems and reems of

3  cases that say you can't simply make a bald allegation.  You

4  have got to provide the other side with the factual

5  underpinnings for your allegations, and that is why I was

6  asking you earlier what your good faith basis is to assert

7  that this was a deliberate intent, that the employer

8  intended the unfortunate consequences that flowed here for

9  Mr. Nicol.

10     BY MR. BEEMAN:  And Judge, as Your Honor is well aware,

11  unfortunately in a matter like this without the discovery

12  process, we may never know that.   There is..

13     BY THE COURT:  So you acknowledge you don't know?

14     BY MR. BEEMAN:  I..

15     BY THE COURT:  Right now you don't know whether it was

16  deliberate action on the part of the employer or not.

17     BY MR. BEEMAN:  Well, I, I don't know, Your Honor.

18  Ultimately the trier of fact is going to have to be the

19  determinate, determination as to that.   Umm, but we can't

20  know, Your Honor, but what I do know is this, Your Honor, I

21  know that, I know there is video of this incident.   We have

22  not been afforded it.   I do know that there are employees

1    who witnessed this incident, and employees who were there.

2    Mr. Nicol wasn't able to tell me who those employees were

3    who were present.   The employer can.   The employer can

4    tell me, can make those witnesses available for deposition.

5    The employer may have an incident report that, that dictates

6    exactly what time they, what time the call came in that Mr.

7    Nicol was injured, what time the phone call was made to 911.

8    We don't have those facts available to us, Your Honor,

9    because they are in the sole possession of the employer.

10        It is, it is a rock and a hard place here that we find

11   ourselves in..

12        BY THE COURT:  So..

13        BY MR. BEEMAN:  ..Your Honor.

14        BY THE COURT:  So you, you are making this allegation

15   that the employer intentionally intended for the death of

16   their employee for the sole purpose of being able to do

17   discovery?

18        BY MR. BEEMAN:  That is, no.   I, I disagree with that,

19   Your Honor.   We are making that based upon the, based upon

20   the inferences that can be inferred from the prior conduct

21   of the employer.   When you look at the, when you look at

22   the allegations in twenty-five through thirty-nine, you, and

1   you draw the inferences from them, we, we base, that is the

2   basis for our twenty-five through thirty-eight, and that is

3   the basis for our statements that the employer intentionally

4   withheld treatment or delayed treatment, and that the

5   employer, that the employer acted with deliberate intent, as

6   is alleged in paragraph sixty-nine.

7        Court's indulgence, Your Honor.   (Pause)   Your Honor,

8   I, I, for the foregoing reasons we would ask that the Court

9   deny Employer's Motion to Dismiss, and in the, in the off

10  chance that I missed something that I previously said, as

11  indicated, I would ask the Court to incorporate the prior

12  oral argument as was appended to Employer's Supplemental

13  Brief filed after the oral arguments.   I would ask the

14  Court to, to incorporate that by reference.

15       BY THE COURT:  It is in the records so..

16       BY MR. BEEMAN:  Thank you.

17       BY THE COURT:  All right, thank you, Mr. Beeman.   Mr.

18  Brown?

19       BY MR. BROWN:  Thank you, Your Honor.   I will be very

20  brief.  I am just going to jump around a little bit.   You

21  hit the nail on the head.   I think that Mr. Beeman, to his

22  credit, just acknowledged that he doesn't have any facts to

1  support that we intentionally..he doesn't have any facts to

2  support that we intentionally withheld treatment with a

3  deliberate intent to kill, which is what *Johnson* requires,

4  the Maryland Supreme Court case.  And in fact, the

5  complaint alleges that those same employees, who Mr. Beeman

6  now says intended to kill because there is some sort of umm,

7  blasé attitude towards safety, umm, called 911.  That's in

8  the complaint.  So, it doesn't even make sense, but more

9  importantly, *Johnson*, the Supreme Court case, specifically

10 undoes the argument that Mr. Beeman just made about well,

11 Allegany Scrap was blasé about safety and grossly negligent,

12 or it, again, in *Johnson*, the employer had open electrical

13 lines that would kill someone and did kill someone out in

14 violation of federal law and didn't warn their employees,

15 and they knew that and the Court said that may be willful

16 and wanton, it may be gross negligence, but I got to protect

17 the Worker's Compensation statute because it is the

18 legislative compromise.  You can take a little money now or

19 a shot at a lot of money later.  That's the deal.

20      And I think there are no reported cases where, and Mr.

21 Beeman admitted this, where you get both because Court's

22 have protected that because it is important to protect that.

1      Umm, so, the arguments about paragraph twenty-five to

2  thirty-nine..

3      BY THE COURT:  Well..

4      BY MR. BROWN:  ..are beside the point.

5      BY THE COURT:  ..the, the reference to the two federal

6  cases.

7      BY MR. BROWN:  Yes.

8      BY THE COURT:  Which I acknowledge, I have not read

9  those federal cases, umm, do they, do they address

10  specifically the, the characterization of or, as you get one

11  or the other, as opposed to Mr. Beeman's suggestion that it

12  is, that you get all of these, it is not disjunctive is what

13  he said?

14      BY MR. BROWN:  Umm, I am glad you asked me that because

15  the answer is yes, they specifically do, and I am looking at

16  paragraph seven of the Memorandum in Support of our Motion

17  to Dismiss.   The first is *Tynes vs. Shoney's Inc.*, and Mr.

18  Beeman was correct, that is a District Court of Maryland

19  case, but the parenthesis quote that we write, the District

20  Court of Maryland held citing 9-509, the statute here.   "If

21  an employee demonstrates an intent to injure or kill, he has

22  an option to claim under the Worker's Compensation statute

1   or bring common law tort damages".   It is an either/or.

2   If you can demonstrate intent, you can do either/or.   That

3   is specifically what *Tynes and Shoney* said.   It didn't say

4   you have got a menu of different things you can do all at

5   the same time.

6      Secondly, it is the *Parker vs. Westat* case, which is an

7   Eastern District of Virginia case, which applied Maryland

8   law, the statute at issue and said "even if the Employee

9   were somehow to allege that the Employer deliberately

10   intended to injure her, that Employee has abandoned her

11   right to bring an action for damages by filing a claim for

12   Worker's Compensation benefits".

13      So both the District Court of Maryland and the District

14   Court of Virginia enforced the word or as a disjunctive,

15   because that's what it means, and I think you know there is

16   a panoply of cases in Maryland that says or is disjunctive,

17   and it was revealing that Mr. Beeman is sort of in the

18   position where he has got to argue or is not disjunctive, or

19   is conjunctive, and or means you can do this, this and the

20   other.   And that is just never the way or has been

21   interpreted, it is not the way the Federal District Court in

22   this, in Maryland interpreted it, and it is not the way the

1    Federal District Court in Virginia interpreted it.

2        In *Parker* they said the woman was out, even though she

3    could prove intent, because she filed the Worker's

4    Compensation claim.  That's this case, even though, this

5    case is actually even worse because Mr. Beeman just admitted

6    he can't prove intent because he doesn't have a good faith

7    basis to say the Employer deliberately intended to injure.

8    You were right, they made the allegations so they can do

9    discovery.  They have got it backwards.  This is a Motion

10   to Dismiss, it doesn't work that way.

11       Mr. Beeman started his argument by reminding you of the

12   standard of the Motion to Dismiss and said all factual

13   allegations must be taken as true.  I agree with him.  The

14   factual allegation in the Certificate of Death, which says

15   this was an accident has to be taken as true.  I agree with

16   him, that is the standard, and when you allege that it is an

17   accident, for whatever reason you made the allegation, you

18   were right.

19       I am not saying it is dispositive if we were here on a

20   Motion for Summary Judgment.  What I am saying is when you

21   are the Plaintiff and you allege it is an accident you can't

22   walk into court and say I am entitled to the deliberate

1  intent exclusion.

2     I would argue that..Mr. Beeman skipped over, this is my

3  final argument, Maryland Rule 2-303 (d).   Maryland Rule 2-

4  303 (d) says any allegation in the complaint is an

5  allegation in the complaint for all purposes.   We have

6  cited case law that says that, which means if you allege

7  that something is an accident in an exhibit to the

8  complaint, it doesn't matter if you were just trying to tell

9  the Court he is dead, and that the, that the Decedent is

10  dead, and is frankly, pretty easy to do that just by

11  alleging that the Decedent has died, you don't need to

12  attach a death certificate, but when you, when you choose to

13  attach a death certificate, it is an allegation and Maryland

14  Rule 2-303 (d) says it is an allegation for all purposes,

15  including, regardless of what paragraph or section of the

16  complaint you put it in, including for determining whether

17  you are entitled to the deliberate intent exception.

18     Unless you have any further questions, I am done.

19     BY THE COURT:  I don't.

20     BY MR. BROWN:  Thank you, Your Honor.

21     BY THE COURT:  All right.   I am going to take this

22  under advisement.   I will issue my decision to you.

1      All right, and..

2      BY MR. BROWN:  Your Honor, may I switch with co-

3  counsel?

4      BY THE COURT:  Yes.

5      BY MR. BROWN:  Thank you.

6      BY THE COURT:  All right, counsel, can you identify

7  yourself for the record, please?

8      BY MR. MOELLER:  Thank you, Your Honor.  Good morning,

9  Your Honor.   Joseph Moeller, M-O-E-L-L-E-R, with Stein

10  Sperling, on behalf of what we have referred to in the

11  papers as the Newell Defendants, or the Manufacturing

12  Defendants.

13      BY THE COURT:  Counsel, if you would give me a minute

14  here.

15      BY MR. MOELLER:  All right.

16      BY THE COURT:  Let me catch up with you.  (Pause)

17      BY MR. MOELLER:  Yes, sir.

18      BY THE COURT:  All right, Mr. Moeller, go ahead.

19      BY MR. MOELLER:  Thank you, Your Honor.   Your Honor,

20  the Newell Defendants or the Manufacturing Defendants have

21  also filed a Motion to Dismiss, which sort of has two

22  different components, so I will start with the over-arching

1    more global one which is a Motion to Dismiss on

2    Jurisdictional Grounds.

3        Umm, on the grounds that this Court does not have

4    personal jurisdiction over my clients, because Plaintiffs

5    have failed to both allege and prove that this Court has a

6    basis to assert jurisdiction over them from where they are

7    in Texas, to haul them into court in Maryland, Your Honor.

8    And the standard is a little bit different from a normal

9    Motion to Dismiss when you are talking about personal

10   jurisdiction because the Plaintiffs have the normal burden

11   of proving what is required by the law, but of, or excuse

12   me, alleging what is required by the law, but they also have

13   to prove it, to demonstrate it to the court once the

14   Defendant challenges what is in the allegations and that is

15   laid out in the *C.S.R. Limited* case that is cited in the

16   papers.

17       So, umm, Your Honor seems very familiar with the facts,

18   so I won't go through them in great detail, but just to sort

19   of set out the facts that I am going to reference more in my

20   argument today, the complaint alleges that the shredder

21   machine at issue was put into operation in 2011.   That is

22   the only date that sort of pertains to the Newell Defendants

1    in any way.   There is not an allegation of how the Newell

2    Defendants purposely availed themselves of doing business in

3    the State of Maryland, such that part or all of that

4    shredder made its way from somewhere from the Newell

5    Defendants in Texas to a recycling plant in Maryland, and

6    what is alleged is that toward the beginning of the

7    complaint, paragraphs seven to ten and fourteen, and

8    essentially what Plaintiffs have alleged is all four of the

9    Defendants all manufactured the same machine, or parts of

10   the machine at sometime before 2011 and in 2011 it went into

11   operation in Maryland.

12       There is no allegation of any sort of purposeful

13   availment by the Newell Defendants of doing business in

14   Maryland.  For all that is alleged in the complaint, this

15   could be very similar to the *Hollingsworth* case, that is

16   also cited, the Fourth Circuit case, where a product was

17   manufactured in one state, sold to another state, resold

18   into a third state.   The Maryland Court, the Maryland

19   jurisdiction where that product eventually ended up didn't

20   have personal jurisdiction over the original manufacturer

21   because there wasn't purposeful availment.

22       The, the manufacturer needed to somehow reach out and

1  intend to end up in Maryland is the issue in terms of

2  allegations and proof, and there just aren't, starting with

3  the allegations, any sort of allegations as to which

4  Defendant did what, why the product ended up at Allegany

5  Scrap, whether it was sold directly to them, resold.    There

6  is just a general bald allegation that all four Defendants

7  manufactured the same product, and then it ends up in

8  Maryland in 2011.

9      And regarding those allegations, we have attached a

10  couple of Texas State business records to the complaint and

11  we cited the legal basis for doing that.    It is not

12  converted into a Motion for Summary Judgment, it is still a

13  Motion to Dismiss, because those are official records of

14  which the Court can take notice, and what those records say

15  is that one of the Defendants, Newell Recycling Equipment,

16  LLC., wasn't even created until 2015.    So it, it just can't

17  be that they are responsible for some manufacturing or

18  design that happened ten or twenty years earlier; they

19  didn't exist until 2015, Your Honor.

20      And T.S.C.L.P., we have attached the record of them

21  going out of business in, previous to 2011, so again, even

22  the very basis due diligence of just pulling up the Texas

1    business records for when these entities were formed, when

2    they shut down, showed that they don't line up with the date

3    that Allegany Scrap began operating this shredder.   The

4    Newell Defendants would have had to do whatever they did

5    before then, before 2011.

6        And then in addition to the allegations, Your Honor,

7    now that my clients have challenged the basis for personal

8    jurisdiction, there is an obligation to put forward proof,

9    to put forward affidavits and testimony to support the

10   allegations of personal jurisdiction, because of the

11   important constitutional consideration of a Defendant in one

12   state being hailed into court in another state.   What the

13   *C.S.R. Limited* case says is that you need some sort of

14   affidavit or testimony to now support the allegations of

15   jurisdiction that you have made.   And you don't see that in

16   the opposition, and as far as I know, there is not any

17   testimony that is going to be presented today.

18       So just procedurally, Plaintiffs are sort of lacking in

19   terms of the type of proof they have used to support the

20   complaint, and what Plaintiffs sort of suggested in their

21   opposition and what I heard at the previous argument was

22   well, you know, it is customary to plead very bare

1    conclusory allegations for personal jurisdiction, and I

2    agree that that is common.

3        In a motor vehicle accident where both parties are

4    citizens of Maryland and the accident happened in Maryland,

5    there is not a need for a lot of allegation of personal

6    jurisdiction.  It is two or three paragraphs at the most.

7    But where you have entities from several states over who are

8    alleged to have designed or manufactured or sold or all

9    three, a product fifteen or twenty years ago, you need a

10   little bit more allegations, you need a little bit more

11   proof, and they are just not available.

12       There is one e-mail from Mr. Newell, the current C.E.O.

13   of Newell Recycling Equipment, LLC, one e-mail chain between

14   him and a Maryland state agency where he explains the

15   R.P.M.'s for one of the machines and makes reference to the

16   serial number and a couple of other facts.

17       Umm, so first of all, he is replying as the C.E.O. of

18   Newell Recycling Equipment, LLC, which again, didn't exist

19   at the relevant time, but second of all, that is umm, not

20   really establishing what Plaintiffs needed to establish.

21   There was no discussion with a Maryland state agency of how

22   that machine ended up at Allegany Scrap and how each of the

1    four Defendants who have been sued were involved in that

2    process, purposely availed..

3         BY THE COURT:  Does..

4         BY MR. MOELLER:  ..themselves of Maryland.

5         BY THE COURT:  It is the, Mr. Moeller, does it really

6    matter how it ended up there?  I mean isn't the, the

7    personal jurisdiction touched on minimum contacts, and if,

8    if Newell and you know, certainly, I don't which of these

9    entities manufactured the product, but if Newell in Texas

10   places the product in the stream of commerce and it ends up

11   in Maryland, umm, isn't that enough?

12        BY MR. MOELLER:  Your Honor, there is a grave deal of,

13   as I am sure you know, of really complicated U.S. Supreme

14   Court case law and Maryland Supreme Court case law on that,

15   but there has to be, generally speaking, umm, purposeful

16   availment of, of the other states, of the privilege of doing

17   business in the other state is the phrase the courts use.

18   If you just, for example, I am speaking hypothetically here

19   to answer Your Honor's question, if the Texas Defendants

20   sold the recycler to someone in Oklahoma, and they resold it

21   to someone in Maryland, the Texas Defendant hasn't done

22   anything to have minimum contacts with Maryland, to

44

1   purposely avail themselves of doing business in Maryland,

2   and that's the problem, Your Honor.   If there were, if

3   there were an allegation of minimum contacts of intent to do

4   business in Maryland, then that would go a fair way towards

5   the burden that Plaintiffs have in pleading, but there is no

6   allegation as to what the Newell Defendants did to place

7   that product in the stream of commerce, how it ended up in

8   Maryland, there is no allegation that they ever had anything

9   to do with Maryland at all.

10       And you see this in some of the Supreme Court cases,

11  United States Supreme Court, you know, if a California

12  Defendant sells a tire and it ends up in Japan or vice

13  versa, have they, you know, do they have sufficient minimum

14  contacts that they exercise the privilege of doing business

15  with that other country?   I, it gets very attenuated, but

16  you need to, as a starting point, at least allege what was

17  done such that there were minimum contacts, and that's not

18  present here, which is the problem.

19       The other piece of evidence that was put forward in the

20  opposition, which again is not an affidavit or testimony, it

21  is a sort of informational article about the current C.E.O.

22  of Newell Recycling Equipment, LLC's father, and his general

1   involvement in the shredder business.   Again, that really

2   has nothing to do with what the particular corporate

3   entities in this case did to have minimum contacts with the

4   State of Maryland.

5        It sort of seems, Your Honor, as though Plaintiffs have

6   just sued entities with the name Newell, and again, are

7   hoping to find some basis for keeping them in through

8   discovery, but the case law is pretty clear on this, Your

9   Honor, because of the importance of this constitutional

10  inquiry, you need to lay that groundwork in the complaint

11  and you need to be ready to prove it if the Defendant

12  challenges it, and that's what we have done here.   There

13  really isn't anything really connecting the Newell

14  Defendants to the State of Maryland, Your Honor.

15       BY THE COURT:  All right.

16       BY MR. MOELLER:  If Your Honor has any further

17  questions on that, I will be happy to answer them.

18       BY THE COURT:  No, you can go onto any other point you

19  wished to make.

20       BY MR. MOELLER:  Sure.   So I will, and I will move now

21  to sort of a more traditional Motion to Dismiss arguments.

22  The question here is, as it normally is, just the

1    sufficiency of the allegations in the complaint.   We are

2    not looking for proof of the allegations on these Motions to

3    Dismiss in the alternative arguments.

4        So if the Court were to find that it had jurisdiction

5    over any of the Newell Defendants, the Newell Defendants

6    would request dismissal of these counts.

7        So counts four, ten and sixteen, those allege a design

8    defect essentially for failure to prevent changes to the

9    safety features on the shredder, and it is pled, umm,

10   basically what is pled is that there were safety features on

11   the shredder that whichever Newell entity designed or built

12   or sold the shredder, did put safety features on it, but at

13   some point in the unknown number of years between when it

14   was built and when it was, when it malfunctioned, Allegany

15   Scrap modified those safety features, allowed them to

16   degrade or intentionally removed them, and that is just

17   inconsistent with a design defect claim because the elements

18   require that the product be, essentially the product has to

19   leave the manufacturers hands in a certain condition, and it

20   has to still be in that general condition and malfunction.

21   It can't be that the product has changed a great deal over

22   time and now you are holding the manufacturer strictly

1    liable because the product that you now have isn't the same

2    one that they put onto the truck that came to you.   And so

3    the idea that a manufacturer or designer or seller has an

4    obligation to forever prevent changes or modifications to

5    their safety features is just inconsistent with the elements

6    of that claim because the claim is about what the product

7    was when it was made, what the product was when it was sent

8    out.

9         The, if such a claim were allowed to proceed, the

10   manufacturer would essentially have to forever guarantee

11   that the safety features on their products hadn't been

12   removed or are still functioning and that is just

13   inconsistent with the sort of liability that Maryland puts,

14   the strict liability that Maryland puts on manufacturers and

15   designers of products.  It is not feasible the way the claim

16   is set up for a manufacturer to be strictly liable forever

17   if someone takes the safety feature off of their, their

18   product.

19        If Your Honor doesn't have any questions about those, I

20   can move on to sort of the next section.

21        BY THE COURT:  Okay.

22        BY MR. MOELLER:  So the, the next set of claims are

1    counts six, twelve and eighteen, and they sort of have two

2    different claims in each of them.   So the first one is an

3    implied warranty claim.   Your Honor, I am sure saw in the

4    papers that there is a Maryland Supreme Court case from the

5    1970's that is pretty clearly cut against the arguments when

6    a motion, we have withdrawn those arguments without

7    prejudice at this time.   I am not going to tell Your Honor

8    on a preliminary Motion to Dismiss to disagree with pretty

9    on point Maryland Supreme case law, so reserving the right

10   to argue against those, including with further discovery,

11   those have been withdrawn.

12      So that just leaves us with count six, twelve and

13   eighteen, still, the other half of those counts.   Those are

14   claims for implied warranty of fitness for a particular

15   purpose, and I think these are pretty easily dealt with,

16   Your Honor.   The opposition essentially concedes that they

17   haven't pled the elements of this claim.

18      For an implied warranty of a fitness for a particular

19   purpose you have to have an allegation essentially that you

20   went to the seller of the product and said I need this

21   product, I need a product for this particular purpose, and

22   what the case law says, the *Bond* case, 96 Md. App., 137,

49

1    which is cited on page nine of the motion, it can't just be

2    the general product, the general use of that product, so you

3    can't go to a car dealership and say pick me out a car and

4    they pick you out a car and you later have a claim for

5    breach of implied warranty of a fitness for a particular

6    purpose.   They didn't make any warranty for a particular

7    purpose, implied or otherwise.

8        What you would need is something like umm, you go to

9    the car dealer and you say I need a car that can tow my

10   several thousand pound, very large boat, and they pick out a

11   Toyota Prius for you and it turns out not to be able to haul

12   the boat.   You would have a claim for breach of an implied

13   warranty because you asked them to find a product that could

14   do this unusual thing and they failed to do it, they picked

15   the wrong product.

16       There is no allegation like that here; there is no

17   allegation of any connection, really, between any of the

18   Newell Defendants and Allegany Scrap.   And Plaintiffs

19   argued in the opposition that while they might find facts to

20   support such a claim if they got discovery, similar to the

21   arguments that were made earlier Your Honor, that's just

22   backwards.   They need to at least be able to plead in good

1  faith the elements of the claims in order for the claims to

2  go forward and for them to get discovery and they are

3  missing the main element of this claim, respectfully it

4  needs to be dismissed as it sits in all three counts against

5  the Newell Defendants.

6      If Your Honor doesn't have anything further, I will

7  rest on those arguments and reserve for rebuttal.

8      BY THE COURT:  All right.

9      BY MR. MOELLER:  Thank you.

10     BY THE COURT:  Mr. Buckel?

11     BY MR. BUCKEL:  Thank you, Your Honor.  Good morning,

12 Your Honor.  I apologize for my voice.  I will do my best.

13 Umm, I sat here and I forgot, this is the first time in my

14 career I had ever done the same argument twice.  I forgot

15 how long it took.  I only brought one bottle of water, I

16 should have brought two unquestionably, and I apologize for

17 that.

18     My entire adult life I have been an attorney, twenty-

19 eight years.  At twenty-four years old I was admitted to

20 the bar.  The last ten years I have been a member of the

21 Maryland Legislature.  I don't know if I am getting older

22 or more emotional or (inaudible word), I don't know, but

1    hearing what I have heard makes me, I almost have a degree

2    of shame to be a part of this system, and I have been a part

3    of this system my whole life.   That it would obtain such a

4    result, and that is what my colleagues have argued.

5        I know one thing, we have talked a lot of the facts,

6    the pleadings, but there is one undisputable underlying

7    fact, four years ago today, today, that woman's son was

8    killed a few miles from here.   He was in his twenties, by a

9    projectile, a large piece of metal that flew out of the

10   shredder and severed significant arteries in his neck.   It

11   was her son, four years ago today.   What I heard is there

12   is no evidence, it just happened, it was an accident.   Get

13   your seventy-five grand from the Worker's Comp. System,

14   can't sue anybody, can't prove anything.   I can't prove

15   anything in the complaint, not with the way that this is set

16   up.

17       What I can tell you, Your Honor, and specifically focus

18   on the arguments in my colleague's, the Newell Defendants,

19   Exhibit Two to our opposition to the Motion to Dismiss,

20   which my colleague referred to as some literature.   There

21   is some literature with respect to what the Newell Company,

22   the Newell Defendants do, and it is included there for Your

1    Honor to look at it.  It says that the Newell Companies

2    manufacture half of the shredders in the country.  It is not

3    some little Texas company that just sells to Texas.   They

4    sell shredders all over the United States and interestingly,

5    Your Honor, I am holding it up, you will be able to see it

6    if you look at it.  You know how bad I am with technology, I

7    still have it on paper.   There is a drawing, I didn't do

8    this drawing.   These people did this drawing years and

9    years ago and it shows the locations of Newell shredders

10   worldwide and then in the United States, Maryland is a

11   really kind of state, we know that in terms of (inaudible),

12   but I, in my best estimate in the case, there is at least

13   three or four or perhaps five, Newell shredders by their own

14   information, sold and operated in the State of Maryland.

15   We know this, the machine that killed Josh Nicol came from

16   these guys, it came from Texas.   How do we know this?

17   Well, the motion investigation, and I am just going to

18   briefly read it.   What my colleague wants me to do is

19   something I impossibly cannot do.  I am not (Inaudible

20   Name), the Magnificent.   Without the ability of the

21   discovery process I cannot force them to tell me exactly

22   what happened at exactly what company it was at on exactly

M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

1   what day and who did you sell it to, but if we dismiss this

2   case and we find out, because I can't find out without

3   discovery, and we dismiss this case and we find out that in

4   fact, one of these Newell Companies sold this shredder

5   directly to Allegany Scrap and we dismiss the case, that is

6   the greatest miscarriage of justice imaginable.

7       What I know from the motion investigators, the motion

8   investigators aren't here to provide a case for Ms. Beeman.

9   They are not product liability investigators, they are

10  motion investigators.   What I know from them is that they

11  very quickly determined that this shredder was designed and

12  manufactured by something called The Shredder Company, and I

13  am reading from the motion report.   The Shredder Company

14  that designed and built the Model 02, Midsection Shredder is

15  no longer in business.   For research it was found that

16  Newell Recycling and Equipment, LLC Chairman and C.E.O.

17  Scott Newell, had previously owned The Shredder Company and

18  designed the shredder involved in the accident.

19      Mr. Newell was then contacted and gave them a variety

20  of information about how the shredder worked and how the

21  accident occurred.   We sued everybody that could possibly

22  be identified through a search of records and a motion

1    investigations as potentially there.   When they can't hide

2    behind, well, that company doesn't exist anymore, I don't

3    care.  Do they have a policy of insurance and liability for

4    products that they designed and manufactured?   You can't

5    just design something and put it out on the stream of

6    commerce and let it kill somebody and say by the time it

7    killed somebody I was already out of business.  I have a new

8    company, you can't come after me.

9        That's not what is at stake here.  Personal

10   jurisdiction clearly and should clearly exist.  The only two

11   cases cited in Defendant's briefs, the *C.S.R.* case and the

12   (Inaudible Name) case are completely inapposite.

13       The *C.S.R.* case is essentially an asbestos case where

14   the asbestos Plaintiffs in Baltimore name hundreds, or

15   perhaps thousands, of potential Defendants and try to trace

16   every ship worker who worked at the Bethlehem Steel or other

17   shipyards in that region for ten years, twenty years, thirty

18   years, let's go back and find every potential product who

19   might have had the tiniest bit of asbestos and they sued.

20   And *C.S.R.* says we don't sell anything in Maryland.   Our

21   product, we just ship through, you know, people just

22   literally unload from a boat to a boat, go to Australia or

55

 1  somewhere else and the Court says that is not enough unless

 2  you can tie, unless the Plaintiffs can say I remember

 3  unloading a *C.S.R.* product and getting fumes.  I remember

 4  unloading it and having dust.   I remember..and they didn't.

 5  There was no specific nexus.   You just read it.

 6      The Newell Defendants, whichever one it turns out

 7  through discovery finally stands up and says yes, I built

 8  that, I designed that.  That is what will happen.   They

 9  have a specific nexus to this case, they designed it, they

10  manufactured it, they sold it, the shredder that killed her

11  son four years ago today.   They have to have some

12  participation, they have to have some ability to be inquired

13  of that, Your Honor, under the personal jurisdiction

14  standard.

15      With respect to the design defect claim, the first

16  thing that I would note is there is not a Maryland case cite

17  where a court has dismissed a design defect claim on a

18  Motion to Dismiss standard for pleading particularities.

19  Not one.   The only case cited is *Holliday vs. Sturm Ruger*,

20  and it is a case involving product liability claims about a

21  handgun that is not applicable, is not involved here at all,

22  is not similar procedurally or factually, and I cannot find

1   any other case where a Maryland Appellate Court has

2   (inaudible word) the Trial Court by saying  you know, I just

3   don't like the way, it is a little confusing to me the way

4   the design defect is plead, we will just dismiss the case

5   and you are out.

6       I would point you to paragraph forty-seven.  I spent a

7   lot of time, frankly in my career, working on that side of

8   the table for product liability cases for manufacturers and

9   distributors.  I point you to paragraph forty-seven of the

10  complaint where we very clearly allege that the Defendants

11  designed the shredder in a defective and unreasonably

12  dangerous condition, and that the design was such that it

13  failed to provide adequate and sufficient deflector,

14  shielding, rubber curtains, or other safety features to

15  prevent metal shrapnel from flying out of the industrial

16  shredder and causing injury and/or death to the operator or

17  those working in proximity of the shredder.

18      I would turn you again to the Motion report, where Mr.

19  Newell himself, indicated that an unguarded three inch wide

20  by thirty inch long opening where the metal bar holding the

21  rubber curtain slid down, allowing for material discharge.

22  Mr. Newell indicated that the large amount of metal scrap

1    piling up next to the discharge shield was an indication

2    that materials would "rickasha" off the sides of the walls

3    of the shaker table, once getting crushed by the hammers and

4    falling through the grates and down on to the shaker table.

5    Mr. Newell stated that the materials that were being

6    discharged from that opening were being ejected around

7    approximately one hundred and seventy miles per hour as a

8    result of "rickashaing" inside the shredder.

9        How can I, how in God's green earth can that woman,

10   with us as her attorneys, without the benefit of discovery,

11   we have alleged what needs to be alleged that there was a

12   design..there is two alternative theories.  You designed it

13   without proper guarding, you put it out in the stream of

14   commerce without proper shielding, without proper

15   reflectors, or alternatively, and that is what my colleague

16   is focused on, you put it out there in a way that knowing

17   that over time that these potentially guarding mechanisms

18   would degrade or become dysfunctional and you did not

19   provide an opportunity or guidance to suggest that once they

20   degraded or once they become unfunctional, or dysfunctional,

21   the machine can't be operated.  One hundred and seventy

22   miles per hour, pieces of metal flying.  Powerful, powerful.

1    Maybe a jury can determine that, maybe the Court

2  determines that on summary judgment once we go through

3  experts and product designs and a variety of things, but

4  today, to say not our fault, would be again, in clear error

5  and just a grave miscarriage of justice.  We can't know

6  today when Newell put that machine out, or The Shredder

7  Company put that machine out, where these rubber curtains

8  were in all designs, was it all designed correctly, was it

9  all done correctly.  Mr. Newell says very clearly, oh yea,

10  I looked at the picture of it, and yea, that's where the

11  scrap is coming out of.   Motion report doesn't say, he

12  goes, but that is not how I designed it, I designed it to

13  have all those things on there.  We don't know.

14    I have to protect this woman's interests.  I have to.

15  It is my only job.  I have to allege not only that there is

16  an intention of the design defect, in the very beginning,

17  and also I have to allege that there potentially is a design

18  defect in the fact that you did not account for the fact

19  that you allowed this incredibly dangerous machine to be

20  operated after safety features potentially degraded or moved

21  or whatever it may be, and I analogized it before Your

22  Honor, to seatbelts.

1     We are all really familiar with seatbelts.    We are not

2  very familiar with metal shredders shooting bullets,

3  basically, across the room at us, but we all are familiar

4  with seatbelts.

5     Car manufacturers have a duty and an obligation to

6  provide you with a seatbelt.  Almost every vehicle that is

7  ever manufactured today, for many, many years now, almost

8  requires you to put the seatbelt on or provides you a link,

9  a prompt.  You know, a ding, a bell, voice, engage seatbelt,

10  engage seatbelt.  Many cars you pull the door shut and the

11  seatbelt automatically comes across.   Would a automobile

12  manufacturer be able to say hey, we manufactured the car and

13  we just put, you know, we knew that people wouldn't want to

14  take the seatbelt off, so we just put a little clip up at

15  the top and a little clip up at the bottom and you can buy

16  your car and just get rid of the seatbelt, but we designed

17  it safer.   When the standard is you have to provide the

18  seatbelt, you have to at least provide that, you have to

19  provide that safety mechanism.   I think we all know what

20  the answer to that question would be, that the product

21  manufacturer would not be able to say I designed my product

22  in a way, was it reasonably foreseeable for me to say that

60

 1  any safety mechanisms I put into it could be disabled, could

 2  be degraded, I didn't do anything about that, I didn't have,

 3  I don't have the safety redundancies, I don't have anything

 4  that prevents that from happening, and so the design defect

 5  claim we believe is certainly appropriate to proceed at this

 6  juncture of the process and it will allow for discovery to

 7  further elucidate what, when and how the shredder safety

 8  mechanisms were designed.   There is enough there.   There is

 9  enough in the motion report.   There is enough on personal

10  jurisdiction.  It just is.

11        With respect to the warranty claim, I am not overall as

12  concerned with that Your Honor.  I think Mr. Moeller has

13  very graciously conceded that the one element of the

14  warranty claim certainly is available under Maryland law.

15  Our position is, is that the Court, and there really isn't

16  very much law on this quite frankly, but that the Court

17  should take into consideration as it does and has been

18  conceded by my colleague in the other warranty claim, that

19  Ms. Beeman, the Estate, they are not the class of

20  individuals designed to be held to such a high standard on

21  the warranty claim.   That's designed to be buyers.   They

22  are a third party, I don't want to say beneficiary, but they

1    are a third party affected by a breach of a warranty because

2    the product malfunctions, the product is dangerous, the

3    product causes harm to them, as opposed to the direct buyer.

4    We conceded, and I believe it is called a (inaudible name)

5    case, umm, that says that, it was briefly cited by Mr.

6    Moeller, to suggest that a very long time ago Maryland's

7    Court said yes, you can't kick people out of a warranty

8    claim because they, they didn't provide certain notices,

9    when they are the third party, not the buyer themselves, who

10   would have had the ability to do that.  We think that the

11   same logic pertains for the secondary warranty claim, but it

12   is not central really to our claims.  It is not central to

13   our ability to proceed.

14        Having personal jurisdiction, it, if the Court would

15   determine that Allegany Scrap can come in and do everything

16   they did and everything that is alleged in the motion for

17   it, and just walk away, seventy-five thousand grand,

18   Worker's Comp., whatever, and that the Newell Defendants can

19   come in and say yea, we admit it, we designed these things,

20   they are distributed worldwide, there is evidence they have

21   been in Maryland before, we know the ones here, yes, we

22   designed it, and we designed it, it is this company, it is

1    that company, it is tricky, right?   It is not like suing

2    General Motors.  It is tricky.   And we designed it but you

3    have to kick the case out.  If that's what the Court would

4    determine, I don't know.  I don't know how you can handle

5    any type of matter.  It is not me, about handling it, I

6    don't know how someone who suffers that type of loss from

7    something that obviously could have been avoided can achieve

8    any recovery in Maryland.   I don't know what we have become

9    if we allow sort of the elevation of form over substance at

10   such a degree, that there is not a chance to ask these

11   folks, what did you do.  I just want to ask you, what did

12   you do.  I want you to respond to my interrogatories, what

13   did you do.   I want to sit down with your experts and your

14   C.E.O.  What did you do, what didn't you do?  If she is not

15   even allowed to ask these questions about the death of her

16   son, I think the concept of civil justice is stretched

17   backwards.

18        I appreciate the Court's, I know that you have been

19   hearing these for years, I know how much you pay attention

20   to these issues and deal with it from a legal and

21   intellectual basis, I just felt compelled to say that.

22        Thank you, Your Honor.  If you don't have any

1    questions, I am concluded.

2        BY THE COURT:  All right.   Mr. Moeller?

3        BY MR. BROWN:  Your Honor, can I get the last word on

4    my motion because you have heard a lot on the motion there?

5    I..

6        BY THE COURT:    Certainly.

7        BY MR. BROWN:  I would like to respond to what I just

8    heard because again..

9        BY THE COURT:  I will get back to you, I will give you

10   a chance, Mr. Brown.

11       BY MR. BROWN:  Thanks.

12       BY THE COURT: Mr. Moeller?

13       BY MR. MOELLER:  If I may?  Thank you, Your Honor.

14   Your Honor, we heard from counsel that he has been

15   practicing a long time.   The fourteenth amendment to the

16   United States Constitution has been around a little bit

17   longer than he has.

18       BY MR. BUCKEL:   I agree with that.

19       BY MR. MOELLER:  Umm, there is, there is a requirement

20   in the Constitution that if you want to sue someone who is a

21   citizen of another state, in your state, you have to have a

22   basis for doing that.   The suggestion that a Plaintiff has

1   no recourse if they can't satisfy personal jurisdiction

2   isn't true because you can always go to the Defendant where

3   they do reside and sue them there.

4       Umm, there is no reason that the Newell Defendants

5   couldn't have been sued in Texas, which would have

6   eliminated all of these personal jurisdiction issues, and

7   allowed Plaintiffs to focus on the merits, rather than their

8   lack of knowledge or allegations or evidence of personal

9   jurisdiction.

10      This literature that counsel pointed to, umm, that is

11  attached to the opposition, Your Honor, that is a pamphlet

12  from the year 1994, and it is not produced by, as far as I

13  can tell, any of the Newell Defendants.  It is produced by

14  an engineering organization called The..bear with me a

15  moment, The American Society of Mechanical Engineers.  So

16  the idea that this pamphlet is some sort of admission that

17  the Newell Defendants are at home in every state in the

18  United States because they have sold a bunch of shredders in

19  1994, umm, isn't really applicable to whether in 2011, umm,

20  the Newell Defendants had any interaction with Allegany

21  Scrap with the State of Maryland.

22      The fact that they were doing a lot of business that, a

1  Newell entity was doing a lot of business in 1994, umm,

2  doesn't really help the Plaintiff in establishing that the

3  four Newell entities they have sued had something to do with

4  Maryland in relation to the particular shredder that is at

5  issue.

6      As far as I know they haven't pursued a theory of

7  general personal jurisdiction in the State of Maryland, so

8  that they have to be seeking specific personal jurisdiction,

9  which focuses on the transaction that is actually at issue

10  here, not overall over the course of thirty years how many

11  shredders have been sold into the State of Maryland.

12      As far as the umm, the Newell Defendants themselves, I

13  just want to emphasize Your Honor, that Plaintiff's counsel

14  essentially admitted what they are doing here, which is

15  trying to maximize their insurance recovery by suing as many

16  Newell entities as they can.   That's certainly their

17  incentive, but the Court's job and it is not an unfair one.

18  It is required by Maryland statutes and the constitution,

19  but the Court's job is to see whether they have alleged and

20  shown the basis for personal jurisdiction over the specific

21  entities that they have sued.

22      You just can't sue everyone with a similar name and

1    hope that it shakes out in the end.    All those people with

2    similar names who have been sued have a basis for a Motion

3    to Dismiss saying you just sued me because I have a similar

4    name to someone who might be responsible.  You need to have

5    allegations specific to me, and in the context of personal

6    jurisdiction, you need to have evidence that is specific to

7    me.    And that's just not here.

8        As far as the specific claims, the design defect claim,

9    I certainly acknowledge that the case that is cited is in a

10    different procedural posture, but it wasn't cited for the

11    procedural posture, Your Honor, it was cited for the

12    elements of the claim.

13        One of the elements of the claim is that the product

14    was expected to and did reach the consumer without

15    substantial change in its condition.    What you just heard

16    was that there was substantial change in its condition.

17    The seatbelt analogy, Your Honor, that counsel raised, is

18    sort of illustrative.    Umm, you put a seatbelt on the car

19    when you manufacture it, umm, as a manufacturer, that seems

20    to be an obligation under most state's laws, but you don't

21    then have an obligation to make sure that they put it on

22    every time they start up the car.    If they plug it in and

1  put it behind themselves, the manufacturer doesn't have an

2  obligation to run up and make sure that their seatbelt is

3  still on before they start moving, and that's sort of what

4  is suggested here, is that whichever Newell Defendant

5  deigned the shredder, or the parts of the shredder that are

6  at issue, had an obligation to forever prevent Allegany

7  Scrap from basically tampering with it.  And that is not

8  what the third element of that tort says.  It is not, umm, a

9  question of what condition the product was in when the

10  accident happened, there has to have been no substantial

11  change in its condition in relation to the accident.

12      And then finally on the implied warranty claim, umm,

13  again, counsel has conceded that they don't have the

14  elements and that the claim isn't terribly important to

15  their case.  The proper thing to do then is for the Court to

16  dismiss those claims because they haven't been adequately

17  pled and if Plaintiffs ever do discover a basis for them,

18  Plaintiffs are certainly entitled to amend the complaint and

19  plead all of the elements of the claim.

20      But the sort of overarching theme you heard from

21  Plaintiffs today Your Honor, was that because this was a

22  severe accident, that the rules should be applied less

68

1    strictly or not at all.  And that's just not the case, Your

2    Honor.  The case law and the Maryland Rules and the

3    Fourteenth Amendment don't say that different rules apply

4    based upon how severe the accident is.  The Plaintiffs

5    needed to do some amount of investigation and figure out who

6    to sue and why to sue them before they filed suit, and to

7    the extent there are deficiencies in that, the Newell

8    Defendants are entitled to dismissal of all of the claims

9    against them on the basis of personal jurisdiction, but also

10   the specific claims with the pleading defects because that

11   is what the Maryland Rules and Maryland case law requires,

12   Your Honor.

13       BY THE COURT:  All right, thank you, Mr. Moeller.

14       BY MR. MOELLER:  Thank you.

15       BY THE COURT: Mr. Brown?

16       BY MR. BROWN:  Thank you, Your Honor.

17       BY THE COURT:  We, we did hear a little bit of your

18   case in the last argument.

19       BY MR. BROWN:  Yes.  Thank you, Your Honor.  You have

20   been very attentive and asked good questions during my

21   argument today, so I am not, I am going to be very, very

22   brief.

```
 1        All I really heard about my motion was these general
 2   statements about how Mr. Buckel is a state senator and he
 3   doesn't understand how we have gotten here and that sort of
 4   thing, but I, and he specifically said we can come in here
 5   and make these arguments and walk out without a remedy, and
 6   as you know, the Plaintiff had a remedy, and the Plaintiff
 7   chose it and the reason I wanted to stand back up was to,
 8   because Mr. Buckel talked to you about how he is a state
 9   senator and it opened the door to this..
10        BY MR. BUCKEL:  I am not a State Senator, sir.
11        BY MR. BROWN:  Oh, oh.   In the legislature, the
12   argument on this case was delayed because Mr. Buckel was
13   tied up in the legislature, so he is a state representative.
14   Umm, during the time that Mr. Buckel was away from this case
15   as a state representative, there was a bill that was
16   introduced in the Maryland Legislature, and that bill, which
17   is appended as Exhibit Number One to our reply brief,
18   changes the or to and.  And it didn't pass.
19        Now, I don't know how Mr. Buckel can stand up and say I
20   don't know how we have got here, I don't know how this
21   legislative compromise can be fair when the legislature just
22   considered this a few months ago while Mr. Buckel was in
```

70

1    Annapolis and decided no, in fact this is fair, in fact.  It

2    is an or.  We don't want it to be an and.   The bill did not

3    pass and adults have choices they can make.  They can hire

4    two lawyers to represent them and when they do that, they

5    can choose whether they go to the Worker's Compensation

6    Commission or to the Civil Court.   Ms. Beeman and the

7    Estate made their choice and it is absolutely fair, so when

8    Mr. Buckel said there is no remedy against Allegany Scrap,

9    that's not true.   He corrected it a little bit at the end

10   and threw in facts that aren't in the complaint, he talked

11   to you about the size of the Worker's Compensation award,

12   but the fact is there is an award and it has been made and a

13   choice has been made and the statute says or and it will

14   continue to say or, because attempts to change it have not

15   passed because it is fair.

16        Thank you, Your Honor.

17        BY THE COURT:  All right.

18        BY MR. BUCKEL:  Very briefly, if I may, Your Honor?

19   Just, this is..

20        BY MR. BROWN:  Your Honor, can I have the last word on

21   my motion, please?

22        BY MR. BUCKEL:  I feel like I have been personally

71

1    impugned by Mr. Brown for the last ten minutes.

2          BY THE COURT:   The hearing, the hearing is concluded.

3          BY MR. BROWN:   Thank you, Your Honor.

4                            - 0 -

5

72

STATE OF MARYLAND

COUNTY OF ALLEGANY, TO WIT:

I, the undersigned, M. Sue Crowe, official Court
Reporter for the Fourth Judicial Circuit of Maryland, duly
appointed and qualified as such, do hereby certify that the
foregoing is, to the best of my skill, ability, and
judgment, a true and accurate transcript of a motion hearing
in **LINDA BEEMAN, SURVIVING MOTION OF JOSHUA NICKEL, et al
vs. ALLEGANY SCRAP, et al,** in Civil Case Number C-01-CV-23-
317, given in Cumberland, Maryland, on the 10th day of
September, 2024, before the Honorable Jeffrey S. Getty.

Given under my hand this 15th day of November, 2024.


*M. Sue Crowe*

_____
M. Sue Crowe
Court Reporter for Allegany County, MD




M. Sue Crowe
Court Reporter
Circuit Court for Allegany County

## N THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

LINDA S. BEEMAN, as Surviving Mother  :
of Joshua P. Nickel, *et al.*,                        :
                                                               :
                    Plaintiffs                        :
                                                               :
          v.                                               :          Civil Case No. C-01-CV-23-000317
                                                               :
ALLEGANY SCRAP, INC., *et al.*,              :
                                                               :
                    Defendant                        :

### <u>CERTIFICATE REGARDING DISCOVERY</u>

I HEREBY CERTIFY that on the 22nd day of January, 2025, I caused a copy of Defendant New Recycling Equipment, LLC's First Set of Interrogatories to Plaintiff Linda S. Beeman, to be submitted via the Court's *MDEC* e-filing system, on the following counsel of record:

> Jason C. Buckel
> T. Lee Beeman
> Buckel, Levasseur, Pillai & Beeman, LLC
> 206 Washington Street
> Cumberland, Maryland 21502
>
> *Attorneys for Plaintiff Linda S. Beeman,*
> *as Surviving Mother of Joshua P. Nickel*

I HEREBY CERTIFY that on the 22nd day of January, 2025, I caused a copy of Defendant The Shredder Company, LLCs: (1) First Set of Interrogatories to Defendant Allegany Scrap, Inc.; (2) First Request for Production of Documents to Defendants Allegany Scrap, Inc.; (3) First Request for Admissions to Defendant Allegany Scrap, Inc.; (4) First Set of Interrogatories to Plaintiff Linda S. Beeman; and (5) First Requests for Production of Documents to Plaintiff Linda S. Beeman to be submitted via the Court's MDEC e-filing system, on the following counsel of record:

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

1

21559934_1

Joel I. Sher
Alex J. Brown
Michael S. Bullock
Shapiro Sher Guinot & Sandler
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201

*Attorneys for Defendant Allegany Scrap, Inc.*

Jason C. Buckel
T. Lee Beeman
Buckel, Levasseur, Pillai & Beeman, LLC
206 Washington Street
Cumberland, Maryland 21502

*Attorneys for Plaintiff Linda S. Beeman,*
*as Surviving Mother of Joshua P. Nickel*

I HEREBY FURTHER CERTIFY that I will retain the originals of these documents in my possession, without alteration, until the case is concluded in this Court, the time for noting an appeal has expired, and any appeal noted has been decided.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:   */s/ E. Andrew Cole*
E. Andrew Cole (AIS #0206190051)
1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852
Direct: 301-838-3218
Fax: 301-354-8118
ecole@steinsperling.com

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

2

21559934_1

-and-

By:    /s/ Joseph M. Moeller

Joseph M. Moeller (AIS #1812120023)
1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852
Direct: 301-838-3237
Fax: 301-354-8137
jmoeller@steinsperling.com

*Attorneys for Newell Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January, 2025, a copy of the foregoing was submitted via the Court's *MDEC* e-filing system for service on all counsel of record.

/s/ E. Andrew Cole

E. Andrew Cole (AIS #0206190051)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

3

21559934_1

E-FILED; Allegany Circuit Court
Docket: 2/21/2025 3:07 PM; Submission: 2/21/2025 3:07 PM
Envelope: 20069259

Stricken per Rule 20-203(c). Not a valid pleading or paper

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

No certificate of service.

LINDA S. BEEMAN, *et al.*                *

      Plaintiffs,                          *

v.                                       *

                                **Case No. C-01-CV-23-000317**

ALLEGANY SCRAP, INC., *et al.*           *

                              *

      Defendants.                          *

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *

### NOTICE OF SERVICE FOR DEFENDANT ALLEGANY SCRAP, INC.'S
### RESPONSES TO THE SHREDDER COMPANY, LLC'S
### FIRST REQUESTS FOR ADMISSIONS

I HEREBY CERTIFY that on the 21st day of February, 2025, copies of Defendant

Allegany Scrap, Inc.'s Responses to The Shredder Company, LLC's First Requests For

Admissions were served via electronic mail and first-class mail, postage pre-paid, on the parties

listed below.

      E. Andrew Cole, Esquire
      Joseph M. Moeller, Esquire
      Stein Sperling Bennett De Jong Driscoll PC
      1101 Wootton Parkway, Suite 700
      Rockville, Maryland 20852
      ecole@steinsperling.com
      jmoeller@steinsperling.com

Dated: February 21, 2025

/s/ Joel I. Sher
Joel I. Sher (AIS No. 7811010312)
Alex J. Brown (AIS No. 9912140080)
Michael S. Bullock (AIS No. 1712130070)
Shapiro Sher Guinot & Sandler
250 W Pratt Street, Suite 2000
Baltimore, Maryland 21201
410-385-0202 telephone
410-539-7611 facsimile
jis@shapirosher.com
ajb@shapirosher.com
msb@shapirosher.com

Attorneys for Defendant Allegany Scrap, Inc.



**CIRCUIT COURT OF MARYLAND FOR
ALLEGANY COUNTY**

30 Washington Street, Cumberland, Maryland, 21502

Clerk Office: (301) 777-5922
Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:** EDWARD ANDREW COLE
STEIN SPERLING BENNETT DE JONG DRISCOLL PC
1101 WOOTTON PARKWAY
SUITE 700
ROCKVILLE, MD 20850

Case Number:      C-01-CV-23-000317
Other Reference Number(s):

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 2/24/2025

## NOTICE OF STRIKING NON-COMPLIANT SUBMISSION
### (Md. Rule 20-203(c))

This is to notify you that your submission, Notice of Service for Defendant Allegany Scrap Inc's Responses to The Shredder Company, LLC 1st Requests for Admissions dated 02/21/2025, has been stricken due to a lack of a certificate of service as required by Rule 20-201(g).

Note: You must submit a motion and have it granted by a judge to receive a refund of any fees associated with the filing.

*Dawne D. Lindsey*

Dawne D. Lindsey
Clerk of the Circuit Court

cc:     The Shredder Co LLC



**CIRCUIT COURT OF MARYLAND FOR**
**ALLEGANY COUNTY**
30 Washington Street, Cumberland, Maryland, 21502

Fax: (301) 777-2100
Assignment Office: (301) 777-5921
Family Magistrate: (301) 777-2387
Child Support Magistrate: (301) 777-2408
Family Services: (301) 777-2102

**To:**  EDWARD ANDREW  COLE
STEIN SPERLING BENNETT DE JONG DRISCOLL PC
1101 WOOTTON PARKWAY
SUITE 700
ROCKVILLE, MD 20850

Case Number: C-01-CV-23-000317
Other Reference Number(s):

**LINDA BEEMAN, AS SURVIVING MOTHER OF JOSHUA P. NICKEL, ET AL. VS. ALLEGANY SCRAP, INC., ET AL.**

Date: 2/24/2025

## NOTICE OF STRIKING NON-COMPLIANT SUBMISSION
### (Md. Rule 20-203(c))

This is to notify you that your submission, Notice of Service for Defendant Allegany Scrap Inc's Responses to The Shredder Company, LLC 1st Requests for Admissions dated 02/21/2025, has been stricken due to a lack of a certificate of service as required by Rule 20-201(g).

Note: You must submit a motion and have it granted by a judge to receive a refund of any fees associated with the filing.

Dawne D. Lindsey
Dawne D. Lindsey
Clerk of the Circuit Court

cc:    The Shredder Co LLC

**IN THE CIRCUIT COURT OF MARYLAND
FOR ALLEGANY COUNTY**

| | |
|---|---|
| **LINDA S. BEEMAN**, *et al.* | * |
| **Plaintiffs,** | * |
| **v.** | * |
| **ALLEGANY SCRAP, INC.**, *et al.* | *     **Case No. C-01-CV-23-000317** |
| | * |
| **Defendants.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**AMENDED NOTICE OF SERVICE FOR DEFENDANT ALLEGANY
SCRAP, INC.'S RESPONSES TO THE SHREDDER COMPANY, LLC'S
FIRST REQUESTS FOR ADMISSIONS**

I HEREBY CERTIFY that on the 21st day of February, 2025, copies of Defendant Allegany Scrap, Inc.'s Responses to The Shredder Company, LLC's First Requests For Admissions were served via electronic mail and first-class mail, postage pre-paid, on the parties listed below.

> E. Andrew Cole, Esquire
> Joseph M. Moeller, Esquire
> Stein Sperling Bennett De Jong Driscoll PC
> 1101 Wootton Parkway, Suite 700
> Rockville, Maryland 20852
> ecole@steinsperling.com
> jmoeller@steinsperling.com

Dated: February 24, 2025                */s/ Joel I. Sher*

Joel I. Sher (AIS No. 7811010312)
Alex J. Brown (AIS No. 9912140080)
Michael S. Bullock (AIS No. 1712130070)
Shapiro Sher Guinot & Sandler
250 W Pratt Street, Suite 2000
Baltimore, Maryland 21201
410-385-0202 telephone
410-539-7611 facsimile
jis@shapirosher.com
ajb@shapirosher.com
msb@shapirosher.com

*Attorneys for Defendant Allegany Scrap, Inc.*

2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 24th day of February, 2025, copies of the foregoing

Amended Notice of Service were served via MDEC on:

> Jason C. Buckel, Esquire
> T Lee Beeman, Esquire
> Buckel Levasseur Pillai & Beeman LLC
> 206 Washington Street
> Cumberland, Maryland 21502
>
> *Attorneys for Plaintiffs*
>
>
> E. Andrew Cole, Esquire
> Joseph M. Moeller, Esquire
> Stein Sperling Bennett De Jong Driscoll PC
> 1101 Wootton Parkway, Suite 700
> Rockville, Maryland 20852
>
> *Attorneys for Defendants The Shredder Co., LLC,*
> *The Shredder Co., LP, Newell Recycling*
> *Equipment, LLC and Newell Recycling Company*
> *of El Paso, L.P.*

> */s/ Joel I. Sher*
> Joel I. Sher (AIS No. 7811010312)

E-FILED; Allegany Circuit Court
Docket: 4/17/2025 12:12 PM; Submission: 4/17/2025 12:12 PM
Envelope: 20831350

**IN THE CIRCUIT COURT OF MARYLAND**
**FOR ALLEGANY COUNTY**

LINDA S. BEEMAN, *et al.*            *

      Plaintiffs,            *

v.                                   *

ALLEGANY SCRAP, INC., *et al.*       *            Case No. C-01-CV-23-000317

                                      *

      Defendants.            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**NOTICE OF SERVICE OF DISCOVERY DOCUMENTS**</u>

I HEREBY CERTIFY that on this 17th day of April, 2025, true and correct copies of: (i) Defendant Allegany Scrap, Inc.'s Responses and Objections to Defendant The Shredder Company, LLC's First Requests for Production of Documents; (ii) Defendant Allegany Scrap, Inc.'s Answers and Objections to Defendant The Shredder Company, LLC's First Set of Interrogatories; and (iii) this Notice of Service of Discovery Documents, were sent via first-class mail, postage prepaid and email to the following

      E. Andrew Cole, Esquire
      Joseph M. Moeller, Esquire
      Stein Sperling Bennett De Jong Driscoll PC
      1101 Wootton Parkway, Suite 700
      Rockville, Maryland 20852
      ecole@steinsperling.com
      jmoeller@steinsperling.com

      *Attorneys for Defendants The Shredder Company, LLC, The Shredder Company, L.P., Newell Recycling Equipment, LLC and Newell Recycling Company of El Paso, L.P.*

Jason C. Buckel, Esquire
T Lee Beeman, Esquire
Buckel Levasseur Pillai & Beeman LLC
206 Washington Street
Cumberland, Maryland 21502
blplaw@atlanticbbn.net
lbeeman@blplaw.com

*Attorneys for Plaintiffs*

I FURTHER CERTIFY that I will retain the originals of these documents and will make

the same available for inspection upon reasonable request.

Dated: April 17, 2025                    Respectfully submitted,

                                         */s/ Joel I. Sher*
                                         _____
                                         Joel I. Sher (AIS No. 7811010312)
                                         Alex J. Brown (AIS No. 9912140080)
                                         Michael S. Bullock (AIS No. 1712130070)
                                         Shapiro Sher Guinot & Sandler
                                         250 W Pratt Street, Suite 2000
                                         Baltimore, Maryland 21201
                                         410-385-0202 telephone
                                         410-539-7611 facsimile
                                         jis@shapirosher.com
                                         ajb@shapirosher.com
                                         msb@shapirosher.com

                                         *Attorneys for Defendant Allegany Scrap, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of April, 2025, a copy of the foregoing Notice Of Service Of Discovery Documents was filed and served through the MDEC system and has been delivered to all recipients entitled to receive electronic service of the same.

*/s/ Joel I. Sher*

Joel I. Sher (AIS No. 7811010312)

E-FILED; Allegany Circuit Court
Docket: 12/18/2024 1:13 PM; Submission: 12/18/2024 1:13 PM
Envelope: 19235588

## IN THE CIRCUIT COURT OF MARYLAND
## FOR ALLEGANY COUNTY

| | |
|---|---|
| **LINDA S. BEEMAN**, *et al.* | * |
|     **Plaintiffs** | * |
| **v.** | * |
| **ALLEGANY SCRAP, INC.**, *et al.* | *    **Case No. C-01-CV-23-000317** |
|     **Defendants** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>ORDER GRANTING SUMMARY JUDGMENT</u>

Upon consideration of the Motion To Dismiss filed by Defendant Allegany Scrap, Inc. ("Allegany") which was converted into a Motion For Summary Judgment, as well the Supplement In Support of Allegany's Motion For Summary Judgment filed by Allegany on December 18, 2024, and any Opposition and Reply thereto, it is this <u>13th</u> day of <u>    May    </u>, 202<u>5</u> hereby **ORDERED** that:

1.     Allegany's Motion For Summary Judgment is **GRANTED**;

2.     Judgment is hereby entered in Defendant Allegany's favor on each of the following claims: 1) Plaintiff Linda S. Beeman, as Surviving Mother of Joshual P. Nickel, in Count I (Deliberate Intent – Wrongful Death Action) of the Complaint ("Complaint"); 2) Plaintiff Linda S. Beeman, as Personal Representative of the Estate of Joshua P. Nickel, in Count VII (Deliberate Intent – Survival Action) of the Complaint; and 3) Use Plaintiff Karl E. Nickel, as Surviving Father of Joshua P. Nickel, in Count XIII (Deliberate Intent – Wrongful Death Action) of the Complaint; and

3.     The Complaint against Allegany is dismissed with prejudice.

05/13/2025 9:44:11 AM

_____
Judge
Circuit Court for Allegany County, Maryland
Judge Jeffrey S. Getty

Cc: All Counsel of Record

2

IN THE CIRCUIT COURT OF MARYLAND
FOR ALLEGANY COUNTY

| | | |
|---|---|---|
| **LINDA S. BEEMAN,** *et al.* | * | |
| **Plaintiffs** | * | |
| **v.** | * | |
| **ALLEGANY SCRAP, INC.,** *et al.* | * | **Case No. C-01-CV-23-000317** |
| **Defendants** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**ORDER GRANTING SUMMARY JUDGMENT**</u>

Upon consideration of the Motion To Dismiss filed by Defendant Allegany Scrap, Inc. ("Allegany") which was converted into a Motion For Summary Judgment, as well the Supplement In Support of Allegany's Motion For Summary Judgment filed by Allegany on December 18, 2024, and any Opposition and Reply thereto, it is this 13th day of _____ May _____, 202 5 hereby **ORDERED** that:

1.      Allegany's Motion For Summary Judgment is **GRANTED**;

2.      Judgment is hereby entered in Defendant Allegany's favor on each of the following claims: 1) Plaintiff Linda S. Beeman, as Surviving Mother of Joshual P. Nickel, in Count I (Deliberate Intent – Wrongful Death Action) of the Complaint ("Complaint"); 2) Plaintiff Linda S. Beeman, as Personal Representative of the Estate of Joshua P. Nickel, in Count VII (Deliberate Intent – Survival Action) of the Complaint; and 3) Use Plaintiff Karl E. Nickel, as Surviving Father of Joshua P. Nickel, in Count XIII (Deliberate Intent – Wrongful Death Action) of the Complaint; and

3.     The Complaint against Allegany is dismissed with prejudice.

05/13/2025 9:44:11 AM

_____
Judge
Circuit Court for Allegany County, Maryland
Judge Jeffrey S. Getty

Cc: All Counsel of Record

2

## IN THE CIRCUIT COURT FOR ALLEGANY COUNTY, MARYLAND

**LINDA S. BEEMAN,** *et al*.

        **Plaintiffs,**

vs.                                  Civil Action No.: **C-01-CV-23-000317**

**ALLEGANY SCRAP, INC.,** *et al*.

        **Defendants.**

---

### NOTICE OF APPEAL

       Plaintiff, LINDA S. BEEMAN ("Plaintiff Beeman"), as *Surviving Mother* of *Decedent* Joshua P. Nickel ("Nickel"), and as *Personal Representative* of the Estate of Joshua P. Nickel (the "Nickel Estate"), by and through their counsel, Jason C. Buckel, Esq., T. Lee Beeman, Jr., Esq., and Buckel, Levasseur, Pillai & Beeman, LLC, and KARL E. NICKEL ("Use Plaintiff Nickel"), as *Surviving Father* of *Decedent* Joshua P. Nickel, an unrepresented "*Use Plaintiff*", by and through their counsel, Jason C. Buckel, T. Lee Beeman, Jr. and Buckel, Levasseur, Pillai & Beeman, LLC, **note an appeal of this Court's Order Granting Summary Judgment, entered on May 13, 2025, to the Appellate Court of Maryland in the above-captioned action.**

                                  Respectfully submitted,

                                _____/s/_____

                                Jason C. Buckel, AIS No.: 9612170120
                                T. Lee Beeman  AIS No.: 1412160059
                                Buckel, Levasseur, Pillai & Beeman, LLC.
                                206 Washington Street
                                Cumberland, Maryland 21502
                                P: (301) 759-3700  F: (301) 722-0334
                                blplaw@atlanticbbn.net
                                Lbeeman@blpblaw.com
                                *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this 11th day of June, 2025 a copy of the foregoing was filed and served through the MDEC system and has been delivered to all recipients entitled to receive electronic service of the same.


Respectfully submitted,

_____/s/_____
Jason C. Buckel, AIS No.: 9612170120

**APPELLATE COURT OF MARYLAND**
361 Rowe Blvd., Second Floor, Annapolis, MD 21401
www.mdcourts.gov/cosappeals / 410-260-1450

## CIVIL APPEAL INFORMATION REPORT
(Md. Rules 8-205 & 8-206)

Appellant: Linda Beeman, et al. _____ v. Appellee: Allegany Scrap, Inc. _____

County/Baltimore City: Allegany _____ Case No. C-01-CV-23-000317 Judge: Getty _____

---

**Instructions** Except in the circumstances noted below, a party who is appealing (known as the "appellant") from a civil case in the circuit court, must file the following in the circuit court:

    (1) A notice of appeal; and
    (2) This completed Civil Appeal Information Report including the judgment(s) that is/are appealed.

At the time the appellant files the notice of appeal and Civil Appeal Information Report, the appellant must also serve a copy of each on all other parties or their attorneys.

**In completing this form you may use extra pages if needed.** There is no separate fee to file this form.

    **FAILURE TO TIMELY FILE THIS FORM OR TO CORRECT ANY ERRORS AS REQUESTED MAY RESULT IN DISMISSAL OF THE APPEAL.**

**Exceptions:** This form is not required for cases regarding Child(ren) In Need of Assistance or Supervision; termination of parental rights; juvenile delinquency; criminal convictions; habeas corpus; coram nobis; post-conviction; violation of probation; appeals by prisoners relating to their confinement; and cases where an application for leave to appeal is allowed by law.

**For appellee(s):** Within 10 days after service of appellant's Civil Appeal Information Report, each non-appealing party (known as an "appellee") may, but is not required to, file with the Clerk of the Appellate Court of Maryland a supplemental report containing any other information needed to clarify the issues on appeal.

---

### COMPLETE THE FOLLOWING:

**Appellant's Name:** Linda Beeman      **Appellant's Attorney:** Jason C. Buckel

Phone (cell & work): See Counsel      Phone (cell & work): (301) 759-3700

E-mail: See Counsel      E-mail: blplaw@atlanticbbn.net

**Appellee's Name:** Allegany Scrap, Inc.      **Appellee's Attorney:** Shapiro Sher Guinot & Sandler

Phone (cell & work): _____      Phone (cell & work): 410-385-0202

E-mail: _____      E-mail: jis@shapirosher.com

1. **Select Case Type:**

☐ Contract    ☐ Declaratory Judgment    ☐ Foreclosure    ☐ Estates/Trusts    ☐ Divorce

☐ Custody    ☐ Admin. Agency Appeal    ☐ Workers Comp.    ☒ Personal Injury    ☐ Other _____

2. **Dates & duration of any relevant trial(s) or hearing(s):** 6/28/24 (3 hours) and (9/10/24) (3 hours)

3. **Were any post-judgment motions filed under Rule 2-532 (Judgment Notwithstanding the Verdict); 2-533 (New Trial); or 2-534 (Alter or Amend) within 10 days of entry of judgment** ☐ YES ☒ NO

    Date Motion Filed: _____ Disposition Date: _____ ☐ GRANTED ☐ DENIED ☐ PENDING

---

ACM-001 (Rev. 07/2023)        Page 1 of 2

4. **Does the judgment/order appealed end the entire case against all parties?** ☐ YES ☒ NO

If no, explain why the case is appealable under Rule 2-602 or Courts & Judicial Proceedings § 12-301 or § 12-303: <u>Trial Court expressly ordered final judgment in favor of Defendant Allegany Scrap.</u>

5. **Was *in banc* review requested under Rule 2-551 (In Banc Review)?** ☐ YES ☒ NO

If yes, which party filed the petition for *in banc* review? _____

6. **Has there been a prior appeal in this case, or are there any pending related appeals?** ☐ YES ☒ NO

Prior Appeal Case No(s).: _____

Related Appeal Case No(s): _____

7. **Is this an appeal from an order about adoption, termination of parental rights, guardianship of the person, custody, or visitation?** ☐ YES ☒ NO

8. **Briefly state the issues on appeal *(Information disclosed does not limit the scope of appeal. Rule 8-205(f)).***

> The trial court erred in granting summary judgment in favor of Defendant Allegany Scrap, Inc., because Workers' Compensation is not the exclusive remedy available to Plaintiffs and the Estate has not abandoned its claim by electing to receive Workers' Compensation death benefits.

9. **Describe the history and present status of settlement negotiations *(Information disclosed is subject to Rule 8-205(f)).***

> N/A

   a. Was this case previously submitted to any Alternative Dispute Resolution process (arbitration, mediation, settlement conference, etc.)? ☐ YES ☒ NO

   If so, please identify the arbitrator or mediator: _____

   b. Could this case benefit from mediation or prehearing conference services before briefs are filed? ☒ YES ☐ NO

*(For questions about your appeal please call the Appellate Court of Maryland Clerk's Office at 410-260-1450 or see mdcourts.gov/cosappeals)*

**CERTIFICATE OF SERVICE**

I certify that on the date stated below a copy of the foregoing Report was mailed, postage prepaid to:

| | |
|---|---|
| <u>Joel I. Sher (Counsel for Allegany Scrap, Inc.)</u><br>Name | <u>250 W. Pratt Street, Suite 2000</u><br>Address |
| | <u>Baltimore, MD 21201</u><br>City, State, Zip |
| <u>E. Andrew Cole (Counsel for Newell Defs.)</u><br>Name | <u>1101 Wooton Parkway, Suite 700</u><br>Address |
| | <u>Rockville, MD 20852</u><br>City, State, Zip |
| <u>                    </u><br>Date | <u>/s/ Jason C. Buckel (AIS 9612170120)</u><br>Signature of Party Serving |
| | <u>Jason C. Buckel</u><br>Printed Name |

## Case Information

C-01-CV-23-000317 | Linda Beeman, as Surviving Mother of Joshua P. Nickel, et al. vs. The Shredder Co LLC, et al.

| Case Number | Court | Judicial Officer |
|---|---|---|
| C-01-CV-23-000317 | Allegany Circuit Court | Getty, J S |
| File Date | Case Type | Case Status |
| 09/07/2023 | Tort - Wrongful Death | Appealed |

## Party

Plaintiff
Linda Beeman, as Surviving Mother of Joshua P. Nickel

Active Attorneys ▾
Attorney
BEEMAN, T LEE
Retained

Lead Attorney
BUCKEL, JASON CORD
Retained

Plaintiff
Beeman, Linda

Active Attorneys ▾
Attorney
BEEMAN, T LEE
Retained

Lead Attorney
BUCKEL, JASON CORD
Retained

Personal Representative (Participant)
Beeman, Linda

Details
Active Attorneys ▾
Attorney
BEEMAN, T LEE
Retained

Lead Attorney
BUCKEL, JASON CORD
Retained

Plaintiff
Karl E. Nickel, as Surviving Father of Joshua P. Nickel (Use Plaintiff)

Active Attorneys ▾
Pro Se

Plaintiff
Nickel, Karl

Defendant
The Shredder Co LLC

Active Attorneys ▾
Lead Attorney
COLE, EDWARD ANDREW
Retained

Attorney
Moeller, Joseph Michael
Retained

Defendant
The Shredder Co L.P.

Active Attorneys ▾
Lead Attorney
COLE, EDWARD ANDREW
Retained

Attorney
Moeller, Joseph Michael
Retained

Case 1:25-cv-01912-CJC    Document 1-1    Filed 06/12/25    Page 729 of 737

Defendant
Newell Recycling Equipment, LLC

Active Attorneys ▾
Lead Attorney
COLE, EDWARD ANDREW
Retained

Attorney
Moeller, Joseph Michael
Retained

Defendant
Newell Recycling Company of El Paso, L.P.

Active Attorneys ▾
Lead Attorney
COLE, EDWARD ANDREW
Retained

Attorney
Moeller, Joseph Michael
Retained

Decedent (Participant)
NICKEL, JOSHUA PAUL

DOB
XX/XX/1990

Gender
Male

## Events and Hearings

09/07/2023 Summons Issued ▾

Requested By
Linda Beeman, as Surviving Mother of Joshua P. Nickel, Beeman, Linda, Karl E. Nickel, as Surviving Father
of Joshua P. Nickel (Use Plaintiff)

Unserved

09/07/2023 Summons Issued ▼

Requested By
Beeman, Linda

Unserved

09/07/2023 Summons Issued ▼

Requested By
Linda Beeman, as Surviving Mother of Joshua P. Nickel, Beeman, Linda, Karl E. Nickel, as Surviving Father of Joshua P. Nickel (Use Plaintiff)

Unserved

09/07/2023 Summons Issued ▼

Requested By
Linda Beeman, as Surviving Mother of Joshua P. Nickel, Beeman, Linda, Karl E. Nickel, as Surviving Father of Joshua P. Nickel (Use Plaintiff)

Unserved

09/07/2023 Summons Issued ▼

Requested By
Linda Beeman, as Surviving Mother of Joshua P. Nickel, Beeman, Linda, Karl E. Nickel, as Surviving Father of Joshua P. Nickel (Use Plaintiff)

Unserved

09/07/2023 Complaint / Petition

09/07/2023 Request to Issue

09/07/2023 Supporting Exhibit

09/07/2023 Supporting Exhibit

09/07/2023 Case Information Report Filed

09/07/2023 Summons Issued (Service Event)

09/07/2023 Summons Issued (Service Event)

09/07/2023 Summons Issued (Service Event)

09/07/2023 Summons Issued (Service Event)

09/07/2023 Summons Issued (Service Event)

09/07/2023 Writ /Summons/Pleading - Electronic Service

09/07/2023 Writ /Summons/Pleading - Electronic Service

09/07/2023 Writ /Summons/Pleading - Electronic Service

09/07/2023 Writ /Summons/Pleading - Electronic Service

09/07/2023 Writ /Summons/Pleading - Electronic Service

12/26/2023 Summons Issued ▾

Requested By
Linda Beeman, as Surviving Mother of Joshua P. Nickel, Beeman, Linda, Karl E. Nickel, as Surviving Father
of Joshua P. Nickel (Use Plaintiff)

Served
12/29/2023

12/26/2023 Summons Issued ▾

Requested By
Beeman, Linda

Served
01/08/2024

12/26/2023 Summons Issued ▾

Requested By
Beeman, Linda

Served
01/08/2024

12/26/2023 Summons Issued ▾

Requested By
Beeman, Linda

Served
01/08/2024

12/26/2023 Summons Issued ▾

Requested By
Beeman, Linda

Served
01/08/2024

12/26/2023 Request to Re-Issue

12/26/2023 Summons Issued (Service Event)

12/26/2023 Summons Issued (Service Event)

12/26/2023 Summons Issued (Service Event)

12/26/2023 Summons Issued (Service Event)

12/26/2023 Summons Issued (Service Event)

12/26/2023 Writ /Summons/Pleading - Electronic Service

12/26/2023 Writ /Summons/Pleading - Electronic Service

12/26/2023 Writ /Summons/Pleading - Electronic Service

12/26/2023 Writ /Summons/Pleading - Electronic Service

12/26/2023 Writ /Summons/Pleading - Electronic Service

12/29/2023 Affidavit - Service

01/08/2024 Affidavit - Service

01/08/2024 Supporting Exhibit

01/08/2024 Affidavit - Service

01/08/2024 Supporting Exhibit

01/08/2024 Affidavit - Service

01/08/2024 Supporting Exhibit

01/08/2024 Affidavit - Service

01/08/2024 Supporting Exhibit

01/29/2024 Attorney Appearance - $10 Fee

01/29/2024 Motion / Petition to Extend Time

02/01/2024 Order - Motion/Request/Petition Granted ▾

   Judicial Officer
   Twigg, Michael O

02/01/2024 Writ /Summons/Pleading - Electronic Service

02/20/2024 Returned/Undeliverable Mail

02/28/2024 Motion / Request - To Dismiss

02/28/2024 Memorandum

02/28/2024 Supporting Exhibit

03/14/2024 Consent Motion

03/19/2024 Order - Motion/Request/Petition Granted ▼

Judicial Officer
Twigg, Michael O

03/19/2024 Writ /Summons/Pleading - Electronic Service

03/19/2024 Writ /Summons/Pleading - Electronic Service

04/01/2024 Returned/Undeliverable Mail

04/05/2024 Motion / Request - To Dismiss

04/05/2024 Supporting Exhibit

04/05/2024 Supporting Exhibit

04/08/2024 Attorney Appearance - $10 Fee

04/24/2024 Writ /Summons/Pleading - Electronic Service

04/24/2024 Writ /Summons/Pleading - Electronic Service

04/24/2024 Writ /Summons/Pleading - Electronic Service

04/24/2024 Writ /Summons/Pleading - Electronic Service

04/24/2024 Writ /Summons/Pleading - Electronic Service

04/24/2024 Writ /Summons/Pleading - Electronic Service

04/24/2024 Order - Motion/Request/Petition Set for Hearing ▼

Judicial Officer
Twigg, Michael O

04/24/2024 Hearing Notice Issued

04/24/2024 Writ /Summons/Pleading - Electronic Service

05/06/2024 Returned/Undeliverable Mail

05/10/2024 Response/Reply

05/10/2024 Memorandum

05/23/2024 Request for Hearing/Trial

05/23/2024 Response/Reply

05/23/2024 Supporting Exhibit

05/23/2024 Supporting Exhibit

05/23/2024 Supporting Exhibit

06/14/2024 Reply to Opposition

06/21/2024 Reply to Opposition

06/21/2024 Supporting Exhibit

06/28/2024 Hearing - Motion to Dismiss ▾

Original Type
Hearing - Motion to Dismiss

Judicial Officer
Leasure, Gary G

Hearing Time
9:30 AM

Result
Concluded / Held

06/28/2024 Hearing Sheet ▾

    Judicial Officer
    Leasure, Gary G

06/28/2024 Held Sub Curia ▾

    Judicial Officer
    Leasure, Gary G

07/03/2024 Correspondence

07/03/2024 Court's Response to Correspondence

07/08/2024 Memorandum

07/08/2024 Supporting Exhibit

07/09/2024 Stricken Filing

07/09/2024 Correspondence

07/10/2024 Correspondence

07/10/2024 Order ▼

  Judicial Officer
  Leasure, Gary G

07/10/2024 Writ /Summons/Pleading - Electronic Service

07/11/2024 Returned/Undeliverable Mail

07/11/2024 Returned/Undeliverable Mail

07/11/2024 Returned/Undeliverable Mail

07/12/2024 Order ▼

  Judicial Officer
  Getty, J S

07/12/2024 Writ /Summons/Pleading - Electronic Service

07/17/2024 Writ /Summons/Pleading - Electronic Service

07/17/2024 Writ /Summons/Pleading - Electronic Service

07/17/2024 Writ /Summons/Pleading - Electronic Service

07/17/2024 Writ /Summons/Pleading - Electronic Service

07/17/2024 Writ /Summons/Pleading - Electronic Service

07/17/2024 Writ /Summons/Pleading - Electronic Service

07/17/2024 Writ /Summons/Pleading - Electronic Service

07/17/2024 Hearing Notice Issued

07/29/2024 Returned/Undeliverable Mail

09/10/2024 Hearing - Motion to Dismiss ▼

Original Type
Hearing - Motion to Dismiss

Judicial Officer
Getty, J S

Hearing Time
9:00 AM

Result
Concluded / Held

09/10/2024 Hearing Sheet ▾

   Judicial Officer
   Getty, J S

09/10/2024 Held Sub Curia

10/31/2024 Memorandum

10/31/2024 Order - Motion/Request/Petition Denied ▾

   Judicial Officer
   Getty, J S

10/31/2024 Writ /Summons/Pleading - Electronic Service

10/31/2024 Writ /Summons/Pleading - Electronic Service

11/13/2024 Returned/Undeliverable Mail

11/22/2024 Answer

12/18/2024 Memorandum

12/18/2024 Supporting Exhibit

12/18/2024 Supporting Exhibit

12/18/2024 Supporting Exhibit

12/18/2024 Supporting Exhibit

01/22/2025 Certificate Regarding Discovery

02/21/2025 Stricken Filing

02/24/2025 Notice of Striking Non-Compliant Submission

02/24/2025 Writ /Summons/Pleading - Electronic Service

02/24/2025 Notice of Service

04/17/2025 Notice of Discovery

05/13/2025 Order - Dismissal ▾

Case 1:25-cv-01912-CJC     Document 1-1     Filed 06/12/25     Page 737 of 737

Judicial Officer

Details

Getty, J S

05/13/2025 Writ /Summons/Pleading - Electronic Service

06/11/2025 Notice of Appeal to ACM

06/11/2025 Civil Information Report - Appeal to ACM