UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BEEMAN, *et al.*,                          *

    Plaintiffs,                         *

v.                                         *          Civil Action No. CJC-25-1912

THE SHREDDER CO., LLC, *et al.*,           *

    Defendants.                         *

## **MEMORANDUM OPINION**

Before the Court is a Motion to Remand (the "Motion") filed by Linda Beeman, as surviving mother and personal representative of the Estate of Joshua Nickel, and unrepresented use plaintiff Karl Nickel, Joshua Nickel's father ("Plaintiffs").[1] Plaintiffs' Motion asserts improper removal by The Shredder Co., LLC; The Shredder Co., L.P.; Newell Recycling Equipment, LLC; and Newell Recycling Company of El Paso, L.P. (the "Newell Defendants"). The Motion is ripe for review and no hearing is necessary. Loc. R. 105.6. For the reasons discussed below, the Court grants Plaintiffs' Motion to Remand.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Before his death, Joshua Nickel worked at Allegany Scrap, Inc., a metal recycling facility incorporated and principally operating in Maryland. ECF Nos. 7-1 at 4, 7-43 at 79.[2] On September 10, 2020, Joshua Nickel was working next to an industrial metal shredder when the

---

[1] Karl Nickel was joined to the suit as a "use plaintiff." Under Maryland law, a use plaintiff is a person who may be entitled to claim damages in a wrongful death action and must be named as a plaintiff "whether or not they join in the action." Md. R. 15-1001(b). Karl Nickel's status as a use plaintiff will be more thoroughly analyzed in the Discussion section below.

[2] Citations to the parties' filings refer to the page number provided in the CM/ECF filing header, not the PDF pagination.

shredder ejected a piece of metal that struck him in the head and rendered him unconscious. ECF No. 7-1 at 5–6. He later died from his injuries. ECF No. 7-1 at 6.

On November 6, 2020, Ms. Beeman filed a claim for death benefits with the Maryland Workers' Compensation Commission, asserting that she should be awarded death benefits as a dependent of Joshua Nickel. ECF No. 7-43 at 75. Following a hearing, the Workers' Compensation Commission issued an order awarding Ms. Beeman weekly death benefit payments. ECF No. 7-43 at 79.

About one year later, Ms. Beeman entered into a settlement agreement in which she agreed to accept a lump sum rather than weekly payments for the remainder of the death benefit claim. ECF No. 7-43 at 83. The Workers' Compensation Commission issued an order approving the settlement agreement on December 6, 2021. ECF No. 7-43 at 92.

On September 7, 2023, Plaintiffs sued Allegany Scrap and the Newell Defendants in the Circuit Court for Allegany County, Maryland, alleging that Allegany Scrap deliberately intended to kill Joshua Nickel and, separately, that the Newell Defendants were liable for negligence, strict products liability, and breach of warranties relating to the shredder involved in the fatal incident. ECF No. 7-1 at 13–31.

Allegany Scrap moved to dismiss the claims against it, arguing, among other things, that Plaintiffs' claims were barred by the Maryland Workers' Compensation Act (the "Act") because Ms. Beeman had already received compensation for Joshua Nickel's death. ECF No. 7-12 at 9–10. The Circuit Court agreed with Allegany Scrap's legal argument, finding that "[t]o the extent that the Plaintiffs have received compensation under the Act, this claim is barred." ECF No. 7-40 at 3. Because Allegany Scrap had not presented evidence that Ms. Beeman was compensated under the Act, the Circuit Court denied the motion to dismiss but permitted the parties to present

evidence regarding Ms. Beeman's receipt of compensation under a motion for summary judgment posture. ECF No. 7-40 at 3–4.

On December 18, 2024, Allegany Scrap moved for summary judgment and attached evidence of the weekly and lump sum death benefit compensation that Ms. Beeman had received by order of the Workers' Compensation Commission. ECF No. 7-43. Allegany Scrap argued that because Ms. Beeman had already received compensation, she could not recover in tort, and it further argued that Karl Nickel failed to timely join the lawsuit as a use plaintiff. ECF No. 7-43 at 8, 11. On May 13, 2025, the Circuit Court, without providing any reasoning, granted summary judgment in favor of Allegany Scrap, dismissing all claims against it. ECF No. 48. Plaintiffs timely noted an appeal of that ruling to the Appellate Court of Maryland. ECF No. 7-50. That appeal remains pending.

On June 12, 2025, within thirty days of Allegany Scrap's dismissal, the Newell Defendants removed the case to this Court. ECF No. 1. They based removal on diversity jurisdiction because the Newell Defendants are incorporated and have their principal place of business in diverse states—Texas or Florida—while Plaintiffs reside in Maryland. ECF No. 1.

On June 26, 2025, Plaintiffs filed the instant Motion. ECF No. 18. The Newell Defendants filed a response in opposition to the Motion on July 28, 2025. ECF No. 21. Plaintiffs did not file a reply.

## LEGAL STANDARD

A court should generally permit removal "if two conditions are met – (1) a defendant successfully establishes federal subject matter jurisdiction and (2) plaintiff fails to establish a procedural defect in removal …." *Hanson v. Depot LBX, Inc.*, 756 F. Supp. 3d 56, 62 (W.D. Va. 2024). "Because the removal of a case from state to federal court raises significant federalism

concerns, courts strictly construe removal jurisdiction." *Molnar-Szilasi v. Sears Roebuck & Co.*, 429 F. Supp. 2d 728, 729 (D. Md. 2006). "Doubts about the propriety of removal are to be resolved in favor of remanding the case to state court." *Cohn v. Charles*, 857 F. Supp. 2d 544, 547 (D. Md. 2012).

## DISCUSSION

Plaintiffs argue that the Newell Defendants' removal, based on diversity jurisdiction, is substantively and procedurally defective. Substantively, Plaintiffs contend the case cannot be removed because of the "voluntary-involuntary rule," which precludes removal from state to federal court when a defendant has been dismissed from the plaintiff's case at the state level involuntarily. That is, when the defendant's dismissal results from something other than the plaintiff's own doing, the case cannot be removed. *Mayes v. Rapoport*, 198 F.3d 457, 461 n.9 (4th Cir. 1999); *Buchanan Cnty. v. Equitable Prod. Co.*, 788 F. Supp. 2d 497, 500 (W.D. Va. 2011). ECF No. 18 at 2–3. Moreover, Plaintiffs claim that the sole exception to the voluntary-involuntary rule that would have allowed removal—known as "fraudulent joinder"—does not apply here because Plaintiffs did not fraudulently join Allegany Scrap. ECF No. 18 at 2–3. Procedurally, Plaintiffs assert that the Newell Defendants failed to file their notice of removal within the statutorily required thirty-day and one-year deadlines. ECF No. 18 at 4.

Because I find that the Newell Defendants failed to file their notice of removal within the thirty-day deadline as required, I need not resolve Plaintiffs' substantive arguments opposing removal. *See, e.g.*, *Ramirez v. Johnson & Johnson*, Civil Action No. 2:15-CV-09131, 2015 WL 4665809, at *2 (S.D.W. Va. Aug. 6, 2015) ("Whether I must examine the possibility of a fraudulently joined party here depends on whether the Corporate Defendants' Notice of Removal

4

was timely."); *Sclafani v. Ins. Co. of N. Am.*, 671 F. Supp. 364, 365 (D. Md. 1987) (declining to reach substantive removal issue because defendant failed to meet thirty-day deadline).

**I.      The Newell Defendants' Removal to Federal Court was Untimely.**

A defendant must remove a case to federal court within a statutorily defined thirty-day deadline, and that deadline begins to run when the case is removable. A notice of removal must typically be filed within thirty days after the defendant receives the complaint. *See* 28 U.S.C. § 1446(b)(1). If, however, "the case stated by the initial [complaint] is not removable," the removing defendant must instead file a notice of removal "within [thirty] days after receipt … of … an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Here, the parties concede that the case was not removable when Plaintiffs filed their Complaint. *See* ECF No. 18 at 4–5; ECF No. 21 at 16. The Complaint includes Allegany Scrap as a non-diverse defendant in the action, thus precluding removal on the basis of diversity jurisdiction. ECF No. 7-1 at 1. Thus, to determine when the thirty-day deadline for removal began to run, I must determine when the Newell Defendants could "first … ascertain[]" that the case was removable. 28 U.S.C. § 1446(b)(3).

The Newell Defendants justify removal on the doctrine of fraudulent joinder, which "permits removal when a non-diverse party … has been[] a defendant in a case." *Mayes*, 198 F.3d at 461. To establish fraudulent joinder, the removing defendant must show that either "(1) there is no possibility that the plaintiff would be able to establish a cause of action against the [non-diverse] defendant in state court; or (2) there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp. 2d 943, 947 (D. Md. 2004).

The Newell Defendants rest their argument on the first pathway to fraudulent joinder—that there is no possibility that Plaintiffs would be able to establish a cause of action against Allegany Scrap. Thus, the Court's analysis regarding when the thirty-day deadline begins to run starts there.

### A. The Newell Defendants could have intelligently ascertained removability from Allegany Scrap's motion for summary judgment.

Under the first pathway to fraudulent joinder, "the thirty-day window begins to run when the removing [defendant] 'could have intelligently ascertained ... [whether] it had valid arguments that [the claims against the non-diverse parties] should fail.'" *Moore v. Nationwide Mut. Ins. Co.*, No. 2:25-CV-00923-DCN, 2025 WL 1502107, at *3 (D.S.C. May 27, 2025) (quoting *Riverdale Baptist*, 349 F. Supp. 2d at 954). Courts have often found that a removing defendant can intelligently ascertain that the claims against a non-diverse defendant should fail prior to a court order dismissing the non-diverse defendant. *See, e.g.*, *Day v. Liberty Mut. Fire Ins. Co.*, No. 1:13CV16, 2013 WL 1890725, at *2, *6 (N.D.W. Va. May 6, 2013) (finding that defendant failed to timely remove within the thirty-day deadline because the defendant could intelligently ascertain that the plaintiff had settled his claims with the non-diverse defendant from the complaint itself rather than the order granting the motion to dismiss); *Deming v. Nationwide Mut. Ins. Co.*, No. CIV.A. 3:03CV1225(CF, 2004 WL 332741, at *5 (D. Conn. Feb. 14, 2004) (finding defendant failed to timely remove within the thirty-day deadline because the defendant could intelligently ascertain that the plaintiff could not succeed against the non-diverse defendants from the amended complaint rather than the order granting the motion to strike); *Riverdale Baptist*, 349 F. Supp. 2d at 953–54 ("The dispositive issue is when Defendant was first able to ascertain that the case was removable, not when the state court first put its stamp on the matter.").

Allegany Scrap's motion for summary judgment was the filing in which the Newell Defendants could have intelligently ascertained that Plaintiffs' claims against Allegany Scrap might fail, thus leading to its dismissal. This is because it was clear from the motion for summary judgment that Allegany Scrap's arguments in favor of dismissal of Ms. Beeman's and Karl Nickel's claims were meritorious based on the undisputed facts and settled Maryland law. Md. R. 2-501(f) (describing standard for summary judgment).

### 1. Allegany Scrap's arguments against Ms. Beeman's claims were meritorious and supported by evidence.

In its motion for summary judgment, Allegany Scrap argued that Ms. Beeman could not recover in tort against Allegany Scrap because she had already received workers' compensation for her son's, Joshua Nickel's, death. ECF No. 7-43 at 8. The Newell Defendants could have intelligently ascertained that there was no dispute of material fact as to this assertion in light of the evidentiary record. Allegany Scrap attached: (1) Ms. Beeman's workers' compensation claim, (2) Ms. Beeman's workers' compensation settlement agreement, and (3) the associated orders that the Workers' Compensation Commission issued granting Ms. Beeman compensation. ECF No. 7-43 at 75–92.

The Newell Defendants could also have intelligently ascertained that Allegany Scrap was entitled to judgment as a matter of law. Maryland courts have long held that a party that receives workers' compensation for a work injury cannot also recover in tort for that same injury based on a theory of deliberate intent. *Athas v. Hill*, 54 Md. App. 293, 298 (1983) ("[T]he privilege given an employee whose injury results from the deliberate intention of his employer to have a cause of action against the employer … is lost if the employee proceeds by way of [workers'] compensation."); *Haynie v. Nat'l Gypsum Corp.*, 62 Md. App. 528, 533 (1985) (citing with approval unreported case in which party had received workers' compensation benefits and thus

7

could not pursue tort claim). Because the Newell Defendants could have intelligently ascertained from the motion for summary judgment that Allegany Scrap's double recovery argument was meritorious, it should have been aware that Allegany Scrap was allegedly fraudulently joined.

### 2. Allegany Scrap's arguments against Karl Nickel's claims were meritorious and supported by evidence.

Likewise, Allegany Scrap's argument against Karl Nickel's claims were clearly meritorious. In its motion for summary judgment, Allegany Scrap argued that Karl Nickel's wrongful death claim had expired because he had not timely joined the action within three years after Joshua Nickel's death. ECF No. 7-43 at 11. Allegany Scrap's argument was supported by the evidence and Maryland law.

First, the Newell Defendants could have intelligently ascertained that there was no dispute of material fact as to Karl Nickel's untimeliness because Karl Nickel had never officially joined the action within three years of Joshua Nickel's death in September 2020. ECF No. 7-1 at 5–6.

Second, the Newell Defendants could have intelligently ascertained that Allegany Scrap was entitled to judgment as a matter of law based on this untimeliness. Karl Nickel is a use plaintiff, which is a person who may be entitled to claim damages in a wrongful death action and who must be named as a plaintiff "whether or not they join in the action." Md. R. 15-1001(b). The plaintiff bringing the action must serve all use plaintiffs with a copy of the complaint pursuant to Maryland's rules for personal service. Md. R. 15-1001(d). If a use plaintiff does not file a wrongful death action or motion to intervene in the original plaintiff's action within three years of the decedent's death, the use plaintiff "may not participate in the action or claim a recovery." Md. R. 15-1001(e)(1), (2); Md. Code, Cts. and Jud. Proc. § 3-904(g)(1) (defining three-year deadline). This is true even if the use plaintiff is not given proper notice of the original

8

plaintiff's wrongful death action. *See Univ. of Md. Med. Sys. Corp. v. Muti*, 426 Md. 358, 362, 376–77 (2012) (holding that use plaintiff neither identified in nor notified of wrongful death action was barred from intervening because three-year deadline had passed).[3] Here, even though Karl Nickel was not given formal notice of Ms. Beeman's wrongful death action, his claim appears to have expired as a matter of law because he failed to intervene or file a wrongful death action within three years of Joshua Nickel's death.

For these reasons, the Newell Defendants could have intelligently ascertained from the motion for summary judgment that Allegany Scrap's untimeliness argument against Karl Nickel was meritorious and that Allegany Scrap was allegedly fraudulently joined.

### B. The state court's order dismissing Allegany Scrap is not the appropriate trigger date for the 30-Day deadline.

The Newell Defendants contend that they could not ascertain that Allegany Scrap was fraudulently joined until the Circuit Court formally granted summary judgment because, until that time, Plaintiffs could have opposed Allegany Scrap's motion for summary judgment with new factual evidence or new legal arguments. ECF No. 21 at 16. This argument is unpersuasive. "[T]he ground for removal need not appear beyond a reasonable doubt in a court order before the right to effect a removal may be unmistakably apparent." *Riverdale Baptist*, 349 F. Supp. 2d at 953 (quoting *Gray v. Rite Aid Corp.,* 189 F. Supp. 2d 347, 349 (D. Md. 2002)).

---

[3] A plaintiff's failure to give notice of a wrongful death action to a use plaintiff does not permit the use plaintiff to toll the three-year statutory deadline and join the action because the deadline is a condition precedent rather than a statute of limitations. *Muti*, 426 Md. at 370–71. Unlike a statute of limitations, a condition precedent is an absolute deadline to initiating an action that is not subject to equitable tolling. *Ferguson v. Loder*, 186 Md. App. 707, 714 (2009). Thus, if the three-year statutory deadline has passed, a use plaintiff is absolutely barred from joining a wrongful death action. *See Muti*, 426 Md. at 376–77.

The ground for removal in this case was apparent from the motion for summary judgment on both a factual and legal basis. Allegany Scrap provided the specific orders in which the Workers' Compensation Commission granted compensation to Ms. Beeman and presented evidence that Karl Nickel failed to join the action within three years of Joshua Nickel's death. Furthermore, I am unaware of any Maryland case that holds that a party may elect to take both workers' compensation and tort damages for the same injury, or that holds that a use plaintiff may join after the three-year deadline has passed, nor have the Newell Defendants identified any such authority.

The Newell Defendants rely on *Grubb v. Donegal Mutual Insurance Company*, 935 F.2d 57, 60 (4th Cir. 1991), as additional support for the proposition that a case may not be removable until the state court formally enters a written order dismissing a non-diverse defendant, ECF No. 21 at 16, but *Grubb* is inapposite for two reasons. First, *Grubb* is incredibly fact-specific and only tangentially addresses whether removability is triggered by a court's order dismissing non-diverse defendants. The Fourth Circuit concluded that *Grubb* became removable when the state court entered an order on the docket granting plaintiff's voluntary dismissal of the non-diverse defendants rather than when the court gave an oral ruling granting dismissal. *Grubb*, 935 F.2d at 58–59. The Fourth Circuit reasoned that, under the circumstances, the state court could have altered its oral ruling before entering it on the docket and that Maryland law required entry of a formal order for the dismissal to be effective. *Grubb*, 935 F.2d at 59. Unlike the informal oral ruling in *Grubb*, in the instant case, federal law regarding removal, Maryland law, and the facts establish that Allegany Scrap's written motion for summary judgment could have justified removal. *See* 28 U.S.C. 1446(b)(3) (permitting removal when a defendant receives a "*motion* … from which it may first be ascertained that the case … has become removable") (emphasis

added). Second, the Fourth Circuit in *Grubb* did not analyze the legal issues that are necessary to determine whether the instant case is removable. *Grubb* largely focused on the circumstances under which a defendant's participation in a state court proceeding may waive the defendant's thirty-day right to remove a case to federal court, 935 F.2d at 59, but the parties raise no such waiver argument here. Additionally, because the Fourth Circuit in *Grubb* concluded that plaintiffs voluntarily dismissed the non-diverse defendants, *id.* at 60, the voluntary-involuntary rule did not preclude removal and the Fourth Circuit did not need to address the doctrine of fraudulent joinder, as I do here. Given the Court's brief, tangential, and fact-specific discussion of the removability issue relevant here, I find *Grubb* to be of limited import.

**II.     Remand to the Circuit Court is Required Under the Circumstances.**

Because the Newell Defendants' removal was untimely, I must remand this case to the Circuit Court. In so doing, I have reviewed this case for jurisdictional purposes only and am not deciding the merits of any party's claims or defenses. *See Drye v. Bankers Life & Cas. Co.*, No. 3:03CV115 MU, 2006 WL 2077562, at *2 (W.D.N.C. July 24, 2006) ("The remand order does not dispose of the claims or defenses of any party, but merely determines which forum has jurisdiction of the case. It does not resolve the substantive rights and obligations of the parties.").

## CONCLUSION

For the reasons stated above, the Motion to Remand is GRANTED. A separate Order follows.

DATED this 24th day of October, 2025

BY THE COURT

_____
Chelsea J. Crawford
United States Magistrate Judge
